Exhibit 1



Paladin Management Group, LLC
633 West Fifth Street, 28th Floor
Los Angeles, CA 90071

December 23, 2020

**Via Electronic Mail**

Mr. Cody Easterday
Owner & CEO
Easterday Farms
1427 North First Avenue
Pasco, WA 99301

Re: Terms of Engagement of Paladin Management Group, LLC

Dear Mr. Easterday:

This letter agreement (the "Agreement") confirms the terms under which Easterday Ranches, Inc., a Washington corporation ; Easterday Farms, a Washington general partnership; Cody Allen Easterday and Debby Easterday, husband and wife (the "Company") has engaged Paladin Mangement Group ("Paladin") to provide the Company with the services described below (the "Services"). You shall, by executing this letter of agreement, engage Paladin for the purposes of providing business advice and consultation to you regarding the Company's current challenges. We will also work with you toward the implementation of whatever strategies are most appropriate to achieve the Company's objectives. The General Terms & Conditions applicable to this engagement are attached to this letter as the Appendix and are incorporated herein by reference.

Paladin's services under this letter agreement (the "Services") will include the following, as requested by the Company:

- Assist the Company in cash management and cash flow forecasting processes, including the monitoring of actual cash flow versus projections;

- Assist the Company in its analysis of its liquidity outlook, debt service capacity, appropriate capital structure, and potential amounts due customers

    Assist the Company in (i) identifying various operational, managerial, financial and strategic restructuring alternatives and (ii) understanding the business and financial impact of same;

- Assist the Company in connection with Company' s communications and negotiations with other parties, including its secured lenders , significant vendors, customers etc.;

- Provide advice and recommendations with respect to other related matters as the Company or its professionals may request from time to time, as agreed to by Paladin

Paladin's professional fees for the Services will range from $275 to $695 per hour, depending on the personnel performing the work. Our fees are based on the hours expended by Paladin personnel, multiplied by their applicable hourly billing rate for this engagement. Additionally,

Paladin will be compensated 50% of its hourly rates for non-working travel time incurred by our personnel related to this engagement.

Paladin will be entitled to reimbursement for reasonable expenses incurred in connection with this engagement, including but not limited to travel, meals, lodging, production of materials, and delivery services and other costs incurred in providing the Services. In addition, Paladin will bill the Company an administrative expense of 4.5% of professional fees. This fee covers overhead expenses.

All fees and expenses will be billed to the Company weekly and are payable upon receipt.

There will be a $75,000 retainer (the "Retainer") paid to Paladin upon the execution of this agreement. This Retainer will be held by Paladin and applied to Paladin's final bill for fees and expenses hereunder.

The Services may be performed by Paladin or by any subsidiary or affiliate of Paladin, as Paladin shall determine. Paladin may also provide Services through its or its subsidiaries' agents or independent contractors. References herein to Paladin and its employees shall be deemed to apply, unless the context shall otherwise indicate, to employees of each such subsidiary and to any such agents or independent contractors and their employees.

If the foregoing accurately sets forth the understanding between us, please so indicate by signing and returning this letter to Paladin. Thank you for the opportunity to work together, and we look forward to the engagement.

Very truly yours,

PALADIN MANAGEMENT GROUP, LLC

By: _____
Name: _____
Title: Managing Partner

CONFIRMED AND AGREED:

Easterday Ranches, Inc.
Easterday Farms
Cody Allen Easterday and Debby Easterday

By: _____
Name: CODY A EASTERDAY
Title: President / Partner

By: _____
Name: Debby Easterday
Title: Partner

2

## Appendix A

## General Terms and Conditions

### 1. Retainer and Compensation.

(a) Company agrees that the Retainer amount is intended to be greater than the amount of fees and expenses due to or incurred by Paladin under this Agreement at any given time. If the Company fails at any time or for any reason to pay any amounts due under this Agreement, then Paladin may apply the Retainer to such unpaid amounts immediately and without prior notice to the Company. The Company hereby grants a first-priority security interest in the Retainer to Paladin to secure payment to Paladin of all amounts due under this Agreement. Company shall have a continuing obligation to replenish the Retainer or any increases to the Retainer to the required amount within three (3) days of any Paladin request.

(b) To the extent Paladin is not actually working while traveling, Paladin shall charge travel time for individuals at one-half of the applicable hourly rate. Paladin adjusts its hourly rates for services periodically. Company agrees to pay such hourly rates as reasonably adjusted. The Company will be billed for all out-of-pocket expenses reasonably incurred by Paladin in the performance of its obligations under this agreement. Such expenses shall include travel, meals and lodging, delivery services, etc. In addition, the Company will be billed an administrative fee of 4.5% of professional fees. This fee covers overhead expenses (e.g. telephone, computer services, copying, etc.). In states where Paladin is obligated to collect sales taxes on professional services, such taxes will be invoiced to you.

### 2. Access to Company Personnel and Information and Company Representation Concerning Information Provided to Paladin.

(a) The services to the Company under this Agreement may include the preparation of recommendations, projections, and other forward-looking statements. The Company acknowledges that numerous factors may affect the Company's actual financial and operational results, and that these results may materially and adversely differ from the recommendations and projections prepared, in whole or in part, by Paladin. The Company acknowledges that in rendering its services under this Agreement, Paladin will be using and relying upon the information provided by Company, its directors, officers, employees, representatives and agents. Under any of the foregoing circumstances, the Company agrees that Paladin shall have no duty to verify independently the reliability, accuracy or completeness of such information. The Company also agrees that Paladin shall incur no liability to the Company or any individual or other entity that may arise if any such information proves to be unreliable, inaccurate or incomplete.

### 3. Limitation of Duties.

(a) Neither Paladin, nor the Engagement Personnel make any representations or guarantees regarding the outcome of the engagement or Paladin's work product.

(b) The Company acknowledges and agrees that Paladin and engagement personnel are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

### 4. Confidential Information.

(a) Paladin shall use commercially reasonable efforts to avoid disclosure of, and ensure confidentiality with respect to, the Company's "Confidential Information." Further, Paladin will use the Confidential Information only for the purpose of providing services to the Company pursuant to this Agreement. "Confidential Information" shall mean information that is disclosed by the Company to Paladin or otherwise obtained by Paladin in connection with the engagement, each as is either designated on its face as confidential or is of a nature that a reasonable person would expect it to be confidential under the circumstances.

(b) Confidential Information shall not include information that is: (i) now or subsequently becomes generally known or available by publication, commercial or otherwise, through no fault of Paladin, its employees, agents, or independent contractors; (ii) already known by Paladin at the time of the disclosure, provided that such information did not come from a source known by Paladin to be bound by a confidentiality agreement with the Company, or from a source that was otherwise prohibited from disclosing such information under a contractual, legal or fiduciary obligation; (iii) becomes available to Paladin on a non-confidential basis from a source other than the Company, provided that, to Paladin's knowledge, the source was not prohibited from disclosing such information to Paladin under a contractual, legal or fiduciary obligation to the Company; (iv) independently developed by Paladin, its employees, agents, or independent contractors primarily from information that is not Confidential Information; (v) information that the Company and Paladin agree, orally or in writing, may be disclosed; (vi) information that is reasonably expected to be disclosed as part of Paladin's Scope; or (vii) information that Paladin reasonably believes, after consultation with its attorneys, it must disclose pursuant to applicable law, or regulatory or administrative process, including stock exchange rules.

(c) Paladin may make reasonable disclosures of Confidential Information: (i) to third parties in connection with the performance of its services under this Agreement so long as such disclosures are made pursuant to a confidentiality agreement in form and substance satisfactory to the Company; (ii) in connection with any dispute between Paladin and Company under or concerning this Agreement, or (iii) pursuant to any request by FINRA, the Securities and Exchange Commission or any other regulatory authority, or pursuant to any order, subpoena, or other regulatory or legal process; provided, however, that in the event of disclosure in connection with a subpoena, unless prohibited by applicable law, Paladin will provide the Company with notice of the subpoena prior to disclosure and will reasonably cooperate with the Company in any efforts to limit or quash the subpoena.

5. **No Third-Party Beneficiaries; Use of Paladin's Work Product by Company.** The Company acknowledges that all information, whether written or oral, created, prepared, or compiled by Paladin in connection with this Agreement is intended solely for the benefit

and use of the Company. No other individual or entity shall be entitled to rely on such information for any purpose. Company agrees that such information shall not be reproduced, disseminated, quoted or referred to at any time or in any manner other than to the Company's board of directors, officers, employees, representatives, attorneys, and other agents who have a need to receive such information, except upon Paladin's prior written consent. Without limiting the foregoing, the Company shall not (and shall not authorize any other individual or entity to) use Paladin's name or to make available to third parties any information created, prepared, or compiled by Paladin under this Agreement for any reason, including obtaining or extending credit, offering or selling securities or other assets, or in any representations to third parties without Paladin's prior written consent. It is also expressly agreed that notwithstanding the above restrictions upon the Company's dissemination and use of information and work product, Paladin shall have no responsibility or liability relating directly or indirectly to such disclosure (whether authorized or unauthorized) by the Company concerning any information created, prepared, or compiled, in whole or in part, by Paladin pursuant to this Agreement, which may be disclosed only after prior written approval by Paladin or as required by applicable law, or regulatory or administrative process, including stock exchange rules. The foregoing provisions shall not be construed or interpreted to prohibit references to Paladin's engagement under this Agreement in required public filings or court documents.

6. **Independent Contractor Status.** Paladin is an independent contractor under this Agreement, and accordingly, this Agreement shall not be an employment agreement. No one on behalf of any Paladin Party (as defined below), nor any employees, agents, or independent contractors thereof, shall be considered to be a director, officer, member, manager, partner, control person, employee, representative, agent, or insider of the Company, unless expressly agreed to in a writing signed by Company and Paladin. As an independent contractor, Paladin will have exclusive control over the management and operation of Paladin, including hiring and paying the wages or other compensation of its personnel. Unless expressly provided otherwise in the Scope, the Paladin personnel that provide services to the Company under this Agreement may also provide services to other past, present or future Paladin companies in connection with unrelated matters. In addition, Paladin may utilize the services of its own employees or services of qualified independent contractors to perform this Agreement.

7. **No Fiduciary Relationship.** Other than with respect to a mutually agreed upon appointment(s) of a Paladin Party as an officer and/or director of Company in writing, and otherwise in accord with the provisions of this Agreement, nothing in this Agreement is intended to create, or shall be deemed or construed to create a fiduciary relationship between: (a) the Company, including without limitation, the Company's directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, agents, or creditors, on the one hand; and (b) Paladin, Paladin's affiliates, and the respective directors, officers, members, managers, partners, control persons, shareholders, employees, representatives, independent contractors, attorneys, agents, successors or assigns of Paladin or Paladin affiliates (all of the foregoing in this subpart (b) collectively, the "Paladin Parties," and each a "Paladin Party") on the other hand.

8. **Indemnity by Company; Limitation of Liability.** The Company agrees to indemnify, defend, and hold harmless Paladin and its affiliates and their respective former and present directors, officers, employees, agents and controlling persons (each such person, including Paladin, an "Indemnified Party") to the fullest extent permitted by law from and against any losses, claims, damages and liabilities, including reasonable attorneys' fees (individually and collectively, the "Damages"), to which such Indemnified Party may become subject in connection with or otherwise relating to or arising from any of the following: (i) any transaction contemplated by this letter agreement or the engagement of or performance of Services by an Indemnified Party or (ii) provision of the services; provided, that the Company will not be liable to any such Indemnified Party to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from the gross negligence or willful misconduct of the Indemnified Party seeking indemnification hereunder. The Company also agrees that no Indemnified Party will have any liability (whether direct or indirect, in tort or otherwise) to the Company or any person asserting claims on behalf of the Company arising out of or in connection with any transactions contemplated by this letter agreement or the engagement of or performance of services by any Indemnified Party thereunder except to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from the breach of contract, gross negligence or willful misconduct of the Indemnified Party.

The Company shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which an Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under this Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding or investigation or otherwise. Any such Indemnified Party hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor.

In the event that, at any time whether before or after termination of the engagement, as a result of or in connection with the Agreement or Paladin's and its personnel's role under the Agreement, Paladin or an Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written recorded or oral presentation, or Paladin or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rates.

The Company agrees not to enter into any waiver, release or settlement of any proceeding (whether or not Paladin or any other Indemnified Party is a formal party to such Proceeding) in respect of which indemnification may be sought hereunder without the prior written consent of Paladin, unless such waiver, release or settlement (i) includes an unconditional release of Paladin and each Indemnified Party from all liability arising out of such Proceeding and (ii) does not contain any factual or legal admission by or with respect to any Indemnified Party or any adverse statement with respect to the character, professionalism, expertise or reputation of any Indemnified Party or any action or inaction of any Indemnified Party.

The indemnity, reimbursement and contribution obligations of the Company hereunder will be in addition to any liability which the Company may otherwise have to any Indemnified Party and will be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company or an Indemnified Party. The provisions of this Annex will survive the modification or termination of this letter agreement.

21-00141-WLH11    Doc 334    Filed 03/11/21    Entered 03/11/21 12:35:15    Pg 5 of 6

The Company hereby agrees that no Indemnified Party shall be liable to the Company, or the Company's successors, affiliates or assigns, for damages in excess of the total amount of the fees paid to Paladin under this engagement. Without limiting the generality of the foregoing, in no event shall any Indemnified Party be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

9. **Alternative Dispute Resolution Procedure.** This Agreement will be governed by and construed in accordance with the laws of the State of Nevada, excluding that body of law pertaining to conflict of laws. Any controversy or claim arising out of or relating to this Agreement, or any breach thereof, shall be settled by arbitration seated in New York City, New York. The physical location of the arbitration hearings shall be held in Las Vegas, Nevada, unless the Parties agree otherwise. All proceedings, filings, and statements made in such arbitration shall be confidential. The arbitration shall be administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules and, with respect to discovery and the taking of evidence, the International Bar Association's Rules on the Taking of Evidence in International Arbitration (the "IBC Rules"). Notwithstanding the IBC Rules, however, the Parties shall be entitled to up to twenty-five (25) written requests for admission ("RFA's") and up to two (2) depositions, each without leave of the arbitral tribunal. The deponent's attendance may be compelled by either request to the arbitral tribunal or order from a court of competent jurisdiction. Failure by either Party to timely respond to RFA's shall be deemed an admission to such RFA's. Failure by either Party to participate in the arbitration (including failure to attend a properly scheduled deposition, conference, or hearing) shall be deemed default and consent to the immediate entry by the arbitral tribunal of an award in favor of the other Party in an amount equal to the maximum damages reasonably requested by such Party (giving all possible deference to the Parties' limited ability to prove damages in the absence of the other Party's participation). The arbitral tribunal shall immediately enter such award upon request by the participating Party. Any award granted to a Party pursuant to an arbitration in accordance with this Agreement shall be enforceable in foreign jurisdictions in the manner contemplated by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). Notwithstanding the foregoing, any Party may seek and obtain injunctive and other equitable relief from a court of competent jurisdiction to enforce the provisions of this Agreement without first seeking or obtaining any decision of the arbitral tribunal, with respect to the subject matter of this Agreement.

10. **Non-Solicitation.** For a period of six (6) months after the later of: (a) the completion of all services to be provided by Paladin under this Agreement; or (b) termination of this Agreement, the Company, including any affiliates thereof, shall not hire, retain or utilize (other than through Paladin) the services of any current or former employee of Paladin or independent contractor who provided services under this Agreement at any time. The Company agrees and acknowledges that Paladin's remedy at law for any breach of the provisions of this Section would be inadequate and that for any breach of such provisions Paladin will, in addition to such other remedies as may be available to it at law or in equity, be entitled to injunctive relief and to enforce its rights by an action for specific performance to the extent permitted by law.

11. **Company's Joint and Several Liability; Contractual Right of Setoff in Favor of Paladin.** If the Company consists of one or more individuals or entities, then the Company's obligations under this Agreement shall be joint and several obligations of each individual or entity comprising the "Company." Each such individual or entity shall execute this Agreement. Without limiting any other remedy that may be available to Paladin under this Agreement or applicable law, where the "Company" under this Agreement consists of more than one individual or entity, then Paladin shall have against each such individual or entity a right of setoff (notwithstanding any lack of mutuality) under which Paladin may set off against any claim against Paladin by any individual or entity comprising the Company group, all of the claims that Paladin may have against any or all of the individuals or other entities that comprise the Company.

12. **Attorneys' Fees and Expenses.** The Prevailing Party shall be awarded all costs and expenses, including attorneys' fees and expenses and the fees and expenses of experts, incurred by Prevailing Party to enforce this Agreement, including, but not limited to any indemnity provision of this Agreement. This obligation to pay Prevailing Party's attorneys' fees and expenses shall apply whether such fees and expenses are incurred during trial or appeal, or in arbitration, a bankruptcy case, or otherwise. If so required, Prevailing Party shall additionally be entitled to reimbursement of reasonable legal expenses associated with any required court approval of this Agreement or enforcement of provisions of this Agreement, including, but not limited to, fee applications. The Prevailing Party shall be paid for all such expenses upon presentation of the invoice for the same supported by appropriate documentation.

13. **Anti-Money Laundering.** To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that identifies each person with whom they do business. This means we must ask you for certain identifying information, including a government-issued identification number (e.g., a U.S. taxpayer identification number) and such other information or documents that we consider appropriate to verify your identity, such as certified articles of incorporation, a government-issued business license, a partnership agreement or a trust instrument.

14. **Consent; Entire Agreement.** In any instance under this Agreement where a party's consent is permitted or required to be given, such consent shall not be withheld unreasonably. This Agreement contains the entire Agreement of the parties with respect to its subject matter, and supersedes all prior agreements and understandings between the Company and Paladin with respect to such subject matter. The parties agree that all terms of their agreement and understanding are embodied in this Agreement, and as modified or supplemented from time to time, but only if such modification or supplement is both: (i) in writing, and (ii) signed by all parties.

15. **Multiple Originals.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document. This Agreement may be executed by facsimile signatures or signatures forwarded via email.