1  Gary W. Dyer, CSBA #106701
   Assistant United States Trustee
2  Benjamin Teich, CBSA #281767
3  Trial Attorney
   United States Dept. of Justice
4  920 West Riverside, Room 593
5  Spokane, WA  99201
   *Telephone (509) 353-2999*
6  *Fax (509) 353-3124*

7

8

9          **UNITED STATES BANKRUPTCY COURT**
           **EASTERN DISTRICT OF WASHINGTON**
10

11

12  In re:                          Case No. 21-00141 WLH11

13  EASTERDAY RANCHES,              [Jt. Adm with 21-00176]
    INC.,
14                                  OBJECTION TO THE DEBTORS'
15          Debtor.                 AMENDED APPLICATION TO
                                    EMPLOY DAVIS WRIGHT
16                                  TERMAINE LLP AS SPECIAL
                                    COUNSEL TO DEBTORS AND
17                                  PALADIN MANAGEMENT GROUP
18

19

20        The Acting United States Trustee Gregory Garvin (the "U.S. Trustee")

21  objects to the amended application (the "Amended Application") by Easterday

22

23  Ranches, Inc. ("Ranches" or the "Debtor") to retain Davis Wright Termaine LLP

24  ("DWT") as special counsel to the Debtor and to Paladin Management Group

25

26
27

("Paladin").

## PRELIMINARY STATEMENT

1. The Court should deny the Amended Application to retain DWT as special counsel to the Debtor in real estate matters because such work is related to "conducting the case" and to the reorganization—in which the Debtor is already represented by two law firms—and thus does not satisfy the specified special purpose standard of section 327(e). It is also not in the best interest of the estate for the Debtor to hire DWT to handle real estate matters because DWT does not possess any experience that is specific to the Debtor's real estate that would result in efficiencies for the estate and charges a premium when compared to other local counsel in the area.

2. The Court should also deny the Amended Application to retain DWT to represent Paladin and have the Debtor pay Paladin's legal fees because the DWT's joint representation of the Debtor and Paladin in responding to the investigation of Department of Justice presents disqualifying conflicts. It makes the Debtor and Paladin sufficiently adverse to one another on the subject for which DWT is to be retained. Further, it cannot be in the best interest of the estate to retain conflicted

counsel, especially not when the estate will be paying for that conflicted counsel to represent a non-debtor party.

3. DWT's proposed joint representation of the Debtor and Paladin – whereby Debtor would pay for legal services rendered to Paladin - also violates the Supreme Court's opinion in *ASARCO* as it seeks to depart from the American Rule that all litigants pay their own costs and that professionals retained in bankruptcy cases can only be paid for "services to the estate administrator." Paladin must pay for its own legal fees.

4. Should the Court approve DWT's retention pursuant to the Amended Application, at the very least, DWT's subsequent retention of a litigation support services firm needs to be disclosed in a more detailed manner and that firm must run a conflicts check and disclose its connections pursuant to Bankruptcy Rule 2014(a).

## JURISDICTION AND STANDING

5. The Court has jurisdiction to hear this Objection.

6. Pursuant to Section 586 of title 28, U.S. Code, the U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this District. 11 U.S.C. § 586. Under Section 586 and Section 307 of the Bankruptcy Code, Congress charged the U.S. Trustee with broad responsibilities in chapter 11 cases

and the standing to be heard on any issue in any case or proceeding. 11 U.S.C. § 307; *see also United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (the U.S. Trustee has "public interest standing" under Section 307, which goes beyond mere pecuniary interest).

7. Pursuant to Section 307, the U. S. Trustee has standing to be heard on this Objection. 11 U.S.C. § 307.

## **BACKGROUND**

The Bankruptcy Filings

8.  On February 1, 2021, Ranches filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. *See* 21-00141 ("Ranches Case"), Docket Entry 1.

9.  On February 8, 2021, Easterday Farms ("Farms" and collectively with Ranches, the "Debtors"), a Washington general partnership, also filed a voluntary petition for relief under chapter 11. *See* 21-00176 ("Farms Case"), Docket Entry 1.

10.  On February 8, 2021, the Court entered an order jointly administering the cases with the Ranches Case becoming the lead case. *See* Docket Entry 78.[1]

11. The Debtors continue to operate and manage their businesses and affairs as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy

---

[1] Unless otherwise specified, all docket entry citations are to the Ranches Case (21-00141).

Code.

12. On February 12, 2021, the Court entered an order extending the deadline for Ranches and Farms to file their respective schedules and statements of financial affairs to April 9, 2021. *See* Docket Entry 139.

13. On February 16, 2021, an official committee of unsecured creditors was appointed in Ranches. *See* Docket Entry 152. On February 23, 2021, an official committee of unsecured creditors was appointed in Farms. *See* Docket Entry 187.

Eve of Bankruptcy Transactions, Subpoenas, and Management Changes

14. Events leading up to the bankruptcy filings are described in the February 8, 2021, motion to have a chapter 11 trustee appointed in both the Ranches Case and the Farms Case filed by Tyson Fresh Meats, Inc. ("Tyson"). *See* Docket Entry 79. This motion was accompanied by a factual certification of Leah Anderson (the "Anderson Certification"). *See* Docket Entry 80. It was also accompanied by a factual certification of Shane Miller ("Miller Certification"). *See* Docket Entry 82.

15. According to the Miller Certification, Tyson had determined through an investigation and conversations with Cody Easterday, the previous President of Ranches, that Ranches had "billed Tyson and collected money from Tyson, for more than 200,000 head of cattle that never existed and were never delivered to Tyson." *See* Docket Entry 82.

16. According to the Anderson Certification, the Ranches Case was filed just before a state court hearing on a motion by Tyson to have a receiver appointed and for an injunction to be entered to prevent Ranches from selling a group of parcels of real estate (the "North Feedlot"). *See* Docket Entry 80.

17. The Anderson Certification further states that the North Feedlot was sold January 22, 2021 for approximately $16 million. *Id*. The net amount of proceeds from the sale were $15.1 million. *Id*. From the $15.1 million, approximately $7.0 million was disbursed to Farms and English Hay Company for feed and hay, (both entities are affiliates of Ranches); an additional approximately $4.75 million went to Farms to repay an outstanding unsecured inter-affiliate loan; and approximately $1.2 million was paid to Ranches' professionals. *Id*. This includes a payment of $625,604 to Paladin. *Id*. This means over 85% of the sale proceeds from the North Feedlot went to a Ranches' affiliate or to pay a professional employed by Ranches.

18. On January 31, 2021, following the sale and distribution of the proceeds, the Ranches' shareholders - Cody Easterday, Debby Easterday, and Karen L. Easterday (collectively, the "Easterdays") – elected a new board (the "Ranches Board").[2]

---

[2] At the time, the Easterdays were also the board of directors for Ranches. After appointing the new board members on January 29, 2021, the Easterdays resigned their board positions.

19. Also on January 31, 2021, Farms' partners – the Easterdays – transferred control of Farms to a board of directors comprised of same individuals as Ranches Board (the "Farms Board").

20. Upon information and belief, a few days before this change in management, on or around January 24, 2021, the Debtors received a subpoena from the Department of Justice (the "Ranches DOJ Subpoena").

21. Upon information and belief, on or around January 28, 2021, Paladin also received a subpoena from the Department of Justice (the "Paladin DOJ Subpoena" and collectively with the Ranches DOJ Subpoena, the "DOJ Subpoenas").

22. It seems likely that the DOJ Subpoenas relate to the allegations in Tyson's motion for a chapter 11 trustee and the events leading up to the bankruptcy filings of Ranches and Farms.

DWT's Original Retention Application

23. On February 9, 2021, the Debtors filed an application to retain DWT as special counsel (the "Original Application").[3] *See* Docket Entry 107.

---

[3] It is difficult to tell if the Original Application was for DWT to represent both Ranches and Farms or just Ranches. The Original Application refers to DWT representing "the Debtor in Possession in the above captioned estate" – using the singular "Debtor." However, the caption is in the name of Easterday Ranches, Inc. *et. al.* with a footnote providing the case number for

OBJECTION TO DEBTORS' RETENTION OF DAVIS WRIGHT TERMAINE
AS SPECIAL COUNSEL TO THE DEBTORS AND PALADIN                    Page 7

24. The Original Application states that scope of DWT's representation would be limited to: " handling government inquiries generally, and in particular with respect to a Subpoena issued by the Unites States Department of Justice ('DOJ Subpoena') and any potential investigation initiated thereby."

DWT's Amended Retention Application

25. On March 5, 2021, the Debtors filed an amended application for retention of DWT as special counsel (the "Amended Application"). *See* Docket Entry 296.

26. The Amended Application seeks to enlarge DWT's representation of the Debtors[4] to include: "certain real estate matters." *Id*. Specifically, DWT's representation of the Debtors would now include "possible sales of real property." *Id*.

27. The Amended Application also seeks to extend DWT's representation to Paladin in "responding to a DOJ subpoena." *Id*.

---

Ranches and the case number for Farms.

[4] It is again difficult to tell if DWT is representing both Debtors. The Amended Application again uses the singular "Debtor in Possession" and the phrase "in the above captioned estate." This time, the caption contains only Ranches. This would be clear, but for the fact that the Original Application indicated DWT represented both Debtors and any change regarding whether DWT represents one or both debtors is not directly addressed by the Amended Application.

OBJECTION TO DEBTORS' RETENTION OF DAVIS WRIGHT TERMAINE
AS SPECIAL COUNSEL TO THE DEBTORS AND PALADIN                    Page 8

28. Attached to the Amended Application is a "joint-representation letter" (the "Joint Representation Letter"), dated February 17, 2021, which indicates that DWT will be representing Ranches and Paladin, but not Farms *Id*.

29. The Joint Representation Letter also states that DWT understands it is "not to attempt to allocate [its] time and costs with respect to each individual Client, but to submit [its] bills as set forth by Section 327 [*sic* 330]." *Id*. This means that Ranches will be paying for DWT to represent Paladin.

30. The Joint Representation Letter further states that DWT will "retain a litigation support firm" and bill Ranches for the costs associated. *Id*. The intention to retain another firm for litigation support is not disclosed in the main body of the Amended Application – it only appears in the Joint Representation Letter.

31. The Joint Representation Letter details that DWT does not perceive "any conflicts of interest between the Clients that would preclude joint representation. Nor does it appear likely that any such conflict will arise in the future." *Id*.

32. The Joint Representation Letter also details the risks of common representation including DWT determining that: (1) DWT cannot resolve issues between Ranches and Paladin on terms compatible with each entity's best interests; (2) DWT believes that Ranches or Paladin is unable to adequately make informed

decisions regarding DWT's representation; (3) failure to complete negotiations will materially prejudice the interests of Ranches or Paladin; or (4) for any other reason DWT reasonably believes prevents it from continuing to represent Ranches or Paladin "impartially or without improper effect" on DWT's responsibilities to Ranches and Paladin. *Id*.

33. Also contained in the Joint Representation Agreement is a single mention of DWT's intention to "retain a litigation support firm and bill Easterday Ranches for the costs associated therewith."

Motion to Retain Paladin to Provide co-CROs

34. On February 11, 2021, the Debtors filed the Motion to retain Paladin to provide co-CROs and additional personnel to assist the Debtors with "various operational, administrative, and financial needs arising in connection with" the chapter 11 cases of Ranches and Farms. *See* Docket Entry 123.

Paladin's Prior Engagement by the Debtors

35. On December 23, 2020, preceding the above events, Ranches, Farms, Cody Easterday, and Karen Easterday hired Paladin as a financial advisor. *See* Docket Entry 334 (the "December 23 Paladin Engagement Letter"). The December 23 Paladin Engagement Letter states that Paladin would provide the following services to Ranches, Farms, Cody Easterday, and Karen Easterday:

- Assist the Company in cash management and cash flow forecasting processes, including the monitoring of actual cash flow versus projections;
- Assist the Company in its analysis of its liquidity outlook, debt service capacity, appropriate capital structure, and potential amounts due customers;
- Assist the Company in (i) identifying various operational, managerial, financial and strategic restructuring alternatives and (ii) understanding the business and financial impact of same;
- Assist the Company in connection with Company's communications and negotiations with other parties, including its secured lenders, significant vendors, customers etc.;
- Provide advice and recommendations with respect to other related matters as the Company or its professionals may request from time to time, as agreed to by Paladin

*Id.*

36. This scope of services indicates that Paladin was involved in the Debtors' operations well before the sale of the North Feedlot, the receipt of subpoenas from the Department of Justice, and the filing of the petitions by Ranches and Farms. However, Paladin recently filed a declaration stating that it was only involved with "assisting the Debtor with high-level analyses" and that the Paladin DOJ Subpoena seeks only "documents regarding the Debtors' finances and transactions." *See* Docket Entry 347.

## **LAW**

37. Section 327(a) of the Bankruptcy Code states that a debtor may only employ professional persons "that do not hold or represent an interest adverse to

the estate, and that are disinterested persons." 11 U.S.C. § 327(a).

38. "Section 327(e) creates a limited exception to the 'disinterested' test under § 327(a). It authorizes a debtor-in-possession to employ as 'special counsel' an attorney who may otherwise not be 'disinterested' and eligible for employment under § 327(a)." *In re Running Horse, L.L.C.*, 371 B.R. 446, 450-51 (Bankr. E.D. Cal. 2007).

39. Section 327(e) states:

> The trustee, with the court's approval, may employ, for a *specified special purpose, other than to represent the trustee in conducting the case,* an attorney that has represented the debtor, *if in the best interest of the estate*, and if such attorney does *not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.*"

11 U.S.C. § 327(e) (emphasis added).

40. As emphasized above, the language of Section 327(e) results in a 3-prong test. *Id*.

First Prong – narrow focus that is not reorganization

41. The first prong of the test is that:

> "the employment may only be authorized for a 'specified special purpose' other than 'conducting the case.' The 'special purpose' *must be unrelated to the debtor's reorganization* and must be 'explicitly defined or described in the application seeking approval of the attorney's employment.'"

*In re Running Horse, L.L.C.*, 371 B.R. 446, 451 (Bankr. E.D. Cal. 2007) (emphasis added) (*citing* 3 *Collier on Bankruptcy* (15th Ed. Rev.) 327.04[9][d] (2006). *See also In re Goldstein*, 383 B.R. 496, 501 (Bankr. C.D. Cal. 2007) ("specified special purpose" for which counsel may be retained under Section 327(e) must be "unrelated to the reorganization[.]" ); *In re Congoleum Corp.*, 426 F.3d 675, 689 (3d Cir. 2005); *In re Johnson*, 433 B.R. 626, 637 (Bankr. S.D. Tex. 2010).

42. A law firm may not be employed under Section 327(e) if it is to represent the trustee, or debtor in possession, "in conducting the case." 11 U.S.C. § 327(e). In such instance, the debtors can employ the law firm only if the firm qualifies for retention under Section 327(a) of the Code. *See In re Neumann*, 138 B.R. 683 (S.D.N.Y. 1992).

<u>Second Prong – no adverse interest</u>

43. The second and third prongs of the test are dependent upon the first prong being satisfied. The second prong requires that:

> Once the purpose for special counsel's employment is adequately and specifically defined, then the debtor must show that the proposed attorney or law firm 'does not represent or hold any interest adverse to the debtor or to the estate' with respect to the specified purpose of the proposed employment.

*In re Running Horse, L.L.C.*, 371 B.R. 446, 451 (Bankr. E.D. Cal. 2007).

44. The phrase "to hold or represent an interest adverse to the estate" is not

OBJECTION TO DEBTORS' RETENTION OF DAVIS WRIGHT TERMAINE
AS SPECIAL COUNSEL TO THE DEBTORS AND PALADIN                    Page 13

defined in the Bankruptcy Code. However, it has been interpreted by Courts to mean:

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or
>
> (2) to possess a predisposition under circumstances that render such a bias against the estate.

*Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 835 (7th Cir. 1998). *See also Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 623 (2d Cir. 1999); *In re Roberts*, 46 B.R. 815, 827 (Bankr. Utah 1985) *aff'd in part and rev'd in part on other grounds*, 75 B.R. 403 (D. Utah 1987).

45. Special counsel must "be free of the slightest personal interest" and must exhibit a "high degree of impartiality and detached judgment." *I.G. Petroleum, L.L.C. v. Fenasci (In re West Delta Oil Co.)*, 432 F.3d 347, 355 (5th Cir. 2005) (internal quotations omitted). Therefore, Courts are "sensitive to preventing conflicts of interest" when evaluating a proposed special counsel's retention and "require a painstaking analysis of the facts and precise application of precedent when inquiring into alleged conflicts." *Id*. (internal quotations omitted).

46. When considering whether special counsel represents or holds any interests adverse to the debtor or the estate, "*potential* conflicts on the subject

dispute are just as disqualifying as actual, current ones." *Buckley v. TransAmerica Inv. Corp. (In re S. Kitchens)*, 216 B.R. 819, 827 (Bankr. D. Minn. 1998) (emphasis in the original).

47. Joint defense agreements are rife with potential conflicts and are often disqualifying:

> Regardless of whom a trustee has identified as an opponent, if a past or present client of proposed counsel was involved in any way with the events that gave rise to the dispute, or could otherwise be the subject of a claim based on those events, the client has an interest adverse to the estate and disqualification results.
>
> Several courts have applied this rule in denying approval of proposed employment under § 327(e), or in disqualifying counsel after the fact of employment. *E.g., In re Mican Homes, Inc.*, 179 B.R. at 888 (client was codefendant to debtor, with some overlap of financial exposure); *In re Argus Group, Inc.*, 199 B.R. 525, 531-532 (Bankr. E.D. Pa. 1996) (client was insider in control of debtor, and was real party-in-interest to possible proceedings to oust debtor's management); *In re Ginco, Inc.*, 105 B.R. 620, 621-622 (D. Colo. 1988) (client was insider of debtor, codefendant in subject lawsuit, and "potential target for claims of corporate mismanagement" of debtor); *In re F&C Internat'l, Inc.*, 159 B.R. 220 at 222 (client was potential but unsued defendant to claims asserted by estate).

*Buckley v. TransAmerica Inv. Corp. (In re S. Kitchens)*, 216 B.R. 819, 827 (Bankr. D. Minn. 1998).

48. The underlying logic of this approach is that all professionals retained by a bankruptcy estate must "tender undivided loyalty and *provide untainted advice*

*and assistance* in furtherance of their fiduciary responsibilities." *Id.* (emphasis in the original) (*quoting In re Bolton-Emerson, Inc.*, 200 B.R. 725, 732 (D. Mass. 1996) (*quoting Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994)).[5]

49. This requirement of impartial advice is grounded in the status that professionals employed under Section 327 enjoy as officers of the court and fiduciaries. *See In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 840 (Bankr. C.D. Cal. 1991) (providing string cite of cases that professionals are officers and fiduciaries); *see also In re Consol. Bancshares, Inc.*, 785 F.2d 1249, 1256 n.7 (5th Cir. 1986); *In re Bohack Corp.*, 607 F.2d 258, 264 (2d Cir. 1979); *In re Marvel Entm't Grp.*, Civil Action No. 97-638-RRM, 1998 U.S. Dist. LEXIS 1308, at *24 (D. Del. Jan. 27, 1998). As fiduciaries, estate professionals can serve only one master. *In re Consol. Bancshares, Inc.*, 785 F.2d 1249, 1256 n.7 (5th Cir. 1986) *citing Woods v. City Nat'l Bank & Tr. Co.*, 312 U.S. 262, 268, 61 S. Ct. 493, 497 (1941).

---

[5] Professionals retained pursuant to Section 327(a) must provide the same impartial advice: . "[T]he statutory requirements of disinterestedness and no interest adverse to the estate serve the important policy of ensuring that all professionals appointed pursuant to Section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 836 (7th Cir. Wis. January 9, 1998) (internal quotations omitted).

21-00141-WLH11    Doc 410    Filed 03/18/21    Entered 03/18/21 17:35:45    Pg 16 of 29

Third Prong – best interest of the estate

50. The third prong of the test is for the Debtor to show that the retention of special counsel for the specified purpose is in the best interest of the estate. 11 U.S.C. § 327. *See also In re Running Horse, L.L.C.*, 371 B.R. 446, 451 (Bankr. E.D. Cal. 2007).

51. The Debtors have the burden of proof to show that the employment under Section 327(e) is proper and pass all three prongs of the test. *In re Running Horse,* 371 B.R. at 451 (*citing Needler v. Rendlen (In re Big Mac Marine)*, 326 B.R. 150, 154 (B.A.P. 8th Cir. 2005)); *In re Johnson*, 433 B.R. 626, 635 (Bankr. S.D. Tex. 2010).

52. "Typically, special counsel is appropriate when an attorney is employed to handle a specific legal action that is unrelated to the reorganization and the attorney is particularly suited for that action." *In re Goldstein*, 383 B.R. 496, 501 (Bankr. C.D. Cal. 2007). Often, an attorney's previous experience with the specific matter and the resulting efficiencies from that attorney continuing to represent the debtor in the matter are considered by the Court when evaluating if the retention is in the best interests of the estate. *Id*. at 501-502.

<u>Legal Fees Cannot be Shifted to the Estate</u>

53. In *ASARCO*, the Court explained that Section 330(a) allows estate professionals to be compensated only for "work done *in service of* the estate administrator."  *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 128 (2015) (emphasis in original).

54. *ASARCO* also states that the "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) *quoting Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–253 (2010)).

55. In *Boomerang Tube*, committee professionals included a term of employment indemnifying them for any legal fees that might be incurred in defending their future fee applications and sought to have this term of employment approved pursuant to Section 328(a). Fees or expenses "for services performed for the professionals" are not allowed by the Code as *ASARCO* ruled. *In re Boomerang Tube, Inc.*, 548 B.R. 69, 78 (Bankr. D. Del. 2016).

56. Through the DWT application, Paladin effectively seeks to have an analogous term of its employment approved as if it had applied to have that term

approved pursuant to Section 328(a). Similar to committee counsel in *Boomerang Tube*, Paladin seeks to have the Estate pay for its representation. It makes no difference that Paladin is seeking to have the Estate provide representation in response to a DOJ subpoena, rather than representation in a potential future fee dispute.

57. Estate professionals cannot vary by contract what the Code prohibits, and it matters not whether it is styled as a fee or expense:

> [I]t is clear that retention agreements in bankruptcy are not simply contractual matters. It is the obligation of the Bankruptcy Court to approve the terms of employment of professionals, in accordance with the provisions of the Bankruptcy Code, regardless of the terms articulated in the employment contract. Therefore, if the Court finds that a contract that the Debtor or the Committee negotiated is impermissible, the Court may not approve it or may modify it.

*Id.* at 75.

58. Although section 328 allows the Court to approve reasonable terms and conditions of employment for a professional, for the reasons articulated by the Court in *ASARCO*, Section 328(a), like Section 330(a), does not overcome the American Rule's presumption that each party will pay its own fees. *See id,* at 78.

> [T]here is no difference in the analysis between approving the defense costs as fees (because the retained professional defends its own fees) or as expenses (because the retained professional hires outside counsel to represent it). Both are subject to the American Rule and to the Supreme Court's ruling in ASARCO.

*Id.*

Full Disclosure of Connections is Required to Allow the Court to Monitor for Conflicts of Interest

59. Federal Rule of Bankruptcy Procedure 2014(a) requires both an application and a verified statement to address specified information, including "all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed. R. Bankr. P. 2014(a).

60. The disclosure required by professionals in bankruptcy cases "goes to the heart of the integrity of the bankruptcy system . . . ." *In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 236-38 (Bankr. E.D. Cal. 1988).

61. Bankruptcy Rule 2014 is also much broader than Section 327:

 [T]he requirements of Fed. R. Bankr. P. 2014 are more encompassing than those governing the disinterestedness inquiry under section 327. For while retention under section 327 is only limited by interests that are 'materially adverse,' under Rule 2014, 'all connections' that are not so remote as to be *de minimis* must be disclosed.

*In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 536 (Bankr. S.D.N.Y. 1994). "Bankruptcy Rule 2014 disclosure is not optional; it's mandatory." *In re Dickson Properties, LLC*, No. 11-18617, 2012 WL 2026760, *8 (Bankr. E.D. Va. June 5, 2012); *see also In re Granite Partners LP*, 219 B.R. 22, 44 (Bankr. S.D.N.Y. 1998)

("The trustee broke the cardinal principle of Rule 2014(a). He arrogated to himself a disclosure decision that the court must make."). The duty of disclosure is not merely critical; it is sacrosanct. *In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005).

62. The broad applicability of Rule 2014 is why Courts require transparency and fulsome disclosures from special counsel applicants and even from applicants the court determines are not "professionals" pursuant to Section 327. *In re Ferguson*, 445 B.R. 744, 756 n. 17 (Bankr. N.D. Tex. 2011) ("Even attorneys employed under Section 327(e) must make the disclosures required by Rules 2014 and 2016"); *In re Brookstone Holdings Corp.*, 592 B.R. 27, 29 (Bankr. D. Del. 2018) (highlighting the fulsome disclosures and transparency of liquidators when finding the liquidators were not "professionals").

## **<u>ARGUMENT</u>**

**I.  The Debtor's Proposed Retention of DWT to Represent the Debtor in "Real Estate Matters" Fails the First and Third Prongs of the Section 327(e) Test.**

**A. "Real estate matters" is too broad a purpose to qualify as a "specified" and "special" and it is too related to the Debtor's reorganization.**

63. Counsel retained by a debtor pursuant to Section 327(e) must only represent the estate for a "specified special purpose." DWT's original retention

application is a perfect example. DWT sought to represent the estate in respect to the Ranches DOJ Subpoena. This is narrow and specific enough to qualify as "specified" and is sufficiently distinct from "conducting the case" to qualify as "special."

64. However, DWT now seeks to be retained to represent the estate in "certain real estate matters" including "possible sales of real property." "Certain real estate matters" is the opposite of specific as no details are given as to the contours of the "matters." "Sales of real property" is more specific as it can be inferred that the sales would pertain to property owned by the Debtor, but it is still not very specific.

65. Similarly, representing the Debtor in sales of real property is not very "special" as it is likely at the heart of the Debtor's reorganization. The Debtor has not yet filed schedules, but given that the Debtor sold a piece of property pre-petition for millions of dollars, it is reasonable to conclude that the Debtor may own other valuable real estate that is a significant percentage of the Debtor's total assets.

66. DWT has not met its burden to show that representing the Debtor in "certain real estate matters" or in "sales of real property" is sufficiently "specific" an employment and that it is sufficiently unrelated to "conducting the case" to

allow such matters to be handled by special counsel.

**B. DWT's retention to handle "real estate matters" for the Debtor is not in the best interest of the estate.**

67. Even if the Court were to find that DWT's proposed retention on real estate matters is not over-broad and is not related to the Debtor's reorganization, DWT's proposed retention on this matter is still not in the best interest of the estate.

68. The Application does not disclose that DWT has any particular knowledge or experience specific to the Debtor's real estate that would result in an efficiency for the estate that would not exist if the Debtor retained a different firm to handle real estate matters. Although this is not *per se* disqualifying, it certainly does not help meet the Debtor's evidentiary burden.

69. Similarly, DWT may have extensive experience in real estate transactions, but this is far from being unique. Importantly, DWT seeks to charge hourly rates between $635/hour and $800/hour. Meanwhile, by way of example only, local general bankruptcy counsel is charging a top rate of $565/hour.[6] Even

---

[6] A quick search of local counsel's website reveals that although "real estate" is not listed as a practice area, at least one partner lists extensive real estate experience and another has extensive experience in the agricultural sector. However, no counsel was listed as having extensive agricultural land sale experience. ***Local counsel is being used solely as an example*** of what is available in the marketplace. The U.S. Trustee is not advocating for the retention of any particular law firm.

OBJECTION TO DEBTORS' RETENTION OF DAVIS WRIGHT TERMAINE
AS SPECIAL COUNSEL TO THE DEBTORS AND PALADIN                    Page 23

presuming *arguendo* that DWT has some special expertise that makes it more

qualified than local counsel to handle the Debtor's real estate matters; DWT

certainly has not met its burden to show it is in the best interest of the estate to pay

DWT a premium for representation in real estate matters.

**II. The Debtor's Proposed Retention of DWT to Represent Paladin in Responding to the Paladin DOJ Subpoena Fails the Second and Third Prongs of the Section 327(e) Test.**

**A. The Debtor's retention of DWT to represent Paladin creates a disqualifying conflict of interest that fails the second prong of the Section 327(e) test.**

70. Paladin was retained by the Debtor pre-petition to provide financial and

operational advice. During that prior engagement, the Debtor and Paladin

separately received subpoenas from the United States Department of Justice.

Therefore, the Debtor and Paladin may be averse to one another.[7]

71. At a minimum, a potential conflict of interest exists, and the source of

this conflict is the subject matter of the retention, namely the investigation by the

United States Department of Justice. The Joint Representation Agreement

expressly acknowledges that such potential conflicts of interest may arise.

72. DWT as counsel to the Debtor must be totally impartial and free to

---

[7] Based on Paladin's recent declaration, it does not believe it is currently a target in the Department of Justice investigation. *See* Docket Entry 347.

dispense its advice without any conflicts of interest. And when retaining special counsel, potential conflicts of interest are "just as disqualifying as actual current ones." *See Buckley*, 216 B.R. at 827.

73. As explained by the *Buckley* Court, it does not matter who the estate has identified as its opponent, if any present client of the proposed counsel "was involved in any way with the events that gave rise to the dispute or could otherwise be subject of a claim based on those events, [then] the client has an interest adverse to the estate and disqualification results." *Id*. This means that it does not matter that the Debtor views its opponent as the Department of Justice; if Paladin was involved in the events that gave rise to the DOJ's subpoena that would lead to the Debtor and Paladin being averse to one another. Therefore, it would be impossible for DWT to represent both the Debtor and Paladin in relation to the DOJ subpoenas because DWT could not render impartial advice and undivided loyalty to both of its clients.

74. The Debtor has not and cannot meet its burden to show that DWT would not be representing any parties adverse to the estate on the matter upon which the Debtor seeks to retain DWT – the DOJ Subpoenas.

**B. The Debtor's retention of DWT to represent Paladin creates a disqualifying conflict of interest that fails the third prong of the Section 327(e) test.**

75. It is not in the best interest of the estate to retain a professional who has divided loyalties. As discussed above, the potential conflicts of interest that arise from DWT representing both the Debtor and Paladin in relation to the DOJ Subpoenas makes it impossible for DWT to not face disqualifying conflicting fiduciary duties.

### III. Debtor's retention of DWT to represent Paladin would violate *ASARCO*.

76. The Debtor's retention of DWT to represent Paladin is also objectionable because the Debtor will be paying for Paladin's legal fees pursuant to the Joint Representation Agreement.

77. Pursuant to the American Rule, Paladin must pay for its own legal fees.

78. The Supreme Court's recent decision in *ASARCO* made it clear that a professional could only be compensated for work done "in service of the estate administrator." *ASARCO*, 576 U.S. at 128. Because Paladin is not the "estate administrator," any work performed by DWT for Paladin is by definition not done "in service of the estate administrator."

79. *ASARCO* also made it clear that legal fees cannot be shifted from one party to another without clear statutory permission.

80. Paladin is seeking a term of employment like that sought by committee

counsel in *Boomerang Tube*. In *Boomerang Tube*, committee counsel sought to have the Court, pursuant to Section 328, authorize a provision in its employment contract by which the Debtor would indemnify committee counsel for any fees committee counsel expended in defending challenges to its fees. Similarly, Paladin now appears to be seeking as a condition of its employment, that the Debtor will pay to represent it in response to a DOJ subpoena, the same as if Paladin had sought this employment term pursuant to Section 328(a).

81. Sections 328 and 330 contain no provisions allowing for the shifting of legal fees and Estate professionals cannot vary by contract what the Code prohibits, and it matters not whether it is styled as a fee or expense. *In re Boomerang Tube, Inc.*, 548 B.R. at 75.

82. Fees or expenses "for services performed for the professionals" are not allowed by the Code as *ASARCO* ruled. *In re Boomerang Tube, Inc.*, 548 B.R. at 78. As a result, even if DWT could represent Paladin despite the conflict, DWT cannot be paid by the Estate for this work.

83. Although lack of eligibility for payment pursuant to Section 330 is not *per se* a disqualification for retention, it is illogical for the Court to approve a retention when it is clear on the face of the application that the services provided will not be compensable.

1

2  **IV.  DWT Should Not be Permitted to Retain a Litigation Support**
3  **Services Firm without Additional Disclosures by the Litigation**
   **Support Service Firm Pursuant to Bankruptcy Rule 2014.**
4

5      84. If DWT retains a litigation support services firm ("LSSF"), then the

6  LSSF should be required to disclose its connections pursuant to Bankruptcy Rule

7  2014 because it will ultimately be doing work for the Debtor.

8
9      85. DWT should be required to disclose the scope of the responsibilities of

10 any LSSF hired to ensure that the LSSF is not exercising the type of judgment

11 associated with a professional that should be retained under Section 327.
12

13     86. Finally, if DWT hires a LSSF to assist it in its representation of the

14 Debtor, DWT should provide a commitment that it will not mark-up any fees paid

15 to the LSSF when it requests reimbursement from the Debtor's bankruptcy estate.
16

17                              **<u>CONCLUSION</u>**

18     87. The Debtor has not carried its burden to demonstrate that DWT can be
19
20 retained as special counsel to represent it in "real estate matters." The Debtor has

21 also failed to carry its burden to show that DWT can be retained as special counsel

22 to simultaneously represent it and its non-debtor advisor Paladin.
23

24

25

26

88. WHEREFORE, for the foregoing reasons, the U.S. Trustee respectfully requests that this Court enter an order sustaining this Objection and denying the Motion, and for such other and further relief that is deemed just and equitable.

Dated: March 18, 2021

Respectfully submitted,

GREGORY GARVIN
ACTING UNITED STATES TRUSTEE
Region 18
Gary W. Dyer
Assistant United States Trustee

By: /s/ *Benjamin Teich*
    Benjamin Teich
    Trial Attorney