Contains _____4_____ pages, including this coversheet

# Attachment A

# Deferred Payment Loan Agreement

**Complete all six steps and send to PHI Financial Services, Inc.
PHI Financial Services, Inc. will service the loan.**

PHI Financial Services, Inc.
7100 N.W. 62nd Ave., P.O. Box 1050
Johnston, IA 50131-1050
1-800-248-4030 FAX 1-515-809-3539
PHIFS@corteva.com

**Step 1: Credit Limit Requested $** 4,000,000

*(Additional information may be required, e.g. Balance Sheet)*

This Box is For Office Use Only
BCA 9/15/2016/

**Step 2: Borrower Information** — When a business entity is applying for credit of less than $250,000, it is only necessary for one of the principals to complete this section and sign below as a borrower. If the credit request is $250,000 or more, we require all principals to sign below as co-borrowers.

| Legal Name (First) Cody | (Last) Easterday | (M.I.) |
|---|---|---|
| Physical/Residential Address (No P.O. Box Except Military) 5235 N Industrial Way | | Date of Birth 05/15/1971 |
| City Pasco | State WA | Zip 99301 |
| Work Phone (509) 547-9800 | Cell Phone (509) 948-8431 | Home Phone (509) 547-9800 |
| FAX (509) 547-3690 | E-Mail Address | |
| Rep/Dealer Name QBesatling Seed LLC | Rep/Dealer ID # 7171667 | Business Partner ID 1010094126 |

**Step 3: Entity/SSN/Tax ID Information** – I am signing this Agreement as a/an:

Select One: ☐ Individual / Sole Proprietor > > > > > > > > > > > Enter SSN/Tax ID
☐ Corporation* ☐ Limited Liability Company*
☒ General Partnership* ☐ Limited Partnership* } Enter Tax ID

*Provide copy of Organizational Resolution or Partnership Agreement

**Step 4: Partnerships, Corporations and LLCs Only** – Print business legal name(s), partner/officer name(s), date of birth and SSN/Tax ID

| Business Legal Name Easterday Farms | | | Date of Incorporation/Organization 01/01/1994 | |
|---|---|---|---|---|
| Partner / Member / President's Name Debby Easterday | Date of Birth 4/14/73 | SSN/Tax ID ███ | Partner / Member / Secretary's Name | Date of Birth | SSN/Tax ID |
| Partner / Member / Vice President's Name Cody Easterday | Date of Birth 03/13/1841 | SSN/Tax ID ███ | Partner / Member / Treasurer's Name Karen Easterday | Date of Birth 12/24/43 | SSN/Tax ID ███ |

**Step 5: Primary Lender Information**

| Primary Lender Rabo Agri Finance | | | |
|---|---|---|---|
| Contact Name Jeremiah McElligott | Phone | FAX | |
| | City | State | |

**Step 6: By signing below, I/We agree to the following:**
*(See Page 2 for additional Deferred Payment Loan Agreement Terms and Conditions before signing)*

1. I have read, understand and agree to the Terms and Conditions of the Deferred Payment Loan Agreement (hereafter "Agreement").
2. PHI Financial Services, Inc. ("Lender") will initially fund the Loan and will continue to be the servicer of this Loan.
3. I agree that Lender is not the selling company and is making no representations or warranties with regard to the products or services financed under this Agreement.
4. All entities or individuals signing below are Borrowers or Co-Borrowers.
5. I agree that this Agreement is not valid until written confirmation of approval is received by me from Lender.
6. If applicable, I am authorized to enter into this Agreement by the entity for which I sign and the entity has or does hereby authorize the entering into this Agreement and the performance of its terms.
7. Communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, must be sent to PHI Financial Services, Inc. c/o Customer Service, 7100 N.W. 62nd Avenue, P.O. Box 1050, Johnston, IA 50131-1050.
8. I understand funds available for this program may be limited.

9. I hereby agree that this Agreement may be executed by me and sent by facsimile transmission of the signature page to Lender and the Agreement so received by Lender shall be deemed to be the equivalent of an original signature and shall be a fully valid and binding Agreement of mine as if executed by original signature.
10. I consent to the collection, use and disclosure by Lender of the personal information provided herein and such other contract, credit and other financial information as may be required from time to time ("Personal Information"), for the purposes set out under "My Personal Information" on Page 2.
11. USA Patriot Act – Customer Identification Program - Enacted to help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who applies for a loan. When I/we apply for a loan, Lender will ask for my/our name, address, date of birth and other information that will allow Lender to identify me/us. Lender may also ask to see my/our driver's license or other identifying documents.

I agree and authorize you and your agents to obtain, exchange or verify credit information about me from time to time and from time to time to report to any source, credit experience with me or credit information about me. I specifically authorize you to share my credit limit, balance information and loan status information with Pioneer Hi-Bred International, Inc., E.I. DuPont de Nemours and Company, Agrigenetics, Inc., and their respective affiliates and retailers and sales representatives of either company.

X /s/ W Beaton  3/11/20   X See additional signature page
Borrower (on my own behalf and as an authorized principal of each entity listed above)   Date   Co-Borrower (on my own behalf and as an authorized principal of each entity listed above)   Date
Cody Easterday

Page 1 – 2020

# Deferred Payment Loan Agreement

**Borrower/Co-Borrower** (which may be referred to hereinafter as "I" or "me") promises to pay to PHI Financial Services, Inc. ("PHI Financial" or "Lender") or its order at the address provided on this form or as changed by notice the amount owed under this Deferred Payment Loan Agreement ("Agreement") as agreed and described below.

The borrower and co-borrower, if any, separately and jointly agree to be obligated to pay all obligations arising under this Agreement. Anyone listed as a borrower or co-borrower is authorized to enter a transaction for an advance to be made on this Agreement. Any extension of new credit to any of us, or renewal of this Agreement by all or less than all of us, will not release any borrower/co-borrower from any duty to pay it.

**Products:** Advances will be made only for products or services authorized by Lender to be purchased with Deferred Payment (collectively, the "Products"). Advances for the purchase of Products will be made under this Agreement when Products are purchased, either orally or in writing, and Lender is informed (including electronically) by a company selling the Product that such a purchase has been made using Deferred Payment. Lender may at any time, without notice, change the Products that may be financed under this Agreement. Lender is not the seller of the Products, and makes no representation or warranties with regards to the Products and is a separate entity from the selling companies.

**Line of Credit:** The credit limit stated is the maximum amount of principal that can be borrowed and outstanding at any one time under this Agreement unless the limit is changed by Lender. In subsequent years, the annual maximum line of credit amount shall be the amount as set forth in the final approval letter that I receive prior to each crop year from Lender. Any repaid principal may be reborrowed up to my limit. Lender can increase or reduce the credit limit, renew the credit line or terminate this Agreement or the credit line without any notice.

Lender will make periodic advances until the Maturity Date (the December 1st of the crop year for which the Product is purchased or a later date if so notified in writing by Lender) up to the stated credit limit if the terms of this Agreement are not violated and a default has not occurred. I agree that advances will only be made for business purposes. Unless Lender notifies me in writing, this line of credit will expire after the Maturity Date. Lender may, in its sole discretion, renew the line of credit for additional years by written notice. Furthermore, any notices of pre-approval are conditional upon an approval of the line of credit for the crop year. If I am approved for a line of credit in the subsequent year, then Lender may, in its sole discretion on a case-by-case basis, add the principal and interest balance from my prior year loan to my line of credit for the subsequent year loan. If Lender so elects, then I agree that such amount shall be subject to the terms and conditions for the subsequent year line of credit, including application of interest rate in effect as of the date of rollover to the subsequent year line of credit. Interest before that day will accrue pursuant to the then current applicable terms.

**Discounts:** If all obligations are not paid on or before the Maturity Date, Lender may add to the outstanding principal balance on the day following the Maturity Date an amount equal to discounts, if any, received from the seller even if this causes the outstanding balance to exceed the credit limit.

**Return of Products Purchased:** In the event any Product is returned, Lender is authorized to receive and apply to this Agreement a payment in the amount of the credit received for the returned Product.

**My Personal Information:** I consent to the collection, use and disclosure of my Personal Information by Lender, its affiliates and subsidiaries and any third parties for the purposes of: (i) evaluating this agreement; (ii) determining my current and ongoing creditworthiness; (iii) administering and managing the requested loan; (iv) collecting delinquent amounts: and (v) for any other purposes required or permitted by law. Such collection, use and disclosure may involve parties located outside the United States. I give my express consent for PHI Financial Services, its affiliates and subsidiaries and any third parties to contact me via the cellular and/or home telephone number provided on this agreement. I understand that my consent includes, but is not limited to, consent to calls made using an automatic telephone dialing system or an artificial prerecorded voice and calls that include or introduce an advertisement or constitute telemarketing. If I provide my Social Security Number or other identifying information, I consent to its use for file administration, verifying my identity and matching credit information, and other purposes set forth above.

As part of this transaction, Lender may collect, use and disclose Personal Information about me including; company name, address, banking and credit information as well as name, phone number, email address and other contact details of natural persons within my organization and my contractors. Lender may share Personal Information with its affiliates and selected third parties around the world in order to complete the transaction and as described in our privacy statement and Global Information Privacy Policy, which can be found at https://www.corteva.com/global-privacy.html. If you wish to access, make corrections to or make other inquiries regarding your Personal Information held by Lender Services, you may write to the address on page 1 of this form, attention Credit Manager.

**Disclosures of Rates and Changes:** I agree that the interest rate to be charged on this Agreement will be determined according to the interest rate criteria and eligibility requirements for each crop year as may be determined from time to time by Lender, which may include rates under the TruChoice® Opportunity Program. Changes in the interest rate options will occur on a crop year-by-crop year basis and will be provided to me in writing in the form of letters sent during the approval process. Such notifications shall be deemed to be incorporated into the terms and conditions of this Agreement. All Products purchased prior to each crop year will be subject to the appropriate interest rate option(s) available for that crop year. My interest rate will be as indicated on the Deferred Payment Receipt(s) or Transaction Form (s) that is/are electronically, orally, or in written form transmitted to Lender or as indicated on my Deferred Payment Receipt. I hereby agree that the purchase of Products signifies my agreement to be bound by the interest rate applicable to me under that particular year's interest rate criteria. In any given year it may be possible that my originally determined interest rate may need to be adjusted, either up or down, if my circumstances later indicate qualification under different criteria. In such a case I hereby agree that the interest rate previously indicated on any earlier Deferred Payment Receipt or Transaction Form(s) and my periodic statements will be adjusted accordingly. Each year's interest rate option(s) may refer to an Index Rate. In the event that I do not otherwise qualify for any particular year's interest options or for any other reason the then current interest rate options are not applicable, I agree to pay interest at the rate of Index Rate plus three percent (3%). The Index Rate is defined as the US Prime Rate as reported in the Money Rates column of The Wall Street Journal (Midwest Edition). The Index Rate and thus the interest rate charged hereunder may be adjusted daily using the US Prime Rate on the date of the change in The Wall Street Journal. There will be no limit on the magnitude of adjustments, except as that required by law, and there will be no minimum increments of adjustment. The interest rate will commence on the date indicated on the Deferred Payment Receipt or Date on the Transaction Form. The unpaid principal amount shall bear interest computed upon the basis of a year of 360 days. The interest rate will be rounded to the nearest one hundredth of one percent. An increase in the variable rate will have the effect of increasing the final payment. The post maturity rate will be 18 percent on any unpaid balance. The variable rate and post maturity rate will never exceed the maximum permitted by law. (TEXAS RESIDENTS ONLY: The ceiling rate for this Agreement, both before and after maturity, is the indicated (weekly) ceiling rate announced by the Credit Commissioner from time to time.)

**Post Maturity Rate:** Unless otherwise prohibited by law, interest on the unpaid balance of this Agreement owing after the Maturity Date until paid in full will be increased to 18 percent per year. If this amount is greater than the maximum amount allowed by law, the interest charged shall be the maximum amount allowed by law.

**Loan Processing Fee:** Upon funding of your loan, a $10 processing fee will be assessed and advanced under the Agreement in the same manner as a Product purchase.

**Security Agreement Upon Default:** I hereby grant to Lender a security interest in all of my growing crops, inventory of crops, farm products, accounts receivable, documents and instruments, warehouse receipts, government payments, general intangibles and accounts, and all proceeds of the foregoing, whether now owned or hereafter acquired, to secure payment of my obligations hereunder, provided, however, that this security interest shall not become effective until such time as I am in default under the terms of this Agreement. Upon my default, Lender is hereby authorized to execute, if necessary, and to file on my behalf any and all documents as may be necessary to perfect such security interest. The security interest granted hereunder is not in limitation of any liens in favor of Lender that may arise by operation of law.

**Payment:** Payment of all outstanding principal and interest shall be due and payable in full on the Maturity Date.

Payments will first reduce the amount owed for charges. The remainder of each payment will first reduce accrued interest and then unpaid principal. I will receive periodic statements prior to the Maturity Date, which reflect the then-present principal and interest balance and interest rate. I hereby agree to review each statement and determine whether any inaccuracies are reflected in the statement. In the event I discover that such inaccuracies may exist, I agree to notify Lender in writing within 30 days of the statement date, informing you specifically of such inaccuracy. If I do not notify you, the statement shall be conclusively deemed to be accurate and I agree to waive any such claims in the future.

**Set Off:** Lender has the right to set off, without notice, any amount owed under this Agreement against any right I have to receive money from Lender and its affiliates or other selling companies. The right of set off applies no matter how many parties are obligated to pay this Agreement.

**Default:** Default will occur if any one or more of the following occur: 1) Failure to make full payment on time; 2) Failure to keep any other promise made in connection with this Agreement or any advance; 3) Failure to pay, or keep any other promise, on any other loan or agreement any Borrowers/Co-Borrowers have with Lender or the selling companies; 4) any other creditor attempts to collect a debt through court proceedings; 5) Borrower/Co-Borrower dies; 6) Bankruptcy of any Borrower/Co-Borrowers, whether involuntary or voluntary; 7) anything happens which causes Lender to reasonably believe that it will have difficulty collecting the amount owed.

**Other Fees, Collection Costs and Attorney Fees:** I agree that I will be liable to Lender for any additional charges reasonably expended by Lender and/or its loan servicer in responding to an instance of default, including, but not limited to, perfecting its secured position. In any event, subject to applicable law, I agree to pay all costs of collection, including reasonable attorney fees and legal expenses, if the obligation to Lender is not paid on time.

**Waiver:** Lender is not required to: 1) demand payment of amounts due (presentment); 2) obtain official certification of nonpayment (protest); 3) give notice that amounts due have not been paid (notice of dishonor); 4) give notice of intention to accelerate; or 5) give notice of acceleration. I also give up rights I may have under any valuation and appraisement laws. By waiving Lender's right to exercise any remedy upon an event of default, Lender does not waive its right to later exercise its right to any remedy based upon such default.

**Warranties, Disclaimers, and Limitations of Remedies:** In any action brought by Lender to collect the amounts due under this Agreement, I agree not to assert any affirmative defenses or claims against Lender, nor any cross claims or third-party claims against any of Lender's affiliates or selling parties based upon the Products. I AGREE THAT ANY CLAIMS I HAVE WITH RESPECT TO THE PRODUCTS SHALL BE GOVERNED BY THE TERMS OF SALE FOR THOSE PRODUCTS CONTAINED ON ANY SELLING DOCUMENTS, INVOICES, OR PRODUCT PACKAGING.

**Successors and Assigns:** Lender may sell this loan or assign this loan or participations in this loan to such third parties as Lender sees fit.

**Remedies:** If there is a default, Lender has the following cumulative remedies: 1) Lender may demand immediate payment of all amounts owed; 2) Lender may exercise its right of set off; 3) Lender may demand security for, or additional parties to be obligated to pay this Agreement; 4) Lender may refuse to make advances; 5) Lender may use any other remedy Lender has under state or federal law; and 6) Lender may enforce any security interest granted hereunder.

**Governing Laws and Venue:** The laws of the State of Iowa will govern this Agreement and collection of amounts due under it. Borrower/Co-Borrower agrees that any action regarding the Agreement and the collection of amounts due under it may be brought in Polk County, Iowa. Borrower/Co-Borrower consents to jurisdiction of such court over the Borrower/Co-Borrower and agree that service of process as provided by Iowa rules (governing state and federal courts) for nonresident persons or foreign corporations shall be sufficient.

**Amendments and Termination:** Except as may be indicated elsewhere, amendments to this Agreement may be made in one of two ways. First, I agree that Lender may send me a written notice notifying me of changes to this Agreement. I agree that any advances made after the date of such notice shall be governed by that notice, and my decision to request further advances under this Agreement after the written notice will signify my acceptance of those changes. Alternatively, as determined on a case-by-case basis by Lender, I may be requested to enter into a written amendment to this Agreement and I agree that I will have the option of entering into such a written amendment. Any alleged modification, which is not so documented by written agreement or written notice of amendment from Lender, shall not be effective as to any party, and in such case the original terms of this Agreement shall apply.

**Notice:** To the extent that written notice to me is required under the terms of this Agreement, I agree that Lender shall satisfy notice to me by sending a letter, by regular mail to me at the address shown on the reverse side of such other address known by Lender to be correct.

**WISCONSIN RESIDENTS ONLY – DEFAULT AND TERMINATION:** Default occurs if any one or more of the following occur: 1) Failure to make payment(s) on time or in the amount due; 2) Failure to do something which causes Lender to reasonably believe that Lender will have difficulty collecting the amount owed. If there is a breach of any of the affirmative covenants or a default has occurred as set forth above, Lender may refuse to make advances to me or allow purchases on credit. If my spouse terminates this Agreement under §766.565(5) Wis. Stat., Lender may declare the total unpaid balance (including unpaid interest) immediately due and payable. In the event of termination, Lender is not obligated to, but may in Lender's discretion, grant any loan payable by me under the terms of this Agreement. Termination, for whatever reason, does not affect Lender's rights, powers, and privileges, or any Borrower/Co-Borrower duties and liabilities with regard to the then outstanding balance under this Agreement. By selecting any one or more of these remedies, Lender does not give up its right to use any other remedy. By waiving Lender's right to exercise any remedy upon an event of default, Lender does not waive its right to later exercise its right to any remedy based upon such default.

**Notice to Wisconsin Residents:** If this Agreement is to be secured using other documents referring to this Agreement, I agree that I will be liable to Lender for any additional charges reasonably expended by Lender in perfecting its secured position. In any event, I agree to pay all costs of collection if I do not pay my obligation to Lender.

**NOTICE TO MARRIED WISCONSIN RESIDENTS:** No provision of marital property agreement, a unilateral statement under §.766.59 Wis. Stats., or a court decree under §.766.59 Wis. Stats., adversely affects the interest of the creditor, unless the creditor, prior to the time the credit is granted or an open-end plan is entered into, is furnished a copy of the agreement, statement or decree or has actual knowledge of the adverse provision when the obligation to the creditor is incurred.

**Notice to Illinois Residents:** 1. This Agreement shall not become effective unless and until the buyer (i.e. Borrower/Co-Borrower) has received the disclosure required pursuant to the Federal Truth in Lending Act (15 U.S.C. 1601 et seq.). 2. There will be no grace period offered to enable the Borrower/Co-Borrower to repay the principal balance of the Agreement or any singular advance without incurring interest changes.

**Notice to Missouri Residents:** Oral or unexecuted agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

**Michigan Business Purposes Affidavit:** If you are a resident of Michigan or if your primary business address is in Michigan, by signing this Application you hereby certify that you are engaged in the business of commercial farming and that all products purchased on credit or other loan proceeds otherwise made available to you under this Agreement will be used exclusively for commercial agricultural purposes. This declaration is made under penalty of perjury.

TM ,®,SM Trademarks and service marks of Dow AgroSciences, DuPont or Pioneer and their affiliated companies or their respective owners. ©2019 Corteva.

**PHI FINANCIAL SERVICES**
7100 N.W. 62nd Ave, P.O. Box 1050
Johnston, IA 50131-1050

## ADDITIONAL SIGNATURE PAGE
### for
### 2020 DEFERRED PAYMENT LOAN AGREEMENT

*"The undersigned hereby agree legally bound to all of the terms and conditions of the Deferred Payment Loan Agreement attached hereto."*

| Account Name  Easterday Farms | Tax ID# ▓▓▓▓▓ |
|---|---|

*[signature]* Gale Easterday  
Borrower (on my own behalf and as an authorized principal of each entity listed above)  
Date 3/11/20

*[signature]*  
Borrower (on my own behalf and as an authorized principal of each entity listed above)  
Debby Easterday  
Date 3/11/20

*[signature]*  
Borrower (on my own behalf and as an authorized principal of each entity listed above)  
Karen Easterday  
Date 3/11/20