So Ordered.

Dated: March 25th, 2021



Whitman L. Holt
Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re: | Chapter 11 |
| EASTERDAY RANCHES, INC., *et al*. | Lead Case No. 21-00141 (WLH) |
| Debtors.[1] | **FINAL ORDER AUTHORIZING DEBTOR EASTERDAY RANCHES, INC. TO USE CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION** |

Upon the motion (the "Motion")[2] of one of the above-captioned debtors and debtors in possession, Easterday Ranches, Inc. (the "Debtor"), under sections 361, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-3 of the United States Bankruptcy Court Eastern District of Washington Local Rules ("LBR"), for interim and final orders authorizing the Debtor to use

---

[1] The Debtors along with their case numbers are as follows: Easterday Ranches, Inc. (21-00141) and Easterday Farms, a Washington general partnership (21-00176).
[2] Capitalized terms not defined herein shall have the meanings set forth in the Motion.

**FINAL ORDER AUTHORIZING DEBTOR EASTERDAY RANCHES, INC. TO USE CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION**
DOCS_SF:105111.10 20375/002

cash collateral in which Washington Trust Bank ("Washington Trust"), CHS Capital, LLC ("CHS"), Prudential Insurance Company of America ("Prudential"), Equitable Financial Life Insurance Company f/k/a AXA Equitable Life Insurance Company ("Equitable Financial") (Washington Trust, CHS, Prudential, and Equitable Financial, collectively the "Cash Collateral Lenders"), Weyns Farms, LLC ("Weyns Farms"), Sunray Farms, LLC ("Sunray Farms"), J.R. Simplot Company ("Simplot"), and Brad Curtis Farms (Weyns Farms, Sunray Farms, Simplot, and Brad Curtis Farms, together with the Cash Collateral Lenders, together the "Cash Collateral Parties"), may assert an interest, including any funds to be advanced by Tyson Fresh Meats, Inc. ("Tyson") to the Debtor, and granting adequate protection.

The Debtor has served notice of the Motion as is appropriate under the circumstances, as required under sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rule 4001(b), and LBR 4001-3. The Office of U.S. Trustee has appointed the Official Committee of Unsecured Creditors (the "Ranches Committee") in the Debtor's case and a separate Official Committee of Unsecured Creditors in the case of Easterday Farms (the "Farms Committee" and referred to collectively with the Ranches Committee as the "Committees" and each individually, a "Committee").

An emergency interim hearing on the Motion having been held by this court on February 3, 2021 and an interim order having been entered on February 3, 2021 [ECF No. 56]. A final hearing on the Motion having been held on March 23, 2021. Upon the record made by the Debtor at such final hearing, after considering the Motion and the arguments and evidence presented, and after due deliberation and consideration and sufficient cause appearing therefor,

IT IS HEREBY FOUND, DETERMINED, ORDERED AND ADJUDGED that:

    1.    <u>Disposition</u>. The Motion [ECF No. 12] is granted on a final basis on the terms set forth herein. Any objections to the relief sought in the Motion, and

**FNAL ORDER AUTHORIZING DEBTOR EASTERDAY RANCHES, INC. TO USE CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION-2**

DOCS_SF:105111.10 20375/002

21-00141-WLH11    Doc 470    Filed 03/25/21    Entered 03/25/21 15:39:05    Pg 2 of 11

any reservations of rights with respect to such relief, that have not been previously resolved or withdrawn are overruled on the merits. This Final Order shall be valid, binding, and enforceable on all parties in interest and fully effective immediately upon entry.

2. <u>Jurisdiction and Venue</u>. This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and venue is proper. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. <u>No Waivers</u>. The Debtor makes no representation, warranty, acknowledgement or admission regarding whether it has (or does not have) any defenses, setoffs, counterclaims or recoupments that could be asserted against the Cash Collateral Parties and the Debtor reserves all rights, claims and defenses with respect thereto. In addition, the Debtor make no representation, warranty, acknowledgement or admission with respect to the enforceability, perfection, priority, avoidability or validity of the Cash Collateral Parties' respective security interests in the Debtor's assets, including cash collateral.

4. <u>Cause Shown</u>. Good cause has been shown for the entry of this Final Order.

5. <u>Business Justification</u>. The Debtor has a critical need to use cash collateral, including funds advanced by Tyson, in order to permit, among other things, preservation and maintenance of the Debtor's cattle and other assets. The Debtor's access to sufficient working capital and liquidity through the use of cash collateral is vital to maximizing the value of the Debtor's estate.

6. <u>Fair and Reasonable Terms</u>. Based on the record presented to this court at the final hearing, the terms of use of the cash collateral are fair and reasonable and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

**FNAL ORDER AUTHORIZING DEBTOR EASTERDAY RANCHES, INC. TO USE CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION-3**

DOCS_SF:105111.10 20375/002

7. Authorization to Use Cash Collateral. Subject to the terms of this Final Order, the Debtor is hereby authorized to use cash collateral, including any funds to be advanced by Tyson to the Debtor, from the date hereof through the earliest of: (i) November 14, 2021; (ii) the effective date of a confirmed plan of reorganization in this chapter 11 case, (iii) the closing of a sale of substantially all assets of the Debtor; and (iv) the date of a material breach by the Debtor under this Final Order (the "Budget Period"), or such other date as the Debtor, Washington Trust, and CHS may agree to in writing when, as and to the extent permitted under the budget attached hereto as **Exhibit 1**, or when, as and to the extent permitted by such other budget as the Debtor, Washington Trust, and CHS may agree to in writing from time to time (the "Budget"), provided that any such other budget shall be provided, at least three (3) business days before going into effect, to the other Cash Collateral Parties and each Committee.

8. Disbursements Subject to Budget. The Debtor is only authorized to use cash collateral during the Budget Period in a manner consistent with the Budget; provided that, disbursements may occur earlier or later than the dates forecasted in the Budget so long as such disbursements occur during the Budget Period, including to fund or reserve amounts necessary to pay professional fees accrued to the extent set forth in the Budget.

9. Events of Default. The following shall constitute Events of Default under this Final Order:

(i) Failure to abide by any material term, covenant or condition approved by or incorporated into this Final Order;

(ii) Termination of the automatic stay with respect to any cash collateral;

(iii) Absent the prior written approval of Washington Trust and CHS, disbursements by the Debtor for "Operating Disbursements" on an aggregate basis during the Budget Period may deviate up to 20% from the amounts specified in the Budget for each month;

(iv) The Debtor fails to maintain adequate insurance covering the collateral;

(v) Any of the collateral is converted by the Debtor, lost or stolen in any material amount due to a failure on the part of the Debtor to take reasonable precautions to protect the collateral from loss or waste, or not accounted for by the Debtor;

(vi) The Debtor fails to timely deliver any reports required hereunder;

(vii) Entry of an order converting the Debtor's case to a proceeding under Chapter 7; and

(viii) Entry of an order dismissing Debtor's Chapter 11 Case.

10. <u>Remedies Upon Default</u>. Upon the occurrence of an Event of Default, any Cash Collateral Party may immediately, without notice or demand withdraw its consent for the use of cash collateral. Nothing in this Order limits or otherwise impairs the ability of any Cash Collateral Party to seek relief from the automatic stay or other relief from the ~~C~~court.

11. <u>Reporting</u>. The Debtor shall provide to the Cash Collateral Lenders and each Committee, without limitation, the following items:

(i) Weekly, a cash flow report for all periods since the Petition Date, including a comparison of actual results to the projections set forth in the Budget; and

(ii) Any other information that the Cash Collateral Lenders reasonably request subject to appropriate confidentiality restrictions.

The Debtor further agrees to permit representatives from Washington Trust and CHS to, upon reasonable prior notice, visit any of Debtor's properties during regular business hours to review and inspect any of their prepetition collateral together with any non-privileged books and records related thereto.

12. <u>Adequate Protection</u>. The Cash Collateral Parties are entitled, pursuant to sections 361, 362(d) and 363(e) of the Bankruptcy Code, to adequate

protection of their respective interests in the Debtor's property, for and equal in amount to the aggregate diminution in the value of the Cash Collateral Parties' interests in the Debtor's property (including cash collateral) with the same validity (or invalidity), perfection (imperfection or avoidable perfection) and priority (or lack of priority) as exists as of the Petition Date (the "<u>Diminution in Value</u>") resulting from the use, sale or lease by the Debtor (or other decline in value) of the cash collateral and any other asset of the Debtor that is the subject of existing liens and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code. As adequate protection, the Cash Collateral Parties are hereby granted the following (subject to the same priorities that exist as between the Cash Collateral Parties as of the Petition Date):

 (i) a continuing security interest in and lien on all collateral of the Debtor of the same type and nature that exists as of the Petition Date with the same validity (or invalidity), perfection (imperfection or avoidable perfection) and priority (or lack of priority) as exists as of the Petition Date, including the proceeds thereof (the "<u>Replacement Lien</u>"),

 (ii) solely to the extent of any Diminution in Value, an additional and replacement security interest and lien on all property and assets of the Debtor's estate (the "<u>Adequate Protection Lien</u>"), provided however, that (a) such security interest and lien shall be junior to any existing, valid, senior, enforceable and unavoidable prior perfected security interests and liens, (b) in the event that the Debtor obtains postpetition financing in this chapter 11 case, such security interest and lien may be junior to any valid, senior, enforceable security interests and liens granted to the postpetition lenders and authorized by this court in connection with such postpetition financing, provided, however, that each of the Cash Collateral Parties and each Committee reserves its respective right to object to such financing or to the granting of any such liens, and (c) such security interest and lien shall not attach to any claims, defenses, causes of action or rights of the Debtor arising under sections 542-553 of the Bankruptcy Code and applicable state fraudulent transfer law (including all proceeds thereof), and

        (iii) solely to the extent of any Diminution in Value, to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative claim in this chapter 11 case (the "<u>Adequate Protection Claim</u>"), provided however, in the event that the Debtor obtains postpetition financing in this chapter 11 case, such administrative claim, if any, may be junior to the administrative claim granted to such postpetition lenders and authorized by this court in connection with such postpetition financing.

The Replacement Lien and any Adequate Protection Lien will be deemed to be perfected automatically upon entry of this Order, without the necessity of filing any UCC-1 financing statement, state or federal notice, mortgage, or similar instrument or document in any state or public record or office and without the necessity of taking possession or control of any collateral.

13. <u>Funding of Segregated Account for Estate Professionals</u>. The amounts set forth in the Budget for the payment of "Professional Fees – Debtor" and "Professional Fees – Committee" may be deposited by the Debtor, at the times identified in the Budget, into a segregated account of the Debtor ("<u>Segregated Account for Professionals</u>") for the intended purpose of subsequently paying such amounts on the later of (x) the due date, or (y) the date of their allowance by this court (or when otherwise authorized to be paid pursuant to a customary order of this court pursuant to section 331 of the Bankruptcy Code). The use of this fund is not limited to its stated intended purpose. For the avoidance of doubt, the amounts set forth in the Budget for the payment of estate professional fees and the amounts funded to the Segregated Account for Professionals are not, and shall not be construed to be, a cap or other limitation on the amounts that may be incurred or allowed for estate professional fees in these bankruptcy cases.

14. <u>Binding Effect; Successors and Assigns</u>. The provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in the chapter 11 case, including, without limitation, the Cash Collateral Parties, each

Committee, and the Debtor, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the Debtor's estate) and shall inure to the benefit of the Cash Collateral Parties, each Committee, and the Debtor, and their respective successors and assigns.

15. <u>Reservation of Rights</u>. The Debtor reserves all rights to seek other or additional use of cash collateral or debtor in possession financing on such further or different terms and conditions as may be approved by this court. Nothing in this Final Order may be construed as a consent to any such request by any Cash Collateral Party or each Committee, and the Cash Collateral Parties and each Committee reserve all rights to object to such requests. Further, notwithstanding the amounts set forth in the Budget or the payments made by the Debtor in accordance therewith, all rights of the Debtor, the Cash Collateral Parties, Tyson, and each Committee to challenge, contest, dispute, or seek return of such amounts or payments at a later date on any basis permitted by law or equity are in no way affected or diminished and are hereby expressly preserved, including but not limited to any rights with respect to (a) whether the amounts or payments in the Budget should be allocated to or borne by another party and (b) the propriety of any payments by the Debtor to Farms on account of feed delivered prepetition by Farms or any third party feed supplier.

16. <u>Effectiveness</u>. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of effectiveness of this Final Order as provided in such Rules.

//END OF ORDER//

**FNAL ORDER AUTHORIZING DEBTOR EASTERDAY RANCHES, INC. TO USE CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION-8**

DOCS_SF:105111.10 20375/002

Submitted by:

By /s/ Thomas A. Buford
THOMAS A. BUFORD, III (WSBA 52969)
BUSH KORNFELD LLP

RICHARD M. PACHULSKI (admitted *pro hac vice*)
JEFFREY W. DULBERG (admitted *pro hac vice*)
MAXIM B. LITVAK (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP

*Attorneys for Debtors and Debtors in Possession*

\* Change made by court

**FNAL ORDER AUTHORIZING DEBTOR EASTERDAY RANCHES, INC. TO USE CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION-9**

DOCS_SF:105111.10 20375/002

# Exhibit 1
## Budget

# Easterday Ranches
## Cash Collateral Budget
### 3/1/2021 - 6/30/2021

| ($000s) | Period #: | Projected 1 3/15/21 | Projected 2 3/31/21 | Projected 3 4/15/21 | Projected 4 4/30/21 | Projected 5 5/15/21 | Projected 6 5/31/21 | Projected 7 6/15/21 | Projected 8 6/30/21 | Projected 1 - 8 Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | |
| Tyson Advances | | $ 1,860 | $ 2,156 | $ 1,698 | $ 1,377 | $ 1,067 | $ 712 | $ 424 | $ 239 | $ 9,534 |
| | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | |
| Feed - 3rd Party (paid/consumed) | | 519 | 501 | 403 | 326 | 235 | 171 | 94 | 57 | 2,307 |
| Feed - Farms (paid/consumed) | | 1,227 | 1,184 | 952 | 770 | 556 | 403 | 223 | 135 | 5,450 |
| Salaries, Wages & Benefits | | 191 | 187 | 148 | 122 | 86 | 64 | 35 | 21 | 853 |
| Maintenance | | 74 | 61 | 58 | 40 | 34 | 21 | 13 | 7 | 307 |
| Freight | | 72 | 59 | 56 | 39 | 33 | 20 | 13 | 7 | 299 |
| Fuel/Propane | | 58 | 49 | 45 | 32 | 26 | 17 | 11 | 6 | 242 |
| Repairs | | 57 | 48 | 44 | 31 | 26 | 16 | 10 | 5 | 236 |
| Supplies | | 22 | 21 | 17 | 13 | 10 | 7 | 4 | 2 | 97 |
| North Feedlot Rent | | - | - | - | - | 87 | - | 46 | 6 | 140 |
| Utilities & Deposits | | - | 22 | - | 14 | - | 7 | - | 3 | 46 |
| Other Miscellaneous | | 18 | 28 | 14 | 18 | 8 | 10 | 3 | 3 | 103 |
| Total Operating Disbursements | | 2,238 | 2,160 | 1,738 | 1,404 | 1,102 | 735 | 453 | 253 | 10,081 |
| | | | | | | | | | | |
| **Restructuring Disbursements** | | | | | | | | | | |
| Professional Fees - Debtor | | - | 67 | 67 | 67 | 67 | 67 | 67 | 67 | 470 |
| Professional Fees - Committee | | - | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 130 |
| US Trustee & Misc. Reserve | | 24 | - | 42 | - | - | - | - | 72 | 138 |
| Total Restructuring Disbursements | | 24 | 86 | 128 | 86 | 86 | 86 | 86 | 157 | 738 |
| | | | | | | | | | | |
| **Net Cash Flow** | | $ (402) | $ (89) | $ (167) | $ (112) | $ (121) | $ (109) | $ (114) | $ (171) | $ (1,286) |
| | | | | | | | | | | |
| **Tyson Cash Roll-Forward** | | | | | | | | | | |
| Tyson Cash Beginning Balance | | $ 1,206 | $ 828 | $ 824 | $ 785 | $ 758 | $ 723 | $ 700 | $ 672 | $ 1,206 |
| Tyson Advances | | 1,860 | 2,156 | 1,698 | 1,377 | 1,067 | 712 | 424 | 239 | 9,534 |
| Tyson Bills | | (2,238) | (2,160) | (1,738) | (1,404) | (1,102) | (735) | (453) | (253) | (10,081) |
| Restructuring Draws | | - | - | - | - | - | - | - | - | - |
| Tyson Cash Ending Balance | | $ 828 | $ 824 | $ 785 | $ 758 | $ 723 | $ 700 | $ 672 | $ 658 | $ 658 |
| | | | | | | | | | | |
| **Ranches Cash Roll-Forward** | | | | | | | | | | |
| Ranches Beginning Cash | | $ 706 | $ 528 | $ 515 | $ 385 | $ 336 | $ 299 | $ 218 | $ 152 | $ 706 |
| Ranches Receipts | | 107 | 103 | 83 | 67 | 48 | 35 | 19 | 12 | 473 |
| Non-Reimbursed Expenses | | | | | | | | | | |
| D&O Insurance | | (200) | - | - | - | - | - | - | - | (200) |
| Independent Directors Fees | | (60) | (30) | - | (30) | - | (30) | - | - | (150) |
| Professional Fees - Debtor | | - | (67) | (67) | (67) | (67) | (67) | (67) | (67) | (470) |
| Professional Fees - Committee | | - | (19) | (19) | (19) | (19) | (19) | (19) | (19) | (130) |
| US Trustee Fees | | (24) | - | (42) | - | - | - | - | (72) | (138) |
| Property Taxes | | - | - | (85) | - | - | - | - | - | (85) |
| Total Non-Reimbursed Expenses | | (284) | (116) | (213) | (116) | (86) | (116) | (86) | (157) | (1,173) |
| Ranches Ending Cash | | $ 528 | $ 515 | $ 385 | $ 336 | $ 299 | $ 218 | $ 152 | $ 6 | $ 6 |