ARMAND J. KORNFELD (WSBA #17214)
THOMAS A. BUFORD (WSBA #52969)
RICHARD B. KEETON (WSBA #51537)
BUSH KORNFELD LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Tel.: (206) 292-2110
Facsimile: (206) 292-2104
Emails: jkornfeld@bskd.com,
tbuford@bskd.com, and rkeeton@bskd.com

RICHARD M. PACHULSKI (CA Bar #90073)*
IRA D. KHARASCH (CA Bar #109084)**
JEFFREY W. DULBERG (CA Bar #181200)*
JASON H. ROSELL (CA Bar #269126)*
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003
Tel: (310) 277-6910
Facsimile: (310) 201-0760
Emails: rpachulski@pszjlaw.com,
ikharasch@pszjlaw.com, jdulberg@pszjlaw.com,
and jrosell@pszjlaw.com

*Admitted *Pro Hac Vice*
** Admission *Pro Hac Vice* Pending

*Attorneys for the Chapter 11 Debtors and
Debtors in Possession*

HONORABLE WHITMAN L. HOLT

HEARING DATE: April 28, 2021
HEARING TIME: 2:00 p.m. PST
RESPONSE DUE: April 21, 2021
LOCATION: Telephonic

*(Left margin, vertical text:)* PACHULSKI STANG ZIEHL & JONES LLP ATTORNEYS AT LAW LOS ANGELES, CALIFORNIA

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| EASTERDAY RANCHES, INC., *et al.* | Lead Case No. 21-00141-11<br>Jointly Administered |
| Debtors.[1] | **NOTICE AND MOTION FOR (I) AN ORDER (A) APPROVING BID PROCEDURES FOR THE SALE OF ASSETS; (B) APPROVING** |

[1] The Debtors along with their case numbers are as follows: Easterday Ranches, Inc. (21-00141) and Easterday Farms, a Washington general partnership (21-00176).

SALE AND BID PROCEDURES MOTION – Page 1

**PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C) SCHEDULING THE AUCTION AND SALE HEARING; AND (D) GRANTING RELATED RELIEF; AND (II) AN ORDER (A) APPROVING THE SALE FREE AND CLEAR OF ALL CLAIMS, LIENS, AND ENCUMBRANCES; AND (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OR REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; MEMORANDUM OF POINTS AND AUTHORITIES**

**PLEASE TAKE NOTICE** that Easterday Ranches, Inc. and Easterday Farms, debtors and debtors in possession in the above-captioned chapter 11 cases, hereby file this notice and *Motion for (I) an Order (A) Approving Bid Procedures for the Sale of Assets; (B) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; (C) Scheduling the Auction and Sale Hearing; and (D) Granting Related Relief; and (II) an Order (A) Approving the Sale Free and Clear of All Claims, Liens, and Encumbrances; and (B) Approving the Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that this Motion is based on this Notice and Motion, the arguments of counsel, and any other admissible evidence properly brought before this Court at or before the hearing on his Motion.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion will be held on **April 28, 2021 at 2:00 p.m. (Pacific Time)** by telephone as set forth below.

//

//

SALE AND BID PROCEDURES MOTION – Page 2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**PLEASE TAKE FURTHER NOTICE** that, pursuant to court orders responding to the COVID-19 pandemic, any party that wishes to address the court, or appear without addressing the court, must appear by telephonic appearance. The telephone conference call-in number is (877) 402-9757, Access Code: 7036041.

Dated: March 26, 2021            BUSH KORNFELD LLP

_/s/ Thomas A. Buford, III_
THOMAS A. BUFORD, III (WSBA 52969)
BUSH KORNFELD LLP

RICHARD M. PACHULSKI (admitted _pro hac vice_)
IRA D. KHARASCH (admission _pro hac vice_ pending)
JEFFREY W. DULBERG (admitted _pro hac vice_)
JASON H. ROSELL (admitted _pro hac vice_)
PACHULSKI STANG ZIEHL & JONES LLP

_Attorneys for Debtors and Debtors in Possession_

SALE AND BID PROCEDURES MOTION – Page 3

ec26m9015m

Easterday Ranches, Inc. ("<u>Ranches</u>") and Easterday Farms ("<u>Farms</u>"), debtors and debtors in possession (the "<u>Debtors</u>") in the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>"), hereby move (this "<u>Motion</u>"), pursuant to sections 105(a), 363, 365, 503, 507, 1123 and 1141 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2002-1, 5005-1, 6004-1, 6006-1, 9013-1, and 9029-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Washington (the "<u>Local Rules</u>") for entry of (i) an order substantially in the proposed form attached hereto as **Exhibit A** (the "<u>Bidding Procedures Order</u>"): (a) approving the bidding procedures (the "<u>Bidding Procedures</u>")[2] in connection with the sale of real property interests and related farm equipment and other personal property (collectively, the "<u>Assets</u>") or proposals to sponsor a plan of reorganization (a "<u>Plan</u>"); (b) approving various forms and the manner of notice in connection therewith; (c) approving procedures for the assumption and assignment of executory contracts and unexpired leases (the "<u>Assumption and Assignment Procedures</u>"); (d) authorizing the Debtors to designate a stalking horse bidder and enter into a stalking horse asset purchase agreement; (e) scheduling an auction (the "<u>Auction</u>") and the date and time of the hearing to approve the sale (the "<u>Sale Hearing</u>") of the Assets and the assumption of certain liabilities of the Debtors (the "<u>Assumed Liabilities</u>"); and (f) granting related relief; and (ii) an order that will be filed prior to the Sale Hearing (the "<u>Sale Order</u>") (a) authorizing the sale of such Assets free and clear of liens, claims, encumbrances, and other interests, except as otherwise may be provided in the purchase agreements memorializing such

---

[2] Any capitalized term used but not defined herein shall have the meaning ascribed to it in the Bidding Procedures.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

a sale; (b) approving the assumption and assignment of certain executory contracts and unexpired leases related thereto; and (c) granting related relief. In support of the Motion, the Debtors respectfully represent as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

## JURISDICTION AND VENUE

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory predicates for the relief sought herein are sections 105(a), 363, 365, 503, 507, 1123 and 1141 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

## PRELIMINARY STATEMENT

To expeditiously administer these bankruptcy cases while maximizing the value of their estates, and in accordance with the Debtors' settlements of disputes with creditors Tyson Fresh Meats, Inc. ("Tyson") and Washington Trust Bank ("Washington Trust"), the Debtors are moving forward with an orderly marketing process (the "Sale Process") for the sale of the Assets (the "Sale").

Debtor Farms produces (a) feed for cattle and (b) crops, including among others, potatoes and onions. Farms' feed is primarily sold to its sister cattle business, which is owned by Ranches. The Debtors' operations span approximately 22,500 acres over multiple farms, lots/ranches, and other complexes and facilities, all of which are located in Benton County, Washington. These properties are owned, leased, or otherwise utilized, in whole or in part, by the Debtors, which interests may be subject to purported liens and encumbrances.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:336225.9 20375/001
SALE AND BID PROCEDURES MOTION – Page 5

ec26m9015m

Pursuant to that certain *Stipulation By and Between Debtors and Non-Debtor Sellers Regarding Cooperation With Respect to the Sale of Debtor and Non-Debtor Assets* between the Debtors and the non-Debtor parties thereto (the "Cooperation Agreement"), approval of which is sought by separate motion, all of the real property composing the assets – including third party ownership interests – are being marketed and may be sold together.

The Bidding Procedures described herein will provide the formal framework for the Sale Process and are designed to elicit value-maximizing bids. Among other things, the Bidding Procedures (a) set forth a timeline for the Sale Process that is reasonable and appropriate to elicit value-maximizing bids, (b) set forth the basic rules for submitting bids for the assets and a potential Auction, and (c) provide major creditor groups with consultation rights at various stages in the process. The proposed Bidding Procedures comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and, therefore, should be approved.

## **BACKGROUND**

### A. **Case Background**

On February 1, 2021 (the "Ranches Petition Date"), Ranches filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code before this court.

On February 8, 2021 (the "Farms Petition Date", together with the Ranches Petition Date, the "Petition Dates"), Farms also filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code before this court.

The Debtors continue to operate and manage their business and affairs as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

On February 16, 2021, the Office of the United States Trustee (the "U.S. Trustee") appointed the following creditors to the Ranches Official Committee of Unsecured Creditors, as amended [Docket Nos. 152, 154, and 155] (the "Ranches

DOCS_LA:336225.9 20375/001
SALE AND BID PROCEDURES MOTION – Page 6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Committee"): (i) J.R. Simplot; (ii) Alto Nutrients; and (iii) Animal Health International.

On February 22, the U.S. Trustee appointed the following creditors to the Farms Official Committee of Unsecured Creditors, as amended [Docket Nos. 187, and 188] (the "Farms Committee" and together with the Ranches Committee, the "Committees"): (i) Labor Plus Solutions, Inc.; (ii) The McGregor Company; (iii) John Deer Financial; (iv) Dykman Electrical Inc.; (v) Two Rivers Terminal; and (vi) Frank Bushman.

Additional information about the Debtors' historical business operations, capital structure, and the events leading up to the commencement of these Chapter 11 Cases, is set forth in the *Declaration of T. Scott Avila in Support of First Day Motions* [Docket No. 93], which is incorporated herein by reference.

## B. Case Milestones

On February 25, 2021, Ranches filed that certain *Notice and Motion of Debtor Easterday Ranches, Inc. for the Entry of an Order Authorizing and Approving Settlement Term Sheet with Tyson Fresh Meats, Inc.* [Docket No. 216] (the "Tyson Settlement Motion"), which requested court approval of, *inter alia*, the imposition of certain case milestones on Ranches, including that Ranches must file a motion for approval of sale procedures related to a sale of all or substantially all of Ranches' real estate assets no later than March 26, 2021 (the "Bidding Procedures Motion Deadline") and receive court approval of the same not later than 45 days after the date of filing such a motion (the "Bidding Procedures Approval Deadline").

On March 2, 2021, Farms and Washington Trust Bank entered into and filed that certain *Stipulation by and Between Debtor Easterday Farms and Washington Trust Bank (I) Resolving Motion to Appoint Trustee Filed by Washington Trust Bank and (II) Imposing Certain Milestones* [Docket No. 242] (the "WTB Stipulation"),

ec26m9015m

which imposed certain of the case milestones discussed above on Farms, including the Bidding Procedures Motion Deadline and the Bidding Procedures Approval Deadline.

On March 4, 2021, the Court entered an order [Docket No. 265] approving the Tyson Settlement Motion (the "Tyson Settlement") and an order [Docket No. 266] approving the WTB Stipulation. This Motion is being filed in accordance with the Bidding Procedures Motion Deadline.

## C. The Assets to Be Sold

As discussed above, the Debtors' operations span approximately 22,500 acres over multiple farms, lots/ranches, and other complexes and facilities, which are generally referred to by their common names: (i) Goose Gap Farm, (ii) River Farm, (iii) Nine Canyon Farm, (iv) Cox Farm, and (v) a storage complex on River Farm (collectively, the "Properties"). The Properties consist of approximately 81 parcels, all of which are located in Benton County, Washington. The Properties are owned, leased, or otherwise utilized, in whole or in part, by the Debtors, which interests may be subject to purported liens and encumbrances. As noted above, pursuant to the Cooperation Agreement, approval of which is being sought by separate motion, all of the Properties, including third party ownership interests in such Properties, are being marketed to be sold together, along with related farm equipment and other personal property. A more detailed description of the Properties follows:

**i. The Goose Gap Farm.** Goose Gap Farm comprises approximately 6,300 acres, and includes, among other things, pivot irrigated farmland, dry pasture land, and a pump house. Goose Gap Farm also includes additional leasehold acreage.

**ii. The River Farm.** River Farm comprises approximately 5,800 acres and includes, among other things, an approximately 8,400 square foot shop, storage facilities with an approximate capacity of 95,000 bushels of grain, and three manufactured homes. River Farm also includes additional leasehold acreage.

DOCS_LA:336225.9 20375/001
SALE AND BID PROCEDURES MOTION – Page 8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**iii. The Nine Canyon Farm.** Nine Canyon Farm comprises approximately 3,000 acres, and includes, among other things, a grape vineyard, cherry orchard, 40,000 square feet of storage facilities, including facilities suitable to hold 5,000 tons of potatoes, four manufactured homes, and a mobile home park with six mobile homes.

**iv. The Cox Farm.** Cox Farm comprises approximately 7,500 acres, and includes, among other things, feedlot facilities capable of housing and feeding approximately 35,000 head of cattle, pivot irrigated farmland, a 4,300 square foot horse barn, and a 2,500 square foot residence. Cox also includes additional leasehold acreage, a steel dry commodity and hay storage shed, and nearly 67,000 square feet of storage facilities, including facilities to store over 5,200 tons of onions, 175,000 bushels of dry grain, 30,000 tons of high moisture corn, as well as an additional 30,000 tons of silage storage.

**D.**    **The Marketing Process**

The Debtors, with the assistance of their co-Chief Restructuring Officers, are in the process of investigating their restructuring options in order to maximize the value of the Debtors' estates. In this regard, the Debtors desire to continue a robust marketing process begun prior to the Petition Dates, in which they engaged Root Realty LLC, d/b/a Root Agricultural Advisory ("Root") as their broker to market and potentially sell the Properties.

In late December 2020, Root began reaching out to its expansive network of brokers, landowners, and operators in the western United States who may be interested in acquiring some or all of the Properties, preparing marketing information for the Properties, and entering into appropriate nondisclosure agreements with potential purchasers to provide additional information regarding the Properties.

DOCS_LA:336225.9 20375/001

SALE AND BID PROCEDURES MOTION – Page 9

ec26m9015m

As of the date of this Motion, Root has made significant progress in marketing the Properties. In this regard, Root's professionals have become well acquainted with the Properties, toured the Properties, established a data room for interested parties, created marketing materials to be provided to potential buyers, and distributed "teaser" emails to potential buyers. Furthermore, the Debtors have received signed nondisclosure agreements from 128 parties, nine of which have indicated intent to submit offers on some or all of the Assets.

Additionally, in order to facilitate bidding and streamline due diligence and the Sale Process, the Debtors have undertaken to obtain certain inspections, environmental studies, and property surveys and to make them available to all potential bidders in the data room. The Debtors anticipate that most of these due diligence items, except for property surveys, will be obtained and made available to potential bidders by approximately April 20, *i.e.*, prior to the anticipated hearing on this Motion.

By this Motion, the Debtors seek approval of bidding procedures that will facilitate efforts to identify a purchaser of the Assets. Concurrent with the sale process, the Debtors intend to operate their business in the ordinary course of business and maximize the value of their assets for the benefit of all stakeholders.

## **RELIEF REQUESTED**

### A. **Bidding Procedures Order**

By this Motion, the Debtors seek the entry of the Bidding Procedures Order: (i) approving the Bidding Procedures; (ii) approving various forms and the manner of notice thereof; (iii) establishing the Assumption and Assignment Procedures; and (iv) scheduling the Auction and Sale Hearing.

Additionally, by this Motion, the Debtors further request that, at the Sale Hearing, the Court enter an order approving the sale of the Assets.

DOCS_LA:336225.9 20375/001
SALE AND BID PROCEDURES MOTION – Page 10

ec26m9015m

## B. The Bidding Procedures

To maximize the value of the Assets for the benefit of the Debtors' estates and creditors, the Debtors seek to implement a competitive bidding process. As described more fully in the Bidding Procedures, the Debtors seek approval to sell the Assets to a Qualified Bidder or Bidders that makes the highest or otherwise best offer for the Assets including, without limitation, any offer to act as a sponsor for a plan of reorganization. The Debtors request that competing bids for the Assets be governed by the Bidding Procedures, including the submission of any Stalking Horse Bids (as defined below), which, among other things, collectively establish:

    a. the requirements that a Potential Bidder (other than a Stalking Horse Bidder) must satisfy to be entitled to participate in the bidding process and become a Qualified Bidder [Bidding Procedures at § 3];

    b. the requirements for Qualified Bidders to submit bids and the method and criteria by which such bids become Qualified Bids [Bidding Procedures at §§ 4 and 6];

    c. the deadline by which bids must be submitted [Bidding Procedures at § 4(a)];

    d. the procedures for conducting the Auction [Bidding Procedures at § 9];

    e. the assumption and assignment procedures for executory contracts and unexpired leases [Bidding Procedures Order at ¶¶ 19-22]; and

    f. various other matters relating to the sale process generally, the Sale Hearing, due diligence, and designation of a Backup Bidder [Bidding Procedures at §§ 5, 10, 15, 17].

In addition, the Debtors seek authority, subject to the terms of the Bidding Procedures Order, to accept a stalking horse bid from a Potential Bidder (the "Stalking Horse Bid") and enter into a purchase agreement (the "Stalking Horse APA") with

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

such Potential Bidder (the "Stalking Horse Bidder") in the Debtors' business judgment in consultation with the Committees (collectively with the parties identified in the Bidding Procedures, the "Consultation Parties"). To facilitate a competitive, value-maximizing sale transaction, by this Motion, the Debtors reserve the right to seek approval of, in the exercise of their business judgment, a breakup fee and expense reimbursement ("Bid Protections") for any Stalking Horse Bidder in accordance with the terms of any Stalking Horse APA.

The Debtors have begun to entertain proposals to be a Stalking Horse Bidder, and anticipate that if they select a Stalking Horse Bidder, they will do so no later than late April or early May, in consultation with the Consultation Parties, after the initial key due diligence items are in the data room. To the extent the Debtors designate a Stalking Horse Bidder, the Debtors shall file a motion for an expedited hearing for approval of Bid Protections and to fix dates and deadlines (the "Stalking Horse Bidder Motion"). The Stalking Horse Bidder Motion, if filed, shall include a copy of the Stalking Horse Bidder's Qualified Bidder APA, and shall include modifications to the bidding and auction procedures necessary to account for the Stalking Horse Bid. The Debtors will request that the Court set a hearing on shortened time, within eight (8) days of filing of the Stalking Horse Bidder Motion and to set a deadline for objections thereto within seven (7) days of service of such motion.

Alternatively, if the Debtors elect to proceed without a Stalking Horse Bidder, the Debtors will instead file a notice of their intent to proceed by "naked" auction with the Bankruptcy Court (the "No Stalking Horse Bidder Notice"). If the Debtors file a No Stalking Horse Bidder Notice, the Court will conduct a hearing to address any modifications to the bidding and auction procedures and set dates and deadlines in accordance therewith.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Debtors will select the highest or otherwise best Qualified Bid for one or more individual Assets or all or substantially all of the Assets (the "Baseline Bid") upon consultation with the Consultation Parties. In no event shall any Qualified Bidder, other than a Stalking Horse Purchaser be entitled to any Bid Protections.

The Bidding Procedures contain the following provisions, which are more fully described in the Bidding Procedures and the Bidding Procedures Order:[3]

    a. **Key Dates and Deadlines**. The following table sets forth the proposed key dates and deadlines:

| Event | Proposed Deadlines | Illustrative Dates[4] |
|---|---|---|
| Hearing on any Stalking Horse or Bid Protections Objections (if any) or, alternatively, to set dates and deadlines for a naked auction process (subject to Court availability) | Eight (8) days after the Stalking Horse Bidder Motion or No Stalking Horse Notice, as applicable, is filed | May 17, 2021 |
| Deadline to File Notice of Intent to Assume and Assign Transferred Contracts and Proposed Cure Amounts | Three (3) days after entry of Court's order approving the Stalking Horse Bidder Motion (the "Stalking Horse Bidder Approval Order") | May 20, 2021 |
| Deadline to File and Serve Sale Notice | Four (4) days after entry of the Stalking Horse Approval Order | May 21, 2021 |

---

[3] These provisions are excerpted from the Bidding Procedures. However, to the extent of any inconsistencies between this summary and the Bidding Procedures, the Bidding Procedures shall govern.

[4] These dates are illustrative and assume that the Debtors select a Stalking Horse Bid on May 9, 2021.

DOCS_LA:336225.9 20375/001
SALE AND BID PROCEDURES MOTION – Page 13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

| Event | Proposed Deadlines | Illustrative Dates[4] |
|---|---|---|
| Deadline to Submit Bids | Fifteen (15) days after entry of the Stalking Horse Bidder Approval Order, at 4:00 p.m. (Pacific Time) | May 28, 2021 |
| Deadline to File Objections to Cure Amounts | Twelve (12) days after the filing and service of the Assumption and Assignment/Cure Notice, at 4:00 p.m. (Pacific Time) | May 28, 2021 |
| Deadline for Debtors to Notify Bidders of Status as Qualified Bidders | Four (4) business days after the Bid Deadline, at 5:00 p.m. (Pacific Time) | June 1, 2021 |
| Auction (if necessary) | Fourteen (14) days after the Bid Deadline, at 10:00 a.m. (Pacific Time) | June 15, 2021 |
| Deadline to File Notice of (a) Successful Bid and Backup Bid and (b) Identity of Successful Bidder and Backup Bidder | One day following conclusion of the Auction | |
| Deadline to File (a) Objections to Sale and (b) Objections to Assumption and Assignment of Contracts | July 8, 2021 at 4:00 p.m. (Pacific Time) | |
| Reply Deadline | July 13, 2021 at 4:00 p.m. (Pacific Time) | |

DOCS_LA:336225.9 20375/001

SALE AND BID PROCEDURES MOTION – Page 14

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Event | Proposed Deadlines | Illustrative Dates[4] |
|---|---|---|
| Sale Hearing Date | July 15, 2021 | |

b. **Provisions Governing Qualification of Bidders.** To participate in the bidding process or otherwise be considered for any purpose under the Bidding Procedures, a person or entity interested in consummating a Sale (a "Potential Bidder") must deliver or have previously delivered to the Debtors, if determined to be necessary by the Debtors in their sole discretion, the following documents: (a) an executed confidentiality agreement on terms acceptable to the Debtors (a "Confidentiality Agreement"), to the extent not already executed; (b) identification of the Potential Bidder and any of the principals, corporate officers, or other representatives that are authorized to appear for and act on behalf of the Potential Bidder with respect to the contemplated transaction; and (c) unless publicly available in a filing under applicable securities laws or regulations, current audited and latest unaudited financial statements (the "Financials") of the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors and their advisors, and (y) a written commitment acceptable to the Debtors and their advisors of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the Sale), the adequacy of which will be assessed by the Debtors.

c. **Provisions Governing Joint Bid Discussions.** If a Potential Bidder is interested in engaging in discussions with a third party concerning a potential joint Bid ("Joint Bid") for the purchase of Assets, such Potential Bidder shall, prior to engaging in such discussions, (a) complete and submit a form to be supplied by Root requesting the Debtors' consent to engage in such discussions and identifying the third party(ies), and (b) receive the Debtors' written consent to engage in such discussions (the "Joint Bid Discussion Protocol").

d. **Provisions Governing Tenant Farmer Discussions.** If a Potential Bidder is interested in engaging in discussions with a third party tenant farmer *solely* in connection with a potential lease with such third party,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

such Potential Bidder shall, prior to engaging in such discussions, (a) complete and submit a form to be supplied by Root identifying the third party tenant farmer(s) and confirming that such third party tenant farmer(s) has/have executed a Confidentiality Agreement and (b) provide the Debtors with 72 hours' notice to object to such discussions in writing (the "Tenant Farmer Discussion Protocol" and together with the Joint Bid Discussion Protocol, the "Third Party Discussion Protocols"). To the extent the Debtors do not object in writing within 72 hours, such discussions may proceed.

e. **Stalking Horse and Bid Protections**. The Debtors, in consultation with the Consultation Parties, may identify the bid of a party to serve as a stalking horse bid (the "Stalking Horse Bidder"). The Debtors may, in consultation with the Consultation Parties, identify more than one Stalking Horse Bidder with respect to separate individual Assets. Pursuant to the Bidding Procedures Order, the Debtors are authorized, but not obligated, in the exercise of their business judgment, in consultation with the Consultation Parties, to provide the Stalking Horse Bidder with Bid Protections, subject to further Court approval.

To the extent a determination is made to select a Stalking Horse Bidder (or more than one Stalking Horse Bidders with respect to individual Assets), the Debtors will file an expedited motion seeking approval of Bid Protections and fixing of related deadlines (the "Stalking Horse Bidder Motion"). A hearing will be conducted on the Stalking Horse Bidder Motion (the "Stalking Horse Bidder Hearing") on the date that is eight (8) days after the Stalking Horse Bidder Motion is filed, subject to Court availability. To the extent that any party in interest objects to the proposed Stalking Horse Bidder(s) and any Bid Protections provided thereto, such party must file an objection, in writing, with the Court at least **one (1) day before the Stalking Horse Bidder Hearing at 4:00 p.m. (Pacific Time)**.

f. **Provisions Governing Qualified Bids**. A "Qualified Bidder" is a Potential Bidder who satisfies the Bidding Procedures and whose Financials, the Financials of its equity holder(s), or written commitments, as applicable, demonstrate (in the Debtors' sole and absolute discretion) the financial capability to consummate the Sale, whose Bid is a Qualified Bid, and that the Debtors determine should be considered a Qualified

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

Bidder, in consultation with the Consultation Parties. No later than **four (4) business days after the Bid Deadline at 5:00 p.m. (Pacific Time)**, the Debtors will notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder and shall provide counsel to the Consultation Parties copies of each Qualified Bid (unless a Consultation Party is a Qualified Bidder or participates in a Qualified Bid with respect to an active Bid).

Creditors who have a valid, unavoidable and perfected lien on any assets of the Debtors' estates ("Secured Creditor(s)") shall be deemed Qualified Bidders under and in connection with the bidding procedures and may credit bid all or any portion of the Debtors' obligations in accordance with 11 U.S.C. § 363(k); and (b) any credit bid made by a Secured Creditor (or any designee) by the Bid Deadline is, and will be deemed to be, a Qualified Bid in each instance for all purposes under and in connection with the Bidding Procedures, *provided, however*, that nothing herein constitutes a waiver of the estates' rights to challenge the liens and claims of Secured Creditors.

A proposal, solicitation, or offer for a purchase and sale of one or more individual Assets or all or substantially all of the Assets or for an alternative acquisition transaction (including a chapter 11 plan) (each, a "Bid") by a bidder that is submitted in writing and satisfies each of the following requirements (the "Bid Requirements") as determined by the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, shall constitute a "Qualified Bid":

 i. **Assets**. Each Bid must clearly state which assets and liabilities of the Debtors that the Qualified Bidders are agreeing to purchase and assume.

 ii. **Purchase Price.** Each Bid must clearly set forth the purchase price in U.S. dollars to be paid for each individual Asset subject to the applicable asset package, including and identifying separately any cash and non-cash components (the "Purchase Price").

 iii. **Deposit.** On or before the Bid Deadline, each Bid, other than a credit bid, must be accompanied by a cash deposit in the amount equal to 10 percent (10%) of the aggregate cash and non-cash

DOCS_LA:336225.9 20375/001
SALE AND BID PROCEDURES MOTION – Page 17

ec26m9015m

Purchase Price of the Bid, to be held together with other bidders' cash deposits in a non-interest-bearing account to be identified and established by the Debtors (the "<u>Deposit</u>").

iv. **Assumption of Obligations.** Each Bid must clearly state which liabilities the Qualified Bidder is agreeing to assume.

v. **Qualified Bid Documents.** Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid (including the chapter 11 plan to the extent required by the terms of the Bid) and shall include a schedule of assumed contracts to the extent applicable to the Bid, as well as all other material documents integral to such Bid (the "<u>Qualified Bid Documents</u>"). Such documents must be based on and marked against form documents provided by the Debtors (including a summary of each Bid as may be reasonably requested by the Debtors). Any modifications to the form of documents provided by the Debtors must be in form and substance acceptable to the Debtors, in consultation with the Consultation Parties.

vi. **Committed Financing.** To the extent that a Bid is not accompanied by evidence of the Qualified Bidder's capacity to consummate the sale set forth in its Bid with cash on hand, each Bid must include unconditional committed financing from a reputable financing institution documented to the satisfaction of the Debtors that demonstrates that the Qualified Bidder has: (i) received sufficient debt and/or equity funding commitments to satisfy the Qualified Bidder's Purchase Price and other obligations under its Bid; and (ii) adequate working capital financing or resources to finance going concern operations for the Assets and the proposed transactions. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors.

vii. **Contingencies.** A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

outcome or review of due diligence (other than for any surveys that have not yet been obtained by the Bid Deadline with respect to real property that is included in such Bid), but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall be acceptable to the Debtors in their business judgment, in consultation with the Consultation Parties.

viii. **Identity.** Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Qualified Bidder if such Qualified Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such Bid), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific persons, including financial advisors and counsel, if any, that the Debtors' advisors should contact regarding such Bid.

ix. **Demonstrated Financial Capacity.** A Qualified Bidder must have, in the Debtors' business judgment, the necessary financial capacity to consummate the proposed transactions required by its Bid and provide adequate assurance of future performance under all contracts proposed to be assumed by such Bid.

x. **Time Frame for Closing.** A Bid by a Qualified Bidder must be reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors, in consultation with the Consultation Parties.

xi. **Binding and Irrevocable.** A Qualified Bidder's Bid shall be binding and irrevocable unless and until the Debtors accept a higher Bid for such Asset and such Qualified Bidder is not selected as the Backup Bidder.

xii. **Expenses and Disclaimer of Fees.** Each Bid must disclaim any

DOCS_LA:336225.9 20375/001
SALE AND BID PROCEDURES MOTION – Page 19

ec26m9015m

right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Qualified Bidder will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; *provided*, *however*, that the Debtors may identify a stalking horse bidder pursuant to the Bidding Procedures.

xiii. **Authorization.** Each Bid must contain evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

xiv. **Completed Diligence.** Each Bid must include a written acknowledgement and representation that the Qualified Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, other than of any surveys that have not yet been obtained by the Bid Deadline with respect to real property that is included in such Bid; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the bidder's Bid.

xv. **Adherence to Bidding Procedures.** By submitting its Bid, each Bidder shall be deemed to have agreed to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

xvi. **Regulatory Approvals and Covenants.** A Bid must set forth

DOCS_LA:336225.9 20375/001
SALE AND BID PROCEDURES MOTION – Page 20

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

each regulatory and third-party approval required for the Qualified Bidder to consummate the Sale, if any, and the time period within which the Qualified Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the asset purchase agreement, those actions the Qualified Bidder will take to ensure receipt of such approvals as promptly as possible).

xvii. **Consent to Jurisdiction.** The Qualified Bidder shall be deemed to have submitted to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of bids, the Auction, the construction and enforcement of these Bidding Procedures, the Sale documents, and the Closing, as applicable.

xviii. **Joint Bids.** Joint Bids are permitted, provided that the Qualified Bidders have complied with the Joint Bid Discussion Protocol.

g. **Right to Credit Bid**. Any Secured Creditor with the right and power to credit bid claims secured by their liens, shall have the right to credit bid all or a portion of such Secured Creditor's secured claims within the meaning of section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its secured claim only with respect to the collateral by which such Secured Creditor is secured.

h. **Cancellation of Auction.** If the Debtors do not receive a Stalking Horse Bid or other Qualified Bid by the Bid Deadline, then the Debtors may file a notice cancelling the Auction.

i. **Auction**. If the Debtors receive a Qualified Bid for an Asset, whether through a Bid for one or more individual Assets or through a Bid for all or substantially all of the Assets (including through a chapter 11 plan of reorganization), the Debtors will conduct the Auction to determine the Successful Bidders with respect to such Asset or Assets, as applicable. If the Debtors do not receive a Qualified Bid for a given Asset, the Debtors will not conduct the Auction as to such Asset. To the extent Qualified Bidders are interested in separate individual Assets and/or all or

DOCS_LA:336225.9 20375/001
SALE AND BID PROCEDURES MOTION – Page 21

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

substantially all of the Assets, the Debtors may, in their sole discretion, conduct separate auctions for the various Assets and Asset packages.

No later than the commencement of the Auction, the Debtors shall notify each Qualified Bidder of the highest or otherwise best Qualified Bid or combination of Qualified Bids for each Asset or Assets, for which such Qualified Bidder submitted a Bid or combination of Bids, as determined in the Debtors' reasonable business judgment, in consultation with the Consultation Parties (the "Baseline Bid"), and provide copies of the applicable Qualified Bid Documents supporting the applicable Baseline Bid to each Qualified Bidder and the Consultation Parties. The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtors reasonably deem, in consultation with the Consultation Parties, relevant to the value of the Qualified Bid to the Debtors' estates, including, but not limited to: (a) the amount and nature of the total consideration (including the amount of cash paid to or remaining in the estate pursuant to the Bid); (b) the likelihood of the Qualified Bidder's ability to close the Sale and the timing thereof; (c) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; (d) any reduction in claims against one or both of the Debtors as a result of the Qualified Bid; and (e) the tax consequences of such Qualified Bid (collectively, the "Bid Assessment Criteria").

The Auction shall take place on no later than **fifteen (15) days after the Bid Deadline at 10:00 a.m. (Pacific Time)** *via* videoconference, or such later date and time, and by such other means, as selected by the Debtors in consultation with the Consultation Parties. The Auction shall be conducted in a timely fashion according to the Bidding Procedures.

j. **Provisions Governing the Auction**. The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of each Baseline Bid. All incremental Bids made thereafter for a given Asset shall be Overbids and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Bids on such Asset. The Debtors shall maintain a written

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:336225.9 20375/001
SALE AND BID PROCEDURES MOTION – Page 22

ec26m9015m

transcript of all Bids made and announced at the Auction, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

Only Qualified Bidders and their legal and financial advisors, and the members of and advisors to the Consultation Parties, and each such parties' respective legal and financial advisors, shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person and may speak or Bid themselves or through duly authorized representatives. Only Qualified Bidders shall be entitled to Bid at the Auction.

k. **Terms of Overbid**. "<u>Overbid</u>" means any Bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid. Each applicable Overbid must comply with the following conditions:

　　　i. **<u>Minimum Initial Overbid</u>**. Bidding shall commence at the Baseline Bid. The first overbid at the Auction (the "<u>Minimum Initial Overbid</u>") shall be in an amount not less than (i) the amount of the Baseline Bid plus (ii) the Bid Protections (if any) plus (iii) an additional increment in an amount to be determined by the Debtors in consultation with the Consultation Parties (the "<u>Initial Overbid Amount</u>").

　　　ii. **<u>Minimum Overbid Increment</u>**. Any Overbid following the Minimum Initial Overbid or following any subsequent Prevailing Highest Bid (as defined below) for all or substantially all of the Assets shall be in increments in such amounts to be determined by the Debtors in consultation with the Consultation Parties. The Debtors may establish different overbid increments at the Auction for any individual Asset or other combination of Assets, as determined by the Debtors in the exercise of their business judgment, in consultation with the Consultation Parties.

　　　iii. **<u>Conclusion of Each Overbid Round</u>**. Upon the solicitation of each round of applicable Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, extend from time to time, the "<u>Overbid Round</u>

DOCS_LA:336225.9 20375/001
SALE AND BID PROCEDURES MOTION – Page 23

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

Deadline") by which time any Overbids must be submitted to the Debtors.

Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors have identified, after consultation with the Consultation Parties, an Overbid as being higher or otherwise better than the Baseline Bid, in the initial Overbid round, or, in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "Prevailing Highest Bid"). The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors (after consultation with the Consultation Parties) to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

iv. **Overbid Alterations.** An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Bid or Overbid, as determined in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, but shall otherwise comply with the terms of these Bidding Procedures.

l. **Closing the Auction.** The Auction shall continue until there is only one Bid that the Debtors determine, in their reasonable business judgment, and in consultation with the Consultation Parties, to be the highest or otherwise best Bid for such Asset. Such Bid shall be declared the "Successful Bid," and such Qualified Bidder, the "Successful Bidder" and at which point the Auction will be closed as to that Asset. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

The Debtors shall not consider any Bids or Overbids submitted after the conclusion of the Auction, and any such Bids or Overbids shall be

DOCS_LA:336225.9 20375/001

SALE AND BID PROCEDURES MOTION – Page 24

deemed untimely and shall under no circumstances constitute a Qualified Bid.

As soon as reasonably practicable after closing the Auction, the Debtors shall cause the Qualified Bid Documents for each Successful Bid and Backup Bid (defined below) to be filed with the Court.

m. **Backup Bidder**. The Qualified Bidder with the next highest or otherwise second-best Qualified Bid (the "Backup Bid") for each Asset at the Auction (if the Auction is conducted), as determined by the Debtors in the exercise of their business judgment in consultation with the Consultation Parties, shall be required to serve as a backup bidder (the "Backup Bidder"). The Debtors shall announce the identity of any Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder. The Backup Bidder shall be required to keep its Qualified Bid open and irrevocable until the closing of the transaction with the applicable Successful Bidder. The Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the applicable Successful Bidder. If a Successful Bidder fails to consummate its Successful Bid, the Debtors may select the applicable Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party.

In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

n. **Highest or Otherwise Best Bid.** When determining the highest or otherwise best Bid, as compared to other Bids, the Debtors may consider the Bid Assessment Criteria.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## C. Assumption and Assignment Procedures

The Debtors are seeking approval of the Assumption and Assignment Procedures for notifying counterparties to executory contracts and unexpired leases of proposed Cure Amounts (as defined below) with respect to those executory contracts and unexpired leases that the Debtors and non-debtors propose to assume and assign to the Successful Bidder (the "Transferred Contracts").

No later than three (3) days of entry of the Stalking Horse Bidder Approval Order, the Debtors will file a notice of intent to assume and assign the executory contracts and unexpired leases listed therein and proposed cure amounts (such list, the "Transferred Contract and Cure Schedule"), substantially in the form attached as Exhibit 3 to the Bidding Procedures Order (the "Assumption and Assignment/Cure Notice"), and serve such notice on all counterparties to the Transferred Contracts (the "Contract Counterparties"). The Assumption and Assignment/Cure Notice served on each Contract Counterparty shall (i) identify each Transferred Contract; (ii) list the proposed cure amounts, if any, that the Debtors believe must be paid to cure all defaults outstanding under each Transferred Contract (the "Cure Amounts") as of such date; (iii) include a statement that assumption and assignment of such Transferred Contract is not required or guaranteed; and (iv) inform such Contract Counterparty of the requirement to file any Cure Objection or Assignment Objection (each as defined below) by the Cure Objection Deadline or Assignment Objection Deadline (each as defined below). Service of the Transferred Contract and Cure Schedule upon a Contract Counterparty does not constitute an admission that a particular Transferred Contract is an executory contract or unexpired lease of property, or confirm that the Debtors are required to assume and/or assign such Contract.

According to the Assumption and Assignment/Cure Notice, a Contract Counterparty must file any objection to the Cure Amount by no later than **twelve (12)**

DOCS_LA:336225.9 20375/001
SALE AND BID PROCEDURES MOTION – Page 26

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**days after filing and service of the Assumption and Assignment/Cure Notice at 4:00 p.m. (Pacific Time)** (the "Cure Objection Deadline"). A Contract Counterparty must also file any objection to the assumption and assignment of such Transferred Contract by **July 8, 2021 at 4:00 p.m. (Pacific Time)** (the "Assignment Objection Deadline").

In addition, if the Successful Bidder or Backup Bidder, in accordance with the Bidding Procedures, identifies additional executory contracts or unexpired leases that it wishes to add to the Transferred Contracts and Cure Schedule (each an "Additional Contract") (or wishes to remove a Transferred Contract from the Transferred Contracts and Cure Schedule) the Debtors shall, within two (2) calendar days of being informed of such a determination, send a supplemental Assumption and Assignment/Cure Notice to the applicable Contract Counterparties to such executory contracts or unexpired leases added or removed from the Transferred Contracts and Cure Schedule.

The Debtors request that the Court require that any objections to a proposed Cure Amount (a "Cure Objection") must be made in writing and filed on the docket for these Chapter 11 Cases no later than the Cure Objection Deadline and state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged to be due by such Contract Counterparty, and include complete contact information for such Contract Counterparty (including address, telephone number, and email address); (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iv) be served on the parties set forth in the Bidding Procedures, so as to be actually received by them on or before the Cure Objection Deadline.

The Debtors further request that the Court require any other objections to the assumption and assignment of any of the Transferred Contracts (an "Assignment

DOCS_LA:336225.9 20375/001
SALE AND BID PROCEDURES MOTION – Page 27

Objection") must: (i) be made in writing and filed on the docket for these Chapter 11 Cases no later than the Assignment Objection Deadline; (ii) state the basis of such objection with specificity and include complete contact information for such Contract Counterparty (including address, telephone number, and email address); (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iv) be served on the parties set forth in the Bidding Procedures so as to be actually received by them on or before the Assignment Objection Deadline

In addition, the Debtors request that objections from any Contract Counterparty to an Additional Contract (an "Additional Assignment Objection") must: (i) be made in writing and filed on the docket no later than seven (7) calendar days after the Debtors have sent notice to such Contract Counterparty of its intention to assume and assign such Additional Contract (as applicable, the "Additional Assignment Objection Deadline"), (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged by such Contract Counterparty, and include contact information for such Contract Counterparty, (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and (iv) be served upon the Notice Parties (as defined in the Bidding Procedures) so as to be actually received on or before the Additional Assignment Objection Deadline.

The Assumption and Assignment/Cure Notice also provides that Cure Objections and Assignment Objections, if any, will be heard at (i) the Sale Hearing or (ii) on such other date, as the Court may designate prior to or after the Sale Hearing. Any supplemental Assumption and Assignment/Cure Notice relating to an Additional Contract shall provide that Additional Assignment Objections will be resolved at a hearing to be held by the Court (i) on or before seven (7) calendar days from the timely filing of the Additional Assignment Objection or (ii) such other date designated by the Court.

DOCS_LA:336225.9 20375/001

SALE AND BID PROCEDURES MOTION – Page 28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

At the Sale Hearing, the Debtors or the Successful Bidder shall (i) present evidence necessary to demonstrate adequate assurance of future performance by the Successful Bidder and (ii) request entry of an order approving the assumption and assignment of any or all Transferred Contracts to be assumed and assigned to the Successful Bidder. For the foregoing reasons, the Debtors believe that granting the relief requested herein is appropriate and in the best interests of all parties-in-interest.

**D.** **Scheduling and Notice**

Pursuant to the terms of the Tyson Settlement and WTB Stipulation, the Debtors are required to (i) obtain entry of the Bidding Procedures Order no later than **May 10, 2021**, and (ii) obtain entry of an order approving the Sale, no later than **July 15, 2021**.

Given the approximate six-month marketing and diligence period (*i.e.*, the period from the engagement of Root through the Bid Deadline) to be established by the Bidding Procedures, the proposed timeline is sufficient to complete a fair and open sale process that will maximize the value received for the Assets. The proposed timeline will provide interested parties with sufficient time to perform due diligence given that the process is well understood at this juncture and the material they need is readily available. Thus, the schedule is sufficient, while respecting the necessity to consummate the Sale as quickly as possible to maximize the value received for the Assets.

**Notice of Sale Hearing**. On the date the notice of this Motion is filed, the Debtors will cause this Motion and all exhibits hereto, the Bidding Procedures, and a copy of the proposed Bidding Procedures Order, to be served upon (a) the United States Trustee; (b) counsel to the known Secured Creditors, (c) counsel to each Committee; (d) the Attorney General of the United States and the United States Attorney's Office for the Eastern District of Washington; (e) the Attorney General for

DOCS_LA:336225.9 20375/001
SALE AND BID PROCEDURES MOTION – Page 29

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the State of Washington; (f) all parties asserting a security interest in the Assets to the extent any such interest is reasonably known to the Debtors; (g) various federal, state, county and city tax and regulatory authorities; (h) all entities known to have expressed an interest in a transaction with respect to the Assets or that have been identified by the Debtors or their advisors as a potential purchaser of the Assets; (i) the contract counterparties whose contracts are identified as potentially being assigned; and (j) all parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Sale Notice Parties</u>").

**Notice of Sale**. Within four (4) calendar days of the entry of the Stalking Horse Bidder Approval Order, or as soon thereafter as practicable, the Debtors shall cause to be served, by first-class mail, postage prepaid, a sale notice (the "<u>Sale Notice</u>") setting forth, among other things, the dates established for submission of Qualified Bids, the Auction, and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as <u>Exhibit 2</u>, upon the Sale Notice Parties and all of the Debtors' creditors.

**Post-Auction Supplement**. Following the Auction, the Debtors will promptly file with the Bankruptcy Court a notice (the "<u>Notice of Successful Bidder</u>") that will inform the Bankruptcy Court of the results of the Auction. The Notice of Successful Bidder will identify, among other things, (i) the Successful Bidder as the proposed purchaser of the Assets, (ii) the amount and form of consideration to be paid by the Successful Bidder for the Assets, (iii) the liabilities to be assumed by the Successful Bidder, and (iv) the Transferred Contracts to be assumed by the Debtors and assigned to the Successful Bidder, or the Debtors' rights and interests therein sold and transferred to the Successful Bidder, as the case may be, in connection with the Sale. The Notice of Successful Bidder will also include similar information relating to the Backup Bidder and the Backup Bid. In addition, the Debtors will attach to the Notice

DOCS_LA:336225.9 20375/001
SALE AND BID PROCEDURES MOTION – Page 30

of Successful Bidder (i) any revised proposed Sale Order approving the Sale to the Successful Bidder, (ii) a copy of the Qualified Bidder APA entered into by the Debtors and the Successful Bidder following the Auction, and (iii) any additional information or documentation relevant to the Successful Bid. The Debtors will file the Notice of Successful Bidder on the docket for these Chapter 11 Cases as promptly as is reasonably practicable prior to the Sale Hearing, but will not be required to serve the same on any parties-in-interest in these Chapter 11 Cases.

The Debtors further propose that, within 24 hours of the filing of the Notice of Successful Bidder, the Successful Bidder and the Backup Bidder will send by overnight delivery to each contract counterparty whose contract is part of such Bid, the financial and other commercial information to demonstrate adequate assurance of future performance under such contract. Such information will be provided to contract counter parties on a confidential basis.

**E.** **Sale Order**

To ensure the Debtors are in compliance with the terms of the Tyson Settlement and WTB Stipulation, and in light of the Debtors' limited liquidity, the Debtors request that this Court set the Sale Hearing for a date that is not later than **July 15, 2021**. At the Sale Hearing, the Debtors intend to seek the entry of the Sale Order (a) approving the Sale free and clear of all Encumbrances, and (b) authorizing the assumption and assignment of the Transferred Contracts, among other things. Pursuant to the Sale Order, the Debtors will sell their assets free and clear of all Encumbrances to the fullest extent possible pursuant to section 363(f) of the Bankruptcy Code, including without limitation, successor liability or similar theories (except for those Assumed Liabilities and obligations expressly assumed by the Successful Bidder) and the Successful Bidder will be protected from liability for and cannot be pursued for any claims owed by the Debtors. In addition, the Sale Order

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   will have findings that the Sale is not a fraudulent conveyance.    The Bidding

2   Procedures provide proper and adequate notice for these and the other terms and

3   conditions of the bidding, Auction, and Sale Process.

**APPLICABLE AUTHORITY**

4

5   **A.    The Sale of Assets Is Authorized by § 363 as a Sound Exercise of the**

6   **Debtors' Business Judgment**

7        In accordance with Bankruptcy Rule 6004, sales of property rights outside the

8   ordinary course of business may be by private sale or public auction. The Debtors

9   have determined that the Sale of the Assets by public auction will enable them to

10  obtain the highest and best offer for these assets (thereby maximizing the value of the

11  estates) and is in the best interests of the Debtors' creditors. The Debtors similarly

12  have determined in their business judgment that a sale of the Assets through a

13  competitive, public auction is the best way to maximize the value of those assets.

14       Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in

15  possession "after notice and a hearing, may use, sell or lease, other than in the

16  ordinary course of business, property of the estate." 11 U.S.C. § 363(b).   Under

17  applicable case law throughout the country, if a debtor's proposed use of its assets

18  pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business

19  judgment on part of the debtor, such use should be approved.  *See*, *e.g.*, *In re Equity*

20  *Funding Corp. of Am.*, 519 F.2d 1274, 1277 (9th Cir. 1975); *In re Claar Cellars LLC*,

21  2020 Bankr. LEXIS 682, at *9 (Bankr. E.D. Wash. Mar. 13, 2020) (the business

22  judgment standard "is a 'deferential' standard pursuant to which a 'bankruptcy court

23  will generally approve' a reasoned decision by the debtor.") (citations omitted); *Myers*

24  *v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v.*

25  *Schipper (In re Schipper)*, 933 F.3d 513, 515 (7th Cir. 1991); *In re Delaware &*

26  *Hudson R.R. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (courts have applied the

DOCS_LA:336225.9 20375/001

27  SALE AND BID PROCEDURES MOTION – Page 32

28

ec26m9015m

"sound business purpose" test to evaluate motions brought pursuant to section 363)(b)); *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)) ("[T]he business judgment rule is a 'presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the actions were in the best interests of the company.'").

The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g.*, *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the. . . [trustee's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Prods*., Inc., 99 BR. 124, 130 (Bankr. N.D. Ga. 1988)). As long as the sale appears to enhance a debtor's estate, court approval of a trustee's decision to sell should only be withheld if the trustee's judgment is clearly erroneous, too speculative or contrary to the provisions of the Bankruptcy Code. *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 255 (N.D. Tex. 2005); *In re Lajijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); *In re WPRV-TV, Inc.*, 143 B.R. 315, 319 (D.P.R. 1991) ("The trustee has ample discretion to administer the estate, including authority to conduct public or private sales of estate property. Courts have much discretion on whether to approve proposed sales, but the trustee's business judgment is subject to great judicial deference.").

Applying § 363, the proposed Sale of the Assets should be approved. As set forth above, the Debtors have determined that the best method of maximizing the recovery of the Debtors' creditors would be through the Sale of the Assets. Further, the Debtors believe that the value their estates—and, thus, the Debtors' creditors—

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

will receive for the Sale of the Assets exceeds any value the Debtors' estates could obtain for the Assets if the Debtors are required to liquidate their assets piecemeal. As assurance of value, bids will be tested through the Auction consistent with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and pursuant to the Bidding Procedures approved by the Court. Consequently, the fairness and reasonableness of the consideration to be paid by the Successful Bidder ultimately will be demonstrated by adequate "market exposure" and an open and fair auction process—the best means, under the circumstances, for establishing whether a fair and reasonable price is being paid.

The Debtors and their professionals are making every effort for success under these circumstances. Root has been contacting potential interested parties and has assembled a data room that is available upon the execution of an appropriate confidentiality agreement. The Debtors and their advisors are responding to any and all serious indications of interest and have been in active discussions with many potential purchasers.

## B. The Bidding Procedures Are Appropriate and Will Maximize the Value Received for the Assets

As noted above, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales. *See, e.g.*, *In re Fin'l News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("[C]ourt-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates.").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Debtors believe that the Bidding Procedures will establish the parameters under which the value of the Assets may be tested at an auction and through the ensuing Sale Hearing. Such procedures will increase the likelihood that the Debtors' creditors will receive the greatest possible consideration for their assets because they will ensure a competitive and fair bidding process. They also allow the Debtors to undertake an auction in as expeditious and efficient manner as possible, which the Debtors believe is essential to maximizing the value of the Debtors' estates for their creditors.

The Debtors also believe that the proposed Bidding Procedures will promote active bidding from seriously interested parties and will dispel any doubt as to the best and highest offer reasonably available for the Assets. In particular, the proposed Bidding Procedures will allow the Debtors to conduct an auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction. Further, the Bidding Procedures provide the Debtors with the opportunity to consider all Qualified Bids and to select, in their reasonable business judgment, and after consultation with their professionals and the Consultation Parties, the highest and best offer(s) for the Assets. Moreover, the Bidding Procedures provide the Debtors with the flexibility to modify the Bidding Procedures, if necessary, to maximize value for the Debtors' estates.

In sum, the Debtors believe that the Bidding Procedures will encourage bidding for the Assets and are consistent with the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. Accordingly, the proposed Bidding Procedures are reasonable, appropriate, and within the Debtors' sound business judgment.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**C.**    **The Sale of the Assets Free and Clear of Liens and Other Interests is Authorized by § 363(f)**

The Debtors further submit that it is appropriate to sell the Assets free and clear of liens pursuant to § 363(f), with any such liens attaching to the Sale Proceeds of the Assets to the extent applicable. Section 363(f) authorizes a trustee to sell assets free and clear of liens, claims, interests and encumbrances if:

> (1) applicable nonbankruptcy law permits the sale of such property free and clear of such interests;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

This provision is supplemented by § 105(a), which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

Because § 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets "free and clear" of liens and interests. *In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same); *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930

ec26m9015m

F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that § 363(f) is written in the disjunctive; holding that the court may approve the sale "free and clear" provided at least one of the subsections of § 363(f) is met).

The Debtors believe that at least one of the tests of § 363(f) is satisfied with respect to the transfer of the Assets. In particular, the Debtors believe that at least § 363(f)(2) will be met in connection with the transactions proposed under these procedures because each of the parties holding liens on the Assets will consent or, absent any objection to this Motion, will be deemed to have consented to the Sale. Any lienholder also will be adequately protected by having its liens, if any, in each instance against the Debtors or their estates, attach to the Sale Proceeds ultimately attributable to the Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtors may possess with respect thereto. Accordingly, § 363(f) authorizes the transfer and conveyance of the Debtors' assets free and clear of any such claims, interests, liabilities, or liens.

## D. **The Proposed Notice of Bidding Procedures, Auction and Sale Is Appropriate**

The Debtors believe that they will obtain the maximum recovery for creditors of the Debtors' estates if the Assets are sold through a well-advertised sale and auction. The Debtors have already taken significant steps to identify potential purchasers.

Under Bankruptcy Rule 2002(a) and (c), the Debtors are required to notify creditors of the proposed sale of the Assets, including a disclosure of the time and place of an auction, the terms and conditions of a sale, and the deadline for filing any objections. The Debtors submit that the notice procedures herein comply fully with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

notice of the sale by auction to the Debtors' creditors and other interested parties, as well as to those parties who have expressed an interest, or may express an interest, in bidding on the Assets. The proposed time frame between the filing of this Motion, the commencement of the bidding process and the Auction will provide interested purchasers sufficient time to participate in the Auction.

**E.** **Assumption and Assignment of Certain Executory Contracts and Unexpired Leases**

Section 365(a) of the Bankruptcy Code provides that, subject to the Court's approval, a trustee "may assume or reject any executory contracts or unexpired leases of the debtor." 11 U.S.C. § 365(a). Upon finding that a trustee has exercised its sound business judgment in determining to assume an executory contract or unexpired lease, courts will approve the assumption under § 365(a). *See Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996); *see also Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993).

Pursuant to § 365(f)(2), a trustee may assign an executory contract or unexpired lease of nonresidential real property if:

> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103

DOCS_LA:336225.9 20375/001
SALE AND BID PROCEDURES MOTION – Page 38

B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *In re Bygaph, Inc.*, 56 B.R. 596, 605-6 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease has financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding; chief determinant of adequate assurance is whether rent will be paid).

As set forth above, pursuant to the terms of the proposed Bidding Procedures Order, the Debtors will send the Assumption and Assignment/Cure Notice to all counterparties to the executory contracts and unexpired leases notifying such counterparties of the potential assumption by the Debtors and assignment to the Successful Bidder of such contracts and/or leases. The Assumption and Assignment/Cure Notice will also set forth the Cure Amount, if any, owing for each such contracts and/or leases according to the Debtors' books and records.

Counterparties to such contracts and/or leases will be given sufficient time (as set forth herein and in the proposed Bidding Procedures Order) to object to the proposed Cure Amounts, if any, set forth in the Assumption and Assignment/Cure Notice. If no objection is filed with regard to a particular Cure Amount, such Cure Amount shall be binding on the Debtors, the Successful Bidder(s), and the applicable non-Debtor counterparty. The payment of the Cure Amounts specified in the

DOCS_LA:336225.9 20375/001
SALE AND BID PROCEDURES MOTION – Page 39

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

Assumption and Assignment/Cure Notice (or a different amount, either agreed to by the Debtors or resolved by this Court as a result of a timely-filed objection by the relevant non-Debtor counterparty) will be in full and final satisfaction of all obligations to cure defaults and compensate the counterparties for any pecuniary losses under the applicable executory contract(s) and/or lease(s) pursuant to section 365(b)(1) of the Bankruptcy Code, unless the Debtors determine, before the Sale Hearing, that a particular lease or contract is not truly executory, and does not need to be cured to transfer the Assets to the Successful Bidder.

Section 365(f)(2)(B) of the Bankruptcy Code states that a debtor may assign its unexpired leases and executory contracts if, *inter alia,* the assignee provides "adequate assurance of future performance." 11 U.S.C. § 365(f)(2)(B). If necessary, the Successful Bidder must submit, among other things, written evidence of the ability to provide adequate assurance of future performance under the applicable contracts or leases as set forth above and in the Bidding Procedures Order. The affected non-Debtor counterparties will also be able to challenge the ability of the Successful Bidder to provide adequate assurance as provided in the Bidding Procedures Order.

Any assumption and assignment of an assigned contract and/or lease will be subject to all of the provisions of such contract and/or lease, to the extent required by applicable law and in accordance with applicable provisions of the Bankruptcy Code. The Bidding Procedures are designed to ensure that any Successful Bidder is financially able and prepared to undertake all of the relevant obligations under the assigned contracts and/or leases. The Debtors, together with the relevant Successful Bidder, will establish, as necessary, at the Sale Hearing, the requisite adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code with respect to the potential assumption and assignment of the applicable assigned contracts and/or leases. Consequently, assumption and assignment of the assigned

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

executory contracts and/or leases in connection with the Sale is appropriate under the circumstances.

**F.** **The Successful Bidder Should be Afforded All Protections Under § 363(m) as A Good Faith Purchaser**

Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from the debtor's estate notwithstanding that the sale conducted under § 363(b) is later reversed or modified on appeal. Specifically, § 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) "fosters the 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" *In re Chateaugay Corp.*, 1993 U.S. Dist. Lexis 6130, *9 (S.D.N.Y. 1993) (quoting *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)); *see also Allstate Ins. Co. v. Hughes*, 174 BR. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

The selection of the Successful Bidder will be the product of arms'- length, good-faith negotiations in an anticipated competitive purchasing process. The

Debtors intend to request at the Sale Hearing a finding that the Successful Bidder is a good faith purchaser entitled to the protections of § 363(m).

## G. Relief from the 14-Day Waiting Period Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate

Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Debtors request that the Sale Order be effective immediately by providing that the 14-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d). Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, Collier suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." COLLIER ON BANKRUPTCY P 6004.11 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Furthermore, Collier provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id.*

The Debtors hereby request that the Court waive the 14-day stay periods under Bankruptcy Rules 6004(h) and 6006(d) or, in the alternative, if an objection to the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:336225.9 20375/001

SALE AND BID PROCEDURES MOTION – Page 42

ec26m9015m

Sale is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal.

## **NOTICE**

The Debtors will provide notice of this Motion to: (1) the U.S. Trustee; (2) counsel for the Committees; (3) known Secured Creditors; (4) the Attorney General of the United States and the United States Attorney's Office for the Eastern District of Washington; (5) the Attorney General for the State of Washington; and (6) parties that file with the Court and serve upon the Debtors requests for notice of all matters in accordance with Bankruptcy Rule 2002(i). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, and such additional reasons as may be advanced at or prior to the hearing regarding this Motion, the Debtors respectfully request the entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: March 26, 2021      BUSH KORNFELD LLP

*/s/ Thomas A. Buford, III*
THOMAS A. BUFORD, III (WSBA 52969)
BUSH KORNFELD LLP

RICHARD M. PACHULSKI (admitted *pro hac vice*)
IRA D. KHARASCH (admission *pro hac vice* pending)
JEFFREY W. DULBERG (admitted *pro hac vice*)
JASON H. ROSELL (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP

*Attorneys for the Debtors and Debtors in Possession*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

# EXHIBIT A

## Proposed Order

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:336225.9 20375/001

ec26m9015m

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| In re | Chapter 11 |
| EASTERDAY RANCHES, INC., *et al.* | Lead Case No. 21-00141-11<br>Jointly Administered |
| Debtors.[1] | **ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF ASSETS; (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C) SCHEDULING THE SALE HEARING; AND (D) GRANTING RELATED RELIEF** |

Upon the *Motion for an Order (A) Approving Bidding Procedures for the Sale of Assets; (B) Approving Procedures for the Assumption and Assignment of Executory*

---

[1] The Debtors along with their case numbers are as follows: Easterday Ranches, Inc. (21-00141) and Easterday Farms, a Washington general partnership (21-00176).

DOCS_LA:336225.9 20375/001
BIDDING PROCEDURES ORDER – Page 1

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

*Contracts and Unexpired Leases; (C) Scheduling the Auction and Sale Hearing; and (D) Granting Related Relief* (the "<u>Motion</u>");[2] and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having considered the statements of counsel, the First Day Declaration, any objections raised, and the evidence presented at the Bidding Procedures Hearing; and it appearing that the relief requested in the Motion is reasonable and in the best interests of the Debtors' bankruptcy estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. The Debtors have articulated good and sufficient reasons for, and the best interests of their estates and stakeholders will be served by, the Court scheduling or fixing dates pursuant to this Order for, among other things, the (i) Bid Deadline (as defined below), (ii) Sale Objection Deadline (as defined below), (iii) Auction, (iv) Cure Objection Deadline; (v) Assumption and Assignment Objection Deadline, and (vi) Sale Hearing.

B. The Bidding Procedures are reasonable and appropriate and represent the best available method for maximizing value for the benefit of the Debtors' estates.

C. It may be necessary to induce one or more third-party bidders to serve as a Stalking Horse Bidder and provide Bid Protections pursuant to the terms of

---

[2] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion.

DOCS_LA:336225.9 20375/001
BIDDING PROCEDURES ORDER – Page 2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

this Order.

D.    The Bidding Procedures were negotiated at arm's length, in good faith, and without collusion.  The Bidding Procedures balance the Debtors' interests in emerging expeditiously from these Chapter 11 Cases while preserving the opportunity to attract value-maximizing proposals beneficial to the Debtors' estates, their creditors, and other parties in interest.

E.    The Sale Notice and Assignment Notice are reasonably calculated to provide the Sale Notice Parties, the Contract Counterparties, and other interested parties with proper notice of the (i) Bidding Procedures, (ii) Auction, (iii) Assumption and Assignment Procedures (including the Cure Objection Deadline and the Assumption and Assignment Objection Deadline), (iv) Sale Hearing, and (v) Sale.

F.    The Motion and the Bidding Procedures comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules for the United States Bankruptcy Court for the Eastern District of Washington (the "Local Rules").

G.    Due, sufficient and adequate notice of the relief granted herein has been given to all parties in interest.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Motion is granted to the extent set forth herein.

2.    All formal and informal objections, if any, to the relief requested in the Motion that have not been withdrawn, waived, or settled are overruled on the merits.

3.    The Bidding Procedures, which are attached hereto as Exhibit 1 and incorporated herein by reference, are hereby approved in all respects and shall govern all bidders and bids, including those that may be submitted by Qualified Bidders at the Auction.

4.    Qualified Bidders seeking to submit bids for the Assets must do so in

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

accordance with the terms of the Bidding Procedures and this Order.

 5. Following entry of this Order, the Debtors shall be authorized, but not obligated, in the exercise of their business judgement, in consultation with the Consultation Parties, to select one or more bidders to act as a stalking horse bidder (each, a "Stalking Horse Bidder") and enter into a purchase agreement (the "Stalking Horse APA").

 6. As set forth in the Bidding Procedures, the Debtors have the option, but are not required, to designate a Stalking Horse Bidder in the Debtors' business judgment (with the consent of the Consultation Parties).

 7. To the extent a determination is made to provide for and pay Bid Protections in connection with a Stalking Horse APA, the Debtors shall disclose such Bid Protections in the corresponding motion designating a Stalking Horse Bidder (the "Stalking Horse Bidder Motion") to be filed pursuant to the Bidding Procedures. The Stalking Horse Bidder Motion shall set forth the reasons the Debtors believe the Bid Protections satisfy the requirements of section 503(b) of the Bankruptcy Code. A hearing shall be held within eight (8) days of filing of the Staking Horse Bidder Motion (the "Stalking Horse Bidder Approval Hearing"). Any objection to the designation of Stalking Horse Bidder or to the Bid Protections set forth in the Stalking Horse Bidder Notice (a "Stalking Horse Objection"), shall be filed no later than one (1) business day before the hearing at 4:00 p.m. (Pacific Time). Absent any timely Stalking Horse Objection, such Bid Protections may be paid without further action or order by the Court as required by the stalking horse agreement with the Stalking Horse Bidder. Nothing in this order shall be deemed to award any Bid Protections related to a credit bid.

 8. Any credit bid made by a Successful Bidder or Backup Bidder must include a cash component sufficient to pay the Bid Protections and any fees and

DOCS_LA:336225.9 20375/001
BIDDING PROCEDURES ORDER – Page 4

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

expenses that will be payable by the Debtors to their broker at the closing.

9. If the Debtors, after consultation with the Consultation Parties, designate a Stalking Horse Bidder, the Debtors shall file the Stalking Horse Bidder Motion. The Stalking Horse Bidder Motion, if filed, shall also include a copy of the Stalking Horse Bidder's Qualified Bidder APA, and shall include modifications to the bidding and auction procedures necessary to account for the Stalking Horse Bid.

10. Notwithstanding that it may contain terms and conditions which may be inconsistent with the requirements for a Qualified Bid or other provisions of the Bidding Procedures, if the Debtors designate a Stalking Horse Bid after consultation with the Consultation Parties, such Stalking Horse Bid shall be deemed to constitute a Qualified Bid and such Stalking Horse Bidder shall be deemed to be a Qualified Bidder.

11. The deadline for all Potential Bidders to submit a Qualified Bid is fifteen (15) days after entry of the Stalking Horse Bidder Approval Order at 4:00 p.m. (Pacific Time) (the "Bid Deadline"), as further governed by the Bidding Procedures. In the event that the Debtors designate a Stalking Horse Bid in accordance with this Order and the Bidding Procedures, the Debtors shall file (a) a form of order approving the sale to the Stalking Horse Bidder and (b) the Stalking Horse Bidder asset purchase agreement on or before the Bid Deadline.

12. As further governed by the Bidding Procedures, if at least one Qualified Bid is received by the Bid Deadline, the Debtors will hold the Auction fourteen (14) days after the Bid Deadline 10:00 a.m. (Pacific Time) in accordance with the Bidding Procedures, *via* videoconference.

13. Promptly following the conclusion of the Auction (and not later than one (1) calendar day thereafter), the Debtors shall promptly file with the Court the *Notice of Auction Results*, but shall not be required to serve the same on any parties-in-

DOCS_LA:336225.9 20375/001
BIDDING PROCEDURES ORDER – Page 5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

interest in these Chapter 11 Cases; *provided*, that the Debtors shall consult with the Consultation Parties prior to filing the Notice of Auction Results.

14.     If the Debtors do not receive a Stalking Horse Bid or other Qualified Bid by the Bid Deadline, then the Debtors may file a notice cancelling the Auction.

15.     Following the conclusion of the Auction, the Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing or by filing a notice on the Court's docket. At the Sale Hearing, the Debtors shall present the Successful Bid to the Bankruptcy Court for approval.

16.     The Sale Notice and Assumption and Assignment/Cure Notice substantially in the forms attached to this Order as <u>Exhibit 2</u> and <u>Exhibit 3</u>, respectively, are approved in all respects. No other or further notice of the Bidding Procedures, Assumption and Assignment Procedures, the Sale Hearing, relevant objection or other deadlines, or the Sale is required.

17.     To be considered, any objection to the Sale must (a) comply with the Bankruptcy Rules and the Local Rules, (b) be made in writing and filed with the Court, and (c) be filed on or before [●], 2021 at 4:00 p.m. (Pacific Time) (the "<u>Sale Objection Deadline</u>"). Any reply to any objection to the Sale must be filed on or before [●], 2021 at 4:00 p.m. (Pacific Time).

18.     The failure of any objecting person or entity to timely file an objection prior to the Sale Objection Deadline shall be a bar to the assertion at the Sale Hearing or thereafter of any objection to the relief requested by the Debtors, or the consummation and performance of the Sale of the Assets to the Successful Bidder, including the transfer of the Assets free and clear of all liens, claims, interests, and other encumbrances (with the same to attach to the cash proceeds of the Sale to the same extent and with the same order of priority, validity, force and effect which they previously had against the Assets, subject to the rights and defenses of the Debtors

DOCS_LA:336225.9 20375/001
BIDDING PROCEDURES ORDER – Page 6

and the Debtors' estates with respect thereto), and the Debtors' and non-debtors' assumption and assignment of the Transferred Contracts to the Successful Bidder.

19.     No Qualified Bidder or any other person or entity, other than a potential Stalking Horse Bidder, if any, shall be entitled to any expense reimbursement, break-up fee, termination or other similar fee or payment in connection with the Sale.

20.     The Assumption and Assignment Procedures, as described in the Motion, are hereby approved in all respects. The failure to specifically include or reference any particular provision of the Assumption and Assignment Procedures in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Assumption and Assignment Procedures be authorized and approved in their entirety.

21.     As further governed by the Assumption and Assignment Procedures, the (a) Cure Objection Deadline is fifteen (15) days after entry of the Stalking Horse Approval Order at 4:00 p.m. (Pacific Time) and (b) Assumption and Assignment Objection Deadline is July 8, 2021 at 4:00 p.m. (Pacific Time).  If a Contract Counterparty timely files a Cure Objection and the amount in dispute is less than $100,000, the Sale Hearing will be used a status conference with respect to such Cure Objection.  If, however, the amount in dispute is more than $100,000, the Debtors reserve the right to have such dispute resolved at the Sale Hearing.

22.     Any Contract Counterparty that fails to file a Cure Objection by the Cure Objection Deadline in accordance with the Assumption and Assignment Procedures (i) shall be deemed to have forever waived and released any right to assert a Cure Objection, and (ii) shall be forever barred and estopped from (a) objecting to the Cure Amount set forth on the Cure Schedule with respect to the Transferred Contract and (b) seeking additional amounts arising under the Transferred Contract prior to the closing from the Debtors or Successful Bidder.

DOCS_LA:336225.9 20375/001
BIDDING PROCEDURES ORDER – Page 7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

23.     Any Contract Counterparty that fails to file an Assumption and Assignment Objection by the Assumption and Assignment Objection Deadline in accordance with the Assumption and Assignment Procedures (i) shall be deemed to have forever waived and released any right to assert an Assumption and Assignment Objection, (ii) shall be deemed to have consented to the assumption and assignment, or assignment, as the case may be, of their Transferred Contract without the necessity of obtaining any further order of the Bankruptcy Court, and (iii) shall be forever barred and estopped from objecting to the assumption and assignment, or assignment, as the case may be, of its Transferred Contract to the Successful Bidder.

24.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h) or 6006(d), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

25.     The Debtors are authorized and empowered to take such steps, expend such sums of money and do such other things as may be necessary to implement and effectuate the terms and requirements established and relief granted in this Order.

26.     To the extent of any inconsistences between the Bidding Procedures and this Order, this Order shall govern.

27.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the Bidding Procedures or this Order.

///END OF ORDER///

<u>Submitted by</u>:

By _____
THOMAS A. BUFORD, III (WSBA 52969)
BUSH KORNFELD LLP

RICHARD M. PACHULSKI (admitted *Pro Hac Vice*)
IRA D. KHARASCH (admission *Pro Hac Vice* pending)

DOCS_LA:336225.9 20375/001
BIDDING PROCEDURES ORDER – Page 8

ec26m9015m

JEFFREY W. DULBERG (admitted *Pro Hac Vice*)
JASON H. ROSELL (admitted *Pro Hac Vice*)
PACHULSKI STANG ZIEHL & JONES LLP

*Attorneys for Debtors and Debtors in Possession*

DOCS_LA:336225.9 20375/001
BIDDING PROCEDURES ORDER – Page 9

# <u>EXHIBIT 1</u>

## Bidding Procedures

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:336225.9 20375/001

ec26m9015m

1  ARMAND J. KORNFELD (WSBA #17214)      HONORABLE WHITMAN L. HOLT
   THOMAS A. BUFORD (WSBA #52969)
2  RICHARD B. KEETON (WSBA #51537)
   BUSH KORNFELD LLP
3  601 Union Street, Suite 5000
   Seattle, WA 98101
4  Tel.: (206) 292-2110
   Facsimile: (206) 292-2104
5  Emails: jkornfeld@bskd.com,
   tbuford@bskd.com, and rkeeton@bskd.com
6
   RICHARD M. PACHULSKI (CA Bar #90073)*
7  IRA D. KHARASCH (CA Bar #109084)**
   JEFFREY W. DULBERG (CA Bar #181200)*
8  JASON H. ROSELL (CA Bar #269126)*
   PACHULSKI STANG ZIEHL & JONES LLP
9  10100 Santa Monica Blvd., 13th Floor
   Los Angeles, CA 90067-4003
10 Tel: (310) 277-6910
   Facsimile: (310) 201-0760
11 Emails: rpachulski@pszjlaw.com,
   ikharasch@pszjlaw.com, jdulberg@pszjlaw.com,
12 and jrosell@pszjlaw.com

13 *Admitted *Pro Hac Vice*
   ** Admission *Pro Hac Vice* pending
14
   *Attorneys for the Chapter 11 Debtors and*
15 *Debtors in Possession*

16            UNITED STATES BANKRUPTCY COURT
               EASTERN DISTRICT OF WASHINGTON
17

18 In re                          | Chapter 11

19 EASTERDAY RANCHES, INC., *et al.* | Lead Case No. 21-00141-11
                                    | Jointly Administered
20              Debtors.[1]
21                                  | **BIDDING PROCEDURES FOR THE**
                                    | **SALE OF THE DEBTORS' REAL**
22                                  | **PROPERTIES AND RELATED FARM**
                                    | **AND FEEDLOT ASSETS**
23

24

25 ────────────────────

26 [1] The Debtors along with their case numbers are as follows: Easterday Ranches, Inc. (21-00141) and
   Easterday Farms, a Washington general partnership (21-00176).

27 DOCS_LA:336225.9 20375/001
   BIDDING PROCEDURES – Page 1
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

On [●], 2021, the United States Bankruptcy Court for the Eastern District of Washington (the "Court") entered the *Order (A) Approving Bidding Procedures for the Sale of Assets; (B) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; (C) Scheduling the Auction and Sale Hearing; and (D) Granting Related Relief* [Docket No. ●] (the "Bidding Procedures Order"),[2] by which the Court approved the bidding procedures set forth herein (the "Bidding Procedures").  These Bidding Procedures establish the process by which the Debtors are authorized to conduct an auction (the "Auction") for the sale (the "Sale") of real property interests and related farm equipment and other personal property (collectively, the "Assets") or proposals to sponsor a plan of reorganization (a "Plan").

## 1.    Key Dates

These Bidding Procedures provide interested parties with the opportunity to qualify for and participate in the Auction to be conducted by the Debtors and to submit bids for the Assets or to become a sponsor in connection with a plan of reorganization.    The Debtors shall assist interested parties in conducting their respective due diligence investigations**.**

The key dates for the sale process are as follows:[3]

| Event | Deadlines | Illustrative Dates[4] |
|---|---|---|
| Hearing on any Stalking Horse or Bid Protections Objections (if any) or, alternatively, to set dates and deadlines for a naked auction process (subject to Court availability) | Eight (8) days after the Stalking Horse Bidder Motion or No Stalking Horse Notice, as applicable, is filed | May 17, 2021 |
| Deadline to File Notice of Intent to Assume and Assign Transferred Contracts and Proposed Cure Amounts | Three (3) days after entry of Court's order approving the Stalking Horse Bidder Motion (the "Stalking Horse Bidder Approval Order") | May 20, 2021 |

---

2    All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

3    These dates are subject to extension or adjournment as provided for herein.

4    These dates are illustrative only and assume that the Debtors select a Stalking Horse Bid by May 9, 2021.

DOCS_LA:336225.9 20375/001

BIDDING PROCEDURES – Page 2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

| Event | Deadlines | Illustrative Dates[4] |
|---|---|---|
| Deadline to File and Serve Sale Notice | Four (4) days after entry of the Stalking Horse Approval Order | May 21, 2021 |
| Deadline to Submit Bids | Fifteen (15) days after entry of the Stalking Horse Bidder Approval Order, at 4:00 p.m. (Pacific Time) | May 28, 2021 |
| Deadline to File Objections to Cure Amounts | Twelve (12) days after the filing and service of the Assumption and Assignment/Cure Notice, at 4:00 p.m. (Pacific Time) | May 28, 2021 |
| Deadline for Debtors to Notify Bidders of Status as Qualified Bidders | Four (4) business days after the Bid Deadline, at 5:00 p.m. (Pacific Time) | June 1, 2021 |
| Auction (if necessary) | Fourteen (14) days after the Bid Deadline, at 10:00 a.m. (Pacific Time) | June 15, 2021 |
| Deadline to File Notice of (a) Successful Bid and Backup Bid and (b) Identity of Successful Bidder and Backup Bidder | One day following conclusion of the Auction ||
| Deadline to File (a) Objections to Sale and (b) Objections to Assumption and Assignment of Contracts | July 8, 2021 at 4:00 p.m. (Pacific Time) ||
| Reply Deadline | July 13, 2021 at 4:00 p.m. (Pacific Time) ||
| Sale Hearing Date | July 15, 2021 ||

## 2. Consultation Parties.

(a) Except as set forth in Section 2(b) below, the "Consultation Parties" referred to herein consist of the following persons:

i. **Counsel to the Official Committee of Unsecured Creditors of**

DOCS_LA:336225.9 20375/001

BIDDING PROCEDURES – Page 3

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Easterday Ranches, Inc.** (the "Ranches Committee"). (a) Dentons US LLP, 1900 K Street, NW, Washington, DC 20006, Attention: Sam Alberts (sam.alberts@dentons.com); and (b) Dentons US LLP, 303 Peachtree Street, NE, Suite 5300, Atlanta, GA 30308, Attention: Sarah Schrag (sarah.schrag@dentons.com).

ii.  **Counsel to the Official Committee of Unsecured Creditors of Easterday Farms** (the "Farms Committee"). Buchalter, a Professional Corporation, 18400 Van Karman Avenue, Suite 800, Irvine, CA 92612, Attention: Joseph M. Welch (jwelch@buchalter.com).

iii.  **Counsel to Cody Easterday and Debbie Easterday**. Sussman Shank LLP, 1000 SW Broadway, Suite 1400 | Portland, OR 97205, Attention: Jeffrey C. Misley (jmisley@sussmannshank.com).

iv.  **Counsel to Karen Easterday**. Tonkon Torp LLP, 888 SW Fifth Ave., Suite 1600, Portland, OR 97204 Attention: Timothy J. Conway (tim.conway@tonkon.com).

(b)  If any of the persons listed Sections 2(b)(i) - (iv) above submits a Bid, such person shall no longer be a Consultation Party for purposes of these Bidding Procedures.

**3.  Potential Bidders.**

To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity interested in consummating a Sale or sponsoring a plan of reorganization (a "Potential Bidder") must deliver or have previously delivered to the Debtors, if determined to be necessary by the Debtors in their sole discretion, the following documents:

(a)  an executed confidentiality agreement on terms acceptable to the Debtors (a "Confidentiality Agreement"), to the extent not already executed;

(b)  identification of the Potential Bidder and any of the principals, corporate officers, or other representatives that are authorized to appear for and act on behalf of the Potential Bidder with respect to the contemplated transaction; and

(c)  unless publicly available in a filing under applicable securities laws or

DOCS_LA:336225.9 20375/001

BIDDING PROCEDURES – Page 4

regulations, current audited and latest unaudited financial statements (the "Financials") of the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors and their advisors, and (y) a written commitment acceptable to the Debtors and their advisors of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the Sale), the adequacy of which will be assessed by the Debtors.

(d) **Provisions Governing Joint Bid Discussions.** If a Potential Bidder is interested in engaging in discussions with a third party concerning a potential joint Bid ("Joint Bid") for the purchase of Assets, such Potential Bidder shall, prior to engaging in such discussions, (a) complete and submit a form to be supplied by Root requesting the Debtors' consent to engage in such discussions and identifying the third party(ies), and (b) receive the Debtors' written consent to engage in such discussions (the "Joint Bid Discussion Protocol").

(e) **Provisions Governing Tenant Farmer Discussions.** If a Potential Bidder is interested in engaging in discussions with a third party tenant farmer *solely* in connection with a potential lease with such third party, such Potential Bidder shall, prior to engaging in such discussions, (a) complete and submit a form to be supplied by Root identifying the third party tenant farmer(s) and confirming that such third party tenant farmer(s) has/have executed a Confidentiality Agreement and (b) provide the Debtors with 72 hours' notice to object to such discussions in writing (the "Tenant Farmer Discussion Protocol" and together with the Joint Bid Discussion Protocol, the "Third Party Discussion Protocols"). To the extent the Debtors do not object in writing within 72 hours, such discussions may proceed.

**4.    Qualified Bidders.**

(a) A "Qualified Bidder" is a Potential Bidder who satisfies the Bidding Procedures and whose Financials, the Financials of its equity holder(s), or written commitments, as applicable, demonstrate the financial capability to consummate the Sale, whose Bid is a Qualified Bid, and that the Debtors determine should be considered a Qualified Bidder, in

DOCS_LA:336225.9 20375/001
BIDDING PROCEDURES – Page 5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

consultation with the Consultation Parties. No later than **four (4) business days after the Bid Deadline (as defined below) at 5:00 p.m. (Pacific Time)**, the Debtors will notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder and shall provide counsel to the Consultation Parties copies of each Qualified Bid (unless a Consultation Party is a Qualified Bidder or participates in a Qualified Bid with respect to an active Bid).

(b)     If any Potential Bidder is determined by the Debtors not to be a Qualified Bidder, the Debtors will refund such Qualified Bidder's Deposit (as defined herein) and all accumulated interest thereon on or within five business days after the Bid Deadline.

(c)     Without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase their consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided* that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

(d)     The Secured Creditors shall be deemed Qualified Bidders under and in connection with the bidding procedures and may credit bid all or any portion of the Debtors' obligations in accordance with 11 U.S.C. § 363(k); and (b) any credit bid made by a Secured Creditor (or any designee) by the Bid Deadline is, and will be deemed to be, a Qualified Bid in each instance for all purposes under and in connection with the Bidding Procedures, *provided, however*, that nothing herein constitutes a waiver of the estates' rights to challenge the liens and claims of Secured Creditors.

**5.     Due Diligence.**

Only Potential Bidders whose Financials, the Financials of its equity holder(s), or written commitments, as applicable, demonstrate the financial capability to consummate the Sale shall be eligible to receive due diligence information and access to the Debtors' electronic data room, physical data room, and to additional non-public

information regarding the Debtors. No Potential Bidder will be permitted to conduct any due diligence without entering into a Confidentiality Agreement. The Debtors will provide to each Potential Bidder that satisfies the foregoing reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request. For all Potential Bidders, the due diligence period will end on the Bid Deadline and, subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information.

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Potential Bidder to consummate the Sale. Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine that such bidder is not a Qualified Bidder or that a Bid made by such bidder is not a Bid.

**All due diligence requests must be directed to Root Agricultural Advisory, 2854 S. Featherly Way, Suite 104, Boise, ID 83709, Attention: Skye Root (skye@rootagadvisory.com).**

### 6. Bid Requirements.

A proposal, solicitation, or offer for a purchase and sale of one or more individual Assets or all or substantially all of the Assets or for an alternative acquisition transaction (including a chapter 11 plan) (each, a "Bid") by a bidder that is submitted in writing and satisfies each of the following requirements (the "Bid Requirements") as determined by the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, shall constitute a "Qualified Bid."

    i.    **Assets**. Each Bid must clearly state which assets and liabilities of the Debtors that the Qualified Bidders are agreeing to purchase and assume.

    ii.    **Purchase Price.** Each Bid must clearly set forth the purchase price in U.S. dollars to be paid for each individual Asset subject to the applicable asset package, including and identifying separately any cash and non-cash components (the "Purchase Price").

    iii.    **Deposit.** On or before the Bid Deadline, each Bid, other than a credit bid, must be accompanied by a cash deposit in the amount equal to 10 percent (10%) of the aggregate cash and non-cash Purchase Price of the Bid, to be held together with other bidders' cash deposits in a non-

DOCS_LA:336225.9 20375/001

BIDDING PROCEDURES – Page 7

interest-bearing account to be identified and established by the Debtors (the "Deposit").

iv.   **Assumption of Obligations.**   Each Bid must clearly state which liabilities the bidder is agreeing to assume.

v.   **Qualified Bid Documents.**   Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid (including the chapter 11 plan to the extent required by the terms of the Bid) and shall include a schedule of assumed contracts to the extent applicable to the Bid, as well as all other material documents integral to such Bid (the "Qualified Bid Documents"). Such documents must be based on and marked against form documents provided by the Debtors (including a summary of each Bid as may be reasonably requested by the Debtors). Any modifications to the form of documents provided by the Debtors must be in form and substance acceptable to the Debtors, in consultation with the Consultation Parties.

vi.   **Committed Financing.** To the extent that a Bid is not accompanied by evidence of the Qualified Bidder's capacity to consummate the sale set forth in its Bid with cash on hand, each Bid must include unconditional committed financing from a reputable financing institution documented to the satisfaction of the Debtors that demonstrates that the Qualified Bidder has:   (i) received sufficient debt and/or equity funding commitments to satisfy the Qualified Bidder's Purchase Price and other obligations under its Bid; and (ii) adequate working capital financing or resources to finance going concern operations for the Assets and the proposed transactions. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors.

vii.   **Contingencies.** A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence (other than of any surveys that have not yet been obtained by the Bid Deadline with respect to real property that is included in such Bid), but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the

DOCS_LA:336225.9 20375/001
BIDDING PROCEDURES – Page 8

closing of specified conditions, which shall be acceptable to the Debtors in their business judgment, in consultation with the Consultation Parties.

viii. **Identity.** Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Qualified Bidder if such Qualified Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such Bid), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific persons, including financial advisors and counsel, if any, that the Debtors' advisors should contact regarding such Bid.

ix. **Demonstrated Financial Capacity.** A Qualified Bidder must have, in the Debtors' business judgment, the necessary financial capacity to consummate the proposed transactions required by its Bid and provide adequate assurance of future performance under all contracts proposed to be assumed by such Bid.

x. **Time Frame for Closing.** A Bid by a Qualified Bidder must be reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors, in consultation with the Consultation Parties.

xi. **Binding and Irrevocable.** A Qualified Bidder's Bid shall be binding and irrevocable unless and until the Debtors accept a higher Bid for such Asset and such Qualified Bidder is not selected as the Backup Bidder.

xii. **Expenses and Disclaimer of Fees.** Each Bid must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Qualified Bidder will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Bankruptcy Code; *provided*, *however*, that the Debtors may identify a stalking horse bidder pursuant to paragraph 8 of these Bidding Procedures.

xiii. **Authorization.** Each Bid must contain evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

xiv. **Completed Diligence.** Each Bid must include a written acknowledgement and representation that the Qualified Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, other than of any surveys that have not yet been obtained by the Bid Deadline with respect to real property that is included in such Bid; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the bidder's Bid.

xv. **Adherence to Bidding Procedures.** By submitting its Bid, each Bidder shall be deemed to have agreed to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

xvi. **Regulatory Approvals and Covenants.** A Bid must set forth each regulatory and third-party approval required for the Qualified Bidder to consummate the Sale, if any, and the time period within which the Qualified Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the asset purchase agreement, those actions the Qualified Bidder will take to ensure receipt of such approvals as promptly as possible).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

xvii.    **Consent to Jurisdiction.**  The Qualified Bidder shall be deemed to have submitted to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of bids, the Auction, the construction and enforcement of these Bidding Procedures, the Sale documents, and the Closing, as applicable.

xviii.   **Joint Bids.**  Joint Bids are permitted, provided that the Qualified Bidders have complied with the Joint Bid Discussion Protocol.

(a)    **Bid Deadline.**  Each Bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before **fifteen (15) days after entry of the Stalking Horse Bidder Approval Order at 4:00 p.m. (Pacific Time)** (the "Bid Deadline") by: (a) the Debtors, T. Scott Avila, Chief Restructuring Officer (savila@paladinmgmt.com); (b) counsel to the Debtors, Richard M. Pachulski (rpachulski@pszjlaw.com), Ira D. Kharasch (ikharasch@pszjlaw.com), Jeffrey Dulberg (jdulberg@pszjlaw.com), Jason Rosell (jrosell@pszjlaw.com), and Thomas Buford (tubuford@bskd.com); (c) the Debtors' broker, Skye Root (skye@rootagadvisory.com); (d) counsel to the Ranches Committee, Sam Alberts (sam.alberts@dentons.com); and Sarah Schrag (sarah.schrag@dentons.com); and (e) counsel to the Farms Committee, Joseph M. Welch (jwelch@buchalter.com).

## 7.    Right to Credit Bid.

Any Secured Creditor with the right and power to credit bid claims secured by their liens, shall have the right to credit bid all or a portion of such Secured Creditor's secured claims within the meaning of section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its secured claim only with respect to the collateral by which such Secured Creditor is secured.

## 8.    Stalking Horse and Bid Protections.

In consultation with the Consultation Parties, the Debtors may identify the bid of a party to serve as a stalking horse bid (the "Stalking Horse Bidder").  The Debtors may, in consultation with the Consultation Parties, identify more than one Stalking Horse Bidder with respect to separate individual Assets.  Pursuant to the Bidding Procedures Order, the Debtors are authorized, but not obligated, in the exercise of their business judgment, in consultation with the Consultation Parties, to provide the

Stalking Horse Bidder with bid protections (the "Bid Protections"), subject to further Court approval.

To the extent a determination is made to select a Stalking Horse Bidder (or more than one Stalking Horse Bidders with respect to individual Assets), the Debtors will file a motion which shall include a description of any agreed upon Bid Protections and request to approve the same upon shortened notice.

## 9. Auction.

If the Debtors receive a Qualified Bid for an Asset, whether through a Bid for one or more individual Assets or through a Bid for all or substantially all of the Assets (including through a chapter 11 plan of reorganization), the Debtors will conduct the Auction to determine the Successful Bidders with respect to such Asset or Assets, as applicable. If the Debtors do not receive a Qualified Bid for a given Asset, the Debtors will not conduct the Auction as to such Asset. To the extent Qualified Bidders are interested in separate individual Assets and/or all or substantially all of the Assets, the Debtors may, in their sole discretion, conduct separate auctions for the various Assets and Asset packages.

No later than the commencement of the Auction, the Debtors shall notify each Qualified Bidder of the highest or otherwise best Qualified Bid or combination of Qualified Bids for each Asset or Assets, for which such Qualified Bidder submitted a Bid or combination of Bids, as determined in the Debtors' reasonable business judgment, in consultation with the Consultation Parties (the "Baseline Bid"), and provide copies of the applicable Qualified Bid Documents supporting the applicable Baseline Bid to each Qualified Bidder and the Consultation Parties. The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtors reasonably deem, in consultation with the Consultation Parties, relevant to the value of the Qualified Bid to the Debtors' estates, including, but not limited to: (a) the amount and nature of the total consideration (including the amount of cash paid to or remaining in the estate pursuant to the Bid); (b) the likelihood of the Qualified Bidder's ability to close the Sale and the timing thereof; (c) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid Documents; (d) any reduction in claims against one or both of the Debtors as a result of the Qualified Bid; and (e) the tax consequences of such Qualified Bid (collectively, the "Bid Assessment Criteria").

DOCS_LA:336225.9 20375/001
BIDDING PROCEDURES – Page 12

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Auction shall take place on **fourteen (14) days after the Bid Deadline at 10:00 a.m. (Pacific Time)** *via* videoconference, or such later date and time as selected by the Debtors in consultation with the Consultation Parties. The Auction shall be conducted in a timely fashion according to the following procedures:

(a)     **The Debtors Shall Conduct the Auction.**

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of each Baseline Bid. All incremental Bids made thereafter for a given Asset shall be Overbids and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Bids on such Asset. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

Only Qualified Bidders and their legal and financial advisors, and the members of and advisors to the Consultation Parties, and each such parties' respective legal and financial advisors shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person and may speak or Bid themselves or through duly authorized representatives. Only Qualified Bidders shall be entitled to Bid at the Auction.

(b)     **Terms of Overbid.**

"Overbid" means any Bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid. Each applicable Overbid must comply with the following conditions:

      i.    **Minimum Initial Overbid.** Bidding shall commence at the Baseline Bid. The first overbid at the Auction (the "Minimum Initial Overbid") shall be in an amount not less than (i) the amount of the Baseline Bid plus (ii) the Bid Protections (if any) plus (iii) an additional increment in an amount to be determined by the Debtors in consultation with the Consultation Parties (the "Initial Overbid Amount").

      ii.    **Minimum Overbid Increment.** Any Overbid following the Minimum Initial Overbid or following any subsequent Prevailing Highest Bid (as defined below) for all or substantially all of the Assets shall be in increments in such amounts to be determined by

ec26m9015m

the Debtors in consultation with the Consultation Parties. The Debtors may establish different overbid increments at the Auction for any individual Asset or other combination of Assets, as determined by the Debtors in the exercise of their business judgment, in consultation with the Consultation Parties.

iii. **Conclusion of Each Overbid Round.** Upon the solicitation of each round of applicable Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, extend from time to time, the "<u>Overbid Round Deadline</u>") by which time any Overbids must be submitted to the Debtors.

Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors have identified, after consultation with the Consultation Parties, an Overbid as being higher or otherwise better than the Baseline Bid, in the initial Overbid round, or, in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "<u>Prevailing Highest Bid</u>"). The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors (after consultation with the Consultation Parties) to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

iv. **Overbid Alterations.** An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Bid or Overbid, as determined in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, but shall otherwise comply with the terms of these Bidding Procedures.

**(c)** **Consideration of Overbids.**

The Debtors reserve the right, in their reasonable business judgment in consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things: (i) facilitate discussions between the Debtors and Qualified Bidders; (ii) allow Qualified Bidders to consider how they wish to proceed; and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such

DOCS_LA:336225.9 20375/001
BIDDING PROCEDURES – Page 14

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

additional evidence as the Debtors, in their reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Overbid amount.

**(d)**      **Closing the Auction.**

    (i)      The Auction shall continue until there is only one Bid that the Debtors determine, in their reasonable business judgment, and in consultation with the Consultation Parties, to be the highest or otherwise best Bid for such Asset. Such Bid shall be declared the "Successful Bid," and such Qualified Bidder, the "Successful Bidder" and at which point the Auction will be closed as to that Asset. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

    (ii)      For the avoidance of doubt, nothing in these Bidding Procedures shall prevent the Debtors from exercising their respective fiduciary duties under applicable law.

    (iii)      The Debtors shall not consider any Bids or Overbids submitted after the conclusion of the Auction, and any such Bids or Overbids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

    (iv)      As soon as reasonably practicable after closing the Auction, the Debtors shall cause the Qualified Bid Documents for each Successful Bid and Backup Bid (defined below) to be filed with the Court.

**(e)**      **No Collusion; Good-Faith *Bona Fide* Offer.**

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**(f)  Cancellation of Auction.**

**If the Debtors do not receive a Stalking Horse Bid or other Qualified Bid by the Bid Deadline, then the Debtors may file a notice cancelling the Auction.**

## 10.  Backup Bidder.

The Qualified Bidder with the next highest or otherwise second-best Qualified Bid (the "Backup Bid") for each Asset at the Auction (if the Auction is conducted), as determined by the Debtors in the exercise of their business judgment in consultation with the Consultation Parties, shall be required to serve as a backup bidder (the "Backup Bidder").  The Debtors shall announce the identity of any Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder.  The Backup Bidder shall be required to keep its Qualified Bid open and irrevocable until the closing of the transaction with the applicable Successful Bidder.  The Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the applicable Successful Bidder.  If a Successful Bidder fails to consummate its Successful Bid, the Debtors may select the applicable Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes.  The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party.

In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

## 11.  Highest or Otherwise Best Bid.

When determining the highest or otherwise best Bid, as compared to other Bids, the Debtors may consider the Bid Assessment Criteria.

## 12.  Adequate Assurance Information.

Within 24 hours of the filing of the notice of the Successful Bidder and the Backup Bidder, the Successful Bidder and the Backup Bidder will send by overnight delivery to each contract counterparty whose contract is part of such Bid, the financial and other commercial information to demonstrate adequate assurance of future

DOCS_LA:336225.9 20375/001
BIDDING PROCEDURES – Page 16

performance under such contract. Such information will be provided to contract counter parties on a confidential basis.

**13. Reservation of Rights.**

The Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment, in consultation with the Consultation Parties, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all bids or Bids.

**14. Consent to Jurisdiction.**

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bidding Procedures, and/or the Qualified Bid Documents, as applicable.

**15. Sale Hearing**.

The hearing to approve the Sale (the "Sale Hearing") shall take place in the courtroom of the Honorable Whitman L. Holt in the United States Bankruptcy Court for the Eastern District of Washington on **July [●], 2021 at [●][●].m. (Pacific Time)**. Following the conclusion of the Auction, with the consent of the Successful Bidder (in consultation with the Consultation Parties), or as otherwise directed by the Bankruptcy Court, the Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing or by filing a notice on the docket for the Chapter 11 Cases. At the Sale Hearing, the Debtors shall present the Successful Bid to the Bankruptcy Court for approval; *provided*, *however*, to the extent that a successful Bid is to be implemented pursuant to a chapter 11 plan, the Sale Hearing shall be used as a status conference.

**16. No Modification of Bidding Procedures.**

Except as provided by Section 13 hereof, these Bidding Procedures may not be modified except with the Debtors' express written consent, and after consultation with

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Consultation Parties.

## 17. Return of Deposit.

The Deposit of the Successful Bidder shall be applied to the respective Purchase Price of such transaction at closing. The Deposits for each Qualified Bidder shall be held in one or more accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to the Successful Bidder, and the Backup Bidder) on or within three business days after the Auction.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtors as damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

## 18. Fiduciary Out.

Nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of a Debtors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

Dated: **[●]**, 2021                    BUSH KORNFELD LLP

_____

THOMAS A. BUFORD, III (WSBA 52969)
BUSH KORNFELD LLP

RICHARD M. PACHULSKI (admitted *pro hac vice*)
IRA D. KHARASCH (admission *pro hac vice* pending)
JEFFREY W. DULBERG (admitted *pro hac vice*)
JASON H. ROSELL (admitted *pro hac vice*)

DOCS_LA:336225.9 20375/001

BIDDING PROCEDURES – Page 18

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

PACHULSKI STANG ZIEHL & JONES LLP

*Attorneys for Debtors and Debtors in Possession*

DOCS_LA:336225.9 20375/001
BIDDING PROCEDURES – Page 19

# EXHIBIT 2

## Sale Notice

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:336225.9 20375/001

ec26m9015m

ARMAND J. KORNFELD (WSBA #17214)
THOMAS A. BUFORD (WSBA #52969)
RICHARD B. KEETON (WSBA #51537)
BUSH KORNFELD LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Tel.: (206) 292-2110
Facsimile: (206) 292-2104
Emails: jkornfeld@bskd.com,
tbuford@bskd.com, and rkeeton@bskd.com

RICHARD M. PACHULSKI (CA Bar #90073)*
IRA D. KHARASCH (CA Bar #109084)**
JEFFREY W. DULBERG (CA Bar #181200)*
JASON H. ROSELL (CA Bar #269126)*
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003
Tel: (310) 277-6910
Facsimile: (310) 201-0760
Emails: rpachulski@pszjlaw.com,
ikharasch@pszjlaw.com, jdulberg@pszjlaw.com,
and jrosell@pszjlaw.com

*Admitted *Pro Hac Vice*
** Admission *Pro Hac Vice* pending

*Attorneys for the Chapter 11 Debtors and
Debtors in Possession*

HONORABLE WHITMAN L. HOLT

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| EASTERDAY RANCHES, INC., *et al.* | Lead Case No. 21-00141-11<br>Jointly Administered |
| Debtors.[1] | **NOTICE OF PROPOSED SALE OF REAL PROPERTY INTERESTS AND RELATED FARM AND FEEDLOT ASSETS, FREE AND CLEAR OF ALL ENCUMBRANCES, OTHER THAN ASSUMED LIABILITIES, AND** |

---

[1] The Debtors along with their case numbers are as follows: Easterday Ranches, Inc. (21-00141) and Easterday Farms, a Washington general partnership (21-00176).

DOCS_LA:336225.9 20375/001

SALE NOTICE – Page 1

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On March 26, 2021, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a motion (the "Sale Motion") with the United States Bankruptcy Court for the Eastern District of Washington (the "Bankruptcy Court") seeking entry of (i) an order (the "Bidding Procedures Order") (a) approving Bidding Procedures for the sale (the "Sale") of real property interests and related farm equipment and other personal property (collectively, the "Assets") or proposals to sponsor a plan of reorganization (a "Plan"), (b) approving procedures for the assumption and assignment of designated executory contracts and unexpired leases (collectively, the "Transferred Contracts"), and the sale and transfer of other designated contracts, (c) scheduling the Auction and Sale Hearing,[2] and (d) granting related relief (collectively, the "Bidding Procedures Relief"), and (ii) an order (the "Sale Order") (a) authorizing the Sale of the Assets free and clear of all liens, claims, interests, and other encumbrances (collectively, "Encumbrances"), other than assumed liabilities, to the Successful Bidder submitting the highest or otherwise best bid, (b) authorizing the assumption and assignment of the Transferred Contracts, and authorizing the sale and transfer of other designated contracts, and (c) granting certain related relief.

I.    **Bidding Procedures and Stalking Horse Bidder**

On [●], 2021, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. ●], thereby approving the Bidding Procedures Relief and the Debtors' ability to designate a Stalking Horse Bidder in the Debtors' business judgment (in consultation with the Consultation Parties).

In order for a Potential Bidder's bid to be considered to participate in the Auction, **it must comply with the Bidding Procedures, including that its bid must be delivered, so as to be received on or before [●], 2021 at 4:00 p.m. (Pacific Time) (the "Bid Deadline")**, to: (a) the Debtors, T. Scott Avila, Chief Restructuring Officer (savila@paladinmgmt.com); (b) counsel to the Debtors, Richard M. Pachulski (rpachulski@pszjlaw.com), Ira D. Kharasch (ikharasch@pszjlaw.com), Jeffrey

---

[2]    A capitalized term used but not defined herein shall have the meaning ascribed to it in the Bidding Procedures and Bidding Procedures Order, as applicable.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Dulberg (jdulberg@pszjlaw.com), and Jason Rosell (jrosell@pszjlaw.com); (c) the Debtors' broker, Skye Root (skye@rootagadvisory.com); (d) counsel to the Ranches Committee, Sam Alberts (sam.alberts@dentons.com); and Sarah Schrag (sarah.schrag@dentons.com); and (e) counsel to the Farms Committee, Joseph M. Welch (jwelch@buchalter.com) (chris.tennenbaum@fticonsulting.com) (collectively, the "Notice Parties").

To receive copies of the (i) Sale Motion, all other exhibits to the Sale Motion, and/or a confidentiality agreement to become a Potential Bidder (as defined below), or (ii) a copy of the form asset purchase agreement or Stalking Horse Bidder asset purchase agreement, as applicable, kindly submit a request by email to: (a) counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, Attention: Jason Rosell (email: jrosell@pszjlaw.com); and (b) the Debtors' broker, Skye Root (skye@rootagadvisory.com).

In order for Potential Bidders to obtain access to the Debtors' data room, each Potential Bidder must first sign and deliver a confidentiality agreement to the Debtors and provide certain financial data, which must be acceptable to the Debtors. Please refer to the Bidding Procedures for further information concerning submitting a Qualified Bid to participate at the Auction.

II.     **Sale Hearing and Closing**

The Sale Hearing is scheduled for **July [●], 2021 at [●][●].m. (Pacific Time)** before the Honorable Whitman L. Holt in the United States Bankruptcy Court for the Eastern District of Washington. The Sale Hearing is being held to approve the highest or otherwise best offer received for the Assets at the Auction, which, if any, will take place on **[●], 2021** *via* videoconference, **commencing at 10:00 a.m. (Pacific Time)**. The Sale Hearing may be adjourned or rescheduled with prior notice filed on the docket of these Chapter 11 Cases or without prior notice by an announcement of the adjourned date at the Sale Hearing.

**THE DEADLINE TO OBJECT TO THE DEBTORS' REQUEST TO APPROVE THE SALE OF THE PURCHASED ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES TO THE SUCCESSFUL BIDDER (EACH, A "SALE OBJECTION") IS JULY 8, 2021 at 4:00 P.M. (PACIFIC TIME) (THE "SALE OBJECTION DEADLINE").**

Any person or entity wishing to submit a Sale Objection must do so in writing and state with particularity the grounds for such objections or other statements of position. All Sale Objections shall be served so as to be actually received by no later than the Sale Objection Deadline by (i) counsel to the Debtors: (a) Bush Kornfeld LLP, 601 Union Suite, Suite 500, Seattle, WA 98101, Attention: Armand J. Kornfeld (jkornfeld@bskd.com) and Thomas A. Buford (tbuford@bskd.com); and (b) Pachulski Stang Ziehl & Jones, LLP, 10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA 90067, Attention: Richard M. Pachulski (rpachulski@pszjlaw.com), Ira D. Kharasch (ikharasch@pszjlaw.com), Jeffrey W. Dulberg (jdulberg@pszjlaw.com) and Jason H. Rosell (jrosell@pszjlaw.com); (ii) the Office of the United States Trustee for the Eastern District of Washington, 920 W Riverside Ave, Suite 593, Spokane, WA 99201, Attn: Gary W. Dyer (Gary.W.Dyer@usdoj.gov); and (iii) those parties who have filed notices of appearance and/or requested service of all motions and pleadings in these Chapter 11 Cases prior to the date of service thereof.

The failure of any person or entity to file and serve a Sale Objection on or before the Sale Objection Deadline, as applicable, (i) shall be deemed a consent to the Sale to the Successful Bidder and the other relief requested in the Sale Motion, and (ii) shall be a bar to the assertion of any objection the sale of the Assets to the Successful Bidder (including in any such case, without limitation, the transfer of the Assets free and clear of all Encumbrances, other than the assumed liabilities).

## III.   The Debtors' Contracts and Leases

The Sale Order, if approved, shall authorize the assumption and assignment of the Transferred Contracts of the Debtors. In accordance with the Bidding Procedures Order, individual notices setting forth the specific Transferred Contracts to be assumed by the Debtors and assigned to the Successful Bidder, or sold and transferred to the Successful Bidder, and the proposed Cure Amounts for such contracts will be given to all counterparties to the Transferred Contracts. Such counterparties will be given the opportunity to object to the assumption and assignment, or sale and transfer, of a Transferred Contract and the proposed Cure Amount. This Notice is subject to the full terms and conditions of the Bidding Procedures and the Bidding Procedures Order, which shall control in the event of any conflict. The Debtors encourage all persons to review such documents and all other Sale-related documents in their entirety and to consult an attorney if they have questions or want advice.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

Dated: [●], 2021    BUSH KORNFELD LLP

_____

THOMAS A. BUFORD, III (WSBA 52969)
BUSH KORNFELD LLP

RICHARD M. PACHULSKI (admitted *pro hac vice*)
IRA D. KHARASCH (admission *pro hac vice*
pending)
JEFFREY W. DULBERG (admitted *pro hac vice*)
JASON H. ROSELL (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP

*Attorneys for Debtors and Debtors in Possession*

# __EXHIBIT 3__

## Assumption and Assignment Notice

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:336225.9 20375/001

ec26m9015m

ARMAND J. KORNFELD (WSBA #17214)
THOMAS A. BUFORD (WSBA #52969)
RICHARD B. KEETON (WSBA #51537)
BUSH KORNFELD LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Tel.: (206) 292-2110
Facsimile: (206) 292-2104
Emails: jkornfeld@bskd.com,
tbuford@bskd.com, and rkeeton@bskd.com

RICHARD M. PACHULSKI (CA Bar #90073)*
IRA D. KHARASCH (CA Bar #109084)**
JEFFREY W. DULBERG (CA Bar #181200)*
JASON H. ROSELL (CA Bar #269126)*
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003
Tel: (310) 277-6910
Facsimile: (310) 201-0760
Emails: rpachulski@pszjlaw.com,
ikharasch@pszjlaw.com, jdulberg@pszjlaw.com,
and jrosell@pszjlaw.com

*Admitted *Pro Hac Vice*
**Admission *Pro Hac Vice* pending

*Attorneys for the Chapter 11 Debtors and
Debtors in Possession*

HONORABLE WHITMAN L. HOLT

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| EASTERDAY RANCHES, INC., *et al.* | Lead Case No. 21-00141-11 Jointly Administered |
| Debtors.[1] | **NOTICE OF INTENT TO ASSUME AND ASSIGN DESIGNATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND TO PAY PROPOSED CURE AMOUNTS** |

[1] The Debtors along with their case numbers are as follows: Easterday Ranches, Inc. (21-00141) and Easterday Farms, a Washington general partnership (21-00176).

DOCS_LA:336225.9 20375/001

ASSUMPTION AND ASSIGNMENT/CURE NOTICE
– Page 1

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On March 26, 2021, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a motion (the "Sale Motion") with the United States Bankruptcy Court for the Eastern District of Washington (the "Bankruptcy Court") seeking entry of (i) an order (the "Bidding Procedures Order") (a) approving Bidding Procedures for the sale (the "Sale") of real property interests and related farm equipment and other personal property (collectively, the "Assets") or proposals to sponsor a plan of reorganization (a "Plan"), (b) approving procedures for the assumption and assignment of designated executory contracts and unexpired leases (collectively, the "Transferred Contracts"), and the sale and transfer of other designated contracts, (c) scheduling the Auction and Sale Hearing,[2] and (d) granting related relief (collectively, the "Bidding Procedures Relief"), and (ii) an order (the "Sale Order") (a) authorizing the Sale of the Assets free and clear of all liens, claims, interests, and other encumbrances (collectively, "Encumbrances"), other than assumed liabilities, to the Successful Bidder submitting the highest or otherwise best bid, (b) authorizing the assumption and assignment of the Transferred Contracts, and authorizing the sale and transfer of other designated contracts, and (c) granting certain related relief.

On [●], 2021, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. ●], thereby approving the Bidding Procedures Relief.

[The Debtors have entered into that certain Purchase Agreement dated [●], 2021 (the "Stalking Horse APA"). On [●], 2021, the Bankruptcy Court entered an order approving certain bid protections and fixing certain dates and deadlines in connection with the Debtors' entry into the Stalking Horse APA.]

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU ARE A PARTY TO ONE OR MORE OF THE CONTRACTS OR LEASES REFERRED TO HEREIN.**

**TRANSFERRED CONTRACTS**

Attached as Exhibit A is a schedule of all executory contracts and unexpired leases (collectively, the "Transferred Contracts") that *may* be assumed and assigned to the Successful Bidder, listing the counterparties to such contracts (the "Contract

---

[2]  A capitalized term used but not defined herein shall have the meaning ascribed to it in the Bidding Procedures and Bidding Procedures Order, as applicable.

DOCS_LA:336225.9 20375/001

ASSUMPTION AND ASSIGNMENT/CURE NOTICE
– Page 2

ec26m9015m

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Counterparties") and the amount, if any, proposed to be paid to cure any monetary defaults under the Transferred Contracts pursuant to section 365 of the Bankruptcy Code (the "Cure Amounts"). The Successful Bidder reserves the right to revise these schedules in accordance with its Qualified Bidder APA and Bidding Procedures at any time prior to the closing on the Purchased Assets.

To the extent that any Transferred Contract is determined by an order of the Bankruptcy Court, or as between the Debtors and the applicable Contract Counterparty, not to be an executory contract under and for purposes of section 365 of the Bankruptcy Code, all right, title and interest in, to and under such Transferred Contracts shall instead be sold, assigned, and transferred to the Successful Bidder pursuant to section 363 of the Bankruptcy Code. Prior to any such sale and transfer of a Transferred Contract, the Successful Bidder shall cure any monetary defaults or pay other amounts due under such Transferred Contract which are capable of being cured or paid as if such Transferred Contract had been subject to section 365 of the Bankruptcy Code.

## A. **Cure Objection Deadline**

IF YOU AGREE WITH THE PROPOSED CURE AMOUNTS LISTED IN **EXHIBIT A** WITH RESPECT TO YOUR TRANSFERRED CONTRACT(S), YOU ARE NOT REQUIREDTO TAKE ANY FURTHER ACTION.

IF YOU DISAGREE WITH THE PROPOSED CURE AMOUNTS LISTED IN **EXHIBIT A** WITH RESPECT TO YOUR CONTRACT(S), YOU MAY OBJECT TO THE PROPOSED CURE AMOUNTS NO LATER THAN **[●], 2021 AT 4:00 P.M. (PACIFIC TIME)** (the "Cure Objection Deadline").

Objections to a proposed Cure Amount (a "Cure Objection") must be made in writing and filed on the docket for the Chapter 11 Cases no later than the Cure Objection Deadline and state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged to be due by such Contract Counterparty, and include complete contact information for such Contract Counterparty (including address, telephone number, and email address); (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iv) be served on the following, so as to be actually received by them on or before the Cure Objection Deadline (collectively, the "Notice Parties"):

            i.    Counsel to the Debtors. (a) Bush Kornfeld LLP, 601 Union

DOCS_LA:336225.9 20375/001

ASSUMPTION AND ASSIGNMENT/CURE NOTICE
– Page 3

ec26m9015m

Suite, Suite 500, Seattle, WA 98101, Attention: Armand J. Kornfeld (jkornfeld@bskd.com) and Thomas A. Buford (tbuford@bskd.com); and (b) Pachulski Stang Ziehl & Jones, LLP, 10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA 90067, Attention: Richard M. Pachulski (rpachulski@pszjlaw.com), Ira D. Kharasch (ikharasch@pszjlaw.com), Jeffrey W. Dulberg (jdulberg@pszjlaw.com) and Jason Rosell (jrosell@pszjlaw.com).

ii. the Office of the United States Trustee for the Eastern District of Washington, 920 W Riverside Ave, Suite 593, Spokane, WA 99201, Attn: Gary W. Dyer (Gary.W.Dyer@usdoj.gov).

iii. Counsel to the Official Committee of Unsecured Creditors of Easterday Ranches, Inc. (a) Dentons US LLP, 1900 K Street, NW, Washington, DC 20006, Attention: Sam Alberts (sam.alberts@dentons.com); and (b) Dentons US LLP, 303 Peachtree Street, NE, Suite 5300, Atlanta, GA 30308, Attention: Sarah Schrag (sarah.schrag@dentons.com).

iv. Counsel to the Official Committee of Unsecured Creditors of Easterday Farms. Buchalter, a Professional Corporation, 18400 Van Karman Avenue, Suite 800, Irvine, CA 92612, Attention: Joseph M. Welch (jwelch@buchalter.com).

**B.** **Assignment Objection Deadline**

Any other objections to the assumption and assignment of any of the Transferred Contracts (an "Assignment Objection") must: (i) be made in writing and filed on the docket for the Chapter 11 Cases no later than **July 8, 2021 at 4:00 p.m. (Pacific Time)** (the "Assignment Objection Deadline"); (ii) state the basis of such objection with specificity and include complete contact information for such Contract Counterparty (including address, telephone number, and email address); (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iv) be served on the Notice Parties so as to be actually received by them on or before the Assignment Objection Deadline.

DOCS_LA:336225.9 20375/001

ASSUMPTION AND ASSIGNMENT/CURE NOTICE
– Page 4

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

If you file a Cure Objection or Assignment Objection satisfying the requirements herein, the Debtors and the Successful Bidder or Stalking Horse Bidder, as applicable, will confer with you in good faith to attempt to resolve any such Cure Objection or Assignment Objection without Bankruptcy Court intervention. If the applicable parties determine that the Cure Objection or Assignment Objection cannot be resolved without judicial intervention in a timely manner, the Bankruptcy Court shall resolve such objections at the Sale Hearing or such other date designated by the Bankruptcy Court.

If the Successful Bidder or Backup Bidder, in accordance with the Bidding Procedures, identifies additional executory contracts or unexpired leases that it wishes to add to the Transferred Contracts and Cure Schedule (each an "Additional Contract") (or wishes to remove a Transferred Contract from the Transferred Contracts and Cure Schedule), the Debtors shall, within two calendar days of the Successful Bidder or Backup Bidder making such a determination, send a supplemental Assumption and Assignment Notice to the applicable Contract Counterparties to such executory contracts or unexpired leases added or removed from the Transferred Contracts and Cure Schedule. To the extent an executory contract or unexpired lease is not assumed and assigned to the Successful Bidder, the Debtors may, in their sole discretion, reject such an unassigned executory contract or unexpired lease to the extent permitted by law. In no event will the Successful Bidder be responsible for any unassigned executory contracts or unexpired leases.

Objections from any Contract Counterparty to an Additional Contract (an "Additional Assignment Objection") must: (i) be made in writing and filed on the docket for the Chapter 11 Cases no later than 7 calendar days after the Debtors have sent notice to such Contract Counterparty of their intention to assume and assign such Additional Contract (as applicable, the "Additional Assignment Objection Deadline"), (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged by such Contract Counterparty, and include contact information for such Contract Counterparty, (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iv) be served upon the Notice Parties so as to be actually received by them on or before the Additional Assignment Objection Deadline.

If a timely objection is filed, and cannot be resolved consensually, the Bankruptcy Court shall resolve such objection at a hearing to be held (i) on or before 7 calendar days from the timely filing of the Additional Assignment Objection or (ii) such other date designated by the Bankruptcy Court. Unless the Bankruptcy Court

DOCS_LA:336225.9 20375/001

ASSUMPTION AND ASSIGNMENT/CURE NOTICE
– Page 5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ec26m9015m

orders otherwise, contemporaneously with the resolution of any such objection, the Additional Contract underlying such objection shall be deemed to have been assumed and assigned, or assigned, as the case may be, to the Successful Bidder or the Backup Bidder, as the case may be, without the necessity of obtaining any further order of the Bankruptcy Court.

**IF YOU FAIL TO TIMELY FILE AND PROPERLY SERVE A CURE OBJECTION OR ASSIGNMENT OBJECTION AS PROVIDED HEREIN (I) YOU WILL BE DEEMED TO HAVE FOREVER WAIVED AND RELEASED ANY RIGHT TO ASSERT A CURE OBJECTION, ASSIGNMENT OBJECTION OR ADDITIONAL ASSIGNMENT OBJECTION, AS APPLICABLE, AND TO HAVE OTHERWISE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT, OR SALE AND TRANSFER, OF THE DEBTORS' RIGHT, TITLE, AND INTEREST IN, TO AND UNDER, SUCH TRANSFERRED CONTRACT ON THE TERMS SET FORTH IN THIS ASSIGNMENT NOTICE AND THE ASSET PURCHASE AGREEMENT TO BE ENTERED INTO WITH THE SUCCESSFUL BIDDER, (II) YOU WILL HAVE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT OF, OR SALE AND TRANSFER OF, THE DEBTORS' OR NON-DEBTOR'S RIGHT, TITLE, AND INTEREST IN, TO AND UNDER, ITS TRANSFERRED CONTRACT, AS THE CASE MAY BE, WITHOUT THE NECESSITY OF OBTAINING ANY FURTHER ORDER OF THE BANKRUPTCY COURT, AND (III) YOU WILL BE BARRED AND ESTOPPED FOREVER FROM ASSERTING OR CLAIMING AGAINST THE DEBTORS, THE SUCCESSFUL BIDDER, OR THE BACKUP BIDDER THAT ANY ADDITIONAL CURE AMOUNTS ARE DUE OR DEFAULTS EXIST, OR CONDITIONS TO ASSUMPTION AND ASSIGNMENT, OR SALE AND TRANSFER, MUST BE SATISFIED, UNDER SUCH TRANSFERRED CONTRACT.**

The Debtors' assumption and assignment, or sale and transfer, of a Transferred Contract is subject to approval by the Bankruptcy Court, and consummation of the closing of the Sale. If there is no closing, the Transferred Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors.

The inclusion of any document on the list of Transferred Contracts shall not constitute or be deemed to be a determination or admission by the Debtors or the Successful Bidder that such document is, in fact, an executory contract or unexpired

DOCS_LA:336225.9 20375/001

ASSUMPTION AND ASSIGNMENT/CURE NOTICE
– Page 6

ec26m9015m

lease within the meaning of the Bankruptcy Code, and all rights with respect thereto are expressly reserved.

Any Cure Objection or Assignment Objection shall not constitute an objection to any of the other relief requested in the Sale Motion to be approved by the Sale Order (*e.g.*, the sale of the Assets by the Debtors to the Successful Bidder free and clear of all Encumbrances other than assumed liabilities). Parties wishing to object to the other relief requested in the Sale Motion (excluding the Bidding Procedures) must timely file and serve a separate objection, stating with particularity such party's grounds for objection, in accordance with the objection procedures approved and set forth in the Bidding Procedures Order.

The dates set forth in this notice are subject to change, and further notice of such changes may not be provided except through announcements in open court and/or the filing of notices and/or amended agendas and/or in accordance with the Bidding Procedures Order.

This Notice is subject to the full terms and conditions of the Bidding Procedures and Bidding Procedures Order, which shall control in the event of any conflict. The Debtors encourage parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated: **[●]**, 2021          BUSH KORNFELD LLP

_____

THOMAS A. BUFORD, III (WSBA 52969)
BUSH KORNFELD LLP

RICHARD M. PACHULSKI (admitted *pro hac vice*)
IRA D. KHARASCH (admission *pro hac vice* pending)
JEFFREY W. DULBERG (admitted *pro hac vice*)
JASON H. ROSELL (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP

*Attorneys for Debtors and Debtors in Possession*

DOCS_LA:336225.9 20375/001

ASSUMPTION AND ASSIGNMENT/CURE NOTICE – Page 7

# <u>EXHIBIT A</u>

Schedule of Transferred Contracts

| No. | Contract/Lease Party | Contract Counterparty | Contract/Lease Title | Date of Entry | Cure Amount |
|-----|----------------------|-----------------------|----------------------|---------------|-------------|
| 1.  | [X]                  | [X]                   | [X]                  | [X]           | $[X]        |

ec26m9015m