# Mack Financial Services

**Master Loan and Security Agreement**

| BORROWER'S NAME AND ADDRESS | | |
|---|---|---|
| Legal Name: | Easterday Farms | |
| Business Type: | Partnership | |
| Mailing Address: | 5235 N INDUSTRIAL WAY , PASCO, WA, 99301 | |
| Street Address: | 5235 N. Industrial Way | |
| City: PASCO | State: WA | Zip: 99301 |
| County: FRANKLIN | Telephone: 509-547-9600 | Fax: |
| Federal ID/SSN: | Email: | |
| Customer No: 7610239 | State of Formation: WA or State of Residence: N/A | |

**Borrower:** Easterday Farms

**Signature:** _(signature)_ (SEAL)

**Title:** Partner

**Print Name:** COODY A EASTERDAY

**Lender: Mack Financial Services, a division of VFS US LLC**
7025 Albert Pick Road, Suite 105 (27409)
P.O. Box 26131
Greensboro, North Carolina 27402-6131
**Signature:** _____
**Print Name:** _____
**Title:** _____

This Master Loan and Security Agreement (this **"Master Agreement"**) is entered into as of 7/23/2020 by and between Easterday Farms, (and if more than one, jointly and severally, the **"Borrower"**), whose principal place of business (or primary residence, if an individual) is located at the address set forth above, and Mack Financial Services, a division of VFS US LLC, a Delaware limited liability company (together with its successors and assigns, **"Lender"**).

Borrower has requested Lender to make loans from time to time to Borrower, the proceeds of which will be used by Borrower to acquire directly from sellers and/or manufacturers such construction equipment, motor vehicles, trailers, and other personal property or related equipment (collectively, the **"Equipment"**) as more particularly described on promissory notes and schedules to be attached from time to time to this Master Agreement, each in the form attached as Exhibit "A" (each collectively a **"Schedule"**). Borrower understands and agrees that it shall at all times be bound by the terms and duties set forth in this Master Agreement and in the Schedules and that the Schedules shall be interpreted and construed consistent with the terms of this Master Agreement. In consideration for Borrower's agreement to abide by all such terms, and, subject to the terms and conditions of this Master Agreement, Lender has agreed to make such loans to Borrower. In order to induce Lender to enter into this Master Agreement, all Schedules, and all addenda executed or delivered by Borrower and/or Lender herewith and therewith (this **"Agreement,"** and together with all other documents executed or delivered in connection with this Agreement, including any guaranties and all other documents of any other obligor required under this Agreement, the **"Loan Documents"**), Borrower has agreed to grant Lender a purchase-money, first-priority security interest in the Equipment. Each Schedule shall be deemed a separate loan agreement with respect to the Equipment described therein. The terms **"Loan Parties"** and, individually, a **"Loan Party"** shall mean Borrower or any other person that from time to time is obligated to Lender under any of the Loan Documents, including any guarantor of any or all of the Obligations (as defined in Section 2).

For valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrower, under seal, and Lender agree as follows:

**1. The Loan.** Subject to the satisfaction of all of the terms and conditions of this Agreement, Lender agrees to loan to Borrower, in one or more transactions, such amounts as may be mutually agreed upon by Lender and Borrower from time to time (collectively, the **"Loan Amount"**):

**(a) Advances.** Each advance of a portion of the Loan Amount (each, an **"Advance"**) shall be evidenced by a Schedule. Principal shall bear interest at the Interest Rate (as specified on the applicable Schedule) from the date of disbursement until the applicable due date, whether due by acceleration or otherwise. All interest due under this Agreement shall be computed on the basis of a 360-day year and accrue on a daily basis for the actual number of calendar days elapsed. All Obligations not paid when due shall bear interest at a rate which is the lesser of 18% per annum or the maximum rate allowed by law (such rate, the **"Default Rate"**). Borrower agrees to pay an effective rate of interest that is the sum of (i) the Interest Rate and (ii) the additional rate of interest resulting from any other charges or fees paid or to be paid in connection with this Agreement that are determined to be interest or in the nature of interest.

**(b) Payments.** Borrower promises to pay principal and interest in monthly payments in arrears in the amounts and on the dates specified in each Schedule. Any payment due on a date when banking institutions are not open to the public under the laws of the United States or the State of North Carolina shall be due on the next succeeding date on which such institutions are open. On the Maturity Date (as specified on the applicable Schedule), Borrower shall pay to Lender the unpaid principal, all accrued and unpaid interest and all other Obligations then due and owing to Lender. Borrower agrees to make all payments of any amounts due under this Agreement in the manner required by Lender, including, but not limited to, by wire transfer, electronic funds transfer, or automatic withdrawal from Borrower's accounts. Payments shall not be deemed received by Lender until good funds are actually received by Lender. All payments and obligations of Borrower under this Agreement will be made and performed without counterclaim, deduction, defense, deferment, set-off, or reduction. If any payment of principal and interest of any other Obligation is not received in full by Lender within 15 calendar days after its due date, Lender shall charge a late fee of five percent (5%) of the amount due and unpaid, which such fee shall be immediately due and payable upon receipt of written notice from Lender and shall constitute an Obligation. Acceptance of late payments shall not waive (i) the TIME IS OF THE ESSENCE PROVISION, (ii) the right of Lender to require that subsequent payments be made when due, or (iii) the right of Lender to declare an Event of Default (as defined in Section 9) if subsequent payments are not made when due. At the option of Lender, payments shall be applied to principal, interest, and other Obligations in such order as Lender shall determine. If at any time or from time to time, whether before or after payment and performance of the Obligations in full, all or any part of any amount received by Lender as payment of an Obligation must be or is claimed to be subject to avoidance, rescission, or return to any Loan Party for any reason whatsoever, such Obligation and any liens, security interests, and other encumbrances that secured such Obligations at the time such avoidance, rescission, or returned payment was received by Lender shall be deemed to have continued in existence or shall be reinstated, as the case may be, all as though such payment had not been received. All calculations made by Lender with respect to amounts due under the Loan Documents shall be deemed conclusive and binding for all purposes absent manifest error.

6465555: TA 49: 03:20

**EXHIBIT 1**
**Page 1 of 5**

**(c) Conditions Precedent.** Lender shall have no obligation to make any Advance to or on behalf of Borrower until all of the following conditions precedent are fulfilled to the reasonable satisfaction of Lender: (i) all of the representations made by Borrower in this Agreement are true and accurate as of the date of such requested Advance (each such date, a **"Funding Date"**); (ii) Borrower has provided Lender with evidence of Borrower's compliance with the insurance requirements set forth in this Agreement; (iii) Lender has received UCC Financing Statements (if required by Lender) which Borrower hereby authorizes Lender to file and, if applicable, evidence that the Equipment for which the Advance has been requested has been or will be titled and registered, in each case in a manner that will reflect Lender's first-priority security interest in form and substance satisfactory to Lender, including, for titled Equipment, a certificate of title on each item of Equipment showing Lender as first lienholder; (iv) Borrower has provided or caused to be provided certificate(s) of a secretary or other authorized officer of each Loan Party certifying as to (A) the authority of such Loan Party to execute and deliver, and perform its obligations under, the Loan Documents to which it is a party, (B) the incumbency and signatures of the officers authorized to execute the Loan Documents and (C) if required by Lender, the accuracy and completeness of such Loan Party's attached organizational and governing documents; (v) if required by Lender, Lender has received executed guaranties in form and substance satisfactory to Lender; (vi) Lender has received a Schedule executed by Borrower, in form and substance satisfactory to Lender; and (vii) such other documents or legal opinions as may be requested by Lender.

**2. Security Agreement.** To secure Borrower's full and complete payment and performance under this Agreement, Borrower hereby grants to Lender a security interest in and to the Equipment and such other equipment and goods as described on the Schedules now and hereafter to be attached to this Master Agreement together with all attachments, accessions, replacements, parts, proceeds (including insurance proceeds), accounts, rights to payment (including monetary obligations, whether or not earned by performance), secondary obligations incurred or to be incurred, chattel paper, electronic chattel paper, general intangibles, payment intangibles, instruments, warranties, service contracts, documents and records now or hereafter arising from the Equipment (collectively, the **"Collateral"**). The security interest in the Collateral and the rights granted hereunder shall secure the following (collectively, the **"Obligations"**): (a) the indebtedness of Borrower to Lender or any affiliates of Lender evidenced by this Agreement (and any renewals, extensions, or modifications thereof), together with interest thereon, late charges, and costs of collection as provided in this Agreement; (b) the payments of all amounts agreed to be paid by Borrower in this Agreement; and (c) the observance and performance by Borrower of all of the terms, provisions, and covenants to be performed by Borrower under this Agreement, or under any agreement(s), of whatever nature, with Lender or any affiliate of the Lender. The security interest shall remain in full effect, without waiver or surrender of any of Lender's rights hereunder, notwithstanding any one or more of the following: (i) extension of the time of payment of the whole or any part of any Schedule; (ii) any change in the terms and conditions of any Schedule; (iii) substitution of any other evidence of indebtedness for any Schedule; (iv) surrender, release, exchange, or alteration of any Collateral or other security, either in whole or in part; or (v) release, settlement, discharge, compromise, change, or amendment, in whole or in part, of any claim of Lender against any Loan Party.

**3. Borrower's Representations.** Borrower warrants and represents to Lender, expressly acknowledging that Lender is relying on these warranties and representations, that, as of the date of this Master Agreement and/or each Funding Date, as applicable, and agrees that until all of the Obligations have been irrevocably satisfied in full: (a) all information supplied by Borrower in any financial, credit, or accounting statement is and will be true, correct, valid and genuine; (b) each item of the Equipment is to be used only for business, and not for personal, family or household, purposes; (c) if Borrower is not an individual, Borrower is duly organized, validly existing, and in good standing under the laws of the state of its formation; (d) Borrower has the full authority to enter into each of the Loan Documents and to perform all of its obligations under each of the Loan Documents; (e) Borrower has duly authorized, executed, and delivered all of the Loan Documents to which it is a party and each such Loan Documents constitutes the legal, valid, and binding obligation of Borrower, enforceable against Borrower in accordance with its terms; (f) the execution and delivery of, and performance of the transactions contemplated in, each of the Loan Documents do not require the approval of any stockholder, trustee, or holder of any obligations of Borrower and do not and will not violate any law, rule, or order now binding on Borrower, or the charter, by-laws, or other governing documents of Borrower, or violate the provisions of, constitute a default under, or result in the creation of any lien or encumbrance upon the property of Borrower under, any contract or agreement to which Borrower is a party or by which it or its assets are bound, or require the consent or approval or the giving of notice to the federal or any state or local government (other than customary titling, registration, and security interest filings); (g) there are no pending or overtly threatened actions or proceedings, which either, individually, or in the aggregate, would materially adversely affect the financial condition of Borrower or Borrower's ability to fully perform all of its obligations under any of the Loan Documents; (h) the Equipment is owned by Borrower and free of all security interests and liens, except for the lien of this Agreement; (i) Borrower maintains its principal place of business or principal residence at the address set forth on page 1 of this Master Agreement, and Borrower's exact legal name (if Borrower is an individual, Borrower's legal name is the name exactly as it appears on Borrower's most recent, unexpired driver's license issued by the state of his/her principal residence) and state of formation or principal residence are identified on page 1 of this Master Agreement; (j) Lender shall have a perfected security interest in the Collateral at all times that shall be prior to any other interests in the Collateral; and (k) that no Event of Default or event which, but for the passage of time or the giving of notice, or both, would constitute an Event of Default under any of the Loan Documents has occurred and is continuing.

**4. Borrower's Obligations.** In addition to and not in limitation of any other agreements of Borrower under the Loan Documents, Borrower agrees at its sole expense: (a) to use or permit the use of each item of Equipment only in the United States (and, solely in the case of titled Equipment, in Canada for not more than 60 calendar days per rolling 12 calendar month period to be determined individually for each item of Equipment) in accordance with all applicable laws, regulations and insurance policies; (b) to keep each item of Equipment free from all claims, liens, encumbrances and attachments of any kind whatsoever, other than the lien of Lender; (c) to file, report, and pay by the applicable due date all taxes, fees, and assessments on the Equipment and this Agreement, sending a copy of such filing and payment contemporaneously to Lender; (d) to defend any action, proceeding, or claim affecting the Collateral or Lender's first-priority security interest therein; (e) to maintain the Equipment in good operating condition, repair, and appearance in conformity with all governmental regulations, insurance requirements, and manufacturer's warranty requirements; (f) if titled Equipment, to obtain a certificate of title on each item of Equipment showing Lender's first-priority security interest, and for all types of Equipment, to preserve and perfect Lender's security interest; (g) to not misuse, secrete, sell, rent, lend, encumber, transfer, or illegally use any of the Equipment nor permit any item of Equipment to be operated by or be in the possession of any affiliate of Borrower nor any other entity nor assign any of its interests or obligations under this Agreement (regardless of whether any of the foregoing occur voluntarily or by operation of law); (h) that Lender may enter any premises to inspect the Equipment or Borrower's books and records on the Equipment at any time during usual business hours; (i) promptly upon request of Lender, to provide Lender with complete financial information of the Loan Parties to include income statements and balance sheets, prepared in accordance with generally accepted accounting principles, on a quarterly basis within 30 calendar days after the end of each quarter and on an annual basis within 90 calendar days after each fiscal year end, reviewed or audited as customarily prepared by Loan Parties; (j) to give Lender prompt written notice of any lien or claim on any item of Equipment for which it is obligated to indemnify Lender; (k) it will not transfer or permit any transfer of any part of the Collateral to be made or any interest therein to be created by sale (except as expressly permitted in this Agreement), grant of a security interest, or by levy, or other judicial process (whether occurring voluntarily or by operation of law); (l) to take all actions and execute and file all documents reasonably requested by Lender to establish, maintain, and continue the perfected security interest of Lender in the Collateral (including without limitation execution or re-execution of any document required to correct previous error), and that a carbon, photographic, or other reproduction of this Agreement may be filed as a financing statement; (m) within 15 calendar days of receipt of written notice from Lender, to pay all costs and expenses of filing and recording (including the costs of all searches deemed necessary by Lender) to establish, maintain, and determine the validity and priority of Lender's security interest; (n) within 10 calendar days after any request of Lender, to reaffirm the amount due under any Schedule and provide a description of any alleged offsets, counterclaims, or defenses to the payment thereof; (o) it will not change its principal place of business, primary residence, state of formation, or legal name without 30 calendar days' prior written notice to Lender; (p) it will not permit the Equipment to be used for transportation of passengers or for the digging, hauling, loading, storing or transporting of material designated as hazardous, radioactive, toxic, flammable, or explosive, or environmentally hazardous, unsafe, or dangerous under any federal, state, or local law, rule, regulation or requirement. (q) to pay on demand all reasonable external and internal costs, expenses, and fees (including

2(5)

6465555 TA 49-03.20

EXHIBIT 1
21-00141-WLH11    Doc 604-1    Filed 04/21/21    Entered 04/21/21 12:42:07    Pg 2 of 5
Page 2 of 5

reasonable legal fees and expenses) of Lender in enforcing the Loan Documents and the rights and remedies of Lender under the Loan Documents and applicable law, regardless of whether any legal action or proceeding is instigated, which such costs, expenses, and fees shall constitute an Obligation secured by the Collateral; and (r) it will not interfere with the operation of any telematics system in any Equipment and that Lender may monitor or access the Equipment utilization, location and other information or reports contained in or generated by any such telematics system to ensure compliance with this Agreement, or for any other lawful purpose, and may use any telematics system or information generated by the telematics system to locate the Equipment in the event of default under this Agreement.

**5. Insurance and Risk of Loss.** All risk of loss, damage or destruction of the Equipment will at all times be on Borrower. Borrower agrees, to the extent permitted and in a manner permitted by applicable law, to maintain, at its expense: (a) Special Form property insurance or other insurance acceptable to Lender, protecting the Equipment from loss or damage by fire, theft and other customary risks for the greater of the Equipment's replacement cost or the Obligations with a deductible not to exceed $2,500 per item of Equipment, naming Lender as a loss payee on a "Lender's Loss Payable" endorsement; and (b) liability insurance in an amount not less than $1,000,000 per occurrence and, upon request by Lender, naming Lender as an additional insured (collectively, **"Required Insurance"**). Borrower must provide Lender satisfactory written evidence of Required Insurance within 30 calendar days of the commencement date of this Agreement, the cancellation or expiration of such Required Insurance, or upon any subsequent written request from Lender. If Borrower does not do so, Lender may obtain insurance from an insurer of Lender's choosing in such forms and amounts as Lender deems reasonable to protect Lender's interests (collectively, **"Lender's Insurance"**). Lender's Insurance will cover the Equipment and Lender; it will not name Borrower as an insured and may not cover all of the Borrower's interest in the Equipment. Borrower agrees to pay Lender periodic charges for Lender's Insurance (collectively, **"Insurance Charges"**) that include: (i) a premium that may be higher than if the Borrower maintained the Required Insurance separately; (ii) a finance charge of up to 1.5% per month on any advances made by Lender or Lender's agents; and (iii) commissions, and billing and processing fees, any or all of which may generate a profit to Lender and Lender's agents. If Borrower fails to provide satisfactory evidence of Required Insurance by the due date, Lender may pay Insurance Charges by debiting Borrower's account under any previously authorized automatic payment. Lender shall discontinue billing or debiting Insurance Charges upon receipt of satisfactory evidence of Required Insurance. Borrower shall immediately notify Lender in writing of any damage, theft or loss to Equipment that makes any item of Equipment unfit for continued or repairable use. Lender may apply insurance proceeds to the Obligations or any other obligation of Borrower to Lender as Lender deems appropriate.

**6. Power of Attorney.** Borrower hereby irrevocably appoints Lender as Borrower's attorney-in-fact to execute and endorse all checks or drafts in Borrower's name to collect under any insurance covering Equipment. If titled Equipment, Borrower hereby grants Lender an irrevocable power of attorney for the purpose of titling and registering the Equipment and perfecting Lender's security interest in the Collateral. If non-titled Equipment, Borrower hereby appoints Lender as agent for the benefit of Borrower and grants Lender an irrevocable power of attorney to take any and all actions and to execute and file all documents necessary to establish, maintain, and continue the perfected security interest of Lender in the Equipment, in the name of and on behalf of Borrower, at Borrower's sole cost and expense. Each such power of attorney is coupled with an interest and is irrevocable so long as any Obligations remain outstanding.

**7. Borrower's General Indemnities.** Borrower agrees that (a) Borrower will indemnify, defend and hold harmless and upon demand reimburse Lender and its agents and employees for, from, and against (i) any and all liabilities (including strict liability), losses, damages (whether incidental, consequential, or direct), actions, causes of action, suits, proceedings, claims, demands (for compensation, indemnification, reimbursement, or otherwise), assessments, fines, penalties, judgments, fees, costs and expenses (including legal fees and expenses) of every kind and nature related to the Loan Documents, the Collateral, or any part thereof, (ii) the selection, manufacture, purchase, delivery, sale, possession, operation, use, misuse, contents, repair, collision, personal injury, death, condition, or return of any item of Equipment and any breach by Borrower of any of its obligations to Lender under this Agreement; or (iii) any action taken by Lender hereunder (a "Claim"), and should Lender incur any obligation as a result of such Claim, then Borrower shall reimburse Lender upon demand; and (b) Lender may, at its sole option, take any action Lender deems necessary to cure any Event of Default, and Borrower will immediately and fully compensate Lender for such action. In the sole discretion of Lender, it may choose to retain control of, retain counsel of its choice for, and approve of any resolution of any such claim covered by this Paragraph without affecting the obligations of Borrower to indemnify, defend and hold Lender harmless as set forth hereinabove. The obligations of Borrower and the rights of Lender under this Section 7 shall survive payment and performance of the Obligations in full and shall remain in full force and effect without termination.

**8. Continuation of Agreement.** This Agreement shall remain in full force and effect, without waiver or surrender of any of Lender's rights hereunder, notwithstanding (a) any extension of the time of payment of the whole or any part of the Obligations; (b) any modification to this Agreement or substitution of any other evidence of indebtedness for any Schedule; (c) acceptance by Lender of any Collateral or security of any kind as partial payment of the Obligations; or (d) surrender, release, exchange, or alteration of any Collateral in whole or any part.

**9. Events of Default.** Each of the following shall constitute an **"Event of Default"** which will allow Lender to exercise all of its rights under this Agreement and applicable law: (a) any Loan Party (each such other person that from time to time is obligated to Lender under any of the Loan Documents and/or executes any guaranty, surety, or any or all of the Obligations, or any endorser for the Borrower, together with Borrower, the Loan Party, fails to make any payment in full when due under any Loan Document; (b) the occurrence of an Event of Default under any Loan Document or the default by any Loan Party of any obligation or liability to Lender; (c) the failure by any Loan Party to perform any obligation not involving the payment of money, or to comply with any other term, condition, provision, covenant, or warranty applicable to such Loan Party under any of the Loan Documents and such obligation, term, condition, provision, covenant, or warranty remains unsatisfied after 10 calendar days' written notice to such Loan Party; (d) any representation or warranty made by any Loan Party in any of the Loan Documents or otherwise or any information delivered by any Loan Party in obtaining or hereafter in connection with the credit evidenced by any Loan Document is materially incomplete, incorrect, or misleading as of the date made or delivered; (e) any Loan Party becomes insolvent, is unable or admits in writing its inability to pay its monetary obligations as they become due, makes a general assignment for the benefit of creditors, or applies for or acquiesces in the appointment of a trustee, receiver, or other custodian for such party or any of its assets or property, or a trustee, receiver, or other custodian is appointed for any Loan Party or any of its assets or property; (f) commencement of any case under the Bankruptcy Code (Title 11 of the United States Code) or any similar proceeding under any federal, state, or foreign law by or against any Loan Party; (g) the death, incompetence, dissolution, or liquidation of any Loan Party, the consolidation or merger of any Loan Party with any person or entity, or the taking of any action by any Loan Party toward any dissolution, liquidation, consolidation, or merger (regardless of whether such actions occur voluntarily or by operation of law); (h) any Loan Party ceases to do business in the ordinary course or suffers a material adverse change in its management or ownership; (i) the sale, assignment, or transfer of all or substantially all of its assets by any Loan Party (regardless of whether such action occurs voluntarily or by operation of law) without the consent of Lender; (j) any Loan Party, or any other person acting on behalf of such Loan Party, claims that any Loan Document or any lien or security interest is not legal, valid, binding, or enforceable against any Loan Party, or that the priority of any lien or security interest securing any of the Obligations is different than the priority represented and warranted in the Loan Documents; (k) any Loan Party shall be in default with respect to any agreement with or obligation to any other party for the payment of borrowed money, contractual obligation, or rent, in excess of $1,000,000; or (l) the occurrence of any condition or event that is a default or is designated as a default, event of default, or Event of Default in any other agreement, contract, or indebtedness of any Loan Party to Lender or to any affiliate of Lender.

**10. Rights and Remedies of Lender.** Whenever an Event of Default has occurred under this Agreement and at any time thereafter, Lender will have all the rights and remedies provided by this Agreement, the UCC, and other applicable law. At the option of Lender, with or without notice, any or all of the Obligations then owing under this Agreement will be immediately due and payable in full, together with all costs and expenses, including attorneys' fees, incurred by Lender in the enforcement of its rights and remedies under this Agreement. Borrower acknowledges that this Agreement is a "business contract" as that term is used under N C G S § 6-21.6 or any successor thereto. Lender may, without notice or demand or legal process, take possession of the Collateral (which shall be deemed upon an Event of Default to include any and all Equipment covered at any time by this Agreement, without regard to the then-current status of payments due for any such specific item of Equipment) wherever found and, for this purpose, may enter upon the locked or unlocked property occupied or under the control of

6465555 TA 49 03.20

Borrower. Lender may require Borrower to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender, at the expense of Borrower, may make repairs deemed necessary or desirable to the Collateral. Lender shall not be responsible for any injury or loss to the Collateral unless caused by the willful wrongful acts or omission of Lender while the items of Collateral are in Lender's possession. Lender may, with or without obtaining possession of the Collateral or any part thereof, sell the same at a public or private sale in the wholesale or retail market, lease, or otherwise dispose of any or all of the Collateral with or without notice to the Borrower. Borrower agrees that the items of Equipment are of a type customarily sold in recognized markets within the meaning of the Uniform Commercial Code. Lender may also advertise and sell the Equipment through internet websites through which equipment similar to the Equipment is sold, and such disposition shall be deemed in conformity with reasonable commercial practice among dealers of the type of property that was the subject of the disposition. At any sale or disposition, Lender may accept a trade of property for all or any portion of the sales price. As permitted by applicable law, Lender may, at any sale, public or private, of the Collateral, purchase any or all of the Collateral offered at such sale. The proceeds of any sale or sales, after deducting all expenses of Lender in taking, storing, repairing, and selling the Collateral (including reasonable attorneys' fees and legal expenses) shall be applied to the payment of any part or all of the Obligations and any other indebtedness or liability of Borrower to Lender, and any surplus thereafter remaining shall be paid to Borrower or to any other person that may be legally entitled to such surplus. Lender shall be under no duty to select any items of Collateral over any other items or to sell the items of Collateral pro rata or in any order but may select and sell such items as Lender may determine. Lender may, at its option, and without any obligation to do so, pay, perform, and discharge any and all amounts, costs, expenses, and liabilities herein agreed to be paid or performed by Borrower, and all amounts so expended by Lender shall become part of the Obligations secured by the Collateral and shall be immediately due and payable by Borrower upon demand and shall bear interest at the Default Rate. Lender may pursue any legal remedy available to collect all Obligations and to enforce its rights in the Collateral. Lender may exercise any or all other rights and remedies concurrently or consecutively in such order as Lender elects without diminishing Lender's rights to later pursue remedies on any of Borrower's other obligations. Such rights and remedies shall be cumulative and non-exclusive and shall inure to the benefit of Lender and its successors and assigns. Neither the action nor failure of Lender to take any of the actions or exercise any of the rights or remedies granted to Lender in this Agreement shall be construed to be a waiver of any of the rights or remedies of Lender. In Lender's exercise of the powers granted by Borrower under this Agreement, no liability shall be asserted or enforced against Lender except for Lender's willful wrongful acts, and Borrower expressly waives and releases Lender from all other such claims or liabilities. To the extent permitted by law, Borrower waives all other remedies, including specific performance, the right to deduct damages from current amounts due, and all indirect, consequential, punitive, and incidental damages.

**11. Governing Law.** This Agreement has been delivered and accepted in the State of North Carolina and shall be governed by the substantive laws of the State of North Carolina, without regard to or irrespective of the conflicts of law provisions of the laws of such State. Borrower acknowledges that the act necessary to the making of this Agreement is the execution of this Agreement by Lender and receipt of this Agreement at Lender's North Carolina offices, and that this Agreement is therefore made in the State of North Carolina. This Agreement is intended to be effective as a contract or instrument executed under seal.

**12. Consents and Waivers.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE BORROWER AND LENDER HEREBY VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO TRIAL BY JURY IN RESPECT TO ANY LITIGATION IN CONNECTION WITH THIS AGREEMENT, THE LOAN DOCUMENTS, OR ACTIONS OR STATEMENTS (WHETHER VERBAL OR WRITTEN) OF ANY PARTY. To the extent permitted under applicable law, Borrower expressly consents to and authorizes any court of competent jurisdiction to issue, by hearing without notice, such order or orders as may be appropriate or necessary to enforce the terms of the Loan Documents, granting to Lender such powers, orders, or authority as Lender shall need or desire to enforce the Loan Documents. Borrower consents and agrees that any such court need not require any bond of Lender, that Borrower shall at no time request any such bond, and that the parties agree that time is of the essence to protect the interests of Lender. Borrower hereby acknowledges its express intent to waive and abandon all personal property exemptions granted by the law of any State or under any federal (including bankruptcy) law with respect to the Collateral. To the extent permitted under applicable law, Borrower expressly waives any notice of (a) sale or other disposition of the Collateral and (b) any exercise of any other right or remedy by Lender and any other right to notice after an Event of Default. To the extent such notices cannot be waived, any notice given to Borrower at the address set forth on page 1 of this Master Agreement (or to such other address provided in writing to Lender by Borrower) by registered or certified mail or a national overnight courier (with confirmation of delivery) at least 5 calendar days before the date of sale shall be deemed reasonable and to fully satisfy the requirement for giving of notice to Borrower.

**13. Liability of Lender.** Lender shall not in any way be liable for the condition or maintenance of the Collateral or any failure to do any or all of the actions for which rights and authority are granted in the Loan Documents. The failure of Lender to take any of the actions or exercise any of the rights, interests, powers, or authority granted to Lender under the Loan Documents shall not be construed to be a waiver of any of the rights, interests, powers, or authority granted to Lender under the Loan Documents. In exercise of its rights and remedies, Lender shall not have any liability to Borrower for any injury or loss to the Collateral, other assets, business, or operations of Borrower or any other liability, other than for Lender's own gross negligence or willful misconduct, and if relating to Collateral, while it is in Lender's possession.

**14. Construction.** Unless otherwise expressly provided in a Loan Document, in the event of any conflict between any provision of a Schedule and any other Loan Document, the terms of the Schedule shall control such conflict. The parties to the Loan Documents have negotiated the terms of the transactions evidenced by the Loan Documents and the drafting of the Loan Documents shall not be construed for or against any Loan Party or Lender.

**15. Assignments or Transfers.**

    **(a) Transfers by Lender.** Borrower acknowledges that Lender may assign, transfer, grant a participation in, grant a security interest in and/or delegate or subcontract its obligations in whole or in part under any Loan Document without notice to or consent of any Loan Party. Any assignee or transferee of Lender shall have the rights, assigned and transferred, but none of the obligations of Lender under the Loan Documents, and **Borrower agrees that it will not assert against any assignee or transferee of Lender any defense, counterclaim, or offset which Borrower may have or may claim against Lender or its agents.** Borrower acknowledges that any assignment or transfer by Lender shall not materially change Borrower's duties or obligations under this Agreement or any other Loan Document.

    **(b) Transfers by Borrower.** No Loan Party shall assign, transfer, delegate, or dispose (whether voluntarily or by operation of law) of all or any part of its Obligations under the Loan Documents or enter into a lease of all or any part of the Equipment, without the prior written consent of Lender and any such action attempted without the prior written consent of Lender shall be void as against Lender and constitute an immediate Event of Default under this Agreement. Notwithstanding the foregoing prohibition against such transfers by Borrower, Borrower hereby transfers, conveys, and assigns to Lender and grants to Lender a security interest in all of Borrower's rights, title, and interest in, but none of its obligations under, any lease of the Equipment, and all proceeds and income arising therefrom. In the event Lender is requested to consent to a lease of the Equipment, any permitted lease must be in form acceptable to Lender and assigned to Lender by Borrower by an assignment in form approved by Lender.

**16. Survival.** The representations, warranties, and covenants, of each Loan Party in the Loan Documents shall survive the execution and delivery of the Loan Documents and the making of the Advances to or on behalf of Borrower.

**17. Notices and Demands** All demands or notices under the Loan Documents, unless otherwise specified, shall be in writing (including without limitation, facsimile, receipt confirmed) and mailed, emailed, faxed or delivered to the address previously specified in writing by the party to whom such notice is being given. Any demand or notice mailed shall be mailed U.S. first-class mail, postage prepaid, return receipt requested or a national overnight courier (with confirmation of delivery). Demands or notices shall be deemed effective upon the earlier of (a) actual receipt by the addressee or (b) the date shown on the return receipt, fax confirmation, or delivery receipt.

**18. Successors and Assigns.** All of the terms and provisions of this Agreement shall apply to, bind and inure to the benefit of the successors and assigns of Borrower (but this shall not permit any assignment prohibited hereby) and Lender. In the event Borrower is composed of more than one party, the obligations, covenants, agreements, and warranties contained herein as well as the obligations arising therefrom are and shall be joint and several as to each such party.

6465555: TA 49: 03.20

**EXHIBIT 1**

**19. Multiple Finance Accommodations.** If Borrower has more than one loan or other finance accommodation with Lender and/or any of Lender's affiliates or agents, Borrower agrees that (a) this Agreement and the documents relating to such other finance accommodation shall all remain in effect and neither shall supersede the other, regardless of whether this Agreement and such other financing documents have differing terms, conditions, and requirements; and (b) regardless of any such differences, Borrower shall comply with all of the terms, conditions, and requirements of this Agreement and of such other financing documents.

**20. Miscellaneous.** TIME IS OF THE ESSENCE WITH REGARD TO EACH PROVISION OF THE LOAN DOCUMENTS AS TO WHICH TIME IS A FACTOR. No provision of any Loan Document can be amended, waived, discharged, or terminated except in a writing executed by the parties thereto, provided, however, that Borrower agrees that Lender may correct any minor typographical or other errors by providing Borrower with written notice of such correction. Any approval, consent, or statement that a matter is acceptable to Lender under the Loan Documents must be in writing executed by Lender and shall be construed to apply only to the party and facts specifically set forth in writing. The headings at the beginning of sections of the Loan Documents are solely for convenience and do not modify any sections. In each Loan Document, the singular shall include the plural and vice versa and each gender shall include the other gender. If any provision of any of the Loan Documents is unenforceable, such provision shall be automatically modified to the minimum extent possible to make such provision enforceable, and the enforceability of the other provisions of the Loan Documents shall not be affected. The Loan Documents shall be binding upon and inure to the benefit of Lender and each Loan Party and each of their respective permitted successors and assigns. Borrower agrees that any document processing fees may be shared with or rebated to the selling dealer. In the event Borrower is composed of more than one party, the obligations, covenants, agreements, and warranties contained herein, as well as the obligations arising therefrom, are and shall be joint and several as to each such party. To the extent any Borrower is deemed a surety or guarantor, such Borrower waives any and all defenses and rights of sureties and guarantors that may be applicable. Borrower certifies that neither the Borrower nor any of its direct or indirect owners is directly or indirectly controlled by any sanctioned person or entity, as described in any regulation, order, or guidance issued by the U.S. Department of Treasury's Office of Foreign Assets Control or any other U.S. government entity. Borrower acknowledges that Lender, in compliance with federal law, will be verifying certain information about Borrower. Borrower also certifies that neither it nor any of its direct or indirect owners engages in any transactions prohibited by any U.S. laws. NOTICE TO SOUTH DAKOTA BORROWERS: Any improprieties related to this transaction or the lending practices of Lender may be referred to the South Dakota Division of Banking at 1601 N. Harrison Ave., Suite 1, Pierre, SD 57501; telephone: 605-773-3421. These Loan Documents may be executed and delivered by facsimile signature and a facsimile signature shall be treated as an original. Multiple signatures to these Loan Documents delivered separately shall constitute one original Loan Document. Borrower agrees that (i) Lender, its affiliates, subsidiaries and its service providers (the **"VFS Parties"**) may disclose information about the Borrower to other lenders, financing sources and credit bureaus and, as permitted by law, to other persons, including entities affiliated and associated with the VFS Parties, and (ii) the VFS Parties may process data and/or information in any country where parties may have a presence.

**21. Lender Agents.** Borrower agrees that Lender may appoint one or more agents to act on its behalf and that such agents have the power and right to administer and enforce this Agreement.

6465555: TA 49: 03 20