CHRISTOPHER B. DURBIN
(WSBA #41159)
COOLEY LLP
1700 Seventh Avenue, Suite 1900
Seattle, WA 98101
Tel.: (206) 452-8700
Fax: (206) 452-8800
Email: cdurbin@cooley.com

CULLEN D. SPECKHART
(*pro hac vice*)
JAY R. INDYKE
(*pro hac vice*)
MICHAEL KLEIN
(*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 479-6000
Fax: (212) 479-6275
Email: cspeckhart@cooley.com
jindyke@cooley.com
mklein@cooley.com

*Proposed Counsel to the Official Committee of Unsecured Creditors of Easterday Ranches, Inc.*

HONORABLE WHITMAN L. HOLT

HEARING DATE:
JUNE 2, 2021 AT 10:30 A.M.
(PACIFIC TIME)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

In re:

EASTERDAY RANCHES, INC., *et al.*,

Debtors.[1]

Chapter 11

Lead Case No. 21-00141-11
Jointly Administered

**REPLY IN SUPPORT OF MOTION FOR AN ORDER DIRECTING RULE 2004 EXAMINATIONS OF THE DEBTORS AND NON-DEBTOR PARTIES**

[1] The Debtors, along with their case numbers, are as follows: Easterday Ranches, Inc. (21-00141) and Easterday Farms, a Washington general partnership (21-00176).

The Official Committee of Unsecured Creditors of Easterday Ranches, Inc. (the "Ranches Committee")[1] respectfully submits this reply ("Reply") and the concurrently filed Declaration of Christopher B. Durbin (the "Durbin Decl.") in support of its motion [Dkt. No. 644] (the "Motion") for an order directing a Rule 2004 examination of certain Non-Debtor Parties identified in the Motion.[2]

This Reply addresses objections (collectively, the "Objections") filed by (i) Weyns Farms, LLC ("Weyns Farms") [Docket No. 748]; (ii) Karen Easterday [Dkt. No. 751]; (iii) Easterday Dairy, LLC ("Dairy") [Dkt. No. 753]; (iv) Tyson Fresh Meats, Inc. ("Tyson") [Dkt. No. 754]; (v) 3E Properties, LLC ("3E"), EPO, LLC ("EPO") and Easterday Farms Produce, Co. ("Produce") [Dkt. No. 755]; (vi) Segale Properties LLC ("Segale") [Dkt. No. 759]; (vii) Cody and Debby Easterday [Dkt. No. 760]; and (viii) English Hay Company ("English Hay") [Dkt. No. 762] (collectively, the "Objecting Parties").

## PRELIMINARY STATEMENT

1. The Objections do not undermine the showing of good cause in the Ranches Committee's Motion, which has only grown stronger since the Motion was filed. Because of the Ranches Committee's obligation to fully investigate the

---

[1] Capitalized terms not otherwise defined have the meanings set forth in the Motion.

[2] As discussed below, the Ranches Committee withdraws the Motion without prejudice solely with respect to Easterday Ranches, Inc. ("Ranches") and Easterday Farms ("Farms"), debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases, as well as CHS Hedging, LLC ("CHS").

Debtors' assets and affairs, and very little time left to complete that investigation, the formal discovery process provided by Rule 2004 grows increasingly necessary with each passing day.

2. Several weeks after the Ranches Committee reached out to begin informal meet-and-confer discussions, the Non-Debtor Parties who object most strenuously to the Motion still remain the slowest to engage and have produced few, if any, documents. Those Non-Debtor Parties include, notably, the individuals and entities most closely affiliated with the Debtors: the Easterday Family[3] and their related entities such as Dairy and Produce.

3. With the Debtors' sale process and potential plan filing looming, it is those Non-Debtor Parties from whom the Ranches Committee most needs cooperation and prompt production of documents to complete its investigation. In other words, the individuals and entities that are most closely intertwined with the Debtors—and thus most relevant to the Ranches Committee's investigation—are the least willing to produce documents that would allow for a fully informed assessment of allocation issues, potential claims, proposed releases, and the like.

4. Since the filing of the Motion, the Ranches Committee has made significant progress in obtaining discovery from certain targets of its Rule 2004 examination. Specifically, the Ranches Committee has had numerous conversations

[3] The "Easterday Family" includes Karen, Cody, and Debby Easterday.

with the Debtors and certain Non-Debtor Parties—including counsel to the Easterday Family, Segale, Tyson, CHS, and Weyns Farms—to address various concerns raised by such parties with respect to the scope and breadth of the requests set forth in the Motion. To that end, the Ranches Committee has significantly narrowed the discovery requests set forth in the Motion with respect to the Debtors and Non-Debtor Parties by, among other things, identifying the specific requests applicable to each target, narrowing the time periods of the requests, and clarifying the intent and rationale behind such requests. *See* Durbin Decl., ¶¶ 9-10, 12, 14-18, 34-35, 38, 39. Any confusion regarding which Requests are directed to which Non-Debtor Parties is the product of those parties' failure to engage meaningfully (or at all) in the meet-and-confer process.[4]

5. Indeed, the Ranches Committee has entered into stipulations regarding discovery and document production with certain parties—and withdrawn the Motion without prejudice as to those parties—that have engaged in meaningful good-faith meet-and-confer discussions and produced (or committed to producing) responsive

---

[4] During the Ranches Committee's discussions with counsel to Karen Easterday and Cody and Debby Easterday, such counsel have represented that they speak for the unrepresented Easterday family members (including Kimberly English, Scott English, Jody Easterday, Andrew Willis, Cully Easterday, and Shani Easterday) and are coordinating with counsel to the family's related entities (Dairy, Produce, English Hay, EPO, 3E, and G2E2, LLC). *See* Durbin Decl., ¶ 15. It remains unclear to the Ranches Committee the extent to which those Non-Debtor Parties are willing to produce responsive documents, as counsel for those entities have never directly engaged with the Ranches Committee. *See id.*, ¶ 21.

documents: the Debtors [*see* Dkt. No. 763] and CHS [*see* Dkt. No. 766] (collectively, the "Stipulated Parties").

6. While the Ranches Committee has made meaningful progress to date, a formal discovery process with respect to the remaining Non-Debtor Parties remains necessary in light of (i) the exigency imposed by the Debtors' sale timeline, which restricts the time available to the Ranches Committee to complete its investigation; and (ii) the number of Non-Debtor Parties that may have information relevant to the Ranches Committee's investigation. The Ranches Committee understands that the Debtors will seek to file a plan by July 1, 2021 and are developing an allocation protocol with respect to proceeds from the sale of properties owned by the Debtors and certain Non-Debtor Parties. Without a formal discovery process, the Ranches Committee will be left to rely entirely on the voluntary and timely cooperation of the Non-Debtor Parties—without which, the Ranches Committee will be unable to make informed decisions with respect to, among other things, the allocation of sale proceeds and the propriety of releases included in any proposed plan.

7. While certain of the Non-Debtor Parties raised Objections with respect to the *timing* of the Motion—arguing that Ranches Committee should have waited to file the Motion until it has reviewed all the documents recently received through the

Debtors or otherwise after the sale process[5]—the Ranches Committee is mindful of the court's comments regarding the possibility of sale proceeds languishing in escrow while the various parties-in-interest decide allocation.

8. The Objections largely take issue with the *form* of the examination notice rather than the Motion itself, with many Objecting Parties themselves acknowledging the Ranches Committee's need for information.[6] The Ranches Committee only seeks to equip itself with the guardrails of a formal discovery process, so the objections to the form of discovery requests are premature—as at least one Objecting Party has conceded.[7] Even so, the Ranches Committee is aware of the potential cost of discovery and burden to the producing parties and will continue to be judicious in its discovery requests. If there are disagreements over the scope or

---

[5] *See, e.g.*, Cody and Debby Easterday Objection at 6 ("The Court should not enter an order for the Easterdays' examination or production of documents pursuant to Rule 2004 until the Ranches Committee has exhausted its review of documents and evidence provided by the Debtors."); Tyson Objection at 3 ("If—after the debtors have completed their liquidating sales and after the Ranches Committee has digested the informal productions—the Ranches Committee still believes formal discovery is necessary, the Ranches Committee can file an amended and more focused motion under Rule 2004.").

[6] *See, e.g.*, Dairy Objection at 1–2 ("In short, Dairy has no objection to the Court's entry of an order authorizing Ranches Committee to conduct discovery pursuant to Fed. R. Bankr. P. 2004."); Tyson Objection at 1 ("[Tyson] recognizes the Ranches Committee is entitled to information necessary to determine whether claims beneficial to the estate exist and whether to pursue such claims . . . .").

[7] *See* Dairy Objection, at 5 ("Disputes, of the kind that are being heard at this point, are premature and should be heard by the [c]ourt after the order has been approved, and either objections to the subpoenas and subpoena duces tecum have been served or a motion for a protection order has been filed by a respondent.").

breadth of the discovery requests *after* the Ranches Committee serves its requests, the Non-Debtor Parties are entitled to lodge their objections at that time.

## ARGUMENT

### A. The Ranches Committee Has Established Good Cause for the Motion.

9. Rule 2004 provides, in relevant part, that the bankruptcy court may authorize the examination of any entity relating "to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(b). The party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks, and relief lies within the sound discretion of the bankruptcy court. *See, e.g.*, *Picard v. Marshall (In re Bernard L. Madoff Inv. Secs. LLC)*, Adv. Pro. No. 08-01789, 2014 WL 5486279, at *2 (Bankr. S.D.N.Y. Oct. 30, 2014).

10. In addition to relevance, good cause may be shown if the proposed examination "is necessary to establish the claim of the party seeking the examination, or . . . denial of such request would cause the examiner undue hardship or injustice[.]" *See In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993). Legitimate goals of Rule 2004 examinations include "discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Millenium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr. D. Del. 2016). Given the broad purpose and effect of Rule 2004, courts routinely permit the examination of third parties who can be shown to have had dealings with the debtor. *See In re Correra*, 589 B.R. 76, 108

(Bankr. N.D. Tex. 2018) ("Third parties are subject to examination pursuant to Rule 2004 if they have knowledge of the debtor's affairs.").

11. As a fiduciary for all unsecured creditors, the Ranches Committee "execute[s] an oversight function" and "may investigate the debtor's assets and affairs." *In re Refco Inc.*, 336 B.R. 187, 195 (Bankr. S.D.N.Y. 2006). In this role, the Ranches Committee is granted broad statutory powers to "investigate the acts, conduct, assets, liabilities and financial condition of the debtor . . . and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1103(c)(2).

12. The Ranches Committee's objectives fit squarely within the purposes of Rule 2004. The Ranches Committee is investigating not just Cody Easterday's fraud, but also (and perhaps more importantly) the underlying circumstances and implications of the fraud amongst a complex web of closely related family owned entities. The Ranches Committee is already efficiently leveraging the investigation by the Department of Justice ("DOJ") and does not intend to ask for duplicative information from the Non-Debtor Parties. In fact, for many of the Non-Debtor Parties, the Ranches Committee has requested an initial production only of materials previously produced to the DOJ. *See* Durbin Decl., ¶¶ 38, 40.

13. Notwithstanding the DOJ's investigation, the Ranches Committee is charged with an independent fiduciary duty to investigate the Debtors, including causes of action and claims that the Debtors have (and may seek to release), as well as potential wrongdoing. *See also In re Valley Forge Plaza Assocs.*, 109 B.R. 669,

674 (Bankr. E.D. Pa. 1990) ("[T]he breadth of scope of a [Rule 2004] examination derives from the particular purpose . . . to discover and investigate how to bring to light possession of assets of the debtor which might be intentionally concealed or overlooked in ignorance or haste.").

14. To that end, the Ranches Committee is investigating potential claims arising from any transfers from the Debtors' estates to Non-Debtor Parties, particularly those whose assets are being sold via the Debtors' contemplated sale process. In addition, the Ranches Committee is investigating the relationship between Tyson, on the one hand, and the Debtors and the Easterday Family, on the other.[8] The results of this investigation will inform the Ranches Committee as to the propriety of any plan releases and proper allocation of sale proceeds.

15. The unique nature of these chapter 11 cases and circumstances surrounding the bankruptcy filing merits further emphasis—particularly the close familial and financial ties of certain Non-Debtor Parties to the Debtors. The Objections filed by the Easterday Family assert that there is no evidentiary basis to connect the Easterday Family and other Non-Debtor Parties to the Debtors or the bankruptcy cases.[9] But the Objections notably omit that Cody Easterday, Debby

---

[8] Including, for example, what the Ranches Committee is informed and believes to have been a prepetition transfer of approximately 45,000 head of cattle to Tyson, known as "Cattle 3." *See* Statement of Financial Affairs of Easterday Ranches, Inc. [Dkt. No. 542], at 5, Item 13.

[9] *See* Karen Easterday Objection at 10.

Easterday, and Karen Easterday held 100% of the ownership interests in the Debtors. The Objections also ignore a history of the Debtors' dealings with certain of the Non-Debtor Parties, including loans to, and other transactions with, certain Easterday family entities such as Produce and Weyns Farms. Those individuals are thus well positioned to provide information regarding the Debtors' prepetition conduct prior to the assumption of control by the independent directors.

16. The Cooperation Agreement further illustrates the overlapping interests among the Easterday Family and the Debtors. Even a cursory review of the Debtors' schedules and statements implicates certain other Non-Debtor Parties that give rise to further questions—for example, payments from Ranches within 90 days of the Petition Date to English Hay and Weyns Farms.[10] Moreover, the Ranches Committee is still investigating the circumstances of the North Lot sale on the eve of the bankruptcy filing. [*See* Dkt. Nos. 79, 80, 82.]

17. To be clear, the Debtors have recently provided a large volume of documents to the Ranches Committee, including documents provided as part of the DOJ investigation. Tyson and Segale also recently provided materials those parties previously produced to the DOJ. The Ranches Committee's review of those materials is ongoing, but undoubtably it will need documents not within the Debtors'

---

[10] *See* Statement of Financial Affairs of Easterday Ranches, Inc. [Dkt. No. 542]. Other issues meriting further investigation include, for example, a $2.2 Million Note Receivable from Easterday Farms Ltd. (Canada) identified on the Debtors' Schedules [*see* Dkt. No. 541, at 17, Line 71].

control and going beyond the materials produced to the DOJ—particularly those held by the Easterday Family. If such documents do not exist or would be unduly burdensome to produce, the targets served with discovery requests can so respond.

18. If the Ranches Committee had already obtained all the documents it needs to complete its investigation via informal discovery, it would not have filed the Motion. And while some (but not all) of the Non-Debtor Parties from which it seeks formal discovery have engaged meaningfully in meet-and-confer discussions, they did so only after the Ranches Committee filed the Motion. The Ranches Committee simply does not have the luxury of unlimited time to rely on the Non-Debtor Parties' eventual production of responsive documents. Despite the Non-Debtor Parties' assertions that informal discovery works just fine, the fact remains that certain of the Non-Debtor Parties—primarily the Easterday family and related entities—have engaged belatedly and haltingly (if at all) in informal discussions with the Ranches Committee. *See* Durbin Decl., ¶¶ 14–21.

19. Simply put, the Ranches Committee has shown good cause for a formal coercive discovery process to ensure that the remaining Non-Debtor Parties fully engage with the Ranches Committee, timely produce responsive documents, and do not run the clock out on the Ranches Committee's investigation. The discovery process will thus be aided by the formality of a Rule 2004 investigation and—if the Non-Debtor Parties are as willing to work consensually with the Ranches Committee

as they say in their Objections—the subsequent meet-and-confer process should limit any need for the court's intervention.

20. Particularly given the exigency created by the short time frame imposed by the Debtors' sale process and potential plan filing by July 1, 2021, the court should grant the Motion and authorize an examination of the Non-Debtor Parties pursuant to Rule 2004.

### B. Objections to the Scope and Breadth of the Discovery Requests Do Not Undermine the Showing of Good Cause to Grant the Motion.

21. The Objections universally raise concerns that should and will be addressed during the parties' meet-and-confer process. These arguments, including the cost and burden of responding to discovery[11] and the proportionality or relevance of the requests,[12] are not properly directed to the court's adjudication of the Motion.

22. *First*, bankruptcy courts have noted that objections based on the breadth or scope of the discovery requests are not a proper basis to deny a Rule 2004 motion. *See In re Millennium Lab Holdings II*, 562 B.R. 614, 626 (Bankr. D. Del. 2016) (granting Rule 2004 motion and deferring ruling on objections to "breadth of the specific requests until the parties meet and confer to see whether [they] can resolve their differences."). Granting the Motion allows the Ranches Committee only to

---

[11] *See, e.g.*, Karen Easterday Objection at 9.

[12] *See, e.g.*, Tyson Objection at 3–4.

formally request discovery from the Non-Debtor Parties—after which the parties will endeavor to resolve any disputes via meet-and-confer discussions.

23. *Second*, the Objections exaggerate and misrepresent the Ranches Committee's intentions. It simply is not true that the Ranches Committee will seek thousands of duplicative and frivolous discovery requests from everyone and their cousins[13]—and the Objecting Parties know it. The Ranches Committee has made it abundantly clear to the Easterday Family that its primary goal is to understand exactly which of the Non-Debtor Parties would be the appropriate target for the information requested—which would require, in the first instance, discussions with such Non-Debtor Parties. *See* Durbin Decl., ¶ 16. That information has been slow in coming, but the Ranches Committee intends only to serve discovery requests that are necessary and relevant to its investigation. *Id.*, ¶ 20.

24. Indeed, in its informal discussions with counsel to the Easterday Family (and all other Non-Debtor Parties) to date, the Ranches Committee has already significantly narrowed the requests specified in the form of notice attached to the Motion. *Id.*, ¶ 17. For instance, the Ranches Committee has agreed to shorten the time frame of the discovery requests to the Easterday Family by five years, from 2011 to 2016, which the Ranches Committee understands to be when the Cody Easterday fraud began. *Id.*, ¶ 18. Similarly, the Ranches Committee has explained to certain

[13] *See* Karen Easterday Objection, 12–13.

parties that it would be amenable to utilizing search terms to minimize the burden of producing electronically stored information, such as emails. *See id.*, ¶ 12.

25. The Ranches Committee is mindful of cost considerations and potential burdens and will continue to work in good faith with the Non-Debtor Parties to come to consensual agreements, to the extent possible. The formal discovery process is intended only to establish guardrails if consensus is not possible, particularly in light of the number of Non-Debtor Parties who may have information relevant to the Ranches Committee's investigation. To that end, the Ranches Committee intends to serve discovery requests only for documents it has not already received from the Debtors or other the Non-Debtor Parties.

**C. The Ranches Committee Has Complied with Local Rule 2004-1.**

26. The Objecting Parties also request denial of the Motion on the basis that the Ranches Committee did not meet and confer with them prior to the filing of the Motion, as required by Local Rule 2004-1.[14] *See* Karen Easterday Objection at 6; Dairy Objection at 2; Cody and Debby Easterday Objection at 6. Rule 2004-1 provides, in relevant part, that the moving party for an order to examine any person

---

[14] One objection contends that Local Rule 7026-1 requires "parties seeking compulsion of discovery to attempt to confer prior to filing motions," *see* Karen Easterday Objection at 1, but the Ranches Committee does not believe that rule is applicable to its Motion—which seeks to *serve* discovery requests, *not* a "to compel disclosure, discovery or for a protective order[.]" Local Rule 7026-1(b).

shall certify that such party has "coordinated the time and place of the examination with the person to be examined or specify why it is impossible to do so."

27. The Ranches Committee has substantially complied with Local Rule 2004-1, as its explained in the certification in its Motion: "*[a]t such time* as the Ranches Committee *seeks such examinations*, counsel will coordinate the time and place with the Debtor(s) and/or Non-Debtor Party/ies from whom such examinations is/are sought." *See* Motion at 10 (emphasis added). In other words, the Ranches Committee did not attempt to "coordinate the time and place" of Rule 2004 examinations to avoid wasting the parties' time scheduling examinations that were not yet (and may never be) necessary. To conserve all parties' time and resources, the Ranches Committee elected not to seek any examinations before reviewing the documents produced and deciding whether, and from whom, sworn testimony is needed. As noted in the Motion, *if* the Ranches Committee seeks examinations of the Non-Debtor Parties, it will do so "at a mutually convenient date, time, place, and manner . . . ." *See* Motion at 6, ¶ 8.

28. In any event, the Ranches Committee did provide notice to the Non-Debtor Parties of its intention to file the Motion. On April 22, 2021, the Ranches Committee disclosed its intention to file the Motion to serve discovery demands on

the Debtors and certain third-parties.[15] And since filing the Motion, the Ranches Committee has reached out to known counsel for all Non-Debtor Parties in an effort to reach consensual resolutions. *See* Durbin Decl., ¶¶ 4–7, 12, 14, 22, 24, 27, 32, 37, 39.

29. In short, the Ranches Committee has acted in good faith to engage efficiently with numerous parties—including by agreeing to a two-week continuation of the hearing [*see* Dkt. No. 691] and multiple extensions of the Non-Debtor Parties' deadline to respond to the Motion *see* Durbin Decl., ¶ 7—while working under an expedited schedule to complete its investigation. *Cf. In re RS Legacy Corp.*, No. 15-10197 (BLS) (Bankr. D. Del. Mar. 11, 2015) [Dkt. No. 1088] [Hearing Transcript] (discussing parties' meet-and-confer efforts before seeking court intervention). As a result, the Non-Debtor Parties have not been prejudiced in any way.

**D. Any Request for a Protective Order is Unnecessary and Premature.**

30. Certain of the Objecting Parties have argued that they are entitled to a protective order to limit the scope of discovery.[16] The Ranches Committee does not object in theory to protective orders and has already agreed to stipulated protective orders with multiple parties. *See* Durbin Decl., ¶¶ 11, 13. But arguing for such relief

[15] *See* Limited Objection and Reservation of Rights of the Ranches Committee to Debtors' Cooperation Agreement Motion and Bidding Procedures Motion [Dkt. No. 614], at 3, n.5.

[16] *See* Karen Easterday Objection at 5; Dairy Objection at 21–22.

is unnecessary and premature at this stage, given that the Motion will only authorize the Ranches Committee to serve the discovery requests.

**CONCLUSION**

For the foregoing reasons, the Ranches Committee respectfully requests that the court grant the Motion.

Dated: June 1, 2021

*/s/ Christopher B. Durbin*

Christopher B. Durbin (WSBA #41159)
COOLEY LLP
1700 Seventh Avenue, Suite 1900
Seattle, WA 98101
Tel.: (206) 452-8700
Fax: (206) 452-8800
Email: cdurbin@cooley.com

Cullen D. Speckhart (*pro hac vice*)
Jay R. Indyke (*pro hac vice*)
Michael Klein (*pro hac vice*)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 479-6000
Fax: (212) 479-6275
Email: cspeckhart@cooley.com
jindyke@cooley.com
mklein@cooley.com

*Proposed Counsel to the Official Committee of Unsecured Creditors of Easterday Ranches, Inc.*