OREN B. HAKER (WSBA No. 48725)
ELLEN E. OSTROW (*admitted pro hac vice*)
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: 503 294-9338
Facsimile: 503 220-2480
Email: oren.haker@stoel.com
ellen.ostrow@stoel.com

*Attorneys for Farmland Reserve, Inc.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>EASTERDAY RANCHES, INC., *et al.*<br><br>Debtors.[1] | Chapter 11<br><br>Lead Case No. 21-00141-11<br>Jointly Administered<br><br>DECLARATION OF DOUG ROSE IN CONNECTION WITH CERTAIN DEBTORS' MOTIONS [AT DOCKET NOS. 486 AND 724] AND RELATED ORDERS [AT DOCKET NOS. 664 AND 749] |

I, Doug Rose, hereby declare under penalty of perjury:

1. I am the Chief Executive Officer ("CEO") of Farmland Reserve, Inc. ("FRI"), and submit this declaration in support of the Purchase and Sale Agreement, as amended (Dkt. No. 830; the "Purchase and Sale Agreement"), by and among (i) FRI, as buyer, (ii) the Debtors, and (iii) Cody Easterday ("CE") and Debby Easterday ("DE"), husband and wife, and Karen Easterday, in her individual capacity and as personal representative in *In the Matter of the Estate of Gale A. Easterday* currently pending in the Franklin County Superior Court, case no. 21-

---

[1] The Debtors along with their case numbers are as follows: Easterday Ranches, Inc. (21-00141) and Easterday Farms, a Washington general partnership (21-00176).

1

450004-11 ("KE," and together with CE and DE, "Easterdays," and, together with the Debtors, the "Sellers").[2]

2. Except as otherwise indicated, all facts set forth in my Declaration are based upon my personal knowledge, my discussions with employees of FRI's senior management, my review of relevant documents and information provided to me or verified by FRI or its professional advisors (including without limitation pleadings in the above-captioned Debtors' cases), and my opinions based upon my knowledge of the circumstances of the Debtors' cases, and related legal proceedings before other courts of competent jurisdiction, and, more particularly, are based on the negotiations with the Debtors that resulted in the execution of the Purchase and Sale Agreement. I am authorized to submit this Declaration on behalf of FRI, and, if I were called to testify, I would testify competently to the facts set forth in this Declaration.

3. As the CEO of FRI, I am responsible for overseeing all operations of FRI's business, including formulating strategic initiatives and recommending investment decisions to FRI's Board of Directors. In my role as CEO of FRI, I was personally involved in the negotiations of the Purchase and Sale Agreement. I have worked at FRI since 2016, holding various positions within FRI prior to becoming the CEO, including serving as the Vice President of Operations and a Land Transactions Manager. Prior to joining FRI, I was an associate general counsel at Oak Ridge National Laboratory from November 2010 through May 2016, where I advised clients regarding acquisitions of land and contracts with the U.S. Department of Energy. From December 2007 through November 2010, I was an associate attorney at Stone & Hinds, P.C. in Knoxville, Tennessee.

---

[2] Capitalized terms used and not otherwise defined herein have the meaning set forth in the Purchase and Sale Agreement.

4. FRI is a diversified agricultural investment company that owns farm properties in the Columbia Basin and has been growing crops in eastern Washington since 1968 through its wholly-owned subsidiary AgReserves, Inc., dba AgriNorthwest ("AgReserves"). As a known grower in the region, FRI learned about the opportunity to purchase some or all of the Property around the time of the commencement of the Debtors' cases. Specifically, certain of the Property is adjacent to the property currently operated by AgReserves.

5. Over the past five months, FRI has invested significant time and energy into exploring a transaction with the Debtors. During the period leading up to the execution of the Purchase and Sale Agreement, FRI conducted extensive due diligence of the Debtors' assets and the Debtors' operations with respect to the Property, and closely monitored the Debtors' cases and the prior relief granted to the Debtors in the Bidding Procedures Order that authorized the Debtors to market for sale all of the Property. FRI also monitored other pending court proceedings that might affect the Debtors' operations and their administration of the Debtors' estates.

6. At all times during FRI's exploration of the Property and negotiations with the Debtors with respect to the Purchase and Sale Agreement, including in its agreement to be the Stalking Horse Bidder, FRI acted in good faith and at arms-length, and complied with the Bidding Procedures Order, as supplemented by the Supplemental Bidding Procedures Order. Early on in the process, FRI considered joint bids as authorized by and in compliance with the Bid Procedures Order but ultimately decided not to submit a joint bid.

7. The terms of the Purchase and Sale Agreement were proposed, negotiated, and agreed to by FRI in good faith and in reliance on the Court's order approving the Cooperation Agreement between and among the Sellers and on the Bidding Procedures Order. FRI submitted

its bid and participated in the auction in compliance with the Bidding Procedures Order, as modified by the Supplemental Bidding Procedures Order. At no time has FRI entered into any other agreement, nor has it agreed upon terms with any other party, with respect to the Property except the Purchase and Sale Agreement with the Sellers.

8. Neither FRI nor AgReserves, Inc. is an "insider" or "affiliate" of any of the Sellers. There is no common identity of current directors and officers between FRI and the Sellers, nor is there any common identity of current directors and officers between AgReserves and the Sellers. Except with respect to the Purchase and Sale Agreement, FRI has no current commercial relationship with the Debtors or with the Easterdays in their capacities as general partners and owners of the Debtors and individually.[3]

9. As further set forth in the Purchase and Sale Agreement, subject only to the conditions in the Purchase and Sale Agreement including that the Debtors acquire, and the Easterdays sell, any and all rights, title and interest in and to the Easterday Property, FRI has agreed to purchase the Property (including land, appurtenances, improvements and water rights to the extent owned or leased by the Easterdays) from the Debtors pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, for $204,000,000, less the stalking horse bidder credit in the amount of $3,400,000, plus transfer taxes incurred in connection with the transaction, plus cure costs for contracts and leases assumed by FRI at closing, plus a chapter 11 plan sponsor contribution to the Debtors' estates of $5,000,000 conditioned on the entry of a confirmation order consistent with the Sale Order. FRI has also agreed to lease the Property back to the Debtors so that they may complete the current-year wheat harvest and sell their equipment.

---

[3] FRI provided corn to Easterday Ranches, Inc. from 2013 through 2018, but this commercial relationship ended in September 2018. FRI is not a creditor of the Debtors or the Easterdays.

21-00141-WLH11    Doc 889    Filed 07/08/21    Entered 07/08/21 17:03:12    Pg 4 of 6

10. FRI's obligation under the Purchase and Sale Agreement to close the transaction includes a condition, among others, that this Court approve the transaction and that the Sale Order is reasonably acceptable to FRI.

11. FRI specifically negotiated in good faith and at arms'-length the form of and content in the proposed Sale Order, which includes findings, conclusions, and/or determinations that (i) authorize the Debtors, as debtors-in-possession, to acquire the Easterday Property for the purpose of consummating the transaction with FRI; (ii) neither FRI nor AgReserves is an insider of any of the Sellers; (iii) FRI is a good faith purchaser of the Property for value and is entitled to all the protections of section 363(m); (iv) FRI has not engaged in conduct warranting the transaction to be avoided pursuant to section 363(n); (v) the Debtors may sell the Property (including the Easterday Property that they acquire from the Easterdays) free and clear of all liens, claims and interests; (vi) FRI is not a successor to any of the Sellers; and (vii) the Purchase and Sale Agreement does not effectuate a fraudulent transfer, constructive or actual. But for the form and content of the proposed Sale Order, which approves among other things the Debtors' decision to purchase any and all rights, title and interest that the Easterdays may have in the Easterday Property, FRI would not have entered into the Purchase and Sale Agreement.

12. It is my understanding that this Declaration will become a part of the record relating to and in connection with the sale of the Property.

111547864.3 0058623-00011

21-00141-WLH11    Doc 889    Filed 07/08/21    Entered 07/08/21 17:03:12    Pg 5 of 6

Pursuant to section 1746 of title 28 of the United States Code, I declare under penalty of perjury that the foregoing statements are true and correct.

DATED: July 8, 2021.

*Doug Rose*
Name: Doug Rose
Title: Chief Executive Officer
Farmland Reserve, Inc.