ARMAND J. KORNFELD (WSBA #17214)
THOMAS A. BUFORD (WSBA #52969)
RICHARD B. KEETON (WSBA #51537)
BUSH KORNFELD LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Tel.: (206) 292-2110
Facsimile: (206) 292-2104
Emails: jkornfeld@bskd.com,
tbuford@bskd.com, and rkeeton@bskd.com

RICHARD M. PACHULSKI (CA Bar #90073)*
JEFFREY W. DULBERG (CA Bar #181200)*
MAXIM B. LITVAK (CA Bar #215852)*
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003
Tel: (310) 277-6910
Facsimile: (310) 201-0760
Emails: rpachulski@pszjlaw.com,
jdulberg@pszjlaw.com, and
mlitvak@pszjlaw.com

*Admitted *Pro Hac Vice*

*Attorneys for Debtors and Debtors in Possession*

HONORABLE WHITMAN L. HOLT

Hearing Date: TBD
Hearing Time: TBD
Response Due: TBD
Location: TBD

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

In re

EASTERDAY RANCHES, INC., *et al.*

Debtors.[1]

Chapter 11

Lead Case No. 21-00141-11
Jointly Administered

**FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS**

---

[1] The Debtors along with their case numbers are as follows: Easterday Ranches, Inc. (21-00141) and Easterday Farms, a Washington general partnership (21-00176).

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 1

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

# INTRODUCTION[2]

The Debtors hereby propose this Plan, which provides for the resolution of the outstanding Claims and Equity Interests asserted against the Debtors. Reference is made to the Disclosure Statement for (i) a discussion of the Debtors' history, businesses, properties, results of operations, and financial projections; (ii) a summary and analysis of this Plan; and (iii) certain related matters, including risk factors relating to the consummation of this Plan and Distributions to be made under this Plan. The Debtors are the proponents of the Plan within the meaning of Bankruptcy Code section 1129.

All Holders of Claims who are entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127, Bankruptcy Rule 3019, and Sections 11.5 and 11.13 of the Plan, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith, have been approved for use in soliciting acceptances and rejections of this Plan. Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed to Holders of Claims to the extent required by Bankruptcy Code section 1125.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS AND SCHEDULES THERETO) AND THE PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

---

[2] Capitalized terms used in this Introduction have the meanings ascribed to those terms in Article I below.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS – Page 2

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

# ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

For purposes of the Plan, except as expressly provided or unless the context otherwise requires:

(a)    all Defined Terms shall have the meanings ascribed to them in this Article I of the Plan;

(b)    any term used in the Plan that is not a Defined Term, but that is used in the Bankruptcy Code or Bankruptcy Rules has the meaning assigned to such term in the Bankruptcy Code or Bankruptcy Rules, as applicable;

(c)    whenever the context requires, terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine;

(d)    any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such agreement or document shall be substantially in such form or substantially on such terms and conditions;

(e)    any reference in the Plan to an existing document, instrument, or exhibit means such document, instrument, or exhibit as it may have been or may be amended, modified, or supplemented from time to time;

(f)    any reference to a specific Person includes any successors or lawful assigns of such Person, and all rights, benefits, interests, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, trustee, liquidator, rehabilitator, conservator, successor, or lawful assign of such Person;

(g)    unless otherwise indicated, the phrase "under the Plan" and similar words or phrases refer to the Plan in its entirety rather than to only a particular portion of the Plan;

(h)    unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan;

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 3

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

(i)　the words "herein," "hereof," "hereto," "hereunder," "herewith," and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

(j)　whenever the Plan uses the word "including," such reference shall be deemed to mean "including, without limitation,";

(k)　captions and headings to articles and sections are intended to be a part of the Plan;

(l)　whenever the Plan provides that a document or thing must be "acceptable" or "satisfactory" to any Person, such requirement shall in each case be subject to a reasonableness qualifier;

(m)　the definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Disclosure Statement, on any Ballot, or in any other document other than the Confirmation Order and the Sale Order; and

(n)　all other rules of construction set forth in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply.

The following Defined Terms shall have the respective meanings specified below:

**1.1**　**Administrative Claim:** A Claim (other than a Professional Fee Claim, but, for the avoidance of doubt, including Ordinary Course Professional Fee Claims) arising under Bankruptcy Code sections 503(b), 507(a)(2), 507(b), or 1114(e)(2), to the extent not previously paid, otherwise satisfied, or withdrawn, including (a) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code and (b) all Section 503(b)(9) Claims.

**1.2**　**Administrative Claims Bar Date:** The last date by which any Person must File a request for payment of an Administrative Claim, which date shall be the first Business Day that is at least thirty-five (35) calendar days after the Effective Date, or, alternatively, such earlier date as is set by the Bankruptcy Court. For the avoidance of doubt, postpetition statutory tax claims shall not be subject to any Administrative Claims Bar Date.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 4

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**1.3** <u>**Allocation Dispute**</u>: The adversary proceeding commenced by the Debtors against the Easterday Family (Adv. No. 21-80050) on September 22, 2021, seeking to determine the parties' respective rights in the Net Sale Proceeds.

**1.4** <u>**Allowed**</u>, <u>**Allowed Claim**</u>, or <u>**Allowed Administrative Claim**</u>:

    (a)    with respect to a Claim arising prior to the Petition Date (including a Section 503(b)(9) Claim):

        (i)    either (A) a proof of claim was timely Filed by the applicable Claims Bar Date, or (B) a proof of claim is deemed timely Filed either as a result of such Claim being Scheduled or by a Final Order; and

        (ii)    either (A) the Claim is not a Contingent Claim, a Disputed Claim, an Unliquidated Claim, or a Disallowed Claim; or (B) the Claim is expressly allowed by a Final Order or under the Plan;

    (b)    with respect to a Claim arising on or after the Petition Date (excluding a Section 503(b)(9) Claim), a Claim that has been allowed by a Final Order or under the Plan.

Unless otherwise specified in the Plan or by a Final Order, an "Allowed Administrative Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest, penalties, fees, or late charges on such Administrative Claim or Claim from and after the Petition Date. Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Cases is not an Allowed Claim. For the avoidance of doubt, any and all Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.

**1.5** <u>**Applicable Waterfall**</u>: Attached hereto as <u>**Exhibit A**</u> is the waterfall analysis under (i) <u>**OPTION A**</u> of this Plan based upon the "<u>**OPTION A Waterfall**</u>", which assumes a settlement of the Allocation Dispute with the Easterday Family, a transfer of the Basin City Property to the Liquidation Trust, and payment of the Easterday Family Tax Payments out of the Net Sale Proceeds and (ii) <u>**OPTION B**</u> of this Plan based upon the "<u>**OPTION B Waterfall**</u>", which assumes that the Debtors prevail on the Allocation Dispute in its entirety and the Easterday Family fully bears the burden of any tax obligations relating to the Debtors. The Applicable Waterfall under the Plan for all purposes as of the Effective Date shall consist of either <u>**OPTION A**</u> or <u>**OPTION B**</u>.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 5

Bush Kornfeld llp
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

**1.6** **Available Cash:** All Cash held by the Debtors on the Effective Date or by the Liquidation Trust, on or after the Effective Date; in each case, after payment, allocation, or reserve in accordance with the Plan for: (a) unpaid or unutilized amounts for Liquidation Trust Expenses; and (b) any post-Confirmation reserve requirements of the Debtors or the Liquidation Trust in connection with the Plan, any agreements, or any Bankruptcy Court orders. For the avoidance of doubt, except as specifically required by the Plan, any Cash that has been reserved on or before the Effective Date in respect of any party under the Cash Collateral Orders shall no longer be treated as reserved on such basis on and after the Effective Date.

**1.7** **Avoidance Actions:** Any and all causes of action, claims, remedies, or rights that may be brought by or on behalf of the Debtors or the Estates under Bankruptcy Code sections 542, 544, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes, or pursuant to any theory or cause of action under common law, regardless whether such action has been commenced prior to the Effective Date.

**1.8** **Ballot:** The ballot form distributed to each Holder of a Claim entitled to vote to accept or reject the Plan.

**1.9** **Bankruptcy Code:** Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as the same may be amended from time to time to the extent applicable to the Chapter 11 Cases.

**1.10** **Bankruptcy Court:** The United States Bankruptcy Court for the Eastern District of Washington, or in the event such court ceases to exercise jurisdiction over any Chapter 11 Case, such other court or adjunct thereof that exercises jurisdiction over such Chapter 11 Case in lieu of the United States Bankruptcy Court for the Eastern District of Washington.

**1.11** **Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure promulgated by the Supreme Court of the United States under 28 U.S.C. § 2075, as the same may be amended from time to time to the extent applicable to the Chapter 11 Cases.

**1.12** **Basin City Property:** Certain real estate and related property in the Basin City area of Franklin County, Washington titled in the name of Cody A. Easterday and Debby Easterday.

**1.13** **Business Day:** Any day other than a Saturday, a Sunday, a "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or any other day on which commercial banks in the State of Washington are required or authorized to close by law or executive order.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS – Page 6

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

21-00141-WLH11    Doc 1284    Filed 12/01/21    Entered 12/01/21 10:39:45    Pg 6 of 82

**1.14 Cash:** Cash and cash equivalents, including bank deposits, wire transfers, checks representing good funds, and legal tender of the United States of America or instrumentalities thereof.

**1.15 Cash Collateral Orders:** Collectively, the Final Cash Collateral Orders and the preceding interim orders entered by the Bankruptcy Court authorizing the applicable Debtors to use Cash and providing adequate protection.

**1.16 Causes of Action:** Any and all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, variances, trespasses, rights of setoff, third-party claims, subordination claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims, damages, or judgments whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, foreseen or unforeseen, asserted or unasserted, existing or hereafter arising, in law, at equity, by statute, whether for tort, fraud, contract, or otherwise. For the avoidance of doubt, the term "Causes of Action" includes Avoidance Actions.

**1.17 Chapter 11 Cases:** The voluntary chapter 11 bankruptcy cases commenced by the Debtors, which are being jointly administered under the case caption *In re Easterday Ranches, Inc., et al.*, Case No. 21-00141-11 (Bankr. E. D. Wash.).

**1.18 CHS:** CHS Capital and any affiliates, successors, and assigns, specifically including WTB.

**1.19 CHS Secured Claims:** All Claims against the Debtors arising under or relating to the CHS Secured Loan Agreement and all agreements and instruments relating to the foregoing (including, but not limited to, any guarantees with respect thereto). As of the date hereof, the CHS Secured Claims are held by WTB.

**1.20 CHS Secured Loan Agreement:** The Agricultural Loan Agreement, dated as of April 13, 2020, as amended, restated, supplemented, or otherwise modified from time to time, pursuant to which CHS advanced funds to the Debtors prior to the Petition Date.

**1.21 Claim:** Any "claim," as defined in Bankruptcy Code section 101(5), against any of the Debtors or against any property of the Debtors.

**1.22 Claim Objection Deadline:** Subject to extension as set forth in Section 8.2 of the Plan, the date that is the first Business Day that is at least **180 calendar days after**

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 7

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

**the Effective Date**. For the avoidance of doubt, the Claim Objection Deadline may be extended one or more times by the Bankruptcy Court.

**1.23** **Claims Bar Date:** As applicable, the Administrative Claims Bar Date, the General Claims Bar Date, the Governmental Claims Bar Date, any Supplemental Bar Date, or the Rejection Claims Bar Date.

**1.24** **Class:** A category of Claims or Equity Interests designated pursuant to the Plan, or any subclass thereof.

**1.25** **Collateral:** Any Estate Asset that is subject to a Lien to secure the payment or performance of a Claim, which Lien is perfected and not subject to avoidance under the Bankruptcy Code or otherwise invalid or unenforceable under the Bankruptcy Code or applicable nonbankruptcy law. For the avoidance of doubt, the term Collateral does not include the FRI Assets.

**1.26** **Committees:** Collectively, the Farms Committee and the Ranches Committee.

**1.27** **Confirmation:** Entry by the Bankruptcy Court of the Confirmation Order.

**1.28** **Confirmation Hearing:** The hearing or hearings held by the Bankruptcy Court to consider confirmation of the Plan as required by Bankruptcy Code section 1128(a), as such hearing may be continued from time to time.

**1.29** **Confirmation Order:** The order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

**1.30** **Contingent Claim:** Any Claim that is Scheduled or Filed as contingent.

**1.31** **Cooperation Agreement:** The agreement between the Debtors and the Easterday Family as set forth in the *Stipulation By and Between Debtors and Non-Debtor Sellers Regarding Cooperation with Respect to the Sale of Debtor and Non-Debtor Assets* approved by the Bankruptcy Court by order entered on April 28, 2021 [Docket No. 655].

**1.32** **Corporate Action:** Any action, approval, authorization, decision, or other act of any kind that would be necessary on the part of any Person for any corporation, limited liability company, general partnership, or other Person to in turn act.

**1.33** **Creditor:** Any Holder of a Claim.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 8

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**1.34** **Cure Payment:** The payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) that is necessary to cure any and all defaults under an executory contract or unexpired lease so that such contract or lease may be assumed, or assumed and assigned, pursuant to Bankruptcy Code section 1123(b)(2).

**1.35** **Debtor** or **Debtors:** Individually and collectively, Farms and Ranches.

**1.36** **Defined Term:** Any capitalized term that is defined in this Article I of the Plan.

**1.37** **DIP Claims:** Any and all Claims held by any DIP Lender arising from or in connection with the DIP Loan Agreement or the DIP Order.

**1.38** **DIP Facility:** That certain $2.0 million unsecured superpriority debtor-in-possession financing facility provided by the DIP Lender on the terms of, and subject to the conditions set forth in, the DIP Loan Agreement and the DIP Order.

**1.39** **DIP Lender:** Canyon Farm II, LLC and any successors thereto, solely in its capacity as lender under the DIP Loan Agreement.

**1.40** **DIP Loan Agreement:** That certain Binding DIP Loan Term Sheet dated as of March 25, 2021, as amended, restated, modified, supplemented, or replaced from time to time in accordance with its terms, by and among the Debtors and the DIP Lender.

**1.41** **DIP Order:** The Final Order entered by the Bankruptcy Court authorizing the Debtors to enter into the DIP Loan Agreement and access the DIP Facility.

**1.42** **Disallowed Claim:** Any Claim that (a) is not Scheduled, or is listed thereon as contingent, unliquidated, disputed, or in an amount equal to zero, and whose Holder failed to timely File a proof of claim by the applicable Claims Bar Date (unless late filing was permitted by a Bankruptcy Court order), but excluding any Claim that is expressly Allowed by a Final Order or under the Plan; or (b) has been disallowed pursuant to an order of the Bankruptcy Court.

**1.43** **Disclosure Statement:** That certain disclosure statement relating to the Plan, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125, as it subsequently may be amended, modified, or supplemented by the Debtors.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

**1.44** **Disclosure Statement Order:** The order approving the Disclosure Statement, authorizing the Debtors to solicit acceptances of the Plan, and establishing certain related procedures and deadlines.

**1.45** **Disputed Claim:** Any Claim:

(a)　that is disputed in whole or in part under the Plan; or

(b)　that is asserted by any of the Excluded Parties; or

(c)　that

(i)　is not expressly Allowed by a Final Order or under the Plan; and

(ii)　as to which a proof of claim is Filed or is deemed Filed as a result of such Claim being Scheduled; and

(iii)　as to which either:

(1)　an objection or request for estimation or subordination (A) has been timely Filed within the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order under which the applicable period of limitation has expired, and (B) has not been denied by a Final Order or withdrawn; or

(2)　the Claim Objection Deadline has not passed as to such Claim (unless the Liquidation Trust has determined that it will not object to such Claim).

**1.46** **Distributable Assets:** Except as otherwise noted below, any and all real or personal property of the Debtors and their Estates of any nature, including, without limitation, any real estate, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, inventory, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Causes of Action, books and records, any other general intangibles of the Debtors as of the Effective Date and the Liquidation Trust from and after the Effective Date, and any and all proceeds of the foregoing, as the case may be, of any nature whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent), including, without limitation, property of the Estates within the scope of Bankruptcy Code section

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 10

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

541. Notwithstanding the foregoing, the term "Distributable Assets" does not include (i) any Cash tendered by the Debtors and held in their counsel's trust account for the purpose of satisfying Professional Fee Claims or (ii) the FRI Assets.

**1.47** **Distribution:** Any initial or subsequent issuance, payment, or transfer of consideration made under the Plan.

**1.48** **Distribution Date:** Any date on which a Distribution is made.

**1.49** **Distribution Record Date:** The record date for determining entitlement of Holders of Claims to receive Distributions under the Plan, which date shall be the Effective Date.

**1.50** **Distribution Reserve:** One or more reserves in respect of Contingent Claims, Disputed Claims, or Unliquidated Claims established by the Liquidation Trust for Liquidation Trust Interests distributable under the Plan with respect to such Claims and amounts payable under the Plan with respect to such Claims or on account of such reserved Liquidation Trust Interests.

**1.51** **Easterday Family:** Cody A. Easterday, Karen L. Easterday (in her individual capacity and as the representative of Gale A. Easterday),[3] and Debby Easterday.

**1.52** **Easterday Family Tax Payments:** Described in Section 5.3 of the Plan.

**1.53** **Effective Date:** The date that is the first Business Day on which each condition set forth in Article IX of the Plan has been satisfied or waived as set forth therein.

**1.54** **Equity Interests:** All previously issued and outstanding common stock, preferred stock, partnership interests, or other ownership interests in either of the Debtors outstanding immediately prior to the Effective Date, including restricted stock, treasury stock, and all options, warrants, calls, rights, puts, awards, commitments, appreciation rights, or any other agreements of any character to convert, exchange, exercise for, or otherwise receive any such common stock, preferred stock, partnership interests, or other ownership interests.

**1.55** **Escrow Account:** The escrow account into which the Net Sale Proceeds are distributed, as defined in the Cooperation Agreement.

---

[3] Gale A. Easterday passed away on December 10, 2020.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 11

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

**1.56 Estate Assets:** Collectively, (a) any and all right, title, and interest of the Debtors and the Estates in and to property of whatever type or nature, including their books and records and all Avoidance Actions and Causes of Action, as of the Effective Date; and (b) any assets contributed to or recovered by the Liquidation Trust on or after the Effective Date. For the avoidance of doubt, the term Estate Assets does not include any of the FRI Assets.

**1.57 Estates:** The chapter 11 estates of the Debtors created by Bankruptcy Code section 541(a).

**1.58 Excluded Parties:** The Easterday Family and any other prepetition insider of any of the Debtors other than the Debtors' Related Parties.

**1.59 Exculpated Parties:** Collectively, (a) the Debtors' Related Parties, (b) the Committees and their respective Related Parties (solely in their capacities as such), and (c) FRI and its Related Parties. For the avoidance of doubt, the Exculpated Parties shall not include any Excluded Party.

**1.60 Farms:** Debtor Easterday Farms, a Washington general partnership.

**1.61 Farms Committee:** The official committee of unsecured creditors, as contemplated under Bankruptcy Code section 1102, which was appointed in the Chapter 11 Case of Farms, as such committee may be reconstituted from time to time.

**1.62 File, Filed, or Filing:** Duly and properly filed with the Bankruptcy Court and reflected on the docket of the Chapter 11 Cases.

**1.63 Final Decree:** An order entered pursuant to Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Chapter 11 Cases of one or both of the Debtors.

**1.64 Final Cash Collateral Orders:** That certain *Final Order Authorizing Debtor Easterday Farms to Use Cash Collateral and Granting Adequate Protection*, entered on March 25, 2021 [Docket No. 471] and *Final Order Authorizing Debtor Easterday Ranches, Inc. to Use Cash Collateral and Granting Adequate Protection*, entered on March 25, 2021 [Docket No. 470].

**1.65 Final Order:** An order or judgment of the Bankruptcy Court entered on the docket of the Chapter 11 Cases:

> (a)   that has not been reversed, rescinded, stayed, modified, or amended;

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

(b)     that is in full force and effect; and

(c)     with respect to which (i) the time to appeal or to seek review, rehearing, remand, or a writ of certiorari has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (ii) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

For the avoidance of doubt, no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Bankruptcy Code section 502(j), Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rules 9023 or 9024 may be or has been filed with respect to such order.

**1.66**   **FRI:** Farmland Reserve, Inc., a Utah nonprofit corporation, and its affiliates, subsidiaries, officers, directors, managers, principals, members, employees, and agents, each in its capacities as (a) stalking horse bidder in connection with an auction held on June 17, 2021 and the successful purchaser of the FRI Assets pursuant to the Purchase and Sale Agreement evidencing the the Sale Transaction approved at a hearing before the Bankruptcy Court on July 14, 2021 and that closed on July 30, 2021, (b) landlord to the Debtors under that certain Temporary Lease Agreement that became effective on the closing of the Sale Transaction on July 30, 2021, and (c) obligor on the Plan Sponsor Contribution.

**1.67**   **FRI Assets:**   All right, title and interest in and to certain property identified in that certain Purchase and Sale Agreement evidencing the Sale Transaction that closed pursuant to the Sale Order on July 30, 2021.

**1.68**   **General Claims Bar Date:** May 28, 2021.

**1.69**   **General Unsecured Claim:** Any unsecured, non-priority Claim existing as of the Petition Date or a Rejection Claim that is asserted against either or both of the Debtors or the Estates and is not a Secured Claim, WTB Claim, CHS Claim, Tyson Claim, Segale Claim, Intercompany Claim, or Subordinated Claim.

**1.70**   **Governmental Claims Bar Date:** August 9, 2021.

**1.71**   **Holder:** The Person that is the owner of record of a Claim, Equity Interest, or Liquidation Trust Interest, as applicable.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 13

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**1.72  Impaired:** Any Class of Claims or Equity Interests that is impaired within the meaning of Bankruptcy Code section 1124.

**1.73  Insured Claim:** Any Claim or portion of a Claim (other than a Claim held by an employee of the Debtors for workers' compensation coverage under the workers' compensation program applicable in the particular state in which the employee is employed by the Debtors) that is insured under the Debtors' insurance policies, but only to the extent of such coverage.

**1.74  Intercompany Claim:** A Claim of one Debtor against another Debtor.

**1.75  Lien:** Any lien, security interest, pledge, title retention agreement, encumbrance, leasehold, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

**1.76  Liquidation Trust:** The liquidation trust for the Farms and Ranches Estates established on the Effective Date for the benefit of the Liquidation Trust Beneficiaries in accordance with the terms of the Plan and the Liquidation Trust Agreement.

**1.77  Liquidation Trust Actions:** Collectively, all Avoidance Actions and Causes of Action held by the Debtors or the Estates that are vested in the Liquidation Trust, in each case as against any Person that is not a Released Party or Exculpated Party.

**1.78  Liquidation Trust Agreement:** The liquidation trust agreement substantially in the form Filed in the Plan Supplement establishing and delineating the terms and conditions of the Liquidation Trust, including the rights and duties of the Liquidation Trustee and the transfer of Liquidation Trust Assets from the Debtors to the Liquidation Trust.

**1.79  Liquidation Trust Assets:** Collectively, the Distributable Assets of each Debtor, including the Liquidation Trust Actions.

**1.80  Liquidation Trust Beneficiary:** Each Holder of a Liquidation Trust Interest. The Liquidation Trust Beneficiaries are Holders of Allowed Farms General Unsecured Claims (Class A Liquidation Trust Interest), Allowed Ranches General Unsecured Claims (Class B Liquidation Trust Interest), Allowed Tyson Claims (Class C Liquidation Trust Interest), and Allowed Segale Claims (Class D Liquidation Trust

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 14

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

21-00141-WLH11   Doc 1284   Filed 12/01/21   Entered 12/01/21 10:39:45   Pg 14 of 82

Interest). The Liquidation Trust Beneficiaries shall received the Liquidation Trust Interests in accordance with Sections 3.6 through 3.9 of the Plan.

**1.81** **Liquidation Trust Expenses:** Any and all reasonable fees, costs, and expenses incurred by the Liquidation Trustee not inconsistent with the Plan or the Liquidation Trust Agreement, including, without limitation, (i) the maintenance or disposition of the Liquidation Trust Assets, (ii) Liquidation Trustee fees, indemnity reserves, attorneys' fees, the fees of professionals, and other Persons retained by the Liquidation Trustee, (iii) personnel-related expenses, (iv) any taxes imposed on the Liquidation Trust or in respect of the Liquidation Trust Assets, and (v) any other expenses incurred or otherwise payable in accordance with the Liquidation Trust Agreement.

**1.82** **Liquidation Trust Indemnified Parties:** The Liquidation Trustee and its Related Parties, each in their respective capacity as such.

**1.83** **Liquidation Trust Interests:** The beneficial interests in the Liquidation Trust that are distributed to the Liquidation Trust Beneficiaries under the Plan.

**1.84** **Liquidation Trustee:** Peter Richter of Paladin Management Group, LLC shall be the initial Liquidation Trustee. In the event that Mr. Richter resigns or is no longer available for any reason, then the successor Liquidation Trustee shall be appointed by the Bankruptcy Court.

**1.85** **Net Distributable Assets:** The Distributable Assets of the Liquidation Trust from and after the Effective Date once all such assets have been reduced to Cash, net of amounts necessary to fund the payment of, as applicable and except as otherwise agreed by the Holders of such Claims, Allowed Administrative Claims, Priority Tax Claims, Priority Claims, and Liquidation Trust Expenses, and/or reserves established for any of the foregoing, and excluding those Distributable Assets of the Debtors or the Liquidation Trust that were subject to any Liens or Secured Claims as of the Effective Date until such time that such Liens or Secured Claims are satisfied in full. The Net Distributable Assets shall be distributed by the Liquidation Trustee in accordance with the Applicable Waterfall.

**1.86** **Net Sale Proceeds:** The net proceeds from the sale of the Debtors' assets, as defined in the Cooperation Agreement.

**1.87** **Ordinary Course Professional:** Any ordinary course professional retained pursuant to an order of the Bankruptcy Court.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 15

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**1.88   Ordinary Course Professional Fee Claim:** A Claim of an Ordinary Course Professional for compensation or reimbursement of costs and expenses relating to services provided during the period from the Petition Date through and including the Effective Date.

**1.89   Other Secured Claims:** Any Secured Claims that are not DIP Claims, WTB Secured Claims, or CHS Secured Claims.

**1.90   Person:** Any person or organization created or recognized by law, including any association, company, cooperative, corporation, entity, estate, fund, individual, joint stock company, joint venture, limited liability company, partnership, trust, trustee, unincorporated organization, government or any political subdivision thereof, or any other entity or organization of whatever nature.

**1.91   Petition Date:** (a) February 1, 2021, when used in reference to Ranches which Filed its voluntary chapter 11 petition for relief in the Bankruptcy Court on such date; and (b) February 8, 2021, when used in reference to Farms which Filed its voluntary chapter 11 petition for relief in the Bankruptcy Court on such date.

**1.92   Plan:** This *First Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* and all exhibits thereto, including the Plan Supplement, as the same may be amended, modified, or supplemented.

**1.93   Plan Sponsor Contribution:** $5,000,000.00, to be paid by FRI as set forth in Section 9.5 of the Plan.  For avoidance of doubt, the Plan Sponsor Contribution is an post-closing obligation of FRI that arose under the Purchase and Sale Agreement and remains contingent on the confirmation of the Plan in form and content that is consistent with the Sale Order.

**1.94   Plan Supplement:** The ancillary documents regarding the implementation and effectuation of the Plan, which will be Filed on or before the date that is seven (7) calendar days prior to the Voting Deadline, as such documents may be amended and supplemented prior to the Confirmation Hearing.  All documents to be included in the Plan Supplement shall be in form and substance reasonably acceptable to FRI.

**1.95   Priority Claim:** A Claim that is entitled to priority under Bankruptcy Code section 507(a), other than an Administrative Claim and a Priority Tax Claim.

**1.96   Priority Tax Claim:** A Claim that is entitled to priority under Bankruptcy Code section 507(a)(8).

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

**1.97** **Professional:** Any professional (other than an Ordinary Course Professional) employed in the Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328, 1103, or 1104 or any professional or other Person (in each case, other than an Ordinary Course Professional) seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to Bankruptcy Code section 503(b)(3) or 503(b)(4).

**1.98** **Professional Fee Claim:** A Claim of a Professional for compensation or reimbursement of costs and expenses (or of members of any of the Committees for reimbursement of expenses) relating to services provided during the period from the Petition Date through and including the Effective Date.

**1.99** **Professional Fee Reserves:** The reserves established and funded by the Liquidation Trust pursuant to Section 11.2 of the Plan to provide sufficient funds to satisfy in full all unpaid Allowed Professional Fee Claims that are not otherwise funded to the trust account of the Debtors' counsel.

**1.100** **Pro Rata:** Proportionately so that the ratio of (a) the amount of consideration distributed on account of a particular Allowed Claim or Liquidation Trust Interest to (b) the amount or number of that Allowed Claim or Liquidation Trust Interest, is the same as the ratio of (x) the amount of consideration available for Distribution on account of, as applicable, all Allowed Claims in the Class in which the particular Allowed Claim is included or all Liquidation Trust Interests to (y) as applicable, the amount of all Allowed Claims of that Class or the number of Liquidation Trust Interests, as adjusted to take into account any applicable Distribution Reserves.

**1.101** **Purchase and Sale Agreement:** The Purchase and Sale Agreement dated May 19, 2021, Filed by the Debtors at Docket No. 737, that was approved as the Stalking Horse Agreement by the Bankruptcy Court on May 28, 2021 at Docket No. 749, that was subsequently amended by that certain First Amendment on June 18, 2021 and Filed as the successful bidder PSA on June 21, 2021 at Docket No. 830, and on which the Sale Transaction closed on July 30, 2021 in accordance with the Sale Order entered by the Bankruptcy Court on July 20, 2021 at Docket No. 927. For avoidance of doubt, the term Purchase and Sale Agreement includes any Exhibit, Schedule, or ancillary agreement referenced in or related to the Purchase and Sale Agreement that was necessary to consummate the Sale Transaction.

**1.102** **Ranches:** Debtor Easterday Ranches, Inc., a Washington corporation.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 17

Bᴜsʜ Kᴏʀɴꜰᴇʟᴅ ʟʟᴘ
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

**1.103** __Ranches Committee:__ The official committee of unsecured creditors, as contemplated under Bankruptcy Code section 1102, which was appointed in the Chapter 11 Case of Ranches, as such committee may be reconstituted from time to time.

**1.104** __Rejection Claim:__ Any Claim for monetary damages as a result of the rejection of any prepetition executory contract or unexpired lease, whether rejected pursuant to the Confirmation Order or otherwise.

**1.105** __Rejection Claims Bar Date:__ To the extent not previously established by prior order of the Bankruptcy Court, the first Business Day that is at least thirty (30) calendar days after the Effective Date.

**1.106** __Related Parties:__ Collectively, all of the respective accountants, agents, attorneys, bankers, consultants, financial advisors, investment bankers, professional persons, representatives, and successors of the referenced Person; *provided, however*, that the Debtors' Related Parties will be limited to the following Persons: R. Todd Neilson; Craig Barbarosh; Thomas Saunders V; T. Scott Avila; Peter Richter; Paladin Management Group, LLC (and each of their subcontractors and their respective Related Parties); Pachulski Stang Ziehl & Jones LLP; Bush Kornfeld LLP; and any other Professional employed or retained by the Debtors pursuant to sections 327 of the Bankruptcy Code in these Chapter 11 Cases; *provided further*, for the avoidance of doubt, with respect to each Committee, "Related Parties" shall include the members of such Committee, each of such member's representatives with respect to the Committee, and their counsel, if any.

**1.107** __Released Parties:__ Collectively, (a) the Debtors' Related Parties and (b) the Settling Parties and their respective Related Parties (solely in their capacities as such); and (c) FRI and its Related Parties. For the avoidance of doubt, the Released Parties shall not include any Excluded Party.

**1.108** __Releasing Parties:__ Collectively, (a) the Debtors, (b) the Estates, and (c) the Settling Parties (but solely in that capacity).

**1.109** __Sale Order:__ The *Order (A) Authorizing The Debtors To Acquire Certain Assets Owned By The Easterdays; (B) Authorizing The Sale of Property Free And Clear Of Interests, Including Liens, Claims, Liabilities, and Encumbrances; (C) Granting The Buyer The Protections Afforded To A Good Faith Purchaser; (D) Approving The Assumption and Assignment Of Executory Contracts And Unexpired Leases; and (E) Granting Related Relief*, at Docket No. 927, as supplemented by the *Supplemental Sale*

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 18

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

*Order Concerning The Initial Paydown Amount For Prudential Insurance Company of America*, at Docket No. 948.

**1.110 <u>Sale Transaction</u>:** Collectively, (a) the Debtors' purchase, to the extent necessary, of the Easterday Family's rights, title and interests in and to the "Easterday Property" (as such term in defined in the Purchase and Sale Agreement); (b) the Debtors' sale to FRI of all the "Property" (as such term is defined in the Purchase and Sale Agreement); (c) FRI's leaseback of the "Property" to the Debtors pursuant to the Temporary Lease Agreement; and (d) FRI's obligation to contribute the Plan Sponsor Contribution in support of the consummation of the Plan.

**1.111 <u>Schedule of Assumed Agreements</u>:** The schedule of those certain executory contracts and unexpired leases that the Debtors have determined, in the Debtors' reasonable discretion, the Debtors may assume and/or assume and assign on the Effective Date. The initial Schedule of Assumed Agreements will be Filed as part of the initial Plan Supplement, but will remain subject to any modifications that may be made prior to the Effective Date pursuant to Section 6.1.1 of the Plan.

**1.112 <u>Scheduled</u>:** Set forth in the Schedules.

**1.113 <u>Schedules</u>:** The Schedules of Assets and Liabilities Filed by the Debtors in the Chapter 11 Cases, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

**1.114 <u>Section 503(b)(9) Claim</u>:** A Claim arising under Bankruptcy Code section 503(b)(9) for the value of any goods received by either of the Debtors within twenty (20) calendar days before the Petition Date and that were sold to either of the Debtors in the ordinary course of their business.

**1.115 <u>Secured Claim</u>:** A Claim that is secured by a valid, perfected, and enforceable Lien on property in which the Debtors or the Estates have an interest, which Lien is valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law. A Claim is a Secured Claim only to the extent of the value of the Holder's interest in the Debtors' interest in the Collateral or to the extent of the amount subject to setoff against a Cause of Action held by the Debtors, whichever is applicable, and as determined under Bankruptcy Code section 506(a). To the extent that the value of such interest in the Debtors' interest in the subject Collateral or the amount subject to setoff against a Cause of Action held by the Debtors (as applicable) is less than the amount of the Claim which has the benefit

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 19

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

of such security or is supported by such setoff right, such portion of the Claim is unsecured and shall be treated as a General Unsecured Claim unless, in any such case, the Class of which the Secured Claim is a part makes a valid and timely election in accordance with Bankruptcy Code section 1111(b) to have such Claim(s) treated as a Secured Claim to the extent Allowed.

**1.116 Securities Act:** The Securities Act of 1933, as amended.

**1.117 Segale:** Segale Properties, LLC and any affiliates, successors, and assigns.

**1.118 Segale Claims:** All Claims against Ranches asserted by Segale.

**1.119 Settling Parties:** To the extent that each such party agrees in a writing delivered to Debtors' counsel prior to the Voting Deadline, Farms Committee, Ranches Committee, Segale, Tyson, and WTB.

**1.120 Subordinated Claim:** Collectively, any Claim that is subordinated to General Unsecured Claims pursuant to Bankruptcy Code section 510, a Final Order, or by consent of the Creditor holding such Claim.

**1.121 Supplemental Bar Date:** Any supplemental bar date that may be established by an order of the Bankruptcy Court.

**1.122 Temporary Lease Agreement:** The leaseback, effective as of July 30, 2021 by and between FRI, as lessor, and the Debtors, as lessee, that was part of the Sale Transaction evidenced by the Purchase and Sale Agreement and authorized and approved by the Bankruptcy Court pursuant to its entry of the Sale Order. For avoidance of doubt, references in the Plan to the Purchase and Sale Agreement include the Temporary Lease Agreement.

**1.123 Tyson:** Tyson Fresh Meats, Inc. and any affiliates, successors, and assigns.

**1.124 Tyson Claims:** All Claims against Ranches asserted by Tyson.

**1.125 Unimpaired:** Any Class of Claims that is not impaired within the meaning of Bankruptcy Code section 1124.

**1.126 Uninsured Portion:** The portion of any Insured Claim, if any, that is not insured under the Debtors' insurance policies or that is beyond the extent of such coverage.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 20

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

**1.127** **Unliquidated Claim:** Any Claim that is Scheduled as unliquidated or that was Filed in an unliquidated amount.

**1.128** **U.S. Trustee:** The Office of the United States Trustee for the Eastern District of Washington.

**1.129** **Voting Deadline:** The date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the Disclosure Statement Order.

**1.130** **WTB:** Washington Trust Bank and any affiliates, successors, and assigns.

**1.131** **WTB Secured Claims:** All Claims against the Debtors arising under or relating to the WTB Secured Note and all agreements and instruments relating to the foregoing (including, but not limited to, any guarantees with respect thereto).

**1.132** **WTB Secured Note:** The Promissory Note, dated as of September 3, 2020, as amended, restated, supplemented, or otherwise modified from time to time, pursuant to which WTB advanced funds to the Debtors.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**2.1** **Summary and Classification of Claims.** This Section classifies Claims – except for Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Claims, which are not classified – for all purposes, including confirmation, Distributions, and voting. A Claim is classified in a particular Class only to the extent that the Claim falls within the Class description. To the extent that part of a Claim falls within a different Class description, that part of the Claim is classified in that different Class. The following table summarizes the Classes of Claims under the Plan:

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|-------|-------------|----------------------|---------------|
| None | Administrative Claims | Unimpaired | Not Entitled to Vote |
| None | Professional Fee Claims | Unimpaired | Not Entitled to Vote |
| None | Priority Tax Claims | Unimpaired | Not Entitled to Vote |

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 21

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|---|---|---|---|
| None | DIP Claims | Unimpaired | Not Entitled to Vote |
| Class 1 | Other Secured Claims[4] | Unimpaired | Not Entitled to Vote (deemed to accept) |
| Class 2 | Priority Claims | Unimpaired | Not Entitled to Vote (deemed to accept) |
| Class 3 | WTB Secured Claims | Impaired | Entitled to Vote |
| Class 4 | CHS Secured Claims | Impaired | Entitled to Vote |
| Class 5 | Farms General Unsecured Claims | Impaired | Entitled to Vote |
| Class 6 | Ranches General Unsecured Claims | Impaired | Entitled to Vote |
| Class 7 | Tyson Claims | Impaired | Entitled to Vote |
| Class 8 | Segale Claims | Impaired | Entitled to Vote |
| Class 9 | Equity Interests | Impaired | Not Entitled to Vote (deemed to reject) |

**NOTWITHSTANDING ANY OTHER TERM OR PROVISION OF THE PLAN, NO DISTRIBUTIONS WILL BE MADE ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS A DISALLOWED CLAIM.**

**2.2** **Subordinated Claims.**

The allowance, classification, and treatment of all Claims under the Plan, including Subordinated Claims, shall take into account and conform to the contractual,

---

[4] For voting purposes and to comply with Bankruptcy Code section 1122(a), each Allowed Other Secured Claim shall be deemed to be in its own subclass (unless such Holder shares the same Lien on Collateral with a different Holder of another Other Secured Claim, in which case such Claims shall be deemed to be included together in the same subclass).

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 22

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, Bankruptcy Code sections 510(a) or 510(b), or otherwise. Pursuant to Bankruptcy Code section 510, the Debtors and the Liquidation Trustee shall reserve the right to re-classify, or to seek to subordinate, any Claim as a Subordinated Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a Subordinated Claim at any time shall be modified to reflect such subordination. Although Subordinated Claims are not separately classified under the Plan, they shall receive the same treatment as Equity Interests (*i.e.*, no distribution).

**2.3 Intercompany Claims.**

Intercompany Claims are taken into account in the Applicable Waterfall. Intercompany Claims are not otherwise separately classified under the Plan.

**2.4 Classification & Voting Controversies.**

(a) If a controversy arises regarding whether any Claim is properly classified under the Plan, then the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing.

(b) If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the Holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

# ARTICLE III

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**3.1 Unclassified Claims.**

**3.1.1 Administrative Claims.** Except as otherwise provided for herein, and subject to the requirements of the Plan, on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which an Administrative Claim becomes an Allowed Administrative Claim, the Holder of such Allowed Administrative Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Claim or (b) such other less

FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS – Page 23

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

favorable treatment as to which such Holder and the Liquidation Trustee shall have agreed upon in writing.

**3.1.2  Professional Fee Claims.** Professional Fee Claims shall be paid as set forth in Section 11.2 of the Plan.

**3.1.3  Priority Tax Claims.** In full satisfaction, settlement, and release of and in exchange for such Claims, Allowed Priority Tax Claims shall be paid, at the Liquidation Trustee's option, as follows: (a) Cash equal to the unpaid portion of such Allowed Priority Tax Claim on the later of the Effective Date and thirty (30) calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; (b) in regular installment payments in Cash over a period not exceeding five (5) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable nonbankruptcy law as of the calendar month in which the Effective Date occurs (*provided* that such election shall be without prejudice to the right to prepay any such Allowed Priority Tax Claim in full or in part without penalty); or (c) such other treatment as to which the Holder of an Allowed Priority Tax Claim and the Liquidation Trustee shall have agreed upon in writing.

**3.1.4  DIP Claims.** Subject to the DIP Order, the DIP Claims shall be deemed to be Allowed in the full amount due and owing under the DIP Facility as of the Effective Date, if any. Any outstanding DIP Claims shall be indefeasibly paid in full in Cash and the Debtors' rights and obligations under the DIP Facility shall be cancelled, except as otherwise agreed by the Debtors or the Liquidation Trustee and the Holder of the DIP Claims.

**3.2  Class 1: Other Secured Claims.**

Class 1 consists of all Other Secured Claims. Class 1 is Unimpaired under the Plan.

The legal, equitable, and contractual rights of Holders of Allowed Class 1 Claims are unaltered by the Plan and the Liens of the Holders of Allowed Class 1 Claims will continue to attach to their respective Collateral, provided that all such Claims shall remain subject to any and all defenses, challenges, counterclaims, and setoff or recoupment rights with respect thereto. Unless the Liquidation Trustee and the Holder of an Allowed Class 1 Claim agree to other treatment, on or as soon as is reasonably practicable after the Effective Date, each Holder of an Allowed Class 1 Claim shall receive, at the option of the Liquidation Trustee: (i) Cash from the Liquidation Trust in

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 24

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

the Allowed amount of such Holder's Allowed Class 1 Claim; or (ii) the return of the Collateral securing such Allowed Class 1 Claim, without representation or warranty by any Person (and without recourse against any Person regarding such Other Secured Claim); or (iii) (A) the cure of any default, other than a default of the kind specified in Bankruptcy Code section 365(b)(2), that Bankruptcy Code section 1124(2) requires to be cured, with respect to such Holder's Allowed Class 1 Claim, without recognition of any default rate of interest or similar penalty or charge, and upon such cure, no default shall exist; (B) the reinstatement of the maturity of such Allowed Class 1 Claim as the maturity existed before any default, without recognition of any default rate of interest or similar penalty or charge; and (C) retention of its unaltered legal, equitable, and contractual rights with respect to such Allowed Class 1 Claim, including through the retention of any associated Lien on the Collateral securing such Allowed Class 1 Claim.

The Bankruptcy Court shall retain jurisdiction and power to determine the amount necessary to satisfy any Allowed Class 1 Claim for which treatment is elected under clause (i) or clause (iii) of the immediately foregoing paragraph. With respect to any Allowed Class 1 Claim for which treatment is elected under clause (i), any Holder of such Allowed Class 1 Claim shall release (and by the Confirmation Order shall be deemed to release) all Liens against any Estate Assets. Notwithstanding anything else in the Plan, the Holders of Allowed Class 1 Claims will have no right to receive any Distribution from, or otherwise share in, any of the Liquidation Trust Assets.

### 3.3 Class 2: Priority Claims.

Class 2 consists of all Priority Claims. Class 2 is Unimpaired under the Plan.

On, or as soon as reasonably practicable after, the later of (i) the Effective Date and (ii) the date on which a Priority Claim becomes payable pursuant to and as specified by an order of the Bankruptcy Court, the Holder of such Allowed Priority Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Priority Claim, either (a) Cash from the Liquidation Trust equal to the unpaid portion of such Allowed Priority Claim or (b) such other less favorable treatment to which such Holder and the Liquidation Trustee shall have agreed upon in writing.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

**3.4     Class 3: WTB Secured Claims.**

Class 3 consists of all WTB Secured Claims. Class 3 is Impaired under the Plan and entitled to vote.

On the Effective Date or as soon as reasonably practicable thereafter, each Holder of an Allowed Class 3 Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 3 Claim, the treatment contemplated in the Applicable Waterfall.

**Estimated Cash Recovery:**

**OPTION A**: $44.9 million

**OPTION B**: $47.4 million

**Estimated Percentage Recovery:**

**OPTION A**: 90%

**OPTION B**: 95%

Notwithstanding anything to the contrary herein, each Holder of a Class 3 Claim shall be required to check a box on its Ballot affirmatively assigning any individual Causes of Action of such Holder against the Easterday Family to the Liquidation Trust. Absent such assignment, the distributions to such Holder of WTB Secured Claims under the Plan shall be reduced by 25% and such funds shall instead be distributed to other Creditors in accordance with the Applicable Waterfall.

**3.5     Class 4: CHS Secured Claims.**

Class 4 consists of all CHS Secured Claims. Class 4 is Impaired under the Plan and entitled to vote.

On the Effective Date or as soon as reasonably practicable thereafter, each Holder of an Allowed Class 4 Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 4 Claim, the same treatment as the WTB Secured Claims. All CHS Secured Claims are held by WTB and are included in the distribution to WTB Secured Claims under the Applicable Waterfall.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 26

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

**3.6    Class 5: Farms General Unsecured Claims.**

Class 5 consists of all Farms General Unsecured Claims. Class 5 is Impaired under the Plan and entitled to vote.

On or as soon as practicable after the Effective Date, each Holder of an Allowed Farms General Unsecured Claim shall receive, as the sole distribution or dividend by Farms or its Estate under this Plan on account of such Allowed Farms General Unsecured Claim, a Pro Rata share of the Class A Liquidation Trust Interests in the Liquidation Trust (calculated as a percentage of all Allowed General Unsecured Claims against Farms), which shall entitle such Holder to the treatment contemplated in the Applicable Waterfall.

**Estimated Cash Recovery:**

**OPTION A**: $15.8 million

**OPTION B**: $16.8 million

**Estimated Percentage Recovery:**

**OPTION A**: 89%

**OPTION B**: 94%

Notwithstanding anything to the contrary herein, each Holder of a Class 5 Claim shall be required to check a box on its Ballot affirmatively assigning any individual Causes of Action of such Holder against the Easterday Family to the Liquidation Trust. Absent such assignment, the distributions to such Holder of Farms General Unsecured Claims under the Plan shall be reduced by 25% and such funds shall instead be distributed to other Creditors in accordance with the Applicable Waterfall.

**3.7    Class 6: Ranches General Unsecured Claims.**

Class 6 consists of all Ranches General Unsecured Claims. Class 6 is Impaired under the Plan and entitled to vote.

On or as soon as practicable after the Effective Date, each Holder of an Allowed Ranches General Unsecured Claim shall receive, as the sole distribution or dividend by Ranches or its Estate under this Plan on account of such Allowed Ranches General

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 27

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

Unsecured Claim, a Pro Rata share of the Class B Liquidation Trust Interests in the Liquidation Trust (calculated as a percentage of all Allowed General Unsecured Claims against Ranches), which shall entitle such Holder to the treatment contemplated in the Applicable Waterfall.

**Estimated Cash Recovery:**

**OPTION A**: $2.9 million

**OPTION B**: $2.9 million

**Estimated Percentage Recovery:**

**OPTION A**: 48%

**OPTION B**: 49%

The Applicable Waterfall reflects that Holders of Ranches General Unsecured Claims shall receive the first $1 million of any net proceeds of any claims of the Ranches' estate, Tyson, and Segale against Cody Easterday, the next $3.2 million of such proceeds shall be distributed Pro Rata to Holders of Tyson Claims and Segale Claims, and the remainder of such net proceeds or any other proceeds of the Ranches' Estate shall be distributed Pro Rata to Holders of [Ranches General Unsecured Claims], Tyson Claims, and Segale Claims.

Notwithstanding anything to the contrary herein, each Holder of a Class 6 Claim shall be required to check a box on its Ballot affirmatively assigning any individual Causes of Action of such Holder against the Easterday Family to the Liquidation Trust. Absent such assignment, the distributions to such Holder of Ranches General Unsecured Claims under the Plan shall be reduced by 25% and such funds shall instead be distributed to other Creditors in accordance with the Applicable Waterfall.

**3.8    Class 7: Tyson Claims.**

Class 7 consists of all Tyson Claims.  Class 7 is Impaired under the Plan and entitled to vote.

Tyson shall have an allowed, unsecured Class 7 Claim in the amount of $261,316,000, unless otherwise determined by Final Order or agreed by the Debtors or

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 28

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

the Liquidation Trust and Tyson.

All Estate claims against Tyson, including any Avoidance Claims, shall be deemed resolved upon the Effective Date. All rights of Tyson against Cody Easterday shall be fully reserved under all circumstances.

The Applicable Waterfall reflects that Holders of Ranches General Unsecured Claims shall receive the first $1 million of any net proceeds of any claims of the Ranches' estate, Tyson, and Segale against Cody Easterday, the next $3.2 million of such proceeds shall be distributed Pro Rata to Holders of Tyson Claims and Segale Claims, and the remainder of such net proceeds or any other proceeds of the Ranches' Estate shall be distributed Pro Rata to Holders of [Ranches General Unsecured Claims], Tyson Claims, and Segale Claims.

All restitution claims of Tyson against Cody Easterday shall be deemed assigned to the Liquidation Trust, until such time that the Liquidation Trustee determines not to pursue such claims any further, in which case any remaining claims shall be transferred by the Liquidation Trustee to a designee of Tyson.

On or as soon as practicable after the Effective Date, each Holder of an Allowed Tyson Claim shall receive, as the sole distribution or dividend by Ranches or its Estate under this Plan on account of such Allowed Tyson Claim, a Pro Rata share of the Class C Liquidation Trust Interests in the Liquidation Trust, which shall entitle such Holder to the treatment contemplated in the Applicable Waterfall.

**Estimated Cash Recovery:**

**OPTION A**: $56.7 million

**OPTION B**: $56.7 million

**Estimated Percentage Recovery:**

**OPTION A**: 22%

**OPTION B**: 22%

Notwithstanding anything to the contrary herein, each Holder of a Class 7 Claim shall be required to check a box on its Ballot affirmatively assigning any individual

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 29

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

Causes of Action of such Holder against the Easterday Family to the Liquidation Trust. Absent such assignment, the distributions to such Holder of Tyson Claims under the Plan shall be reduced by 25% and such funds shall instead be distributed to other Creditors in accordance with the Applicable Waterfall.

**3.9     Class 8: Segale Claims.**

Class 8 consists of all Segale Claims. Class 8 is Impaired under the Plan and entitled to vote.

Segale shall have an allowed, unsecured Class 8 Claim in the amount of $0 to $7,694,217, as determined by Final Order or agreed by the Debtors or the Liquidation Trust and Segale.

The Applicable Waterfall reflects that Holders of Ranches General Unsecured Claims shall receive the first $1 million of any net proceeds of any claims of the Ranches' estate, Tyson, and Segale against Cody Easterday, the next $3.2 million of such proceeds shall be distributed Pro Rata to Holders of Tyson Claims and Segale Claims, and the remainder of such net proceeds or any other proceeds of the Ranches' Estate shall be distributed Pro Rata to Holders of [Ranches General Unsecured Claims], Tyson Claims, and Segale Claims.

All restitution claims of Segale against Cody Easterday shall be deemed assigned to the Liquidation Trust, until such time that the Liquidation Trustee determines not to pursue such claims any further, in which case any remaining claims shall be transferred by the Liquidation Trustee to a designee of Segale.

On or as soon as practicable after the Effective Date, each Holder of an Allowed Segale Claim shall receive, as the sole distribution or dividend by Ranches or its Estate under this Plan on account of such Allowed Segale Claim, a Pro Rata share of the Class D Liquidation Trust Interests in the Liquidation Trust, which shall entitle such Holder to the treatment contemplated in the Applicable Waterfall.

**Estimated Cash Recovery:**

**OPTION A**: $2.5 million

**OPTION B**: $2.5 million

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 30

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

**Estimated Percentage Recovery:**

**OPTION A**: 33%

**OPTION B**: 33%

Notwithstanding anything to the contrary herein, each Holder of a Class 8 Claim shall be required to check a box on its Ballot affirmatively assigning any individual Causes of Action of such Holder against the Easterday Family to the Liquidation Trust. Absent such assignment, the distributions to such Holder of Segale Claims under the Plan shall be reduced by 25% and such funds shall instead be distributed to other Creditors in accordance with the Applicable Waterfall

### 3.10   Class 9: Equity Interests.

Class 9 consists of all Equity Interests. Class 9 is Impaired under the Plan and deemed to reject the Plan.

As of the Effective Date, all Equity Interests shall be deemed void, cancelled, and of no further force and effect. On and after the Effective Date, Holders of Equity Interests shall not be entitled to, and shall not receive or retain any property or interest in property under the Plan on account of such Equity Interests. Class 9 is deemed to have rejected the Plan and, therefore, Holders of Equity Interests are not entitled to vote on the Plan.

### 3.11   Special Provisions Regarding Insured Claims.

(a)      Any Allowed General Unsecured Claim with respect to an Insured Claim shall be limited to the Uninsured Portion of such Claim, provided such Claims have been timely Filed by the applicable Claims Bar Date.

(b)      If there is insurance purchased by or otherwise applicable to the Debtors, any Person with rights against or under the applicable insurance policy, including the Liquidation Trust and Holders of Insured Claims, may pursue such rights.

(c)      Nothing in this Section 3.11 shall constitute a waiver of any Causes of Action the Debtors, the Estates, or the Liquidation Trust may hold against any Person, including the Debtors' insurance carriers; and nothing in this Section 3.11 is intended to, shall, or shall be deemed to preclude any Holder of an Insured Claim from seeking or obtaining a distribution or other recovery from any insurer of the Debtors in addition

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 31

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

to (but not in duplication of) any Distribution such Holder may receive under the Plan; *provided, however*, that the Debtors and the Liquidation Trust do not waive, and expressly reserve their rights to assert that any insurance coverage is property of the Estates to which they are entitled.

(d)     The Plan shall not expand the scope of, or alter in any other way, the rights and obligations of the Debtors' insurers under their policies, and the Debtors' insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest or litigate with any Person the existence, primacy, or scope of available coverage under any allegedly applicable policy. The Plan shall not operate as a waiver of any other Claims the Debtors' insurers have asserted or may assert in any proof of claim or of any objections or defenses to any such Claims.

## 3.12    Comprehensive Settlement of Claims and Controversies.

**3.12.1Generally.** Pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), and 1123(b)(6), as well as Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims and controversies relating to the rights that a Holder of a Claim or an Equity Interest may have against either Debtor with respect to any Claim, Equity Interest, or any Distribution on account thereof, as well as of all potential Intercompany Claims and Causes of Action against either Debtor. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are (i) in the best interest of the Debtors, the Estates, and their respective property and stakeholders; and (ii) fair, equitable, and reasonable. This comprehensive compromise and settlement is a critical component of the Plan and is designed to provide a resolution of myriad disputed intercompany and intercreditor Claims, Liens, and Causes of Action that otherwise could take years to resolve, which would delay and undoubtedly reduce the Distributions that ultimately would be available for all Creditors.

**3.12.2Net Sale Proceeds.** The Net Sale Proceeds in the Escrow Account shall remain in such account pending entry of the Confirmation Order or further order of the Bankruptcy Court in the Allocation Dispute.  All rights of the Liquidation Trust, as successor to the respective Estates, are expressly reserved with respect to the allocation of the Net Sale Proceeds.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

# ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

**4.1** **Impaired Class of Claims Entitled to Vote.** Only the votes of Holders of Allowed Claims in Class 3, Class 4, Class 5, Class 6, Class 7, and Class 8 shall be solicited with respect to the Plan.

**4.2** **Acceptance by an Impaired Class.** In accordance with Bankruptcy Code section 1126(c), and except as provided in Bankruptcy Code section 1126(e), the Holders of Claims in any Class entitled to vote on the Plan shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.

**4.3** **Presumed Acceptances by Unimpaired Classes.** Class 1 and Class 2 are Unimpaired under the Plan. Under Bankruptcy Code section 1126(f), the Holders of Claims in such Unimpaired Classes are conclusively presumed to have accepted the Plan, and, therefore, the votes of such Holders shall not be solicited.

**4.4** **Impaired Classes Deemed to Reject Plan.** Holders of Equity Interests in Class 9 are not entitled to receive or retain any property or interests in property under the Plan. Under Bankruptcy Code section 1126(g), such Holders are deemed to have rejected the Plan, and, therefore, the votes of such Holders shall not be solicited.

**4.5** **Modifications of Votes.** Following the Voting Deadline, no Creditors entitled to vote on the Plan will be able to change their votes cast on the Plan or any attendant elections or preferences without the written consent of the Debtors, which consent may be given or withheld in the Debtors' reasonable discretion.

**4.6** **Confirmation Pursuant to Bankruptcy Code Section 1129(b).** Because at least one Impaired Class is deemed to have rejected the Plan, the Debtors will and hereby request confirmation of the Plan under Bankruptcy Code section 1129(b). The Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan, the Plan Supplement, or any schedule or exhibit, including to amend or modify it to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

**4.7** **Elimination of Vacant Classes.** Any Class of Claims or Equity Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim, or a Holder of a Claim temporarily allowed under

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 33

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Bankruptcy Rule 3018, shall be deemed deleted from the Plan for purposes of determining acceptance of the Plan by such Class under Bankruptcy Code section 1129(a)(8).

**4.8** **Severability of Joint Plan.** This Plan represents a joint plan comprised of individual plans for both of the Debtors. As further discussed in Section 11.5 of the Plan, the Debtors may alter, amend, or modify this Plan at or before the Confirmation Hearing in the Debtors' reasonable discretion.

## ARTICLE V

### IMPLEMENTATION OF THE PLAN

**5.1** **Implementation of the Plan.** The Plan will be implemented by various acts and transactions as set forth in the Plan, including, among other things, the establishment of the Liquidation Trust, the appointment of the Liquidation Trustee, and the making of Distributions by the Liquidation Trust in accordance with the Applicable Waterfall and the Plan. The Liquidation Trust will be created to maximize the value of the Liquidation Trust Assets and pursue the Liquidation Trust Actions for the benefit of the Liquidation Trust Beneficiaries. The Plan does not effectuate a substantive consolidation of the Estates.

**5.2** **Applicable Waterfall.** On the Effective Date, the Plan will be implemented through the Applicable Waterfall (**OPTION A** or **OPTION B**) with respect to distributions to Holders of Impaired Claims. The Applicable Waterfall shall consist of either the **OPTION A Waterfall** or the **OPTION B Waterfall**, as described below:

**OPTION A Waterfall**: subject to the unanimous agreement of the Easterday Family, (1) the Net Sale Proceeds and the Basin City Property shall be released, transferred, and/or assigned in their entirety to the Liquidation Trust to fund Plan distributions to Holders of Impaired Claims and the Easterday Family Tax Payments and (2) all rights of the Debtors, the Estates, and all Holders of Impaired Claims, on the one hand, and the Easterday Family, on the other hand, as to any and all Causes of Action shall be fully preserved, except as to the Net Sale Proceeds, the Allocation Dispute, the Basin City Property, and the Easterday Family Tax Payments. For the avoidance of doubt, the Basin City Property shall be transferred to the Liquidation Trust, and distributed in accordance with the **OPTION A Waterfall**, on account of Tyson's and Segale's restitution claims against Cody Easterday.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 34

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**OPTION B Waterfall**: (1) the Net Sale Proceeds shall be released, as determined by the Bankruptcy Court with respect to the Allocation Dispute, to the Liquidation Trust to fund Plan distributions to Holders of Impaired Claims, (2) no Easterday Family Tax Payments shall be funded by the Debtors' estates, and (3) all rights of the Debtors, the Estates, and Holders of Impaired Claims, on the one hand, and the Easterday Family, on the other hand, as to any and all Causes of Action shall be fully preserved. This Option shall be conditioned upon a ruling by the Bankruptcy Court on the Allocation Dispute that is acceptable to the Debtors and the Settling Parties, which the Debtors shall endeavor to obtain at or prior to the Confirmation Hearing.

On the Effective Date, all restitution claims of Tyson and Segale against Cody Easterday shall be deemed assigned to the Liquidation Trust and any recoveries with respect thereto shall be distributed in accordance with the **OPTION B Waterfall**. In addition, all Holders of Impaired Claims voting on the Plan shall be required to assign their individual claims, if any, against the Easterday Family to the Liquidation Trust in order to receive full distributions under the Plan. Absent such affirmative assignment, distributions to non-supporting Holders of Impaired Claims shall be reduced by 25%.

**OPTION A** shall be implemented to the extent that the Easterday Family unanimously agrees to it, which Option must be exercised no later than seven (7) days prior to the Voting Deadline. **OPTION B** shall be the fallback option absent such agreement. The Debtors shall file a notice with the Bankruptcy Court prior to the Confirmation Hearing disclosing which Option has been selected.

**5.3    Easterday Family Tax Payments.**

Under **OPTION A** of the Plan only, the Liquidation Trustee shall pay out of the Net Sale Proceeds directly to the applicable taxing authorities up to $18 million of taxes owed by the Easterday Family on account of income and/or sales taxes directly related to the business operations of the Debtors or the sale of the Debtors' real estate (collectively, the "**Easterday Family Tax Payments**").

The Easterday Family shall cooperate in good faith with the Liquidation Trustee in connection with the preparation and filing of applicable tax returns and provide the Liquidation Trustee with a reasonable amount of time to review and approve the filing of applicable tax returns.

The Easterday Family shall present the applicable tax bills to the Liquidation Trustee for direct payment to the applicable taxing authorities at least fourteen (14) days in advance of the requested payment date.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

The Easterday Family shall be responsible for, and shall promptly pay, any taxes that may be owed with respect to the Debtors or their assets in excess of $18 million.

Under **OPTION B** of the Plan, the Debtors' Estates shall have no responsibility whatsoever for the Easterday Tax Payments, all of which shall be borne entirely by the Easterday Family.

**5.4** **Resolution of Allocation Dispute.**

Under **OPTION A** of the Plan only, the Easterday Family shall unanimously stipulate that the entirety of the Net Sale Proceeds, subject to the Easterday Family Tax Payments, belong to the Debtors' Estates. This Option must be exercised no later than seven (7) days prior to the Voting Deadline.

Under **OPTION B** of the Plan, the Allocation Dispute will be resolved by the Bankruptcy Court.

**5.5** **Reservation of Rights Against Easterday Family.**

Under **OPTION A** of the Plan only, all Causes of Action of the Debtors, the Estates, and Holders of Impaired Claims, on the one hand, and the Easterday Family, on the other hand, are fully reserved, except as to the Net Sale Proceeds, the Allocation Dispute, and the Easterday Family Tax Payments.

Under **OPTION B** of the Plan only, all Causes of Action of the Debtors, the Estates, and Holders of Impaired Claims, on the one hand, and the Easterday Family, on the other hand, are fully preserved as to all matters.

**5.6** **Sale Transaction.**

On July 20, 2021, the Bankruptcy Court entered the Sale Order authorizing and approving the two-step Sale Transaction pursuant to which the Debtors acquired, to the extent necessary, all of the Easterday Family's right, title and interest to certain property (as defined under the Purchase and Sale Agreement) and then sold the FRI Assets to FRI, subject only to FRI's agreement to lease back certain of the FRI Assets to the Debtors pursuant to the Temporary Lease Agreement. The Plan presumes that, at Confirmation, the Temporary Lease Agreement shall have terminated on its terms and that to the extent the Debtors or FRI may have claims, rights, or ongoing obligations to each other under the Temporary Lease Agreement that survive the termination, such claims, rights, or ongoing obligations shall have been fully and finally resolved at

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 36

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Confirmation such that any claims, rights or ongoing obligations shall cease to exist on the Effective Date, and that the Liquidation Trust shall not inherit any claims, rights, benefits, or Causes of Action arising under, relating to, or in connection with the Purchase and Sale Agreement.

Nothing in the Plan is intended to, nor shall be construed to, alter any of the terms and conditions upon which the Sale Transaction was approved as set forth in the Purchase and Sale Agreement or in any agreement referenced in or related to the Purchase and Sale Agreement. Neither the Plan nor the Confirmation Order shall limit or otherwise affect any of the Bankruptcy Court's findings, conclusions, orders, and judgments as set forth in the Sale Order, and insofar as any of the protections afforded FRI by the Sale Order conflict with or contradict certain terms and conditions in the Plan or any findings, conclusions, orders or judgments in the Confirmation Order, the Sale Order shall govern and control with respect to FRI.

Notwithstanding anything that may suggest otherwise in the Plan, the Plan Supplement, any Schedule or Exhibit to either of the foregoing, or any other document executed in connection with Confirmation, neither the Liquidation Trust nor any Holder of any Claim shall have any recourse against FRI or the FRI Assets on account of the Sale Transaction, the Purchase and Sale Agreement, the Temporary Lease Agreement, or any other agreement executed in connection with the consummation of the Sale Transaction between and among FRI, the Debtors and the Easterday Family.

**5.7** **Net Sale Proceeds.**

Under **OPTION A** of the Plan only, on the Effective Date, the Easterday Family shall unanimously relinquish any rights and interests in and to the Net Sale Proceeds and the Basin City Property, subject to the Easterday Family Tax Payments. For the avoidance of doubt, the Net Sale Proceeds and the Basin City Property shall vest in the Liquidation Trust and shall be used to fund distributions under the Plan in accordance with the **OPTION A Waterfall**.

Under **OPTION B** of the Plan only, the Net Sale Proceeds shall vest with the Liquidation Trust to extent ordered by the Bankruptcy Court in the context of the Allocation Dispute and shall be used to fund distributions under the Plan in accordance with the **OPTION B Waterfall**. This Option shall be conditioned upon a ruling on the Allocation Dispute that is acceptable to the Debtors and the Settling Parties, which the Debtors shall endeavor to obtain at or prior to the Confirmation Hearing.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 37

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

21-00141-WLH11    Doc 1284    Filed 12/01/21    Entered 12/01/21 10:39:45    Pg 37 of 82

**5.8** **Streamlining of the Debtors' Corporate Affairs.**

**5.8.1** **Debtors' Existing Directors, Officers, and Managers.** On the Effective Date, each of the Debtors' existing directors, officers, and managers shall be terminated automatically without the need for any Corporate Action and without the need for any corporate or partnership filings, and shall have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated). On the Effective Date, the Liquidation Trustee shall succeed to all such powers as would have been applicable to each Debtor's directors, officers, and managers in respect of all Liquidation Trust Assets; *provided, however*, that the Liquidation Trustee may continue to consult with or employ the Debtors' former directors, officers, employees, and managers in its reasonable discretion. For the avoidance of doubt, on the Effective Date, the Liquidation Trustee shall assume all management and control of both Farms and Ranches.

**5.8.2** **Dissolution of the Debtors.** Each of the Debtors may be dissolved by the Liquidation Trustee in its reasonable discretion and the Liquidation Trustee may file any certificates of cancellation or similar documents as may be appropriate in connection with dissolution of either Debtor.

**5.8.3** **Corporate Documents and Corporate Authority.** On the Effective Date, the certificates of incorporation, bylaws, partnership agreements, and articles of organization, as applicable, of both Debtors shall be deemed amended to the extent necessary to carry out the provisions of the Plan. The entry of the Confirmation Order shall constitute authorization for the Debtors and the Liquidation Trustee to take or cause to be taken all actions (including, if applicable, Corporate Actions) necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation.

**5.9** **Liquidation Trust.**

**5.9.1** **Appointment.** On and after the Effective Date, the Liquidation Trustee shall be appointed. The compensation of the Liquidation Trustee shall be disclosed prior to the Confirmation Hearing.

**5.9.2** **Creation and Governance of the Liquidation Trust.** On the Effective Date, the Liquidation Trustee shall execute the Liquidation Trust Agreement and shall

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

take any other steps necessary to establish the Liquidation Trust in accordance with the Plan and the beneficial interests therein. For federal income tax purposes, the transfer of the assets to the Liquidation Trust will be treated as a sale or other disposition of assets (except for the assets transferred to the Disputed Ownership Fund as provided in Section 7.9 of the Plan) to the Liquidation Trust Beneficiaries in exchange for their claims in the Chapter 11 Cases. Any income or loss from the transfer of assets to the Liquidation Trust shall flow through to the ultimate taxpaying member of each Debtor who will be responsible to pay the tax liability, if any. For federal income tax purposes, the Liquidation Trust Beneficiaries shall be treated as the grantors of the Liquidation Trust and deemed to be the owners of the assets of the Liquidation Trust. The transfer of the Liquidation Trust Assets to the Liquidation Trust shall be deemed a transfer to the Liquidation Trust Beneficiaries by the Debtors, followed by a deemed transfer by such Liquidation Trust Beneficiaries to the Liquidation Trust. The Debtors, the Liquidation Trust Beneficiaries, and the Liquidation Trust will consistently report the valuation of the assets transferred to the Liquidation Trust. Such consistent valuations and revised reporting will be used for all federal income tax purposes. Income deductions, gain, or loss from the Liquidation Trust shall be reported to the beneficiaries of the Liquidation Trust in conjunction with the filing of the Liquidation Trust's income tax returns. Each Liquidation Trust Beneficiary shall report income, deductions, gain, or loss on such Liquidation Trust Beneficiary's income tax returns. The Liquidation Trust shall be governed by the Liquidation Trust Agreement and administered by the Liquidation Trustee. The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement. After an objection to a Disputed Claim is resolved or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, the Liquidation Trust Interests and/or Cash held in the Disputed Ownership Fund shall be transferred as described in Section 7.10 of the Plan.

    **5.9.3** **Vesting of Liquidation Trust Assets.** On the Effective Date, the Liquidation Trust will be automatically vested with all of the Debtors' and the Estates' respective rights, title, and interest in and to all Liquidation Trust Assets. Except as specifically provided in the Plan or the Confirmation Order, the Liquidation Trust Assets shall automatically vest in the Liquidation Trust free and clear of all Claims, Liens, or interests subject only to the Liquidation Trust Interests and the Liquidation Trust Expenses, as provided for in the Liquidation Trust Agreement, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. §

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding all Liquidation Trust Assets. The Liquidation Trust shall hold and distribute the Liquidation Trust Assets in accordance with the provisions of the Plan and the Liquidation Trust Agreement.

Under **OPTION A** of the Plan, the Liquidation Trust shall be vested with any and all Estate claims against the Easterday Family, excluding any claims relating to the Net Sale Proceeds, the Allocation Dispute, the Basin City Property, or the Easterday Family Tax Payments, which shall be pursued to the fullest extent possible as necessary and appropriate, in the discretion of the Liquidation Trustee, to maximize the value of the Liquidation Trust and distributions to the Liquidation Trust Beneficiaries.

Under **OPTION B** of the Plan, the Liquidation Trust shall be vested with any and all Estate claims against the Easterday Family without limitation, which shall be pursued to the fullest extent possible as necessary and appropriate, in the discretion of the Liquidation Trustee, to maximize the value of the Liquidation Trust and distributions to the Liquidation Trust Beneficiaries.

The Liquidation Trust also shall be vested with any and all claims of individual Creditors against the Easterday Family to the extent that such Creditors check a box on their respective Ballots affirmatively assigning such claims to the Liquidation Trust.

**5.9.4** **Purpose of the Liquidation Trust.** The Liquidation Trust shall be established for the purpose of pursuing or liquidating the Liquidation Trust Assets and making Distributions to the Liquidation Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. The Liquidation Trust shall pay Liquidation Trust Expenses from the Liquidation Trust Assets and make Distributions to the Liquidation Trust Beneficiaries from the Net Distributable Assets. Specifically, the Liquidation Trustee will be responsible for making distributions in accordance with the Plan, including but not limited to the Easterday Family Tax Payments under **OPTION A** of the Plan.

**5.9.5** **Authority.** The Liquidation Trustee shall have the authority and right on behalf of the Debtors and the Estates and without the need for Bankruptcy Court approval (in each case, unless otherwise provided in the Plan) to carry out and implement all applicable provisions of the Plan, including to:

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

(a)     review, reconcile, compromise, settle, or object to Claims and resolve such objections as set forth in the Plan, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules;

(b)     calculate and make Distributions and calculate and establish reserves under and in accordance with the Plan;

(c)     retain, compensate, and employ professionals and other Persons to represent the Liquidation Trustee with respect to and in connection with its rights and responsibilities;

(d)     establish, maintain, and administer documents and accounts of the Debtors as appropriate, which shall be segregated to the extent appropriate in accordance with the Plan;

(e)     maintain, conserve, collect, settle, and protect the Liquidation Trust Assets (subject to the limitations described herein);

(f)     sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of the Liquidation Trust Assets, including the Distributable Assets and the Net Distributable Assets, or any part thereof or interest therein upon such terms as the Liquidation Trustee determines to be necessary, appropriate, or desirable;

(g)     negotiate, incur, and pay the Liquidation Trust Expenses;

(h)     prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtors that are required under the Plan, by any governmental unit, or by applicable law;

(i)     compile and maintain the official claims register, including for purposes of making initial and subsequent Distributions under the Plan;

(j)     take such actions as are necessary or appropriate to wind-down and dissolve the Debtors;

(k)     comply with the Plan, exercise the Liquidation Trustee's rights, and perform the Liquidation Trustee's obligations; and

(l)     exercise such other powers as deemed by the Liquidation Trustee to be necessary and proper to implement the Plan.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 41

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

To the extent necessary to give full effect to its administrative rights and duties under the Plan, the Liquidation Trustee shall be deemed to be vested with all rights, powers, privileges, and authorities of (i) an appropriate corporate or partnership director, officer, or manager of each of the Debtors under any applicable nonbankruptcy law and (ii) a "trustee" of each of the Debtors under chapter 7 of the Bankruptcy Code and section 1106 of the Bankruptcy Code.

**5.9.6 Limitation of Liability.** The Liquidation Trustee shall enjoy all of the rights, powers, immunities, and privileges applicable to a Bankruptcy Code chapter 7 trustee with respect to limitations of liability. The Liquidation Trustee may, in connection with the performance of its functions, in its sole and absolute discretion, consult with its attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such Persons, regardless of whether such advice or opinions were in writing. Notwithstanding such authority, the Liquidation Trustee shall be under no obligation to consult with any such attorneys, accountants, advisors, or agents, and its determination not to do so shall not result in the imposition of liability on the Liquidation Trustee unless such determination is based on willful misconduct, gross negligence, or fraud. Persons dealing with the Liquidation Trustee shall look only to the Liquidation Trust Assets to satisfy any liability incurred by the Liquidation Trustee to such Person in carrying out the terms of the Plan or the Liquidation Trust Agreement, and the Liquidation Trustee shall have no personal obligation to satisfy such liability.

**5.9.7 Indemnification.** The Liquidation Trust shall indemnify the Liquidation Trust Indemnified Parties for, and shall defend and hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without gross negligence or willful misconduct on the part of the Liquidation Trust Indemnified Parties (which gross negligence or willful misconduct, if any, must be determined by a final, non-appealable order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by such Liquidation Trust Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or the Liquidation Trust Agreement. An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence or willful misconduct. In addition, the Liquidation Trust shall, to the fullest extent permitted by law, indemnify, defend, and hold harmless the Liquidation Trust Indemnified Parties, from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses,

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

including attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidation Trust or the implementation or administration of the Plan if such Liquidation Trust Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Liquidation Trust. To the extent the Liquidation Trust indemnifies, defends, and holds harmless any Liquidation Trust Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidation Trustee in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as Liquidation Trust Expenses of the Liquidation Trust. The costs and expenses incurred in enforcing the right of indemnification in this Section 5.9.7 shall be paid by the Liquidation Trust.

**5.9.8  Insurance.** The Liquidation Trustee shall be authorized, but not required, to obtain any insurance coverages deemed to be reasonably necessary, at the Liquidation Trust's sole expense, for itself and its respective agents, including coverage with respect to the liabilities, duties, and obligations of the Liquidation Trustee, which insurance coverage may, at the sole discretion of the Liquidation Trustee, be extended for a reasonable period after the termination of the Liquidation Trust.

**5.9.9  Tax Reporting.**

(a)      The Liquidation Trust shall timely file tax returns treating such Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a).

(b)      The Liquidation Trust shall be responsible for timely payment of all taxes (if any) imposed on and payable by the Liquidation Trust, the Debtors, or any Liquidation Trust Assets.

(c)      The Liquidation Trust shall distribute such tax-related notices, beneficiary statements, and information returns, as applicable, to the Holders of Allowed Claims as are required by applicable law or that the Liquidation Trustee determines are otherwise necessary or desirable.

(d)      The Liquidation Trust is authorized to file a request for expedited determination under Bankruptcy Code section 505(b) for any tax returns filed with respect to the Debtors.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 43

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**5.9.10** **Distributions to Liquidation Trust Beneficiaries**.

(a)     The Liquidation Trustee, in its discretion, may make periodic Distributions of Available Cash from the Net Distributable Assets to the Liquidation Trust Beneficiaries at any time following the Effective Date, provided that such Distributions are otherwise permitted under, and not inconsistent with, the Plan, the Liquidation Trust Agreement, and applicable law.

(b)     No later than (i) the first Business Day that is at least 180 calendar days after the Effective Date and (ii) the last Business Day of each subsequent 180-calendar-day period after the Effective Date until the Debtors' Chapter 11 Cases have been closed, the Liquidation Trustee shall calculate the Distributions that could potentially be made to the Liquidation Trust Beneficiaries based on the amount of projected Available Cash and, based on such calculation, promptly thereafter may make Distributions, if any, of the amount so determined.

**5.9.11** **Cash Investments**. The Liquidation Trustee may invest Cash of the Liquidation Trust, including any earnings thereon or proceeds therefrom, which investments, for the avoidance of doubt, will not be required to comply with Bankruptcy Code section 345(b); *provided, however*, that such investments must be investments that are permitted to be made by a "Liquidation Trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable guidelines, rulings, or other controlling authorities.

**5.9.12** **Exemption**. To the extent the Liquidation Trust Interests are deemed to be "securities," the issuance of such interests under the Plan are exempt, pursuant to Bankruptcy Code section 1145, from registration under the Securities Act and any applicable state and local laws requiring registration of securities.

**5.9.13** **Pursuit and Resolution of Liquidation Trust Actions**. The Liquidation Trustee, as successor in interest to the Debtors and the Estates, may, and will have the exclusive right, power, and interest on behalf of itself, the Debtors, and the Estates to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all Liquidation Trust Actions without any further order of the Bankruptcy Court, except as otherwise provided in the Liquidation Trust Agreement or the Plan. From and after the Effective Date, the Liquidation Trustee, in accordance with Bankruptcy Code section 1123(b)(3), shall serve as representative of the Estates with respect to any and all Liquidation Trust Actions that were Estate Assets and shall retain and possess the right to institute, commence, file, pursue,

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all Liquidation Trust Actions in any court or other tribunal. *Notwithstanding anything to the contrary herein, the Liquidation Trustee shall provide advance written notice to Tyson and an opportunity to object of no less than five (5) Business Days regarding any proposed abandonment, settlement, compromise, release, waiver, dismissal, or withdrawal of any Liquidation Trust Actions against any member of the Easterday Family or their Related Parties.  In the event of any written objection from Tyson, the Liquidation Trustee shall not abandon, settle, compromise, release, waive, dismiss, or withdraw any such Liquidation Trust Actions absent order of the Bankruptcy Court and Tyson may seek to be appointed, subject to order of the Bankruptcy Court, as representative of the Estates to pursue such Liquidation Trust Actions at its own expense and any net proceeds therefrom shall be distributed in accordance with the Applicable Waterfall.*

**5.9.14** <u>**Termination of the Liquidation Trust**</u>. The Liquidation Trustee and Liquidation Trust shall be discharged or terminated, as the case may be, at such time as: (a) the Liquidation Trustee determines that the pursuit of additional Liquidation Trust Actions is not likely to yield sufficient additional proceeds to justify further pursuit of such Liquidation Trust Actions and (b) all Distributions required to be made by the Liquidation Trust to the Holders of Allowed Claims and to the Liquidation Trust Beneficiaries under the Plan and the Liquidation Trust Agreement have been made, but in no event shall the Liquidation Trust be terminated later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six (6) months before the end of the preceding extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, unless a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidation Trust as a liquidation trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Liquidation Trust Assets. Upon termination of the Liquidation Trust, any remaining Liquidation Trust Assets that exceed the amounts required to be paid under the Plan may be transferred by the Liquidation Trustee to a charitable organization.

**5.9.15** <u>**Control Provision**</u>. To the extent there is any inconsistency between the Plan as it relates to the Liquidation Trust and the Liquidation Trust Agreement, the Plan shall control.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**5.9.16**. **No Successor Liability**.  Except as otherwise expressly provided in this Plan and Confirmation Order, the Liquidation Trustee and the Liquidation Trust (i) are not, and shall not be deemed to assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations or the assets of the Debtors prior to the Effective Date; (ii) are not, and shall not be, successors to the Debtors by any reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date; and (iii) shall not have any successor or transferee liability of any kind or character.

**5.10**   **Preservation of Privileges and Defenses.** The actions taken by the Debtors, the Liquidation Trust, FRI, or any of their respective Related Parties in connection with the Plan shall not be (or be deemed to be) a waiver of any privilege or defense of the Debtors, the Liquidation Trust, or FRI as applicable, including any attorney-client privilege or work-product doctrine. Notwithstanding any Debtors providing any privileged information related to any Liquidation Trust Actions to the Liquidation Trustee, the Liquidation Trust, or any Person associated with any of the foregoing, such privileged information shall be without waiver in recognition of the joint, common, or successor interest in prosecuting the Liquidation Trust Actions and shall remain privileged. The Liquidation Trust shall retain the right to waive its own privileges. Only the Liquidation Trustee shall have the right to waive the attorney-client privilege, work-product doctrine, or other protections as to the Debtors and the Liquidation Trust; *provided that*, in the event any such protections are asserted or assertable by FRI, the Liquidating Trustee shall confer and cooperate with FRI with respect to any decision by the Liquidating Trustee to waive such protection.

**5.11**   **Preservation of Rights of Action.**

**5.11.1** **Maintenance of Avoidance Actions and Causes of Action.** Except as otherwise provided in the Plan or the Confirmation Order, from and after the Effective Date, the Liquidation Trustee will retain all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Debtors' or the Estates' Causes of Action (whether existing as of the Petition Date or thereafter arising), and all Avoidance Actions, all as Liquidation Trust Actions, in each case in any court or other tribunal, including in an adversary proceeding Filed in the Chapter 11 Cases. The Liquidation Trustee, as successor in interest to the Debtors and the Estates, may, and will have the exclusive right, power, and interest on behalf of itself, the Debtors, and the Estates to, enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing)

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 46

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

21-00141-WLH11    Doc 1284    Filed 12/01/21    Entered 12/01/21 10:39:45    Pg 46 of 82

any or all of the Liquidation Trust Actions without notice to or approval from the Bankruptcy Court. In accordance with the Plan, and pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, from and after the Effective Date, the Liquidation Trustee may compromise and settle the Liquidation Trust Actions.

**5.11.2 Preservation of All Liquidation Trust Actions Not Expressly Settled or Released.** The failure to specifically identify in the Disclosure Statement or the Plan any potential or existing Avoidance Actions or Causes of Action as a Liquidation Trust Action is not intended to and shall not limit the rights of the Liquidation Trustee to pursue any such Avoidance Actions or Causes of Action. Unless a Liquidation Trust Action is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order), the Debtors expressly reserve such Liquidation Trust Action for later resolution by the Liquidation Trustee (including any Avoidance Actions or Causes of Action not specifically identified or of which the Debtors may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist). As such, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches will apply to any such Avoidance Actions or Causes of Action upon or after Confirmation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except when such Avoidance Actions or Causes of Action have been expressly released. In addition, the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors or the Liquidation Trustee is a plaintiff, defendant, or an interested party is fully reserved as against any Person that is not a Released Party, including the plaintiffs or co-defendants in such lawsuits.

**5.12 Cancellation of Instruments.** Except to the extent necessary to give effect to the treatment of any Holder of an Allowed Claim and except with respect to any executory contracts and unexpired leases that are assumed under the Plan or otherwise assumed and assigned pursuant to a Final Order, any agreement, bond, certificate, contract, indenture, lease, note, security, warrant, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be deemed cancelled on the Effective Date, and all Liens, mortgages, pledges, grants, trusts, and other interests relating thereto shall be automatically cancelled, and all obligations of the Debtors thereunder or in any way related thereto shall be released.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

**5.13**  **Reservation of Rights Regarding Substantive Consolidation.** Although the Plan does not effectuate any substantive consolidation of the Debtors or the Estates, the Debtors reserve the right, subject in all respects to the provisions of the Bankruptcy Code, including, without limitation, section 1127, the Bankruptcy Rules, and section 11.5(a) of the Plan, to seek substantive consolidation of the Estates (and/or any non-Debtor Person) at the Confirmation Hearing if justified by the facts and circumstances of these Chapter 11 Cases.  In any case, fees payable pursuant to 28 U.S.C. § 1930 shall be due and payable by each individual Debtor through the Effective Date and thereafter through the closing of the Chapter 11 Cases. For the avoidance of doubt, the Liquidation Trust shall not be obligated to pay any fees pursuant to 28 U.S.C. § 1930 for distributions made by the Liquidation Trust.

**5.14**  **Settlement of Avoidance Actions Against Tyson.**  On the Effective Date, all Avoidance Actions against Tyson shall be settled at 50% of the amount at issue, including but not limited to any claims relating to the prepetition transfer of "Lot 3 Cattle" to Tyson worth an estimated $58 million.  The Applicable Waterfall takes into account such settlement with Tyson.

<u>**ARTICLE VI**</u>

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**6.1**  **Assumption of Certain Executory Contracts and Unexpired Leases.**

Nothing in the Plan or the Plan Supplement, or any Schedule or Exhibit relating to the foregoing, shall alter or affect the assumption and assignment, or sale, of those contracts and leases identified in or related to the Purchase and Sale Agreement, and neither the Plan, Plan Supplement, or any Schedule relating to the foregoing shall affect or alter the Debtors' obligations under the Purchase and Sale Agreement, including without limitation under the Temporary Lease Agreement, as they relate to the assumed and assigned contracts and leases identified thereunder, during the postpetition period prior to the Effective Date.

**6.1.1**  **Assumption of Agreements.**

On the Effective Date, the Debtors shall assume all executory contracts and unexpired leases that are listed on the Schedule of Assumed Agreements, if any, and assign such contracts and leases to the Liquidating Trust.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 48

Bush Kornfeld llp
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

The Debtors reserve the right to amend the Schedule of Assumed Agreements at any time prior to the Effective Date, in the Debtors' reasonable discretion after consultation with the Committees, (i) to delete any executory contract or unexpired lease and provide for its rejection under the Plan or otherwise, or (ii) to add any executory contract or unexpired lease and provide for its assumption and assignment under the Plan. The Debtors will provide notice of any amendment to the Schedule of Assumed Agreements to the party or parties to those agreements affected by the amendment and to FRI.

Unless otherwise specified on the Schedule of Assumed Agreements, each executory contract and unexpired lease listed or to be listed therein shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is also listed on the Schedule of Assumed Agreements.

The Confirmation Order will constitute a Bankruptcy Court order approving the assumption and assignment, on the Effective Date, of all executory contracts and unexpired leases identified on the Schedule of Assumed Agreements.

### 6.1.2 <u>Cure Payments</u>.

Any amount that must be paid under Bankruptcy Code section 365(b)(1) to cure a default under and compensate the non-debtor party to an executory contract or unexpired lease to be assumed under the Plan is identified as the "Cure Payment" on the Schedule of Assumed Agreements. Unless the parties mutually agree to a different date, such payment shall be made in Cash within ten (10) Business Days following the later of: (i) the Effective Date and (ii) entry of a Final Order resolving any disputes regarding (A) the amount of any Cure Payment, (B) the ability of the Liquidation Trust to provide "adequate assurance of future performance" within the meaning of Bankruptcy Code section 365 with respect to a contract or lease to be assumed, to the extent required, or (C) any other matter pertaining to assumption and assignment.

Pending the Bankruptcy Court's ruling on any such dispute, the executory contract or unexpired lease at issue shall be deemed assumed by the Debtors and assigned to the Liquidation Trust, unless otherwise agreed by the parties or ordered by the Bankruptcy Court.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

### 6.1.3 **Objections to Assumption/Cure Payment Amounts.**

Any Person that is a party to an executory contract or unexpired lease that will be assumed and assigned under the Plan and that objects to such assumption or assignment (including the proposed Cure Payment) must File with the Bankruptcy Court and serve on parties entitled to notice a written statement and, if applicable, a supporting declaration stating the basis for its objection. This statement and, if applicable, declaration must be Filed and served on or before the deadline established by the Disclosure Statement Order. Any Person that fails to timely File and serve such a statement and, if applicable, a declaration shall be deemed to waive any and all objections to the proposed assumption and assignment (including the proposed Cure Payment) of its contract or lease.

In the absence of a timely objection by a Person that is a party to an executory contract or unexpired lease, the Confirmation Order shall constitute a conclusive determination regarding the amount of any cure and compensation due under the applicable executory contract or unexpired lease, as well as a conclusive finding that the Liquidation Trust has demonstrated adequate assurance of future performance with respect to such executory contract or unexpired lease, to the extent required.

### 6.1.4 **Resolution of Claims Relating to Assumed Contracts and Leases.**
Payment of the Cure Payment established under the Plan, by the Confirmation Order, or by any other order of the Bankruptcy Court, with respect to an assumed and assigned executory contract or unexpired lease, shall be deemed to satisfy, in full, any prepetition or postpetition arrearage or other Claim (including any Claim asserted in a Filed proof of claim or listed on the Schedules) with respect to such contract or lease (irrespective of whether the Cure Payment is less than the amount set forth in such proof of claim or the Schedules). Upon the tendering of the Cure Payment, any such Filed or Scheduled Claim shall be disallowed with prejudice, without further order of the Bankruptcy Court or action by any Person.

### 6.2 **Rejection of Executory Contracts and Unexpired Leases.**

### 6.2.1 **Rejected Agreements.** On the Effective Date all executory contracts and unexpired leases of the Debtors shall be rejected except for (i) executory contracts and unexpired leases that have been previously assumed or rejected by the Debtors, (ii) executory contracts and unexpired leases that are set forth in the Schedule of Assumed Agreements, and (iii) any agreement, obligation, security interest, transaction, or similar undertaking that the Debtors believe is not executory or a lease, but that is later

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 50

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

determined by the Bankruptcy Court to be an executory contract or unexpired lease that is subject to assumption or rejection under Bankruptcy Code section 365. For the avoidance of doubt, executory contracts and unexpired leases that have been previously assumed or assumed and assigned pursuant to an order of the Bankruptcy Court shall not be affected by the Plan. The Confirmation Order will constitute a Bankruptcy Court order approving the rejection, on the Effective Date, of the executory contracts and unexpired leases to be rejected under the Plan.

**6.2.2 Rejection Claims Bar Date.** Any Rejection Claim or other Claim for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be Filed and served no later than the Rejection Claims Bar Date. Any such Rejection Claims that are not timely Filed and served will be forever disallowed, barred, and unenforceable, and Persons holding such Claims will not receive and be barred from receiving any Distributions on account of such untimely Claims. If one or more Rejection Claims are timely Filed pursuant to the Plan, the Liquidation Trust may object to any Rejection Claim on or prior to the Claim Objection Deadline. For the avoidance of doubt, the Rejection Claims Bar Date established by the Plan does not alter any rejection claims bar date established by a prior order of the Bankruptcy Court with respect to any executory contract or unexpired leases that was previously rejected in these Chapter 11 Cases.

## **ARTICLE VII**

## **PROVISIONS GOVERNING DISTRIBUTIONS**

**7.1 Timing of Distributions for Allowed Claims.** Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to Holders of Allowed Claims as of the applicable Distribution Date shall be made on or as soon as practicable after the applicable Distribution Date; *provided, however*, that the Liquidation Trustee, in its discretion, may defer Distributions to a given Holder of Liquidation Trust Interests (other than the final Distribution) if the amount available for Distribution to such Holder is not at least $250. Distributions on account of Claims that first become Allowed Claims after the applicable Distribution Date shall be made pursuant to Section 8.4 of the Plan and on the day selected by the Liquidation Trustee. Distributions made as soon as reasonably practicable after the Effective Date or such other date set forth herein shall be deemed to have been made on such date.

**7.2 Calculating Distributions and Related Matters.** The Liquidation Trustee shall undertake in its reasonable discretion to make in accordance with the Plan all

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

calculations of Available Cash, Net Distributable Assets, and of other amounts for or relating to Distributions for Holders of Allowed Claims to be made from the Liquidation Trust or for reserves for Holders of Contingent Claims, Disputed Claims, and Unliquidated Claims to be established by the Liquidation Trust, and, may establish and holdback from Distributions reasonable reserves for other contingencies.

**7.3** **Interest and Other Amounts Regarding Claims.** Except to the extent provided (i) in Bankruptcy Code section 506(b) and Allowed by a Final Order or otherwise agreed, (ii) in the Plan, or (iii) in the Confirmation Order, postpetition interest shall not accrue or be paid on any Claims, and no Holder of an Allowed Claim shall be entitled to interest, penalties, fees, or late charges accruing or chargeable on any Claim from and after the Petition Date.

**7.4** **Distributions by Liquidation Trustee as Disbursing Agent.** The Liquidation Trustee may serve as the disbursing agent under the Plan, or may designate another party as disbursing agent, with respect to Distributions required pursuant to the Plan. The Liquidation Trustee shall not be required to give any bond or surety or other security for the performance of any duties as disbursing agent.

**7.5** **Means of Cash Payment.** Cash payments under the Plan shall be made, at the option and in the sole discretion of the Liquidation Trustee, by (i) checks drawn on or (ii) wire transfer, electronic funds transfer, or ACH from a domestic bank. Cash payments to foreign Creditors may be made, at the option and in the sole discretion of the Liquidation Trustee by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to the Plan in the form of checks shall be null and void if not cashed within 180 calendar days of the date of the issuance thereof. Requests for reissuance of any check within 180 calendar days of the date of the issuance thereof shall be made directly to the Liquidation Trustee.

**7.6** **Form of Currency for Distributions.** All Distributions under the Plan shall be made in U.S. Dollars. Where a Claim has been denominated in foreign currency on a proof of claim, the Allowed amount of such Claim shall be calculated in U.S. Dollars based upon the currency conversion rate in place as of the Petition Date and in accordance with Bankruptcy Code section 502(b).

**7.7** **Fractional Distributions.** Notwithstanding anything in the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 52

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

(up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

**7.8    De Minimis Distributions.** Notwithstanding anything in the Plan to the contrary, the Liquidation Trust shall not be required to distribute, and shall not distribute, Cash or other property to the Holder of any Allowed Claim if the amount of Cash or other property to be distributed on account of such Claim on any given Distribution Date is less than $500.00, and such amount shall be distributed to other Creditors on such Distribution Date in accordance with the terms of the Plan. Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed on any given Distribution Date is less than $500.00 shall be forever barred from asserting any Claim with respect to such eliminated Distribution against any Estate Assets.

**7.9    No Distributions With Respect to Certain Claims.** Notwithstanding anything in the Plan to the contrary, no Distributions or other consideration of any kind shall be made on account of any Contingent Claim, Disputed Claim, or Unliquidated Claim unless and until such Claim becomes an Allowed Claim, and then only to the extent that such Claim becomes an Allowed Claim and as provided under the Plan for such Allowed Claim. Nonetheless, in undertaking the calculations concerning Allowed Claims under the Plan, including the determination of Distributions due to the Holders of Allowed Claims, each Contingent Claim, Disputed Claim, or Unliquidated Claim shall be treated as if it were an Allowed Claim (which, for Unliquidated Claims, shall mean they shall be treated as if Allowed in such amounts as determined in the reasonable discretion of the Liquidation Trustee), except that if the Bankruptcy Court estimates the likely portion of such a Claim to be Allowed or authorized or the Bankruptcy Court or the Holder of such Claim and the Liquidation Trustee otherwise determine the amount or number that would constitute a sufficient reserve for such a Claim, such amount or number as determined by the Bankruptcy Court or by agreement of the Holder of such Claim and the Liquidation Trustee shall be used with respect to such Claim. Distributions due in respect of a Contingent Claim, Disputed Claim, or Unliquidated Claim shall be held in reserve by the Liquidation Trustee in one or more Distribution Reserves. The Liquidation Trustee may elect to treat any Distribution Reserve as a "Disputed Ownership Fund," pursuant to Treasury Regulation section 1.468B-9(c)(2)(ii). As outlined in this election, Creditors holding such Claims are not treated as transferors of the money or property transferred to the "Disputed Ownership Fund." For federal income tax purposes, a "Disputed Ownership Fund" is treated as the owner of all assets that it holds. A "Disputed Ownership Fund" is treated as a C

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 53

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

corporation for purposes of the Internal Revenue Code. A "Disputed Ownership Fund" must file all required income and information tax returns and make all tax payments.

**7.10** **Distributions and Transfers Upon Resolution of Contingent Claims, Disputed Claims, or Unliquidated Claims.** After an objection to a Disputed Claim is resolved or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, an amount of the Liquidation Trust Interests and/or Cash held in the Disputed Ownership Fund corresponding to the amount of any resulting Allowed Claim shall be transferred, net of any tax payable by the Disputed Ownership Fund with respect to the transfer, in a taxable transaction to the Holder of the formerly Contingent Claim, Disputed Claim, or Unliquidated Claim. Upon each such resolution of a Claim against the Disputed Ownership Fund and such transfer with respect to any resulting Allowed Claim, (i) any remaining Liquidation Trust Interests in the Disputed Ownership Fund that had been held with respect to such formerly Contingent Claim, Disputed Claim, or Unliquidated Claim prior to its resolution shall be cancelled; and (ii) any remaining Cash in the Disputed Ownership Fund that had been held with respect to such formerly Contingent Claim, Disputed Claim, or Unliquidated Claim prior to its resolution shall be transferred, net of any tax payable by the Disputed Ownership Fund with respect to such transfers, for use as follows, provided that such Cash transfers shall be treated as a taxable transfer by the Disputed Ownership Fund and to the recipients of such Cash. Such remaining Cash may be utilized for payment, allocation, or reserve in accordance with the Plan for (a) unpaid or unutilized amounts for Liquidation Trust Expenses or (b) any post-Confirmation reserve requirements of the Liquidation Trust in connection with the Plan, any agreements, or any Bankruptcy Court orders. To the extent any such remaining Cash is not so utilized, it shall become Available Cash for distribution to the Holders of the Liquidation Trust Interests (including each Holder of such Liquidation Trust Interests to the extent it obtains an Allowed Claim as a result of resolution of a formerly Contingent Claim, Disputed Claim, or Unliquidated Claim) in a manner reasonably allocated by the Liquidation Trust so that all applicable Holders of the Liquidation Trust Interests will receive Cash in proportion to their respective Liquidation Trust Interests, net of any tax payable by the Disputed Ownership Fund with respect to the respective transfers.

**7.11** **Delivery of Distributions.** Distributions in respect of Liquidation Trust Interests shall be made by the Liquidation Trustee to Holders of the Liquidation Trust Interests as of the record date set for such Distribution. Distributions to Holders of Liquidation Trust Interests or Allowed Claims that have not been converted to Liquidation Trust

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 54

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Interests shall be made (a) at the addresses set forth in the proofs of claim Filed by such Holders, (b) at the addresses reflected in the Schedules if no proof of claim has been Filed, or (c) at the addresses set forth in any written notices of address changes delivered to the Debtors or the Liquidation Trustee. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Liquidation Trustee is notified of such Holder's then-current address. The responsibility to provide the Claims Agent or the Liquidation Trustee with a current address of a Holder of Liquidation Trust Interests or Claims shall always be the responsibility of such Holder. Amounts in respect of undeliverable Distributions made by the Liquidation Trustee shall be held in trust on behalf of the Holder of the Liquidation Trust Interest or Claim to which they are payable by the Liquidation Trustee until the earlier of the date that such undeliverable Distributions are claimed by such Holder and 180 calendar days after the date the undeliverable Distributions were made.

**7.12** **Application of Distribution Record Date & Other Transfer Restrictions.** At the close of business on the Distribution Record Date, the claims registers for all Claims shall be closed, and there shall be no further changes in the record holders of any Claims. Except as provided herein, the Liquidation Trust and its Related Parties shall have no obligation to recognize any putative transfer of Claims occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the claims registers as of the close of business on the Distribution Record Date irrespective of the number of Distributions to be made under the Plan to such Persons or the date of such Distributions. In addition, the Liquidation Trust and its Related Parties shall have no obligation to recognize any putative transfer of General Unsecured Claims occurring at any time prior to the Effective Date to which the Debtors did not expressly consent and shall be entitled instead to recognize and deal for all purposes hereunder with only the Holders of General Unsecured Claims as reflected on the claims registers. Nothing in this Section 7.12 is intended to or will impair or limit (i) the transferability of any Liquidation Trust Interests once such Liquidation Trust Interests have been Distributed to the record holders of Allowed General Unsecured Claims or (ii) the right of Holders at the record dates established from time to time regarding Liquidation Trust Interests to receive all Distributions in respect of such Liquidation Trust Interests when any Distributions are made.

**7.13** **Withholding, Payment, and Reporting Requirements Regarding Distributions.** All Distributions under the Plan shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal,

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 55

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

21-00141-WLH11   Doc 1284   Filed 12/01/21   Entered 12/01/21 10:39:45   Pg 55 of 82

state, provincial, local, or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment, and reporting requirements. The Liquidation Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements, including, to the extent such information is not already available to the Liquidation Trustee, requiring each Holder of a Liquidation Trust Interest or Claim to provide an executed current Form W-9, Form W-8, or similar tax form as a prerequisite to receiving a Distribution. Notwithstanding any other provision of the Plan, (a) each Holder of a Liquidation Trust Interest or an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed on the Liquidation Trust in connection with such Distribution; and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements reasonably satisfactory to the Liquidation Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed in connection with such Distribution.

**7.14** **Defenses and Setoffs.** On and after the Effective Date, the Liquidation Trustee shall have all of the Debtors' and the Estates' rights under Bankruptcy Code section 558. Nothing under the Plan shall affect the rights and defenses of the Debtors, the Estates, or the Liquidation Trust in respect of any Claim, including all rights in respect of legal and equitable objections, defenses, challenges, setoffs, or recoupment against such Claims. Accordingly, the Liquidation Trustee may, but shall not be required to, set off against any Claim or any Allowed Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors, the Estates, or the Liquidation Trust, as applicable, may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim or rights that may exist against such Holder.

**7.15** **Allocation of Distributions.** All Distributions received under the Plan by Holders of Liquidation Trust Interests and Claims shall be deemed to be allocated first to the principal amount of such Claim, or the Claim to which the Liquidation Trust Interest relates, as determined for United States federal income tax purposes, and then to accrued interest, if any, with respect to such Claim.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 56

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

**7.16  Joint Distributions.** The Liquidation Trustee may, in its sole discretion, make Distributions jointly to any Holder of a Claim and any other Person that the Liquidation Trustee has determined to have an interest in such Claim.

**7.17  Forfeiture of Distributions.** If the Holder of a Claim fails to cash a check payable to it within the time period set forth in Section 7.5, fails to claim an undeliverable Distribution within the time limit set forth in Section 7.11, or fails to complete and return to the Liquidation Trustee the appropriate Form W-8 or Form W-9 within 180 calendar days after a request for the completion and return of the appropriate form pursuant to Section 7.13 (or such later time as approved by a Bankruptcy Court order), then such Holder shall be deemed to have forfeited its right to any reserved and future Distributions under the Plan. Any such forfeited Distributions shall be deemed Available Cash for all purposes, notwithstanding any federal or state escheat laws to the contrary.

## ARTICLE VIII

### PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO

**8.1  Objections to and Resolution of Disputed Claims, Including Any Claims of Excluded Parties.** From and after the Effective Date, the Liquidation Trustee shall have the exclusive authority to compromise, resolve, and Allow any Disputed Claim without the need to obtain approval from the Bankruptcy Court, and any agreement entered into by the Liquidation Trustee with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim.

**8.2  Claim Objections.** All objections to Claims (other than Professional Fee Claims, which shall be governed by Section 11.2 of the Plan) shall be Filed by the Liquidation Trustee on or before the Claim Objection Deadline, which date may be extended by order of the Bankruptcy Court. If a timely objection has not been Filed to a proof of claim or the Schedules have not been amended with respect to a Claim that was Scheduled by the Debtors but was not Scheduled as contingent, unliquidated, or disputed, then the Claim to which the proof of claim or Scheduled Claim relates will be treated as an Allowed Claim.

**8.3  Estimation of Certain Claims.** The Liquidation Trustee may, at any time, move for a Bankruptcy Court order estimating any Contingent Claim, Disputed Claim, or

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 57

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction and power to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. The estimated amount of any Claim so determined by the Bankruptcy Court shall constitute the maximum recovery that the Holder thereof may recover after the ultimate liquidation of its Claim, irrespective of the actual amount that is ultimately Allowed. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another.

**8.4 Distributions Following Allowance.** Once a Contingent Claim, a Disputed Claim, or an Unliquidated Claim becomes an Allowed Claim, in whole or in part, including pursuant to the Plan, the Liquidation Trustee shall distribute from the Distribution Reserves to the Holder thereof the Distributions, if any, to which such Holder is then entitled under the Plan. Such Distributions, if any, shall be made on the next Distribution Date after the date on which the order or judgment allowing any such Claim becomes a Final Order or on which the Claim otherwise becomes an Allowed Claim, or, if there is no applicable Distribution Date, then within ninety (90) calendar days after the date on which the Claim becomes an Allowed Claim. Unless otherwise specifically provided in the Plan or allowed by a Final Order, no interest shall be paid on Contingent Claims, Disputed Claims, or Unliquidated Claims that later become Allowed Claims.

**8.5 Disposition of Assets in Reserves After Disallowance.** After an objection to a Disputed Claim is sustained or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, such that the Contingent Claim, Disputed Claim, or Unliquidated Claim is a Disallowed Claim in whole or in part, any Cash held in an applicable Distribution Reserve in respect of the particular Claim in excess of the Distributions due on account of any resulting Allowed Claim shall be used or distributed in a manner consistent with the Plan and any reserved Liquidation Trust Interests shall be cancelled.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

# ARTICLE IX

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**9.1** **Conditions to the Effective Date.** The occurrence of the Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to Section 9.2 of the Plan:

(i)    the Bankruptcy Court shall have entered the Confirmation Order;

(ii)    the Confirmation Order shall not be subject to any stay;

(iii)    all governmental and material third-party approvals and consents necessary in connection with the transactions contemplated by the Plan, if any, shall have been obtained and be in full force and effect;

(iv)    all actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable;

(v)    in the event of **OPTION A** under the Plan only, the Easterday Family unanimously agreeing, by no later than seven (7) days prior to the Voting Deadline, to the release, transfer, and assignment of the Net Sale Proceeds and the Basin City Property in their entirety to the Liquidation Trust to fund Plan distributions to the Holders of Impaired Claims and the Easterday Family Tax Payments in accordance with the **OPTION A Waterfall**;

(vi)    in the event of **OPTION B** under the Plan only, a ruling by the Bankruptcy Court on the Allocation Dispute that is acceptable to the Debtors and the Settling Parties, which the Debtors shall endeavor to obtain at or prior to the Confirmation Hearing;

(vii)    the Temporary Lease Agreement shall have terminated on its terms and any claims, rights, or ongoing obligations between and among the Debtors and FRI that survive termination shall be fully and finally resolved and settled prior to, or in connection with, entry of the Confirmation Order; and

(viii)    the Professional Fee Reserves are funded pursuant to Section 11.2 of the Plan.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 59

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

21-00141-WLH11    Doc 1284    Filed 12/01/21    Entered 12/01/21 10:39:45    Pg 59 of 82

**9.2    Waiver of Conditions to the Effective Date.** The conditions to the Effective Date, other than those set forth in clause (vii) of Section 9.1 of the Plan, may be waived in writing by the Debtors and the Committees, in the reasonable discretion of the Debtors and Committees, at any time without further order.

**9.3    Effect of Non-Occurrence of Conditions to the Effective Date.** If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Sections 9.1 and 9.2 of the Plan, upon notification Filed by the Debtors with the Bankruptcy Court, (i) the Confirmation Order shall be vacated; (ii) no Distributions shall be made; (iii) the Debtors, the Estates, and all Creditors shall be restored to the *status quo* as of the day immediately preceding the Confirmation Hearing as though the Confirmation Order was not entered; and (iv) all of the Debtors' and the Estates' obligations with respect to Claims shall remain unchanged and nothing contained in the Plan shall constitute a waiver or release of any Causes of Action by or against the Debtors, the Estates, or any other Person or prejudice in any manner the rights, claims, or defenses of the Debtors, the Estates, or any other Person.

**9.4    Notice of the Effective Date.** Promptly after the occurrence of the Effective Date, the Liquidation Trust or its agents shall mail or cause to be mailed to all Creditors a notice that informs such Creditors of (i) entry of the Confirmation Order and the resulting confirmation of the Plan; (ii) the occurrence of the Effective Date; (iii) the assumption, assignment, and rejection of executory contracts and unexpired leases pursuant to the Plan, as well as the deadline for the filing of resulting Rejection Claims; (iv) the deadline established under the Plan for the filing of Administrative Claims; and (v) such other matters as the Liquidation Trustee finds appropriate.

**9.5    Payment of Plan Sponsor Contribution.**  Promptly after the occurrence of the Effective Date, FRI shall deposit the Plan Sponsor Contribution in one or more deposit accounts at the direction of either (a) the Debtors, (b) the Liquidating Trustee, or (c) in the event of any disputes between and among foregoing, an order of the Bankruptcy Court.

## ARTICLE X

### RETENTION OF JURISDICTION AND POWER

**10.1    Scope of Retained Jurisdiction and Power.** Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain jurisdiction and power over all matters arising in, arising

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 60

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

under, or related to the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including jurisdiction and power to do the following:

(a) except as otherwise Allowed pursuant to the Plan or in the Confirmation Order, Allow, classify, determine, disallow, establish the priority or secured or unsecured status of, estimate, limit, liquidate, or subordinate any Claim, in whole or in part, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims;

(b) hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b), 1103, and 1129(a)(4);

(c) hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any Claims arising therefrom;

(d) effectuate performance of and payments under the provisions of the Plan and enforce remedies on any default under the Plan;

(e) hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases, including the Liquidation Trust Actions and the Allocation Dispute, and with respect to the Plan;

(f) enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created, executed, or contemplated in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

(g) hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, or to maintain the integrity of the Plan following consummation;

(h) consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 61

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

(i)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(j)    enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(k)    hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with any of the foregoing documents and orders;

(l)    enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings associated with the Plan or otherwise entered in connection with the Chapter 11 Cases (whether or not any or all of the Chapter 11 Cases have been closed);

(m)    except as otherwise limited herein, recover all Estate Assets and Liquidation Trust Assets, wherever located;

(n)    hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(o)    hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

(p)    hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, the Bankruptcy Code and title 28 of the United States Code;

(q)    resolve any cases, controversies, suits, or disputes related to the the Liquidation Trust, the Liquidation Trustee, or the Debtors; and

(r)    enforce the Sale Order;

(s)    enter a final decree closing the Chapter 11 Cases of the Debtors.

**10.2    Non-Exercise of Jurisdiction.** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter

FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS – Page 62

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

21-00141-WLH11    Doc 1284    Filed 12/01/21    Entered 12/01/21 10:39:45    Pg 62 of 82

arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in Section 10.1 of the Plan, the provisions of this Article X shall have no effect on, and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to, such matter.

## ARTICLE XI

### MISCELLANEOUS PROVISIONS

**11.1** **Administrative Claims.** Subject to the last sentence of this Section 11.1, all requests for payment of an Administrative Claim must be Filed with the Bankruptcy Court no later than the Administrative Claims Bar Date. In the event of an objection to Allowance of an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. **THE FAILURE TO FILE A MOTION REQUESTING ALLOWANCE OF AN ADMINISTRATIVE CLAIM ON OR BEFORE THE ADMINISTRATIVE CLAIMS BAR DATE, OR THE FAILURE TO SERVE SUCH MOTION TIMELY AND PROPERLY, SHALL RESULT IN THE ADMINISTRATIVE CLAIM BEING FOREVER BARRED AND DISALLOWED WITHOUT FURTHER ORDER OF THE BANKRUPTCY COURT. IF FOR ANY REASON ANY SUCH ADMINISTRATIVE CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISALLOWED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.** Postpetition statutory tax claims shall not be subject to any Administrative Claims Bar Date.

**11.2** **Professional Fee Claims.** All final requests for payment of Professional Fee Claims pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b), or 1103 must be made by application Filed with the Bankruptcy Court and served on counsel to the Liquidation Trust and counsel to the U.S. Trustee no later than forty-five (45) calendar days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to such applications must be Filed and served on counsel to the Liquidation Trust, counsel to the U.S. Trustee, and the requesting Professional on or before the date that is twenty-one (21) calendar days after the date on which the applicable application was served (or such longer period as may be allowed by order of the Bankruptcy Court or by agreement with the requesting Professional). All Professional Fee Claims shall be paid by the Liquidation Trust to the extent approved by order of the Bankruptcy Court within five (5) Business Days after entry of such order. On the Effective Date, the Liquidation Trust shall establish the Professional Fee

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

Reserves. The Professional Fee Reserves shall vest in the Liquidation Trust and shall be maintained by the Liquidation Trust in accordance with the Plan. The Liquidation Trust shall fully fund the Professional Fee Reserves on the Effective Date in an amount that is reasonable acceptable to the Debtors prior to the Confirmation Hearing and that approximates the total projected amount of unpaid Professional Fee Claims on the Effective Date. If the Debtors and the Committees are unable to agree on an amount by which the Professional Fee Reserves are to be funded, then any of those parties may submit the issue to the Bankruptcy Court, which, following notice and a hearing, shall fix the amount of the required funding. All Professional Fee Claims that have not previously been paid, otherwise satisfied or funded to the trust account of Debtors' counsel, or withdrawn shall be paid from the Professional Fee Reserves. Any excess funds in the Professional Fee Reserves shall be released to the Liquidation Trust to be used for other purposes consistent with the Plan. For the avoidance of doubt, the Professional Fee Reserves are an estimate and shall not be construed as a cap on the Liquidation Trust's obligation to pay in full Allowed Professional Fee Claims.

**11.3** **Payment of Statutory Fees.** All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date. All such fees that relate to distributions by each Debtor after the Effective Date shall be paid by the Liquidation Trust. The Liquidation Trust shall not be obligated to pay any fees pursuant to 28 U.S.C. § 1930 for distributions made by the Liquidation Trust from and after the Effective Date. Notwithstanding anything to the contrary in the Plan, the U.S. Trustee shall not be required to file any proofs of claim with respect to quarterly fees payable pursuant to 28 U.S.C. § 1930.

**11.4** **Dissolution of the Committees.** Both of the Committees shall be automatically dissolved on the Effective Date and, on the Effective Date, each member of the Committees (including each Related Party thereof) and each Professional retained by either of the Committees shall be released and discharged from all rights, duties, responsibilities, and obligations arising from, or related to, the Debtors, their membership on either of the Committees, the Plan, or the Chapter 11 Cases, except (i) with respect to any matters concerning any Professional Fee Claims held or asserted by any Professional retained by either of the Committees, and (ii) any appeals of, or related to, the Confirmation Order or any other appeal to which the Committees are a party to.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

## 11.5  Modifications and Amendments.

(a)    In the Debtors' reasonable discretion, the Debtors may alter, amend, or modify the Plan under Bankruptcy Code section 1127(a) at any time at or prior to the conclusion of the Confirmation Hearing. All alterations, amendments, or modifications to the Plan must comply with Bankruptcy Code section 1127. The Debtors shall provide parties in interest with notice of such amendments or modifications as may be required by the Bankruptcy Code, Bankruptcy Rules, or order of the Bankruptcy Court. A Creditor that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Creditor.

(b)    After entry of the Confirmation Order and prior to substantial consummation (as defined in Bankruptcy Code section 1101(2)) of the Plan, the Debtors or the Liquidation Trust, as applicable, may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement approved with respect to the Plan, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Plan. Such proceedings must comply with Bankruptcy Code section 1127. To the extent required, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or an order of the Bankruptcy Court. A Creditor that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Creditor.

## 11.6  Severability of Plan Provisions.
If, at or before the Confirmation Hearing, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section 11.6, is valid and enforceable under its terms.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 65

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

**11.7** __Compromises and Settlements__. From and after the Effective Date, the Liquidation Trust may compromise and settle disputes about any applicable Claims or Liquidation Trust Actions, without any further approval by the Bankruptcy Court. Until the Effective Date, the Debtors expressly reserve the right to compromise and settle (subject to the approval of the Bankruptcy Court) Claims against them or any Avoidance Actions and Causes of Action belonging to the Estates.

**11.8** __Binding Effect of Plan__. Upon the Effective Date, Bankruptcy Code section 1141 shall become applicable with respect to the Plan and the Plan shall be binding on all Persons to the fullest extent permitted by Bankruptcy Code section 1141(a). Confirmation of the Plan binds each Holder of a Claim or Equity Interest to all the terms and conditions of the Plan, whether or not such Holder's Claim or Equity Interest is Allowed, whether or not such Holder holds a Claim or Equity Interest that is in a Class that is Impaired under the Plan, and whether or not such Holder has accepted the Plan.

**11.9** __Non-Discharge of the Debtors; Injunction__. **In accordance with Bankruptcy Code section 1141(d)(3)(A), the Plan does not discharge the Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Equity Interests against the Debtors. As such, no Person holding a Claim or an Equity Interest may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Person under the Plan. As of the Effective Date, all Persons are precluded and barred from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, Equity Interests, or other action or remedy based on any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.**

**11.10** __Releases and Related Matters__.

**(a)     On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Releasing Parties shall be deemed to have forever released, waived, and discharged each of the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever, whether known or unknown, whether foreseen or unforeseen, whether liquidated or unliquidated, whether fixed or contingent, whether matured or unmatured, existing or hereafter arising, at law, in equity, or otherwise, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to**

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 66

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

the Effective Date in any way relating to the Debtors, the conduct of the Debtors' business, the Chapter 11 Cases, the Sale Transaction (including the leaseback by FRI of certain FRI Assets to the Debtors pursuant to the Temporary Lease Agreement), any other sales consummated during the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions that are determined in a Final Order to have constituted actual fraud, gross negligence, or willful misconduct by such Released Party; *provided, however*, that nothing in this Section 11.10 shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order.

(b) Entry of the Confirmation Order shall constitute (i) the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Section 11.10; and (ii) the Bankruptcy Court's findings that such releases are (1) in exchange for good and valuable consideration provided by the Released Parties (including performance of the terms of the Plan), and a good-faith settlement and compromise of the released claims, (2) in the best interests of the Debtors and the Estates, (3) fair, equitable, and reasonable, (4) given and made after due notice and opportunity for hearing, and (5) a bar to any of the Releasing Parties asserting any released claim against any of the Released Parties.

**11.11** <u>Exculpation and Limitation of Liability</u>. On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, none of the Exculpated Parties shall have or incur any liability to any Person, including to any Holder of a Claim or an Equity Interest, for any prepetition or postpetition act or omission in connection with, relating to, or arising out of the Debtors, the conduct of the Debtors' business, the Chapter 11 Cases, the Sale Transaction (including the leaseback by FRI of certain FRI Assets to the Debtors pursuant to the Temporary Lease Agreement), any other sales consummated during the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan;

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

**provided, however**, that nothing in this Section 11.11 shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order; and **provided, further**, that the exculpation provisions of this Section 11.11 shall not apply to acts or omissions constituting actual fraud, gross negligence, or willful misconduct by such Exculpated Party as determined by a Final Order. For purposes of the foregoing, it is expressly understood that any act or omission effected with the approval of the Bankruptcy Court conclusively will be deemed not to constitute actual fraud or willful misconduct unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation, and in all respects, the Exculpated Parties shall be entitled to rely on the written advice of counsel with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Cases, the Plan, and administration thereof. The Confirmation Order shall serve as a permanent injunction against any Person seeking to enforce any Causes of Action against the Exculpated Parties that are encompassed by the exculpation provided by this Section 11.11 of the Plan.

**11.12** <u>Term of Injunctions or Stays</u>. Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and extant as of the Confirmation Hearing (excluding any injunctions or stays contained in or arising from the Plan or the Confirmation Order), shall remain in full force and effect through and inclusive of the Effective Date.

**11.13** <u>Revocation, Withdrawal, or Non-Consummation</u>. The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Hearing and to File subsequent plans. If the Debtors revoke or withdraw the Plan prior to the Confirmation Hearing, or if the Effective Date does not occur, then (a) the Plan shall be null and void in all respects; and (b) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims against, or any Equity Interests in, any Debtor, or any Causes of Action by or against any Debtor or any other Person, (ii) prejudice in any manner the rights of any Debtor or any other Person in any further proceedings involving a Debtor, or (iii) constitute an admission of any sort by any Debtor or any other Person.

**11.14** <u>Exemption from Transfer Taxes</u>. Pursuant to Bankruptcy Code section 1146, the vesting of the Liquidation Trust Assets in the Liquidation Trust, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge, or other security interest, or the making or

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 68

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

assignment of any lease or sublease, or making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**11.15 <u>Computation of Time</u>.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**11.16 <u>Transactions on Business Days</u>.** If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, any transactions or other actions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

**11.17 <u>Good Faith</u>.** Confirmation of the Plan shall constitute a conclusive determination that: (a) the Plan, and all the transactions and settlements contemplated thereby, have been proposed in good faith and in compliance with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules; and (b) the solicitation of acceptances or rejections of the Plan has been in good faith and in compliance with all applicable provisions of the Bankruptcy Code, and the Bankruptcy Rules, and, in each case, that the Debtors and all Related Parties have acted in good faith in connection therewith.

**11.18 <u>Governing Law</u>.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), (a) the laws of the State of Washington shall govern the construction and implementation of the Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of incorporation or formation of each Debtor shall govern corporate or limited liability company governance matters with respect to such Debtor; in each case without giving effect to the principles of conflicts of law thereof. Any applicable nonbankruptcy law that would prohibit, limit, or otherwise restrict implementation of the Plan based on (i) the commencement of the Chapter 11 Cases, (ii) the appointment of the Liquidation Trustee, (iii) the wind down of the Debtors, (iv) the liquidation of some or all of the Liquidation Trust Assets, or (v) any other act or action to be done pursuant to or contemplated by the Plan is superseded and rendered inoperative by the Plan and federal bankruptcy law.

**11.19 <u>Notices</u>.** Following the Effective Date, all pleadings and notices Filed in the Chapter 11 Cases shall be served solely on (a) the Liquidation Trust and its counsel, (b) the U.S. Trustee, (c) any Person whose rights are affected by the applicable pleading

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 69

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

or notice, and (d) any Person Filing a specific request for notices and papers on and after the Effective Date.

**11.20 __Final Decree.__** Upon the Liquidation Trustee's determination that all Claims have been Allowed, disallowed, expunged, or withdrawn and that all Liquidation Trust Assets have been liquidated, abandoned, or otherwise administered, the Liquidation Trustee shall move for the entry of the Final Decree with respect to the Debtors. On entry of the Final Decree, the Liquidation Trustee and its respective Related Parties, in each case to the extent not previously discharged by the Bankruptcy Court, shall be deemed discharged and have no further duties or obligations to any Person.

**11.21 __Additional Documents.__** On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and the Liquidation Trust, as applicable, and all Holders receiving Distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other acts as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**11.22 __Conflicts with the Plan.__** In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, any other order entered in the Chapter 11 Cases, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence; *provided, however*, that the Confirmation Order shall control and take precedence in the event of any inconsistency between the Confirmation Order, any provision of the Plan, and any of the foregoing documents; *provided further, however*, that with respect to the Sale Transaction, the Sale Order shall control and take precedence in the event of any inconsistency between the Sale Order, any provision of the Plan, and any of the foregoing documents, in each case solely with respect to the Sale Transaction.

## ARTICLE XII

### REQUEST FOR CONFIRMATION AND RECOMMENDATION

**12.1 __Request for Confirmation.__** The Debtors request confirmation of the Plan in accordance with Bankruptcy Code section 1129.

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 70

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

**12.2  <u>Recommendation</u>.** The Debtors believe that confirmation and implementation of the Plan are the best alternative under the circumstances and urge all Impaired Creditors entitled to vote on the Plan to vote in favor of and support confirmation of the Plan.

Respectfully,

**EASTERDAY RANCHES, INC.**

By:  _____*/s/ Peter Richter*_____
Name: Peter Richter
Title: Co-Chief Restructuring Officer

**EASTERDAY FARMS**

By:  _____*/s/ Peter Richter*_____
Name: Peter Richter
Title: Co-Chief Restructuring Officer

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

em01c1014p

Submitted by:

Dated: December 1, 2021        BUSH KORNFELD LLP

_/s/ Thomas A. Buford, III_
THOMAS A. BUFORD, III (WSBA 52969)
BUSH KORNFELD LLP

RICHARD M. PACHULSKI (admitted _pro hac vice_)
JEFFREY W. DULBERG (admitted _pro hac vice_)
MAXIM B. LITVAK (admitted _pro hac vice_)
PACHULSKI STANG ZIEHL & JONES LLP

_Attorneys for Debtors and Debtors in Possession_

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 72

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# EXHIBIT A

## Waterfall Analysis

FIRST AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page 73

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# WATERFALL ANALYSIS
## (revised December 1, 2021)

The following summarizes Applicable Waterfall (together, the "Waterfalls") with respect to that certain *First Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms*, filed concurrently herewith (the "Plan"). Except as set forth herein, capitalized terms have the meanings assigned to them in the Plan.

The Waterfalls are each qualified in all respects by the following notes and assumptions. To the extent of any discrepancy or disagreement between the tables and the notes and assumptions herein, the notes and assumptions shall govern.

**THE PROJECTIONS HEREIN ARE BASED ON CURRENTLY AVAILABLE INFORMATION AND ARE SUBJECT TO CHANGE DEPENDING ON, AMONG OTHER FACTORS, THE VALUE OF ASSETS RECOVERED BY THE ESTATES AND THE LIQUIDATION TRUST, THE AMOUNT OF PROFESSIONAL FEES AND EXPENSES AND OTHER ADMINISTRATIVE CLAIMS THAT MAY BE INCURRED IN THE DEBTORS' CASES, THE EXTENT OF CLAIMS THAT ARE ULTIMATELY ALLOWED AGAINST EACH OF THE DEBTORS' ESTATES, AND THE TIMING OF CONSUMMATION OF THE PLAN.**

The following table reflects the results of the Waterfalls, as supported by the notes and assumptions set forth below. The Segale Claims remain subject to ongoing review and reconciliation.

## Option A:

| Stakeholder | Assumed Claim Amt. | Recoveries | | | Basin City Proceeds | Tyson Settlement Proceeds | Total Recovery | Total Proj. % |
|---|---|---|---|---|---|---|---|---|
| | | Farms | Ranches | Total Debtor Recovery | | | | |
| DIP Claims | 2,000 | 2,000 | - | 2,000 | | | 2,000 | 100% |
| Class 1: Other Secured Claims | 1,599 | 1,599 | - | 1,599 | | | 1,599 | 100% |
| Class 2: Other Priority Claims | 409 | 205 | 205 | 409 | | | 409 | 100% |
| Classes 3 and 4: Washington Trust/CHS | 49,886 | 43,402 | 1,496 | 44,898 | | | 44,898 | 90% |
| Class 5: Farms General Unsecured Claims | 17,771 | 15,816 | - | 15,816 | | | 15,816 | 89% |
| Class 6: Ranches General Unsecured Claim | 5,959 | - | 1,256 | 1,256 | 1,000 | 630 | 2,885 | 48% |
| Class 7: Tyson Claims | 261,316 | - | 55,073 | 55,073 | 3,108 | (1,442) | 56,739 | 22% |
| Class 8: Segale Claims | 7,694 | - | 1,622 | 1,622 | 92 | 813 | 2,526 | 33% |

## Option B:

| Stakeholder | Assumed Claim Amt. | Recoveries | | | Basin City Proceeds | Tyson Settlement Proceeds | Total Recovery | Total Proj. % |
|---|---|---|---|---|---|---|---|---|
| | | Farms | Ranches | Total Debtor Recovery | | | | |
| DIP Claims | 2,000 | 2,000 | - | 2,000 | | | 2,000 | 100% |
| Class 1: Other Secured Claims | 1,599 | 1,599 | - | 1,599 | | | 1,599 | 100% |
| Class 2: Other Priority Claims | 409 | 205 | 205 | 409 | | | 409 | 100% |
| Classes 3 and 4: Washington Trust/CHS | 49,886 | 45,896 | 1,496 | 47,392 | | | 47,392 | 95% |
| Class 5: Farms General Unsecured Claims | 17,771 | 16,765 | - | 16,765 | | | 16,765 | 94% |
| Class 6: Ranches General Unsecured Clai | 5,959 | - | 1,283 | 1,283 | 1,000 | 630 | 2,913 | 49% |
| Class 7: Tyson Claims | 261,316 | - | 55,073 | 55,073 | 3,108 | (1,442) | 56,739 | 22% |
| Class 8: Segale Claims | 7,694 | - | 1,657 | 1,657 | 92 | 813 | 2,561 | 33% |

<u>**Notes to Waterfall Analysis**</u>

**1)** **DISTRIBUTABLE ASSETS**

    a)    <u>Real Estate Proceeds Allocation.</u>

Pursuant to an order of the Bankruptcy Court, the Debtors sold certain real estate in Benton County, Washington (the "<u>Benton Real Estate</u>") for proceeds totaling $204.0 million net of broker fees and closing costs. Pursuant to certain orders of the Court, the amount of mortgage proceeds paid or to be paid from the proceeds of the Benton Real Estate totals $86.473 million, resulting in remaining real estate proceeds of $111.9 million. The Waterfalls allocate these proceeds to each of the Debtor's Estates using five steps:

<u>Step 1</u>, the Waterfalls allocate sale proceeds by farm according to farm-level estimates provided by the Debtors' real estate broker prior to the Sale Transaction.

<u>Step 2</u>, the Waterfalls allocate mortgage debt to each farm according to which of the mortgages encumbered specific farms; for the mortgage with The Prudential Insurance Company of America (which encumbered multiple farms), the Waterfalls assume that the mortgage burdened each applicable farm on a pro rata basis according to each farm's individual value.

The table below reflects the outcome of Step 1 and Step 2.

| Farm | Broker Estimate | Weighted % of Total Value (based on Broker Estimate) | Proceeds Allocated by Farm (b) | Lender | Weighted % of Lender Value (c) | Mortgage Balance (d) | Pro rated mortgage (e) | Net Proceeds by Farm (f) |
|------|-----------------|------|------|--------|------|------|------|------|
| Goose Gap Farm | $27,993 | 13% | $26,010 | Prudential | 26% | 56,137 | 14,747 | $11,263 |
| River Farm | $51,765 | 24% | $48,099 | Prudential | 49% | 56,137 | 27,270 | $20,828 |
| Nine Canyon Farm | $26,803 | 13% | $24,904 | Prudential | 25% | 56,137 | 14,120 | $10,784 |
| Benton Storage Comp | $15,000 | 7% | $13,938 | LTM | 100% | 758 | 758 | $13,180 |
| Cox Farm | $91,966 | 43% | $85,452 | AXA | 100% | 29,578 | 29,578 | $55,874 |
| **TOTALS:** | $213,526 | | $198,403 | | | | | $111,930 |

<u>Step 3</u>, the Waterfalls allocate net farm-level value (i.e., net of mortgages, as calculated in Step 2) according to the total ownership percentages that each Debtor held in each specific farm. The table below reflects the outcome of Step 3.[1]

| | Ranches | | Farms | | Easterday Family | |
|------|------|------|------|------|------|------|
| | % | Value | % | Value | % | Value |
| **Cox Farm** | 57% | $ 31,805 | 6% | $ 3,501 | 37% | $ 20,568 |
| **River Farm** | 0% | $ - | 1% | $ 110 | 99% | $ 20,719 |
| **9 Canyon** | 100% | $ 10,784 | 0% | $ - | 0% | $ - |
| **Storage Complex** | 0% | $ - | 100% | $ 13,180 | 0% | $ - |
| **Goose Gap** | 0% | $ - | 100% | $ 11,263 | 0% | $ - |
| **Totals:** | | $ 42,590 | | $ 28,054 | | $ 41,287 |

---

[1] Approximately 7.0% of the real estate underlying the Goose Gap farm was leased from third parties. For purposes of ascribing sale proceeds to the parties, the Waterfalls assume that the leases did not have value.

<u>Step 4</u>, consistent with the allegations in the Allocation Dispute, the Waterfalls assume that Farms is the owner of the value ascribed in the table above to the Easterday Family.

The table below reflects the outcome of Step 4.

|  | Ranches | | Farms | |
|---|---|---|---|---|
|  | % | Value | % | Value |
| **Cox Farm** | 57% | $ 31,805 | 43% | $ 24,069 |
| **River Farm** | 0% | $ - | 100% | $ 20,828 |
| **9 Canyon** | 100% | $ 10,784 | 0% | $ - |
| **Storage Complex** | 0% | $ - | 100% | $ 13,180 |
| **Goose Gap** | 0% | $ - | 100% | $ 11,263 |
| **Totals:** | | $ 42,590 | | $ 69,340 |

<u>Step 5</u>, pursuant to an Order entered by the Bankruptcy Court, prior to the Effective Date the Debtors were authorized to transfer $15 million from the proceeds of the Benton Real Estate to an escrow account for payment of allowed Professional Fee Claims. Of these amounts, $7 million was distributed from real estate proceeds attributable to Farms and $8 million was distributed from real estate proceeds attributable to Ranches.

The table below reflects the conclusion of Steps 1 through 5:

|  | Ranches | | Farms | |
|---|---|---|---|---|
|  | % | Value | % | Value |
| **Cox Farm** | 57% | $ 31,805 | 43% | $ 24,069 |
| **River Farm** | 0% | $ - | 100% | $ 20,828 |
| **9 Canyon** | 100% | $ 10,784 | 0% | $ - |
| **Storage Complex** | 0% | $ - | 100% | $ 13,180 |
| **Goose Gap** | 0% | $ - | 100% | $ 11,263 |
| **Totals:** | | $ 42,590 | | $ 69,340 |
| **Less Pro Fee Distributions:** | | $ 34,590 | | $ 62,340 |

    b)    <u>Plan Contribution</u>.

Pursuant to the Sale Order and the Sale Transaction, FRI is obligated to pay the Debtors $5.0 million as a plan contribution. The Waterfalls assume that these funds are split evenly between the Debtors.

c)      <u>Projected Cash on Hand</u>.

The Debtors are projected to have cash on hand, as of the Effective Date, totaling approximately $38.6 million for Farms and $2.1 million for Ranches. The starting cash amounts include (1) net proceeds previously received from equipment sales, (2) funds received from the Federal Coronavirus Food Assistance Program (CFAP), and (3) proceeds from crop sales for the 2021 growing season. In addition, the estimated cash balances anticipate the following: (a) proceeds from the sale of an airplane hangar, (b) additional amounts from equipment sales from the sale escrow, (c) proceeds from the sale of excess feed stores, and (d) miscellaneous operating expenses through the Effective Date.

d)      <u>Reimbursement of Third Party Due Diligence Costs—Farms Only</u>.

As part of their marketing efforts leading up to the Sale Transaction, the Debtors advanced approximately $462,000 for third party diligence that was shared with all prospective bidders. These advances were paid using Farms' cash, and the Waterfalls anticipate reimbursement of those amounts to the Farms Estate.

e)      <u>Intercompany Claim Recovery – Ranches Only</u>.

Under the Waterfall Analysis, Ranches has an Allowed Intercompany Claim against Farms totaling $15.4 million. The Waterfall Analysis anticipates that this Intercompany Claim will be Allowed in the Farms Estate on an equal and ratable basis with Class 5 Claims (Farms General Unsecured Claims), and will be paid in full. The proceeds of that payment are treated as a source under the Waterfall for Ranches.

f)      <u>Distribution to Ranches for Excess Farms Funds</u>.

Under the Waterfalls, any excess proceeds remaining in the Farms estate, after paying Allowed Claims up to the amounts noted below, will not be distributed to the Easterday Family as owners of Class 9 (Equity Interests). Instead, based on a resolution of potential substantive consolidation claims between the Estates, the remaining proceeds will be paid to Ranches, and are therefore reflected in the Waterfalls as a source of funding for the creditors of Ranches.

em01de017h

The tables below reflects the total projected distributable value anticipated under the Waterfalls.

**Option A:**

| (000's) | Farms | | Ranches | |
|---|---|---|---|---|
| **Sources*** | | | | |
| Real Estate (Net Proceeds) | $ | 62,340 | $ | 34,590 |
| Other Sources | | | | |
| Plan Contribution | | 2,500 | | 2,500 |
| Distribution to Ranches for Interco Claim against Farms | | - | | 15,400 |
| Reimbursement of Third Party DD Costs | | 462 | | - |
| Recovery of Additional Avoidance Claims | | - | | 1,757 |
| Settlement with Ranches re Substantive Consolidation | | - | | 14,091 |
| Cash | | 38,575 | | 2,145 |
| **Total Proceeds Available for Estate** | $ | **103,877** | $ | **70,482** |

*Not including Basin City Property proceeds or distribution adjustments from the Tyson settlement.

**Option B:**

| (000's) | Farms | | Ranches | |
|---|---|---|---|---|
| **Sources*** | | | | |
| Real Estate (Net Proceeds) | $ | 62,340 | $ | 34,590 |
| Other Sources | | | | |
| Plan Contribution | | 2,500 | | 2,500 |
| Distribution to Ranches for Interco Claim against Farms | | - | | 15,400 |
| Reimbursement of Third Party DD Costs | | 462 | | - |
| Recovery of Canyon Farms Avoidance Claim | | - | | 1,757 |
| Settlement with Ranches re Substantive Consolidation | | - | | 15,447 |
| Cash | | 38,575 | | 2,145 |
| Total Proceeds Available for Estate | $ | **103,877** | $ | **71,838** |

*Not including Basin City Property proceeds or distribution adjustments from the Tyson settlement.

## 2)     DISTRIBUTION ADJUSTMENTS AND ENHANCEMENTS

In addition to sources available under the Waterfalls, the Plan also provides for settlements that have the effect of enhancing or reducing certain creditor recoveries.

a)      <u>Settlement of Claims Against Tyson – Ranches Only</u>.

Within 90 days of the Petition Date, Ranches transferred certain cattle (the "<u>Lot 3 Cattle</u>") to Tyson with an approximate value of $58.1 million.  Also within 90 days of the Petition Date, Tyson refused to pay approximately $9.5 million in amounts owed to Ranches for feed used for Tyson's cattle; the Debtors view that refusal as a setoff.  The Plan anticipates settlement of all

em01de017h

avoidance claims against Tyson, including any claims relating to transfer of those cattle and prepetition invoices or amounts owed, at 50% of the value of the Lot 3 Cattle, or approximately $29 million. Tyson Claims constitute approximately 95% of all estimated General Unsecured Claims asserted at Ranches, such that the settlement results in a reduction of Tyson's distribution and a corresponding increase in distributions for Class 6 (Ranches General Unsecured Claims) and Class 8 (Segale Claims), by approximately $1.4 million (5% of $29 million).

      b)    <u>Recovery of Basin City Property – Ranches Only</u>.

Option A of the Plan anticipates that the Easterday Family will transfer to the Debtors the Basin City Property on account of Tyson's and Segale's restitution claims against Cody Easterday. Whether proceeding under Option A or Option B, the Waterfalls assume a value for the Basin City Property of approximately $4.2 million, net of secured mortgage debt. This assumed value is informed by recent unsolicited purchase offers received by the Debtors. Pursuant to the Plan, the Waterfalls distribute the first $1 million of these proceeds to Class 6 (Ranches General Unsecured Claims), and distribute the remaining value between Tyson and Segale on a Pro Rata basis. For projection purposes only in calculating the Pro Rata division between Tyson and Segale, the Waterfalls assume an Allowed Class 8 Claim for Segale totaling approximately $7.69 million. The Segale Claim remains subject to review and reconciliation.

      c)    <u>Recovery of Other Litigation Claims</u>.

The Debtors are aware of other miscellaneous avoidance and/or litigation claims that the Debtors may raise. As discussed below, the Waterfall for Farms anticipates that creditors of Farms will be paid in full satisfaction of their Claims. As a result, the Waterfall anticipates that any recovery of additional litigation claims will be paid to Ranches for distribution through the Waterfall for Ranches. The Waterfall for Ranches assumes that approximately $1.7 million in new proceeds will be received by Ranches on account of these claims. To the extent that additional litigation claims are recovered, the Plan and the Waterfalls anticipate that the proceeds will be distributed Pro Rata between Class 6 (Ranches General Unsecured Claims), Class 7 (Tyson Claims), and Class 8 (Segale Claims).

**3)    PROJECTED CLAIM AMOUNTS AND RECOVERIES**

      a)    <u>Effective Date Payments or Reserve</u>s.

In order to determine the total amount of distributable assets that are available for payment of Claims, the Waterfalls first reduce distributable assets by two categories of payments that will need to be made and/or reserved in order for the Plan to become effective—Easterday Family tax payments under Option A and administrative obligations of the Liquidation Trust.

      i)   *Income Tax Payments*.

Under Option A of the Plan, the Debtors will pay up to $18.0 million towards legitimate income tax obligations owed by the Easterday Family in connection with the Debtors or the liquidation of their assets. The Waterfalls allocate this payment between the two Debtors according to their Pro Rata portion of total distributable assets (without counting for inter-estate settlements or

payments), such that the Waterfalls assume Farms pays approximately $10.6 million for Easterday Family income taxes under Option A, and Ranches pays approximately $7.4 million.

ii) *Liquidation Trust Funding.*

The Plan and Waterfalls anticipate the funding of the administrative costs of the Liquidation Trust, in order to ensure that the Trust has sufficient resources to satisfy its obligations and carry out its responsibilities. The amount of the initial funding differs, depending on whether Option A or Option B of the Plan is confirmed. With respect to Option A, the Waterfall anticipates an initial Trust funding of $1.5 million, split evenly between the two Debtor Estates. With respect to Option B, the Waterfall anticipates an initial Trust funding of $2.5 million. This amount is greater than under Option A to account for increased litigation expense that likely will be required by the Liquidation Trustee and his professionals in the absence of any resolution over the Allocation Dispute. These amounts represent initial fundings only; the terms of the Liquidation Trustee's retention will be disclosed at a later date.

b) <u>Secured Claims</u>

i) *Class 1: Other Secured Claims*

The Waterfalls estimate a total of approximately $1.6 million in Class 1 Other Secured Claims owed by Farms, and no Class 1 Claims owed by Ranches. These amounts are comprised of approximately $160,000 for liens arising under Washington law for feed supplies and inputs that remain in the Debtors' possession, and approximately $1.4 million of first priority equipment lien claims that the Debtors project will remain outstanding as of the Effective Date.[2]

ii) *Class 3 and Class 4 WTB and CHS Secured Claims.*

WTB purchased secured claims initially held by CHS. The Waterfalls assume that these secured Claims hold an equal and ratable perfected security interest in the Debtors' personal property, including crops and equipment and the proceeds thereof. The Waterfalls project that Class 3 and Class 4 Claims will be secured by collateral totaling approximately $36.8 million at Farms and approximately $1.5 million at Ranches, comprised primarily of equipment and crop proceeds.

The Waterfalls project that each of the Debtors will have sufficient distributable value to satisfy these secured Claims in full, but WTB and CHS will retain certain deficiency amounts (as addressed further below) in excess of the value of their collateral.

c) <u>Administrative Expenses, DIP Claims, and Priority Tax Claims</u>

i) *DIP Claims.*

Farms owes $2.0 million in repayment of the DIP Claims. The Waterfalls anticipate payment in full of these Claims on the Effective Date.

---

[2] Equipment lien Claims were substantially higher on the Petition Dates, but most of those Claims have since been resolved and/or paid as a result of the Debtors' liquidation of equipment.

em01de017h

ii) *Professional Fee Claims*.

As discussed above, pursuant to an Order entered by the Bankruptcy Court, prior to the Effective Date the Debtors were authorized to transfer $15 million from the proceeds of the Benton Real Estate to an escrow account (the "Professional Fee Escrow") for payment of allowed Professional Fee Claims, $7 million of which was attributed to Farms and $8 million was attributed to Ranches. Professional Fee Claims that have been allowed through October 2021 have already been paid or addressed through the Professional Fee Escrow. The Waterfalls anticipate that the following Professional Fees for November through the Effective Date will be owed or otherwise need to be accounted for. To estimate Professional Fee Claims from November through the Effective Date, the Waterfalls assume that for Option A monthly amounts will equal 2/3rds the foregoing averages, and for Option B monthly amounts will equal the full amount of the foregoing averages. The Waterfalls also assume that the Effective Date under Option A will occur in January 2022, and under Option B will occur in April 2022

|  | Option A | | Option B | |
|  | Farms | Ranches | Farms | Ranches |
|---|---|---|---|---|
| Projected Fees (Nov to Eff. Date) | 2,692 | 3,218 | 8,647 | 10,200 |
| Less Reserve Balance | (3,331) | (522) | (3,331) | (522) |
| **Pro Fee Deficiency:** | - | **2,696** | **5,315** | **9,678** |

The Waterfalls anticipate payment in full of Professional Fee Claims on the Effective Date.

iii) *Class 2 Priority Claims*.

Approximately $409,000 in Claims were filed against the Debtors by taxing authorities. The Waterfalls estimate that these claims constitute the entire portion of Class 2 Priority Claims. The Waterfalls anticipate that these Claims will be allowed in equal parts against each Estate and paid in full on the Effective Date.

d) <u>General Unsecured Claims -- Farms</u>

i) *Class 3 and Class 4 Claims (WTB and CHS Claims)*.

As discussed above, WTB purchased the Class 4 CHS Claims. The total asserted amount of these Claims is approximately $49.8 million. The Debtors estimate that the total collateral securing these Claims is approximately $38.3 million, resulting in a total net deficiency of approximately $11.5 million.

Under Option A, Class 3 and Class 4 Claims are capped at a total amount of approximately $44.9 million, and under Option B the Claims are capped at a total amount of $47.4 million. The Waterfalls assume that these caps reduce the amount of the unsecured deficiency Claims associated with Class 3 and Class 4 Claims. The Waterfalls anticipate that distributable value at Farms will be sufficient to satisfy in full the unsecured deficiency Claims associated with Class 3 and Class 4 Claims (after accounting for the caps referenced above).

em01de017h

ii)  *Class 5 (Farms General Unsecured Claims)*

The Debtors have completed an initial review of proofs of claim filed in their Cases. Based on that review, the Debtors estimate a total of approximately $17.7 million in Allowed Claims at Farms. Under Option A, the Waterfall provides that distributions to Class 5 Claims will be capped at approximately $15.8 million and, under Option B, the Waterfall provides that distributions to Class 5 Claims will be capped at approximately $16.7 million. To the extent Allowed Class 5 Claims exceed these caps, the Waterfalls anticipate that recoveries for Class 5 Claims will be reduced on a Pro Rata basis.

iii)  *Intercompany Claim Owed to Ranches*.

Under the Waterfalls, Ranches has an Allowed Intercompany Claim against Farms totaling $15.4 million. The Waterfalls anticipate that this Intercompany Claim will be Allowed against Farms on an unsecured basis. The Waterfalls anticipate that distributable sources will be sufficient to pay this Claim in full. The proceeds of that payment are treated as a source under the Waterfall for Ranches.

e)  <u>General Unsecured Claims -- Ranches</u>

i)  *Class 7 (Tyson Claims)*.

Under the Plan, Class 7 Tyson Claims are Allowed in the amount of $261.3 million, against Ranches. This amount includes a claim under Section 502(h) for $29.05 million, on account of the recovery anticipated under the Plan of avoidance claims against Tyson. The Waterfalls assume that the Section 502(h) is Allowed on an equal and ratable basis with other unsecured Claims.

ii)  *Class 8 (Segale Claims)*.

Segale filed a proof of claim against Ranches asserting a secured Claim totaling $11.4 million. The Segale Claim remains subject to ongoing review and reconciliation. For purposes of the Waterfalls and without prejudice to any of the Estates' rights, the Waterfalls assume that the Segale Claim will be Allowed as an unsecured Claim against Ranches in an amount no greater than $7.7 million.

em01de017h