**So Ordered.**

**Dated: April 20th, 2022**



**Whitman L. Holt**
**Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| EASTERDAY RANCHES, INC., *et al.* | Lead Case No. 21-00141-WLH11<br>Jointly Administered |
| Debtors.[1] | **ORDER GRANTING DEBTORS'**<br>**MOTION TO APPROVE GLOBAL**<br>**SETTLEMENT TERM SHEET** |

Upon *Debtors' Motion to Approve Global Settlement Term Sheet* [Docket No. 1543] (the "Motion");[2] and the court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the court having found this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the court may enter a final order consistent with

---

[1] The Debtors along with their case numbers are as follows: Easterday Ranches, Inc. (21-00141) and Easterday Farms, a Washington general partnership (21-00176).

[2] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion.

ORDER APPROVING GLOBAL
SETTLEMENT TERM SHEET –
Page 1

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Article III of the United States Constitution; and the court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the court having considered the statements of counsel, the declaration of Peter Richter submitted in support of the Motion, any objections raised, and the evidence presented at the hearing before this court (the "Hearing"); and it appearing that the relief requested in the Motion is reasonable and in the best interests of the Debtors' bankruptcy estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor;

## IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. The Motion [ECF No. 1543] is granted to the extent set forth herein.

2. All formal and informal objections, if any, to the relief requested in the Motion that have not been withdrawn, waived, or settled are overruled on the merits.

3. The terms of the *Global Settlement Term Sheet* attached hereto as Exhibit 1 (the "Term Sheet") are hereby approved in every respect pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. The Settlement Parties, including but not limited to the Debtors, are hereby authorized to enter into and perform pursuant to the Term Sheet, as applicable. The court's approval of the Term Sheet is not approval, allowance, or confirmation of (i) the chapter 11 plan contemplated by the Term Sheet or an associated disclosure statement; all issues, arguments, claims, rights of all parties regarding such a plan or disclosure statement are fully reserved (except to the extent that a Settlement Party has expressly agreed otherwise in the Term Sheet); (ii) any fees or expenses of any person or entity; or (iii) any release of any person or entity by any other person or entity.

4. Upon entry of this order, Debby Easterday's *Notice and Motion of Party in Interest Debby Easterday for the Appointment of Fee Examiner* [Docket Nos. 1481 and 1482], shall be deemed withdrawn without prejudice to refiling, subject to the terms

ORDER APPROVING GLOBAL
SETTLEMENT TERM SHEET –
Page 2

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

of the Term Sheet.

5. Upon entry of this order, the Easterday CHS Objections [Docket Nos. 1466 and 1469] shall be deemed withdrawn, and the Debtors may submit a proposed form of order approving the CHS 9019 Motion.

6. Upon entry of this order, the Easterday WTB Objections [Docket No. 1465 and 1468] shall be deemed withdrawn, and the Debtors may submit a proposed form of order approving the WTB 9019 Motion; *provided*, *that*, the WTB Settlement Agreement is revised in accordance with the Term Sheet and that the proposed order granting the WTB 9019 Motion is in a form and substance reasonably agreeable to the Easterday Family.

7. In the event of any inconsistencies between this order and the Motion, or with any prior order or pleading, this order shall govern in all respects.

8. This order shall be binding on and inure to the benefit of the Debtors as well as the other Settlement Parties, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

9. Notwithstanding anything in the Bankruptcy Code or the Bankruptcy Rules to the contrary, the terms and conditions of this order shall be immediately effective and enforceable upon its entry.

10. The Debtors are authorized and empowered to take such steps and do such other things as may be necessary or appropriate to implement and effectuate the relief granted in this order.

11. The court shall retain jurisdiction and power over any matter or dispute arising from or relating to this order or the Term Sheet.

*/// END OF ORDER ///*

ORDER APPROVING GLOBAL
SETTLEMENT TERM SHEET –
Page 3

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Presented by:

*/s/ Thomas A. Buford, III*_____
THOMAS A. BUFORD, III (WSBA 52969)
BUSH KORNFELD LLP

RICHARD M. PACHULSKI (admitted *pro hac vice*)
JEFFREY W. DULBERG (admitted *pro hac vice*)
JASON H. ROSELL (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP

*Attorneys for Debtors and Debtors in Possession*

ORDER APPROVING GLOBAL
SETTLEMENT TERM SHEET –
Page 4

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# **Exhibit 1**

## *Global Settlement Term Sheet*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

IN RE EASTERDAY RANCHES, INC. AND EASTERDAY FARMS

**Global Settlement Term Sheet**

**April 14, 2022**

This term sheet ("Term Sheet") sets forth the principal terms and condition of a global settlement by and among (a) Easterday Ranches, Inc. and Easterday Farms (together, the "Debtors"), (b) Cody and Debby Easterday, (c) Karen Easterday, individually and as personal representative of the probate estate of Gale A. Easterday (together with Cody and Debby Easterday, the "Easterday Family"), (d) 3E Properties, Easterday Farms Produce, Co., (e) Easterday Dairy, LLC (f) the Official Committee of Unsecured Creditors of Easterday Ranches, Inc. (the "Ranches Committee"), (g) the Official Committee of Unsecured Creditors of Easterday Farms (the "Farms Committee"), (h) Tyson Fresh Meats, Inc. ("Tyson"), and (i) Segale Properties, LLC ("Segale") (each a "Party" and together the "Parties").

This Term Sheet is proffered in the nature of a settlement and nothing herein shall be deemed to be an admission or evidence of any fact. Except as otherwise expressly provided in this Term Sheet, nothing herein is intended to, or does, in any manner waive, limit, impair, or restrict the ability of any party to protect and preserve any of its respective rights, remedies and interests, including without limitation its respective claims against the other or its ability to participate in any proceeding.

The transactions contemplated by this Term Sheet are subject to terms and conditions to be set forth in definitive documents and subject to approval by the United States Bankruptcy Court for the Eastern District of Washington, Yakima Division (the "Bankruptcy Court"). The Debtors will seek the entry of an order approving this Term Sheet (the "Term Sheet Order") in form and substance reasonably acceptable to the Parties on an expedited basis. The settlement described herein shall be effective upon the effective date of a plan of liquidation that conforms to the terms hereof (the "Plan").

| Global Settlement Term Sheet | |
|---|---|
| **Term** | **Description** |
| ***FRI Sale Properties / Proceeds*** | Easterday Family shall release any and all interests in the Net Sale Proceeds Account (~$96 million) (other than the Karen Settlement Amount described below). |
| ***Karen Easterday Settlement Amount*** | Upon the Effective Date of the Plan, and in satisfaction of Karen Easterday's claims asserted in connection with the Allocation Complaint (*i.e.*, assertion of ownership of certain parcels of property sold to FRI), Farms will pay **$6 million** to Karen Easterday (the "Karen Settlement Amount"), subject to the simultaneous reduction for first the Basin City Cash Purchase Price ($4.2M), then the Idaho Contribution ($669,300), and finally to application of the Easterday Dairy, LLC Note and BC 140, LLC Secured Guaranty (each defined and discussed below) (*i.e.*, remaining $1,130,700 of Karen Settlement Amount to be applied to Easterday Dairy, LLC Note and BC 140, LLC Secured Guaranty). |
| | For the avoidance of doubt, the net payment from Farms to Karen on account of the Karen Settlement Amount, after adjustment, will be $0 as a result of the Basin City Cash Purchase Price, Idaho Contribution and Easterday Dairy, LLC Note and BC 140, LLC Secured Guaranty provisions below. |
| ***Karen    Easterday Secured Note*** | Karen Easterday will deliver on the Effective Date of the Plan a secured promissory note to the Debtors in the amount of **$5 million** (the "Karen Secured Note"). |
| | Interest: 3% simple interest paid at maturity. |

| Global Settlement Term Sheet | |
|---|---|
| **Term** | **Description** |
| | Maturity Date: 2-years after the Effective Date of the Plan. |
| | Security: First deed of trust or mortgage on Karen Easterday's Franklin County home and surrounding parcels (approximately 800 acres). |
| ***Idaho Contribution*** | Idaho appraised value: $9,231,000 |
| | Baseline Value: $7,000,000 |
| | Karen Easterday will provide, on the Effective Date of the Plan, an additional payment to the Debtors equal to $669,300, which represents 30% of the difference between the Appraised Value and the Baseline Value (the "Idaho Contribution"). |
| | The Idaho Contribution shall be paid from the Karen Settlement Amount on the Effective Date of the Plan. |
| ***Basin City Sale*** | Upon the Effective Date of the Plan, Cody and Debby Easterday shall sell their interests in Franklin County APNs 121-310-054, 121-320-044, and 125-230-080 (the "Basin City Properties") to Karen Easterday's newly formed LLC, BC 140, LLC ("BC 140, LLC"), for **$4.2M** of cash (the "Basin City Cash Purchase Price") plus assumption of the AXA Equitable Life Insurance Company loan (~$1.2M), subject to consent of AXA Equitable Life Insurance Company. |
| | The Basin City Cash Purchase Price will be funded from the Karen Settlement Amount. Simultaneously at the closing, Cody and Debby Easterday shall contribute the Basin City Cash Purchase Price to the Debtors. As a result, there will be no actual transfer of funds. For the avoidance of doubt, the Basin City Cash Purchase Price will reduce the Karen Settlement Amount to $1.8M ($6.0M - $4.2M). |
| ***Easterday Dairy, LLC Note and BC 140, LLC Secured Guaranty*** | In full satisfaction of the outstanding note receivable owed by Easterday Dairy, LLC to Easterday Farms, on the Effective Date of the Plan, Easterday Dairy, LLC shall provide the Liquidation Trust with a **$2,169,300** (*i.e.*, **$3,300,000 - $1,130,700**) stand-alone promissory note with 3% interest (the "Easterday Dairy, LLC Note"). For the avoidance of doubt, this amount represents the final amount, after deducting the remaining balance of the Karen Settlement Amount. |
| | The Easterday Dairy, LLC Note shall be guaranteed by BC 140, LLC, which guaranty shall be secured by (a) a first deed of trust or mortgage on the unencumbered parcels of the Basin City Properties (APNs: 121-310-054 and 121-320-044 aka FU 140 and FU 228, blk 20) and (b) a junior deed of trust or mortgage subordinate to AXA Equitable Life Insurance Company's prior lien and mortgage on APN 125-230-080 aka portions of Farm Units 103 and 104, Block 20 ("BC 140, LLC Guaranty and Collateral Pledge"), subject to consent from AXA Equitable Life Insurance Company; *provided, however*, to the extent AXA Equitable Life Insurance Company does not consent to a junior deed of trust or mortgage on APN 125-230-080, then Karen Easterday shall pledge 100% of the membership interest in BC 140, LLC as an alternative to such junior deed of trust or mortgage subject to consent from AXA Equitable Life Insurance Company. The deed of trust or mortgage shall include a due on sale clause. The Easterday Dairy, LLC Note and BC 140, LLC Guaranty and |

DOCS_SF:106940.23

| Global Settlement Term Sheet | |
| --- | --- |
| **Term** | **Description** |
| | Collateral Pledge shall not be cross-defaulted or cross-collateralized with the Karen Secured Note.<br><br><u>Payment Due</u>: $2,169,300 (principal) plus accrued interest shall be due and payable 2-years from the Effective Date of the Plan. |
| *Transfer of Steer Head Brand* | The Debtors shall transfer all rights, interests, and ownership in the "steer head" brand (image below) to Karen Easterday or her designee. All fees and expenses related to such transfer shall be borne solely by Karen Easterday or her designee.<br><br> |
| *Assignment of Claims Against Canyon Farm* | Debtors agree to assign all estate claims against Canyon Farm, LLC / Fall Line Capital to Karen Easterday or her designee. |
| *3E and Easterday Produce Contribution* | 3E and Easterday Farms Produce, Co. shall buy back Cody and Debby Easterday's interest in 3E and Easterday Farms Produce, Co. for $2,274,210 (the "<u>3E-Produce Purchase Price</u>").<br><br>The 3E-Produce Purchase Price shall be in the form of a secured note from 3E and Easterday Farms Produce, Co. (joint obligors) at 4.5% interest; $100,000 due and payable every 6-months with the first payment due 90 days after the Effective Date of the Plan (to be applied to principal), with the balance due 2-years from the Effective Date of the Plan (the "<u>3E-Produce Secured Note</u>").<br><br>At the closing, Cody and Debby shall assign their rights in the 3E-Produce Secured Note to the Liquidation Trust.<br><br>The 3E-Produce Secured Note shall be secured by a pledge of 33% interest in 3E and Easterday Farms Produce, Co. |
| *Criminal Proceedings* | The Debtors agree not to appear, file, or otherwise make any statements in connection with Cody Easterday's sentencing. |
| *DOJ Consent* | The Debtors, Tyson, and Segale will cooperate with Cody and Debby Easterday to get the DOJ to consent to the settlements and releases of properties and interests included in this |

DOCS_SF:106940.23

| Global Settlement Term Sheet | |
|---|---|
| **Term** | **Description** |
| | Term Sheet and the Plan. DOJ's consent is a condition of the settlement and a condition precedent to the Effective Date of the Plan. |
| ***Release of Claims Against the Debtors*** | Easterday Family and each of their affiliates (*e.g.*, Easterday Dairy), agents, and representatives shall waive all claims (prepetition and postpetition) against the Debtors and each of their former and current agents, professionals, officers (including Paladin Management Group, Peter Richter, and Scott Avila), directors, and employees, including, but not limited to any claims of substantial contribution that may be assertable by their agents and representatives. |
| | Upon the Effective Date of the Plan, all proofs of claim filed by the Easterday Family and each of their affiliates shall be deemed withdrawn with prejudice. |
| | Notwithstanding the foregoing, Weyns Farms and its related entities are not required to release the Debtors. |
| ***Exculpation*** | The Plan shall provide that the Exculpated Parties shall not have or incur, and are released from, any claim, obligation, cause of action, and/or liability, in each case that arise from facts or circumstances that took place in whole or in part between the Petition Date and the Effective Date of the Plan, to any holder of a claim, interest, or any other entity or any of their respective successors, assigns or representatives for any act or omission with respect to or arising out of the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence, fraud or willful misconduct or any obligations that they have under or in connection with the Plan, the Plan Documents, or any transactions contemplated thereby, and in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. |
| | "Exculpated Parties" shall mean each of (i) the Debtors, and any of their respective successors or assigns, and any of their Representatives, including, for the avoidance of doubt, Pachulski Stang Ziehl & Jones LLP, Paladin Management Group, Peter Richter, Scott Avila, R. Todd Neilson, Craig Barbarosh, Thomas Saunders V, Eric Bonnett, Clyde Hamstreet, Hamstreet & Associates, Mark Calvert, Matt McKinlay, and Stephen Benson; (ii) the Committees, their members and any of their respective Representatives; (iii) Tyson and any of its respective Representatives; (iv) Segale and any of its respective Representatives, and (v) the Easterday Family, and any of their respective Representatives, including, for the avoidance of doubt, Sussman Shank LLP, Tonkon Torp LLP, Jordan Ramis PC, Widner Consulting, LLC, and Lindy Widner. |
| | "Representatives" shall mean with respect to any entity, the present and former directors, officers, members, managers, employees, trustees, accountants (including independent certified public accountants), advisors, attorneys, consultants, experts or other agents of that entity, or any other professionals of that entity, in each case in their capacity as such. |
| ***Release of Claims Against the Easterday Family*** | Easterday Family, all related family members, entities in which the Easterday Family or their related family members own an interest (other than Weyns Farms and its related entities), and their affiliates, agents, professionals, officers and directors and Representatives shall be released of all claims from the Farms Estate, the Ranches Estate, and each creditor of each estate to the extent allowed by law; *provided*, *however*, to the extent any member of the Easterday Family or any such party affiliated with the Easterday |

DOCS_SF:106940.23

| Global Settlement Term Sheet | |
|---|---|
| **Term** | **Description** |
| | Family does not provide a mutual release of claims to the Debtors and Ranches Committee, Farms Committee, Tyson, and Segale (the "Debtor Exculpated Parties"), and such Easterday Family member or affiliate prosecutes a proof of claim against the Debtors or otherwise asserts claims against any of the Debtor Exculpated Parties relating in any way to the Debtors or their properties or business, the Debtors and the Debtor Exculpated Parties may assert against that party any claims that otherwise would have been released hereunder. Specific release of those parties with direct contractual agreements with the Easterday Family et al. in connection with Debtors will need to be provided if they are not paid in full. For the avoidance of doubt, specific releases will include (a) a direct release of any and all Tyson and Segale claims, and (b) release of any and all claims by parties in the attached Exhibit A ("Releases"). Further, notwithstanding the proviso above, it shall be a condition precedent to the Effective Date of the Plan that Jody Easterday and each of Cody and Debby Easterday's children (in addition to the Parties hereto) execute such mutual releases with the Debtors and Debtor Exculpated Parties. |
| | Notwithstanding the foregoing, Tyson and Segale are not required to release their direct claims against Cody Easterday, including, to the extent applicable, community property assets, nor is Cody Easterday releasing any claims, defenses, or counterclaims against them. Moreover, and for the avoidance of doubt, any tax liability arising from the sale of the FRI Sale Properties shall be borne by the Easterday Family. |
| | Upon the Effective Date of the Plan, the pending litigation against the Easterday Family and related family members and entities in which they own an interest will be dismissed with prejudice, including but not limited to the Allocation Complaint Adversary Proceedings [Adv. Pro No. 21-80050], and the 3E Adversary Proceedings [Adv. Pro No. 21-80057]. |
| | The Releases shall be conditioned upon each Easterday Family member making a certified asset disclosure under penalty of perjury, which shall be provided upon court approval of the Term Sheet and updated as of the Effective Date of the Plan. In the event there is a material omission, the Releases shall be null and void with respect to the offending Easterday Family member. Further, the Releases will not release any restitution claims relating to any assets or properties acquired or obtained by Cody Easterday after the Effective Date of the Plan, including, if applicable, community property assets. |
| ***CHS Settlement*** | Upon entry of the Term Sheet Order, Easterday Family shall withdraw their objections to the CHS Settlement and permit the entry of an order approving the settlement. |
| ***Washington Trust Settlement*** | Upon entry of the Term Sheet Order, the Debtors shall amend their settlement with Washington Trust to eliminate any deficiency claims and provide full releases, including the Easterday Family and its Representatives.<br><br>On condition of the foregoing, Easterday Family agrees to withdraw any objection to the Washington Trust Settlement and permit the entry of an order approving the settlement, in form and substance reasonably acceptable to the Easterday Family, which shall provide for the immediate payoff of Washington Trust and consent to the release of such funds from the Escrow Account. |

DOCS_SF:106940.23

| Global Settlement Term Sheet | |
|---|---|
| **Term** | **Description** |
| *TRO Resolution* | Upon entry of the Term Sheet Order, the Debtors and the Easterday Family shall file an agreed upon stipulated order in the TRO adversary proceeding in form and substance acceptable to the Easterday Family ("Abeyance and Suspense Order") instituting an immediate abeyance and suspense of the effect of (1) Amendment No. 2 to the Farms partnership agreement, which shall also have the effect of recognizing R. Todd Neilson, Craig Barbarosh, and Thomas Saunders V as the directors of Farms and holding in abeyance and suspense the designation of Eric Bonnett as Manager, and Clyde Hamstreet, Hamstreet & Associates as CEO of Farms during the Abeyance and Suspense Period; and (2) the Unanimous Consent of Shareholders of Ranches dated March 12, 2022, which shall have the effect of recognizing R. Todd Neilson, Craig Barbarosh, and Thomas Saunders V as the directors of Ranches and holding in abeyance and suspense the designation of Mark Calvert, Matt McKinlay, and Stephen Benson as the directors of Ranches during the Abeyance and Suspense Period.  For the avoidance of doubt, the Abeyance and Suspense Order shall (1) confirm that R. Todd Neilson, Craig Barbarosh, and Thomas Saunders V are the sole acting directors of Farms and Ranches during the Abeyance and Suspense Period with the sole authority to act on behalf of the Debtors, subject to any limitations contained in paragraph 1(a) of the *Scheduling and Abatement Order* [Adv. Pro. 22-8808], as may be amended, and (2) deem the Replacement Directors and Officers (defined below) ***not*** to be directors or officers of the Debtors under Washington law, for any purpose, during the Abeyance and Suspense Period (defined below).

The agreed form of the Abeyance and Suspense Order is attached hereto as Exhibit D.

Eric Bonnett as Manager, and Clyde Hamstreet, Hamstreet & Associates as CEO of Farms, and Mark Calvert, Matt McKinlay, and Stephen Benson shall be referred to collectively as the "Replacement Directors and Officers."

Upon the Effective Date of the Plan, the TRO adversary proceeding shall be dismissed.  The period of time from the entry of the Abeyance and Suspense Order through the Effective Date of the Plan or as terminated per the provisions set forth below, shall be referred to as the "Abeyance and Suspense Period."

If at any time during the Abeyance and Suspense Period, the Easterday Family believes that the Debtors are not proceeding consistent with the terms and intent of this Term Sheet, the agreed consensual Plan and Disclosure Statement, or are otherwise not acting in good faith, the Easterday Family shall give the Debtors notice, which notice shall include a description of the issues, and seven (7) calendar days to cure, during which time the Easterday Family shall meet and confer with the Debtors and attempt in good faith to resolve such disagreement.  In the event the Easterday Family and Debtors are unable to resolve their dispute, then in accordance with the terms of the Abeyance and Suspense Order, the Abeyance and Suspense Period shall automatically terminate and all Parties and actions shall be restored to the status quo ante immediately prior to the entry of the Abeyance and Suspense Order; and the Replacement Directors and Officers shall automatically, without further action by the Easterday Family, be reinstated in accordance with Amendment No. 2 to the Farms partnership agreement and the Unanimous Consent of Shareholders of Ranches dated March 12, 2022, which will automatically be reinstated; *provided that* the Debtors shall not take any action during the Abeyance and Suspense Period that would impact reimposition of the status quo including but not limited to seeking the prior enjoinment of such actions; *provided further for the avoidance of doubt,* in the event the Abeyance and Suspense Order terminates prior to the Effective Date of the Plan,  Adv. Pro. No. 22-80008 shall automatically be reactivated and all prior orders and rulings reinstituted with the court |

| Global Settlement Term Sheet | |
|---|---|
| **Term** | **Description** |
| | to reset the preliminary injunction hearing for a date approximately 3 weeks after termination of the Abeyance and Suspense Period or as otherwise agreed by the Parties or ordered by the court. No discovery or other activity related to Adv. Pro. No. 22-80008 shall occur during the Abeyance and Suspense Period. |
| *Fee Examiner Motion* | Upon entry of the Term Sheet Order, Debby Easterday shall withdraw her *Motion for Appointment of Fee Examiner* [Docket Nos. 1481 and 1482] without prejudice. |
| *Fee Waiver* | No Party, including the Easterday Family and any of its affiliates and family members, shall oppose or otherwise object to the fees and expenses of (i) the estates' professionals (*i.e.*, counsel and financial advisors to the Debtors or Committees, as applicable), (ii) the Co-Chief Restructuring Officers and Paladin Management Group (including any indemnity claims), and (iii) the Replacement Directors and Officers; *provided, however,* the allowed fees and expenses of the Replacement Directors and Officers shall be $50,000 ($10,000 each to the five Replacement Directors and Officers), *provided further, however,* in the event the Abeyance and Suspense Period expires or is terminated prior to the Effective Date of the Plan, the Replacement Directors shall be entitled to additional compensation. |
| *Statements Concerning Paladin Management Group* | The confirmation order shall be in form and substance reasonably acceptable to the Parties ("Confirmation Order") and shall provide that the pleadings filed by the Easterday Family and Lindy Widner in the TRO adversary proceeding and the statements of Karen Easterday in her status conference statements [Docket No. 1472 and 1473] and disclosure statement objections [1470] are deemed withdrawn with prejudice once the Confirmation Order is "Final". "Final" means that the Confirmation Order has been entered on the docket by the clerk of the bankruptcy court and has not been appealed, reversed, stayed, modified, or amended, and as to which the time for filing a notice of appeal, or petition for certiorari or request for certiorari, or request for rehearing, shall have expired and the Confirmation Order is no longer subject to appeal, remand, retrial, modification, or further proceedings of any kind or nature.

The Disclosure Statement shall contain an acknowledgement of Paladin Management Group's significant contributions to these Chapter 11 Cases and the global settlement contained therein. |
| *Effective Date* | The "Effective Date" of the settlement contained herein and Releases shall be the effective date of the Plan; *provided, however,* the Debtors shall take any and all action necessary to reimpose the stay as described in the Cooperation Agreement in the event any party providing releases under this Settlement Agreement seeks to pursue the Easterday Family. |
| *Easterday Family Plan Support* | Neither the Easterday Family nor any of their affiliates or family members (other than Weyns Farms and its related entities) shall oppose or otherwise object to the Plan, provided it conforms to the terms of this Term Sheet.

The Plan shall conform to the terms of and shall be consistent in all respects with the terms contained in this Term Sheet. For the avoidance of doubt, the Second Amended Plan [Docket No. 1383] shall be materially altered to incorporate the terms of this Term Sheet and the global settlement set forth herein.

Additionally, the Debtors shall include in the Disclosure Statement (as an exhibit) the Easterday Family Contributions Memo attached hereto as Exhibit B by stating: "Attached |

| Global Settlement Term Sheet | |
|---|---|
| **Term** | **Description** |
| | hereto as Exhibit _ is a statement prepared by the Easterday Family describing some of their contributions to these cases. **EXHIBIT _ WAS PREPARED BY THE EASTERDAY FAMILY. THE DEBTORS ARE NOT RESPONSIBLE FOR, NOR DO THE DEBTORS TAKE ANY POSITION WITH RESPECT TO, THE STATEMENTS MADE BY THE EASTERDAY FAMILY IN EXHIBIT _.** The Debtors shall include in the Disclosure Statement (as an exhibit) the Description of Potential Claims Against the Easterday Family attached hereto as Exhibit C. The Parties shall not make any contrary statements in these chapter 11 cases regarding the Easterday Family's contributions, the memo, or potential claims against the Easterdays without the consent of the Easterday Family. |
| ***Non-Easterday Family Plan Support*** | The Farms Committee and Ranches Committee shall include letters in support of the Plan in the solicitation materials and shall use their best efforts to take all actions necessary and appropriate to confirm the Plan.<br><br>Tyson and Segale shall vote in favor of the Plan, provided it conforms to the terms of the Term Sheet. |
| ***Plan Treatment*** | The Second Amended Plan [Docket No. 1383] shall be modified to incorporate the terms of the Term Sheet. The waterfall under the Plan will incorporate the settlement among the Ranches Committee, Segale, and Tyson as set forth in the Second Amended Plan (except as otherwise agreed to among the Ranches Committee, Segale, and Tyson).<br><br>For the avoidance of doubt, Segale shall have an allowed Class 8 Claim in the amount of $7,830,641.27 and Tyson shall have an allowed Class 7 Claim in the amount of $261,316,000.00.<br><br>The Plan shall provide for payment in full of Allowed Class 5 Claims (Farms General Unsecured Claims) (excluding postpetition interest); *provided*, *however*, it shall be a condition precedent to the Effective Date that the aggregate Allowed Class 5 Claims shall not exceed $18.5 million, which condition may be waived with the unanimous consent of Tyson, Segale, and the Ranches Committee; *provided further* that such condition must be satisfied or waived by June 30, 2022.<br><br>Distributions to holders of Allowed Class 5 Claims shall be paid on the Effective Date of the Plan. As a result, holders of Allowed Class 5 Claims shall not receive a beneficial interest in the Liquidation Trust or any oversight authority.<br><br>The Effective Date of the Plan shall be no later than July 31, 2022. |
| ***Standstill*** | Upon ***execution*** of this Term Sheet, the Debtors and the Easterday Family shall file an agreed upon stipulated order in the main chapter 11 case and each adversary proceeding that provides that no Party or Representatives shall take any actions directly or indirectly adverse to another Party or Representative from now through the earlier of the Effective Date of the Plan or the Abeyance and Suspense Period is terminated (the "Standstill Period") in the main cases or in any pending or threatened adversary proceedings or contested matters, including the filing of any new proceedings or issuance of any document requests or Rule 2004 motions to any other Party (including any entity affiliated with the Easterdays); *provided that*, the Parties may continue their efforts to file and prosecute a consensual plan of liquidation in accordance with the terms hereof. For the avoidance of |

8

| Global Settlement Term Sheet | |
|---|---|
| **Term** | **Description** |
| | doubt, all activity in all pending adversary proceedings or contested matters, other than efforts to settle or resolve any pending adversary proceeding or contested matter, shall immediately cease and be held in abeyance and any and all pending deadlines and dates in any adversary proceeding or contested matter are tolled, including, but not limited to, activities or discovery involving third parties, pending meet-and-confer conferences, depositions, discovery deadlines, and trial and related pre-trial dates and deadlines.<br><br>The agreed form of the standstill orders for the main chapter 11 case, Allocation Complaint Adversary Proceeding [Adv. Pro No. 21-80050], and the 3E Adversary Proceeding [Adv. Pro No. 21-80057], are attached hereto as <u>Exhibits E-1, E-2, and E-3</u>, respectively. |
| *Jurisdiction* | The Bankruptcy Court shall have exclusive jurisdiction to resolve any disputes arising from or related to this Term Sheet. |
| *Governing Law* | Washington law will govern except to the extent the Bankruptcy Code is applicable. |

DOCS_SF:106940.23

**EASTERDAY RANCHES, INC.**

By: /s/ Thomas A. Buford
    Armand J. Kornfeld (WSBA #17214)
    jkornfeld@bskd.com
    Thomas A. Buford (WSBA #52969)
    tbuford@bskd.com
    Richard B. Keeton (WSBA #51537)
    rkeeton@bskd.com
    BUSH KORNFELD LLP
    601 Union Street, Suite 5000
    Seattle, WA 98101

    Richard M. Pachulski, *Admitted Pro Hac Vice*
    rpachulski@pszjlaw.com
    Jeffrey W. Dulberg, *Admitted Pro Hac Vice*
    jdulberg@pszjlaw.com
    Jason H. Rosell, *Admitted Pro Hac Vice*
    jrosell@pszjlaw.com
    PACHULSKI STANG ZIEHL & JONES LLP
    10100 Santa Monica Blvd., 13th Floor
    Los Angeles, CA 90067-4003

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF EASTERDAY RANCHES, INC.**

By: /s/ Christopher B. Durbin
    Christopher B. Durbin (WSBA #41159)
    cdurbin@cooley.com
    COOLEY LLP
    1700 Seventh Avenue, Suite 1900
    Seattle, WA 98101

    Cullen D. Speckhart, *Admitted Pro Hac Vice*
    *cspeckhart@cooley.com*
    Michael Klein, *Admitted Pro Hac Vice*
    *mklein@cooley.com*
    COOLEY LLP
    5 Hudson Yards
    New York, NY 10001

**EASTERDAY FARMS**

By: /s/ Thomas A. Buford
    Armand J. Kornfeld (WSBA #17214)
    jkornfeld@bskd.com
    Thomas A. Buford (WSBA #52969)
    tbuford@bskd.com
    Richard B. Keeton (WSBA #51537)
    rkeeton@bskd.com
    BUSH KORNFELD LLP
    601 Union Street, Suite 5000
    Seattle, WA 98101

    Richard M. Pachulski, *Admitted Pro Hac Vice*
    rpachulski@pszjlaw.com
    Jeffrey W. Dulberg, *Admitted Pro Hac Vice*
    jdulberg@pszjlaw.com
    Jason H. Rosell, *Admitted Pro Hac Vice*
    jrosell@pszjlaw.com
    PACHULSKI STANG ZIEHL & JONES LLP
    10100 Santa Monica Blvd., 13th Floor
    Los Angeles, CA 90067-4003

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF EASTERDAY FARMS**

By: /s/ Julian I. Gurule
    Joseph M. Welch (WSBA #56521)
    Julian I. Gurule (admitted *pro hac vice*)
    BUCHALTER
    1420 Fifth Avenue, Suite 3100
    Seattle, WA 98101

**Signatures continued on next page**

DOCS_SF:106940.23

**KAREN L. EASTERDAY, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF GALE A. EASTERDAY**

By: /s/  Timothy J. Conway
    Timothy J. Conway, WSBA 52204
    tim.conway@tonkon.com
    Ava L. Schoen, *Admitted Pro Hac Vice*
    ava.schoen@tonkon.com
    TONKON TORP LLP
    888 SW Fifth Avenue, Suite 1600
    Portland, OR 97204-2099

**EASTERDAY DAIRY, LLC**

By: /s/  Russell D. Garrett
    Russell D. Garrett (WSBA 18657)
    Russell.garrett@jordanramis.com
    Daniel L. Steinberg (WSBA 30080)
    Daniel.steinberg@jordanramis.com
    JORDAN RAMIS PC
    1499 SE Tech Center Place, #380
    Vancouver, WA 98683

**TYSON FRESH MEATS, INC.**

By: /s/  Bradley A. Cosman
    Alan D. Smith (WSBA 24964)
    ADSmith@perkinscoie.com
    Bradley A. Cosman (*pro hac vice*)
    BCosman@perkinscoie.com
    PERKINS COIE LLP
    1201 Third Avenue
    Seattle, WA 98101

**CODY EASTERDAY AND DEBBY EASTERDAY**

By: /s/  Jeffrey C. Misley
    Jeffrey C. Misley, WSBA #33397
    jmisley@sussmanshank.com
    Thomas W. Stilley, WSBA #21718
    tstilley@sussmanshank.com
    SUSSMAN SHANK LLP
    1000 SW Broadway, Suite 1400
    Portland, OR  97205-3089

**3E PROPERTIES AND EASTERDAY FARMS PRODUCE, CO.**

By: /s/  Michelle A. Green
    Michelle A. Green, WSBA 33397
    michelle@ggw-law.com
    GATENS GREEN WEIDENBACH, PLLC
    305 Aplets Way
    Cashmere, WA 98815

**SEGALE PROPERTIES LLC**

By: /s/  John R. Rizzardi
    Aditi Paranjpye (WSBA # 53001)
    aparanjpye@cairncross.com
    John R. Rizzardi (WSBA # 9388)
    jrizzardi@cairncross.com
    Jennifer K. Faubion (WSBA # 39880)
    jfaubion@cairncross.com
    CAIRNCROSS & HEMPELMANN, P.S.
    524 Second Avenue, Suite 500
    Seattle, WA 98104-2323

DOCS_SF:106940.23

# EXHIBIT A

## Required Releases

The Easterday Family, et al., requires direct releases from:

- Washington Trust Bank (both for Washington Trust Bank obligations and obligations/claims acquired from CHS, Inc., its affiliates or subsidiaries)
- CHS, Inc. (to extent not acquired by Washington Trust Bank)
- CHS Capital, LLC (to extent not acquired by Washington Trust Bank)
- Tyson Fresh Meats, Inc. and all affiliates
- DLL Finance LLC
- The McGregor Company
- John Deere Financial, f.s.b.
- Rabo AgriFinance LLC
- PHI Financial Services, Inc. / Corteva
- Weyns Farms, LLC
- Ag Direct / Farm Credit Services of America
- Brad Curtis Farms, LLC
- Sunray Farms, LLC
- JR Simplot dba Simplot Western Stockmen's
- Simplot AB Retail Inc dba Simplot Grower Solutions
- Mack Financial Services / VFS US, LLC and all affiliates or subsidiaries
- Midland States Bank through its account servicer Orion First Financial LLC
- All creditors of Easterday Farms (to the extent they are not paid in full from proceeds of the Easterday Farms estate)
- Segale Properties, LLC
- Paladin Management Group
- Peter Richter
- Scott Avila

DOCS_SF:106940.23

**EXHIBIT B**

**Easterday Family Contributions Memo**

DOCS_SF:106940.23

**THIS EXHIBIT (THE "<u>EASTERDAY FAMILY STATEMENT</u>") WAS PREPARED SOLELY BY THE EASTERDAY FAMILY. THE DEBTORS DO NOT AGREE WITH CERTAIN OF THE STATEMENTS CONTAINED HEREIN. THE INCLUSION OF THE EASTERDAY FAMILY STATEMENT IN THESE SOLICITATION MATERIALS MAY NOT BE DEEMED AN ADMISSION BY THE DEBTORS OR ANY OTHER PARTY IN INTEREST OF SUCH STATEMENT. FURTHER, THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF WASHINGTON HAS MADE NO FINDINGS OF FACT WITH RESPECT TO SUCH STATEMENT.**

## Easterday Family Contributions

The Easterday family contributed greatly to the value generated for the benefit of creditors of both Easterday Farms ("Farms") and Easterday Ranches, Inc. ("Ranches") (together the "Debtors"). This memo describes some of the key events, decisions, and contributions made by Cody Easterday, Karen Easterday, and Debby Easterday (collectively, the "Easterday Family"), and their family members for the benefit of the Farms and Ranches Estates, and their respective creditors, both pre-petition and during the course of the bankruptcy cases in six main categories: (1) employee retention, (2) marketing the Benton County properties; (3) crops and crop inventories; (4) marketing the equipment; (5) surrender of collateral to lenders, and (6) the CHS Patron Equities.

**Prepetition Activities**

On November 30, 2020, Cody Easterday ("Cody") self-reported to Tyson management. After self-reporting to Tyson, Cody then told his wife Debby Easterday ("Debby"). Debby supported Cody's decision to take responsibility for his actions and work to find a solution to repay Tyson. Cody and the Ranches staff fully cooperated with Tyson's investigation, records audit, inventory verifications, cattle management, and shipping schedules from the time of Cody's self-reporting until the last cattle were shipped.

On December 14, 2020, Cody engaged Widner Consulting, LLC ("Widner") to assist him. Cody and Debby asked Widner to assist them in navigating the situation with the goal of creating the best outcome possible for all creditors.

Cody, Debby, and Widner quickly determined that the Benton County properties would need to be sold. Widner immediately identified Skye Root as the broker best suited to market the properties at the highest value because of his connections to institutional real estate investors who Cody and Widner anticipated would be the buyers most likely to pay the highest value for the properties. By December 21, 2020, a listing agreement was executed between Root Realty and Farms, Ranches, and Cody to sell the Benton County properties. Favorable listing terms were negotiated with the broker's commission capped well below the 3-5% standard in the market. This saved over $4 million, which was value that ultimately flowed directly to creditors.

Cody and Widner assembled nearly all the property data necessary to complete the buyer's data room to facilitate a quick and maximum-value sale of the Benton County properties. They assisted Skye Root / Root Ag Advisory in the development of the property listing brochures, in assembling and organizing information, and in understanding the properties so that they could be marketed effectively and for the highest value. This took over 200 hours of total time by the Easterday Family and its advisors and added significant value. This could not have been hired out to third parties because it required: (1) knowledge of the irrigation system (both engineering and operation), key infrastructure (pumping stations, booster stations, panels, etc.), and crop rotation and yield history, (2) familiarity with and access to legal

documents associated with the property, and (3) an understanding of the irrigation equipment inventory, historical water usage, and operating cost history.

All of this work occurred prior to the petition dates and substantially benefitted Farms, Ranches, and their creditors.

**Postpetition Activities**

(1) <u>Employee Retention.</u>

By the end of December 2020, it was clear that Ranches would cease operations. By January 2021, it became clear that the issues at Ranches were going to spill over and create an uncertain future for Farms' employees. As of the petition dates, Farms had 124 employees and Ranches had 76 employees. A significant portion of these employees worked for the Easterday Family for over 15 years. The Debtors benefitted from a very enviable and unusual position for companies in bankruptcy – a consistent and reliable workforce.

The Easterday Family asked the employees of Ranches and Farms to stay on to wind down operations and create as much value for the Estates as possible. All employees that the Easterday Family asked to stay on did. These employees stayed not knowing their future and with significant pressure from other farm employers seeking to hire them. There is presently a shortage of skilled farm and agricultural labor in Eastern Washington and every single key employee of Farms and Ranches could have immediately found a job and received a pay increase as a result. Cody, Debby, and Karen Easterday ("Karen") said, "This was a huge ask of some of the greatest people on earth. To continue with the only certainty being that they would lose their job at the end shows their dedication to the family." None of these employees would have stayed on had the family left. They also worked knowing they would not get their typical end of year bonus. The Easterday Family's commitment to creating the best possible outcome for creditors of the Estates created the same commitment in the employees.

At Paladin's direction, Cody handled all sensitive dealings with employee matters including meeting personally with employees who were being terminated. On his own initiative, Cody assisted employees in finding new jobs. Karen and Debby worked to provide the emotional support to employees as they stayed and facilitated the orderly liquidation of assets for maximum value. The value resulting from employee retention manifested itself in a myriad of ways, but can be largely bucketed into two primary categories:

a) *Feed, care, security, and delivery of cattle to Tyson*: Cody asked Ranches employees to stay on to feed, care, and deliver cattle according to Tyson's instructions. Most of these employees wanted to leave given the future was clear that cattle feeding operations would end. They did not leave because Cody asked them to stay for the benefit of Tyson and Ranches. This allowed Tyson to leave approximately 70,000 head of cattle valued at over $100 million in the Ranches facilities and ship them to the Tyson Wallula plant according to schedule.

Leaving cattle in the Ranches facilities is unheard of in a situation like this, where normal practice would be to get cattle out of the feedyards and into alternative facilities. In this region, it was not economic for Tyson to move cattle out of the Ranches facilities due to a lack of bunk space in the region– a point that is clear given Tyson did not move cattle out of the Ranches facilities when asked to do so in January and February.

b) *Care, Maintenance, Security, and Orderly Liquidation of All Assets Other than Cattle Delivered to Tyson*: Retention of trusted, skilled, and reliable employees to maintain, secure, and handle the logistics of an orderly sale of all other assets of the Debtors (excluding cattle) was critical to maximizing recoveries for the Estates. There were no theft or security issues. Employees worked diligently to make sure all equipment and crop inventories and real estate assets were secured and preserved to allow for the highest possible sales value. Sales of these assets generated over $250 million in gross sale proceeds on a combined basis for the Debtors. Had the existing staff not stayed on, this would not have been possible.

Irrigation systems, controlled atmosphere storage facilities, feedlot improvements, and equipment could easily have been damaged without the experienced staff to ensure the security, maintenance, repairs, and care of these assets. Likewise, perishable crop commodities require experienced staff to maintain marketable quality. Employees were critical to preserving, generating, and returning value to creditors. Given a labor shortage and the fact the Debtors were in bankruptcy, they could not easily replace key employees and a complete turnover of staff would have been devastating.

    i. Administrative employees allowed the Debtors' professionals to transition seamlessly into management of all books and records. These employees facilitated continuity of operations and an effective wind-down, allowing for as normal of business functions as possible under the circumstances.

    ii. Farms' employees tilled, planted, irrigated, and harvested all wheat. They prepared, cleaned, and organized equipment until the end of their employment to ensure it brought maximum value.

    iii. Farms' transportation employees delivered and transported crops as they were marketed and cattle as per Tyson's specifications.

    iv. Farms' agronomy staff oversaw the care and management of the potatoes and onions in storage. Both commodities are stored in climate-controlled facilities as they are a perishable product. Any kind of neglect results in catastrophic inventory losses whereby the crops become unmarketable. The staff, under Cody's direction, ensured this did not occur.

    v. Farms' staff cleaned and prepared the properties sold in Benton County for the transition to a new owner even though these employees were losing their jobs. When the properties were turned over to the ultimate buyer, Farmland Reserve, Inc. ("Farmland"), they showed pride of ownership all the way down to shop floors and granaries fully cleaned out.

(2) <u>Marketing Real Estate</u>

The Easterday Family was significantly involved in the efforts to market the Benton County real estate and, as noted under the Prepetition Activities, had commenced the process well in advance of Paladin and Debtors' counsel being engaged and in advance of the petition dates. The Easterday Family was critical to maximizing the value of the property and allowing for an orderly and efficient sales process. Their cooperation and contributions resulted in the property selling above appraised value, as opposed to what would normally be expected of a complex farm property sold under bankruptcy where properties typically sell at a discount to market or appraised value.

a) The Debtors could not have sold the properties without the cooperation of the Easterday Family. The individuals of the Easterday Family were in title to approximately 60% of the total acres sold. The acreage owned by the Debtors were interspersed with acreage owned by the individuals. Irrigation and water rights were also entangled as between rights owned by the individuals and rights owned by one or the other of the Debtors. In order to maximize the value for creditors, the Easterday Family proposed to sell the property owned by the individuals along with the property owned by the Debtors so that the properties could all be sold at the same time. That would allow a sale to result in the highest and best value being obtained for all of the property and provide a maximum return to creditors. The Easterday Family also repeatedly stated their intent to contribute the proceeds from the sale of the individually owned property to pay creditors to further maximize the benefit to creditors.

    i. The buyer's counsel's statements in the sale confirmation hearing reaffirmed exactly how important this cooperation was to Farmland's ability to purchase the property for full value.

    ii. The sale would not have closed had the Easterday Family not personally signed the deeds on property titled in their names. Farmland made it clear at the closing that, notwithstanding the Cooperation Agreement provision that the Debtors had the power of attorney to sign on behalf of the Easterday Family, Farmland insisted on requiring the Easterdays to each personally sign the deeds. Despite the fact the Debtors, at that point, had started to allude to potential disputes as to ownership, the Easterdays signed the deeds allowing the sale to close thereby allowing the sale to be completed.

    iii. Although there was initially no dispute as to property ownership, if the Debtors had commenced litigation over ownership prior to a sale, such litigation would likely have resulted in no sale occurring or a sale for a significantly reduced value. Debtors would have had to sell the parcels titled in their name at a significant discount compared to the value obtained through the joint sale process. In addition, litigation over ownership of the remaining parcels would have taken years and cost hundreds of thousands of dollars, if not millions. This process would have destroyed value to the creditors by reducing the number of interested buyers and incurring significant additional expenses (litigation, ownership, interest, and other carrying costs).

b) Cody managed, directed, and oversaw the cleaning and organizing of the properties to allow for maximum value and eliminate items potential buyers could point to as a reason to deduct value.

c) Cody and Widner advised developing a marketing plan to encourage a competitive bidding process, including Debtors completing all buyer diligence items and allowing for the properties to be sold individually or in the aggregate. Cody and Widner raised and explained elements that would lead to a competitive bidding process for this type of property based on their combined experience and knowledge of how large, complex, agricultural properties transact, with over 45 years combined experience in farm real estate acquisitions and sales. They knew institutional buyers would be the most likely highest bidders for properties of this type and size, and suggested Debtors consider completing all property due diligence that would be standard for all institutional buyers (surveys, Phase I, soil tests, water test, pump tests), which were estimated to cost approximately $500,000 at the time. Few institutional buyers would be willing to lay out $500,000 if they were not sure they would end up with the properties. Cody and Widner advised Debtors that if the diligence was left to buyers to

complete (as would normally be the case), the cost of diligence would result in reduced buyers and a non-competitive process under a section 363 sale.

d) Upon Debtors employment of Root Realty and formal listing, Cody and Widner answered virtually all buyer and broker questions about the properties and continued to support the diligence, sales and marketing efforts. These activities required significant additional time, commitment, and efforts of the Easterday Family, their immediate family members, and representatives.

   i. Cody assisted in the critically important and complicated Phase I environmental inspection. (Two full days of on-site inspections, plus documents and completion of affidavits.)
   ii. Cody and Debby, their immediate family members, and advisors facilitated and accommodated physical property inspections by potential buyers. Each of the multiple potential bidders toured the properties with various Easterday family members. Serious potential bidders conducted numerous site visits and inspections in the course of their diligence efforts and reached out to the Easterday Family, their immediate family members, or their representatives on numerous occasions to get questions answered about the irrigation system and operations.
   iii. The cooperation by the Easterday Family was critical to selling the properties for the most value and required a detailed, practical, and comprehensive understanding of the properties which only the Easterday Family had.

e) Cody and Widner advised the Debtors and assisted in carrying out the "Wheat Crop Plan," which allowed the properties to be cropped while simultaneously marketed for a timely sale in order to maximize value. All parties agreed it was important the properties be cropped to bring the highest value. Cody and Widner communicated to Debtors the numerous pitfalls of a traditional potato/onion rotation or leasing the properties out to other parties for a similar rotation, which could have resulted in the properties selling for a reduced value, including, but not limited to, (1) a need to occupy the storages through August 2022 (which would not be viewed favorably by potential buyers), (2) risk to the highly complex and expensive irrigation system essential to the value of the farms, and (3) execution risk if the Debtors had attempted to take on the complex task of farming vegetables while operating under the constraints of a bankruptcy (vegetable crops have high input costs and are vulnerable to failure if timely decisions are not made throughout the growing season). Wheat is a crop that is aesthetically pleasing in May and June (the period when most buyers were inspecting the property) and demands significantly less labor, water, and equipment than a traditional crop rotation. Wheat is harvested in July and August and had no storage needs or requirements allowing for a timely transition and turnover to any potential buyer.

f) Farmland, the ultimate buyer of the property, was familiar with the properties and the Easterday Family. The Easterday Family knew them to be a highly motivated buyer. In March of 2021, after initially being unable to successfully engage with the Debtors, Farmland reached out to the Easterday Family's counsel for assistance in making a bid. Farmland's familiarity with the Easterday Family and the respective counsels' communications and familiarity with each other aided in the process of Farmland becoming the initial stalking horse bidder.

(3) <u>Crops and Crop Inventory</u>

As of the petition dates, Farms had over $27.5 million in crop inventories. Crop inventories included potato and onion crops in storage valued at approximately $17 million and feed inventories valued at approximately $10.5 million. Various members of the Easterday family, under Cody's leadership, were involved throughout the bankruptcy in managing and marketing these inventories on behalf of Farms and for the benefit of all creditors and parties in interest.

a) Potatoes and onions are a perishable product and require significant expertise and attention. Cody had the necessary expertise to manage the storage, quality control, and logistics of getting these products to market in an orderly fashion. Had he not continued in this role, we estimate that the value recovered by Farms would have been reduced by at least 40%.

b) A portion of the stored potatoes were under contract to Lamb Weston. The Debtors initially considered rejecting this contract and selling the potatoes on the open market. Cody advised Farms to deliver under the Lamb Weston contract which had tremendous value to the Farms Estate. Had the contract been rejected and potatoes sold on the open market, they would have sold for no more than 50% of value (the open market price at the time for process grade potatoes was approximately $80-$85 per ton). This preserved millions of dollars in value for creditors.

c) Marketing of feed crops required significant logistics, timing of marketing decisions, and balancing with the feed needs of Ranches and Tyson. Cody assisted in all aspects of this process and brought all the various feed crop buyers to the table. This contributed at least 20% of additional value to Farms for feed crops.

d) Marketing of all crop inventories also required consideration of crop storage. Cody advised Debtors during the initial months of the bankruptcy as to which leases were critical for orderly liquidation of crop inventories because they had crops stored on them and he helped to facilitate any renegotiations required.

e) The Debtors ultimately agreed with the recommendation to plant wheat on the Benton County river farms. There were many delays in getting to this decision that complicated the execution of tillage, planting, and establishing a viable wheat crop.

   i. Once the decision was made, wheat planting activities ran 24 hours a day due to the delays. Cody led these efforts by managing crews, labor, and logistics. Cody used his knowledge and experience to advise the Debtors under very difficult circumstances on variety selection and crop marketing. He and his immediate family members managed all of the seed procurement, cultivation, fertility, pest management, and irrigation practices. His involvement allowed for the successful establishment and production of a saleable crop under extremely difficult circumstances – both caused by the delays of the bankruptcy as well as weather-related challenges, with several weeks in June over 100°F and several days posting record heat over 110°F.

   ii. Debby also was instrumental in supporting employees and Cody as they set about successfully executing the Wheat Crop Plan. She ran parts and worked full-time to support the efforts of the Debtors. During wheat harvest one of the combines broke

down.  Due to supply chain issues, it was going to take 6 weeks for replacement parts to be delivered to repair the combine, which would have pushed harvest past the agreed upon date with Farmland under the Asset Purchase Agreement.  Cody and his sons worked to locate parts and found them in Nebraska in two different stores located approximately 100 miles apart.  Debby left one afternoon and drove overnight to get to Nebraska by the next morning, picked up parts and drove all day and through the night to get back to Washington with the necessary parts so the combine could be fixed.  Had the Easterday Family not made efforts like this throughout the crop season, harvest would not have been completed on time and Farms and Ranches would have breached their agreement with Farmland or forfeited a significant portion of the 2021 wheat crop that was harvested from the farm.

(4)  <u>Marketing Equipment.</u>
The Easterday Family was critical to the marketing of the rolling stock and personal property equipment owned by the Debtors and was significantly involved in the coordination and management of the logistics of marketing the equipment.

   a)  Cody and Widner spent over 200 hours reviewing and correcting the equipment lists through various iterations from March through November 2021.

   b)  Cody worked with Farms' employees to ensure all equipment was cleaned, stored, and kept secure.  Typically, equipment theft is a major issue in a farm bankruptcy.  The fact that all equipment was safely kept and available for sale was critical to driving the value returned to creditors.

   c)  Farm equipment is typically sold at a discount to market when sold out of a bankruptcy.  Cody and Widner advised Debtors to consider a bulk sale and make the buyer responsible for removal and clean-up, particularly since Debtors did not have sufficient remaining staff to complete and accomplish the task.  It also eliminated downside risk and uncertainty for the Debtors as to final value.

(5)  <u>Surrender of Collateral</u>
The Easterday Family, their family members, and representatives were instrumental in surrendering equipment to secured lenders that was subject to relief from stay.  Surrender of equipment occurred from July 2021 through March of 2022, when the Debtors did not have labor sufficient to facilitate all the logistics of the turnover.  Ranches had few remaining employees and all of Farms' employees were engaged in the wheat harvest in July of 2021.  The next surrender of equipment occurred at the end of September 2021, with the remainder of the equipment surrender occurring from October 2021 through March 2022 when neither Farms nor Ranches had any remaining employees to complete the asset surrenders.  The costs of these activities were not billed to either the secured creditors or the Debtors and is value directly contributed for the benefit of all creditors by reducing the deficiency claims of lenders and reducing administrative expenses of the Estates.

All equipment was disassembled, drained of fluids, cleaned and washed, and loaded onto trucks per the specification of each secured creditor involved.  The return of equipment was labor and management intensive given the amount of equipment involved and required significant coordination with creditors and numerous different contracted transportation/trucking companies to get the right

equipment to the right final destinations. In July it required 16 straight days (no days off) with 4 FTEs and one supervisor working at least 14-hour days.

(6) <u>CHS Patron Equity</u>

As of the petition dates, there were approximately $7.7 million of Patron Equities with CHS Inc. The Easterday Family identified the existence of the Patron Equities and communicated their willingness to have them liquidated so the proceeds could go to creditors. Those Equities would otherwise have been attributable to and payable to each of respective Easterday owners individually.

CHS Inc. is a cooperative and pays out a certain percentage of accrued patronage each year and retains the balance as equities to capitalize and preserve the net worth of the cooperative. Patron Equities are not generally considered liquid and the ability to redeem them is governed by the bylaws of CHS Inc. and its Policy for the Redemption of CHS Inc. Equities Effective as of September 1, 2016 ("Redemption Policy"). Pursuant to the Redemption Policy, Cody, Debby, Karen, and the Estate of Gale Easterday ("Gale") are eligible to apply to redeem their share of Patron Equities upon attaining the minimum age of 70 years old. Gale and Karen had already applied to redeem and receive their distribution of accrued Patron Equities after they turned 70. They continued to have to apply annually for the release of Patron Equities accrued in the most recent year but did not have a material Patron Equities balance. However, Patron Equities attributable to Cody and Debby made up the majority of the $7.7 million balance. They each could have applied in the future to redeem their share of equity upon reaching the age of 70.

Cody and Widner notified the Debtors and the two committees for the unsecured creditors of each Farms and Ranches of the accounts and communicated the Easterday Family's willingness to contribute Patron Equities attributable to each of them individually to be paid to the Debtors for the benefit of creditors instead of keeping the accounts for themselves for their own retirement.

The Debtors have now reached an agreement with CHS, Inc. to receive $7.4 million which will cancel all Patron Equities to the individuals and distribute those funds to the creditors.

# EXHIBIT C

**Description of Potential Claims Against the Easterday Family**

DOCS_SF:106940.23

**<u>Description of Potential Claims Against the Easterday Family</u>[1]**

**PURSUANT TO THE TERMS OF THE PLAN, ON THE EFFECTIVE DATE, THE DEBTORS WILL RELEASE THE EASTERDAY FAMILY RELEASED PARTIES FROM ANY AND ALL CAUSES OF ACTION (OTHER THAN SUCH CAUSES OF ACTION ARISING FROM OR RELATING TO THE EASTERDAY FAMILY SETTLEMENT AS SET FORTH IN THE PLAN), INCLUDING BUT NOT LIMITED TO, THE FOLLOWING**:

- claims relating to or arising from any alleged breach of fiduciary duties of any member the Easterday Family in such family member's individual capacity as a director and/or officer of Easterday Ranches;

- claims relating to or asserted in the Allocation Complaint;

- claims relating to or asserted in the 3E Properties Complaint;

- claims relating to substantive consolidation of the Estates of the Debtors or substantive consolidation of any affiliate of the Debtors with the Estates of one or both Debtors;

- claims relating to any alleged activity of any Easterday Released Party in any fraud committed by Cody Easterday; and

- claims relating to the Disputed Corporate Actions;

Throughout these Chapter 11 Cases, the Debtors investigated and analyzed various potential claims against the Easterday Family Released Parties, including, but not limited to (i) the claims in the Allocation Complaint, (ii) the claims in the 3E Properties Complaint, (iii) potential breach of fiduciary duty claims against the Easterday Family as former directors and officers of Ranches, and (iv) claims relating to the potential substantive consolidation of the Estates and/or non-debtor affiliates of the Debtors, including the Easterday Family. Below is a general description of the

---

[1] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Plan.

potential claims against the Easterday Family Released Parties that are being released pursuant to the terms of the Plan.

### A. The Allocation Dispute

In connection with the Sale Process, the Debtors and the Easterday Family entered into a Cooperation Agreement to provide for the sale of the Sale Properties with a reservation of rights of the Easterday Family and the Debtors concerning the ultimate allocation of the Net Sale Proceeds. The cooperation of the Easterday Family was necessary at the time because the Easterday Family asserted an ownership interest in certain of the Sale Properties on the basis that certain of the Sale Properties were titled either in their individual names or in their individual names doing business as Farms and cooperation would result in the highest and best value being obtained for all of the Sale Properties if sold at the same time. There was no known dispute as to the ownership interests in the Sale Properties at the inception of the case.

Subsequent to the entry of the Cooperation Agreement, and as a result of the Debtors' continuing due diligence, the Debtors asserted that *all* of the Sale Properties were owned by the Debtors, primarily on the legal theory that (i) the Farms Partnership Agreement contemplated that the Easterday Family would hold *partnership property* in their individual names and (ii) such property was primarily used by the Debtors in support of their business operations. On September 22, 2021, the Debtors filed a *Complaint (I) to Determine Validity, Priority, or Extent of Interests in Property and (II) for Declaratory Judgment* (as may be amended, modified or supplemented, the "Ownership Complaint") against the Easterday Family (Adv. No. 21-80050), seeking a determination regarding the interests of the Estates in certain real estate and related property (collectively, the "Disputed Property") that was allegedly owned, at least in part, by individual members of the Easterday Family (the "Allocation Dispute").

The Easterday Family has vigorously disputed the allegations in the Ownership Complaint and asserts that certain of the Sale Properties are properly titled in and owned by the Easterday Family entitling them to a share of the Net Sale Proceeds (~$100 million). Additionally, the Easterday Family has asserted defenses and counterclaims

in the Allocation Dispute, including ownership interests in various water rights and improvements associated with the Sale Properties.

As part of the global settlement embodied in the Plan, the Easterday Family is relinquishing any interest in the Net Sale Proceeds, other than $6 million, which is to be returned to Karen Easterday and used for other Plan-related payments. The Debtors believe that the consensual resolution of the Allocation Dispute, as set forth in the Plan, is in the best interests of creditors, as it avoids protracted and expensive litigation, and provides for an immediate distribution to creditors.

**B.      The 3E Properties Complaint**

On December 27, 2021, Farms filed a complaint against 3E Properties, Jody Easterday, Estate of Gale A. Easterday (Deceased), Karen L. Easterday, Cody A. Easterday, and Debby Easterday (the "3E Defendants") [Adv. Proc. No. 21-80057] (the "3E Complaint"), seeking a determination of the ownership interests of Farms' estate in that certain property commonly referred to as the "Onion Shed" located in Pasco, Washington (the "Onion Shed Property"). The 3E Complaint alleges that the Onion Shed Property is owned by Farms and not by 3E Properties because it was originally purchased by Farms, titled in Farms' name, and not properly transferred to 3E Properties. As a result, the 3E Complaint asserts that the Onion Shed Property is an asset of the Farms Estate and available to Farms Creditors. The 3E Defendants have filed answers to the 3E Complaint and assert numerous defenses as well as a counterclaim for tortious interference with contract against Farms relating to the *lis pendens* that was filed by Farms against the Onion Shed Property. The 3E Defendants maintain that they are the properly titled owners of the Onion Shed Property. The Debtors have considered the defenses available to the 3E Defendants, the time and expense of pursuing the litigation, including substantial fact discovery, and the risks of litigation in light of the potential benefits of the value of the Onion Shed Property and have determined that the global resolution of the disputes with the Easterday Family

Released Parties, including the resolution of the 3E Complaint is in the best interests of the Estates and their creditors.

**C.    Breaches of Fiduciary Duty**

During these Chapter 11 Cases, the Debtors investigated and analyzed potential claims against Karen Easterday, Gale Easterday, and Debby Easterday (the "Ranches Directors") for breaches of fiduciary duty as former directors and officers of Ranches. The Debtors examined the conduct of each of the Ranches Directors in connection with the operations of Ranches and whether the Ranches Directors knew or should have known about and taken action with respect to Cody Easterday's commodity trading activities that resulted in losses of hundreds of millions of dollars – losses that were largely funded through Cody Easterday's fraudulent "forward billing" practices relating to the purchase and feeding of "non-existent" or "missing" cattle.

The Ranches Directors owed duties of due care and loyalty to Ranches under Washington law, which obligated them to monitor Ranches' financial affairs and maintain at least a rudimentary understanding of Ranches' business operations. Based on their preliminary investigation, the Debtors believe that there are viable breach of fiduciary duty claims that could be asserted against the Ranches Directors. However, the Ranches Directors are likely to vigorously oppose such claims and assert, among other things, that it would have required extraordinary diligence for them to uncover the extent of Cody Easterday's trading losses and/or his fraudulent scheme to cover and fund those losses.

The Debtors have considered these defenses, the time and expense of pursuing a full investigation of the facts and circumstances relating to such potential claims, including substantial fact discovery, and the risks of litigation in light of the potential benefits to Ranches, including the time and risks associated with the collection of a judgment. Additionally, not only is there risk of loss in connection with such litigation, but the Ranches Directors may assert claims for indemnification relating to such claims if the Debtors are not successful in prosecuting such claims. The Debtors submit the

DOCS_NY:45501.7

global resolution of the disputes with the Easterday Family Released Parties, including the release of any claims against the Ranches Directors for breach of fiduciary duty, is in the best interests of the Estates and their creditors.

### D. Substantive Consolidation

Though not a direct claim against any Easterday Family Released Party, as part of the global settlement embodied in the Plan, the Debtors are also releasing any claim that the Estates should be substantively consolidated with one another.[2]

Substantive consolidation is a remedy utilized by bankruptcy courts to combine the assets and liabilities of separate entities when the circumstances warrant treating such entities as if they were one and the same. The Ninth Circuit Court of Appeals recently summarized the concept and history of substantive consolidation:

> Orders of substantive consolidation combine the assets and liabilities of separate and distinct – but related – legal entities into a single pool and treat them as though they belong to a single entity. Substantive consolidation enables a bankruptcy court to disregard separate corporate entities . . . in order to reach assets for the satisfaction of debts of a related corporation. The consolidated assets create a single fund from which all claims against the consolidated debtors are satisfied.

*Leslie v. Mihranian (In re Mihranian)*, 937 F.3d 1214, 1216 (9th Cir. 2019) (citing *In re Bonham*, 229 F.3d 750, 764 (9th Cir. 2000).

---

[2] The Debtors are also releasing any substantive consolidation claim relating to any of the Easterday Family Released Parties, including, but not limited to, claims any entities in which the Easterday Family owns or owned an interest could be substantively consolidated with the Debtors. While the Debtors have not conducted an extensive investigation as to whether such claims may be colorable, in light of the complexities and factual intensity of any claim of substantive consolidation, the Debtors submit that the global resolution of any such claims as part of the proposed settlement with the Easterday Family is in the best interests of the Debtors' estates and their creditors.

DOCS_NY:45501.7

In the Ninth Circuit, substantive consolidation is appropriate when (i) creditors dealt with the debtor entities as a single economic unit and did not rely on their separate identities in extending credit, or (ii) the affairs of the debtors are so entangled that consolidation will benefit all creditors. *Bonham*, 229 F.3d at 766.

If the Estates were substantively consolidated, the recoveries available to Farms Creditors would be significantly reduced and expose the Easterday Family, as partners of Farms, to liability with respect to the resulting deficiency claims. Moreover, there would be no distribution to the Easterday Family to cover these deficiency claims.

The Debtors have conducted a preliminary analysis of the facts and law and believe there is a colorable claim for substantive consolidation of the Estates based on the substantial financial and operational entanglement between them. For example, both Ranches and Farms were under the control of Cody Easterday and the Ranches Directors were also the partners of Farms, and prior to the Petition Date, numerous transactions were engaged in between the Estates, other affiliates and the Easterday Family, including one entity paying the contractual obligations of another entity or being charged for goods or services that were received by another entity. The Official Committee of Unsecured Creditors of Farms and the Easterday Family resolutely dispute the validity of any claim for substantive consolidation. The Debtors believe that, in light of the fact specific nature of the substantive consolidation inquiry, the prosecution of any such substantive consolidation claims could take years and would involve significant expense and uncertainty. In light of the time, risks and costs of such litigation, the Debtors submit that the global resolution of the claims with the Easterday Family provides substantial benefits to the Estates and that the release of the substantive consolidation claims is in the best interests of the Debtors and their creditors.

**E.    Other Claims and Causes of Action Against the Easterday Family Released Parties**[3]

In addition to the above-referenced claims, the Debtors have considered other potential claims and causes of actions against the Easterday Family and the Easterday Family Released Parties, including, but not limited to, claims against the Easterday Family's business advisor and accountants.  With respect to these potential claims, the Debtors have not done a full investigation or analysis, and there may be colorable claims and causes of action that the Debtors have not considered.  The Debtors understand that the Easterday Family Released Parties, including, but not limited to, the Easterday Family's business advisor and accountants, strongly deny the suggestion that any colorable or viable claims of any nature against them exist.  In light of the substantial benefits to the Estates from the global settlement embodied in the Plan, including, but not limited to, the release of the Easterday Family's interest in the Net Sale Proceeds, the resolution of these claims on the terms set forth in the Plan is in the best interests of the Debtors, their estates, and their creditors.

---

[3]    Though not a claim against the Easterday Family Released Parties, as part of the global settlement embodied in the Plan, the Debtors will assign their claims against Canyon Farm II, LLC and its affiliates to Karen Easterday or her designee, which claims include potential fraudulent transfer claims (~$3.5 million) arising from the sale of real property prior to the Petition Dates.

# **EXHIBIT D**

## **Form of Abeyance and Suspense Order**

DOCS_SF:106940.23

ARMAND J. KORNFELD (WSBA #17214)
THOMAS A. BUFORD (WSBA #52969)
RICHARD B. KEETON (WSBA #51537)
BUSH KORNFELD LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Tel.: (206) 292-2110
Facsimile: (206) 292-2104
Emails: jkornfeld@bskd.com,
tbuford@bskd.com, and rkeeton@bskd.com

RICHARD M. PACHULSKI (CA Bar #90073)*
JEFFREY W. DULBERG (CA Bar #181200)*
JASON H. ROSELL (CA Bar #269126)*
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003
Tel: (310) 277-6910
Facsimile: (310) 201-0760
Emails: rpachulski@pszjlaw.com,
jdulberg@pszjlaw.com, and
jrosell@pszjlaw.com

*Admitted *Pro Hac Vice*

*Attorneys for the Chapter 11 Debtors and
Debtors in Possession*

HONORABLE WHITMAN L. HOLT

HEARING DATE: [April [•]], 2022
HEARING TIME: [__:__ _.m.] (PST)
RESPONSE DUE: At the Hearing
LOCATION: Telephonic

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| EASTERDAY RANCHES, INC., *et al.* | Lead Case No. 21-00141-11<br>Jointly Administered |
| Debtors.[1] | |

---

[1]  The Debtors along with their case numbers are as follows: Easterday Ranches, Inc.
(21-00141) and Easterday Farms, a Washington general partnership (21-00176).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| | |
|---|---|
| EASTERDAY RANCHES, INC., | Adv. Proc. No. 22-80008 (WLH) |
| Plaintiff, | |
| vs. | **ABEYANCE AND SUSPENSE ORDER** |
| ESTATE OF GALE A. EASTERDAY (DECEASED), KAREN L. EASTERDAY, CODY A. EASTERDAY, AND DEBBY EASTERDAY, | |
| Defendants. | |

Easterday Ranches, Inc. and Easterday Farms (collectively, "Plaintiffs" or the "Debtors"), on the one hand, and Karen L. Easterday, individually and as personal representative of the Estate of Gale A. Easterday, Cody A. Easterday, and Debby Easterday (collectively, "Defendants" or "Easterday Family" and, together with the Debtors, the "Parties") in the above-captioned adversary proceeding together with the main jointly administered chapter 11 bankruptcy cases, hereby stipulate as follows by and through their undersigned counsel of record.

The Parties hereby stipulate and it is ordered that:

1. The provisions of the court's prior *Scheduling and Abatement Order* entered in this Adv. Pro. 22-80008 (the "TRO Adversary Proceeding") on March 24, 2022 ("Scheduling and Abatement Order"), shall be supplemented and modified as necessary to account for the following revised terms and conditions which will apply solely during the Abeyance and Suspense Period (defined below):

a. The legal effect, if any, of Amendment No. 2 to the Farms partnership agreement shall be held in abeyance and suspended throughout the Abeyance and Suspense Period (defined below).

b. The legal effect, if any, of the designation of Eric Bonnett as Manager, and Clyde Hamstreet, Hamstreet & Associates as CEO of Farms shall be held in abeyance and suspended during the Abeyance and Suspense Period (defined below).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

c.      The legal effect, if any, of the Unanimous Consent of Shareholders of Ranches, dated March 12, 2022, shall be held in abeyance and suspended during the Abeyance and Suspense Period (defined below).  As a result, the designation of Mark Calvert, Matt McKinlay, and Stephen Benson as the directors of Ranches shall be held in abeyance and suspended during the Abeyance and Suspense Period (defined below).[2]

d.      The Parties and the court hereby confirm, for the avoidance of doubt, that during the Abeyance and Suspense Period (defined below):  (1) R. Todd Neilson, Craig Barbarosh, and Thomas Saunders V will be the sole acting directors of Easterday Farms and Easterday Ranches, Inc. during the Abeyance and Suspense Period (defined below) with the sole authority to act on behalf of the Debtors, subject to any limitations contained in paragraph 1(a) of the Scheduling and Abatement Order, as may be amended; and (2) the Replacement Directors and Officers are deemed not to be directors or officers of the Debtors under Washington law, for any purpose, during the Abeyance and Suspense Period (defined below).

e.      The period of time from the entry of this Abeyance and Suspense Order through the earlier of (i) effective date of a plan of liquidation of the Debtors or (ii) termination per the provisions set forth herein, shall be referred to as the "Abeyance and Suspense Period."

f.      If at any time during the Abeyance and Suspense Period, the Easterday Family believes that the Debtors are not proceeding consistent with (i) the terms and intent of the *Global Settlement Term Sheet* approved by the court at Docket No. [●] in Lead Case No. 21-00141, (ii) the agreed consensual plan of liquidation (the "Plan") and related disclosure statement (each to be filed subsequent to the entry of this order), or (iii) are otherwise not acting in good faith, then the Easterday Family shall give the Debtors written notice by email to undersigned counsel, which notice shall include a description of the issues, and seven (7) calendar days to cure, during which

---

[2]   Eric Bonnett as Manager, and Clyde Hamstreet, Hamstreet & Associates as CEO of Farms, and Mark Calvert, Matt McKinlay, and Stephen Benson shall be referred to collectively as the "Replacement Directors and Officers."

time the Easterday Family shall meet and confer with the Debtors and attempt in good faith to resolve such disagreement. In the event the Easterday Family and Debtors are unable to resolve their dispute, then the Abeyance and Suspense Period shall automatically terminate and all Parties and actions shall be restored to the *status quo ante* immediately prior to the entry of this Abeyance and Suspense Order. Further, the Replacement Directors and Officers shall automatically, without further action by the Easterday Family, be reinstated in accordance with Amendment No. 2 to the Farms partnership agreement and the Unanimous Consent of Shareholders of Ranches dated March 12, 2022, which will automatically be reinstated; *provided that* the Debtors shall not take any action during the Abeyance and Suspense Period that would impact the reimposition of the *status quo ante* including, but not limited to, seeking the prior enjoinment of such actions; *provided further*, for the avoidance of doubt, in the event the Abeyance and Suspense Order terminates prior to the effective date of the Plan, then the TRO Adversary Proceeding shall automatically be reactivated and all prior orders and rulings reinstituted with the court including (i) resetting Karen Easterday's *Motion for Reconsideration Under Fed. R. Civ. P. 60(a) & (b) of the Scheduling and Abatement Order* [Adv. Pro. No. 22-80008 Docket No. 28] for immediate determination, and (ii) resetting the preliminary hearing for a date approximately three (3) weeks after termination of the Abeyance and Suspense Period or as otherwise agreed by the Parties or ordered by the court. No discovery or other activity related to Adv. Pro. No. 22-80008 shall occur during the Abeyance and Suspense Period.

2.      This stipulation may be further extended only by the prior written consent of all Parties hereto or further order of the court.

3.      The terms and conditions of this order shall be immediately effective and enforceable upon its entry.

4.      The court shall retain exclusive jurisdiction over any matter or dispute arising from or relating to this order.

Dated: April 13, 2022.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

TONKON TORP LLP

By /s/
 Timothy J. Conway, WSBA 52204
  *tim.conway@tonkon.com*
 Ava L. Schoen
  (admitted *pro hac vice*)
 888 SW Fifth Avenue, Suite 1600
 Portland, OR 97204

*Attorneys for Karen L. Easterday,*
*individually and as personal*
*representative of the Estate of*
*Gale A. Easterday*

BUSH KORNFELD LLP

By /s/
 Armand J. Kornfeld, WSBA 17214
  *jkornfeld@bskd.com,*
 Thomas A. Buford, WSBA 52969
  *tbuford@bskd.com*
 Richard B. Keeton, WSBA 51537
  *rkeeton@bskd.com*
 601 Union Street, Suite 5000
 Seattle, WA 98101

Richard M. Pachulski
 (admitted *pro hac vice*)
Jeffrey W. Dulberg
 (admitted *pro hac vice*)
Maxim B. Litvak
 (admitted *pro hac vice*)
Jason H. Rosell
 (admitted *pro hac vice*)
Paul J. Labov
 (admitted *pro hac vice*)

*Attorneys for Easterday Farms*

SUSSMAN SHANK LLP

By /s/
 Jeffrey C. Misley, WSBA 33397
  *jmisley@sussmanshank.com*
 Thomas W. Stilley, WSBA 21718
  *tstilley@sussmanshank.com*
 1000 SW Broadway, Suite 1400
 Portland, OR 97205

*Attorneys for Cody and Debby*
*Easterday*

/// END OF ORDER ///

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Presented by:

TONKON TORP LLP

By /s/
_____
    Timothy J. Conway, WSBA 52204

*Attorneys for Karen L. Easterday*
*individually and as personal representative*
*of the estate of Gale A. Easterday*

BUSH KORNFELD LLP

By: /s/ DRAFT
_____
    Thomas A. Buford, III WSBA 52969
    BUSH KORNFELD LLP

    Richard M. Pachulski (admitted *pro hac vice*)
    Jeffrey W. Dulberg (admitted *pro hac vice*)
    Jason H. Rosell (admitted *pro hac vice*)
    PACHULSKI STANG ZIEHL & JONES
    LLP

*Attorneys for Debtors and Debtors in Possession*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# **EXHIBIT E-1**

## **Form of Omnibus Standstill Order**

ARMAND J. KORNFELD (WSBA #17214)
THOMAS A. BUFORD (WSBA #52969)
RICHARD B. KEETON (WSBA #51537)
BUSH KORNFELD LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Tel.: (206) 292-2110
Facsimile: (206) 292-2104
Emails: jkornfeld@bskd.com,
tbuford@bskd.com, and rkeeton@bskd.com

RICHARD M. PACHULSKI (CA Bar #90073)*
JEFFREY W. DULBERG (CA Bar #181200)*
JASON H. ROSELL (CA Bar #269126)*
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003
Tel: (310) 277-6910
Facsimile: (310) 201-0760
Emails: rpachulski@pszjlaw.com,
jdulberg@pszjlaw.com, and
jrosell@pszjlaw.com

*Admitted *Pro Hac Vice*

*Attorneys for the Chapter 11 Debtors and
Debtors in Possession*

HONORABLE WHITMAN L. HOLT

HEARING DATE: [April [•]], 2022
HEARING TIME: [__:__ _.m.] (PST)
RESPONSE DUE: At the Hearing
LOCATION: Telephonic

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

In re

EASTERDAY RANCHES, INC., *et al.*

Debtors.[1]

Chapter 11

Lead Case No. 21-00141-WLH11
Jointly Administered

**OMNIBUS STIPULATED
STANDSTILL ORDER**

---

[1] The Debtors along with their case numbers are as follows: Easterday Ranches, Inc.
(21-00141) and Easterday Farms, a Washington general partnership (21-00176).

Easterday Ranches, Inc. and Easterday Farms (together, the "<u>Debtors</u>"), the Official Committee of Unsecured Creditors of Easterday Ranches, Inc. (the "<u>Ranches Committee</u>"), the Official Committee of Unsecured Creditors of Easterday Farms (the "<u>Farms Committee</u>" and together with the Ranches Committee, the "<u>Committees</u>"), Tyson Fresh Meats, Inc. ("<u>Tyson</u>"), Segale Properties, LLC ("<u>Segale</u>"), Cody and Debby Easterday, Karen L. Easterday, individually and as personal representative of the Estate of Gale A. Easterday, 3E Properties, Easterday Produce Co., Easterday Dairy, LLC, and Jody Easterday (collectively, the "<u>Easterday Family</u>" and together with the Debtors, Committees, Tyson, and Segale, the "<u>Parties</u>"), hereby stipulate as follows by and through their undersigned counsel of record:

The Parties hereby stipulate and it is ordered that:

1.      The Parties, together with their attorneys, agents, and representatives (each a "<u>Representative</u>" and collectively, "<u>Representatives</u>") shall refrain from taking any actions directly or indirectly adverse to another Party or Representative (including any entity affiliated with the Easterday Family other than Weyns Farms) (the "<u>Prohibited Actions</u>") from now through the earlier of (a) the effective date of a plan of liquidation of the Debtors; or (b) the termination of the Abeyance and Suspense Period (as defined in the *Abeyance and Suspense Order* entered contemporaneously herewith in Adv. Proc. No. 22-80008 (the "<u>Standstill Period</u>").  The Prohibited Actions include the filing or prosecution of any new or pending proceedings or issuance of any discovery requests or Bankruptcy Rule 2004 motions during the Standstill Period.  For the avoidance of doubt, the Parties may take all actions reasonable and necessary to implement the terms of the *Global Settlement Term Sheet* approved by this court at Docket No. [●] in Lead Case No. 21-00141, including, but not limited to all actions necessary to (1) confirm a consensual plan of liquidation and (2) reconcile claims filed in these chapter 11 cases, whether by stipulation or claim objection (other than proofs of claim filed by the Easterday Family or any entity affiliated with the Easterday Family other than Weyns

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Farms). Nothing in this order applies to any other proceeding outside of these Chapter 11 cases and the adversary proceedings and contested matters therein.

2. Pursuant to the *Scheduling and Abatement Order* entered in the main cases [Dkt. No. 1511], in adversary proceeding no. 21-80057 ("3E Adversary Proceeding") [Dkt. No. 28], and in adversary proceeding no. 21-80050 ("Allocation Adversary Proceeding") [Dkt. No. 72], and pursuant to the *Scheduling and Abatement Order* and *Abeyance and Suspense Order* entered in adversary proceeding no. 22-80008 (the "Governance Adversary Proceeding"), the 3E Adversary Proceeding, Allocation Adversary Proceeding, and Governance Adversary Proceeding shall be stayed unless and until there is a decision from the court on the preliminary injunction requested in the Governance Adversary Proceeding, and the *status quo* shall be maintained in the 3E Adversary Proceeding and Allocation Adversary Proceeding unless otherwise agreed by all Parties. For the avoidance of doubt, all activity in the main cases and all adversary proceedings and any contested matters in these cases, other than (1) efforts to settle or resolve the main cases or any pending adversary proceeding or contested matter (including, but not limited to drafting and filing all documents related to the *Global Settlement Term Sheet* and the solicitation of the plan contemplated therein), (2) professional fee applications, (3) non-Easterday Family claims reconciliation (*e.g.*, filing claim objections and/or stipulations resolving claims), (4) other administrative chapter 11 matters, including, but not limited to, filing and prosecuting motions to extend statutory deadlines (*e.g.*, plan exclusivity), shall immediately cease and be held in abeyance during the Standstill Period. Any and all pending deadlines and dates in any adversary proceeding or Easterday Family contested matter are hereby tolled, including, but not limited to, activities or discovery involving third parties, pending meet-and-confer conferences, depositions, discovery deadlines, and trial and related pre-trial dates and deadlines.

3. This stipulation may be further extended only by the prior written consent of all Parties hereto or further order of the court.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4.    The terms and conditions of this order shall be immediately effective and enforceable upon its entry.

5.    The court shall retain exclusive jurisdiction over any matter or dispute arising from or relating to this order.


Dated: April 13, 2022.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

TONKON TORP LLP

SUSSMAN SHANK LLP

By */s/*
    Timothy J. Conway, WSBA 52204
    *tim.conway@tonkon.com*
    Ava L. Schoen
    (admitted *pro hac vice*)
    888 SW Fifth Avenue, Suite 1600
    Portland, OR 97204

*Attorneys for Karen L. Easterday,*
*individually and as personal*
*representative of the Estate of*
*Gale A. Easterday*

By */s/*
    Jeffrey C. Misley, WSBA 33397
    *jmisley@sussmanshank.com*
    Thomas W. Stilley, WSBA 21718
    *tstilley@sussmanshank.com*
    1000 SW Broadway, Suite 1400
    Portland, OR 97205

*Attorneys for Cody Easterday*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

BUSH KORNFELD LLP

By /s/
    Armand J. Kornfeld, WSBA 17214
    *jkornfeld@bskd.com*,
    Thomas A. Buford, WSBA 52969
    *tbuford@bskd.com*
    Richard B. Keeton, WSBA 51537
    *rkeeton@bskd.com*
    601 Union Street, Suite 5000
    Seattle, WA 98101

    Richard M. Pachulski
    (admitted *pro hac vice*)
    Jeffrey W. Dulberg
    (admitted *pro hac vice*)
    Maxim B. Litvak
    (admitted *pro hac vice*)
    Jason H. Rosell
    (admitted *pro hac vice*)
    Paul J. Labov
    (admitted *pro hac vice*)

*Attorneys for Easterday Farms*

COOLEY LLP

By /s/
    Christopher B. Durbin WSBA 41159
    1700 Seventh Avenue, Suite 1900
    Seattle, WA 98101

    Cullen D. Speckhart
    (admitted *pro hac vice*)
    Michael Klein
    (admitted *pro hac vice*)
    5 Hudson Yards
    New York, NY 10001

*Attorneys for the Official Committee of
Unsecured Creditors of Easterday
Ranches, Inc.*

BUSH KORNFELD LLP

By /s/
    Armand J. Kornfeld, WSBA 17214
    *jkornfeld@bskd.com*,
    Thomas A. Buford, WSBA 52969
    *tbuford@bskd.com*
    Richard B. Keeton, WSBA 51537
    *rkeeton@bskd.com*
    601 Union Street, Suite 5000
    Seattle, WA 98101

    Richard M. Pachulski
    (admitted *pro hac vice*)
    Jeffrey W. Dulberg
    (admitted *pro hac vice*)
    Maxim B. Litvak
    (admitted *pro hac vice*)
    Jason H. Rosell
    (admitted *pro hac vice*)
    Paul J. Labov
    (admitted *pro hac vice*)

*Attorneys for Easterday Ranches, Inc.*

BUCHALTER

By /s/
    Joseph M. Welch WSBA 56521
    Julian I. Gurule
    (admitted *pro hac vice*)
    1420 Fifth Avenue, Suite 3100
    Seattle, WA 98101

*Attorneys for the Official Committee of
Unsecured Creditors of Easterday Farms*

JORDAN RAMIS PC

By */s/*
    Russell D. Garrett WSBA 18657
    Daniel L. Steinberg WSBA 30080
    1499 SE Tech Center Place, #380
    Vancouver, WA 98683

*Attorneys for Easterday Dairy, LLC,*
*Debby Easterday, and Jody Easterday*

PERKINS COIE LLP

By */s/*
    Alan D. Smith WSBA 24964
    Bradley A. Cosman
    (admitted *pro hac vice*)
    1201 Third Avenue
    Seattle, WA 98101

*Attorneys for Tyson Fresh Meats, Inc.*

GATENS GREEN WEIDENBACH, PLLC

By */s/*
    Michelle A. Green WSBA 33397
    305 Aplets Way
    Cashmere, WA 98815

*Attorneys for 3E Properties and*
*Easterday Farms Produce, Co.*

CAIRNCROSS & HEMPELMANN, P.S.

By */s/*
    Aditi Paranjpye WSBA 53001
    John R. Rizzardi WSBA 9388
    Jennifer K. Faubion WSBA 39880
    524 Second Avenue, Suite 500
    Seattle, WA 98104-2323

*Attorneys for Segale Properties LLC*

/// END OF ORDER ///

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Presented by:

TONKON TORP LLP

By /s/
    Timothy J. Conway, WSBA 52204

*Attorneys for Karen L. Easterday*
*individually and as personal representative*
*of the estate of Gale A. Easterday*

BUSH KORNFELD LLP

By: /s/ DRAFT
    Thomas A. Buford, III WSBA 52969
    BUSH KORNFELD LLP

    Richard M. Pachulski (admitted *pro hac vice*)
    Jeffrey W. Dulberg (admitted *pro hac vice*)
    Jason H. Rosell (admitted *pro hac vice*)
    PACHULSKI STANG ZIEHL & JONES
    LLP
*Attorneys for Debtors and Debtors in Possession*

**<u>EXHIBIT E-2</u>**

**Form of Allocation Complaint Standstill Order**

DOCS_SF:106940.23

1

2

3

4

5

6

7

8

9                        UNITED STATES BANKRUPTCY COURT

10                        EASTERN DISTRICT OF WASHINGTON

11    In re                                    Chapter 11

12    EASTERDAY RANCHES, INC., *et al.*        Lead Case No. 21-00141-WLH
                                               Jointly Administered
13              Debtors[1].

14    _____

15    EASTERDAY RANCHES, INC. and              Adv. Pro No. 21-80050 (WLH)
      EASTERDAY FARMS,
16                                             **STIPULATED STANDSTILL
                 Plaintiffs,                   ORDER**
17
            v.
18
      ESTATE OF GALE A. EASTERDAY
19    (DECEASED), KAREN L. EASTERDAY,
      CODY A. EASTERDAY, and DEBBY
20    EASTERDAY,

21              Defendants.

22    _____

23

24

25    _____
      [1] This case is jointly administered with *In re Easterday Farms*, Case No. 21-00176-WLH11.
26    STIPULATED STANDSTILL ORDER - 1

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

| | |
|---|---|
| 1 | |
| 2 | ESTATE OF GALE A. EASTERDAY |
| 3 | (DECEASED), KAREN L. EASTERDAY, CODY A. EASTERDAY, and DEBBY |
| 4 | EASTERDAY, |
| 5 | Counterclaim Plaintiffs, |
| 6 | v. |
| 7 | EASTERDAY RANCHES, INC., |
| 8 | EASTERDAY FARMS, |
| 9 | Counterclaim Defendants. |

Easterday Ranches, Inc.; Easterday Farms (together, "Plaintiffs"); Karen L. Easterday, individually and as personal representative of the Estate of Gale Easterday; Cody A. Easterday; and Debby Easterday (collectively with Plaintiffs, the "Parties," and each a "Party"), by and through their counsel of record, hereby stipulate and it is ordered that:

Pursuant to the Scheduling and Abatement Order entered on March 25, 2022 [Dkt. No. 72] in the above-captioned adversary proceeding ("Adversary Proceeding"), and the Abeyance and Suspense Order entered in adversary proceeding number 22-80008 [Dkt. No. _], the Adversary Proceeding shall be stayed pending a decision from the court on the preliminary injunction requested in adversary proceeding 22-80008, and the status quo shall be maintained in the Adversary Proceeding unless otherwise agreed by all Parties.

/// END OF ORDER ///

\* \* \*

\* \* \*

STIPULATED STANDSTILL ORDER - 2

**Tonkon Torp** LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

```
 1   * * *

 2   * * *

 3   * * *

 4        IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

 5   BUSH KORNFELD LLP                    TONKON TORP LLP

 6
     By /s/                              By /s/
 7        Armand J. Kornfeld, WSBA 17214      Timothy J. Conway, WSBA 52204
 8         jkornfeld@bskd.com,                 tim.conway@tonkon.com
          Thomas A. Buford, WSBA 52969       Ava L. Schoen
 9         tbuford@bskd.com                   (admitted pro hac vice)
          Richard B. Keeton, WSBA 51537     888 SW Fifth Avenue, Suite 1600
10         rkeeton@bskd.com                  Portland, Oregon 97204
          601 Union Street, Suite 5000
11        Seattle, WA 98101
                                           Attorneys for Karen L. Easterday,
12        Richard M. Pachulski             individually and as personal
13         (admitted pro hac vice)         representative of the Estate of
          Jeffrey W. Dulberg              Gale A. Easterday
14         (admitted pro hac vice)
          Maxim B. Litvak
15         (admitted pro hac vice)
          Jason H. Rosell
16         (admitted pro hac vice)
          Paul J. Labov
17         (admitted pro hac vice)

18
          Attorneys for Easterday Ranches,
19        Inc. and Easterday Farms

20

21   SUSSMAN SHANK LLP

22
     By /s/
23        Jeffrey C. Misley, WSBA 33397
24         jmisley@sussmanshank.com
          Thomas W. Stilley, WSBA 21718
25         tstilley@sussmanshank.com

     STIPULATED STANDSTILL ORDER - 3
26
```

1000 SW Broadway, Suite 1400
Portland, Oregon 97205

*Attorneys for Cody and Debby Easterday*

Presented by:

TONKON TORP LLP

By /s/
    _____
    Timothy J. Conway, WSBA 52204
    *Attorneys for Karen L. Easterday*
    *individually and as personal*
    *representative of the estate of Gale A.*
    *Easterday*

042047\02001\13510397v1

STIPULATED STANDSTILL ORDER - 4

**Tonkon Torp** LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

# EXHIBIT E-3

## Form of 3E Properties Complaint Standstill Order

DOCS_SF:106940.23

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| EASTERDAY RANCHES, INC., *et al.* | Lead Case No. 21-00141-WLH |
| Debtors[1]. | Jointly Administered |
| | |
| EASTERDAY FARMS, | Adv. Pro No. 21-80057 (WLH) |
| Plaintiffs, | **STIPULATED STANDSTILL ORDER** |
| v. | |
| 3E PROPERTIES, JODY EASTERDAY, ESTATE OF GALE A. EASTERDAY (DECEASED), KAREN L. EASTERDAY, CODY A. EASTERDAY, AND DEBBY EASTERDAY, | |
| Defendants. | |

---

[1] This case is jointly administered with *In re Easterday Farms*, Case No. 21-00176-WLH11.

STIPULATED STANDSTILL ORDER - 1

Easterday Farms ("Plaintiff"); 3E Properties; Jody Easterday; Karen L. Easterday, individually and as personal representative of the Estate of Gale A. Easterday; Cody A. Easterday; and Debby Easterday (collectively with Plaintiff, the "Parties," and each a "Party"), by and through their counsel of record, hereby stipulate and it is ordered that:

Pursuant to the Scheduling and Abatement Order entered on March 25, 2022 [Dkt. No. 28] in the above-captioned adversary proceeding ("Adversary Proceeding"), and the Abeyance and Suspense Order entered in adversary proceeding number 22-80008 [Dkt. No. _], the Adversary Proceeding shall be stayed pending a decision from the court on the preliminary injunction requested in adversary proceeding 22-80008, and the status quo shall be maintained in the Adversary Proceeding unless otherwise agreed by all Parties.

/// END OF ORDER ///

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

TONKON TORP LLP

By /s/ _____
   Timothy J. Conway, WSBA 52204
   *tim.conway@tonkon.com*
   Ava L. Schoen
   (admitted *pro hac vice*)
   888 SW Fifth Avenue, Suite 1600
   Portland, OR 97204

*Attorneys for Karen L. Easterday, individually and as personal representative of the Estate of Gale A. Easterday*

SUSSMAN SHANK LLP

By /s/ _____
   Jeffrey C. Misley, WSBA 33397
   *jmisley@sussmanshank.com*
   Thomas W. Stilley, WSBA 21718
   *tstilley@sussmanshank.com*
   1000 SW Broadway, Suite 1400
   Portland, OR 97205

*Attorneys for Cody and Debby Easterday*

STIPULATED STANDSTILL ORDER - 2

BUSH KORNFELD LLP

GATENS GREEN WEIDENBACH,
PLLC

By */s/*
    Armand J. Kornfeld, WSBA 17214
    *jkornfeld@bskd.com,*
    Thomas A. Buford, WSBA 52969
    *tbuford@bskd.com*
    Richard B. Keeton, WSBA 51537
    *rkeeton@bskd.com*
    601 Union Street, Suite 5000
    Seattle, WA 98101

By */s/*
    Michelle A. Green, WSBA 33397
    *michelle@ggw-law.com*
    305 Aplets Way
    Cashmere, WA 98815

*Attorneys for 3E Properties*

    Richard M. Pachulski
    (admitted *pro hac vice*)
    Jeffrey W. Dulberg
    (admitted *pro hac vice*)
    Maxim B. Litvak
    (admitted *pro hac vice*)
    Jason H. Rosell
    (admitted *pro hac vice*)
    Paul J. Labov
    (admitted *pro hac vice*)

*Attorneys for Easterday Farms*

JORDAN RAMIS PC

By */s/*
    Russell D. Garrett, WSBA 18657
    *Russell.garrett@jordanramis.com*
    Daniel L. Steinberg, WSBA 30080
    *Daniel.steinberg@jordanramis.com*
    1499 SE Tech Center Place, #380
    Vancouver, WA 98683

*Attorneys for Jody Easterday*

STIPULATED STANDSTILL ORDER - 3

Presented by:

TONKON TORP LLP

By */s/* _____
    Timothy J. Conway, WSBA 52204
    *Attorneys for Karen L. Easterday*
    *individually and as personal*
    *representative of the estate of Gale A.*
    *Easterday*

042047\02001\13510503v1

STIPULATED STANDSTILL ORDER - 4