ARMAND J. KORNFELD (WSBA #17214)
THOMAS A. BUFORD (WSBA #52969)
RICHARD B. KEETON (WSBA #51537)
BUSH KORNFELD LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Tel.: (206) 292-2110
Facsimile: (206) 292-2104
Emails: jkornfeld@bskd.com,
tbuford@bskd.com, and rkeeton@bskd.com

RICHARD M. PACHULSKI (CA Bar #90073)*
JEFFREY W. DULBERG (CA Bar #181200)*
JASON H. ROSELL (CA Bar #269026)*
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003
Tel: (310) 277-6900
Facsimile: (310) 201-0760
Emails: rpachulski@pszjlaw.com,
jdulberg@pszjlaw.com, and jrosell@pszjlaw.com

*Admitted *Pro Hac Vice*

*Attorneys for the Chapter 11
Debtors and Debtors in Possession*

HON. WHITMAN L. HOLT

HEARING DATE: May 25, 2022
HEARING TIME: 10:00 A.M. (PST)
LOCATION: Telephonic

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| EASTERDAY RANCHES, INC., *et al.*<br><br>Debtors.[1] | Lead Case No. 21-00141-WLH11<br>Jointly Administered<br><br>**NOTICE OF (I) MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS AND (II) REVISED DISCLOSURE STATEMENT** |

**PLEASE TAKE NOTICE** that, on May 11, 2022, the Debtors filed their (i) *Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* [Docket No. 1606] (the "Third Amended Plan") and (ii) *Disclosure Statement for Third Amended Joint Chapter 11 Plan of Liquidation of Easterday*

---

[1] The Debtors along with their case numbers are as follows: Easterday Ranches, Inc., (21-00141) and Easterday Farms, a Washington general partnership (21-00176).

*Ranches, Inc. and Easterday Farms* [Docket No. 1607] (the "<u>Third Amended</u> <u>Disclosure Statement</u>").

**PLEASE TAKE FURTHER NOTICE** that, on May 23, 2022, the Debtors filed their (i) *Modified Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* [Docket No. 1641] (the "<u>Modified Third Amended</u> <u>Plan</u>") and (ii) *Disclosure Statement for Modified Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* [Docket No. 1642] (the "<u>Modified Third Amended Disclosure Statement</u>"). The Modified Third Amended Plan and Modified Third Amended Disclosure Statement incorporate informal comments the Debtors have received to date from various parties in interest, including the United States Trustee, CHS, Inc., and Farmland Reserve, Inc. Moreover, upon information and belief, the Modified Third Amended Disclosure Statement consensually resolves all formal and informal objections to the *Joint Motion for an Order Approving: (I) Proposed Disclosure Statement; (II) Solicitation and Voting Procedures; (III) Notice and Objection Procedures for Confirmation of Joint Plan of Reorganization; and (IV) Granting Related Relief* [Docket No. 966] (the "<u>Solicitation Procedures Motion</u>").[2]

**PLEASE TAKE FURTHER NOTICE** that (i) attached hereto as <u>Exhibit A</u> is a comparison of the Modified Third Amended Plan to the Third Amended Plan (changed pages only and exhibits omitted) and (ii) attached hereto as <u>Exhibit B</u> is a comparison of the Modified Third Amended Disclosure Statement to the Third Amended Disclosure Statement (changed pages only and exhibits omitted).

**PLEASE TAKE FURTHER NOTICE** that the hearing (the "<u>Hearing</u>") on the Solicitation Procedures Motion has been scheduled for **May 25, 2022 at 10:00 a.m. (Pacific Time)**.

---

[2] The objections to the Solicitation Procedures Motion filed by (i) Rabo AgriFinance LLC [Docket No. 1401], (ii) Weyns Farms and Sunray Farms [Docket No. 1449], and (iii) Pegram Construction, LLC [Docket No. 1461] have been withdrawn. The Debtors have also been informed by counsel to the Easterday Family [Docket Nos. 1467 and 1470] that the Easterday Family does not object to approval of the Modified Third Amended Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to court orders responding to the COVID-19 pandemic, any party that wishes to address the court, or appear without addressing the court, may appear at the Hearing by telephone. The telephone conference call-in number is (877) 402-9757, Access Code: 7036041.

DATED: May 24, 2022      BUSH KORNFELD LLP

*/s/ Thomas A. Buford, III*
THOMAS A. BUFORD, III (WSBA 52969)
BUSH KORNFELD LLP

RICHARD M. PACHULSKI (Admitted *Pro Hac Vice*)
JEFFREY W. DULBERG (Admitted *Pro Hac Vice*)
JASON H. ROSELL (*Admitted Pro Hac Vice*)
PACHULSKI STANG ZIEHL & JONES LLP

*Attorneys for Debtors and Debtors in Possession*

3

# EXHIBIT A

## Comparison of Modified Third Amended Plan

## to Third Amended Plan

## (Changed Pages Only and Exhibits Omitted)

1  ARMAND J. KORNFELD (WSBA #17214)
   THOMAS A. BUFORD (WSBA #52969)
2  RICHARD B. KEETON (WSBA #51537)
   BUSH KORNFELD LLP
3  601 Union Street, Suite 5000
   Seattle, WA 98101
4  Tel.: (206) 292-2110
   Facsimile: (206) 292-2104
5  Emails: jkornfeld@bskd.com,
   tbuford@bskd.com, and rkeeton@bskd.com
6
   RICHARD M. PACHULSKI (CA Bar #90073)*
7  JEFFREY W. DULBERG (CA Bar #181200)*
   MAXIM B. LITVAK (CA Bar #215852)*
8  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
9  Los Angeles, CA 90067-4003
   Tel: (310) 277-6910
10 Facsimile: (310) 201-0760
   Emails: rpachulski@pszjlaw.com,
11 jdulberg@pszjlaw.com, and
   mlitvak@pszjlaw.com
12
   *Admitted *Pro Hac Vice*
13
   *Attorneys for Debtors and Debtors in Possession*
14

15            UNITED STATES BANKRUPTCY COURT
              EASTERN DISTRICT OF WASHINGTON
16

| | |
|---|---|
| In re | Chapter 11 |
| EASTERDAY RANCHES, INC., *et al.* | Lead Case No. 21-00141-11 |
| Debtors.[1] | Jointly Administered |
| | **MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS** |

---

[1] The Debtors along with their case numbers are as follows: Easterday Ranches, Inc. (21-00141) and Easterday Farms, a Washington general partnership (21-00176).

# TABLE OF CONTENTS

INTRODUCTION .................................................................... 1

ARTICLE I  DEFINED TERMS AND RULES OF INTERPRETATION .......... 2

ARTICLE II  CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS 2221

2.1    Summary and Classification of Claims 22. ............................ 21

2.2    Subordinated Claims Generally 23. ................................... 22

2.3    Intercompany Claims 23. ............................................ 22

2.4    Classification & Voting Controversies 24. .......................... 22

ARTICLE III  TREATMENT OF CLAIMS AND EQUITY INTERESTS 2423

3.1    Unclassified Claims 24. ............................................. 23

3.1.1 ....................................................... Administrative Claims 24. 23

3.1.2 ...................................................... Professional Fee Claims 24. 23

3.1.3 ........................................................... Priority Tax Claims 24. 23

3.2    Class 1: Secured Claims 25. ......................................... 23

3.3    Class 2: Priority Claims 26. ........................................ 24

3.4    Class 3: Farms General Unsecured Claims 26. ......................... 25

3.5    Class 4: Ranches General Unsecured Claims 27. ....................... 25

3.6    Class 5: Tyson Claims 27. ........................................... 26

3.7    Class 6: Segale Claims Against Ranches 28. .......................... 27

3.8    Class 7: Subordinated Claims 29. .................................... 27

3.9    Class 8: Intercompany Claims 29. .................................... 27

3.10   Class 9: Interests 29. .............................................. 28

THIRD AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS – Page i

3.11    Special Provisions Regarding Insured Claims ~~30~~ ............. 28

3.12    Comprehensive Settlement of Claims and Controversies ~~30~~ ............. 28

~~3.12.1  Generally ............. 30~~

~~3.12.2  Net Sale Proceeds ............. 31~~

ARTICLE IV   ACCEPTANCE OR REJECTION OF THE PLAN ............. ~~31~~29

4.1    Impaired Class of Claims Entitled to Vote ~~31~~ ............. 29

4.2    Acceptance by an Impaired Class ~~31~~ ............. 29

4.3    Presumed Acceptances by Unimpaired Classes ~~31~~ ............. 29

4.4    Impaired Classes Deemed to Reject Plan ~~31~~ ............. 30

4.5    Modifications of Votes ~~32~~ ............. 30

4.6    Confirmation Pursuant to Bankruptcy Code Section 1129(b) ~~32~~ ............. 30

4.7    Elimination of Vacant Classes ~~32~~ ............. 30

4.8    Joint Plan ~~32~~ ............. 30

ARTICLE V   MEANS FOR IMPLEMENTATION OF THE PLAN ............. ~~32~~30

5.1    Implementation of the Plan ~~32~~ ............. 30

5.2    Implementation of the Global Settlement ~~33~~ ............. 31

5.2.1   The Karen Easterday Settlement Amount ~~33~~ ............. 31

5.2.2   The Karen Easterday Secured Note ~~33~~ ............. 31

5.2.3   The Idaho Contribution ~~34~~ ............. 31

5.2.4   The Basin City Sale ~~34~~ ............. 32

5.2.5   The Easterday Dairy, LLC Note and BC 140 LLC Secured Guaranty ~~34~~ ............. 32

5.2.6 The Easterday Family Contribution Instruments ~~34~~. ..... 32

5.2.7 The Transfer of Steer Head Brand ~~35~~. ..... 32

5.2.8 The Assignment of the Canyon Farm Avoidance Actions ~~35~~. ..... 33

5.2.9 The 3E and Produce Contribution ~~35~~. ..... 33

5.2.10 The Easterday Family Adversary Proceedings ~~35~~. ..... 33

5.2.11 The Restitution Claims ~~35~~. ..... 33

5.2.12 The Replacement Director Fees ~~35~~. ..... 33

5.2.13 Easterday Family Releases ~~36~~. ..... 33

5.2.14 The Criminal Proceedings ~~36~~. ..... 34

5.2.15 The Consent of the Department of Justice ~~36~~. ..... 34

5.3 Reserved ~~37~~. ..... 34

5.4 Easterday Family Tax Payments. ..... ~~37~~34

5.5 Sale Transaction. ..... ~~37~~34

5.6 Net Sale Proceeds. ..... ~~38~~35

5.7 Streamlining of the Debtors' Corporate Affairs. ..... ~~38~~35

5.7.1 Debtors' Existing Directors, Officers, and Managers. ..... ~~38~~35

5.7.2 Dissolution of the Debtors. ..... ~~38~~36

5.7.3 Corporate Documents and Corporate Authority. ..... ~~38~~36

5.8 Post-Effective Date Debtors/Plan Administrator. ..... ~~39~~36

5.8.1 Appointment. ..... ~~39~~36

5.8.2 Vesting of Post-Effective Date Debtors' Assets. ..... ~~39~~36

5.8.3   Authority ~~40~~. ..................................................... 37

5.8.4   Limitation of Liability ~~41~~. ........................................ 38

5.8.5   Indemnification. ................................................... ~~41~~39

5.8.6   Insurance. ......................................................... ~~42~~39

5.8.7   Tax Reporting. ..................................................... ~~42~~40

5.8.8   Cash Investments. ................................................. ~~43~~40

5.8.9   Pursuit and Resolution of Post-Effective Date Debtors'
Causes of Action. .................................................. ~~43~~40

5.8.10 No Successor Liability. ............................................. ~~43~~41

5.9      Preservation of Privileges and Defenses ~~44~~. ...................... 41

5.10   Preservation of Rights of Action. .................................... ~~44~~41

5.10.1 Maintenance of Avoidance Actions and Causes of Action. ~~44~~41

5.10.2 Preservation of All Post-Effective Date Debtors' Causes of
Action Not Expressly Settled or Released. ..................... ~~45~~42

5.11   Cancellation of Instruments. ..................................... ~~45~~42

5.12   Insurance Policies. ............................................... ~~46~~43

5.12.1 Insurance Policies Remain In Force. ........................... ~~46~~43

5.12.2 Insurance Policies; Employment Practice Liability Policies;
Similar Policies ~~46~~. ............................................ 43

5.13   Settlement of Avoidance Actions Against Tyson ~~46~~. .......... 43

~~5.13   Settlement of Avoidance Actions Against Tyson~~      ~~46~~

ARTICLE VI EXECUTORY CONTRACTS AND UNEXPIRED LEASES ~~46~~43

6.1 Rejection of Executory Contracts and Unexpired Leases 46.     43

6.2 Rejection Claims Bar Date 47.     44

6.3 Previously Assumed and Assigned Executory Contracts 47.     44

ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS     48 44

7.1 Timing of Distributions for Allowed Claim 48 Claims. 44

7.2 Calculating Distributions and Related Matters 48.     45

7.3 Interest and Other Amounts Regarding Claims 48.     45

7.4 Distributions by Plan Administrator as Disbursing Agent 48.     45

7.5 Means of Cash Payment 48.     45

7.6 Form of Currency for Distributions 49.     45

7.7 Fractional Distributions 49.     45

7.8 De Minimis Distributions 49.     46

7.9 No Distributions With Respect to Certain Claims Generally 49. 46

7.10 Distributions and Transfers Upon Resolution of Contingent Claims, Disputed Claims, or Unliquidated Claims 50.     47

7.11 Delivery of Distributions 50.     47

7.12 Application of Distribution Record Date & Other Transfer Restrictions 51.     47

7.13 Withholding, Payment, and Reporting Requirements Regarding Distributions 51.     48

7.14 Defenses and Setoffs 52.     48

7.15 Allocation of Distributions 52.     49

| | | | |
|---|---|---|---|
| 7.16 | Joint Distributions ~~52~~ | | 49 |
| 7.17 | Forfeiture of Distributions ~~52~~ | | 49 |

~~ARTICLE VIII PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO~~ ............................................................ ~~53~~

| | | | |
|---|---|---|---|
| 8.1 | Objections to and Resolution of Disputed Claims, Including Any Claims of Excluded Parties ~~53~~ | | 49 |
| 8.2 | Claim Objections ~~53~~ | | 49 |
| 8.3 | Estimation of Certain Claims ~~53~~ | | 50 |
| 8.4 | Distributions Following Allowance ~~54~~ | | 50 |
| 8.5 | Disposition of Assets in Reserves After Disallowance ~~54~~ | | 50 |

ARTICLE IX CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ............ ~~54~~51

| | | | |
|---|---|---|---|
| 9.1 | Conditions to the Effective Date ~~54~~ | | 51 |
| 9.2 | Waiver of Conditions to the Effective Date ~~55~~ | | 52 |
| 9.3 | Effect of Non-Occurrence of Conditions to the Effective Date ~~55~~ | | 52 |
| 9.4 | Notice of the Effective Date ~~56~~ | | 52 |
| 9.5 | Payment of Plan Sponsor Contribution ~~56~~ | | 52 |

ARTICLE X  RELEASES, INJUNCTION, AND RELATED PROVISIONS ............ ~~56~~52

| | | | |
|---|---|---|---|
| 10.1 | Debtors' Releases ~~56~~ | | 52 |
| 10.2 | Third Party Releases ~~57~~ | | 54 |
| 10.3 | Exculpation and Limitation of Liability ~~59~~ | | 55 |
| 10.4 | Injunction ~~59~~ | | 55 |

ARTICLE XI RETENTION OF JURISDICTION AND POWER ............ 6157

11.1   Scope of Retained Jurisdiction and Power 61. ............ 57

11.2   Non-Exercise of Jurisdiction 63. ............ 59

ARTICLE XII MISCELLANEOUS PROVISIONS ............ 6459

12.1   Administrative Claims 64. ............ 59

12.2   Professional Fee Claims 64. ............ 60

12.3   Payment of Statutory Fees 65. ............ 60

12.4   Dissolution of the Committees 65. ............ 61

12.5   Modifications and Amendments 65. ............ 61

12.6   Severability of Plan Provisions 66. ............ 62

12.7   Compromises and Settlements 66. ............ 62

12.8   Binding Effect of Plan 67. ............ 62

12.9   Term of Injunctions or Stays 67. ............ 62

12.10  Revocation, Withdrawal, or Non-Consummation 67. ............ 62

12.11  Exemption from Transfer Taxes 67. ............ 63

12.12  Computation of Time 68. ............ 63

12.13  Transactions on Business Days 68. ............ 63

12.14  Good Faith 68. ............ 63

12.15  Governing Law 68. ............ 63

12.16  Notices 68. ............ 64

12.17  Final Decree 68. ............ 64

THIRD AMENDED JOINT CHAPTER 11 PLAN OF
LIQUIDATION OF EASTERDAY RANCHES, INC.
AND EASTERDAY FARMS—Page vii

12.18   Additional Documents 69. .................................................................... 64

12.19   Conflicts with the Plan 69. ................................................................. 64

ARTICLE XIII REQUEST FOR CONFIRMATION AND RECOMMENDATION 6964

13.1    Request for Confirmation 69. ............................................................. 64

13.2    Recommendation 70. ......................................................................... 65

# INTRODUCTION[1]

The Debtors hereby propose, with the support of the Committees, Tyson, and Segale (each as defined below), the following joint plan of liquidation (this "Plan"), which provides for the resolution of the outstanding Claims and Interests asserted against the Debtors. Reference is made to the Disclosure Statement for (i) a discussion of the Debtors' history, businesses, properties, results of operations, and financial projections; (ii) a summary and analysis of this Plan; and (iii) certain related matters, including risk factors relating to the consummation of this Plan and Distributions to be made under this Plan. The Debtors are the proponents of the Plan within the meaning of Bankruptcy Code section 1129.

All Holders of Claims who are entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127, Bankruptcy Rule 3019, and Sections 11.5 and 11.13 of the Plan, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith, have been approved for use in soliciting acceptances and rejections of this Plan. Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed to Holders of Claims to the extent required by Bankruptcy Code section 1125.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS AND SCHEDULES THERETO) AND THE PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.** ~~ARTICLE I~~

---

[1] A capitalized term used in this Introduction shall have the meanings ascribed to those terms in Article I below.

MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION ~~OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS~~ – Page 1

# ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

A capitalized term used in this Plan shall have the meanings set forth in this Article I. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules.

**1.1** **3E:** 3E Properties, a Washington general partnership.

**1.2** **3E-Produce Purchase Price:** $2,274,210.

**1.3** **3E-Produce Secured Note:** The Secured Promissory Note issued jointly by 3E and Produce in favor of the Administrative Agent, as successor in interest to Cody and Debby Easterday, in the original principal amount of the 3E-Produce Purchase Price, in substantially the form attached hereto as **Exhibit B**.

**1.4** **3E Properties Adversary Proceeding:** *Easterday Farms v. 3E Properties, et al.*, Adv. Pro. No. 21-80057-WLH (Bankr. E.D. Wash.).

**1.5** **Additional Easterday Family Releasing Parties:** The parties identified on **Exhibit A** hereto.

**1.6** **Administrative Agent:** B. Riley Advisory Services.

**1.7** **Administrative Agent Agreement:** The *Administrative Agent Agre*ement by and between Tyson and Segale, on the one hand, and the Administrative Agent, on the other hand, in substantially the form attached hereto as **Exhibit F**.

**1.8** **Administrative Claim:** A Claim (other than a Professional Fee Claim, but, for the avoidance of doubt, including Ordinary Course Professional Fee Claims) arising under Bankruptcy Code sections 503(b), 507(a)(2), 507(b), or 1114(e)(2), to the extent not previously paid, otherwise satisfied, or withdrawn, including (a) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code and (b) all Section 503(b)(9) Claims.

**1.9** **Administrative Claims Bar Date:** The last date by which any Person must File a request for payment of an Administrative Claim arising on or after April 1, 2022, which date shall be the first Business Day that is at least thirty-five (35) calendar days after the Effective Date, or, alternatively, such earlier date as is set by

**1.117 Post-Effective Date Debtors' Causes of Action:** Collectively, all Avoidance Actions and Causes of Action held by the Debtors or the Estates as of the Effective Date that shall be vested in the Post-Effective Date Debtors, in each case as against any Person that is not a Released Party or Exculpated Party. For the avoidance of doubt, the Post-Effective Date Debtors' Causes of Action exclude the North Lot Actions and any Canyon Farm Avoidance Actions.

**1.118 Post-Effective Date Debtors' Assets:** Collectively, the Distributable Assets of each Debtor allocable to the respective Post-Effective Date Debtor, including the Causes of Action.

**1.119 Post-Effective Date Debtors' Expenses:** Any and all reasonable fees, costs, and expenses incurred by the Plan Administrator not inconsistent with the Plan, including, without limitation, (i) the maintenance or disposition of the Post-Effective Date Debtors' Assets, (ii) Plan Administrator fees, indemnity reserves, attorneys' fees, the fees of professionals, and other Persons retained by the Plan Administrator, (iii) personnel-related expenses, and (iv) any taxes imposed on the Post-Effective Date Debtors' or in respect of the Post-Effective Date Debtors' Assets.

**1.120 Post-Effective Date Debtor Farms:** Farms and the Farms Estate after the Effective Date.

**1.121 Post-Effective Date Debtor Ranches:** Ranches and the Ranches Estate after the Effective Date.

**1.122 Post-Effective Date Indemnified Parties:** The Plan Administrator and their Related Parties, each in their respective capacity as such.

**1.123 Postpetition Corporate Actions:** The actions taken on March 12, 2022 by the Easterday Family purporting to remove the Independent Directors and replace them with the Replacement Directors, including the execution by the Easterday Family of (i) a unanimous written consent of the shareholders of Ranches purporting to remove the Independent Directors and (ii) an amendment to the Easterday Farms partnership agreement purporting to replace the Independent Directors with a manager

**1.124 Preference Claim:** Any Avoidance Action that may be brought by or on behalf of the Debtors or the Estates under Bankruptcy Code section 547, or under related state or federal statutes, or pursuant to any theory or cause of action under common law, regardless whether such action has been commenced prior to the Effective Date.

**1.138** **Released Parties:** Collectively, (a) the Debtors' and their Related Parties, (b) the Easterday Family Released Parties and their Related Parties, (c) the Farms Committee and its Related Parties, (d) the Ranches Committee and its Related Parties, (e) Tyson and its Related Parties, (f) Segale and its Related Parties, and (g) FRI and its Related Parties.

**1.139** **Releasing Parties:** ~~The~~Collectively, (a) the Released Parties ~~and, with~~; (b) all Holders of Claims that (i) vote to accept the Plan and (ii) do not affirmatively opt out of the Third Party Release provided by Section 10.2(a) hereof pursuant to a duly executed Ballot; *provided that*, notwithstanding anything contained herein to the contrary, in no event shall the Holder of a Claim that (x) does not vote to accept or reject this Plan, (y) votes to reject this Plan, or (z) appropriately marks the Ballot to opt out of the Third Party Release provided in Section 10.2(a) hereof and returns such Ballot in accordance with the Solicitation Procedures Order, be a Releasing Party; and (c) with the respect to the ~~release of the~~ Easterday Family Released Parties ~~as set forth herein~~, Releasing Parties shall also include the Additional Easterday Family Releasing Parties.

**1.140** **Replacement Directors:** Eric Bonnett, Clyde Hamstreet, Mark Calvert, Matt McKinlay, and Stephen Benson.

**1.141** **Replacement Director Fee:** $10,000 per Replacement Director.

**1.142** **Sale Order:** The Bankruptcy Court's *Order (A) Authorizing the Debtors to Acquire Certain Assets Owned by the Easterdays; (B) Authorizing the Sale of Property Free and Clear of Interests, Including Liens, Claims, Liabilities, and Encumbrances; (C) Granting the Buyer the Protections Afforded to a Good Faith Purchaser; (D) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (E) Granting Related Relief* [Docket No. 927], as supplemented by the *Supplemental Sale Order Concerning the Initial Paydown Amount for Prudential Insurance Company of America* [Docket No. 948].

**1.143** **Sale Transaction:** Collectively, (a) the Debtors' purchase, to the extent necessary, of the Easterday Family's rights, title and interests in and to the "Easterday Property" (as such term in defined in the Purchase and Sale Agreement); (b) the Debtors' sale to FRI of all the "Property" (as such term is defined in the Purchase and Sale Agreement); (c) FRI's leaseback of the "Property" to the Debtors pursuant to the Temporary Lease Agreement; and (d) FRI's obligation to contribute the Plan Sponsor Contribution in support of the consummation of the Plan.

**1.154 Temporary Lease Agreement**: The leaseback, effective as of July 30, 2021 by and between FRI, as lessor, and the Debtors, as lessee, that was part of the Sale Transaction evidenced by the Purchase and Sale Agreement and authorized and approved by the Bankruptcy Court pursuant to its entry of the Sale Order. For avoidance of doubt, references in the Plan to the Purchase and Sale Agreement include the Temporary Lease Agreement.

**1.155 Third Party Releases:** The releases given on behalf of the Releasing Parties as set forth in Section 10.2(a) herein.

**1.156 Tyson:** Tyson Fresh Meats, Inc. and any affiliates, successors, and assigns.

**1.157 Tyson Avoidance Action:** Any Causes of Action of the Debtors against Tyson relating to the prepetition transfer of "Customer 3 Cattle" to Tyson worth an estimated $58,100,000.00.

**1.158 Tyson Claims:** All Claims of Tyson against the Debtors.

**1.159 Tyson-Segale Preserved Claims:** All Claims of Tyson or Segale against Cody Easterday, including, to the extent applicable, community property assets.

**1.160 Unimpaired:** Any Class of Claims that is not impaired within the meaning of Bankruptcy Code section 1124.

**1.161 Uninsured Portion:** The portion of any Insured Claim, if any, that is not insured under the Debtors' insurance policies or that is beyond the extent of such coverage.

**1.162 Unliquidated Claim:** Any Claim that is Scheduled as unliquidated or that was filed in an unliquidated amount.

**1.163 U.S. Trustee:** The Office of the United States Trustee for the Eastern District of Washington.

**1.164 Voting Deadline:** The date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the Disclosure Statement Order. **ARTICLE II**

# ARTICLE II

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**2.1** **Summary and Classification of Claims.** This Section classifies Claims – except for Administrative Claims, Professional Fee Claims, and Priority Tax Claims, which are not classified – for all purposes, including confirmation, Distributions, and voting. A Claim is classified in a particular Class only to the extent that the Claim falls within the Class description. To the extent that part of a Claim falls within a different Class description, that part of the Claim is classified in that different Class. The following table summarizes the Classes of Claims under the Plan:

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|-------|-------------|---------------------|----------------|
| None | Administrative Claims | Unimpaired | Not Entitled to Vote |
| None | Professional Fee Claims | Unimpaired | Not Entitled to Vote |
| None | Priority Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 1 | Secured Claims[2] | Unimpaired | Not Entitled to Vote (deemed to accept) |
| Class 2 | Priority Claims | Unimpaired | Not Entitled to Vote (deemed to accept) |
| Class 3 | Farms General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Ranches General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Tyson Claims | Impaired | Entitled to Vote |
| Class 6 | Segale Claims Against Ranches | Impaired | Entitled to Vote |
| Class 7 | Subordinated Claims | Impaired | Not Entitled to Vote (deemed to reject) |

---

[2] To comply with Bankruptcy Code section 1122(a), each Allowed Secured Claim shall be deemed to be in its own subclass (unless such Holder shares the same Lien on Collateral with a different Holder of another Secured Claim, in which case such Claims shall be deemed to be included together in the same subclass).

MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS – Page 22

prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.~~ARTICLE III~~

## ARTICLE III

### TREATMENT OF CLAIMS AND EQUITY INTERESTS

**3.1** **Unclassified Claims.**

    **3.1.1** **Administrative Claims.** Except as otherwise provided for herein, and subject to the requirements of the Plan, on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which an Administrative Claim becomes an Allowed Administrative Claim, the Holder of such Allowed Administrative Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Claim or (b) such other less favorable treatment as to which such Holder and the Plan Administrator shall have agreed upon in writing.

    **3.1.2** **Professional Fee Claims.** Professional Fee Claims shall be paid as set forth in Section 12.2 of the Plan.

    **3.1.3** **Priority Tax Claims.** In full satisfaction, settlement, and release of, and in exchange for such Claims, Allowed Priority Tax Claims shall be paid, at the Plan Administrator's option, as follows: (a) Cash equal to the unpaid portion of such Allowed Priority Tax Claim on the later of the Effective Date and thirty (30) calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; (b) in regular installment payments in Cash over a period not exceeding five (5) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable nonbankruptcy law as of the calendar month in which the Effective Date occurs (provided that such election shall be without prejudice to the right to prepay any such Allowed Priority Tax Claim in full or in part without penalty); or (c) such other treatment as to which the Holder of an Allowed Priority Tax Claim and the Plan Administrator shall have agreed upon in writing.

**3.2** **Class 1: Secured Claims.**

    Classification. Class 1 consists of all Secured Claims against the Debtors, including Secured Tax Claims.

MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION ~~OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS~~ – Page 24

21-00141-WLH11   Doc 1643   Filed 05/24/22   Entered 05/24/22 16:31:31   Pg 20 of 79

**Treatment**. On, or as soon as reasonably practicable after, the later of (i) the Effective Date and (ii) the date on which a Priority Claim becomes payable pursuant to and as specified by an order of the Bankruptcy Court, the Holder of such Allowed Class 2 Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Class 2 Claim, either (a) Cash from the Post-Effective Date Debtors equal to the unpaid portion of such Allowed Priority Claim or (b) such other less favorable treatment to which such Holder and the Plan Administrator shall have agreed upon in writing.

**Voting**. Claims in Class 2 are Unimpaired. Each Holder of an Allowed Class 2 Claim is conclusively presumed to have accepted this Plan and, therefore, is not entitled to vote.

### 3.4 Class 3: Farms General Unsecured Claims.

**Classification**. Class 3 consists of all Farms General Unsecured Claims.

**Treatment**. On or as soon as practicable after the Effective Date, each Holder of an Allowed Class 3 Claim shall receive, as the sole distribution or dividend by Farms or its Estate under this Plan on account of such Allowed Class 3 Claim, Cash from the Post-Effective Date Debtors in an amount equal to 100% of such Holder's Allowed Class 3 Claim. Allowed Class 3 Claims shall not include any amounts for postpetition interest or attorney's fees with respect to such Class 3 Claims. The Class 3 Claims set forth on the Farms GUC Claims Schedule (Exhibit J to the Plan) shall be Allowed in the amounts set forth in the Farms GUC Claims Schedule for all purposes under the Plan, including for purposes of receiving Distributions under the Plan; *provided that*, for the avoidance of doubt, any Class 3 Claim that is not included on the Farms GUC Claims Schedule but is otherwise Allowed shall be entitled to the full treatment afforded to Class 3 Claims under the Plan. Notwithstanding anything to the contrary herein, the Debtors or the Post-Effective Date Debtors, as applicable, shall complete distributions to the Holders of Allowed Class 3 Claims set forth on the Farms GUC Claims Schedule within seven (7) calendar days after the Effective Date.

All Avoidance Actions against Holders of Allowed Farms General Unsecured Claims shall be deemed released and waived upon the Effective Date and shall not be included in the Post-Effective Date Debtors' Assets.

**Voting**. Class 3 Claims are Impaired and, therefore, each Holder of an Allowed Class 3 Claim is entitled to vote.

**5.5** **Sale Transaction.** On July 20, 2021, the Bankruptcy Court entered the Sale Order authorizing and approving the two-step Sale Transaction pursuant to which the Debtors acquired, to the extent necessary, all of the Easterday Family's right, title and interest to certain property (as defined under the Purchase and Sale Agreement) and then sold the FRI Assets to FRI, subject only to FRI's agreement to lease back certain of the FRI Assets to the Debtors pursuant to the Temporary Lease Agreement. The Plan presumes that, at Confirmation, the Temporary Lease Agreement shall have terminated on its terms and that to the extent the Debtors or FRI may have claims, rights, or ongoing obligations to each other under the Temporary Lease Agreement that survive the termination, such claims, rights, or ongoing obligations shall have been fully and finally resolved at Confirmation such that any claims, rights or ongoing obligations shall cease to exist on the Effective Date, and that the Post-Effective Date Debtors shall not inherit any claims, rights, benefits, or Causes of Action arising under, relating to, or in connection with the Purchase and Sale Agreement, the Temporary Lease Agreement, or any other agreement relating to the foregoing.

Nothing in the Plan is intended to, nor shall be construed to, alter any of the terms and conditions upon which the Sale Transaction was approved as set forth in the Purchase and Sale Agreement or in any agreement referenced in or related to the Purchase and Sale Agreement. Neither the Plan nor the Confirmation Order shall limit or otherwise affect any of the Bankruptcy Court's findings, conclusions, orders, and judgments as set forth in the Sale Order, and insofar as any of the protections afforded FRI by the Sale Order conflict with or contradict certain terms and conditions in the Plan or any findings, conclusions, orders or judgments in the Confirmation Order, the Sale Order shall govern and control with respect to FRI.

Notwithstanding anything that may suggest otherwise in the Plan, the Plan Supplement, any Schedule or Exhibit to either of the foregoing, or any other document executed in connection with Confirmation or these Chapter 11 Cases, neither the Post-Effective Date Debtors nor any Holder of any Claim or Interest shall have any claim, cause of action, right or recourse against FRI or the FRI Assets on account of or in connection with the Sale Transaction, the Purchase and Sale Agreement, the Temporary Lease Agreement, or any other agreement or document executed in connection with the consummation of the Sale Transaction between and among FRI, the Debtors and the Easterday Family.

(c)     retain, compensate, and employ professionals and other Persons to represent the Plan Administrator with respect to and in connection with its rights and responsibilities;

(d)     establish, maintain, and administer documents and accounts of the Debtors or Post-Effective Date Debtors as appropriate, which shall be segregated to the extent appropriate in accordance with the Plan;

(e)     maintain, conserve, collect, settle, and protect the Post-Effective Date Debtors' Assets (subject to the limitations described herein);

(f)     sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of the Post-Effective Date Debtors' Assets, including the Distributable Assets and the Net Distributable Assets, or any part thereof or interest therein upon such terms as the Plan Administrator determines to be necessary, appropriate, or desirable;

(g)     negotiate, incur, and pay the Post-Effective Date Debtors' Expenses;

(h)     prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtors or Post-Effective Date Debtors that are required under the Plan, by any governmental unit, or by applicable law, including but not limited to filing any reports required by the Bankruptcy Code or Bankruptcy Rules that are due to be filed after the Effective Date and paying any fees required by 28 U.S.C. § 1930 that are due to be paid after the Effective Date;

(i)     compile and maintain the official claims register, including for purposes of making initial and subsequent Distributions under the Plan;

(j)     take such actions as are necessary or appropriate to wind-down and dissolve the Debtors or the Post-Effective Date Debtors;

(k)     comply with the Plan, exercise the Plan Administrator's rights, and perform the Plan Administrator's obligations; and

(l)     exercise such other powers as deemed by the Plan Administrator to be necessary and proper to implement the Plan.

To the extent necessary to give full effect to its administrative rights and duties under the Plan, the Plan Administrator shall be deemed to be vested with all rights, powers, privileges, and authorities of (i) an appropriate corporate or partnership director, officer, or manager of each of the Debtors under any applicable

Actions or Causes of Action upon or after Confirmation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except when such Avoidance Actions or Causes of Action have been expressly released. In addition, the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors or the Plan Administrator is a plaintiff, defendant, or an interested party is fully reserved as against any Person that is not a Released Party, including the plaintiffs or co-defendants in such lawsuits.

**5.11   Cancellation of Instruments.** Except to the extent necessary to give effect to the treatment of any Holder of an Allowed Claim and except with respect to any executory contracts and unexpired leases that are assumed under the Plan or otherwise assumed and assigned pursuant to a Final Order, any agreement, bond, certificate, contract, indenture, lease, note, security, warrant, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be deemed cancelled on the Effective Date, and all Liens, mortgages, pledges, grants, trusts, and other interests relating thereto shall be automatically cancelled, and all obligations of the Debtors thereunder or in any way related thereto shall be released, *provided, however*, that any of the Interests in Ranches shall be deemed to be held in trust by the Plan Administrator to the extent necessary for the Plan Administrator to perform its duties in the Plan.

**5.12   Insurance Policies.**

**5.12.1 Insurance Policies Remain In Force.**  Up to and including their policy expiration date(s), any and all Insurance Policies in effect as of the Effective Date shall remain in full force and effect according to their terms and the coverage obligations of the insurers and third party administrators under such Insurance Policies shall continue following the Effective Date (including any obligations to pay, defend, and process insured claims).

**5.12.2 Insurance Policies; Employment Practice Liability Policies; Similar Policies.**  Nothing contained in this Plan shall affect or impair the rights of any non-Debtor insured persons covered under any Insurance Policy, which expressly includes any director and officer, employment practices, or similar liability Insurance Policies (including, without limitation, policies for the benefit of the Debtors' directors, officers, employees, members, managers, or similar persons who served in such capacity either before or after the Petition Date).

**5.13   Settlement of Avoidance Actions Against Tyson.** ~~5.14~~ Notwithstanding anything in the Plan to the contrary, on the Effective Date, all Avoidance Actions and any possible objections, defenses, challenges, setoffs, recoupment, or other basis for

MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION ~~OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS~~ – Page 46

21-00141-WLH11   Doc 1643   Filed 05/24/22   Entered 05/24/22 16:31:31   Pg 24 of 79

required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

**7.8** **De Minimis Distributions.** If the amount of Cash to be distributed to the Holder of an Allowed Claim is less than fifty dollars ($50) on a particular distribution date, the Plan Administrator may hold the Cash distributions to be made to such Holders until the aggregate amount of Cash to be distributed to each applicable Holder is in an amount equal to or greater than fifty dollars ($50). Notwithstanding the preceding sentence, if the aggregate amount of Cash distributions owed to any Holder of an Allowed Claim under the Plan never equals or exceeds fifty dollars ($50), then the Plan Administrator shall not be required to distribute Cash to any such Holder.

**7.9** **No Distributions With Respect to Certain Claims.** Notwithstanding anything in the Plan to the contrary, no Distributions or other consideration of any kind shall be made on account of any Contingent Claim, Disputed Claim, or Unliquidated Claim unless and until such Claim becomes an Allowed Claim, and then only to the extent that such Claim becomes an Allowed Claim and as provided under the Plan for such Allowed Claim. Nonetheless, in undertaking the calculations concerning Allowed Claims under the Plan, including the determination of Distributions due to the Holders of Allowed Claims, each Contingent Claim, Disputed Claim, or Unliquidated Claim shall be treated as if it were an Allowed Claim (which, for Unliquidated Claims, shall mean they shall be treated as if Allowed in such amounts as determined in the reasonable discretion of the Plan Administrator), except that if the Bankruptcy Court estimates the likely portion of such a Claim to be Allowed or authorized or the Bankruptcy Court or the Holder of such Claim and the Plan Administrator otherwise determine the amount or number that would constitute a sufficient reserve for such a Claim, such amount or number as determined by the Bankruptcy Court or by agreement of the Holder of such Claim and the Plan Administrator shall be used with respect to such Claim. Distributions due in respect of a Contingent Claim, Disputed Claim, or Unliquidated Claim shall be held in reserve by the Plan Administrator in one or more Distribution Reserves. The Plan Administrator may elect to treat any Distribution Reserve as a "Disputed Ownership Fund," pursuant to Treasury Regulation section 1.468B-9(c)(2)(ii). As outlined in this election, Creditors holding such Claims are not treated as transferors of the money or property transferred to the "Disputed Ownership Fund." For U.S. federal income tax purposes, a "Disputed Ownership Fund" is treated as the owner of all assets that it holds. A "Disputed Ownership Fund" is treated as a C corporation for purposes of the Internal Revenue Code unless all assets transferred to the

Disputed Ownership Fund are passive investment assets for tax purposes, in which case it will be treated as a "qualified settlement fund" for U.S. federal income tax purposes. A "Disputed Ownership Fund" must file all required income and information tax returns and make all tax payments.

**7.10** **Distributions and Transfers Upon Resolution of Contingent Claims, Disputed Claims, or Unliquidated Claims.** After an objection to a Disputed Claim is resolved or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, an amount of Cash held in the Disputed Ownership Fund corresponding to the amount of any resulting Allowed Claim shall be transferred, net of any tax payable by the Disputed Ownership Fund with respect to the transfer, in a taxable transaction to the Holder of the formerly Contingent Claim, Disputed Claim, or Unliquidated Claim. Upon each such resolution of a Claim against the Disputed Ownership Fund and such transfer with respect to any resulting Allowed Claim, any remaining Cash in the Disputed Ownership Fund that had been held with respect to such formerly Contingent Claim, Disputed Claim, or Unliquidated Claim prior to its resolution shall be transferred, net of any tax payable by the Disputed Ownership Fund with respect to such transfers, for payment, allocation, or reserve in accordance with the Plan for (a) unpaid or unutilized amounts for Post-Effective Date Debtors' Expenses or (b) any post-Confirmation reserve requirements of the Post-Effective Date Debtors in connection with the Plan, any agreements, or any Bankruptcy Court orders. To the extent any such remaining Cash is not so utilized, it shall be considered Net Distributable Assets and Available Cash for distribution to the Holders of Allowed Claims in Classes 5 and 6 on a Pro Rata basis, net of any tax payable by the Disputed Ownership Fund with respect to the respective transfers.

**7.11** **Delivery of Distributions.** Distributions shall be made by the Plan Administrator to Holders of the Allowed Claims as of the record date set for such Distribution. Distributions to Holders of Allowed Claims shall be made (a) at the addresses set forth in the proofs of claim Filed by such Holders, (b) at the addresses reflected in the Schedules if no proof of claim has been Filed, or (c) at the addresses set forth in any written notices of address changes delivered to the Debtors or the Plan Administrator. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Plan Administrator is notified of such Holder's then-current address. The responsibility to provide the Claims Agent or the Plan Administrator with a current address of a Holder of an Allowed Claim shall always be the responsibility of such Holder. Amounts in respect of undeliverable Distributions made by the Plan Administrator shall be held in trust on behalf of the Holder of the Allowed Claim to which they are

payable by the Plan Administrator until the earlier of the date that such undeliverable Distributions are claimed by such Holder and 180 calendar days after the date the undeliverable Distributions were made.

**7.12   Application of Distribution Record Date & Other Transfer Restrictions.** At the close of business on the Distribution Record Date, the claims registers for all Claims shall be closed, and there shall be no further changes in the record holders of any Claims. Except as provided herein, the Post-Effective Date Debtors and their Related Parties shall have no obligation to recognize any putative transfer of Claims occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the claims registers as of the close of business on the Distribution Record Date irrespective of the number of Distributions to be made under the Plan to such Persons or the date of such Distributions. In addition, the Post-Effective Date Debtors and their Related Parties shall have no obligation to recognize any putative transfer of General Unsecured Claims occurring at any time prior to the Effective Date to which the Debtors did not expressly consent and shall be entitled instead to recognize and deal for all purposes hereunder with only the Holders of General Unsecured Claims as reflected on the claims registers.

**7.13   Withholding, Payment, and Reporting Requirements Regarding Distributions.** All Distributions under the Plan shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment, and reporting requirements. The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements, including, to the extent such information is not already available to the Plan Administrator, requiring each Holder of a Claim to provide an executed current Form W-9, Form W-8, or similar tax form as a prerequisite to receiving a Distribution. Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed on the Post-Effective Date Debtors in connection with such Distribution; and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements reasonably satisfactory to the Plan Administrator for the payment and satisfaction of such

withholding tax obligations or such tax obligation that would be imposed in connection with such Distribution.

**7.14    Defenses and Setoffs.** On and after the Effective Date, the Plan Administrator shall have all of the Debtors' and the Estates' rights under Bankruptcy Code section 558. Except as otherwise expressly provided in this Plan, nothing under the Plan shall affect the rights and defenses of the Debtors, the Estates, or the Post-Effective Date Debtors in respect of any Claim, including all rights in respect of legal and equitable objections, defenses, challenges, setoffs, or recoupment against such Claims. Accordingly, and except as otherwise expressly provided in this Plan, the Plan Administrator may, but shall not be required to, set off against any Claim or any Allowed Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors, the Estates, or the Post-Effective Date Debtors, as applicable, may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim or rights that may exist against such Holder.

**7.15    Allocation of Distributions.** All Distributions received under the Plan by Holders of Claims shall be deemed to be allocated first to the principal amount of such Claim, as determined for ~~United States~~U.S. federal income tax purposes, and then to accrued interest, if any, with respect to such Claim through the Petition Date.

**7.16    Joint Distributions.** The Plan Administrator may, in its sole discretion, make Distributions jointly to any Holder of a Claim and any other Person that the Plan Administrator has determined to have an interest in such Claim.

**7.17    Forfeiture of Distributions.** If the Holder of a Claim fails to cash a check payable to it within the time period set forth in Section 7.5, fails to claim an undeliverable Distribution within the time limit set forth in Section 7.11, or fails to complete and return to the Plan Administrator the appropriate Form W-8 or Form W-9 within 180 calendar days after a request for the completion and return of the appropriate form pursuant to Section 7.13 (or such later time as approved by a Bankruptcy Court order), then such Holder shall be deemed to have forfeited its right to any reserved and future Distributions under the Plan. Any such forfeited Distributions shall be deemed Available Cash for all purposes, notwithstanding any federal or state escheat laws to the contrary.

MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION ~~OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS~~ – Page 53

21-00141-WLH11    Doc 1643    Filed 05/24/22    Entered 05/24/22 16:31:31    Pg 28 of 79

**9.4    Notice of the Effective Date.** Promptly after the occurrence of the Effective Date, the Post-Effective Date Debtors or its agents shall mail or cause to be mailed to all Creditors a notice that informs such Creditors of (i) entry of the Confirmation Order and the resulting confirmation of the Plan; (ii) the occurrence of the Effective Date; (iii) the rejection of executory contracts and unexpired leases pursuant to the Plan, as well as the deadline for the filing of resulting Rejection Claims; (iv) the deadline established under the Plan for the filing of Administrative Claims; and (v) such other matters as the Plan Administrator finds appropriate.

**9.5    Payment of Plan Sponsor Contribution.** Promptly after the occurrence of the Effective Date, FRI shall deposit the Plan Sponsor Contribution in one or more deposit accounts at the direction of either (a) the Debtors, (b) the Plan Administrator, or (c) in the event of any disputes between and among the foregoing, an order of the Bankruptcy Court.~~ARTICLE X~~

## ARTICLE X

### RELEASES, INJUNCTION, AND RELATED PROVISIONS

**10.1    Debtors' Releases.**

**(a)    On the Effective Date and to the fullest extent authorized by applicable law, the Released Parties and their respective property will be expressly, unconditionally, generally, individually, and collectively released, acquitted, and discharged by the Debtors on behalf of themselves, their estates, the Post-Effective Date Debtors, and the Plan Administrator (such that the Post-Effective Date Debtors and Plan Administrator will not hold any Claims or Causes of Action released pursuant to this Plan), for the good and valuable consideration provided by each of the Released Parties, from any and all actions, claims, debts, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative or deficiency claims asserted or that could be asserted by or on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by state law (including Washington State partnership law), statute, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, any of the Debtors' present or former assets, the Released Parties' interests in or management of the Debtors, this Plan, the Disclosure Statement, these Chapter 11 Cases, or the Sale Transaction, including those that the**

MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION ~~OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS~~ – Page 57

21-00141-WLH11    Doc 1643    Filed 05/24/22    Entered 05/24/22 16:31:31    Pg 29 of 79

**arrangements between the Debtors and any Released Party, this Plan, the Disclosure Statement, the Chapter 11 Cases, or the Sale Transaction, including those that the Debtors, the Post-Effective Date Debtors, or the Plan Administrator would have been legally entitled to assert or that any Holder of a Claim against or interest in the Debtors or any other Entity could have been legally entitled to assert derivatively or on behalf of the Debtors or their Estates, including any deficiency claim under Washington State partnership law, except for (1) Tyson-Segale Preserved Claims, (2) Cody Easterday Preserved Claims, and (2) the right to receive Distributions from the Debtors, the Post-Effective Date Debtors, or the Plan Administrator on account of an Allowed Claim against the Debtors pursuant to this Plan. For the avoidance of doubt, the Releasing Parties shall include (1) the Released Parties, (2) Holders of Interests except as carved out for certain Creditors, and (2̶3) all Holders of Claims that (a) vote to accept the Plan and (b) do not affirmatively opt out of the Third Party Release provided by this section pursuant to a duly executed ballot. Notwithstanding anything to the contrary contained herein, in no event shall an Entity that (1) does not vote to accept or reject this Plan, (2) votes to reject this Plan, or (3) appropriately marks the ballot to opt out of the Third Party Release provided in this section and returns such ballot in accordance with the Solicitation Procedures Order, be a Releasing Party unless they have otherwise agreed to a release.**

**(b)    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third Party Releases set forth in Section 10.2(a) above, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of the Claims released by the Third Party Releases; (3) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar against any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third Party Releases.**

**(c)    The foregoing Third Party Releases are an integral component of the Global Settlement.**

(e)   ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE PLAN ADMINISTRATOR, THE POST-EFFECTIVE DATE DEBTORS, THE ADMINISTRATIVE AGENT, AND EACH OF THEIR RESPECTIVE ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS, OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE. NOTHING IN THIS SECTION 10.4 SHALL ENJOIN ANY CLAIM OR CAUSE OF ACTION THAT IS NOT RELEASED OR EXCULPATED PURSUANT TO SECTIONS 10.1, 10.2, AND 10.3 OF THIS PLAN OR THE CONFIRMATION ORDER.

(f)   NOTWITHSTANDING ANY OTHER PROVISION OF THIS PLAN TO THE CONTRARY, THE DEBTORS SHALL NOT RECEIVE A DISCHARGE.~~ARTICLE XI~~

## ARTICLE XI

## RETENTION OF JURISDICTION AND POWER

**11.1   Scope of Retained Jurisdiction and Power.** Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain jurisdiction and power over all matters arising in, arising under, or related to the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including jurisdiction and power to do the following:

(a)   except as otherwise Allowed pursuant to the Plan or in the Confirmation Order, Allow, classify, determine, disallow, establish the priority or secured or unsecured status of, estimate, limit, liquidate, or subordinate any Claim, in whole or in part, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims;

(b)   hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b), 1103, and 1129(a)(4);

(c)   hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or

MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION ~~OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS~~ – Page 62

connection with the Chapter 11 Cases (whether or not any or all of the Chapter 11 Cases have been closed);

(m) except as otherwise limited herein, recover all Estate Assets and Post-Effective Date Debtors' Assets, wherever located;

(n) hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(o) hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

(p) hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, the Bankruptcy Code and title 28 of the United States Code;

(q) resolve any cases, controversies, suits, or disputes related to the Post-Effective Date Debtors, the Plan Administrator, or the Debtors;

(r) enforce the Sale Order; and

(s) enter a final decree closing the Chapter 11 Cases of the Debtors.

**11.2 <u>Non-Exercise of Jurisdiction.</u>** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, the provisions of this Article XI shall have no effect on, and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to, such matter.~~ARTICLE XII~~

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

**12.1 <u>Administrative Claims.</u>** Subject to the last sentence of this Section 12.1, all requests for payment of an Administrative Claim arising on or after April 1, 2022 must be filed with the Bankruptcy Court no later than the Administrative Claims Bar Date. In the event of an objection to Allowance of an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. **THE FAILURE TO FILE A MOTION REQUESTING ALLOWANCE OF AN ADMINISTRATIVE CLAIM ON OR BEFORE THE ADMINISTRATIVE CLAIMS BAR DATE, OR THE FAILURE TO SERVE SUCH MOTION**

MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION ~~OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS~~ – Page 64

21-00141-WLH11    Doc 1643    Filed 05/24/22    Entered 05/24/22 16:31:31    Pg 32 of 79

**13.2** __Recommendation.__ The Debtors believe that confirmation and implementation of the Plan are the best alternative under the circumstances and urge all Impaired Creditors entitled to vote on the Plan to vote in favor of and support confirmation of the Plan.

Respectfully,

**EASTERDAY RANCHES, INC.**

By: _____/s/ Peter Richter_____
Name: Peter Richter
Title: Co-Chief Restructuring Officer

**EASTERDAY FARMS**

By: _____/s/ Peter Richter_____
Name: Peter Richter
Title: Co-Chief Restructuring Officer

Submitted by:

Dated: May ~~11~~24, 2022          BUSH KORNFELD LLP

_/s/ Thomas A. Buford, III_____
THOMAS A. BUFORD, III (WSBA 52969)
BUSH KORNFELD LLP

RICHARD M. PACHULSKI (admitted *pro hac vice*)
JEFFREY W. DULBERG (admitted *pro hac vice*)
MAXIM B. LITVAK (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP

*Attorneys for Debtors and Debtors in Possession*

MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION ~~OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS~~ – Page 71

# <u>EXHIBIT B</u>

# Comparison of Modified Third Amended

# Disclosure Statement to Third Amended

# Disclosure Statement

# (Changed Pages Only and Exhibits Omitted)

ARMAND J. KORNFELD (WSBA #17214)
THOMAS A. BUFORD (WSBA #52969)
RICHARD B. KEETON (WSBA #51537)
BUSH KORNFELD LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Tel.: (206) 292-2110
Facsimile: (206) 292-2104
Emails: jkornfeld@bskd.com,
tbuford@bskd.com, and rkeeton@bskd.com

RICHARD M. PACHULSKI (CA Bar #90073)*
JEFFREY W. DULBERG (CA Bar #181200)*
MAXIM B. LITVAK (CA Bar #215852)*
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003
Tel: (310) 277-6910
Facsimile: (310) 201-0760
Emails: rpachulski@pszjlaw.com,
jdulberg@pszjlaw.com, and
mlitvak@pszjlaw.com

*Admitted *Pro Hac Vice*

*Attorneys for Debtors and Debtors in Possession*

HON. WHITMAN L. HOLT
Hearing Date: May 25, 2022
Hearing Time: ~~11:00~~10:00 a.m.
Location: Telephonic

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| EASTERDAY RANCHES, INC., *et al.* | Lead Case No. 21-00141-11 Jointly Administered |
| Debtors.[1] | **DISCLOSURE STATEMENT FOR THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS** |

**NOTE: THIS DISCLOSURE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING**

---

[1] The Debtors along with their case numbers are as follows: Easterday Ranches, Inc. (21-00141) and Easterday Farms, a Washington general partnership (21-00176).

DOCS_NY:~~45732.1~~45732.2

| **ADEQUATE INFORMATION WITHIN THE MEANING OF SECTION 1125(A) OF THE BANKRUPTCY CODE** |
|---|

## DISCLAIMER

**THIS DISCLOSURE STATEMENT PROVIDES INFORMATION REGARDING THE MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF DEBTORS EASTERDAY RANCHES, INC. AND EASTERDAY FARMS, WHICH BANKRUPTCY PLAN THE DEBTORS ARE SEEKING TO HAVE CONFIRMED BY THE BANKRUPTCY COURT. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED FOR PURPOSES OF SOLICITING ACCEPTANCES TO, AND CONFIRMATION OF, THE PLAN AND MAY NOT BE RELIED ON FOR ANY OTHER PURPOSE. APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A DETERMINATION OR RECOMMENDATION BY THE BANKRUPTCY COURT REGARDING THE FAIRNESS OR THE MERITS OF THE PLAN.**

**THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN, CERTAIN STATUTORY PROVISIONS, AND CERTAIN DOCUMENTS RELATING TO THE PLAN. IN THE EVENT OF ANY CONFLICT, INCONSISTENCY, OR DISCREPANCY BETWEEN THE TERMS AND PROVISIONS IN THE PLAN AND THIS DISCLOSURE STATEMENT, THE PLAN SHALL GOVERN FOR ALL PURPOSES. ALL HOLDERS OF CLAIMS SHOULD READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN.**

**THE STATEMENTS CONTAINED HEREIN HAVE BEEN MADE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. HOLDERS OF CLAIMS AND INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER AT THE TIME OF SUCH REVIEW THAT THERE HAVE BEEN NO CHANGES IN THE FACTS SET FORTH HEREIN. ALTHOUGH THE DEBTORS HAVE MADE AN EFFORT TO DISCLOSE WHERE CHANGES IN PRESENT CIRCUMSTANCES COULD REASONABLY BE EXPECTED TO AFFECT MATERIALLY THE RECOVERIES UNDER THE PLAN, THIS DISCLOSURE STATEMENT IS QUALIFIED TO THE EXTENT CERTAIN EVENTS DO OR DO NOT OCCUR.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE**

# TABLE OF CONTENTS

GENERAL OVERVIEW AND SUMMARY .................................................... ~~1~~2

I.   INTRODUCTION ............................................................................... ~~1~~2

    A.   Overview of the Plan ....................................................... ~~2~~3

        1.   General Structure of the Plan ................................. ~~2~~3

        2.   Material Terms of the Plan ..................................... ~~6~~7

        3.   Summary of Treatment of Claims and Interests Under the Plan ................................................................. ~~7~~8

    B.   Plan Voting Instructions and Procedures ....................... ~~9~~10

        1.   Voting Rights ....................................................... ~~9~~10

        2.   Solicitation Materials .......................................... ~~10~~11

        3.   Voting Instructions and Procedures ..................... ~~12~~13

        4.   Confirmation Hearing and Deadline for Objections to Confirmation ................................................... ~~15~~16

II.  BACKGROUND REGARDING THE DEBTORS ....................... ~~15~~16

    A.   Overview of the Debtors ............................................... ~~15~~16

    B.   Debtors' Management .................................................... ~~16~~17

    C.   Debtors' Prepetition Capital Structure .......................... ~~17~~19

        1.   Assets & Sale Thereof ......................................... ~~17~~19

        2.   Liabilities ............................................................ ~~18~~19

    D.   Events Leading to the Chapter 11 Cases ........................ ~~23~~25

III. THE CHAPTER 11 CASES ....................................................... ~~25~~26

    A.   First Day Orders and Initial Employment Applications .... ~~25~~27

    B.   Appointment of the Unsecured Creditors' Committees ..... ~~26~~27

    C.   United States Trustee ................................................... ~~27~~28

    D.   Meeting of Creditors ................................................... ~~27~~28

1

E.    Schedules, Statements of Financial Affairs, Claims Bar Dates, and Filed Claims .......................................................................... ~~27~~28

F.    Cash Collateral Motions .......................................................... ~~28~~29

G.    Lindsay Canyon Term Sheet and DIP Loan ............................ ~~28~~30

H.    Tyson ......................................................................................... ~~30~~31

I.    WTB Trustee Motion ................................................................ ~~31~~33

J.    Commodity Futures Trading Commission Action ................... ~~31~~33

K.    Lamb Weston Agreement ......................................................... ~~33~~35

L.    Rejection or Assumption of Certain Executory Contracts and Unexpired Leases .................................................................... ~~34~~36

    1.    Basin City Rejection ..................................................... ~~34~~36

    2.    Rejection of Karen Easterday Lease .............................. ~~34~~36

    3.    Assumption & Assignment of Certain Leases ............... ~~35~~37

    4.    Rejection of Lindsay Canyon and Additional Basin City Leases ........................................................................... ~~35~~37

    5.    Assumption of Certain Agreements in Connection with the Sale Process ................................................................ ~~35~~37

    6.    Equipment Leases .......................................................... ~~36~~38

    7.    Sale of Farm Equipment ................................................ ~~36~~38

    8.    Termination of Retirement Plan .................................... ~~36~~38

M.    Cooperation Agreement ........................................................... ~~37~~39

N.    Rabo Injunction ....................................................................... ~~39~~42

O.    The Sale Process ...................................................................... ~~41~~43

P.    Treatment of Prudential and Equitable Secured Claims .......... ~~45~~47

Q.    ~~Allocation~~Plan Process/Agreement with the Partners ............ ~~48~~50

R.    Plan Filing & Solicitation Exclusivity .................................... ~~49~~51

S.    Tyson Derivative Standing Motion .......................................... ~~50~~53

T.    Aircraft Sale ............................................................................ ~~51~~54

U.    Complaint Against 3E .............................................................. ~~51~~54

DOCS_NY:~~45732.1~~45732.2

| | | | |
|---|---|---|---|
| V. | The WTB and CHS Settlements | | ~~52~~54 |
| W. | The Post-petition Corporate Actions and Governance Adversary Proceeding | | ~~53~~56 |
| X. | Global Settlement | | ~~54~~57 |
| IV. | SUMMARY OF THE JOINT CHAPTER 11 PLAN | | ~~58~~61 |
| | A. | Purpose and Effect of the Plan | ~~59~~62 |
| | B. | Classification of Claims and Interests Under the Plan | ~~59~~63 |
| | | 1. Subordinated Claims | ~~59~~63 |
| | | 2. Classification and Voting Controversies | ~~60~~63 |
| | C. | Treatment of Claims and Interests Under the Plan | ~~60~~63 |
| | | 1. Unclassified Claims | ~~60~~63 |
| | D. | Releases and Related Matters | ~~69~~72 |
| | | 1. Debtor Releases | ~~69~~72 |
| | | 2. Third Party Releases | ~~70~~74 |
| | E. | Exculpation and Limitation of Liability | ~~72~~76 |
| | F. | Term of Injunctions or Stays | ~~73~~77 |
| | G. | Good Faith. | ~~75~~79 |
| | H. | The Post-Effective Date Debtors | ~~75~~79 |
| | | 1. Estimated Recoveries for Ranches General Unsecured Claims (Class 4), Tyson (Class 5) and Segale (Class 6) | ~~76~~80 |
| V. | MEANS FOR IMPLEMENTATION OF PLAN | | ~~77~~81 |
| | A. | Implementation of the Plan | ~~77~~81 |
| | | 1. Sale Transaction | ~~78~~82 |
| | | 2. Net Sale Proceeds | ~~79~~83 |
| | B. | Streamlining of the Debtors' Corporate Affairs | ~~79~~83 |
| | | 1. Debtors' Existing Directors, Officers, and Managers | ~~79~~83 |
| | | 2. Dissolution of the Debtors | ~~80~~84 |
| | | 3. Corporate Documents and Corporate Authority | ~~80~~84 |

3

C.    Plan Administrator ................................................... ~~81~~84

    1.    Appointments .............................................. ~~81~~84

    2.    Vesting of Post-Effective Date Debtors' Assets ........... ~~81~~85

    3.    Authority of the Plan Administrator ...................... ~~82~~86

    4.    Limitation of Liability .................................. ~~83~~87

    5.    Indemnification .......................................... ~~84~~88

    6.    Insurance ................................................ ~~85~~89

    7.    Tax Reporting ............................................ ~~85~~89

    8.    Cash Investments ......................................... ~~85~~89

    9.    Pursuit and Resolution of Post-Effective Date Debtors' Causes of Action ...................................... ~~86~~89

    10.   No Successor Liability ................................... ~~86~~90

    11.   Preservation of Privileges and Defenses ................. ~~87~~90

D.    Preservation of Rights of Action ................................... ~~87~~91

    1.    Maintenance of Avoidance Actions and Causes of Action .... ~~87~~91

    2.    Preservation of All Post-Effective Date Debtors' Causes of Action Not Expressly Settled or Released ............. ~~88~~92

E.    Cancellation of Instruments ........................................ ~~89~~93

VI.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................ ~~89~~93

A.    Rejection of Executory Contracts and Unexpired Leases .............. ~~89~~93

    1.    Rejection of Agreements. ................................. ~~89~~93

VII.  RISK FACTORS ....................................................... ~~91~~95

A.    Parties May Object to the Plan's Classification of Claims and Interests ......................................................... ~~91~~95

B.    The Debtors May Not Be Able to Obtain Confirmation of the Plan ~~91~~95

C.    The Conditions Precedent to the Effective Date of the Plan May Not Occur ......................................................... ~~92~~96

4

| | | | |
|---|---|---|---|
| D. | Claims Estimation and Allowance of Claims | | ~~93~~97 |
| E. | Tax Considerations | | ~~93~~97 |
| VIII. | CONFIRMATION OF THE PLAN | | ~~93~~97 |
| | A. | The Confirmation Hearing | ~~93~~97 |
| | B. | Requirements for Confirmation of the Plan | ~~94~~98 |
| | C. | Best Interests of Creditors | ~~95~~99 |
| | D. | Feasibility | ~~97~~101 |
| | E. | Acceptance by Impaired Classes | ~~97~~101 |
| | F. | Confirmation Without Acceptance by All Impaired Classes | ~~98~~102 |
| | | 1. No Unfair Discrimination | ~~98~~103 |
| | | 2. Fair and Equitable Test | ~~99~~103 |
| | G. | Alternatives to Confirmation and Consummation of the Plan | ~~99~~103 |
| | H. | Revocation, Withdrawal, or Non-Consummation. | ~~100~~104 |
| IX. | CERTAIN UNITED STATES FEDERAL  INCOME TAX CONSEQUENCES OF THE  PLAN | | ~~100~~ |
| | ~~A.~~ | ~~Certain U.S. Federal Income Tax Consequences to U.S. Holders of Secured Claims~~ | ~~104~~ |
| | | ~~1. Taxable Exchange~~ | ~~104~~ |
| | | ~~2. Accrued Interest~~ | ~~104~~ |
| ~~3.~~ | ~~Market Discount~~ TO HOLDERS OF ALLOWED CLAIMS | | 105 |
| | ~~B~~A. | Certain ~~U.S. Federal Income~~ Tax Consequences to ~~U.S.~~ Holders of ~~Unsecured~~Allowed Claims | ~~106~~108 |
| | ~~1~~B. | Disputed Ownership Funds | ~~106~~110 |
| | C. | Backup Withholding ~~and Information Reporting~~ | ~~107~~111 |
| | D. | Importance of Obtaining Professional Tax Assistance | 111 |
| X. | RECOMMENDATION | | ~~108~~112 |

## **EXHIBITS & SCHEDULES**

EXHIBIT A        Modified Third Amended Joint Chapter 11 Plan of Liquidation

EXHIBIT B        Liquidation Analysis

EXHIBIT C        Description of Potential Claims Against the Easterday Family

EXHIBIT D        Statement of Easterday Family Regarding the Easterday Family Contributions

EXHIBIT E        Ranches Committee's Statement in Support of the Plan

EXHIBIT F        Farms Committee's Statement in Support of the Plan

## GENERAL OVERVIEW AND SUMMARY

This disclosure statement (the "Disclosure Statement") (a) describes the historical background that led to the bankruptcy cases of Easterday Ranches, Inc. ("Ranches") and Easterday Farms ("Farms"), debtors and debtors in possession (collectively, the "Debtors"), (b) explains what has happened in the months since the Debtors commenced their bankruptcy cases, and (c) sets forth the treatment of creditors in the *Modified Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* (as amended, modified, or supplemented from time to time pursuant to its terms, the "Plan"). A copy of the Plan is attached hereto as **Exhibit A**.[1]  This Disclosure Statement is qualified in all respects by the *express* terms of the Plan.

## I.  INTRODUCTION

The Debtors in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby submit this Disclosure Statement pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "Bankruptcy Code"), in connection with the solicitation of votes on the Plan.

---

[1] All capitalized terms used but not defined herein shall have the meanings provided to such terms in the Plan. To the extent that a definition of a term in the text of this Disclosure Statement and the definition of such term in the Plan are inconsistent, the definition included in the Plan will control and govern.  The summary of the Plan provided herein is qualified in its entirety by reference to the Plan. In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, any other order entered in the Chapter 11 Cases, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence, except as otherwise expressly stated in the Plan; *provided*, *however*, that the Confirmation Order shall control and take precedence in the event of any inconsistency between the Confirmation Order, any provision of the Plan, and any of the foregoing documents.

DOCS_NY:45732.145732.2

and the Effective Date occurs, such releases, exculpations and injunctions shall be binding on the Holders of Claims and Interests except as otherwise described in Article IV. D. below.

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST, AND INTERESTS IN, THE DEBTORS AND SUCH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASE OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR AFFIRMATIVELY VOTED TO REJECT THE PLAN.

In these Chapter 11 Cases, the Plan contemplates an orderly liquidation of the remaining assets of both Debtors and the distribution of available assets to Creditors.

The Distributable Assets of each Debtor primarily consist of each Debtor's respective interest in the Net Sale Proceeds from the disposition of the Debtors' principal assets, the Plan Sponsor Contribution, certain crops and equipment, Cash, the Post-Effective Date Debtors' Causes of Action[12] and certain Cash and other contributions to be made by the Easterday Family in connection with the Global Settlement. The estimated recoveries to Creditors set forth in this Disclosure Statement do not take into account potential proceeds of the Post-Effective Date

---

[12] All Avoidance Actions against Holders of Allowed Farms General Unsecured Claims, Allowed Ranches General Unsecured Claims, Allowed Tyson Claims and Allowed Segale Claims are being resolved through the Plan and shall not be included in the Post-Effective Date Debtors' Causes of Action. Additionally, the Causes of Action shall not include the North Lot Actions or the Canyon Farm Avoidance Actions. As a result, the Debtors do not anticipate that there will be any material Post-Effective Date Debtors' Causes of Action.

DOCS_NY:45732.145732.2

**THE PROJECTED RECOVERIES FOR THE CLAIMS SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND ACTUAL RECOVERIES MAY DIFFER.**

| Class | Description | Impaired/ Unimpaired | Projected Recovery |
|---|---|---|---|
| None | Administrative Claims | Unimpaired (deemed to accept) | 100% |
| None | Professional Fee Claims | Unimpaired (deemed to accept) | 100% |
| None | Priority Tax Claims | Unimpaired (deemed to accept) | 100% |
| Class 1 | Secured Claims²3 | Unimpaired (deemed to accept) | 100% |
| Class 2 | Priority Claims | Unimpaired (deemed to accept) | 100% |
| Class 3 | Farms General Unsecured Claims | Impaired (entitled to vote) | 100% ([$18.5] million) |
| Class 4 | Ranches General Unsecured Claims | Impaired (entitled to vote) | [71%] [65.3% ($2.82.6 million)] |
| Class 5 | Tyson Claims | Impaired (entitled to vote) | [28%] [23.6% ($65.961.6 |

---

²3     To comply with Bankruptcy Code section 1122(a), each Allowed Secured Claim shall be deemed to be in its own subclass (unless such Holder shares the same Lien on Collateral with a different Holder of another Secured Claim, in which case such Claims shall be deemed to be included together in the same subclass).

DOCS_NY:45732.145732.2

| Class | Description | Impaired/ Unimpaired | Projected Recovery |
|-------|-------------|----------------------|--------------------|
|       |             |                      | million)] |
| Class 6 | Segale Claims Against Ranches | Impaired (entitled to vote) | [41%] 34.5% ($3.22.7 million)] |
| Class 7 | Subordinated Claims | Impaired (deemed to reject) | No Recovery |
| Class 8 | Intercompany Claims | Impaired (deemed to accept as plan proponent) | No Recovery |
| Class 9 | Interests | Impaired (deemed to reject) | No Recovery |

**THE DEBTORS BELIEVE THAT THE PLAN PROVIDES THE BEST RECOVERIES POSSIBLE FOR HOLDERS OF CLAIMS AGAINST THE DEBTORS AND THUS STRONGLY RECOMMEND THAT YOU VOTE TO <u>ACCEPT</u> THE PLAN.**

**B.     Plan Voting Instructions and Procedures**

**1.     Voting Rights**

Under the Bankruptcy Code, only classes of claims or interests that are "impaired" and that are not deemed as a matter of law to have rejected a plan under Bankruptcy Code section 1126 are entitled to vote to accept or reject such plan. Any class that is "unimpaired" is not entitled to vote to accept or reject a plan and is conclusively presumed to have accepted such plan. As set forth in Bankruptcy Code section 1124, a class is "impaired" if the legal, equitable, or contractual rights attaching to the claims or equity interests of that class are modified or altered by the proposed plan. Holders of claims or interests within an impaired class are entitled to

DOCS_NY:45732.145732.2

proof of claim to be entitled to participate in the Chapter 11 Cases or to receive a Distribution under the Plan.[34]

On February 12, 2021, the Bankruptcy Court entered its *Order (I) Extending and Establishing the Debtors' Deadlines to File Schedules and Statements of Financial Affairs; (II) Extending and Establishing Deadlines by Which Proofs of Claim Must Be Filed; and (III) Granting Related Relief* [Docket No. 139] (the "<u>Bar Date Order</u>"), establishing May 28, 2021 as the General Claims Bar Date.

As of July 31, 2021, approximately 112 proofs of claim appeared on the official claims register for Ranches, and approximately 150 proofs of claim appear on the official claims register for Farms, although some of those claims have been withdrawn or superseded by other claims. The Debtors have not completed claim reconciliation work and do not anticipate doing so before the Effective Date of the Plan.

## F. Cash Collateral Motions

In order to continue operations during the Bankruptcy Cases, including with respect to the feeding and maintenance of the cattle being cared for by Ranches, each Debtor sought the right to use its cash collateral in accordance with the terms of a budget agreed to with certain of the secured parties, including WTB and CHS, and providing adequate protection to the secured creditors for any diminution in the value of their collateral during the pendency of the Bankruptcy Cases.

On March 25, 2021, the Bankruptcy Court entered a Final Order approving the use of the cash collateral of Ranches and a Final Order approving the use of the cash collateral of Farms. In connection with the Cash Collateral Orders, the Bankruptcy

---

[34] A Creditor claiming to hold a prepetition Claim who neither files a proof of claim nor has its Claim set forth in the Schedules as being other than contingent, unliquidated or disputed, and whose Claim is not expressly Allowed under the Plan or in the Confirmation Order, has no right to payment or Distribution under the Plan.

DOCS_NY:45732.145732.2

Court provided for adequate protection of the secured parties, including replacement liens, adequate protection liens, and adequate protection claims for any diminution in value as set forth in the Cash Collateral Orders. Notably, the budget for Farms that was approved by the Bankruptcy Court, and subsequently extended without objection from WTB, included funding of a "wheat plan" so that the Debtors' agricultural lands could be preserved and the value maximized therefrom.

### G. Lindsay Canyon Term Sheet and DIP Loan

Canyon Farm II, LLC ("Canyon Farm II") was the landlord and Farms was the tenant under that certain *Amended and Restated Farm Lease* dated effective as of March 1, 2019 (together with all amendments, assignments, renewals, replacements, supplements and other modifications thereto, the "Canyon Farm II Lease"). Pursuant to the Canyon Farm II Lease, Canyon Farm II leased to Farms the Farmland (as defined in the Canyon Farm II Lease) through December 31, 2028. The Farmland consisted of approximately 6,557 acres, of which 5,193 acres were irrigated, in Morrow County, Oregon situated on what is commonly referred to as the Lindsay Canyon Farm.

The Canyon Farm II Lease was cross-defaulted with certain other agreements with non-debtor Dairy, including, but not limited to, the following (each as defined in the Canyon Farm II Lease): (i) Permit Documents, (ii) Post-Closing Agreement, (iii) Loan Documents, (iv) Manure Easement, (v) Farmland Development Agreement, and (vi) Roadway Easements.

After the Petition Dates, the Debtors and their professionals engaged in discussions with the parties regarding various outstanding issues and disputes regarding the Canyon Farm II Lease and reached an agreement on a term sheet (the "Lindsay Canyon Term Sheet") to resolve the outstanding issues. The Debtors filed a motion, which was granted, seeking approval of the Lindsay Canyon Term Sheet.[45]

---

[45] The motion seeking approval of the Lindsay Canyon Term Sheet and related relief can be found at Docket No. 465. The Order approving Debtors' entry into the

DOCS_NY:45732.145732.2

Action, the CFTC seeks injunctive relief, restitution, a civil monetary penalty, and other relief against Ranches.

During the pendency of its Chapter 11 Case, Ranches negotiated a resolution of the CFTC Action with the CTFC in accordance with the terms of a consent order, agreed to by Ranches and the CFTC (the "CFTC Consent Order"). The primary terms of the CFTC Consent Order include the following:

- *Declaratory Relief*: Ranches stipulated to the violation of (i) Section 6(c) of the Commodities Exchange Act, 7 U.S.C. §§ 1-26 (2018) and 17 C.F.R. § 180.1(a)(1)(-(3) (2020) in connection with the submission of fraudulent invoices to Tyson; (ii) Section 9(a)(4) of the Commodities Exchange Act, 7 U.S.C. § 13(a)(4) (2018) in connection with the submission of fraudulent statements to a registered entity; and (iii) Section 4a(e) of the Commodities Exchange Act, 7 U.S.C. § 6a(e) (2018) in connection with the submission of fraudulent hedge position-limit exemption applications.

- *Injunctive Relief*: Ranches is permanently restrained from directly or indirectly (i) engaging in fraudulent or deceptive actions in violation of the Commodities Exchange Act; (ii) applying for or claiming exception from registration with the CFTC; and (iii) engaging in, or acting on behalf of another that is registered or exempt from registration with the CFTC, any activity requiring registration with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9).

- *Monetary Claims and Penalties*: Ranches is required to provide Tyson restitution through the allowance of a pre-petition general unsecured claim in the amount of $233,008,042 (the "CFTC Claim"), which shall be subordinated to all other Allowed General Unsecured Caims that are not otherwise subordinated.[56]

Ranches filed a *Motion to Approve Settlement with Commodity Futures Trading Commission under Fed. R. Bankr. P. 9019* [Docket No. 1203] (the "CFTC 9019 Motion") seeking Bankruptcy Court approval of the settlement with the CFTC. The

---

[56] The CFTC Claim is classified as an Allowed Subordinated Claim in Class 9 of the Plan.

rights, or ongoing obligations shall have been fully and finally resolved at Confirmation, and that the Post-Effective Date Debtors shall not inherit any claims, rights, benefits, or Causes of Action arising under, relating to, or in connection with the Purchase and Sale Agreement, the Temporary Lease Agreement, or any other agreement relating to the foregoing.

The Sale Transaction closed on July 30, 2021. The Cash sale proceeds paid at the closing of the sale were used to make certain payments or placed in the Escrow Account.

As part of the Purchase and Sale Agreement, FRI also agreed, as a post-closing matter, that following the closing of the Sale Transaction, and entry of a Final Order confirming a plan consistent with the Sale Order, FRI will deposit $5 million in a segregated account of the Debtors to satisfy administrative expenses incurred by the Debtors' estates in connection with and relating to the preparation, confirmation and consummation of such plan.

Nothing in the Plan, other than Section 9.5 of the Plan, is intended to, nor shall be construed to, alter any of the terms and conditions upon which the Sale Transaction was approved as set forth in the Purchase and Sale Agreement or in any agreement referenced in or related to the Purchase and Sale Agreement. Neither the Plan nor the Confirmation Order shall limit or otherwise affect any of the Bankruptcy Court's findings, conclusions, orders, and judgments as set forth in the Sale Order, and insofar as any of the protections afforded FRI by the Sale Order conflict with or contradict certain terms and conditions in the Plan or any findings, conclusions, orders or judgments in the Confirmation Order, the Sale Order shall govern and control with respect to FRI.

Notwithstanding anything that may suggest otherwise in the Plan, the Plan Supplement, any Schedule or Exhibit to either of the foregoing, or any other document executed in connection with Confirmation or these Chapter 11 Cases,

DOCS_NY:45732.145732.2

neither the Post-Effective Date Debtors nor any Holder of any Claim or Interest shall have any claim, cause of action, right or recourse against FRI or the FRI Assets on account of or in connection with the Sale Transaction, the Purchase and Sale Agreement, the Temporary Lease Agreement, or any other agreement or document executed in connection with the consummation of the Sale Transaction between and among FRI, the Debtors and the Easterday Family.

**P.      Treatment of Prudential and Equitable Secured Claims**

Prudential and Equitable Life each asserted that they were entitled under their respective loan documents to certain prepayment premiums (the "Prepayment Premiums") and have also asserted that they are entitled to interest at the applicable default rate of interest in their respective loan documents (the "Default Interest Amounts"). The Debtors and the Partners disputed whether either Prudential or Equitable Life were entitled to the Prepayment Premiums or the Default Interest Amounts.

In order to resolve the objections of Prudential and Equitable Life to the Sale Transaction, the Debtors, the Partners, Equitable Life and Prudential agreed, and the Sale Order reflects, that, upon closing of the sale, (i) Prudential and Equitable Life would be paid at closing of the Sale Transaction the full amount of their then outstanding (a) principal, non-default interest, and the reasonable fees and charges due and owing under their respective loan agreements (the "P&I Amount") and (b) the Default Interest Amount (as defined in the Sale Order, and together with the P&I Amount, the "Initial Paydown Amount"), (ii) the Debtors would escrow (a) the amount of the Prepayment Premiums, (b) a reasonable estimate of the fees and expenses Equitable Life or Prudential incurred relating to the determination of any Mortgage Challenge (the "Fee Escrow Amount"), and (c) the non-default interest and default interest that might have accrued pending such determination (the "Escrowed

DOCS_NY:45732.145732.2

1284] *and Disclosure Statement for the First Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* [Docket No. 1283].

On December 28, 2021, the Debtors filed a motion to further extend their plan filing and solicitation exclusivity deadlines by an additional 120 days to May 2, 2022 and June 6, 2022, respectively. [Docket No. 1317]. The Bankruptcy Court granted the order on February 11, 2022 [Docket No. 1408]

On February 2, 2022, the Debtors filed their *Second Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* [Docket No. 1383] and Disclosure Statement for the *Second Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* [Docket No. 1382].

On April 20, 2022, the Debtors filed a motion to further extend their plan filing and solicitation exclusivity deadlines by an additional 120 days to July 1, 2022 and September 5, 2022, respectively. [Docket No. 1559]. The Bankruptcy Court granted the order on May —16, 2022 [Docket No. ——1620].

On May 11, 2022, the Debtors filed their *Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* [Docket No. ——1606] and ~~this~~the Disclosure Statement *Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* [Docket No. 1607].[7]

### S.    Tyson Derivative Standing Motion

On August 9, 2021, Tyson filed a motion (the "Derivative Standing Motion") seeking an order authorizing Tyson to prosecute—on behalf of, and for the benefit of, the Easterday Ranches' Estate—fraudulent transfer claims arising from Easterday

---

[7]   On May 24, 2022, the Debtors filed their *Modified Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* [Docket No. _____] and this Disclosure Statement.

DOCS_NY:~~45732.1~~45732.2

On February 18, 2022, the Debtors filed a motion [Docket No. 1433] (the "CHS 9019 Motion") to approve that certain Settlement Agreement between the Debtors and CHS, Inc. (the "CHS Settlement Agreement") in full resolution of the claims asserted by CHS, Inc. and each of its affiliates and subsidiaries, including CHS Hedging, LLC and CHS Capital, LLC (collectively, the "CHS Parties") against the Debtors. The CHS Settlement Agreement is a full settlement among the Debtors and the CHS Parties that resolves numerous inbound and outbound claims, such as (i) claims asserted by the CHS Parties against the Debtors on account of feed and fuel supplies and (ii) claims asserted by the Debtors against the CHS Parties relating to their role in the hedging activities. Under the terms of the CHS Settlement Agreement, the Debtors were to receive $7.4 million and a release of any claims by the CHS Parties, thereby avoiding years of protracted and expensive litigation.

On March 11, 2022, the Easterday Family filed objections [Docket Nos. 1465 and 1468] (together, the "Easterday WTB Objections") to the WTB 9019 Motion, asserting, among other things, that the terms of the settlement (i) are not reasonable, appropriate, fair or equitable, (ii) are designed to exert maximum pressure on the Easterday Family by assigning the deficiency claims against them to the Debtors' Estates, and (iii) are the product of conflicts of interest between the Debtors and breaches of their various fiduciary duties. On March 11, 2022, Cody and Debby Easterday filed an objection [Docket No. 1466] to the CHS 9019 Motion, to which Karen Easterday joined [Docket No. 1469] (together, the "Easterday CHS Objections"), on the basis that they have an ownership interest in the accrued patronage (one element of the settlement). The Debtors opposed the Easterday CHS Objections. *See* Docket No. 1476. The Debtors also opposed the Easterday WTB Objections. *See* Docket No. 1477.

As part of the Global Settlement, the Easterday Family agreed to withdraw the Easterday CHS Objections and the Easterday WTB Objections, subject to certain

DOCS_NY:~~45732.1~~45732.2

modifications to the WTB Settlement Agreement.  The Bankruptcy Court approved the WTB Settlement on April 21, 2022 (the "<u>WTB Settlement Order</u>") and the CHS Settlement <u>Agreement</u> on April 20, 2022 (the "<u>CHS Settlement Order</u>").  The Debtors effectuated the WTB Settlement Order and CHS Settlement Order in accordance with their terms.  As a result, the claims of WTB and CHS are not addressed in the Plan.

**W.**   **The Post-petition Corporate Actions and Governance Adversary Proceeding**

On March 12, 2022, the Easterday Family took action to remove the individual members of the Board of Directors for each of the Debtors (collectively, the "<u>Independent Directors</u>") and install replacement directors and managers (the "<u>Replacement Directors and Officers</u>").  More particularly, the members of the Easterday Family executed (i) a unanimous written consent of the shareholders of Ranches to remove the Independent Directors and (ii) an amendment to the Easterday Farms partnership agreement to replace the Independent Directors with a manager (together, the "<u>Post-petition Corporate Actions</u>").

On March 14, 2022, the Debtors filed that certain *Complaint for Injunctive Relief* against the Easterday Family, which initiated Adversary Proceeding No. 22-80008 (the "<u>Governance Adversary Proceeding</u>").  In the Governance Adversary Proceeding, the Debtors seek, *inter alia*, declaratory and injunctive relief with respect to the Post-petition Corporate Actions.  Concurrently with initiating the Governance Adversary Proceeding, the Debtors filed a motion [Governance Adv. Pro. Docket No. 2] (the "<u>TRO Motion</u>") seeking a temporary restraining order and preliminary injunction with respect to the Post-petition Corporate Actions.  The Easterday Family filed responses and declarations in opposition to the TRO Motion.  *See* Governance Adv. Pro Docket Nos. 11-13, 15-17.  Tyson filed a joinder in support of the TRO Motion.  *See* Governance Adv. Pro. Docket No. 10.

On March 16, 2022, the Bankruptcy Court conducted a hearing (the "TRO Hearing") on the TRO Motion and ruled to, *inter alia*, maintain the status quo pending a full evidentiary hearing to be conducted on April 18, 2022 (the "PI Hearing"). Following the TRO Hearing, the Debtors and Easterday Family submitted competing orders incorporating their respective understandings of the Bankruptcy Court's ruling and their agreements at the TRO Hearing. *See* Governance Adv. Pro. Docket No. 26. Thereafter, the Bankruptcy Court entered that certain *Scheduling and Abatement Order* [Governance Adv. Pro. Docket No. 27] (the "Scheduling and Abatement Order"), based upon the Debtors' proposed form of order with a number of material revisions.[68] Thereafter, Karen Easterday filed a motion seeking reconsideration of the Scheduling and Abatement Order, which the Debtors opposed. *See* Governance Adv. Pro. Docket Nos. 28, 29. As part of the Global Settlement, the Debtors and the Easterday Family are resolving the Governance Adversary, and, on the Effective Date of the Plan, the Governance Adversary will be deemed dismissed with prejudice.

## X. Global Settlement

Following a months' long, extensive, arm's-length, and exceptionally hard-fought negotiation and litigation process, the Debtors and the Easterday Family, along with the support and consent of the other Settlement Parties (including both Committees), entered into the Global Settlement Term Sheet. The entry of the Debtors into the Global Settlement Term Sheet was approved by the Bankruptcy Court on April 20, 2022 [Docket No. 1560]. The Global Settlement Term Sheet provides for a consensual framework that has been incorporated into the Plan,

---

[68] The Scheduling and Abatement Order was entered in the Chapter 11 Cases, the Allocation Adversary, and the 3E Properties Adversary Proceeding.

DOCS_NY:45732.145732.2

resolving all material disputes and issues among the Settling Parties as of the Effective Date. The material terms of the Global Settlement are set forth below.[79]

- **Proceeds from FRI Sale:** Other than the Karen Easterday Settlement Amount, the Easterday Family shall release any and all interests in the Net Sale Proceeds;

- **The Karen Easterday Settlement Amount:** Upon the Effective Date, and in satisfaction of Karen Easterday's claims asserted in the Allocation Adversary proceeding, Farms will pay $6 million to Karen Easterday reduced by the Basin City Cash Purchase Price ($4.2 million) and the Idaho Contribution ($669,300). The remaining $1,130,700 of the Karen Easterday Settlement Amount will be applied to the Easterday Dairy LLC Note and BC 140 LLC Secured Guaranty, such that the net cash payment by Farms on account of the Karen Settlement Amount will be $0;

- **The Karen Easterday Secured Note:** On the Effective Date, Karen Easterday will issue the Karen Easterday Secured Note to the Administrative Agent to be held for the benefit of the Holders of Allowed Claims in Classes 5 and 6. The Karen Easteday Secured Note will be in the amount of $5 million with 3% simple interest paid at maturity, which will occur two years after the Effective Date. The Karen Easterday Secured Note will be secured by a first deed of trust or mortgage on Karen Easterday's Franklin County, Washington home and surrounding property;

- **The Idaho Contribution:** On account of a property in Kootenai County, Idaho in which Karen Easterday owns an interest, Karen Easterday will provide, on the Effective Date of the Plan, an additional payment to the Debtors equal to $669,300.00, which represents 30% of the difference between the Appraised Value ($9,231,000) and the negotiated Baseline Value ($7 million). The Idaho Contribution shall by paid as a reduction of the Karen Easterday Settlement Amount.

- **The Basin City Sale:** On the Effective Date, Cody and Debby Easterday shall sell their interests in the Basin City Properties to BC 140 LLC, for the

---

[79] The following summary of the terms of the Global Settlement is intended for illustrative purposes only. Accordingly, to the extent that the following summary diverges from the terms of the Global Settlement Term Sheet, the Global Settlement Term Sheet controls.

DOCS_NY:~~45732.1~~45732.2

### ix.    Class 6: Segale Claims.

<u>Classification</u>.  Class 6 consists of all Segale Claims against Ranches.[8][10]

<u>Treatment</u>.  Segale shall have an Allowed Class 6 Claim in the amount of $7,830,641.  On or as soon as practicable after the Effective Date, each Holder of an Allowed Class 6 Claim shall receive (a) its Pro Rata share of the Class 6 Initial Payment ([$922,000]), (b) its Pro Rata share of the Class 6 Net Distributable Assets (subject to any Distribution Reserve), and (c) its Pro Rata share of the proceeds of the Easterday Family Contribution Instruments.

All Estate claims against Segale, including any Avoidance Actions, shall be deemed released and waived upon the Effective Date.

The Holders of Allowed Class 6 Claims shall not have any interest in the North Lot Actions.

### x.    Class 7: Subordinated Claims.

<u>Classification</u>.  Class 7 consists of all Subordinated Claims.

<u>Treatment</u>.  Holders of Class 7 Claims shall not receive any payment on account of their Claims.

<u>Voting</u>.  Each Holder of a Class 7 Claim will be deemed to have rejected the Plan and, therefore, is not entitled to vote to accept or reject the Plan.

### xi.    Class 8: Intercompany Claim.

<u>Classification</u>.  Class 8 consists of all Intercompany Claims.

<u>Treatment</u>.  Holders of Allowed Class 8 Claims shall not receive any payment on account of their Claims.

<u>Voting</u>.  Each Holder of a Class 8 Claim is a proponent of the Plan and will therefore conclusively be deemed to have accepted this Plan.

### xii.    Class 9: Interests.

---

[8][10] For the avoidance of doubt, Segale shall also have an Allowed Class 3 Claim that shall receive the same treatment as other Allowed Class 3 Claims.

DOCS_NY:~~45732.1~~45732.2

Chapter 11 Cases, or the Sale Transaction, including those that the Debtors, the Post-Effective Date Debtors, or the Plan Administrator would have been legally entitled to assert or that any Holder of a Claim against or interest in the Debtors or any other Entity could have been legally entitled to assert derivatively or on behalf of the Debtors or their Estates, including any deficiency claim under Washington State partnership law, except for (1) Tyson-Segale Preserved Claims, (2) Cody Easterday Preserved Claims, and (2**3**) the right to receive Distributions from the Debtors, the Post-Effective Date Debtors, or the Plan Administrator on account of an Allowed Claim against the Debtors pursuant to this Plan. For the avoidance of doubt, the Releasing Parties shall include (1) the Released Parties**, (2) Holders of Interests except as carved out for certain Creditors,** and (2**3**) all Holders of Claims that (a) vote to accept the Plan and (b) do not affirmatively opt out of the Third Party Release provided by this section pursuant to a duly executed ballot. Notwithstanding anything to the contrary contained herein, in no event shall an Entity that (1) does not vote to accept or reject this Plan, (2) votes to reject the Plan, or (3) appropriately marks the ballot to opt out of the Third Party Release provided in this section and returns such ballot in accordance with the Solicitation Procedures Order, be a Releasing Party unless they have otherwise agreed to a release.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third Party Releases set forth in Section 10.2 of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of the Claims released by the Third Party Releases; (3) in the best interests of the Debtors, their Estates,

DOCS_NY:~~45732.1~~45732.2

the Post-Effective Date Debtors Causes of Action. The Plan Administrator will make Distributions of Cash to Creditors. After the initial Distributions, the Plan Administrator may also may make, in its discretion, periodic Distributions of additional Net Distributable Assets, including from the release of any Distribution Reserve, to the Holders of Allowed Claims as provided for in the Plan at any time following the Effective Date.

### 1. Estimated Recoveries for Ranches General Unsecured Claims (Class 4), Tyson (Class 5) and Segale (Class 6)

On or as soon as practicable after the Effective Date, Holders of Allowed Class 4 Claims (Ranches General Unsecured Claims) shall receive (a) their Pro Rata share of the Class 4 Initial Payment (subject to any Distribution Reserve) and (b) their Pro Rata share of the Class 4 Net Distributable Assets. The Holders of Allowed Class 4 Claims shall not have any interest in any of the Easterday Family Contribution Instruments.

On or as soon as practicable after the Effective Date, Holders of Allowed Class 5 Claims (Tyson) shall receive (a) their Pro Rata share of the Class 5 Initial Payment (subject to any Distribution Reserve), (b) their Pro Rata share of the Class 5 Net Distributable Assets, (c) their Pro Rata share of the proceeds of the Easterday Family Contribution Instruments, and (d) assignment of the North Lot Actions.

On or as soon as practicable after the Effective Date, Holders of Allowed Class 6 Claims (Segale) shall receive (a) their Pro Rata share of the Class 6 Initial Payment (subject to any Distribution Reserve), (b) their Pro Rata share of the Class 6 Net Distributable Assets, and (c) their Pro Rata share of the proceeds of the Easterday Family Contribution Instruments.

The Debtors estimate that Holders of (i) Ranches General Unsecured Claims shall receive approximately [71]65.3% of their Allowed Class 4 Claim, (ii) Tyson shall receive approximately [28]23.6%] of its Allowed Class 5 Claim, and (iii) Segale shall receive approximately [41]34.5%] of its Allowed Class 6 Claim.[911]

[911] For the avoidance of doubt, such treatment applies to Segale's Allowed Claims against Ranches. Segale also has an Allowed Claim in Class 3 (Farms General

terminated on its terms and that to the extent the Debtors or FRI may have claims,

rights, or ongoing obligations to each other under the Temporary Lease Agreement

that survive the termination, such claims, rights, or ongoing obligations shall have

been fully and finally resolved at Confirmation such that any claims, rights or

ongoing obligations shall cease to exist on the Effective Date, and that the

Post-Effective Date Debtors shall not inherit any claims, rights, benefits, or Causes of

Action arising under, relating to, or in connection with the Purchase and Sale

Agreement.

   Nothing in the Plan is intended to, nor shall be construed to, alter any of the

terms and conditions upon which the Sale Transaction was approved as set forth in

the Purchase and Sale Agreement or in any agreement referenced in or related to the

Purchase and Sale Agreement.  Neither the Plan nor the Confirmation Order shall

limit or otherwise affect any of the Bankruptcy Court's findings, conclusions, orders,

and judgments as set forth in the Sale Order, and insofar as any of the protections

afforded FRI by the Sale Order conflict with or contradict certain terms and

conditions in the Plan or any findings, conclusions, orders or judgments in the

Confirmation Order, the Sale Order shall govern and control with respect to FRI.

   Notwithstanding anything that may suggest otherwise in the Plan, the Plan

Supplement, any Schedule or Exhibit to either of the foregoing, or any other

document executed in connection with Confirmation or these Chapter 11 Cases,

neither the Post-Effective Date Debtors nor any Holder of any Claim or Interest shall

have any claim, cause of action, right or recourse against FRI or the FRI Assets on

account of or in connection with the Sale Transaction, the Purchase and Sale

Agreement, the Temporary Lease Agreement, or any other agreement or document

executed in connection with the consummation of the Sale Transaction between and

among FRI, the Debtors and the Easterday Family.

DOCS_NY:45732.145732.2

or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation. On the date the Confirmation Order becomes a Final Order, the Post-petition Corporate Actions shall be deemed null and void and as never having had effect.

### C. Plan Administrator

#### 1. Appointments

On the Effective Date, the initial Plan Administrator shall be appointed. The compensation of the Plan Administrator shall be agreed to by the Debtors and the Settling Parties and disclosed prior to the Confirmation Hearing, provided that regular hourly compensation shall be deemed acceptable in the absence of an alternative agreement. The Plan Administrator may employ, without further order of the Bankruptcy Court, legal counsel and other professionals as necessary to assist in carrying out his duties and may compensate and reimburse the reasonable expenses of those professionals without further order of the Bankruptcy Court in accordance with the Plan and Plan Administrator Agreement.

#### 2. Vesting of Post-Effective Date Debtors' Assets

On the Effective Date, the Post-Effective Date Debtors' will be automatically vested with all of the Debtors' and the Estates' respective rights, title, and interest in and to all Post-Effective Date Debtors' Assets.[10][12] Except as specifically provided in the Plan or the Confirmation Order, the Post-Effective Date Debtors' Assets shall automatically vest in the Post-Effective Date Debtors free and clear of all Claims, Liens, or interests and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The Plan

---

[10][12]    For the avoidance of doubt, the Post-Effective Date Debtors' Assets do not include the North Lot Actions.

DOCS_NY:45732.145732.2

their rights under the Abeyance and Suspense Order (Adv. Pro. No 22-80008, Docket No. 39).

### D.  Claims Estimation and Allowance of Claims

There can be no assurance that the estimated Claim amounts set forth in this Disclosure Statement are correct, and the actual amount of Allowed Claims may differ significantly from the estimates. The estimated amounts are subject to certain risks, uncertainties, and assumptions. Should one or more of these risks or uncertainties materialize, or should underlying assumptions prove incorrect, the actual amount of Allowed Claims may vary from those estimated herein.

### E.  Tax Considerations

There are several material income tax considerations, risks, and uncertainties associated with consummation of the Plan. Holders of Claims, Holders of Interests, and other interested parties should read carefully the discussion set forth in Article IX for a discussion of certain U.S. federal income tax consequences of the transactions contemplated under the Plan.

## VIII.  <u>CONFIRMATION OF THE PLAN</u>

### A.  The Confirmation Hearing

Bankruptcy Code section 1128(a) requires the Bankruptcy Court, after notice, to hold a hearing regarding Confirmation of the Plan. Bankruptcy Code section 1128(b) provides that any party in interest may object to Confirmation of the Plan.

The Bankruptcy Court has scheduled the Confirmation Hearing to commence on [~~_____~~]**July 19, 2022, at [__:__] [_].m. (Pacific Time)**, before the Honorable Whitman L. Holt, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Eastern District of Washington. The Confirmation Hearing Notice, which sets forth the time and date of the Confirmation Hearing, has been included along with this Disclosure Statement. The Confirmation Hearing may be

DOCS_NY:~~45732.1~~45732.2

adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any adjournment thereof.

Objections to Confirmation of the Plan must be Filed and served so that they are actually received by no later than [~~14~~10 **calendar days prior to the Confirmation Hearing] at 5:00 p.m.** (**Pacific Time**). **Unless objections to Confirmation of the Plan are timely served and Filed in compliance with the Disclosure Statement Order, they may not be considered by the Bankruptcy Court**.

### B.     Requirements for Confirmation of the Plan

Among the requirements for the Confirmation of the Plan is that the Plan (i) is accepted by all Impaired Classes of Claims, or, if rejected by an Impaired Class of Claims, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Impaired Class of Claims; (ii) is feasible; and (iii) is in the "best interests" of Holders of Claims.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of Bankruptcy Code section 1129. The Debtors believe that: (i) the Plan satisfies or will satisfy all of the necessary statutory requirements of chapter 11 of the Bankruptcy Code; (ii) the Debtors have complied or will have complied with all of the necessary requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith. More specifically, the Debtors believe that the Plan satisfies or will satisfy the following applicable Confirmation requirements of Bankruptcy Code section 1129:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtors have complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

DOCS_NY:~~45732.1~~45732.2

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed to the Bankruptcy Court, and any such payment: (1) made before the Confirmation of the Plan is reasonable; or (2) is subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after Confirmation of the Plan.

- Either each Holder of a Claim in an Impaired Class of Claims has accepted the Plan, or each such Holder will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated on the Effective Date of the Plan under chapter 7 of the Bankruptcy Code.

- The Classes of Claims that are entitled to vote on the Plan will have accepted the Plan, or at least one Class of Impaired Claims will have accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class, and the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each Class of Claims that is impaired under, and has not accepted, the Plan.

- Except to the extent a different treatment is agreed to, the Plan provides that all Allowed Administrative Claims and Allowed Priority Claims will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable.

- All accrued and unpaid fees of the type described in 28 U.S.C. § 1930, including the fees of the U.S. Trustee, will be paid through the Effective Date.[11]

## C. Best Interests of Creditors

Often called the "best interests of creditors" test, Bankruptcy Code section 1129(a)(7) requires that a bankruptcy court find, as a condition to confirmation of a

---

[11] The United States Trustee contends that the Post-Effective Date Debtors should be responsible to file the post-confirmation reports and pay the fees due pursuant to 28 U.S.C. § 1930(a)(6) even after the Effective Date.

DOCS_NY:45732.145732.2

between four percent (4%) and nine percent (9%), far less than the ~~seventy-one~~sixty-five percent (~~71~~65.3%) provided for under the Plan.

Further, outside of the Plan, the issue of substantive consolidation may create risks for the Holders of Claims against Farms. While the outcome of any substantive consolidation motion is uncertain, it would lead to substantial costs and delay any recovery to the creditors, particularly the Holders of Claims against Farms. Moreover, if substantive consolidation were granted, in light of the amount of the Tyson Claims, recoveries by the Holders of Farms General Unsecured Claims in Class 3 would be substantially reduced and could be as low as one percent (1%).

Conversion to chapter 7 of the Bankruptcy Code would also mean the establishment of a new claims bar date, which could result in new General Unsecured Claims being asserted against the Estates, thereby diluting the recoveries of other Holders of Allowed Claims.

On balance, the Debtors believe that chapter 7 trustees would be less likely to maximize the value available from all the Estate Assets. Therefore, the Debtors believe that confirmation of the Plan will provide each Holder of an Impaired Claim with an equal or greater recovery than such Holder would receive pursuant to the liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

### D. Feasibility

Bankruptcy Code section 1129(a)(11) requires that confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtors, or any successor to the Debtors (unless such liquidation or reorganization is proposed in the plan). This requirement is satisfied as the Plan specifically proposes a liquidation and the Debtors believe the Debtors' Cash and any additional proceeds from the Post-Effective Debtors' Assets will be sufficient to allow the Plan Administrator to make all payments required to be made under the Plan. Accordingly, the Debtors believe that the Plan is feasible.

DOCS_NY:~~45732.1~~45732.2

not occur, then (a) the Plan shall be null and void in all respects; and (b) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims against, or any Interests in, any Debtor, or any Causes of Action by or against any Debtor or any other Person, (ii) prejudice in any manner the rights of any Debtor or any other Person in any further proceedings involving a Debtor, or (iii) constitute an admission of any sort by any Debtor or any other Person.

## IX. CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO HOLDERS OF ALLOWED CLAIMS

**THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS SHOULD CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL, OR FOREIGN TAX LAWS AND OF ANY CHANGE IN APPLICABLE TAX LAWS.**

The following discussion summarizes certain U.S. federal income tax consequences of the Plan to the U.S. Holders (as defined below) of (i) "Secured Claims" (*i.e.*, those Allowed Claims described in Class 1 Secured Claims), and (ii) "Unsecured Claims" (*i.e.*, those Allowed Claims described in Class 3: Farms General Unsecured Claims Class 4: Ranches General Secured Claims, Class 5: Tyson Claims and Class 6: Segale Claims). This discussion is provided for ~~informational~~information purposes only, and is based on provisions of the Internal Revenue Code of 1986, as amended (the "~~Tax Code~~*IRC*"), ~~the~~Treasury ~~regulations~~Regulations promulgated thereunder, judicial ~~authority~~authorities, and current administrative rulings and practice, all as in effect ~~as of~~on the date hereof ~~and~~

109

all of which are subject to change, possibly with retroactive effect. Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, court decisions. Legislative, judicial, or administrative changes, or interpretations enacted or promulgated after the date hereof could alter or modify the discussion set forth below with respect to the United States federal income tax consequences of the Plan. Any such changes or interpretations may be retroactive and could significantly, and adversely, affect the U.S. United States federal income tax consequences of the Plan and the transactions contemplated thereunder. No representations are being made regarding the particular tax consequences of the Plan to any specific Holder of a Claim. The Debtors will not seek a ruling from the Internal Revenue Service (the "IRS") and have not obtained an opinion of counsel regarding any tax consequences of the Plan to the Debtors or any Holder of a Claim. No assurances can be given that the IRS would not assert, or that a court would not sustain, a different position from any discussed herein. This discussion only addresses U.S. federal income tax consequences and does not address any other U.S. federal tax consequences (such as estate and gift tax consequences), or the tax consequences arising under the laws of any foreign, state, local or other jurisdiction or any income tax treaty. The Debtors intend to treat, and this discussion assumes that, the Secured Claims will be treated for U.S. federal income tax purposes in accordance with their form and as interests in the Debtors "solely as a creditor" for purposes of section 897 of the Tax Code to Holders of Allowed Claims.

This discussion does not address any U.S. federal income tax consequences to a beneficial owner of a Secured Claim or an Unsecured Claim that is not a U.S. Holder (a "Non-U.S. Holder"). Non-U.S. Holders should consult their own independent tax advisors regarding the U.S. federal income tax consequences of the implementation of the Plan, including whether Non-U.S. Holders may be subject to

DOCS_NY:45732.145732.2

any U.S. federal withholding tax or U.S. federal income tax with respect to any payment on Secured Claims or Unsecured Claims.

This discussion does not describe all of the tax consequences that may be relevant in light of a U.S. Holder's particular circumstances, including, but not limited to, the potential application of provisions of the Tax Code known as the unearned income Medicare contribution tax, or tax consequences applicable to Holders of Secured Claims or Unsecured Claims that are otherwise subject to special treatment under the Tax Code, such as: financial institutions; banks; broker-dealers; insurance companies; tax-exempt organizations; retirement plans or other tax-deferred accounts; mutual funds; real estate investment trusts; traders in securities that elect mark-to-market treatment; persons subject to the alternative minimum tax; persons who hold or will hold Secured Claims, or Unsecured Claims as part of a hedge, straddle, constructive sale, conversion or other integrated transaction; persons that have a functional currency other than the U.S. dollar; U.S. Holders who hold or will hold Secured Claims or Unsecured Claims through non-U.S. brokers or other non-U.S. intermediaries; governments or governmental organizations; partnerships or other pass-through entities or holders of interests therein; persons required to accelerate the recognition of any item of gross income with respect to the Secured Claims as a result of such income being recognized on an "applicable financial statement" (within the meaning of section 451(b) of the Tax Code); holders that are related persons with the Debtors under section 267 of the Tax Code; and holders not entitled to vote on the Plan. If an entity that is classified as a partnership for U.S. federal income tax purposes holds or will hold Secured Claims or Unsecured Claims, the U.S. federal income tax treatment of a partner will generally depend on the status of the partner and the activities of the partnership. Partnerships holding or that will hold Secured Claims or Unsecured Claims and partners in such partnerships should consult their tax advisors as to the particular

DOCS_NY:45732.145732.2

U.S. federal income tax consequences of owning and disposing of Secured Claims or Unsecured Claims.

The following summary is limited to Holders of Allowed Claims that are United States persons within the meaning of the IRC. For purposes of this the following discussion, a "U.S. Holder" is a beneficial owner of a Secured Claim or an Unsecured Claim that is, for U.S. federal income tax purposes United States person" is any of the following:

- an An individual who is a U.S. citizen or U.S. resident alien of the United States;

- a A corporation, or other entity taxable as a corporation for U.S. federal income tax purposes, that was created or organized in or under the laws of the United States, or any state or political subdivision thereof or the District of Columbia;

- an An estate, the income of which is subject to U.S. United States federal income taxation regardless of its source; or

- a A trust that (a) the administration of which is subject to the primary supervision of a U.S. United States court and that which has one or more United States persons that fiduciaries who have the authority to control all substantial decisions of the trust or (b) that has made a valid election in effect under applicable Treasury regulations Regulations to be treated as a United States person.

**THE FOLLOWING DISCUSSION OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER. ALL HOLDERS OF SECURED CLAIMS OR UNSECURED CLAIMS SHOULD CONSULT THEIR OWN INDEPENDENT TAX ADVISORS FOR THE U.S. FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.**

DOCS_NY:45732.145732.2

*IRS Circular 230 Notice: To ensure compliance with IRS Circular 230, Holders of Claims and Interests are hereby notified that any discussion of U.S. federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by Holders of Claims and Interests for the purpose of avoiding penalties that may be imposed on them under the IRC.*

This discussion does not address all aspects of United States federal income taxation that may be relevant to a particular Holder of an Allowed Claim in light of such Holder's particular facts and circumstances, or to certain types of Holders subject to special treatment under the IRC. Examples of Holders subject to special treatment under the IRC include, without limitation, governmental entities and entities exercising governmental authority, foreign companies, persons who are not citizens or residents of the United States, banks and certain other financial institutions, broker-dealers, insurance companies, tax-exempt organizations, real estate investment trusts, small business investment companies, regulated investment companies, persons that have a functional currency other than the United States dollar, and persons holding Claims that are a hedge against, or that are hedged against, currency risk or that are part of a straddle, constructive sale, or conversion transaction. This discussion does not address the state, local, or foreign tax consequences of the Plan with respect to any Holder. Partnerships holding Allowed Claims and partners in such partnerships should consult their tax advsiors as to the particular United States federal income tax consequences of owning and disposing of Allowed Claims.

The tax treatment of Holders of Allowed Claims and the character, amount, and timing of income, gain, or loss recognized as a consequence of the Plan and the Distributions provided for by the Plan may vary depending upon a number of factors, including without limitation: (i) whether the Claim or portion thereof constitutes a

113

DOCS_NY:45732.145732.2

Claim for principal or interest; (ii) the type of consideration, if any, received by the Holder in exchange for the Claim, and whether the Holder receives Distributions under the Plan in more than one taxable year; (iii) whether the Holder is a citizen or resident of the United States for tax purposes, is otherwise subject to United States federal income tax on a net basis, or falls into any special class of taxpayers, such as those that are excluded from this discussion as noted above; (iv) the manner in which the Holder acquired the Claim; (v) the length of time that the Claim has been held; (vi) whether the Claim was acquired at a discount; (vii) whether the Holder has taken a bad debt deduction or a worthless securities deduction with respect to the Claim or any portion thereof in the current or prior taxable years; (viii) whether the Holder has previously included in gross income accrued but unpaid interest with respect to the Claim; (ix) the method of tax accounting of the Holder; (x) whether the Claim is an installment obligation for United States federal income tax purposes; and (xi) whether the "market discount" rules apply to the Holder. Therefore, each Holder should consult such Holder's own tax advisor for tax advice with respect to that Holder's particular situation and circumstances, and the particular tax consequences to such Holder of the transactions contemplated by the Plan.

A significant amount of time may elapse between the date of the Disclosure Statement and the receipt of a final Distribution under the Plan. Events occurring after the date of the Disclosure Statement, such as new or additional tax legislation, court decisions, or administrative changes, could affect the United States federal income tax consequences of the Plan and the transactions contemplated thereunder. No ruling has been or will be sought from the Internal Revenue Service ("IRS") or any other taxing authority with respect to any of the tax aspects of the Plan, and no opinion of counsel has been or will be obtained by the Debtor with respect thereto. No representations are being made regarding the particular tax consequences of confirmation or implementation of the Plan as to any Holder of a Claim. This

DOCS_NY:45732.145732.2

discussion is not binding upon the IRS or other taxing authorities. The IRS or another taxing authority could assert, and a court sustain, a different position from any discussed herein and no assurance is given as to whether such a different position will or will not be asserted.

A. Certain ~~U.S. Federal Income~~ Tax Consequences to ~~U.S.~~ Holders of ~~Secured~~Allowed Claims

~~1. Taxable Exchange~~

~~Each U.S.~~

A Holder of ~~a Secured~~an Allowed Claim ~~should~~will generally recognize gain or loss ~~in a taxable exchange of its Claim~~ equal to the difference between ~~(x) the sum of (a) the~~the Holder's adjusted basis in its Allowed Claim and the amount realized by the Holder in respect of its Allowed Claim. Over time and on a cumulative basis, the amount realized generally will equal the aggregate amount of ~~any~~the Cash ~~received by such U.S. Holder~~ (and ~~(b)~~ the fair market value of ~~any~~ property ~~received by such U.S. Holder for such Claim (excluding in the case of (a) and (b), if~~ any) distributed to the Holder by the Plan Administrator, less the amount , if any, attributable to accrued but unpaid interest ~~on such Claim, which amount will be taxable as described below), and (y) such U.S. Holder's adjusted basis, if any, in such Claim. Whether such~~.

The character of any gain or loss ~~is capital or ordinary in character~~recognized by a Holder will ~~be determined by~~depend upon a number of factors, including the ~~tax~~ status of the ~~U.S.~~ Holder, the nature of the ~~Secured~~Allowed Claim in ~~such U.S.~~the Holder's hands, whether ~~such~~the Allowed Claim was purchased at a discount, whether ~~there is any accrued but unpaid interest on such Claim, and whether~~ and to what extent the ~~U.S.~~Holder has previously ~~has~~ claimed a bad debt deduction with respect to ~~such Claim. See Sections IX.A.2 and IX.A.3 of this Disclosure Statement entitled "Accrued Interest" and "Market Discount."~~

DOCS_NY:~~45732.1~~45732.2

2. Accrued Interest

To the extent that any amount received by a U.S. the Allowed Claim, and the Holder's holding period of the Allowed Claim. If the Allowed Claim in the Holder's hands is a capital asset, the gain or loss realized will generally be characterized as a capital gain or loss. Such gain or loss will constitute long-term capital gain or loss if the Holder of a Secured held such Allowed Claim is attributable to accrued but unpaid interest on the debt instruments constituting for longer than one year or short-term capital gain or loss if the Holder held such surrendered Allowed Claim, the receipt of such amount should be for one year or less. Any capital loss realized generally may be used by a corporate Holder only to offset capital gains and by an individual Holder only to the extent of capital gains plus a certain limited statutorily proscribed amount of ordinary income in any single taxable to the U.S. Holder as year, currently $3,000.

A Holder of an Allowed Claim will generally recognize ordinary interest income (to the extent not already taken into income by the U.S. Holder). Conversely, a U.S. Holder of a Secured Claim may be able to recognize a deductible loss (or, possibly, a write off against a reserve for worthless debts that the amount of Cash or property received (or deemed received) ) to under the extent Plan is attributable to interest that any accrued interest on a Allowed Claim but was not previously paid by the Debtors or included in the U.S. Holder's gross income but was not paid in full by the Debtors. Such loss may be ordinary, but the tax law is unclear on this point.

If the fair market value of the consideration by the Holder of the Allowed Claim. If the amount paid to a Holder is not sufficient to fully satisfy all principal and interest on a Secured Claim, the extent to which such consideration will be attributable to accrued but unpaid interest is unclear not entirely clear. Under the Plan, the aggregate consideration to be distributed to U.S. Holders of Secured Allowed Claims will be allocated first to the principal amount of such Claims, with any excess

DOCS_NY:45732.1 45732.2

116

allocated to unpaid interest that accrued on such Claims, if any. Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a chapter 11 plan of reorganization is binding for ~~U.S.~~United States federal income tax purposes, and certain case law generally indicates that a final payment on a distressed debt instrument that is insufficient to repay outstanding principal and interest will be allocated to principal, rather than interest, while certain Treasury regulations treat payments as allocated first to any accrued but unpaid interest. The IRS could take the position that the consideration received by a ~~U.S.~~ Holder of ~~a Secured~~an Allowed Claim should be allocated in a manner other than as provided in the Plan, which could include allocating consideration first to any accrued but unpaid interest under the aforementioned Treasury regulations.

**U.S. HOLDERS SHOULD CONSULT THEIR OWN INDEPENDENT TAX ADVISORS CONCERNING THE ALLOCATION OF CONSIDERATION RECEIVED IN SATISFACTION OF THEIR SECURED CLAIMS AND THE FEDERAL INCOME TAX TREATMENT OF ACCRUED BUT UNPAID INTEREST.**

### 3. Market Discount

In general, a debt instrument is considered to have been acquired with "market discount" if it is acquired other than on original issue and if its holder's adjusted tax basis in the debt instrument is less than the sum of all remaining payments to be made on the debt instrument, excluding "qualified stated interest." In general, "qualified stated interest" is interest unconditionally payable at least annually at a fixed stated rate in the form of cash or certain property. Any gain recognized by a U.S. Holder on the taxable disposition of a Secured Claim that had been acquired with market discount should be treated as ordinary income to the extent of the market discount that accrued thereon while such Claim was considered to be held by the U.S.

DOCS_NY:~~45732.1~~45732.2

Holder (unless the U.S. Holder elected to include market discount in income as it accrued).

U.S. HOLDERS SHOULD CONSULT THEIR OWN INDEPENDENT TAX ADVISORS CONCERNING THE APPLICATION OF THE MARKET DISCOUNT RULES TO THEIR CLAIMS.

B.    Certain U.S. Federal Income Tax Consequences to U.S. Holders of Unsecured Claims

Pursuant

A Holder of an Allowed Claim who receives, in respect of the Holder's Allowed Claim, an amount that is less than that Holder's tax basis in such Allowed Claim may be entitled to a bad debt deduction under IRC Section 166(a). The rules governing the character, timing, and amount of a bad debt deduction place considerable emphasis on the facts and circumstances of the Holder, the obligor, and the instrument with respect to which a deduction is claimed. Holders of Allowed Claims, therefore, are urged to consult their tax advisors with respect to the Plan, a Uability to take a bad debt deduction.S. A Holder of an Unsecured Claim will be treated as exchanging such Claim on the Effective Date for Cash in a taxable transaction. A U.S.that has previously recognized a loss or deduction in respect of that Holder of an Unsecured's Allowed Claim will recognize income, gain or loss equal to the difference between (x) the Cash received by such U.S. Holder for such Claim and (y)may be required to include in gross income any amounts received under the Plan to the extent such amounts exceed the U.S. Holder's adjusted tax basis, if any, in such Allowed Claim surrendered in the exchange. The U.S. federal income tax consequences to such a U.S. Holder arising from such exchange will depend, in part, on (i) whether the U.S. Holder reports income on the accrual or cash method of accounting.

A Holder of an Allowed Claim constituting an installment obligation for ~~U.S.~~United States federal income tax purposes~~, (ii) whether the U.S. Holder has taken a bad debt deduction with respect to such Claim, and (iii) whether such income, gain or loss is capital or ordinary in character~~ may be required to currently recognize any gain remaining unrecognized with respect to such obligation if, pursuant to the Plan, the obligation is considered to be satisfied at other than face value or distributed, transmitted, sold, or otherwise disposed of within the meaning of IRC Section 453B.

### B.  ~~1.~~Disputed Ownership Funds

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, or the receipt of a determination by the IRS, the Plan Administrator intends to (i) treat Post-Effective Date Debtors' Assets reserved for Holders of Disputed Claims, Contingent Claims or Unliquidated Claims with respect to the Post-Effective Date as one or more reserves ("Distribution Reserves") held in a "disputed ownership fund" governed by Treasury regulation section 1.468B-9 (which fund will be taxable as a "qualified settlement fund" if all assets ~~of~~transferred to the ~~disputed reserve~~fund are passive investment assets for tax purposes and otherwise will be taxable as a C corporation), and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including, without limitation, the Post-Effective Date Debtors, the Plan Administrator, and the Holders of Disputed Claims, Contingent Claims and Unliquidated Claims) will be required to report for tax purposes consistently with such treatment. Accordingly, each ~~Disputed Claims~~Distribution Reserve will be a separate taxable entity for ~~U.S.~~United States federal income tax purposes, and all interest and earnings of a Distribution ~~Reserves~~Reserve will be taxable to such entity.

Under such treatment, a separate ~~U.S.~~United States federal income tax return will be filed with the IRS for each Distribution Reserve, and each Distribution

DOCS_NY:~~45732.1~~45732.2

Reserve will be subject to tax annually on a separate entity basis. The Plan Administrator will be responsible for payment of any taxes imposed on each Distribution Reserve. Accordingly, distributions from each Distribution Reserve will be net of any taxes relating to the retention, disposition and distribution of assets in such Distribution Reserve. In the event, and to the extent of, any ~~Cash~~cash of a Distribution Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of such Distribution Reserve (including any income that may arise upon the distribution of the assets in such Distribution Reserve), assets of ~~each~~such Distribution Reserve may be sold to pay such taxes.

### C. Backup Withholding ~~and Information Reporting~~

Under ~~the Tax Code, interest and other reportable payments may, under certain circumstances,~~backup withholding rules, a Holder of an Allowed Claim may be subject to backup withholding,~~ currently at the rate of 24%. Backup withholding may apply~~ with respect to payments made pursuant to the Plan~~,~~ unless ~~the U.S.~~such Holder~~ provides to the applicable withholding agent its~~: (i) is a corporation or is otherwise exempt from backup withholding and, when required, demonstrates this fact; or (ii) provides a correct taxpayer identification and certifies under penalty of perjury that (a) the taxpayer identification number,~~ certified under penalties of perjury, as well as certain other information or otherwise establishes an exemption from backup withholding. Backup withholding is not an additional tax. Amounts withheld under the~~ is correct and (b) the Holder is not subject to backup withholding because of failure to report all dividend and interest income. Any amount withheld under such rules ~~may~~will be credited against ~~a U.S.~~the Holder~~'~~'s ~~U.S.~~ federal income tax liability~~, and a U.S. Holder may obtain a refund of any excess amounts withheld under the backup withholding rules by filing an appropriate claim for refund with the IRS~~.

DOCS_NY:~~45732.1~~45732.2

~~In addition, information reporting may apply to (i) payments made to a U.S. Holder of a Secured Claim or an Unsecured Claim and (ii) certain transactions under the Plan that result in a U.S. Holder claiming a loss in excess of specified thresholds. U.S. Holders are urged to consult their tax advisors regarding these Treasury regulations and whether the transactions contemplated by the Plan would be subject to these Treasury regulations and require disclosure on the Holders' tax returns.~~

~~U.S.~~

**D.      Importance of Obtaining Professional Tax Assistance**

THE FOREGOING DISCUSSION IS: (I) INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE PLAN TO HOLDERS OF ALLOWED CLAIMS; (II) NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL; AND (III) FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES TO EACH HOLDER ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ~~SHOULD~~ARE STRONGLY URGED TO CONSULT ~~THEIR OWN INDEPENDENT~~WITH SUCH HOLDERS' TAX ADVISORS ~~CONCERNING~~REGARDING THE ~~U.S.~~ FEDERAL, STATE, LOCAL, AND FOREIGN INCOME TAX CONSEQUENCES OF ~~RECEIVING ANY DISTRIBUTIONS UNDER~~ THE PLAN.

## X.      RECOMMENDATION

The Debtors believe that confirmation and implementation of the Plan are the best alternative under the circumstances and urge all Impaired Creditors entitled to vote on the Plan to vote in favor of and support confirmation of the Plan.

DOCS_NY:~~45732.1~~45732.2

Submitted by:

Dated: May ~~11~~24, 2022          BUSH KORNFELD LLP

                                   */s/ Thomas A. Buford, III*

                                   THOMAS A. BUFORD, III (WSBA 52969)
                                   BUSH KORNFELD LLP

                                   RICHARD M. PACHULSKI (admitted *pro hac vice*)
                                   JEFFREY W. DULBERG (admitted *pro hac vice*)
                                   MAXIM B. LITVAK (admitted *pro hac vice*)
                                   PACHULSKI STANG ZIEHL & JONES LLP

                                   *Attorneys for Debtors and Debtors in Possession*

DOCS_NY:~~45732.1~~45732.2