1  ARMAND J. KORNFELD (WSBA #17214)
   THOMAS A. BUFORD (WSBA #52969)
2  RICHARD B. KEETON (WSBA #51537)
   BUSH KORNFELD LLP
3  601 Union Street, Suite 5000
   Seattle, WA 98101
4  Tel.: (206) 292-2110
   Facsimile: (206) 292-2104
5  Emails: jkornfeld@bskd.com,
   tbuford@bskd.com, and rkeeton@bskd.com
6
   RICHARD M. PACHULSKI (CA Bar #90073)*
7  JEFFREY W. DULBERG (CA Bar #181200)*
   MAXIM B. LITVAK (CA Bar #215852)*
8  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
9  Los Angeles, CA 90067-4003
   Tel: (310) 277-6910
10 Facsimile: (310) 201-0760
   Emails: rpachulski@pszjlaw.com,
11 jdulberg@pszjlaw.com, and
   mlitvak@pszjlaw.com
12
   *Admitted *Pro Hac Vice*
13
   *Attorneys for Debtors and Debtors in Possession*
14
15              UNITED STATES BANKRUPTCY COURT
                EASTERN DISTRICT OF WASHINGTON
16
   In re                              | Chapter 11
17
   EASTERDAY RANCHES, INC., *et al.*  | Lead Case No. 21-00141-11
18                                       Jointly Administered
                          Debtors.[1]
19                                     | **SECOND MODIFIED THIRD
                                          AMENDED JOINT CHAPTER 11
20                                        PLAN OF LIQUIDATION OF
                                          EASTERDAY RANCHES, INC. AND
21                                        EASTERDAY FARMS**
22
23
24
25
   ─────────────────────
26 [1]   The Debtors along with their case numbers are as follows:  Easterday Ranches, Inc.
         (21-00141) and Easterday Farms, a Washington general partnership (21-00176).
27
28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ..............2

ARTICLE II CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS .....21

2.1 Summary and Classification of Claims..............................................21

2.2 Subordinated Claims Generally. .......................................................22

2.3 Intercompany Claims. ......................................................................22

2.4 Classification & Voting Controversies. ..............................................22

ARTICLE III TREATMENT OF CLAIMS AND EQUITY INTERESTS ...........23

3.1 Unclassified Claims. ........................................................................23

3.1.1 Administrative Claims. ...................................................................23

3.1.2 Professional Fee Claims. ...............................................................23

3.1.3 Priority Tax Claims. .......................................................................23

3.2 Class 1: Secured Claims...................................................................23

3.3 Class 2: Priority Claims. ...................................................................24

3.4 Class 3: Farms General Unsecured Claims.......................................25

3.5 Class 4: Ranches General Unsecured Claims. ..................................25

3.6 Class 5: Tyson Claims......................................................................26

3.7 Class 6: Segale Claims Against Ranches..........................................27

3.8 Class 7: Subordinated Claims. .........................................................27

3.9 Class 8: Intercompany Claims. .........................................................27

3.10 Class 9: Interests. ..........................................................................28

3.11 Special Provisions Regarding Insured Claims..................................28

3.12 Comprehensive Settlement of Claims and Controversies.................29

ARTICLE IV ACCEPTANCE OR REJECTION OF THE PLAN ......................29

    4.1    Impaired Class of Claims Entitled to Vote. ................................29

    4.2    Acceptance by an Impaired Class. .............................................29

    4.3    Presumed Acceptances by Unimpaired Classes. .......................30

    4.4    Impaired Classes Deemed to Reject Plan. .................................30

    4.5    Modifications of Votes...............................................................30

    4.6    Confirmation Pursuant to Bankruptcy Code Section 1129(b). ...........30

    4.7    Elimination of Vacant Classes. .................................................30

    4.8    Joint Plan. .................................................................................30

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN ...................30

    5.1    Implementation of the Plan. ......................................................30

    5.2    Implementation of the Global Settlement. ................................31

          5.2.1  The Karen Easterday Settlement Amount. ................................31

          5.2.2  The Karen Easterday Secured Note. ..........................................31

          5.2.3  The Idaho Contribution...............................................................31

          5.2.4  The Basin City Sale . ..................................................................32

          5.2.5  The Easterday Dairy, LLC Note and BC 140 LLC Secured Guaranty.................................................................................32

          5.2.6  The Easterday Family Contribution Instruments. ....................32

          5.2.7  The Transfer of Steer Head Brand.............................................32

          5.2.8  The Assignment of the Canyon Farm Avoidance Actions.......33

          5.2.9  The 3E and Produce Contribution. ...........................................33

          5.2.10 The Easterday Family Adversary Proceedings.........................33

          5.2.11 The Restitution Claims. .............................................................33

5.2.12 The Replacement Director Fees.....................................33

5.2.13 Easterday Family Releases. ........................................33

5.2.14 The Criminal Proceedings. .........................................34

5.2.15 The Consent of the Department of Justice.............................34

5.3   Reserved. ....................................................34

5.4   Easterday Family Tax Payments.....................................34

5.5   Sale Transaction. ..............................................34

5.6   Net Sale Proceeds..............................................35

5.7   Streamlining of the Debtors' Corporate Affairs. ..............................35

5.7.1 Debtors' Existing Directors, Officers, and Managers. .............35

5.7.2 Dissolution of the Debtors. ......................................36

5.7.3 Corporate Documents and Corporate Authority.....................36

5.8   Post-Effective Date Debtors/Plan Administrator. ...................36

5.8.1 Appointment. ................................................36

5.8.2 Vesting of Post-Effective Date Debtors' Assets. ....................36

5.8.3 Authority.....................................................37

5.8.4 Limitation of Liability. .........................................38

5.8.5 Indemnification................................................39

5.8.6 Insurance.....................................................40

5.8.7 Tax Reporting.................................................40

5.8.8 Cash Investments..............................................40

5.8.9 Pursuit and Resolution of Post-Effective Date Debtors'
      Causes of Action..............................................40

5.8.10 No Successor Liability..........................................41

5.9      Preservation of Privileges and Defenses. ................................41

5.10    Preservation of Rights of Action. .........................................41

      5.10.1 Maintenance of Avoidance Actions and Causes of Action. ......41

      5.10.2 Preservation of All Post-Effective Date Debtors' Causes of Action Not Expressly Settled or Released. ...............................42

5.11    Cancellation of Instruments. ................................................42

5.12    Insurance Policies. ..............................................................43

      5.12.1 Insurance Policies Remain In Force. ..................................43

      5.12.2 Insurance Policies; Employment Practice Liability Policies; Similar Policies. ...............................................................43

5.13    Settlement of Avoidance Actions Against Tyson. ....................43

ARTICLE VI EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........43

6.1     Rejection of Executory Contracts and Unexpired Leases. .................43

6.2     Rejection Claims Bar Date. .......................................................44

6.3     Previously Assumed and Assigned Executory Contracts. ..................44

ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS ........................44

7.1     Timing of Distributions for Allowed Claims. ...............................44

7.2     Calculating Distributions and Related Matters. ............................45

7.3     Interest and Other Amounts Regarding Claims. ...........................45

7.4     Distributions by Plan Administrator as Disbursing Agent. ...............45

7.5     Means of Cash Payment. ..........................................................45

7.6     Form of Currency for Distributions. ...........................................45

7.7     Fractional Distributions. ...........................................................45

7.8     De Minimis Distributions. .........................................................46

7.9     No Distributions With Respect to Certain Claims. ........................46

7.10    Distributions and Transfers Upon Resolution of Contingent Claims, Disputed Claims, or Unliquidated Claims...........................47

7.11   Delivery of Distributions.........................................................47

7.12    Application of Distribution Record Date & Other Transfer Restrictions...........................................................................47

7.13   Withholding, Payment, and Reporting Requirements Regarding Distributions.......................................................................48

7.14   Defenses and Setoffs. ..............................................................48

7.15   Allocation of Distributions......................................................49

7.16   Joint Distributions. ..................................................................49

7.17   Forfeiture of Distributions.......................................................49

8.1    Objections to and Resolution of Disputed Claims, Including Any Claims of Excluded Parties. ....................................................49

8.2   Claim Objections.....................................................................49

8.3   Estimation of Certain Claims. .................................................50

8.4   Distributions Following Allowance. ........................................50

8.5   Disposition of Assets in Reserves After Disallowance. ...................50

ARTICLE IX CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ........51

9.1   Conditions to the Effective Date..............................................51

9.2   Waiver of Conditions to the Effective Date.............................52

9.3   Effect of Non-Occurrence of Conditions to the Effective Date..........52

9.4   Notice of the Effective Date....................................................52

9.5   Payment of Plan Sponsor Contribution...................................52

ARTICLE X RELEASES, INJUNCTION, AND RELATED PROVISIONS .......52

10.1   Debtors' Releases.....................................................................52

10.2   Third Party Releases. ...............................................................54

| | | |
|---|---|---|
| 10.3 | Exculpation and Limitation of Liability. | 55 |
| 10.4 | Injunction. | 55 |

ARTICLE XI RETENTION OF JURISDICTION AND POWER ........................57

| | | |
|---|---|---|
| 11.1 | Scope of Retained Jurisdiction and Power | 57 |
| 11.2 | Non-Exercise of Jurisdiction | 59 |

ARTICLE XII MISCELLANEOUS PROVISIONS ........................59

| | | |
|---|---|---|
| 12.1 | Administrative Claims. | 59 |
| 12.2 | Professional Fee Claims. | 60 |
| 12.3 | Payment of Statutory Fees. | 60 |
| 12.4 | Dissolution of the Committees. | 61 |
| 12.5 | Modifications and Amendments. | 61 |
| 12.6 | Severability of Plan Provisions. | 61 |
| 12.7 | Compromises and Settlements. | 62 |
| 12.8 | Binding Effect of Plan. | 62 |
| 12.9 | Term of Injunctions or Stays. | 62 |
| 12.10 | Revocation, Withdrawal, or Non-Consummation. | 62 |
| 12.11 | Exemption from Transfer Taxes. | 63 |
| 12.12 | Computation of Time. | 63 |
| 12.13 | Transactions on Business Days. | 63 |
| 12.14 | Good Faith. | 63 |
| 12.15 | Governing Law. | 63 |
| 12.16 | Notices. | 63 |
| 12.17 | Final Decree. | 64 |
| 12.18 | Additional Documents. | 64 |

12.19 Conflicts with the Plan.................................................................64

ARTICLE XIII REQUEST FOR CONFIRMATION AND RECOMMENDATION64

13.1   Request for Confirmation...................................................64

13.2   Recommendation................................................................65

## TABLE OF EXHIBITS

| Exhibit A | Additional Easterday Family Releasing Parties |
|---|---|
| Exhibit B | 3E-Produce Secured Note |
| Exhibit C | BC 140 LLC Secured Guaranty |
| Exhibit D | Easterday Dairy LLC Note |
| Exhibit E | Karen Easterday Secured Note |
| Exhibit F | Administrative Agent Agreement |
| Exhibit G | Plan Administrator Agreement |
| Exhibit H | Easterday Family Released Parties |
| Exhibit I | Form of Mutual Release Agreement |
| Exhibit J | Farms GUC Claims Schedule |

# INTRODUCTION[1]

The Debtors hereby propose, with the support of the Committees, Tyson, and Segale (each as defined below), the following joint plan of liquidation (this "Plan"), which provides for the resolution of the outstanding Claims and Interests asserted against the Debtors. Reference is made to the Disclosure Statement for (i) a discussion of the Debtors' history, businesses, properties, results of operations, and financial projections; (ii) a summary and analysis of this Plan; and (iii) certain related matters, including risk factors relating to the consummation of this Plan and Distributions to be made under this Plan. The Debtors are the proponents of the Plan within the meaning of Bankruptcy Code section 1129.

All Holders of Claims who are entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127, Bankruptcy Rule 3019, and Sections 11.5 and 11.13 of the Plan, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith, have been approved for use in soliciting acceptances and rejections of this Plan. Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed to Holders of Claims to the extent required by Bankruptcy Code section 1125.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS AND SCHEDULES THERETO) AND THE PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

---

[1] A capitalized term used in this Introduction shall have the meanings ascribed to those terms in Article I below.

# ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

A capitalized term used in this Plan shall have the meanings set forth in this Article I. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules.

**1.1** **3E:** 3E Properties, a Washington general partnership.

**1.2** **3E-Produce Purchase Price:** $2,274,210.

**1.3** **3E-Produce Secured Note:** The Secured Promissory Note issued jointly by 3E and Produce in favor of the Administrative Agent, as successor in interest to Cody and Debby Easterday, in the original principal amount of the 3E-Produce Purchase Price, in substantially the form attached hereto as **Exhibit B**.

**1.4** **3E Properties Adversary Proceeding:** *Easterday Farms v. 3E Properties, et al.*, Adv. Pro. No. 21-80057-WLH (Bankr. E.D. Wash.).

**1.5** **Additional Easterday Family Releasing Parties:** The parties identified on **Exhibit A** hereto.

**1.6** **Administrative Agent:** B. Riley Advisory Services.

**1.7** **Administrative Agent Agreement:** The *Administrative Agent Agre*ement by and between Tyson and Segale, on the one hand, and the Administrative Agent, on the other hand, in substantially the form attached hereto as **Exhibit F**.

**1.8** **Administrative Claim:** A Claim (other than a Professional Fee Claim, but, for the avoidance of doubt, including Ordinary Course Professional Fee Claims) arising under Bankruptcy Code sections 503(b), 507(a)(2), 507(b), or 1114(e)(2), to the extent not previously paid, otherwise satisfied, or withdrawn, including (a) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code and (b) all Section 503(b)(9) Claims.

**1.9** **Administrative Claims Bar Date:** The last date by which any Person must File a request for payment of an Administrative Claim arising on or after April 1, 2022, which date shall be the first Business Day that is at least thirty-five (35) calendar days after the Effective Date, or, alternatively, such earlier date as is set by the Bankruptcy Court. For the avoidance of doubt, postpetition statutory tax claims shall not be subject to any Administrative Claims Bar Date.

**1.10    Allocation Dispute Adversary Proceeding:** *Easterday Ranches, Inc. v. Estate of Gale A. Easterday, et al.*, Adv. Pro. No. 21-80050-WLH (Bankr. E.D. Wash).

**1.11    Allowed**, **Allowed Claim**, or **Allowed Administrative Claim:**

      (a)    with respect to a Claim arising prior to the Petition Date (including a Section 503(b)(9) Claim):

           (i)    either (A) a proof of claim was timely Filed by the applicable Claims Bar Date, or (B) a proof of claim is deemed timely Filed either as a result of such Claim being Scheduled or by a Final Order; and

           (ii)    either (A) the Claim is not a Contingent Claim, a Disputed Claim, an Unliquidated Claim, or a Disallowed Claim; or (B) the Claim is expressly allowed by a Final Order or under the Plan;

      (b)    with respect to a Claim arising on or after the Petition Date (excluding a Section 503(b)(9) Claim), a Claim that has been allowed by a Final Order or under the Plan.

Unless otherwise specified in the Plan or by a Final Order, an "Allowed Administrative Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest, penalties, fees, or late charges on such Administrative Claim or Claim from and after the Petition Date. Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Cases is not an Allowed Claim. For the avoidance of doubt, any and all Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.

**1.12    Available Cash:** All Cash held by the Debtors on the Effective Date or by the Post-Effective Date Debtors, on or after the Effective Date; in each case, after payment, allocation, or reserve in accordance with the Plan for: (a) unpaid or unutilized amounts for Post-Effective Date Debtors' Expenses; and (b) any post-Confirmation reserve requirements of the Debtors or the Post-Effective Date Debtors in connection with the Plan, any agreements, or any Bankruptcy Court orders. For the avoidance of doubt, except as specifically required by the Plan, any Cash that has been reserved on or before the Effective Date in respect of any party under the Cash Collateral Orders shall no longer be treated as reserved on such basis on and after the Effective Date.

**1.13    Avoidance Actions:** Any and all causes of action, claims, remedies, or rights, other than the North Lot Actions and the Canyon Farms Avoidance Actions, that may be brought by or on behalf of the Debtors or the Estates under Bankruptcy Code sections

542, 544, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes, or pursuant to any theory or cause of action under common law, regardless whether such action has been commenced prior to the Effective Date.

**1.14** <u>**Ballot:**</u> The ballot form authorized by the Bankruptcy Court pursuant to the Solicitation Procedures Order to indicate acceptance or rejection of the Plan and to opt out of the release provided by <u>Section 10.2</u> herein.

**1.15** <u>**Bankruptcy Code:**</u> Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as the same may be amended from time to time to the extent applicable to the Chapter 11 Cases.

**1.16** <u>**Bankruptcy Court:**</u> The United States Bankruptcy Court for the Eastern District of Washington, or in the event such court ceases to exercise jurisdiction over any Chapter 11 Case, such other court or adjunct thereof that exercises jurisdiction over such Chapter 11 Case in lieu of the United States Bankruptcy Court for the Eastern District of Washington.

**1.17** <u>**Bankruptcy Rules:**</u> The Federal Rules of Bankruptcy Procedure promulgated by the Supreme Court of the United States under 28 U.S.C. § 2075, as the same may be amended from time to time to the extent applicable to the Chapter 11 Cases.

**1.18** <u>**Basin City Property:**</u> Certain real estate and related property in the Basin City area of Franklin County, Washington titled in the name of Cody A. Easterday and Debby Easterday described as APN/Parcel ID(s): 121310054, 121320044, and 125230080.

**1.19** <u>**Basin City Property Purchase Price:**</u> $4,200,000.00 *plus* assumption of the liability to Equitable Life, which liability is secured by certain of the Basin City Property.

**1.20** <u>**BC 140 LLC:**</u> BC 140, LLC, a Washington limited liability company, wholly owned by Karen Easterday or any entity controlled by her and formed for the purpose of fulfilling the obligations of BC 140 LLC under this Plan and associated documents.

**1.21** <u>**BC 140 LLC Secured Guaranty:**</u> The *Secured Guaranty* by and between BC 140 LLC and the Administrative Agent in substantially the form attached hereto as <u>**Exhibit C**</u>.

**1.22** <u>**Business Day:**</u> Any day other than a Saturday, a Sunday, a "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or any other day on which commercial banks in the State of Washington are required or authorized to close by law or executive order.

**1.23** **Canyon Farm Avoidance Actions:** Any Causes of Action of the Debtors or their Estates against Canyon Farm, LLC and any of its affiliates, parents, subsidiaries, successors, and assigns, including, but not limited to, Canyon Farm II, LLC and Fall Line Capital, LLC.

**1.24** **Cash:** Cash and cash equivalents, including bank deposits, wire transfers, checks representing good funds, and legal tender of the United States of America or instrumentalities thereof.

**1.25** **Cash Collateral Orders:** Collectively, the Final Cash Collateral Orders and the preceding interim orders entered by the Bankruptcy Court authorizing the applicable Debtors to use Cash and providing adequate protection.

**1.26** **Causes of Action:** Any and all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, variances, trespasses, rights of setoff, third-party claims, subordination claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, action for substantive consolidation, counterclaims, and cross claims, damages, or judgments whatsoever (other than the North Lot Actions), whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, foreseen or unforeseen, asserted or unasserted, existing or hereafter arising, in law, at equity, by statute, whether for tort, fraud, contract, or otherwise. For the avoidance of doubt, the term "Causes of Action" includes Avoidance Actions.

**1.27** **CFTC:** Commodity Futures Trading Commission and any affiliates, successors, and assigns.

**1.28** **CFTC Claim:** The Allowed Claim in the amount of $233,008,042 in accordance with the terms of the consent order agreed to by Ranches and the CFTC [Docket No. 1203] and approved by the Bankruptcy Court [Docket No. 1269]. The CFTC Claim is a Subordinated Claim.

**1.29** **Chapter 11 Cases:** The voluntary chapter 11 bankruptcy cases commenced by the Debtors consisting of Easterday Ranches, Inc., Case No. 21-00141 and Easterday Farms, a Washington general partnership, Case No. 21-00176, which are being jointly administered under the case caption *In re Easterday Ranches, Inc., et al.*, Case No. 21-00141-11 (Bankr. E. D. Wash.).

**1.30** **Claim:** Any "claim" as defined in Bankruptcy Code section 101(5), against any of the Debtors or against any property of the Debtors.

**1.31   Claim Objection Deadline:** Subject to extension as set forth in Section 8.2 of the Plan, the date that is the first Business Day that is at least **180 calendar days after the Effective Date**. For the avoidance of doubt, the Claim Objection Deadline may be extended one or more times by the Bankruptcy Court.

**1.32   Claims Bar Date:** As applicable, the Administrative Claims Bar Date, the General Claims Bar Date, the Governmental Claims Bar Date, any Supplemental Bar Date, or the Rejection Claims Bar Date.

**1.33   Class:** A class of Claims or Interests designated pursuant to the Plan, or any subclass thereof.

**1.34   Class 4 Initial Payment:**   $1,628,000.00 of the Initial Net Distributable Proceeds.

**1.35   Class 4 Net Distributable Assets:** The Class 4 Initial Payment plus the Pro Rata share of Allowed Class 4 Claims to the Net Distributable Assets (not including the Initial Net Distributable Proceeds).   For the avoidance of doubt, the Class 4 Net Distributable Assets do not include any amounts included in reserves, or amounts released from reserves, in accordance with the definition of Net Distributable Assets.

**1.36   Class 5 Initial Payment:**   $1,650,000.00 of the Initial Net Distributable Proceeds.

**1.37   Class 5 Net Distributable Assets:**  The Class 5 Initial Payment plus the Pro Rata share of Allowed Class 5 Claims to the Net Distributable Assets (not including the Initial Net Distributable Proceeds).

**1.38   Class 6 Initial Payment:**  $922,000.00 of the Initial Net Distributable Proceeds.

**1.39   Class 6 Net Distributable Assets:**  The Class 6 Initial Payment plus the Pro Rata share of Allowed Class 6 Claims to the Net Distributable Assets (not including the Initial Net Distributable Proceeds).

**1.40   Cody Easterday Preserved Claims:** All Claims of Cody Easterday against Tyson or Segale.

**1.41   Collateral:** Any Estate Asset that is subject to a Lien to secure the payment or performance of a Claim, which Lien is perfected and not subject to avoidance under the Bankruptcy Code or otherwise invalid or unenforceable under the Bankruptcy Code or applicable nonbankruptcy law.  For the avoidance of doubt, the term Collateral does not include the FRI Assets.

**1.42   Committees:** Collectively, the Farms Committee and the Ranches Committee.

**1.43    Confirmation:** The entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

**1.44    Confirmation Hearing:** The hearing held by the Bankruptcy Court to consider confirmation of this Plan.

**1.45    Confirmation Order:** The order of the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code section 1129.

**1.46    Contingent Claim:** Any Claim that is Scheduled or Filed as contingent.

**1.47    Cooperation Agreement:** The *Stipulation By and Between Debtors and Non-Debtor Sellers Regarding Cooperation with Respect to the Sale of Debtor and Non-Debtor Assets* approved by the Bankruptcy Court by order entered on April 28, 2021 [Docket No. 655].

**1.48    Corporate Action:** Any action, approval, authorization, decision, or other act of any kind that would be necessary on the part of any Person for any corporation, limited liability company, general partnership, or other Person to in turn act.

**1.49    Dairy:** Easterday Dairy, LLC, a Washington limited liability company.

**1.50    Debtor** or **Debtors:** Individually, and collectively, Farms and Ranches.

**1.51    Debtor Exculpated Parties:** The Debtors and their respective Related Parties. For the avoidance of doubt, Debtor Exculpated Parties shall include, the Independent Directors, Pachulski Stang Ziehl & Jones LLP, Paladin Management Group, Peter Richter, and T. Scott Avila.

**1.52    Debtors' Releases:** The releases given on behalf of the Debtors and their Estates to the Released Parties as set forth in Section 10.1(a) herein.

**1.53    Disallowed Claim:** Any Claim that (a) is not Scheduled, or is listed thereon as contingent, unliquidated, disputed, or in an amount equal to zero, and whose Holder failed to timely File a proof of claim by the applicable Claims Bar Date (unless late filing was permitted by a Bankruptcy Court order), but excluding any Claim that is expressly Allowed by a Final Order or under the Plan; or (b) has been disallowed pursuant to an order of the Bankruptcy Court.

**1.54    Disclosure Statement:** That certain disclosure statement, including all exhibits and schedules thereto or referenced therein, that relates to this Plan and has been prepared and distributed by the Debtors, as plan proponents, as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125, as the same may be may be amended, modified, or supplemented.

**1.55** **Disclosure Statement Order:** The order approving the Disclosure Statement, authorizing the Debtors to solicit acceptances of the Plan and establishing certain related procedures and deadlines.

**1.56** **Disputed Claim:** Any Claim:

    (a)    that is disputed in whole or in part under the Plan; or

    (b)    that is asserted by any of the Excluded Parties; or

    (c)    that

        (i)    is not expressly Allowed by a Final Order or under the Plan; and

        (ii)    as to which a proof of claim is Filed or is deemed Filed as a result of such Claim being Scheduled; and

        (iii)    as to which either:

            (1)    an objection or request for estimation or subordination (A) has been timely Filed within the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order under which the applicable period of limitation has expired, and (B) has not been denied by a Final Order or withdrawn; or

            (2)    the Claim Objection Deadline has not passed as to such Claim (unless the Plan Administrator has determined that it will not object to such Claim).

**1.57** **Distributable Assets:** Except as otherwise noted below, any and all real or personal property of the Debtors and their Estates of any nature, including, without limitation, any real estate, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, inventory, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Causes of Action, books and records, any other general intangibles of the Debtors as of the Effective Date and the Post-Effective Date Debtors from and after the Effective Date, and any and all proceeds of the foregoing, as the case may be, of any nature whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent), including, without limitation, property of the Estates within the scope of Bankruptcy Code section 541 (including, for the avoidance of doubt, the Net Sale Proceeds, the Plan Sponsor Contribution, and the Tyson Avoidance Action Settlement). Notwithstanding the foregoing, the term "Distributable Assets" does not include (i) any Cash tendered by the Debtors and held in their counsel's trust account for the purpose

of satisfying Professional Fee Claims, (ii) the FRI Assets, (iii) the North Lot Actions, (iv) the Canyon Farms Avoidance Actions, or (v) the Easterday Family Contribution Instruments, which shall be issued directly to the Administrative Agent in accordance with the terms of this Plan.

**1.58** **Distribution:** Any initial or subsequent issuance, payment, or transfer of consideration made under the Plan.

**1.59** **Distribution Date:** Any date on which a Distribution is made.

**1.60** **Distribution Record Date:** The record date for determining entitlement of Holders of Claims to receive Distributions under the Plan, which date shall be the Effective Date.

**1.61** **Distribution Reserve:** One or more reserves in respect of Contingent Claims, Disputed Claims, or Unliquidated Claims established by the Plan Administrator.

**1.62** **DOJ:** The United States Department of Justice.

**1.63** **Easterday Dairy LLC Note:** The *Promissory Note* issued by Easterday Dairy, LLC in favor of the Administrative Agent, substantially in the form attached hereto as **Exhibit D**.

**1.64** **Easterday Family:** Cody A. Easterday, Karen L. Easterday (in her individual capacity and as the personal representative of the Estate of Gale A. Easterday), and Debby Easterday.

**1.65** **Easterday Family Contribution Instruments:** The Karen Easterday Secured Note, the Easterday Dairy LLC Note, the BC 140 LLC Secured Guaranty, and the 3E-Produce Secured Note.

**1.66** **Easterday Family Related Parties:** Any Related Parties of the Easterday Family, including, for the avoidance of doubt, Sussman Shank LLP, Tonkon Torp LLP, Jordan Ramis PC, Northwest CPA Group, PLLC, Widner Consulting, LLC, and Lindy Widner.

**1.67** **Easterday Family Released Parties:** The Easterday Family and their Related Parties, including, but not limited to, those persons and entities identified on **Exhibit H** that have executed a Mutual Release Agreement on or prior to the Effective Date; *provided, however*, that any person or entity identified in Part One on **Exhibit H** that has not executed a Mutual Release Agreement on or prior to the Effective Date shall not be an Easterday Family Released Party.

**1.68** **Easterday Family Releasing Parties:** The Easterday Family Released Parties.

**1.69** **Easterday Family Tax Payments:** Any tax obligations of the Easterday Family to applicable taxing authorities relating to the Debtors, the business operations of the Debtors, or the sale of the Debtors' real estate.

**1.70** **Effective Date:** The date that is the first Business Day on which each condition set forth in Article IX of the Plan has been satisfied or waived as set forth therein.

**1.71** **Equitable Life:** Equitable Financial Life Insurance Company.

**1.72** **Escrow Account:** The escrow account into which the Net Sale Proceeds are distributed, as defined in the Cooperation Agreement.

**1.73** **Estate Assets:** Collectively, (a) any and all right, title, and interest of the Debtors and the Estates in and to property of whatever type or nature, including their books and records and all Avoidance Actions and Causes of Action, as of the Effective Date, and (b) any assets contributed to or recovered by the Post-Effective Date Debtors on or after the Effective Date. For the avoidance of doubt, the term Estate Assets does not include any of the FRI Assets, the North Lot Actions or the Canyon Farms Avoidance Actions.

**1.74** **Estate Released Parties:** Collectively, (a) the Debtors and their respective Related Parties, including the Independent Directors, Pachulski Stang Ziehl & Jones LLP, Paladin Management Group, Peter Richter, and T. Scott Avila, (b) the Ranches Committee and its Related Parties, (c) the Farms Committee and its Related Parties, (d) Tyson and its Related Parties, and (e) Segale and its Related Parties.

**1.75** **Estates:** The chapter 11 estates of the Debtors created by Bankruptcy Code section 541(a).

**1.76** **Exculpated Parties:** Collectively, (a) the Debtor Exculpated Parties, (b) the Easterday Family and their Related Parties, (c) the Replacement Directors and their Related Parties, (d) the Ranches Committee and its Related Parties, (e) the Farms Committee and its Related Parties, (f) Tyson and its Related Parties, (g) Segale and its Related Parties, and (h) FRI and its Related Parties.

**1.77** **Farms:** Debtor Easterday Farms, a Washington general partnership.

**1.78** **Farms Committee:** The official committee of unsecured creditors, as contemplated under Bankruptcy Code section 1102, which was appointed in the Chapter 11 Case of Farms, as such committee may be reconstituted from time to time.

**1.79** **Farms GUC Claims Schedule:** **Exhibit J** attached hereto setting forth the Allowed amounts of certain Class 3 Claims that shall be Allowed in such amounts for all purposes under the Plan, including for purposes of receiving Distributions under the Plan.

**1.80** **File**, **Filed**, or **Filing:** Duly and properly filed with the Bankruptcy Court and reflected on the docket of the Chapter 11 Cases.

**1.81** **Final Decree:** An order entered pursuant to Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Chapter 11 Cases of one or both of the Debtors.

**1.82** **Final Cash Collateral Orders:** That certain *Final Order Authorizing Debtor Easterday Farms to Use Cash Collateral and Granting Adequate Protection*, entered on March 25, 2021 [Docket No. 471] and *Final Order Authorizing Debtor Easterday Ranches, Inc. to Use Cash Collateral and Granting Adequate Protection*, entered on March 25, 2021 [Docket No. 470].

**1.83** **Final Order:** An order or judgment of the Bankruptcy Court entered on the docket of the Chapter 11 Cases:

        (a)    that has not been reversed, rescinded, stayed, modified, or amended;

        (b)    that is in full force and effect; and

        (c)    with respect to which (i) the time to appeal or to seek review, rehearing, remand, or a writ of certiorari has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (ii) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

For the avoidance of doubt, no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Bankruptcy Code section 502(j), Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 may be or has been filed with respect to such order.

**1.84** **FRI:** Farmland Reserve, Inc., a Utah nonprofit corporation, and its affiliates, subsidiaries, officers, directors, managers, principals, members, employees, and agents, each in its capacities as (a) stalking horse bidder in connection with an auction held on June 17, 2021 and the successful purchaser of the FRI Assets pursuant to the Purchase and Sale Agreement evidencing the Sale Transaction approved at a hearing before the Bankruptcy Court on July 14, 2021 and that closed on July 30, 2021, (b) landlord to the Debtors under that certain Temporary Lease Agreement that became effective on the closing of the Sale Transaction on July 30, 2021, and (c) obligor on the Plan Sponsor Contribution.

**1.85** **FRI Assets:** All of FRI's right, title and interest in and to certain property identified in that certain Purchase and Sale Agreement evidencing the Sale Transaction that closed pursuant to the Sale Order on July 30, 2021.

**1.86** **General Claims Bar Date:** May 28, 2021.

**1.87** **General Unsecured Claim:** Any unsecured, non-priority Claim existing as of the Petition Date or a Rejection Claim that is asserted against either or both of the Debtors or the Estates and is not a Secured Claim, Tyson Claim, Segale Claim, Intercompany Claim, or Subordinated Claim.

**1.88** **Global Settlement:** The global settlement among the Settling Parties as reflected in the Global Settlement Term Sheet and as incorporated into this Plan.

**1.89** **Global Settlement Term Sheet**: The *Global Settlement Term Sheet*, dated April 14, 2022, by and among the Debtors, the Easterday Family, 3E, Produce, Dairy, the Ranches Committee, the Farms Committee, Tyson, and Segale that was approved by the Bankruptcy Court on April 20, 2022 [Docket No. 1560].

**1.90** **Governance Adversary Proceeding:** *Easterday Ranches, Inc. and Easterday Farms v. Estate of Gale Easterday, et al.*, Adv. Pro. No. 22-80008-WLH (Bankr. E.D. Wash.).

**1.91** **Governmental Claims Bar Date:** August 9, 2021.

**1.92** **Holder:** The Person that is the owner of record of a Claim or Interest, as applicable.

**1.93** **Idaho Contribution:** $669,300.00.

**1.94** **Impaired:** Any Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code section 1124.

**1.95** **Independent Directors:** R. Todd Neilson, Craig Barbarosh, and Thomas Saunders V.

**1.96** **Initial Net Distributable Proceeds:** The first $4.2 million of Net Distributable Proceeds, consisting of the Class 4 Initial Payment, the Class 5 Initial Payment, and the Class 6 Initial Payment.

**1.97** **Insurance Policies:** All insurance policies that have been issued to, or provide coverage at, any of the Debtors and all agreements, instruments, or documents relating thereto.

**1.98    Insured Claim:** Any Claim or portion of a Claim (other than a Claim held by an employee of the Debtors for workers' compensation coverage under the workers' compensation program applicable in the particular state in which the employee is employed by the Debtors) that is insured under the Debtors' insurance policies, but only to the extent of such coverage.

**1.99    Intercompany Claim:** A Claim against a Debtor held by another Debtor.

**1.100    Interests:** All previously issued and outstanding common stock, preferred stock, partnership interests, or other ownership interests in either of the Debtors outstanding immediately prior to the Effective Date, including restricted stock, treasury stock, and all options, warrants, calls, rights, puts, awards, commitments, appreciation rights, or any other agreements of any character to convert, exchange, exercise for, or otherwise receive any such common stock, preferred stock, partnership interests, or other ownership interests.

**1.101    Karen Easterday Settlement Amount:** $6,000,000.00.

**1.102    Karen Easterday Secured Note:** The *Secured Promissory Note* issued by Karen Easterday in favor of the Administrative Agent in the original principal amount of $5 million, in substantially the form attached hereto as **Exhibit E**.

**1.103    Lien:** Any lien, security interest, pledge, title retention agreement, encumbrance, leasehold, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

**1.104    Mutual Release Agreement:** A *Mutual Release Agreement* in substantially the form attached hereto as **Exhibit I**.

**1.105    Net Distributable Assets:** The Distributable Assets of the Post-Effective Date Debtors from and after the Effective Date once all such assets have been reduced to Cash (including, for the avoidance of doubt, the Net Sale Proceeds, the Plan Sponsor Contribution, and the Tyson Avoidance Action Settlement), net of amounts necessary to fund the payment of, as applicable and except as otherwise agreed by the Holders of such Claims, Allowed Administrative Claims, Priority Tax Claims, Priority Claims, Farms General Unsecured Claims, Post-Effective Date Debtors' Expenses, and reserves established for any of the foregoing, but excluding those Distributable Assets of the Debtors or the Post-Effective Date Debtors that were subject to any Liens or Secured Claims as of the Effective Date until such time that such Liens or Secured Claims are satisfied in full. The Net Distributable Assets, commencing with the Initial Net

Distribution, shall be distributed by the Plan Administrator in accordance with the terms of this Plan.

**1.106 Net Sale Proceeds:** The net proceeds from the sale of the Debtors' assets, as defined in the Cooperation Agreement.

**1.107 North Lot Actions:** Any and all causes of action, claims, remedies or rights that may be brought by or on behalf of the Debtor or the Estates under Bankruptcy Code sections 542, 544, 547, 548, 550, 551, or 553, or related state or federal statutes, or pursuant to any theory or cause of action under common law against AB Livestock, LLC (or its affiliates, successors, or assigns) related to the transfer by Ranches on or about January 22, 2021 of Ranches' North Lot property.

**1.108 Ordinary Course Professional:** Any ordinary course professional retained pursuant to an order of the Bankruptcy Court.

**1.109 Ordinary Course Professional Fee Claim:** A Claim of an Ordinary Course Professional for compensation or reimbursement of costs and expenses relating to services provided during the period from the Petition Date through and including the Effective Date.

**1.110 Person:** Any person or organization created or recognized by law, including any association, company, cooperative, corporation, entity, estate, fund, individual, joint stock company, joint venture, limited liability company, partnership, trust, trustee, unincorporated organization, government or any political subdivision thereof, or any other entity or organization of whatever nature.

**1.111 Petition Date:** (a) February 1, 2021, when used in reference to Ranches which filed its voluntary chapter 11 petition for relief in the Bankruptcy Court on such date; and (b) February 8, 2021, when used in reference to Farms which filed its voluntary chapter 11 petition for relief in the Bankruptcy Court on such date.

**1.112 Plan Administrator:** Seth R. Freeman of B. Riley Advisory Services shall be the initial Plan Administrator designated to wind up and liquidate the Debtors' affairs following the Effective Date.

**1.113 Plan Administrator Agreement:** The *Plan Administrator Agreement* by and between the Plan Administrator and the Post-Effective Date Debtors, in substantially the form attached hereto as **Exhibit G**.

**1.114 Plan Sponsor Contribution:** $5,000,000.00, to be paid by FRI as set forth in Section 9.5 of the Plan. For the avoidance of doubt, the Plan Sponsor Contribution is a post-closing obligation of FRI that arose under the Purchase and Sale Agreement and

remains contingent on the confirmation of the Plan in form and content that is consistent with the Sale Order.

**1.115 <u>Plan Supplement</u>:** The ancillary documents regarding the implementation and effectuation of the Plan, which will be filed on or before the date that is seven (7) calendar days prior to the Voting Deadline, as such documents may be amended and supplemented prior to the Confirmation Hearing.

**1.116 <u>Post-Effective Date Debtors</u>:** Post-Effective Date Debtor Farms and Post-Effective Date Debtor Ranches.

**1.117 <u>Post-Effective Date Debtors' Causes of Action</u>:** Collectively, all Avoidance Actions and Causes of Action held by the Debtors or the Estates as of the Effective Date that shall be vested in the Post-Effective Date Debtors, in each case as against any Person that is not a Released Party or Exculpated Party. For the avoidance of doubt, the Post-Effective Date Debtors' Causes of Action exclude the North Lot Actions and any Canyon Farm Avoidance Actions.

**1.118 <u>Post-Effective Date Debtors' Assets</u>:** Collectively, the Distributable Assets of each Debtor allocable to the respective Post-Effective Date Debtor, including the Causes of Action.

**1.119 <u>Post-Effective Date Debtors' Expenses</u>:** Any and all reasonable fees, costs, and expenses incurred by the Plan Administrator not inconsistent with the Plan, including, without limitation, (i) the maintenance or disposition of the Post-Effective Date Debtors' Assets, (ii) Plan Administrator fees, indemnity reserves, attorneys' fees, the fees of professionals, and other Persons retained by the Plan Administrator, (iii) personnel-related expenses, and (iv) any taxes imposed on the Post-Effective Date Debtors' or in respect of the Post-Effective Date Debtors' Assets.

**1.120 <u>Post-Effective Date Debtor Farms</u>:** Farms and the Farms Estate after the Effective Date.

**1.121 <u>Post-Effective Date Debtor Ranches</u>:** Ranches and the Ranches Estate after the Effective Date.

**1.122 <u>Post-Effective Date Indemnified Parties</u>:** The Plan Administrator and their Related Parties, each in their respective capacity as such.

**1.123 <u>Postpetition Corporate Actions</u>:** The actions taken on March 12, 2022 by the Easterday Family purporting to remove the Independent Directors and replace them with the Replacement Directors, including the execution by the Easterday Family of (i) a unanimous written consent of the shareholders of Ranches purporting to remove

the Independent Directors and (ii) an amendment to the Easterday Farms partnership agreement purporting to replace the Independent Directors with a manager

**1.124 <u>Preference Claim</u>:** Any Avoidance Action that may be brought by or on behalf of the Debtors or the Estates under Bankruptcy Code section 547, or under related state or federal statutes, or pursuant to any theory or cause of action under common law, regardless whether such action has been commenced prior to the Effective Date.

**1.125 <u>Priority Claim</u>:** A Claim that is entitled to priority under Bankruptcy Code section 507(a), other than an Administrative Claim and a Priority Tax Claim.

**1.126 <u>Priority Tax Claim</u>:** A Claim that is entitled to priority under Bankruptcy Code section 507(a)(8).

**1.127 <u>Produce</u>:** Easterday Farms Produce, Co., a Washington corporation.

**1.128 <u>Professional</u>:** Any professional (other than an Ordinary Course Professional) employed in the Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328, 1103, or 1104 or any professional or other Person (in each case, other than an Ordinary Course Professional) seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to Bankruptcy Code section 503(b)(3) or 503(b)(4).

**1.129 <u>Professional Fee Claim</u>:** A Claim of a Professional for compensation or reimbursement of costs and expenses (or of members of any of the Committees for reimbursement of expenses) relating to services provided during the period from the Petition Date through and including the Effective Date.

**1.130 <u>Professional Fee Reserves</u>:** The reserves established and funded by the Debtors pursuant to Section 12.2 of the Plan to provide sufficient funds to satisfy in full all unpaid Allowed Professional Fee Claims that are not otherwise funded to the trust account of the Debtors' counsel.

**1.131 <u>Pro Rata</u>:** Proportionately so that the ratio of (a) the amount of consideration distributed on account of a particular Allowed Claim to (b) the amount or number of that Allowed Claim, is the same as the ratio of (x) the amount of consideration available for Distribution on account of, as applicable, all Allowed Claims in the Class in which the particular Allowed Claim is included to (y) as applicable, the amount of all Allowed Claims of that Class, as adjusted to take into account any applicable Distribution Reserves.

**1.132 <u>Purchase and Sale Agreement</u>:** The Purchase and Sale Agreement dated May 19, 2021, Filed by the Debtors at Docket No. 737, that was approved as the Stalking Horse Agreement by the Bankruptcy Court on May 28, 2021 at Docket No. 749, that

was subsequently amended by that certain First Amendment on June 18, 2021 and Filed as the successful bidder PSA on June 21, 2021 at Docket No. 830, and on which the Sale Transaction closed on July 30, 2021 in accordance with the Sale Order entered by the Bankruptcy Court on July 20, 2021 at Docket No. 927. For avoidance of doubt, the term Purchase and Sale Agreement includes any Exhibit, Schedule, or ancillary agreement referenced in or related to the Purchase and Sale Agreement that was necessary to consummate the Sale Transaction.

**1.133 Ranches**: Debtor Easterday Ranches, Inc., a Washington corporation.

**1.134 Ranches Committee:** The official committee of unsecured creditors, as contemplated under Bankruptcy Code section 1102, which was appointed in the Chapter 11 Case of Ranches, as such committee may be reconstituted from time to time.

**1.135 Rejection Claim:** Any Claim for monetary damages as a result of the rejection of any prepetition executory contract or unexpired lease, whether rejected pursuant to the Confirmation Order or otherwise.

**1.136 Rejection Claims Bar Date:** To the extent not previously established by prior order of the Bankruptcy Court, thirty (30) calendar days after the Effective Date.

**1.137 Related Parties:** Collectively, all of the respective accountants, agents, attorneys, bankers, consultants, financial advisors, investment bankers, professional persons, representatives, and successors and assigns of the referenced Person; *provided, however*, that the Debtors' Related Parties will be limited to the following Persons: R. Todd Neilson; Craig Barbarosh; Thomas Saunders V; T. Scott Avila; Peter Richter; Paladin Management Group, LLC (and each of their subcontractors and their respective Related Parties); Pachulski Stang Ziehl & Jones LLP; Bush Kornfeld LLP; and Davis Wright Tremaine LLP; *provided further*, for the avoidance of doubt, with respect to each Committee, "Related Parties" shall include the members of such Committee but solely in their capacity as a member of such Committee, each of such member's representatives with respect to the Committee, and their counsel, if any; *provided further*, with respect to the Easterday Family, "Related Parties" shall also include any and all related family members and entities (except for Weyns Farms LLC) in which the Easterday Family or their related family members own an interest and those Persons' Related Parties.

**1.138 Released Parties:** Collectively, (a) the Debtors' and their Related Parties, (b) the Easterday Family Released Parties and their Related Parties, (c) the Farms Committee and its Related Parties, (d) the Ranches Committee and its Related Parties, (e) Tyson

and its Related Parties, (f) Segale and its Related Parties, and (g) FRI and its Related Parties.

**1.139 <u>Releasing Parties</u>:** Collectively, (a) the Released Parties; (b) all Holders of Claims that (i) vote to accept the Plan and (ii) do not affirmatively opt out of the Third Party Release provided by Section 10.2(a) hereof pursuant to a duly executed Ballot; *provided that*, notwithstanding anything contained herein to the contrary, in no event shall the Holder of a Claim that (x) does not vote to accept or reject this Plan, (y) votes to reject this Plan, or (z) appropriately marks the Ballot to opt out of the Third Party Release provided in Section 10.2(a) hereof and returns such Ballot in accordance with the Solicitation Procedures Order, be a Releasing Party; and (c) with the respect to the Easterday Family Released Parties, Releasing Parties shall also include the Additional Easterday Family Releasing Parties.

**1.140 <u>Replacement Directors</u>:** Eric Bonnett, Clyde Hamstreet, Mark Calvert, Matt McKinlay, and Stephen Benson.

**1.141 <u>Replacement Director Fee</u>:** $10,000 per Replacement Director.

**1.142 <u>Sale Order</u>:** The Bankruptcy Court's *Order (A) Authorizing the Debtors to Acquire Certain Assets Owned by the Easterdays; (B) Authorizing the Sale of Property Free and Clear of Interests, Including Liens, Claims, Liabilities, and Encumbrances; (C) Granting the Buyer the Protections Afforded to a Good Faith Purchaser; (D) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (E) Granting Related Relief* [Docket No. 927], as supplemented by the *Supplemental Sale Order Concerning the Initial Paydown Amount for Prudential Insurance Company of America* [Docket No. 948].

**1.143 <u>Sale Transaction</u>:** Collectively, (a) the Debtors' purchase, to the extent necessary, of the Easterday Family's rights, title and interests in and to the "Easterday Property" (as such term in defined in the Purchase and Sale Agreement); (b) the Debtors' sale to FRI of all the "Property" (as such term is defined in the Purchase and Sale Agreement); (c) FRI's leaseback of the "Property" to the Debtors pursuant to the

Temporary Lease Agreement; and (d) FRI's obligation to contribute the Plan Sponsor Contribution in support of the consummation of the Plan.

**1.144 <u>Scheduled</u>:** Set forth in the Schedules.

**1.145 <u>Schedules</u>:** The Schedules of Assets and Liabilities Filed by the Debtors in the Chapter 11 Cases, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

**1.146 <u>Section 503(b)(9) Claim</u>:** A Claim arising under Bankruptcy Code section 503(b)(9).

**1.147 <u>Secured Claim</u>:** A Claim that is secured by a valid, perfected, and enforceable Lien on property in which the Debtors or the Estates have an interest, which Lien is valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law. A Claim is a Secured Claim only to the extent of the value of the Holder's interest in the Debtors' interest in the Collateral or to the extent of the amount subject to set-off against a Cause of Action held by the Debtors, whichever is applicable, and as determined under Bankruptcy Code section 506(a). To the extent that the value of such interest in the Debtors' interest in the subject Collateral or the amount subject to set-off against a Cause of Action held by the Debtors (as applicable) is less than the amount of the Claim which has the benefit of such security or is supported by such setoff right, such portion of the Claim is unsecured and shall be treated as a General Unsecured Claim unless, in any such case, the Class of which the Secured Claim is a part makes a valid and timely election in accordance with Bankruptcy Code section 1111(b) to have such Claim(s) treated as a Secured Claim to the extent Allowed.

**1.148 <u>Securities Act</u>:** The Securities Act of 1933, as amended.

**1.149 <u>Segale</u>:** Segale Properties, LLC and any affiliates, successors, and assigns.

**1.150 <u>Segale Claims</u>:** All Claims of Segale against Ranches.

**1.151 <u>Settling Parties</u>:** The Debtors, the Easterday Family, 3E, Produce, Dairy, the Ranches Committee, the Farms Committee, Segale, and Tyson.

**1.152 <u>Subordinated Claim</u>:** Collectively, any Claim that is subordinated to General Unsecured Claims pursuant to Bankruptcy Code section 510, a Final Order, or by

consent of the Holder of such Claim. For the avoidance of doubt, the CFTC Claim is a Subordinated Claim.

**1.153 Supplemental Bar Date:** Any supplemental bar date that may be established by an order of the Bankruptcy Court.

**1.154 Temporary Lease Agreement**: The leaseback, effective as of July 30, 2021 by and between FRI, as lessor, and the Debtors, as lessee, that was part of the Sale Transaction evidenced by the Purchase and Sale Agreement and authorized and approved by the Bankruptcy Court pursuant to its entry of the Sale Order. For avoidance of doubt, references in the Plan to the Purchase and Sale Agreement include the Temporary Lease Agreement.

**1.155 Third Party Releases:** The releases given on behalf of the Releasing Parties as set forth in Section 10.2(a) herein.

**1.156 Tyson:** Tyson Fresh Meats, Inc. and any affiliates, successors, and assigns.

**1.157 Tyson Avoidance Action:** Any Causes of Action of the Debtors against Tyson relating to the prepetition transfer of "Customer 3 Cattle" to Tyson worth an estimated $58,100,000.00.

**1.158 Tyson Claims:** All Claims of Tyson against the Debtors.

**1.159 Tyson-Segale Preserved Claims:** All Claims of Tyson or Segale against Cody Easterday, including, to the extent applicable, community property assets.

**1.160 Unimpaired:** Any Class of Claims that is not impaired within the meaning of Bankruptcy Code section 1124.

**1.161 Uninsured Portion:** The portion of any Insured Claim, if any, that is not insured under the Debtors' insurance policies or that is beyond the extent of such coverage.

**1.162 Unliquidated Claim:** Any Claim that is Scheduled as unliquidated or that was filed in an unliquidated amount.

**1.163 U.S. Trustee:** The Office of the United States Trustee for the Eastern District of Washington.

**1.164 Voting Deadline:** The date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the Disclosure Statement Order.

# ARTICLE II

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**2.1** **Summary and Classification of Claims.** This Section classifies Claims – except for Administrative Claims, Professional Fee Claims, and Priority Tax Claims, which are not classified – for all purposes, including confirmation, Distributions, and voting. A Claim is classified in a particular Class only to the extent that the Claim falls within the Class description. To the extent that part of a Claim falls within a different Class description, that part of the Claim is classified in that different Class. The following table summarizes the Classes of Claims under the Plan:

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|---|---|---|---|
| None | Administrative Claims | Unimpaired | Not Entitled to Vote |
| None | Professional Fee Claims | Unimpaired | Not Entitled to Vote |
| None | Priority Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 1 | Secured Claims[2] | Unimpaired | Not Entitled to Vote (deemed to accept) |
| Class 2 | Priority Claims | Unimpaired | Not Entitled to Vote (deemed to accept) |
| Class 3 | Farms General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Ranches General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Tyson Claims | Impaired | Entitled to Vote |
| Class 6 | Segale Claims Against Ranches | Impaired | Entitled to Vote |
| Class 7 | Subordinated Claims | Impaired | Not Entitled to Vote (deemed to reject) |

---

[2] To comply with Bankruptcy Code section 1122(a), each Allowed Secured Claim shall be deemed to be in its own subclass (unless such Holder shares the same Lien on Collateral with a different Holder of another Secured Claim, in which case such Claims shall be deemed to be included together in the same subclass).

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|-------|-------------|----------------------|---------------|
| Class 8 | Intercompany Claims | Impaired | Not Entitled to Vote (deemed to accept as plan proponent) |
| Class 9 | Interests | Impaired | Not Entitled to Vote (deemed to reject) |

**NOTWITHSTANDING ANY OTHER TERM OR PROVISION OF THE PLAN, NO DISTRIBUTIONS WILL BE MADE ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS A DISALLOWED CLAIM.**

**2.2    Subordinated Claims Generally.**

The allowance, classification, and treatment of all Claims under the Plan, including Subordinated Claims, shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, Bankruptcy Code sections 510(a) or 510(b), or otherwise.  Pursuant to Bankruptcy Code section 510, the Post-Effective Date Debtors shall reserve the right to re-classify, or to seek to subordinate, any Claim as a Subordinated Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a Subordinated Claim at any time shall be modified to reflect such subordination.

**2.3    Intercompany Claims.**

All Intercompany Claims shall be disallowed pursuant to this Plan and shall be cancelled as of the Effective Date.

**2.4    Classification & Voting Controversies.**

(a)    If a controversy arises regarding whether any Claim is properly classified under the Plan, then the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing.

(b)    If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the Holder of such Claim shall be counted in, and the Claim shall receive the treatment

prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

## ARTICLE III

### TREATMENT OF CLAIMS AND EQUITY INTERESTS

**3.1** **Unclassified Claims.**

    **3.1.1** **Administrative Claims.** Except as otherwise provided for herein, and subject to the requirements of the Plan, on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which an Administrative Claim becomes an Allowed Administrative Claim, the Holder of such Allowed Administrative Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Claim or (b) such other less favorable treatment as to which such Holder and the Plan Administrator shall have agreed upon in writing.

    **3.1.2** **Professional Fee Claims.** Professional Fee Claims shall be paid as set forth in Section 12.2 of the Plan.

    **3.1.3** **Priority Tax Claims.** In full satisfaction, settlement, and release of, and in exchange for such Claims, Allowed Priority Tax Claims shall be paid, at the Plan Administrator's option, as follows: (a) Cash equal to the unpaid portion of such Allowed Priority Tax Claim on the later of the Effective Date and thirty (30) calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; (b) in regular installment payments in Cash over a period not exceeding five (5) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable nonbankruptcy law as of the calendar month in which the Effective Date occurs (provided that such election shall be without prejudice to the right to prepay any such Allowed Priority Tax Claim in full or in part without penalty); or (c) such other treatment as to which the Holder of an Allowed Priority Tax Claim and the Plan Administrator shall have agreed upon in writing.

**3.2** **Class 1: Secured Claims.**

    Classification.  Class 1 consists of all Secured Claims against the Debtors, including Secured Tax Claims.

    Treatment.  The legal, equitable, and contractual rights of Holders of Allowed Class 1 Claims are unaltered by the Plan and the Liens of the Holders of Allowed Class 1 Claims will continue to attach to their respective Collateral, provided that all such

Claims shall remain subject to any and all defenses, challenges, counterclaims, and setoff or recoupment rights with respect thereto. Unless the Plan Administrator and the Holder of an Allowed Class 1 Claim agree to other treatment, on or as soon as is reasonably practicable after the Effective Date, each Holder of an Allowed Class 1 Claim shall receive, at the option of the Plan Administrator: (i) Cash in the Allowed amount of such Holder's Allowed Class 1 Claim; or (ii) the return of the Collateral securing such Allowed Class 1 Claim, without representation or warranty by any Person (and without recourse against any Person regarding such Secured Claim); or (iii) (A) the cure of any default, other than a default of the kind specified in Bankruptcy Code section 365(b)(2), that Bankruptcy Code section 1124(2) requires to be cured, with respect to such Holder's Allowed Class 1 Claim, without recognition of any default rate of interest or similar penalty or charge, and upon such cure, no default shall exist; (B) the reinstatement of the maturity of such Allowed Class 1 Claim as the maturity existed before any default, without recognition of any default rate of interest or similar penalty or charge; and (C) retention of its unaltered legal, equitable, and contractual rights with respect to such Allowed Class 1 Claim, including through the retention of any associated Lien on the Collateral securing such Allowed Class 1 Claim.

The Bankruptcy Court shall retain jurisdiction and power to determine the amount necessary to satisfy any Allowed Class 1 Claim for which treatment is elected under clause (i) or clause (iii) of the immediately foregoing paragraph. With respect to any Allowed Class 1 Claim for which treatment is elected under clause (i), any Holder of such Allowed Class 1 Claim shall release (and by the Confirmation Order shall be deemed to release) all Liens against any Estate Assets. Notwithstanding anything else in the Plan, the Holders of Allowed Class 1 Claims will have no right to receive any Distribution from, or otherwise share in, any of the Easterday Family Consideration.

Voting. Claims in Class 1 are Unimpaired. Each Holder of an Allowed Class 1 Claim is conclusively presumed to have accepted this Plan and, therefore, is not entitled to vote.

**3.3** **Class 2: Priority Claims.**

Classification. Class 2 consists of all Priority Claims.

Treatment. On, or as soon as reasonably practicable after, the later of (i) the Effective Date and (ii) the date on which a Priority Claim becomes payable pursuant to and as specified by an order of the Bankruptcy Court, the Holder of such Allowed Class 2 Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Class 2 Claim, either (a) Cash from the Post-Effective Date Debtors equal to the unpaid portion of such Allowed Priority Claim or (b) such other

less favorable treatment to which such Holder and the Plan Administrator shall have agreed upon in writing.

Voting. Claims in Class 2 are Unimpaired. Each Holder of an Allowed Class 2 Claim is conclusively presumed to have accepted this Plan and, therefore, is not entitled to vote.

**3.4    Class 3: Farms General Unsecured Claims.**

Classification. Class 3 consists of all Farms General Unsecured Claims.

Treatment. On or as soon as practicable after the Effective Date, each Holder of an Allowed Class 3 Claim shall receive, as the sole distribution or dividend by Farms or its Estate under this Plan on account of such Allowed Class 3 Claim, Cash from the Post-Effective Date Debtors in an amount equal to 100% of such Holder's Allowed Class 3 Claim. Allowed Class 3 Claims shall not include any amounts for postpetition interest or attorney's fees with respect to such Class 3 Claims. The Class 3 Claims set forth on the Farms GUC Claims Schedule (Exhibit J to the Plan) shall be Allowed in the amounts set forth in the Farms GUC Claims Schedule for all purposes under the Plan, including for purposes of receiving Distributions under the Plan; *provided that*, for the avoidance of doubt, any Class 3 Claim that is not included on the Farms GUC Claims Schedule but is otherwise Allowed shall be entitled to the full treatment afforded to Class 3 Claims under the Plan. Notwithstanding anything to the contrary herein, the Debtors or the Post-Effective Date Debtors, as applicable, shall complete distributions to the Holders of Allowed Class 3 Claims set forth on the Farms GUC Claims Schedule within seven (7) calendar days after the Effective Date.

All Avoidance Actions against Holders of Allowed Farms General Unsecured Claims shall be deemed released and waived upon the Effective Date and shall not be included in the Post-Effective Date Debtors' Assets.

Voting. Class 3 Claims are Impaired and, therefore, each Holder of an Allowed Class 3 Claim is entitled to vote.

**3.5    Class 4: Ranches General Unsecured Claims.**

Classification. Class 4 consists of all Ranches General Unsecured Claims.

Treatment. On or as soon as practicable after the Effective Date, each Holder of an Allowed Class 4 Claim shall receive (a) its Pro Rata share of the Class 4 Initial Payment and (b) its Pro Rata share of the Class 4 Net Distributable Assets (subject to any Distribution Reserve).

The Holders of Allowed Class 4 Claims shall not have any interest in any of the Easterday Family Contribution Instruments, restitution claims against Cody Easterday, or the North Lot Actions.

All Avoidance Actions against Holders of Allowed Class 4 Claims shall be deemed released and waived upon the Effective Date and shall not be included in the Post-Effective Date Debtors' Assets.

Voting.  Class 4 Claims are Impaired and, therefore, each Holder of an Allowed Class 4 Claim is entitled to vote.

**3.6**   **Class 5: Tyson Claims.**

Classification.  Class 5 consists of all Tyson Claims.

Treatment.   Tyson shall have an Allowed Class 5 Claim in the amount of $261,316,000.00.  On or as soon as practicable after the Effective Date, each Holder of an Allowed Class 5 Claim shall receive (a) its Pro Rata share of the Class 5 Initial Payment, (b) its Pro Rata share of the Class 5 Net Distributable Assets (subject to any Distribution Reserve), (c) its Pro Rata share of the proceeds of the Easterday Family Contribution Instruments, and (d) assignment of the North Lot Actions.

All Estate claims against Tyson, including any Avoidance Actions, shall be deemed released and waived upon the Effective Date.

At the Effective Date, the North Lot Actions will be deemed assigned to Tyson, including, but not limited to, any prepetition claims Tyson may have had relating to the transfer of the North Lot. Tyson will be the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding the assigned North Lot Actions and Tyson will have exclusive authority to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw the North Lot Actions without any further order of the Bankruptcy Court. Any proceeds related to the North Lot Actions belong exclusively to Tyson. However, any costs or expenses that may be incurred by the Post-Effective Date Debtors, the Plan Administrator, or any of its employees, representatives, or professionals in connection with the North Lot Actions, if any, shall be reimbursed and borne entirely by Tyson.

Voting.  Class 5 Claims are Impaired and, therefore, each Holder of an Allowed Class 5 Claim is entitled to vote.

**3.7    Class 6: Segale Claims Against Ranches.**

Classification.  Class 6 consists of all Segale Claims against Ranches.[3]

Treatment.   Segale shall have an Allowed Class 6 Claim in the amount of $7,830,641.  On or as soon as practicable after the Effective Date, each Holder of an Allowed Class 6 Claim shall receive (a) its Pro Rata share of the Class 6 Initial Payment, (b) its Pro Rata share of the Class 6 Net Distributable Assets (subject to any Distribution Reserve), and (c) its Pro Rata share of the proceeds of the Easterday Family Contribution Instruments.

All Estate claims against Segale, including any Avoidance Actions, shall be deemed released and waived upon the Effective Date.

The Holders of Allowed Class 6 Claims shall not have any interest in the North Lot Actions.

Voting.  Class 6 Claims are Impaired and, therefore, each Holder of an Allowed Class 6 Claim is entitled to vote.

Clarification.   Nothing in this Section 3.7 shall affect Segale's Claims against Farms, which are Allowed in the amount of $53,000.

**3.8    Class 7: Subordinated Claims.**

Classification.  Class 7 consists of all Subordinated Claims.

Treatment.  Holders of Class 7 Claims shall not receive any payment on account of their Claims.

Voting.  Each Holder of a Class 7 Claim will be deemed to have rejected this Plan and, therefore, is not entitled to vote on this Plan.

**3.9    Class 8: Intercompany Claims.**

Classification.  Class 8 consists of all Intercompany Claims.

Treatment.  Holders of Class 8 Claims shall not receive any payment on account of their Claims.

---

[3]  For the avoidance of doubt, Segale also has an Allowed Class 3 Claim that shall receive the same treatment as other Allowed Class 3 Claims.

<u>Voting</u>. Each Holder of a Class 8 Claim is a proponent of the Plan and will therefore conclusively be deemed to have accepted this Plan.

**3.10   <u>Class 9: Interests.</u>**

<u>Classification</u>. Class 9 consists of all Interests in the Debtors.

<u>Treatment</u>. On the Effective Date, the Interests will be cancelled and Holders of Class 9 Interests will not receive any Distribution pursuant to this Plan.

<u>Voting</u>. Each Holder of a Class 9 Interest will be deemed to have rejected this Plan and, therefore, is not entitled to vote on this Plan.

**3.11   <u>Special Provisions Regarding Insured Claims.</u>**

(a)    Any Allowed General Unsecured Claim with respect to an Insured Claim shall be limited to the Uninsured Portion of such Claim, provided such Claims have been timely Filed by the applicable Claims Bar Date.

(b)    If there is insurance purchased by or otherwise applicable to the Debtors, any Person with rights against or under the applicable insurance policy, including the Post-Effective Date Debtors and Holders of Insured Claims, may pursue such rights.

(c)    Nothing in this Section 3.11 shall constitute a waiver of any Causes of Action the Debtors, the Estates, or the Post-Effective Date Debtors may hold against any Person, including the Debtors' insurance carriers; and nothing in this Section 3.11 is intended to, shall, or shall be deemed to preclude any Holder of an Insured Claim from seeking or obtaining a distribution or other recovery from any insurer of the Debtors in addition to (but not in duplication of) any Distribution such Holder may receive under the Plan; *provided*, *however*, that the Debtors and the Post-Effective Date Debtors do not waive and expressly reserve their rights to assert that any insurance coverage is property of the Estates to which they are entitled.

(d)    The Plan shall not expand the scope of, or alter in any other way, the rights and obligations of the Debtors' insurers under their policies, and the Debtors' insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest or litigate with any Person the existence, primacy, or scope of available coverage under any allegedly applicable policy. The Plan shall not operate as a waiver of any other Claims the Debtors' insurers have asserted or may assert in any proof of claim or of any objections or defenses to any such Claims.

**3.12   Comprehensive Settlement of Claims and Controversies.**

    **3.12.1   Generally.** Pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), and 1123(b)(6), as well as Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims and controversies relating to the rights that a Holder of a Claim or an Interest may have against either Debtor or the Easterday Family Released Parties with respect to any Claim, Interest, or any Distribution on account thereof, all potential Intercompany Claims and Causes of Action against either Debtor or the Easterday Family Released Parties, and contentions made by various parties in interest respecting substantive consolidation of the Debtors and their Estates and the Easterday Family Released Parties, and any and all claims and controversies by the Debtors against the Easterday Family Released Parties. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are: (i) in the best interest of the Debtors, the Estates, and their respective property and stakeholders; and (ii) fair, equitable, and reasonable. This comprehensive compromise and settlement is a critical component of the Plan and is designed to provide a resolution of myriad disputed intercompany and intercreditor Claims, Liens, and Causes of Action that otherwise could take years to resolve, which would delay and undoubtedly reduce the Distributions that ultimately would be available for all Creditors.

    **3.12.2   Net Sale Proceeds.** On the Effective Date, the remainder of the Net Sale Proceeds in the Escrow Account shall be released to the Post-Effective Date Debtors to be distributed in accordance with the Plan.

## ARTICLE IV

### ACCEPTANCE OR REJECTION OF THE PLAN

**4.1   Impaired Class of Claims Entitled to Vote.** Only the votes of Holders of Allowed Claims in Class 3, Class 4, Class 5, and Class 6 shall be solicited with respect to the Plan.

**4.2   Acceptance by an Impaired Class.** In accordance with Bankruptcy Code section 1126(c), and except as provided in Bankruptcy Code section 1126(e), the Holders of Claims in any Class entitled to vote on the Plan shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan. Holders of Class 8 Intercompany Claims are proponents of the Plan and are conclusively presumed to have accepted the Plan.

**4.3** **Presumed Acceptances by Unimpaired Classes.** Class 1 and Class 2 are Unimpaired under the Plan. Under Bankruptcy Code section 1126(f), the Holders of Claims in such Unimpaired Classes are conclusively presumed to have accepted the Plan, and, therefore, the votes of such Holders shall not be solicited.

**4.4** **Impaired Classes Deemed to Reject Plan.** Holders of Subordinated Claims in Class 7 and Interests in Class 9 are not entitled to receive or retain any property or interests in property under the Plan. Under Bankruptcy Code section 1126(g), such Holders are deemed to have rejected the Plan, and, therefore, the votes of such Holders shall not be solicited.

**4.5** **Modifications of Votes.** Following the Voting Deadline, no Creditors entitled to vote on the Plan will be able to change their votes cast on the Plan or any attendant elections or preferences without the written consent of the Debtors, which consent may be given or withheld in the Debtors' reasonable discretion.

**4.6** **Confirmation Pursuant to Bankruptcy Code Section 1129(b).** Because at least one Impaired Class is deemed to have rejected the Plan, the Debtors will and hereby request confirmation of the Plan under Bankruptcy Code section 1129(b). The Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan, the Plan Supplement, or any schedule or exhibit, including to amend or modify it to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

**4.7** **Elimination of Vacant Classes.** Any Class of Claims or Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for purposes of determining acceptance of the Plan by such Class under Bankruptcy Code section 1129(a)(8).

**4.8** **Joint Plan.** This Plan represents a joint plan resolving all assets and liabilities for both of the Debtors. As further discussed in Section 12.5 of the Plan, the Debtors may alter, amend, or modify this Plan at or before the Confirmation Hearing in the Debtors' reasonable discretion.

## **ARTICLE V**

### **MEANS FOR IMPLEMENTATION OF THE PLAN**

**5.1** **Implementation of the Plan.** Pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), and 1123(b)(6), as well as Bankruptcy Rule 9019, the Plan effectuates a global resolution of, among other things, disputes between the Farms and Ranches Estates. In accordance with the Global Settlement Term Sheet, Holders of Allowed Class 3 Claims (Farms General Unsecured Claims) receive a 100% recovery, excluding

postpetition interest and attorneys' fees. The Plan Administrator is authorized and directed to make Distributions of the Distributable Assets pursuant to and in accordance with the Plan.

The Plan also effectuates a global resolution of disputes between and/or among the Easterday Family, 3E, Produce, Dairy, the Debtors, the Farms Committee, the Ranches Committee, Tyson, and Segale pursuant to the contribution of funds and release of claims as set forth herein by the Easterday Family and an agreed allocation of distributions to be made by the Debtors and Post-Effective Date Debtors on account of the Allowed Claims in Classes 4, 5, and 6 of the Plan. Holders of Allowed Claims in Classes 5 and 6 of the Plan shall also receive the Easterday Family Contribution Instruments to be held by the Administrative Agent in accordance with and pursuant to the terms of the Administrative Agent Agreement.

For the avoidance of doubt, the claims being resolved as part of the global resolution include but are not limited to any and all claims and controversies by the Debtors against the Easterday Family Released Parties, including, but not limited to, any deficiency claims held by the Farms Estate against the Easterday Family, as well as claims against 3E, Produce, Dairy, and any and all claims by the Ranches Estate related to breaches of any duty by the Easterday Family.

**5.2** **Implementation of the Global Settlement.** The Plan effectuates the Global Settlement among the Settling Parties as agreed pursuant to the Global Settlement Term Sheet.

**5.2.1** **The Karen Easterday Settlement Amount.** Upon the Effective Date, and in satisfaction of Karen Easterday's claims asserted in the Allocation Dispute Adversary Proceeding, Farms will pay the Karen Easterday Settlement Amount, reduced by the Basin City Property Purchase Price and the Idaho Contribution. The remaining Karen Easterday Settlement Amount will be applied to the Easterday Dairy LLC Note and BC 140 LLC Secured Guaranty, such that the net cash payment by Farms on account of the Karen Easterday Settlement Amount will be zero.

**5.2.2** **The Karen Easterday Secured Note.** On the Effective Date, Karen Easterday will issue the Karen Easterday Secured Note to the Administrative Agent to be held in accordance with the Administrative Agent Agreement. The Karen Easterday Secured Note will be in the amount of $5 million with 3% simple interest paid at maturity, which will occur two years after the Effective Date of the Plan. The Karen Easterday Secured Note will be secured by a first deed of trust or mortgage on Karen Easterday's Franklin County, Washington home and surrounding property.

**5.2.3** **The Idaho Contribution.** On account of property in Kootenai County, Idaho in which Karen Easterday owns an interest, Karen Easterday shall pay the Debtors

the Idaho Contribution, on the Effective Date. The Idaho Contribution shall be paid as a reduction of the Karen Easterday Settlement Amount.

**5.2.4    The Basin City Sale.** On or before the Effective Date, Cody and Debby Easterday shall sell their interests in the Basin City Properties to BC 140, LLC for the Basin City Property Purchase Price ($4.2 million), plus the assumption of the liability for the loan (in the approximate amount of $1.2 million) with Equitable Life, subject to consent of Equitable Life. The Basin City Property Purchase Price will be funded from the Karen Easterday Settlement Amount. Simultaneously with closing of the sale of the Basin City Properties, Cody and Debby Easterday shall contribute the Basin City Property Purchase Price to the Debtors.

**5.2.5    The Easterday Dairy, LLC Note and BC 140 LLC Secured Guaranty.** In full satisfaction of the outstanding note receivable owed by Dairy to Farms, on the Effective Date, Dairy will provide the Administrative Agent, to be held in accordance with the Administrative Agent Agreement, the Easterday Dairy LLC Note ($2,169,300). The full amount of the Easterday Dairy LLC Note, including principal and accrued interest, shall be due and payable two years from the Effective Date.

The Easterday Dairy LLC Note shall be guaranteed by BC 140 LLC, pursuant to the BC 140 LLC Secured Guaranty. In the event that Equitable Life does not consent to a junior lien or deed of trust on the Basin City Properties on which it claims a lien, 100% of the membership interests in BC 140 LLC shall be pledged as an alternative thereto, subject to the consent of Equitable Life, if necessary. The Easterday Dairy LLC Note and the BC 140 LLC Secured Guaranty shall not be cross-defaulted or cross-collateralized with the Karen Easterday Secured Note.

**5.2.6    The Easterday Family Contribution Instruments.** On the Effective Date, the Easterday Family Contribution Instruments shall each be issued to the Administrative Agent for the benefit of Holders of Allowed Tyson Claims and Allowed Segale Claims in accordance with the terms of the Administrative Agent Agreement.

The Easterday Family Contribution Instruments shall be held by the Administrative Agent in accordance with the terms of the Administrative Agent Agreement for the benefit of the Holders of Allowed Tyson Claims and Allowed Segale Claims. The Administrative Agent Agreement shall be substantially in the form Filed in the Plan Supplement, which shall be in form and substance reasonably acceptable to the Debtors, the Administrative Agent, the Easterday Family, 3E Produce, Dairy, Tyson, and Segale.

**5.2.7    The Transfer of Steer Head Brand.** On the Effective Date, the Debtors shall transfer all rights, interests, and ownership of the "steer head" brand to Karen

Easterday or her designee at the sole expense of Karen Easterday or her designee.

**5.2.8    The Assignment of the Canyon Farm Avoidance Actions.** Upon the Effective Date, the Debtors will assign Canyon Farm Avoidance Actions to Karen Easterday or her designee.

**5.2.9    The 3E and Produce Contribution.** 3E and Produce shall buy back Cody and Debby Easterday's equity interests in 3E and Produce for the 3E-Produce Purchase Price ($2,274,210).   The 3E-Produce Purchase Price will be paid through the 3E-Produce Secured Note.  The 3E-Produce Secured Note shall provide for the payment of the 3E-Produce Purchase Price at 4.5% interest with $100,000 due and payable every six months with the first payment due 90 days after the Effective Date.   The total aggregate amount of the 3E-Produce Secured Note (including interest) will be due two years after the Effective Date.  The 3E-Produce Secured Note shall be secured by a pledge of 33% of the equity interests in each of 3E and Produce.

On the Effective Date, Cody and Debby Easterday, will assign any and all rights in the 3E-Produce Secured Note to the Administrative Agent to be held in accordance with the Administrative Agent Agreement.

**5.2.10    The Easterday Family Adversary Proceedings.** On the Effective Date, the Allocation Dispute Adversary Proceeding, the 3E Properties Adversary Proceeding and the Governance Adversary Proceeding shall be deemed closed and the respective complaints withdrawn with prejudice.  Within a reasonable time following the Effective Date, the Plan Administrator shall take steps as necessary to close such adversary proceedings.

**5.2.11    The Restitution Claims.** All rights of Tyson, Segale, and Cody Easterday with respect to the restitution claims against Cody Easterday shall be fully reserved under all circumstances notwithstanding any other provision herein.

**5.2.12    The Replacement Director Fees.** Within fourteen (14) days of the Effective Date, the Plan Administrator shall pay the Replacement Director Fees.

**5.2.13    Easterday Family Releases.** The Easterday Family Released Parties shall be released of all claims from the Farms Estate, the Ranches Estate, and each creditor of each estate to the extent allowed by law; *provided*, *however*, to the extent any Easterday Family Released Party does not provide a mutual release of claims to the Estate Released Parties by executing a Mutual Release Agreement, and such Easterday Family Released Party prosecutes a proof of claim against the Debtors or otherwise asserts claims against any of the Estate Released Parties relating in any way to the Debtors or their assets, the Estate Released Parties may assert against such Easterday Family Released Party any claims that otherwise would have been released pursuant to

this Plan.

If the claims of Additional Easterday Family Releasing Parties against the Debtors are not otherwise paid in full, the Debtors shall, prior to the Effective Date, obtain written releases from such Additional Easterday Family Releasing Parties of the Easterday Family Released Parties, from all claims against the Easterday Family Released Parties arising from or related to such party's contractual agreements with the Easterday Family Released Parties to the extent such contracts are related to or arise in connection with the Debtors. Further, it shall be a condition precedent to the Effective Date of the Plan that Jody Easterday, Cutter Easterday, Cole Easterday, and Clay Easterday execute the Mutual Release Agreement.

Notwithstanding the foregoing, or anything else to the contrary contained herein, Tyson and Segale are not releasing their direct claims against Cody Easterday, including, to the extent applicable, community property assets, nor is Cody Easterday releasing any claims, defenses, or counterclaims against Tyson or Segale.

**5.2.14  The Criminal Proceedings.** The Debtors agree not to appear, file, or otherwise make any statements in connection with the proceeding entitled *United States of America v Cody Allen Easterday*, Case No. 4:21-CR-06012-SAB-1 pending in the United States District Court for the District of Washington.

**5.2.15  The Consent of the Department of Justice.** The Debtors, Tyson, and Segale will cooperate with Cody and Debby Easterday to get the DOJ to consent to the settlements and releases of properties and interests included in the Global Term Sheet and this Plan. The consent of the DOJ to the settlements and releases of properties and interests included in the Global Term Sheet and this Plan shall be a condition precedent to the Effective Date.

**5.3  Reserved.**

**5.4  Easterday Family Tax Payments.** The Debtors' Estates shall have no responsibility whatsoever for the Easterday Tax Payments, all of which shall be borne entirely by the Easterday Family.

**5.5  Sale Transaction.** On July 20, 2021, the Bankruptcy Court entered the Sale Order authorizing and approving the two-step Sale Transaction pursuant to which the Debtors acquired, to the extent necessary, all of the Easterday Family's right, title and interest to certain property (as defined under the Purchase and Sale Agreement) and then sold the FRI Assets to FRI, subject only to FRI's agreement to lease back certain of the FRI Assets to the Debtors pursuant to the Temporary Lease Agreement. The Plan presumes that, at Confirmation, the Temporary Lease Agreement shall have terminated on its terms and that to the extent the Debtors or FRI may have claims, rights, or ongoing

obligations to each other under the Temporary Lease Agreement that survive the termination, such claims, rights, or ongoing obligations shall have been fully and finally resolved at Confirmation such that any claims, rights or ongoing obligations shall cease to exist on the Effective Date, and that the Post-Effective Date Debtors shall not inherit any claims, rights, benefits, or Causes of Action arising under, relating to, or in connection with the Purchase and Sale Agreement, the Temporary Lease Agreement, or any other agreement relating to the foregoing.

Nothing in the Plan is intended to, nor shall be construed to, alter any of the terms and conditions upon which the Sale Transaction was approved as set forth in the Purchase and Sale Agreement or in any agreement referenced in or related to the Purchase and Sale Agreement. Neither the Plan nor the Confirmation Order shall limit or otherwise affect any of the Bankruptcy Court's findings, conclusions, orders, and judgments as set forth in the Sale Order, and insofar as any of the protections afforded FRI by the Sale Order conflict with or contradict certain terms and conditions in the Plan or any findings, conclusions, orders or judgments in the Confirmation Order, the Sale Order shall govern and control with respect to FRI.

Notwithstanding anything that may suggest otherwise in the Plan, the Plan Supplement, any Schedule or Exhibit to either of the foregoing, or any other document executed in connection with Confirmation or these Chapter 11 Cases, neither the Post-Effective Date Debtors nor any Holder of any Claim or Interest shall have any claim, cause of action, right or recourse against FRI or the FRI Assets on account of or in connection with the Sale Transaction, the Purchase and Sale Agreement, the Temporary Lease Agreement, or any other agreement or document executed in connection with the consummation of the Sale Transaction between and among FRI, the Debtors and the Easterday Family.

**5.6** **Net Sale Proceeds.** In accordance with the terms of the Global Settlement, the Net Sale Proceeds shall vest with the Post-Effective Date Debtors and shall be used to fund distributions under the Plan.

**5.7** **Streamlining of the Debtors' Corporate Affairs.**

**5.7.1** **Debtors' Existing Directors, Officers, and Managers.** On the Effective Date, each of the Debtors' existing directors, officers, and managers shall be terminated automatically without the need for any Corporate Action and without the need for any corporate or partnership filings, and shall have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated). On the Effective Date, the Plan Administrator shall succeed to all such powers as would have been applicable to each Debtor's directors, officers, and managers in respect of all Post-Effective Date Debtors' Assets; *provided, however*, that, the Plan Administrator may continue to consult with or employ

the Debtors' former directors, officers, employees, and managers in its reasonable discretion. For the avoidance of doubt, on the Effective Date, the Plan Administrator shall assume all management and control of both Farms and Ranches.

**5.7.2** <u>**Dissolution of the Debtors.**</u> Each of the Debtors may be dissolved by the Plan Administrator in its reasonable discretion and the Plan Administrator may file any certificates of cancellation or similar documents as may be appropriate in connection with dissolution of either Debtor.

**5.7.3** <u>**Corporate Documents and Corporate Authority.**</u> On the Effective Date, the certificates of incorporation, bylaws, partnership agreements, and articles of organization, as applicable, of both Debtors shall be deemed amended to the extent necessary to carry out the provisions of the Plan. The entry of the Confirmation Order shall constitute authorization for the Debtors and the Plan Administrator to take or cause to be taken all actions (including, if applicable, Corporate Actions) necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation. On the date the Confirmation Order becomes a Final Order, the Postpetition Corporate Actions shall be deemed null and void and as never having had effect.

**5.8** <u>**Post-Effective Date Debtors/Plan Administrator.**</u>

**5.8.1** <u>**Appointment.**</u> On and after the Effective Date, the Plan Administrator shall be appointed. The compensation of the Plan Administrator shall be agreed to by the Debtors and the Settling Parties and disclosed prior to the Confirmation Hearing, provided that regular hourly compensation shall be deemed acceptable in the absence of an alternative agreement. The Plan Administrator may employ, without further order of the Bankruptcy Court, legal counsel and other professionals as necessary to assist in carrying out his duties and may compensate and reimburse the reasonable expenses of those professionals without further order of the Bankruptcy Court in accordance with the Plan and Plan Administrator Agreement. In the event that the initial Plan Administrator resigns, or is no longer available for any reason, then the successor Plan Administrator shall be selected by unanimous agreement of Tyson, Segale, and Karen Easterday (or order of the Bankruptcy Court), and notice of such selection shall be filed with the Bankruptcy Court. Without limiting the generality of the foregoing, in the event of any dispute over removal or selection of the Plan Administrator, including whether or not cause exists, the Plan Administrator or Tyson, Segale, and Karen Easterday may request the guidance and order of the Bankruptcy Court.

**5.8.2** <u>**Vesting of Post-Effective Date Debtors' Assets.**</u> On the Effective Date, the Post-Effective Date Debtors will be automatically vested with all of the Debtors'

and the Estates' respective rights, title, and interest in and to all Post-Effective Date Debtors' Assets.[4] Except as specifically provided in the Plan or the Confirmation Order, the Post-Effective Date Debtors' Assets shall automatically vest in the Post-Effective Date Debtors free and clear of all Claims, Liens, or interests, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The Plan Administrator shall be the exclusive administrator of the Post-Effective Date Debtors' Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding all Post-Effective Date Debtors' Assets. The Post-Effective Date Debtors shall hold and distribute the Post-Effective Date Debtors' Assets in accordance with the provisions of the Plan, provided further, that the Plan Administrator will have the power and discretion to close the Farms bankruptcy case following making the completion of all required Distributions to the Holders of Allowed Claims against the Farms Estate and any remaining Post-Effective Date Debtors' Assets shall be fully vested in the Post-Effective Date Ranches Debtor; *provided that*, notwithstanding the foregoing sentence, in the event a Holder of an Allowed Claim against the Farms Estate does not receive the full treatment or distribution afforded such a Holder on the Effective Date and the Farms bankruptcy case is closed, such Holder shall be entitled to receive its treatment or distribution from the Post-Effective Date Ranches Debtor.

**5.8.3** **Authority.** The Plan Administrator shall have the authority and right on behalf of the Debtors, the Post-Effective Date Debtors, and the Estates and without the need for Bankruptcy Court approval (in each case, unless otherwise provided in the Plan) to carry out and implement all applicable provisions of the Plan, including to:

(a) review, reconcile, compromise, settle, or object to Claims and resolve such objections as set forth in the Plan, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules;

(b) calculate and make Distributions and calculate and establish reserves under and in accordance with the Plan;

(c) retain, compensate, and employ professionals and other Persons to represent the Plan Administrator with respect to and in connection with its rights and responsibilities;

---

[4] For the avoidance of doubt, the Post-Effective Date Debtors' Assets do not include the North Lot Actions or the Canyon Farm Avoidance Actions.

SECOND MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION – Page 37

(d)    establish, maintain, and administer documents and accounts of the Debtors or Post-Effective Date Debtors as appropriate, which shall be segregated to the extent appropriate in accordance with the Plan;

(e)    maintain, conserve, collect, settle, and protect the Post-Effective Date Debtors' Assets (subject to the limitations described herein);

(f)    sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of the Post-Effective Date Debtors' Assets, including the Distributable Assets and the Net Distributable Assets, or any part thereof or interest therein upon such terms as the Plan Administrator determines to be necessary, appropriate, or desirable;

(g)    negotiate, incur, and pay the Post-Effective Date Debtors' Expenses;

(h)    prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtors or Post-Effective Date Debtors that are required under the Plan, by any governmental unit, or by applicable law, including but not limited to filing any reports required by the Bankruptcy Code or Bankruptcy Rules that are due to be filed after the Effective Date and paying any fees required by 28 U.S.C. § 1930 that are due to be paid after the Effective Date;

(i)    compile and maintain the official claims register, including for purposes of making initial and subsequent Distributions under the Plan;

(j)    take such actions as are necessary or appropriate to wind-down and dissolve the Debtors or the Post-Effective Date Debtors;

(k)    comply with the Plan, exercise the Plan Administrator's rights, and perform the Plan Administrator's obligations; and

(l)    exercise such other powers as deemed by the Plan Administrator to be necessary and proper to implement the Plan.

To the extent necessary to give full effect to its administrative rights and duties under the Plan, the Plan Administrator shall be deemed to be vested with all rights, powers, privileges, and authorities of (i) an appropriate corporate or partnership director, officer, or manager of each of the Debtors under any applicable nonbankruptcy law and (ii) a "trustee" of each of the Debtors under chapter 7 of the Bankruptcy Code and section 1106 of the Bankruptcy Code.

**5.8.4    <u>Limitation of Liability.</u>** The Plan Administrator shall enjoy all of the rights, powers, immunities, and privileges applicable to a Bankruptcy Code chapter 7 trustee with respect to limitations of liability. The Plan Administrator may, in

connection with the performance of its functions, in its sole and absolute discretion, consult with its attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such Persons, regardless of whether such advice or opinions were in writing. Notwithstanding such authority, the Plan Administrator shall be under no obligation to consult with any such attorneys, accountants, advisors, or agents, and its determination not to do so shall not result in the imposition of liability on the Plan Administrator unless such determination is based on willful misconduct, gross negligence, or fraud. Persons dealing with the Plan Administrator shall look only to the Post-Effective Date Debtors' Assets to satisfy any liability incurred by the Plan Administrator to such Person in carrying out the terms of the Plan, and the Plan Administrator shall have no personal obligation to satisfy such liability.

   **5.8.5**   **Indemnification.** The Post-Effective Date Debtors shall indemnify the Post-Effective Date Indemnified Parties for, and shall defend and hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without gross negligence or willful misconduct on the part of the Post-Effective Date Indemnified Parties (which gross negligence or willful misconduct, if any, must be determined by a final, non-appealable order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by such Post-Effective Date Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan. An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence or willful misconduct. In addition, the Post-Effective Date Debtors shall, to the fullest extent permitted by law, indemnify, defend, and hold harmless the Post-Effective Date Indemnified Parties, from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Post-Effective Date Debtors or the implementation or administration of the Plan if such Post-Effective Date Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Post-Effective Date Debtors. To the extent the Post-Effective Date Debtor indemnifies, defends, and holds harmless any Post-Effective Date Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Plan Administrator in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as Post-Effective Date Debtors' Expenses of the Post-Effective Date Debtors. The costs and expenses incurred in enforcing the right of indemnification in this Section 5.8.5 shall be paid by the Post-Effective Date Debtors.

**5.8.6    Insurance.** The Plan Administrator shall be authorized, but not required, to obtain any insurance coverages deemed to be reasonably necessary, at the Post-Effective Date Debtors' sole expense, for itself and its respective agents, including coverage with respect to the liabilities, duties, and obligations of the Plan Administrator.

**5.8.7    Tax Reporting.**

(a)    The Plan Administrator shall timely file any tax returns relating to the Debtors or the Post-Effective Date Debtors.

(b)    The Post-Effective Date Debtors shall be responsible for timely payment of all taxes (if any) imposed on and payable by the Post-Effective Date Debtors, the Debtors, or any Post-Effective Date Debtors' Assets.  For the avoidance of doubt, the Post-Effective Date Debtors will not be responsible for any Easterday Family Tax Payments.

(c)    The Plan Administrator shall distribute such tax-related notices, beneficiary statements, and information returns, as applicable, to the Holders of Allowed Claims as are required by applicable law or that the Plan Administrator determines are otherwise necessary or desirable.

(d)    The Plan Administrator is authorized to file a request for expedited determination under Bankruptcy Code section 505(b) for any tax returns filed with respect to the Debtors.

**5.8.8    Cash Investments.** The Plan Administrator may invest Cash of the Post-Effective Date Debtors, including any earnings thereon or proceeds therefrom, which investments, for the avoidance of doubt, will not be required to comply with Bankruptcy Code section 345(b).

**5.8.9    Pursuit and Resolution of Post-Effective Date Debtors' Causes of Action.** The Plan Administrator, as successor in interest to the Debtors and the Estates, may, and will have the exclusive right, power, and interest on behalf of itself, the Debtors, and the Estates to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all Post-Effective Date Debtors' Causes of Action without any further order of the Bankruptcy Court, except as otherwise provided in the Plan. From and after the Effective Date, the Plan Administrator, in accordance with Bankruptcy Code section 1123(b)(3), shall serve as representative of the Estates with respect to any and all Post-Effective Date Debtors' Causes of Action that were Estate Assets and shall retain and possess the right to institute, commence, file, pursue, prosecute, enforce, abandon, settle, release, waive, dismiss, or withdraw, as appropriate, any and all Post-Effective Date Debtors' Causes of Action in any court or other tribunal.

The Plan Administrator may seek Bankruptcy Court approval of any individual or global settlement of Causes of Action.

**5.8.10** **No Successor Liability**. Except as otherwise expressly provided in this Plan and Confirmation Order, the Plan Administrator and the Post-Effective Date Debtors (i) are not, and shall not be deemed to assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations or the assets of the Debtors prior to the Effective Date; (ii) are not, and shall not be, successors to the Debtors by any reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date; and (iii) shall not have any successor or transferee liability of any kind or character.

**5.9** **Preservation of Privileges and Defenses.** The actions taken by the Debtors, the Post-Effective Date Debtors, the Plan Administrator, FRI, or any of their respective Related Parties in connection with the Plan shall not be (or be deemed to be) a waiver of any privilege or defense of the Debtors, the Post-Effective Date Debtors, or FRI as applicable, including any attorney-client privilege or work-product doctrine. Notwithstanding any Debtors providing any privileged information related to any Post-Effective Date Debtors' Causes of Action to the Plan Administrator, the Post-Effective Date Debtors, or any Person associated with any of the foregoing, such privileged information shall be without waiver in recognition of the joint, common, or successor interest in prosecuting the Post-Effective Date Debtors Causes of Action and shall remain privileged. The Post-Effective Date Debtors shall retain the right to waive their own privileges. Only the Plan Administrator shall have the right to waive the attorney-client privilege, work-product doctrine, or other protections as to the Debtors and the Post-Effective Date Debtors; *provided that*, in the event any such protections are asserted or assertable by FRI, the Plan Administrator shall confer and cooperate with FRI with respect to any decision by the Plan Administrator to waive such protection.

**5.10** **Preservation of Rights of Action.**

**5.10.1** **Maintenance of Avoidance Actions and Causes of Action.** Except as otherwise provided in the Plan or the Confirmation Order, from and after the Effective Date, the Plan Administrator will retain all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Debtors', the Estates', or the Post-Effective Date Debtors' Causes of Action (whether existing as of the Petition Date or thereafter arising), and all Avoidance Actions, all as Post-Effective Date Debtors' Causes of Action, in each case in any court or other tribunal, including in an adversary proceeding Filed in the Chapter 11 Cases. The Plan Administrator, as successor in interest to the Debtors and the Estates, may, and will have the exclusive right, power, and interest on

behalf of itself, the Debtors, and the Estates to, enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any or all of the Post-Effective Date Debtors' Causes of Action without notice to or approval from the Bankruptcy Court. In accordance with the Plan, and pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, from and after the Effective Date, the Plan Administrator may compromise and settle the Post-Effective Date Debtors' Causes of Action.

**5.10.2  Preservation of All Post-Effective Date Debtors' Causes of Action Not Expressly Settled or Released.** The failure to specifically identify in the Disclosure Statement or the Plan any potential or existing Avoidance Actions or Causes of Action as a Post-Effective Date Debtors' Cause of Action is not intended to and shall not limit the rights of the Plan Administrator to pursue any such Avoidance Actions or Causes of Action. Unless a Post-Effective Date Debtors' Cause of Action is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order), the Debtors expressly reserve such Causes of Action for later resolution by the Plan Administrator (including any Avoidance Actions or Causes of Action not specifically identified or of which the Debtors may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist). As such, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches will apply to any such Avoidance Actions or Causes of Action upon or after Confirmation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except when such Avoidance Actions or Causes of Action have been expressly released. In addition, the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors or the Plan Administrator is a plaintiff, defendant, or an interested party is fully reserved as against any Person that is not a Released Party, including the plaintiffs or co-defendants in such lawsuits.

**5.11  Cancellation of Instruments.** Except to the extent necessary to give effect to the treatment of any Holder of an Allowed Claim and except with respect to any executory contracts and unexpired leases that are assumed under the Plan or otherwise assumed and assigned pursuant to a Final Order, any agreement, bond, certificate, contract, indenture, lease, note, security, warrant, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be deemed cancelled on the Effective Date, and all Liens, mortgages, pledges, grants, trusts, and other interests relating thereto shall be automatically cancelled, and all obligations of the Debtors thereunder or in any way related thereto shall be released, *provided, however*, that any of the Interests in Ranches shall be deemed to be held in trust by the Plan Administrator to the extent necessary for the Plan Administrator to perform its duties in the Plan.

**5.12** __Insurance Policies.__

      **5.12.1** __Insurance Policies Remain In Force.__  Up to and including their policy expiration date(s), any and all Insurance Policies in effect as of the Effective Date shall remain in full force and effect according to their terms and the coverage obligations of the insurers and third party administrators under such Insurance Policies shall continue following the Effective Date (including any obligations to pay, defend, and process insured claims).

      **5.12.2** __Insurance Policies; Employment Practice Liability Policies; Similar Policies.__  Nothing contained in this Plan shall affect or impair the rights of any non-Debtor insured persons covered under any Insurance Policy, which expressly includes any director and officer, employment practices, or similar liability Insurance Policies (including, without limitation, policies for the benefit of the Debtors' directors, officers, employees, members, managers, or similar persons who served in such capacity either before or after the Petition Date).

**5.13** __Settlement of Avoidance Actions Against Tyson.__  Notwithstanding anything in the Plan to the contrary, on the Effective Date, all Avoidance Actions and any possible objections, defenses, challenges, setoffs, recoupment, or other basis for challenging or diminishing the Tyson Claim are deemed settled for a deemed payment of $29,050,000, including but not limited to any claims relating to the Tyson Avoidance Action. The net effect of such deemed settlement has been incorporated into the Plan, among other things through the allocation of Initial Net Distributable Proceeds among the Class 4 Initial Payment, the Class 5 Initial Payment, and the Class 6 Initial Payment.

## __ARTICLE VI__

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1** __Rejection of Executory Contracts and Unexpired Leases.__ Except for any Executory Contracts of the Debtors: (i) that previously were assumed or rejected by an order of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code; (ii) as to which a motion for approval of the assumption or rejection of such contract or lease has been Filed and served prior to, and remains pending as of, the Effective Date; or (iii) that were previously assumed and assigned to FRI, each Executory Contract and Unexpired Lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. Nothing herein is intended to affect the validity of contracts and leases entered into by the Debtors on or after the Petition Date, or the rights of the Debtors thereunder, which

shall remain in full force and effect after the Effective Date in accordance with their terms.

The Insurance Policies shall not be considered Executory Contracts for purposes of subsection (a), above. As discussed in section 5.12 above, the Insurance Policies shall remain in full force and effect following the Effective Date.

**6.2** **Rejection Claims Bar Date.** Any Rejection Claim or other Claim for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be Filed and served no later than the Rejection Claims Bar Date. Any such Rejection Claims that are not timely Filed and served will be forever disallowed, barred, and unenforceable, and Persons holding such Claims will not receive and will be barred from receiving any Distributions on account of such untimely Claims. If one or more Rejection Claims are timely Filed pursuant to the Plan, the Post-Effective Date Debtors may object to any Rejection Claim on or prior to the Claim Objection Deadline. For the avoidance of doubt, the Rejection Claims Bar Date established by the Plan does not alter any rejection claims bar date established by a prior order of the Bankruptcy Court with respect to any executory contract or unexpired leases that was previously rejected in these Chapter 11 Cases.

**6.3** **Previously Assumed and Assigned Executory Contracts.** Nothing in the Plan or the Plan Supplement, or any Schedule or Exhibit relating to the foregoing, shall alter or affect the assumption and assignment, or sale, of those contracts and leases identified in or related to the Purchase and Sale Agreement, and neither the Plan, Plan Supplement, or any Schedule relating to the foregoing shall affect or alter the Debtors' obligations under the Purchase and Sale Agreement, including without limitation under the Temporary Lease Agreement, as they relate to the assumed and assigned contracts and leases identified thereunder, during the postpetition period prior to the Effective Date.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

**7.1** **Timing of Distributions for Allowed Claims.** Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to Holders of Allowed Claims as of the applicable Distribution Date shall be made on or as soon as practicable after the applicable Distribution Date. Distributions made as soon as reasonably practicable after the Effective Date or such other date set forth herein shall be deemed to have been made on such date.

**7.2** **Calculating Distributions and Related Matters.** The Plan Administrator shall undertake in its reasonable discretion to make in accordance with the Plan all calculations of Available Cash, Net Distributable Assets, and of other amounts for or relating to Distributions for Holders of Allowed Claims to be made from the Post-Effective Date Debtors or for reserves for Holders of Contingent Claims, Disputed Claims, and Unliquidated Claims to be established by the Post-Effective Date Debtors, and, may establish and holdback from Distributions reasonable reserves for other contingencies.

**7.3** **Interest and Other Amounts Regarding Claims.** Except to the extent provided (i) in Bankruptcy Code section 506(b) and Allowed by a Final Order or otherwise agreed, (ii) in the Plan, or (iii) in the Confirmation Order, postpetition interest shall not accrue or be paid on any Claims, and no Holder of an Allowed Claim shall be entitled to interest, penalties, fees, or late charges accruing or chargeable on any Claim from and after the Petition Date.

**7.4** **Distributions by Plan Administrator as Disbursing Agent.** The Plan Administrator may serve as the disbursing agent under the Plan, or may designate another party as disbursing agent, with respect to Distributions required pursuant to the Plan. The Plan Administrator shall not be required to give any bond or surety or other security for the performance of any duties as disbursing agent.

**7.5** **Means of Cash Payment.** Cash payments under the Plan shall be made, at the option and in the sole discretion of the Plan Administrator, by (i) checks drawn on or (ii) wire transfer, electronic funds transfer, or ACH from a domestic bank. Cash payments to foreign Creditors may be made, at the option and in the sole discretion of the Plan Administrator by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to the Plan in the form of checks shall be null and void if not cashed within 180 calendar days of the date of the issuance thereof. Requests for reissuance of any check within 180 calendar days of the date of the issuance thereof shall be made directly to the Plan Administrator.

**7.6** **Form of Currency for Distributions.** All Distributions under the Plan shall be made in U.S. Dollars. Where a Claim has been denominated in foreign currency on a proof of claim, the Allowed amount of such Claim shall be calculated in U.S. Dollars based upon the currency conversion rate in place as of the Petition Date and in accordance with Bankruptcy Code section 502(b).

**7.7** **Fractional Distributions.** Notwithstanding anything in the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny

(up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

**7.8** **De Minimis Distributions.** If the amount of Cash to be distributed to the Holder of an Allowed Claim is less than fifty dollars ($50) on a particular distribution date, the Plan Administrator may hold the Cash distributions to be made to such Holders until the aggregate amount of Cash to be distributed to each applicable Holder is in an amount equal to or greater than fifty dollars ($50). Notwithstanding the preceding sentence, if the aggregate amount of Cash distributions owed to any Holder of an Allowed Claim under the Plan never equals or exceeds fifty dollars ($50), then the Plan Administrator shall not be required to distribute Cash to any such Holder.

**7.9** **No Distributions With Respect to Certain Claims.** Notwithstanding anything in the Plan to the contrary, no Distributions or other consideration of any kind shall be made on account of any Contingent Claim, Disputed Claim, or Unliquidated Claim unless and until such Claim becomes an Allowed Claim, and then only to the extent that such Claim becomes an Allowed Claim and as provided under the Plan for such Allowed Claim. Nonetheless, in undertaking the calculations concerning Allowed Claims under the Plan, including the determination of Distributions due to the Holders of Allowed Claims, each Contingent Claim, Disputed Claim, or Unliquidated Claim shall be treated as if it were an Allowed Claim (which, for Unliquidated Claims, shall mean they shall be treated as if Allowed in such amounts as determined in the reasonable discretion of the Plan Administrator), except that if the Bankruptcy Court estimates the likely portion of such a Claim to be Allowed or authorized or the Bankruptcy Court or the Holder of such Claim and the Plan Administrator otherwise determine the amount or number that would constitute a sufficient reserve for such a Claim, such amount or number as determined by the Bankruptcy Court or by agreement of the Holder of such Claim and the Plan Administrator shall be used with respect to such Claim. Distributions due in respect of a Contingent Claim, Disputed Claim, or Unliquidated Claim shall be held in reserve by the Plan Administrator in one or more Distribution Reserves. The Plan Administrator may elect to treat any Distribution Reserve as a "Disputed Ownership Fund," pursuant to Treasury Regulation section 1.468B-9(c)(2)(ii). As outlined in this election, Creditors holding such Claims are not treated as transferors of the money or property transferred to the "Disputed Ownership Fund." For U.S. federal income tax purposes, a "Disputed Ownership Fund" is treated as the owner of all assets that it holds. A "Disputed Ownership Fund" is treated as a C corporation for purposes of the Internal Revenue Code unless all assets transferred to the Disputed Ownership Fund are passive investment assets for tax purposes, in which case it will be treated as a "qualified settlement fund" for U.S. federal income tax purposes. A "Disputed Ownership Fund" must file all required income and information tax returns and make all tax payments.

**7.10  Distributions and Transfers Upon Resolution of Contingent Claims, Disputed Claims, or Unliquidated Claims.** After an objection to a Disputed Claim is resolved or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, an amount of Cash held in the Disputed Ownership Fund corresponding to the amount of any resulting Allowed Claim shall be transferred, net of any tax payable by the Disputed Ownership Fund with respect to the transfer, in a taxable transaction to the Holder of the formerly Contingent Claim, Disputed Claim, or Unliquidated Claim. Upon each such resolution of a Claim against the Disputed Ownership Fund and such transfer with respect to any resulting Allowed Claim, any remaining Cash in the Disputed Ownership Fund that had been held with respect to such formerly Contingent Claim, Disputed Claim, or Unliquidated Claim prior to its resolution shall be transferred, net of any tax payable by the Disputed Ownership Fund with respect to such transfers, for payment, allocation, or reserve in accordance with the Plan for (a) unpaid or unutilized amounts for Post-Effective Date Debtors' Expenses or (b) any post-Confirmation reserve requirements of the Post-Effective Date Debtors in connection with the Plan, any agreements, or any Bankruptcy Court orders. To the extent any such remaining Cash is not so utilized, it shall be considered Net Distributable Assets and Available Cash for distribution to the Holders of Allowed Claims in Classes 5 and 6 on a Pro Rata basis, net of any tax payable by the Disputed Ownership Fund with respect to the respective transfers.

**7.11  Delivery of Distributions.** Distributions shall be made by the Plan Administrator to Holders of the Allowed Claims as of the record date set for such Distribution. Distributions to Holders of Allowed Claims shall be made (a) at the addresses set forth in the proofs of claim Filed by such Holders, (b) at the addresses reflected in the Schedules if no proof of claim has been Filed, or (c) at the addresses set forth in any written notices of address changes delivered to the Debtors or the Plan Administrator. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Plan Administrator is notified of such Holder's then-current address. The responsibility to provide the Claims Agent or the Plan Administrator with a current address of a Holder of an Allowed Claim shall always be the responsibility of such Holder. Amounts in respect of undeliverable Distributions made by the Plan Administrator shall be held in trust on behalf of the Holder of the Allowed Claim to which they are payable by the Plan Administrator until the earlier of the date that such undeliverable Distributions are claimed by such Holder and 180 calendar days after the date the undeliverable Distributions were made.

**7.12  Application of Distribution Record Date & Other Transfer Restrictions.** At the close of business on the Distribution Record Date, the claims registers for all Claims shall be closed, and there shall be no further changes in the record holders of any Claims. Except as provided herein, the Post-Effective Date Debtors and their Related Parties shall have no obligation to recognize any putative transfer of Claims occurring after the

Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the claims registers as of the close of business on the Distribution Record Date irrespective of the number of Distributions to be made under the Plan to such Persons or the date of such Distributions. In addition, the Post-Effective Date Debtors and their Related Parties shall have no obligation to recognize any putative transfer of General Unsecured Claims occurring at any time prior to the Effective Date to which the Debtors did not expressly consent and shall be entitled instead to recognize and deal for all purposes hereunder with only the Holders of General Unsecured Claims as reflected on the claims registers.

**7.13 <u>Withholding, Payment, and Reporting Requirements Regarding Distributions.</u>** All Distributions under the Plan shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment, and reporting requirements. The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements, including, to the extent such information is not already available to the Plan Administrator, requiring each Holder of a Claim to provide an executed current Form W-9, Form W-8, or similar tax form as a prerequisite to receiving a Distribution. Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed on the Post-Effective Date Debtors in connection with such Distribution; and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements reasonably satisfactory to the Plan Administrator for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed in connection with such Distribution.

**7.14 <u>Defenses and Setoffs.</u>** On and after the Effective Date, the Plan Administrator shall have all of the Debtors' and the Estates' rights under Bankruptcy Code section 558. Except as otherwise expressly provided in this Plan, nothing under the Plan shall affect the rights and defenses of the Debtors, the Estates, or the Post-Effective Date Debtors in respect of any Claim, including all rights in respect of legal and equitable objections, defenses, challenges, setoffs, or recoupment against such Claims. Accordingly, and except as otherwise expressly provided in this Plan, the Plan Administrator may, but shall not be required to, set off against any Claim or any Allowed Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors, the Estates,

or the Post-Effective Date Debtors, as applicable, may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim or rights that may exist against such Holder.

**7.15** **Allocation of Distributions.** All Distributions received under the Plan by Holders of Claims shall be deemed to be allocated first to the principal amount of such Claim, as determined for U.S. federal income tax purposes, and then to accrued interest, if any, with respect to such Claim through the Petition Date.

**7.16** **Joint Distributions.** The Plan Administrator may, in its sole discretion, make Distributions jointly to any Holder of a Claim and any other Person that the Plan Administrator has determined to have an interest in such Claim.

**7.17** **Forfeiture of Distributions.** If the Holder of a Claim fails to cash a check payable to it within the time period set forth in Section 7.5, fails to claim an undeliverable Distribution within the time limit set forth in Section 7.11, or fails to complete and return to the Plan Administrator the appropriate Form W-8 or Form W-9 within 180 calendar days after a request for the completion and return of the appropriate form pursuant to Section 7.13 (or such later time as approved by a Bankruptcy Court order), then such Holder shall be deemed to have forfeited its right to any reserved and future Distributions under the Plan. Any such forfeited Distributions shall be deemed Available Cash for all purposes, notwithstanding any federal or state escheat laws to the contrary.

## ARTICLE VIII

### PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO

**8.1** **Objections to and Resolution of Disputed Claims, Including Any Claims of Excluded Parties.** From and after the Effective Date, the Plan Administrator shall have the exclusive authority to compromise, resolve, and Allow any Disputed Claim without the need to obtain approval from the Bankruptcy Court, and any agreement entered into by the Plan Administrator with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim.

**8.2** **Claim Objections.** All objections to Claims (other than Professional Fee Claims, which shall be governed by Section 12.2 of the Plan) shall be Filed by the Plan Administrator on or before the Claim Objection Deadline, which date may be extended by order of the Bankruptcy Court. If a timely objection has not been Filed to a proof of claim or the Schedules have not been amended with respect to a Claim that was

Scheduled by the Debtors but was not Scheduled as contingent, unliquidated, or disputed, then the Claim to which the proof of claim or Scheduled Claim relates will be treated as an Allowed Claim.

**8.3    Estimation of Certain Claims.** The Plan Administrator may, at any time, move for a Bankruptcy Court order estimating any Contingent Claim, Disputed Claim, or Unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction and power to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. The estimated amount of any Claim so determined by the Bankruptcy Court shall constitute the maximum recovery that the Holder thereof may recover after the ultimate liquidation of its Claim, irrespective of the actual amount that is ultimately allowed. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another.

**8.4    Distributions Following Allowance.** Once a Contingent Claim, a Disputed Claim, or an Unliquidated Claim becomes an Allowed Claim, in whole or in part, including pursuant to the Plan, the Plan Administrator shall distribute from the Distribution Reserves to the Holder thereof the Distributions, if any, to which such Holder is then entitled under the Plan. Such Distributions, if any, shall be made on the next Distribution Date after the date on which the order or judgment allowing any such Claim becomes a Final Order or on which the Claim otherwise becomes an Allowed Claim, or, if there is no applicable Distribution Date, then within ninety (90) calendar days after the date on which the Claim becomes an Allowed Claim. Unless otherwise specifically provided in the Plan or allowed by a Final Order, no interest shall be paid on Contingent Claims, Disputed Claims, or Unliquidated Claims that later become Allowed Claims.

**8.5    Disposition of Assets in Reserves After Disallowance.** After an objection to a Disputed Claim is sustained or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, such that the Contingent Claim, Disputed Claim, or Unliquidated Claim is a Disallowed Claim in whole or in part, any Cash held in an applicable Distribution Reserve in respect of the particular Claim in excess of the Distributions due on account of any resulting Allowed Claim shall be used or distributed in a manner consistent with the Plan.

# ARTICLE IX

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**9.1** **Conditions to the Effective Date.** The occurrence of the Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to Section 9.2 of the Plan:

(i) the Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance reasonably satisfactory to the Settling Parties;

(ii) the Confirmation Order shall not be subject to any stay;

(iii) all governmental and material third-party approvals and consents necessary in connection with the transactions contemplated by the Plan, if any, shall have been obtained and be in full force and effect, including, but not limited to, the DOJ's written consent to the settlements and releases of properties and interests as set forth in the Global Settlement and this Plan;

(iv) all actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of this Plan are effected or executed and delivered, as applicable, including, but not limited to, each Easterday Family Contribution Instrument;

(v) the Allowed Class 1 Claims (Secured Claims) and Class 3 Claims (Farms General Unsecured Claims) shall not exceed $21,100,000 and such condition must be acknowledged as satisfied or waived by Tyson, Segale, and the Ranches Committee on or before June 30, 2022 in writing by email to undersigned counsel for the Debtors;

(vi) the Additional Easterday Family Releasing Parties shall have either (a) executed and delivered in writing releases of the Easterday Family Released Parties on account of any claims or causes of action arising from or related to such party's contractual agreements with the Easterday Family Released Parties or (b) returned a Ballot that accepts the Plan and does not opt out of the Third Party Releases;

(vii) Jody Easterday, Cutter Easterday, Cole Easterday, and Clay Easterday shall have executed and delivered the Mutual Release Agreement;

(viii) the Confirmation Order shall affirm the validity and enforceability of the various releases granted under the Plan among the Settling Parties and others, and such releases shall be in full force and effect; and

(ix) the Professional Fee Reserves are funded pursuant to Section 12.2 hereof.

**9.2** **Waiver of Conditions to the Effective Date.** The conditions to the Effective Date may be waived in writing by the Debtors and the Settling Parties, in the reasonable discretion of the Debtors and the Settling Parties, at any time without further order of the Bankruptcy Court.

**9.3** **Effect of Non-Occurrence of Conditions to the Effective Date.** If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Sections 9.1 and 9.2 of the Plan by July 31, 2022, upon notification filed by the Debtors or any of the Settling Parties with the Bankruptcy Court, (i) the Confirmation Order shall be vacated; (ii) no Distributions shall be made; (iii) the Debtors, the Estates, and all Creditors shall be restored to the *status quo* as of the day immediately preceding the Confirmation Hearing as though the Confirmation Order was not entered; (iv) all of the Debtors' and the Estates' obligations with respect to Claims shall remain unchanged and nothing contained in the Plan shall constitute a waiver or release of any Causes of Action by or against the Debtors, the Estates, or any other Person or prejudice in any manner the rights, claims, or defenses of the Debtors, the Estates, or any other Person; and (v) the Easterday Family may exercise their rights under the Abeyance and Suspense Order (Adv. Pro. No 22-80008, Docket No. 39).

**9.4** **Notice of the Effective Date.** Promptly after the occurrence of the Effective Date, the Post-Effective Date Debtors or its agents shall mail or cause to be mailed to all Creditors a notice that informs such Creditors of (i) entry of the Confirmation Order and the resulting confirmation of the Plan; (ii) the occurrence of the Effective Date; (iii) the rejection of executory contracts and unexpired leases pursuant to the Plan, as well as the deadline for the filing of resulting Rejection Claims; (iv) the deadline established under the Plan for the filing of Administrative Claims; and (v) such other matters as the Plan Administrator finds appropriate.

**9.5** **Payment of Plan Sponsor Contribution.** Promptly after the occurrence of the Effective Date, FRI shall deposit the Plan Sponsor Contribution in one or more deposit accounts at the direction of either (a) the Debtors, (b) the Plan Administrator, or (c) in the event of any disputes between and among the foregoing, an order of the Bankruptcy Court.

## ARTICLE X

## RELEASES, INJUNCTION, AND RELATED PROVISIONS

**10.1** **Debtors' Releases.**

    **(a)** **On the Effective Date and to the fullest extent authorized by applicable law, the Released Parties and their respective property will be expressly, unconditionally, generally, individually, and collectively released, acquitted, and**

discharged by the Debtors on behalf of themselves, their estates, the Post-Effective Date Debtors, and the Plan Administrator (such that the Post-Effective Date Debtors and Plan Administrator will not hold any Claims or Causes of Action released pursuant to this Plan), for the good and valuable consideration provided by each of the Released Parties, from any and all actions, claims, debts, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative or deficiency claims asserted or that could be asserted by or on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by state law (including Washington State partnership law), statute, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, any of the Debtors' present or former assets, the Released Parties' interests in or management of the Debtors, this Plan, the Disclosure Statement, these Chapter 11 Cases, or the Sale Transaction, including those that the Debtors, the Post-Effective Date Debtors, or the Plan Administrator would have been legally entitled to assert or that any Holder of a Claim against or interest in the Debtors or any other Entity could have been legally entitled to assert derivatively or on behalf of the Debtors or their Estates; *provided*, *however*, that the foregoing Debtors' Releases shall not operate to waive or release any Claims or Causes of Action of the Debtors or their Estates against a Released Party arising under any contractual obligation owed to the Debtors, the Post-Effective Date Debtors, or the Plan Administrator that is entered into pursuant to this Plan.

(b)     Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtors' Releases set forth in Section 10.1(a) above, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Debtors' Releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of the Claims released by the Debtors' Releases; (3) in the best interests of the Estates and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar against any of the Estates, the Post-Effective Date Debtors, or the Plan Administrator, asserting any Claim or Cause of Action released pursuant to the Debtors' Releases.

(c)     The foregoing Debtors' Releases are an integral component of the Global Settlement.

**10.2** <u>Third Party Releases</u>.

(a)     On the Effective Date and to the fullest extent authorized by applicable law, the Releasing Parties shall be deemed to have expressly, unconditionally, generally, individually, and collectively, released and acquitted the Released Parties and their respective property from any and all actions, Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative or deficiency claims asserted or that could be asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that such Holder (whether individually or collectively) ever had, now has, or hereafter can, shall or may have, based on or relating to, or in any manner arising from or related in any way to the Debtors, any of the Debtors' present or former assets, the Released Parties' interests in or management of the Debtors, the business, or contractual arrangements between the Debtors and any Released Party, this Plan, the Disclosure Statement, the Chapter 11 Cases, or the Sale Transaction, including those that the Debtors, the Post-Effective Date Debtors, or the Plan Administrator would have been legally entitled to assert or that any Holder of a Claim against or interest in the Debtors or any other Entity could have been legally entitled to assert derivatively or on behalf of the Debtors or their Estates, including any deficiency claim under Washington State partnership law, except for (1) Tyson-Segale Preserved Claims, (2) Cody Easterday Preserved Claims, and (3) the right to receive Distributions from the Debtors, the Post-Effective Date Debtors, or the Plan Administrator on account of an Allowed Claim against the Debtors pursuant to this Plan.  For the avoidance of doubt, the Releasing Parties shall include (1) the Released Parties, (2) Holders of Interests except as carved out for certain Creditors, and (3) all Holders of Claims that (a) vote to accept the Plan and (b) do not affirmatively opt out of the Third Party Release provided by this section pursuant to a duly executed ballot.  Notwithstanding anything to the contrary contained herein, in no event shall an Entity that (1) does not vote to accept or reject this Plan, (2) votes to reject this Plan, or (3) appropriately marks the ballot to opt out of the Third Party Release provided in this section and returns such ballot in accordance with the Solicitation Procedures Order, be a Releasing Party unless they have otherwise agreed to a release.

(b)     Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third Party Releases set forth in Section 10.2(a) above, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-

faith settlement and compromise of the Claims released by the Third Party Releases; (3) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar against any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third Party Releases.

(c)     The foregoing Third Party Releases are an integral component of the Global Settlement.

**10.3     Exculpation and Limitation of Liability.**

(a)     The Exculpated Parties will neither have nor incur any liability to any entity for any claims or Causes of Action arising on or after the Petition Date and prior to the Effective Date for any act taken or omitted to be taken in connection with, or related to (i) the Chapter 11 Cases, (ii) the Sale Transaction (including the leaseback by FRI of certain FRI Assets to the Debtors pursuant to the Temporary Lease Agreement), (iii) any other sales consummated during the Chapter 11 Cases, (iv) the Global Settlement Term Sheet, (v) formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the consummation of this Plan, or any other contract, instrument, release or other agreement or document created or entered into in connection with this Plan, including the Disclosure Statement, (vi) any other postpetition act taken or omitted to be taken in connection with or in contemplation of Confirmation of this Plan, or (vii) the approval of the Disclosure Statement and Plan or Confirmation or Consummation of the Plan, *provided*, *however*, that the foregoing provisions will have no effect on the liability of any entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence, actual fraud, or willful misconduct.

(b)     The Exculpated Parties have, and upon Confirmation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and Distributions pursuant to the Plan, and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.

**10.4     Injunction.**

(a)     FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY

MANNER ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

(b)    FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN SECTIONS 10.1 THROUGH 10.3, THE APPLICABLE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED UNDER THIS PLAN OR THE CONFIRMATION ORDER.

(c)    EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO THE PLAN OR THAT ARE SUBJECT TO THE EXCULPATORY PROVISIONS OF SECTION 10.2, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN; AND (V) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM WITH THE PROVISIONS OF THE PLAN TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.

(d)    THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF

ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, PROPERTY, OR ESTATES.

(e) ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE PLAN ADMINISTRATOR, THE POST-EFFECTIVE DATE DEBTORS, THE ADMINISTRATIVE AGENT, AND EACH OF THEIR RESPECTIVE ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS, OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE. NOTHING IN THIS SECTION 10.4 SHALL ENJOIN ANY CLAIM OR CAUSE OF ACTION THAT IS NOT RELEASED OR EXCULPATED PURSUANT TO SECTIONS 10.1, 10.2, AND 10.3 OF THIS PLAN OR THE CONFIRMATION ORDER.

(f) NOTWITHSTANDING ANY OTHER PROVISION OF THIS PLAN TO THE CONTRARY, THE DEBTORS SHALL NOT RECEIVE A DISCHARGE.

## ARTICLE XI

## RETENTION OF JURISDICTION AND POWER

**11.1** **Scope of Retained Jurisdiction and Power.** Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain jurisdiction and power over all matters arising in, arising under, or related to the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including jurisdiction and power to do the following:

(a) except as otherwise Allowed pursuant to the Plan or in the Confirmation Order, Allow, classify, determine, disallow, establish the priority or secured or unsecured status of, estimate, limit, liquidate, or subordinate any Claim, in whole or in part, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims;

(b) hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b), 1103, and 1129(a)(4);

(c) hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any Claims arising therefrom;

(d)    effectuate performance of and payments under the provisions of the Plan and enforce remedies on any default under the Plan;

(e)    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases, including the Post-Effective Date Debtors' Causes of Action;

(f)    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created, executed, or contemplated in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

(g)    hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, or to maintain the integrity of the Plan following consummation;

(h)    consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(i)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(j)    enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(k)    hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with any of the foregoing documents and orders;

(l)    enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings associated with the Plan or otherwise entered in connection with the Chapter 11 Cases (whether or not any or all of the Chapter 11 Cases have been closed);

(m)    except as otherwise limited herein, recover all Estate Assets and Post-Effective Date Debtors' Assets, wherever located;

(n)  hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(o)  hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

(p)  hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, the Bankruptcy Code and title 28 of the United States Code;

(q)  resolve any cases, controversies, suits, or disputes related to the Post-Effective Date Debtors, the Plan Administrator, or the Debtors;

(r)  enforce the Sale Order; and

(s)  enter a final decree closing the Chapter 11 Cases of the Debtors.

**11.2  Non-Exercise of Jurisdiction.** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, the provisions of this **Error! Reference source not found.** shall have no effect on, and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to, such matter.

## ARTICLE XII

### MISCELLANEOUS PROVISIONS

**12.1  Administrative Claims.** Subject to the last sentence of this Section 12.1, all requests for payment of an Administrative Claim arising on or after April 1, 2022 must be filed with the Bankruptcy Court no later than the Administrative Claims Bar Date. In the event of an objection to Allowance of an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. **THE FAILURE TO FILE A MOTION REQUESTING ALLOWANCE OF AN ADMINISTRATIVE CLAIM ON OR BEFORE THE ADMINISTRATIVE CLAIMS BAR DATE, OR THE FAILURE TO SERVE SUCH MOTION TIMELY AND PROPERLY, SHALL RESULT IN THE ADMINISTRATIVE CLAIM BEING FOREVER BARRED AND DISALLOWED WITHOUT FURTHER ORDER OF THE BANKRUPTCY COURT. IF FOR ANY REASON ANY SUCH ADMINISTRATIVE CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISALLOWED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO**

**BE DISTRIBUTED PURSUANT TO THE PLAN.** Postpetition statutory tax claims shall not be subject to any Administrative Claims Bar Date.

**12.2    Professional Fee Claims.** All final requests for payment of Professional Fee Claims to the extent required pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b), or 1103 must be made by application Filed with the Bankruptcy Court and served on counsel to the Plan Administrator and counsel to the U.S. Trustee no later than forty-five (45) calendar days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to such applications must be Filed and served on counsel to the Plan Administrator, counsel to the U.S. Trustee, and the requesting Professional on or before the date that is twenty-one (21) calendar days after the date on which the applicable application was served (or such longer period as may be allowed by order of the Bankruptcy Court or by agreement with the requesting Professional). All Professional Fee Claims shall be paid by the Post-Effective Date Debtors to the extent approved by order of the Bankruptcy Court within five (5) Business Days after entry of such order. On the Effective Date, the Post-Effective Date Debtors shall establish the Professional Fee Reserves. The Professional Fee Reserves shall vest in the Post-Effective Date Debtors and shall be maintained and held in trust by Pachulski Stang Ziehl & Jones LLP in accordance with the Plan. The Post-Effective Date Debtors shall fully fund the Professional Fee Reserves on the Effective Date in an amount that is reasonable acceptable to the Debtors prior to the Confirmation Hearing and that approximates the total projected amount of unpaid Professional Fee Claims on the Effective Date. If the Debtors and the Committees are unable to agree on an amount by which the Professional Fee Reserves are to be funded, then any of those parties may submit the issue to the Bankruptcy Court, which, following notice and a hearing, shall fix the amount of the required funding. All Professional Fee Claims that have not previously been paid, otherwise satisfied or funded to the trust account of Debtors' counsel, or withdrawn shall be paid from the Professional Fee Reserves. Any excess funds in the Professional Fee Reserves shall be released to the Post-Effective Date Debtors to be used for other purposes consistent with the Plan. For the avoidance of doubt, the Professional Fee Reserves are an estimate and shall not be construed as a cap on the Post-Effective Date Debtors' obligation to pay in full Allowed Professional Fee Claims.

**12.3    Payment of Statutory Fees.** All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date. All such fees that relate to distributions by each Debtor after the Effective Date shall be paid by the Post-Effective Date Debtors. Notwithstanding anything to the contrary in the Plan, the U.S. Trustee shall not be required to file any proofs of claim with respect to quarterly fees payable pursuant to 28 U.S.C. § 1930.

**12.4    Dissolution of the Committees.** Both of the Committees shall be automatically dissolved on the Effective Date and, on the Effective Date, each member of the Committees (including each Related Party thereof) and each Professional retained by either of the Committees shall be released and discharged from all rights, duties, responsibilities, and obligations arising from, or related to, the Debtors, their membership on either of the Committees, the Plan, or the Chapter 11 Cases, except (i) with respect to any matters concerning any Professional Fee Claims held or asserted by any Professional retained by either of the Committees, and (ii) any appeals of, or related to, the Confirmation Order or any other appeal to which the Committees are a party to.

**12.5    Modifications and Amendments.**

(a)    In the Debtors' reasonable discretion, the Debtors may alter, amend, or modify the Plan under Bankruptcy Code section 1127(a) at any time at or prior to the conclusion of the Confirmation Hearing. All alterations, amendments, or modifications to the Plan must comply with Bankruptcy Code section 1127. The Debtors shall provide parties in interest with notice of such amendments or modifications as may be required by the Bankruptcy Code, Bankruptcy Rules, or order of the Bankruptcy Court. A Creditor that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Creditor.

(b)    After entry of the Confirmation Order and prior to substantial consummation (as defined in Bankruptcy Code section 1101(2)) of the Plan, the Debtors or the Post-Effective Date Debtors, as applicable, may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement approved with respect to the Plan, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Plan. Such proceedings must comply with Bankruptcy Code section 1127. To the extent required, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or an order of the Bankruptcy Court. A Creditor that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Creditor.

**12.6    Severability of Plan Provisions.** If, at or before the Confirmation Hearing, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so

that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section 12.6, is valid and enforceable under its terms.

**12.7    Compromises and Settlements.** From and after the Effective Date, the Post-Effective Date Debtors may compromise and settle disputes about any applicable Claims or Post-Effective Date Debtors' Causes of Action, without any further approval by the Bankruptcy Court. Until the Effective Date, the Debtors expressly reserve the right to compromise and settle (subject to the approval of the Bankruptcy Court) Claims against them or any Avoidance Actions and Causes of Action belonging to the Estates.

**12.8    Binding Effect of Plan.** Upon the Effective Date, Bankruptcy Code section 1141 shall become applicable with respect to the Plan and the Plan shall be binding on all Persons to the fullest extent permitted by Bankruptcy Code section 1141(a). Confirmation of the Plan binds each Holder of a Claim or Interest to all the terms and conditions of the Plan, whether or not such Holder's Claim or Interest is Allowed, whether or not such Holder holds a Claim or Interest that is in a Class that is Impaired under the Plan, and whether or not such Holder has accepted the Plan.

**12.9    Term of Injunctions or Stays.** Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and extant as of the Confirmation Hearing (excluding any injunctions or stays contained in or arising from the Plan or the Confirmation Order), shall remain in full force and effect through and inclusive of the Effective Date.

**12.10    Revocation, Withdrawal, or Non-Consummation.** The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Hearing and to File subsequent plans. If the Debtors revoke or withdraw the Plan prior to the Confirmation Hearing, or if the Effective Date does not occur, then (a) the Plan shall be null and void in all respects; and (b) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims against, or any Interests in, any Debtor, or any Causes of Action by or against any Debtor or any other Person, (ii) prejudice in any manner the rights of any Debtor or any other Person in any further proceedings involving a Debtor, or (iii) constitute an admission of any sort by any Debtor or any other Person.

**12.11** **Exemption from Transfer Taxes.** Pursuant to Bankruptcy Code section 1146, the vesting of the Post-Effective Date Debtors' Assets in the Post-Effective Date Debtors, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge, or other security interest, or the making or assignment of any lease or sublease, or making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**12.12** **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**12.13** **Transactions on Business Days.** If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, any transactions or other actions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

**12.14** **Good Faith.** Confirmation of the Plan shall constitute a conclusive determination that: (a) the Plan, and all the transactions and settlements contemplated thereby, have been proposed in good faith and in compliance with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules; and (b) the solicitation of acceptances or rejections of the Plan has been in good faith and in compliance with all applicable provisions of the Bankruptcy Code, and the Bankruptcy Rules, and, in each case, that the Debtors and all Related Parties have acted in good faith in connection therewith.

**12.15** **Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), (a) the laws of the State of Washington shall govern the construction and implementation of the Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of incorporation or formation of each Debtor shall govern corporate or limited liability company governance matters with respect to such Debtor; in each case without giving effect to the principles of conflicts of law thereof. Any applicable nonbankruptcy law that would prohibit, limit, or otherwise restrict implementation of the Plan based on (i) the commencement of the Chapter 11 Cases, (ii) the appointment of the Plan Administrator, (iii) the wind down of the Debtors, (iv) the liquidation of some or all of the Post-Effective Date Debtors' Assets, or (v) any other act or action to be done pursuant to or contemplated by the Plan is superseded and rendered inoperative by the Plan and federal bankruptcy law.

**12.16** **Notices.** Following the Effective Date, all pleadings and notices Filed in the Chapter 11 Cases shall be served solely on (a) the Post-Effective Date Debtors and their counsel, (b) the U.S. Trustee, (c) any Person whose rights are affected by the applicable

pleading or notice, and (d) any Person Filing a specific request for notices and papers on and after the Effective Date.

**12.17 <u>Final Decree.</u>** Upon the Plan Administrator's determination that all Claims have been allowed, disallowed, expunged, or withdrawn and that all of a Post-Effective Date Debtors' Assets have been liquidated, abandoned, or otherwise administered, the Plan Administrator shall move for the entry of the Final Decree with respect to such Debtor and Post-Effective Date Debtor. On entry of the Final Decree, the Plan Administrator and its respective Related Parties, in each case to the extent not previously discharged by the Bankruptcy Court, shall be deemed discharged and have no further duties or obligations to any Person with respect to such Debtor or Post-Effective Date Debtor.

**12.18 <u>Additional Documents.</u>** On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and the Post-Effective Date Debtors, as applicable, and all Holders receiving Distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other acts as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**12.19 <u>Conflicts with the Plan.</u>** In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, any other order entered in the Chapter 11 Cases, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence; *provided, however*, that the Confirmation Order shall control and take precedence in the event of any inconsistency between the Confirmation Order, any provision of the Plan, and any of the foregoing documents; *provided further, however*, that with respect to the Sale Transaction, the Sale Order shall control and take precedence in the event of any inconsistency between the Sale Order, any provision of the Plan, and any of the foregoing documents, in each case solely with respect to the Sale Transaction.

## **ARTICLE XIII**

### **REQUEST FOR CONFIRMATION AND RECOMMENDATION**

**13.1 <u>Request for Confirmation.</u>** The Debtors request confirmation of the Plan in accordance with Bankruptcy Code section 1129.

**13.2** __Recommendation.__ The Debtors believe that confirmation and implementation of the Plan are the best alternative under the circumstances and urge all Impaired Creditors entitled to vote on the Plan to vote in favor of and support confirmation of the Plan.

Respectfully,

**EASTERDAY RANCHES, INC.**

By: _____/s/ Peter Richter_____
Name: Peter Richter
Title: Co-Chief Restructuring Officer

**EASTERDAY FARMS**

By: _____/s/ Peter Richter_____
Name: Peter Richter
Title: Co-Chief Restructuring Officer

Submitted by:

Dated: May 27, 2022          BUSH KORNFELD LLP

_/s/ Thomas A. Buford, III_
THOMAS A. BUFORD, III (WSBA 52969)
BUSH KORNFELD LLP

RICHARD M. PACHULSKI (admitted _pro hac vice_)
JEFFREY W. DULBERG (admitted _pro hac vice_)
MAXIM B. LITVAK (admitted _pro hac vice_)
PACHULSKI STANG ZIEHL & JONES LLP

_Attorneys for Debtors and Debtors in Possession_

## EXHIBIT A

### ADDITIONAL PARTIES RELEASING
### THE EASTERDAY FAMILY RELEASED PARTIES

- Tyson Fresh Meats, Inc.

- DLL Finance LLC

- The McGregor Company

- John Deere Financial, f.s.b.

- Rabo AgriFinance LLC

- PHI Financial Services, Inc.

- Ag Direct/AgCountry Farm Credit Services, PCA/RDO Equipment Co./Farm Credit Services of America, PCA

- Midland States Bank through it account servicer Orion First Financial LLC

- Segale Properties, LLC

- Paladin Management Group

- Peter Richter

- Scott Avila

- All Holders of Allowed Class 3 Claims that opt out of the Third Party Releases

**EXHIBIT B**

**3E-PRODUCE SECURED NOTE**

**[TO BE FILED AS PART OF PLAN SUPPLEMENT]**

# EXHIBIT C

## BC 140 LLC SECURED GUARANTY

## [TO BE FILED AS PART OF PLAN SUPPLEMENT]

**EXHIBIT D**

**EASTERDAY DAIRY LLC NOTE**

**[TO BE FILED AS PART OF PLAN SUPPLEMENT]**

# EXHIBIT E

## KAREN EASTERDAY SECURED NOTE
## [TO BE FILED AS PART OF PLAN SUPPLEMENT]

# EXHIBIT F

## ADMINISTRATIVE AGENT AGREEMENT

## [TO BE FILED AS PART OF PLAN SUPPLEMENT]

# EXHIBIT G

## PLAN ADMINISTRATOR AGREEMENT

## [TO BE FILED AS PART OF PLAN SUPPLEMENT]

# EXHIBIT H

## EASTERDAY FAMILY RELEASED PARTIES

**PART ONE**

- 3E Properties
- Clay Easterday
- Cole Easterday
- Cutter Easterday
- Easterday Farms Produce, Co.
- Easterday Dairy, LLC
- Jody Easterday
- Related persons or entities that have executed a Mutual Release Agreement on or prior to the Effective Date

**PART TWO**

- Jordan Ramis PC
- Lindy Widner and Widner Consulting, LLC
- Sussman Shank LLP
- Tonkon Torp LLP

# EXHIBIT I

## FORM OF MUTUAL RELEASE AGREEMENT

# MUTUAL RELEASE AGREEMENT

This MUTUAL RELEASE AGREEMENT ("Agreement") is dated, for reference purposes only, the __ day of June, 2022 and shall be effective upon (and only upon) the Effective Date (as hereinafter defined), by and between (a) Easterday Ranches, Inc. and Easterday Farms (together, the "Debtors"), (b) the Official Committee of Unsecured Creditors of Easterday Ranches, Inc. (the "Ranches Committee"), (c) the Official Committee of Unsecured Creditors of Easterday Farms (the "Farms Committee" and together with the Ranches Committee, the "Committees"), (d) Tyson Fresh Meats, Inc. ("Tyson"), (e) Segale Properties, LLC ("Segale" and together with the Debtors, Committees, and Tyson, the "Non-Family Member Parties"), and (f) [●] (the "Family Member") (each a "Party" and collectively, the "Parties")

## RECITALS

A.      On February 1, 2021, Easterday Ranches, Inc. filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Washington (the "Bankruptcy Court").

B.      On February 8, 2021, Easterday Farms, a Washington general partnership, also filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

C.      On April 20, 2022, the Bankruptcy Court entered its *Order Granting Debtors' Motion to Approval Global Settlement Term Sheet* [Docket No. 1560], which approved the *Global Settlement Term Sheet* dated April 14, 2022 (the "Global Settlement Term Sheet"), by and among the Debtors, the Committees, Tyson, Segale, and certain related family members and entities of the Family Member.  The Global Settlement Term Sheet contemplates a global resolution of all claims among the Parties by, among other things, the execution of this Agreement.

D.      On May [●], 2022, the Debtors filed their *Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* [Docket No. ●] (the "Plan"), which effectuates the terms of the Global Settlement Term Sheet.  All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan.

E.      The Parties desire to enter into a mutual release of each other from all obligations according to the terms set forth in this Agreement and the Plan.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties as follows:

1.      Releases.

1.1.    The Non-Family Member Parties, respectively, for themselves and each of their respective past, present, or future advisors, trustees, directors, officers, managers, members, partners, employees, beneficiaries, shareholders, agents, participants, subsidiaries, parents, affiliates, successors, designees, and assigns (herein individually and collectively referred to as, "Non-Family Member Releasing Parties"), hereby forever, finally, fully, unconditionally, and

DOCS_SF:107351.2

completely release and acquit the Family Member and its respective property from any and all actions, claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Non-Family Member Releasing Parties (whether individually or collectively) ever had, now has, or hereafter can, shall or may have, based on or relating to, or in any manner arising from or related in any way to the Debtors, any of the Debtors' present or former assets, the Family Member's interests in or management of the Debtors, the business, or contractual arrangements between the Debtors and the Family Member, the Plan, the Disclosure Statement, the Chapter 11 Cases, or the Sale Transaction, including those that the Debtors, the Post-Effective Date Debtors, or the Plan Administrator would have been legally entitled to assert or that any Holder of a Claim against or interest in the Debtors or any other Entity could have been legally entitled to assert derivatively or on behalf of the Debtors or their Estates.

1.2.    The Family Member, for itself and each of its respective past, present, or future advisors, trustees, directors, officers, managers, members, partners, employees, beneficiaries, shareholders, agents, participants, subsidiaries, parents, affiliates, successors, designees, and assigns (herein individually and collectively referred to as, "Family Member Releasing Parties"), hereby forever, finally, fully, unconditionally, and completely release and acquit the Non-Family Member Releasing Parties and their respective property from any and all actions, claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Family Member Releasing Parties (whether individually or collectively) ever had, now has, or hereafter can, shall or may have, based on or relating to, or in any manner arising from or related in any way to the Debtors, any of the Debtors' present or former assets, the business, or contractual arrangements between the Debtors and the Non-Family Family Member Releasing Parties, the Plan, the Disclosure Statement, the Chapter 11 Cases, or the Sale Transaction, including those that the Debtors, the Post-Effective Date Debtors, or the Plan Administrator would have been legally entitled to assert or that any Holder of a Claim against or interest in the Debtors or any other Entity could have been legally entitled to assert derivatively or on behalf of the Debtors or their Estates.

1.3.    Each of the Parties acknowledges and agrees that it has been informed by its attorneys and advisors of, and is familiar with, and does hereby expressly waive, the provisions of Section 1542 of the California Civil Code, and any similar statute, code, law, or regulation of any state or the United States, to the full extent that it may waive such rights and benefits.  Civil Code, Section 1542 provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

21-00141-WLH11    Doc 1653    Filed 05/27/22    Entered 05/27/22 14:04:50    Pg 85 of 89

1.4.     Each of the Parties respectively represents and warrants to the other, that it is the sole and lawful owner of all right, title, and interest in and to each and every claim or other matter which it releases herein, and that none has heretofore assigned or transferred, or purported to assign or transfer, to any individual, partnership, corporation, firm, estate, or entity any such claim or other matter being released herein.  With the intent to be legally bound, each of the undersigned hereby covenants and acknowledges that he, she, or it (a) has read each of the terms set forth herein, (b) has the authority to execute this Agreement for such person or entity, and (c) expressly consents and agrees that the person or entity upon behalf of which the undersigned is acting, shall be bound by all terms and conditions contained herein.

2.     <u>Miscellaneous</u>.

2.1.     <u>Attorneys' Fees</u>.  The prevailing party in any action or proceeding to interpret or enforce this Agreement, or any of its terms, shall be entitled, in addition to any judgment or award upon such action or proceeding, to an award for all costs and expenses (including costs of all legal or administrative proceedings or hearings and attorneys' fees) incurred by such prevailing party or parties, including, without limitation, all attorneys' fees and related costs of enforcement of any such judgment or award and upon any appeal relating thereto.

2.2.     <u>Successors and Assigns</u>.  The provisions of this Agreement shall be binding upon and inure to the benefit of, each of the parties hereto, and their respective successors, assigns, heirs, and personal representatives.

2.3.     <u>Headings</u>.  The section and paragraph headings set forth in this Agreement are inserted <u>solely</u> for the convenience of reference and are not a part of, and are not intended to govern, limit, or aid in the construction or interpretation of, any term or provision hereof.

2.4.     <u>Governing Law; Jurisdiction; Venue</u>.  This Agreement is and shall be governed by and construed in accordance with the laws of the State of Washington.  The Bankruptcy Court shall have concurrent jurisdiction to resolve any disputes arising from this Agreement.

2.5.     <u>Entire Agreement</u>.  This Agreement, the Plan, and any documents attached as exhibits or executed in connection herewith or therewith, shall constitute the parties' entire agreement with respect to the subject matter hereof, and supersede all agreements, representations, warranties, statements, promises, and understandings, whether oral or written, with respect to the subject matter herewith.  This Agreement may not be amended, altered, or modified except by a writing signed by all parties.

2.6.     <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Electronic signatures may be accepted as original signatures.

2.7.     <u>Condition to Effectiveness</u>.  Notwithstanding anything to the contrary in this Agreement, neither this Agreement nor the releases provided for herein shall be binding or effective until such time as the Plan becomes effective in accordance with its terms, which such date shall be referred to herein as the "Effective Date."

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**EASTERDAY RANCHES, INC.**

By: */s/* _____
    Armand J. Kornfeld (WSBA #17214)
    jkornfeld@bskd.com
    Thomas A. Buford (WSBA #52969)
    tbuford@bskd.com
    Richard B. Keeton (WSBA #51537)
    rkeeton@bskd.com
    BUSH KORNFELD LLP
    601 Union Street, Suite 5000
    Seattle, WA 98101

    Richard M. Pachulski, *Admitted Pro Hac Vice*
    rpachulski@pszjlaw.com
    Jeffrey W. Dulberg, *Admitted Pro Hac Vice*
    jdulberg@pszjlaw.com
    Jason H. Rosell, *Admitted Pro Hac Vice*
    jrosell@pszjlaw.com
    PACHULSKI STANG ZIEHL & JONES LLP
    10100 Santa Monica Blvd., 13th Floor
    Los Angeles, CA 90067-4003

**EASTERDAY FARMS**

By: */s/* _____
    Armand J. Kornfeld (WSBA #17214)
    jkornfeld@bskd.com
    Thomas A. Buford (WSBA #52969)
    tbuford@bskd.com
    Richard B. Keeton (WSBA #51537)
    rkeeton@bskd.com
    BUSH KORNFELD LLP
    601 Union Street, Suite 5000
    Seattle, WA 98101

    Richard M. Pachulski, *Admitted Pro Hac Vice*
    rpachulski@pszjlaw.com
    Jeffrey W. Dulberg, *Admitted Pro Hac Vice*
    jdulberg@pszjlaw.com
    Jason H. Rosell, *Admitted Pro Hac Vice*
    jrosell@pszjlaw.com
    PACHULSKI STANG ZIEHL & JONES LLP
    10100 Santa Monica Blvd., 13th Floor
    Los Angeles, CA 90067-4003

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF EASTERDAY RANCHES, INC.**

By: */s/* _____
    Christopher B. Durbin (WSBA #41159)
    cdurbin@cooley.com
    COOLEY LLP
    1700 Seventh Avenue, Suite 1900
    Seattle, WA 98101

    Cullen D. Speckhart, *Admitted Pro Hac Vice*
    *cspeckhart@cooley.com*
    Michael Klein, *Admitted Pro Hac Vice*
    *mklein@cooley.com*
    COOLEY LLP
    5 Hudson Yards
    New York, NY 10001

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF EASTERDAY FARMS**

By: */s/* _____
    Joseph M. Welch (WSBA #56521)
    Julian I. Gurule (admitted *pro hac vice*)
    BUCHALTER
    1420 Fifth Avenue, Suite 3100
    Seattle, WA 98101

**Signatures continued on next page**

**TYSON FRESH MEATS, INC.**

By: */s/* _____
    Alan D. Smith (WSBA 24964)
    ADSmith@perkinscoie.com
    Bradley A. Cosman (*pro hac vice*)
    BCosman@perkinscoie.com
    PERKINS COIE LLP
    1201 Third Avenue
    Seattle, WA 98101

**FAMILY MEMBER**

By: */s/* _____
    [Name]
    [Email]
    [Address]

**SEGALE PROPERTIES LLC**

By: */s/* _____
    Aditi Paranjpye (WSBA # 53001)
    aparanjpye@cairncross.com
    John R. Rizzardi (WSBA # 9388)
    jrizzardi@cairncross.com
    Jennifer K. Faubion (WSBA # 39880)
    jfaubion@cairncross.com
    CAIRNCROSS & HEMPELMANN, P.S.
    524 Second Avenue, Suite 500
    Seattle, WA 98104-2323

21-00141-WLH11   Doc 1653   Filed 05/27/22   Entered 05/27/22 14:04:50   Pg 88 of 89

# EXHIBIT J

## FARMS GUC CLAIMS SCHEDULE

## [TO BE FILED AS PART OF PLAN SUPPLEMENT]