**So Ordered.**

**Dated: July 25th, 2022**



**Whitman L. Holt**
**Bankruptcy Judge**

<div align="center">

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

</div>

| | |
|---|---|
| In re | Chapter 11 |
| EASTERDAY RANCHES, INC., *et al.* | Lead Case No. 21-00141-11<br>Jointly Administered |
| Debtors.[1] | **ORDER CONFIRMING THIRD MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS**<br><br>Related Docket Nos. 1771, 1772, and 1779 |

Easterday Ranches, Inc. and Easterday Farms, a Washington general partnership, the debtors and debtors in possession (collectively, the "**Debtors**" or "**Plan Proponents**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), having proposed the *Third Modified Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* dated July 14, 2022

---

[1] The Debtors along with their case numbers are as follows: Easterday Ranches, Inc. (21-00141) and Easterday Farms, a Washington general partnership (21-00176).

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

[Docket No. 1772] (as amended, modified, or supplemented, the "**Plan**");[2] the court having conducted a hearing to consider confirmation of the Plan ("**Confirmation**") on July 19, 2022 (the "**Confirmation Hearing**"); the court having found that due, adequate, and sufficient notice of the Plan, Confirmation Hearing, and all deadlines for voting on or filing objections to the Plan was provided in compliance with the Bankruptcy Code, the Bankruptcy Rules, the United States Bankruptcy Court for the Eastern District of Washington Local Rules (the "**Local Rules**"), and the court's order governing the solicitation of the Plan [Docket No. 1658] (the "**Solicitation Procedures Order**"); and that no other or further notice is or shall be required; and the court having reviewed (a) the certification of Patricia Jeffries [Docket No. 1771] (the "**Voting Certification**"); (b) the declaration of Peter Richter [Docket No. 1779] (the "**Richter Declaration**" and together with the Voting Certification, the "**Declarations**"); (c) any pleadings submitted in support of confirmation of the Plan, including the *Memorandum of Law in Support of Confirmation of Third Modified Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* [Docket No. 1779] (the "**Confirmation Brief**"); and (d) the objections to the Plan [Docket Nos. 1745 and 1748] (the "**Objections**") and any withdrawals or settlements thereof; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND THAT:**[3]

A.   <u>Jurisdiction and Venue</u>.   The court has jurisdiction over this matter and these Chapter 11 Cases pursuant to 28 U.S.C. § 1334.  Confirmation of the Plan is a

---

[2]   A capitalized term used but not defined herein shall have the meaning ascribed to it in the Plan.

[3]   The findings of fact and conclusions of law set forth herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  To the extent any of the orders of this

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), this court has jurisdiction to enter a final order with respect thereto, and this court's exercise of such jurisdiction is constitutional in all respects. The court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B. <u>Eligibility for Relief</u>. The Debtors are (i) proper debtors under section 109 of the Bankruptcy Code and (ii) proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

C. <u>Contents of the Plan</u>. The Plan is dated and identifies the entities submitting and filing it, thereby complying with Bankruptcy Rule 3016(a). Section 12.5(b) of the Plan defines "substantial consummation" as such term is defined in section 1101(2) of the Bankruptcy Code. Section 9.1 expressly lists the conditions to the occurrence of the Effective Date, thereby complying with LBR 3017-1(d)(1). The filing of the Disclosure Statement complied with Bankruptcy Rule 3016(b) and LBR 3017-1(a).

D. <u>Solicitation and Notice</u>. As evidenced by the affidavits of service and mailing filed in these Chapter 11 Cases prior to the Confirmation Hearing (collectively, the "<u>Notice Affidavits</u>"), the Plan, Solicitation Procedures Order, notice of the Confirmation Hearing, and an appropriate ballot (collectively, the "<u>Ballots</u>") for voting on the Plan with a return envelope or a notice of non-voting status (in substantially the forms approved pursuant to the Solicitation Procedures Order) (collectively, the "<u>Solicitation Materials</u>") were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order.

court constitute findings of fact or conclusions of law, they are adopted as such. To the extent any of the findings of fact or conclusions of law constitute an order of this court, they are adopted as such.

ORDER CONFIRMING THIRD
MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION
OF EASTERDAY RANCHES, INC. AND
EASTERDAY FARMS – Page 3

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

The solicitation of votes on the Plan complied with the solicitation procedures in the Solicitation Procedures Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. As evidenced by the Notice Affidavits, all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

E. <u>Voting</u>. All procedures used to tabulate the Ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations. As evidenced by the Voting Certification, Classes 3, 4, 5, and 6 voted to accept the Plan.

F. <u>Burden of Proof</u>. The Plan Proponents have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for confirmation of the Plan.

**<u>COMPLIANCE WITH SECTION 1129 OF THE BANKRUPTCY CODE</u>**

G. <u>Compliance with the Bankruptcy Code | 11 U.S.C. § 1129(a)(1)</u>. The evidentiary record at the Confirmation Hearing, the Declarations, the contents of the Plan, the Notice Affidavits, and the Confirmation Brief support the findings of fact and conclusions of law set forth herein.

H. <u>Proper Classification | 11 U.S.C. §§ 1122 and 1123(a)(1)</u>. Article II of the Plan designates Classes of Claims, other than Administrative Claims, Professional Fee

ORDER CONFIRMING THIRD MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS – Page 4

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Claims, and Priority Tax Claims, which, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be designated. As required by section 1122(a) of the Bankruptcy Code, each Class of Claims contains only Claims that are substantially similar to the other Claims within that Class. Valid reasons exist for separately classifying the various Classes of Claims created under the Plan. The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

I.     Unimpaired and Impaired Classes | 11 U.S.C. §§ 1123(a)(2)-(3). Article II of the Plan specifies that Claims in Classes 1 and 2 are Unimpaired. Article II of the Plan also specifies the treatment of each Impaired Class under the Plan, which are Classes 3 through 9. The Plan, therefore, satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code.

J.     No Discrimination | 11 U.S.C. § 1123(a)(4). Article III of the Plan provides the same treatment for each Claim or Interest within a particular Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest. The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

K.     Implementation of the Plan | 11 U.S.C. § 1123(a)(5). The Plan and Plan Administrator Agreement, attached as Exhibit G to the Plan, provide adequate and proper means for the Plan's implementation, including, among other provisions, Article V of the Plan (Means for Implementation of the Plan). The Plan, therefore, satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

L.     Non-Voting Equity Securities | 11 U.S.C. § 1123(a)(6). The Plan does not provide for the issuance of non-voting equity securities.

M.     Directors and Officers | 11 U.S.C. § 1123(a)(7). Sections 5.7 and 5.8 of the Plan describes the manner of selection and powers of the Plan Administrator, who

ORDER CONFIRMING THIRD
MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION
OF EASTERDAY RANCHES, INC. AND
EASTERDAY FARMS – Page 5

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

shall be the sole director, officer, and shareholder, or partner, as applicable, of the Post-Effective Date Debtors. As specified in Section 1.112 of the Plan, Seth R. Freeman of B. Riley Advisory Services shall be the initial Plan Administrator designated to wind up and liquidate the Debtors' affairs. Mr. Freeman's engagement as Plan Administrator is consistent with the interests of Holders of Claims and with public policy. Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

N.    <u>Rejection of Executory Contracts | 11 U.S.C. § 1123(b)(2)</u>.  Consistent with section 1123(b)(2) of the Bankruptcy Code, Article VI of the Plan provides for the rejection of all of the executory contracts and unexpired leases of the Debtors, except for any executory contracts or unexpired leases of the Debtors (i) that previously were assumed or rejected by an order of the court, pursuant to section 365 of the Bankruptcy Code; (ii) as to which a motion for approval of the assumption or rejection of such contract or lease has been filed and served prior to the date hereof; or (iii) that constitute contracts of insurance in favor of, or that benefit, the Debtors or the Estates.

O.    <u>Settlement of Estates' Causes of Action | 11 U.S.C. § 1123(b)(3)</u>.  In accordance with sections 363 and 1123(b)(3) of the Bankruptcy Code, Bankruptcy Rule 9019, and LBR 9019-1, the Plan provides for the good faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, equitable, and subordination rights that a Holder of any Claim may have with respect to any Allowed Claim or any distribution to be made on account of such an Allowed Claim, including, but not limited to, approval of the Global Settlement, as set forth in the Global Settlement Term sheet and as incorporated into the Plan. The Plan further provides, in accordance with section 1123(b)(3) of the Bankruptcy Code, that the Post-Effective Date Debtors will retain and may, through the Plan Administrator, enforce any claims,

ORDER CONFIRMING THIRD
MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION
OF EASTERDAY RANCHES, INC. AND
EASTERDAY FARMS – Page 6

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

demands, rights, defenses, and Causes of Action that any Debtors may hold against any entity, to the extent not expressly released under the Plan.

P. <u>Rights of Holders of Claims | 11 U.S.C. § 1123(b)(5)</u>. In accordance with section 1123(b)(5) of the Bankruptcy Code, Section II of the Plan modifies or leaves unaffected, as the case may be, the rights of Holders of Claims in Classes 1 through 8.

Q. <u>Compliance with the Bankruptcy Code | 11 U.S.C. § 1129(a)(2)</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code. Specifically: (a) the Debtors are proper debtors under section 109 of the Bankruptcy Code; (b) the Debtors have complied with all applicable provisions of the Bankruptcy Code, including section 1125, except as otherwise provided or permitted by order of the court; and (c) the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order in transmitting the Solicitation Materials and in tabulating the votes with respect to the Plan.

R. <u>Plan Proposed in Good Faith | 11 U.S.C. § 1129(a)(3)</u>. The Plan has been proposed by the Debtors in good faith and in the belief that the Global Settlement embodied in the Plan will maximize value for the Debtors' creditors. The Plan accomplishes the goals promoted by section 1129(a)(3) of the Bankruptcy Code by enabling the Plan Administrator to make distributions to creditors on a fair and equitable basis, in accordance with the priorities established by the Bankruptcy Code. The Debtors have proposed the Plan for a legitimate and honest purpose, and the Plan is in the best interests of the Debtors' creditors. In so finding, the court has considered the totality of the circumstances in these Chapter 11 Cases. The strong support for the Plan by Holders of Claims in Classes 3, 4, 5, and 6 further demonstrates that the Plan was proposed in good faith. Finally, as described in greater detail below, the Plan's

ORDER CONFIRMING THIRD MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS – Page 7

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

indemnification, exculpation, non-third party releases, and injunction provisions are warranted, necessary, and appropriate, and are supported by sufficient consideration under the circumstances of these Chapter 11 Cases as a whole and are consistent with sections 105, 1123(b)(6), and 1129 of the Bankruptcy Code and applicable law in this Circuit. Additionally, the Plan's third party releases are hereby found to be consensual, as they are limited to third parties that voted to accept the Plan and did not opt-out of such releases.

S. <u>Payment for Services or Costs and Expenses | 11 U.S.C. § 1129(a)(4)</u>. No payment for services or for costs and expenses in connection with these Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been or will be made by the Debtors other than payments that have been authorized by the Plan or an order of the court, including, without limitation, this Confirmation Order. The Plan, therefore, satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

T. <u>Disclosure of Liquidation Trustee | 11 U.S.C. § 1129(a)(5)</u>. The Debtors have complied with section 1129(a)(5) by providing such disclosures in the Plan and Plan Administrator Agreement.

U. <u>No Rate Changes | 11 U.S.C. § 1129(a)(6)</u>. The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

V. <u>Best Interests of Creditors | 11 U.S.C. § 1129(a)(7)</u>. Each Holder of an Impaired Claim or Impaired Interest has either accepted the Plan or will receive or retain on account of such Claim or Interest, property of a value on the Effective Date of the Plan that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code, as evidenced by the

ORDER CONFIRMING THIRD MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS – Page 8

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

liquidation analysis attached as **Exhibit B** to the Disclosure Statement. The Plan, therefore, satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

W.    Acceptance by Certain Classes | 11 U.S.C. § 1129(a)(8). Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan. Classes 1 and 2 are Unimpaired Classes of Claims, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Classes 3, 4, 5, and 6 (collectively, the "**Voting Classes**") are the Impaired Classes entitled to vote on the Plan. Each of the Voting Classes has voted to accept the Plan. Class 7 (Subordinated Claims) and Class 9 (Interests) (the "**Non-Voting Classes**") are conclusively presumed to reject the Plan because no distribution is anticipated to the Holders of such Claims or Interests, in accordance with section 1126(g) of the Bankruptcy Code. Class 8 (Intercompany Claims) is deemed to accept the Plan as the Holders of such claims are the Plan Proponents, although no distribution is anticipated to the Holders of such claims. The Plan, therefore, does not satisfy the requirements of section 1129(a)(8) of the Bankruptcy Code because at least one Impaired Class has not voted to accept the Plan. Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

X.    Treatment of Claims Entitled to Priority | 11 U.S.C. § 1129(a)(9). The treatment of Administrative Claims, Professional Fee Claims, and Priority Tax Claims, as set forth in Section 3.1 of the Plan is in accordance with the requirements of section 1129(a)(9) of the Bankruptcy Code. The Plan, therefore, satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

Y.    Acceptance by at Least One Impaired Class of Claims | 11 U.S.C. § 1129(a)(10). As set forth in the Voting Certification, each Voting Class is an impaired

ORDER CONFIRMING THIRD
MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION
OF EASTERDAY RANCHES, INC. AND
EASTERDAY FARMS – Page 9

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

class of Claims under the Plan and voted to accept the Plan. The Plan, therefore, satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

Z.    Confirmation Not Likely to be Followed by Liquidation | 11 U.S.C. § 1129(a)(11). The Plan provides for the liquidation of the Debtors' assets and, accordingly, no further reorganization or liquidation of the Debtors is contemplated or likely. Based on the evidence proffered or adduced at or prior to the Confirmation Hearing and in the Confirmation Brief and the Plan, the Debtors have sufficient funds available as of the Effective Date to pay all claims and expenses that are required to be paid on the Effective Date under the Plan (including Administrative Claims, Priority Claims, and Priority Tax Claims), and to capitalize the Post-Effective Date Debtors with sufficient funds to pay these claims as appropriate pursuant to the Plan. Accordingly, the Plan is feasible and satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

AA.    Payment of Bankruptcy Fees | 11 U.S.C. § 1129(a)(12). The Plan provides that fees payable pursuant to 28 U.S.C. § 1930 will be paid by the Debtors on or before the Effective Date. After the Effective Date, all fees payable pursuant to 28 U.S.C. § 1930 are the obligations of, and will be paid by, the Post-Effective Date Debtors until entry of a final decree, or entry of an order of dismissal, or conversion to chapter 7. Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

BB.    Non-applicability of Certain Sections of the Bankruptcy Code. The Debtors do not owe any retiree benefits or domestic support obligations, are not individuals, and are not non-profit corporations. Accordingly, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

ORDER CONFIRMING THIRD
MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION
OF EASTERDAY RANCHES, INC. AND
EASTERDAY FARMS – Page 10

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

21-00141-WLH11    Doc 1814    Filed 07/26/22    Entered 07/26/22 10:37:04    Pg 10 of 244

CC. <u>Cram Down Requirements | 11 U.S.C. § 1129(b)</u>. The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Non-Voting Classes are deemed to reject the Plan (the "**Rejecting Classes**"), the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code given that each of the Voting Classes voted to accept the Plan. *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. *Second*, the Plan is fair and equitable with respect to the Rejecting Classes. The Plan has been proposed in good faith, is reasonable, and meets the requirements that no Holder of any Claim that is junior to each such Class will receive or retain any property under the Plan on account of such junior Claim and no Holder of a Claim in a Class equal to such Classes is receiving more favorable treatment than the Rejecting Classes. Accordingly, the Plan is fair and equitable towards all Holders of Claims in the Rejecting Classes. *Third*, the Plan does not discriminate unfairly with respect to the Rejecting Classes because similarly situated creditors will receive substantially similar treatment on account of their Claims irrespective of Class. The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan because the Plan does not discriminate unfairly, and is fair and equitable with respect to the Rejecting Classes.

DD. <u>Only One Plan | 11 U.S.C. § 1129(c)</u>. The Debtors seek confirmation of the Plan. No party other than the Debtors has proposed a plan. The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

EE. <u>Principal Purpose of the Plan | 11 U.S.C. § 1129(d)</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act, 15 U.S.C. § 77e. The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

ORDER CONFIRMING THIRD MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS – Page 11

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

FF. <u>Good Faith Solicitation | 11 U.S.C. § 1125(e)</u>. Based on the record in the Chapter 11 Cases, the Debtors and each of their respective officers, directors, managers, employees, members, agents, advisors, accountants, attorneys, and representatives have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the Plan, including, but not limited to, any action or inaction in connection with their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in the Plan.

GG. <u>Implementation</u>. All documents and agreements necessary to implement the Plan, including, but not limited to, the documents attached to the Plan Supplement [Docket Nos. 1733] (collectively, the "<u>Plan Documents</u>"), are essential elements of the Plan and consummation of each agreement is in the best interests of the Debtors, the Estates, and Holders of Claims. The Debtors have exercised reasonable business judgment in determining to enter into the contemplated agreements, and the agreements have been negotiated in good faith, at arm's-length, are fair and reasonable, and shall, upon execution and upon the occurrence of the Effective Date, constitute legal, valid, binding, enforceable, and authorized obligations of the respective parties thereto and will be enforceable in accordance with their terms. Pursuant to section 1142(a) of the Bankruptcy Code, the Plan Documents, and any other agreements necessary to implement the Plan will apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

ORDER CONFIRMING THIRD
MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION
OF EASTERDAY RANCHES, INC. AND
EASTERDAY FARMS – Page 12

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

21-00141-WLH11    Doc 1814    Filed 07/26/22    Entered 07/26/22 10:37:04    Pg 12 of 244

HH. <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

II. <u>The Global Settlement</u>. The Plan settles numerous litigable issues in the Chapter 11 Cases pursuant to Bankruptcy Rule 9019, Local Rule 9019-1, and sections 363 and 1123 of the Bankruptcy Code. These settlements are in consideration for the distributions and other benefits provided under the Plan. Any other compromise and settlement provisions of the Plan and the Plan itself constitute a compromise of all Claims or Causes of Action relating to the contractual, legal, equitable, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or any distribution to be made on account of such an Allowed Claim.

JJ. In consideration of the Global Settlement embodied in the Plan, pursuant to Bankruptcy Rule 9019, Local Rule 9019-1, and section 1123 of the Bankruptcy Code and in consideration for the distributions, releases, and other benefits provided under the Plan, the provisions of the Plan shall upon the Effective Date constitute a good-faith compromise and settlement as reflected therein and in all and any related documents. The entry of this Confirmation Order constitutes the court's approval of the Global Settlement and all other compromises and settlements provided for in the Plan. The court finds that such compromises and settlements are in the best interests of the Debtors, their estates, creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness and consistent with the Debtors' reasonable business judgment.

KK. In reaching its decision on the substantive fairness of the Global Settlement, as embodied in the Plan, the court considered the following factors for each such settlement: (i) the balance between the relevant parties' respective probability of

ORDER CONFIRMING THIRD MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS – Page 13

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

21-00141-WLH11    Doc 1814    Filed 07/26/22    Entered 07/26/22 10:37:04    Pg 13 of 244

success and the settlements' future benefits; (ii) the likelihood of complex and protracted litigation and the risk and difficulty of collecting on the judgment; (iii) the proportion of creditors and parties in interest that support the settlements; (iv) the competency of counsel reviewing the settlement terms; (v) the nature and breadth of releases to be obtained; and (vi) the extent to which the settlements are the product of arm's-length bargaining.

LL.     <u>Releases, Exculpation, and Injunctions of Released Parties</u>.  Each non-Debtor Released Party or Exculpated Party that will benefit from the releases, exculpations, and related injunctions set forth in the Plan (collectively, the "<u>Plan Releases</u>") either shares an identity of interest with the Debtors, was instrumental to the successful prosecution of the Chapter 11 Cases, and/or provided a substantial contribution to the Debtors, which value provided a significant and direct benefit to the Debtors' estates and general unsecured creditors, and which will allow for distributions that would not otherwise be available but for the contributions made by such non-Debtor parties.  The Plan Releases in Article X of the Plan are, individually and collectively, integral to, and necessary for the successful implementation of, the Plan and are supported by reasonable consideration.

MM.  <u>Plan Sponsor Contribution</u>.   The release and exculpation protections afforded FRI and its Related Parties in Sections 10.1 and 10.3 of the Plan are consistent with and supported by the factual findings and legal conclusions in the Sale Order, which approved the Sale Transaction pursuant to which FRI leased back the FRI Assets to the Debtors and their estates for the purpose of completing certain farming operations and selling certain assets of the Debtors' estates.  FRI's obligation to pay the Plan Sponsor Contribution is conditioned on the release and exculpatory protections

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

conveyed to FRI and its Related Parties in the Plan and granted by the court in this Confirmation Order.

NN. <u>Waiver of Stay</u>. Under the circumstances, it is appropriate that the 14-day stay imposed by Bankruptcy Rules 3020(e) and 7062(a) be waived.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

1. <u>Confirmation</u>. The Plan, as attached hereto as **<u>Exhibit A</u>**, is **APPROVED** in its entirety and **CONFIRMED** in its entirety under section 1129 of the Bankruptcy Code. The terms of the Plan and all documents, exhibits, and agreements thereto are incorporated by reference into and are an integral part of the Plan, and such terms and their implementation are hereby approved and authorized. The Debtors, Post-Effective Date Debtors, and Plan Administrator (as applicable) are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, and other agreements or documents created in connection with the Plan.

2. <u>Objections</u>. The Objections to confirmation of the Plan are **OVERRULED** in their entirety except as otherwise set forth herein.

3. <u>Omission of Reference to Particular Plan Provisions</u>. The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of this court that the Plan be approved and confirmed in its entirety.

4. <u>Implementation</u>. The Debtors, Post-Effective Date Debtors, and the Plan Administrator (as applicable) are authorized to take all actions necessary, appropriate, or desirable to enter into, implement, and consummate the contracts, instruments, releases, leases, agreements, or other documents created or executed in connection with the Plan. Without further order or authorization of this court, the Debtors, Post-

ORDER CONFIRMING THIRD MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS – Page 15

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

21-00141-WLH11    Doc 1814    Filed 07/26/22    Entered 07/26/22 10:37:04    Pg 15 of 244

Effective Date Debtors, and the Plan Administrator (as applicable), and each of their successors, are authorized and empowered to make all modifications to all Plan Documents that are consistent with the Plan. Execution versions of the Plan and all related documents, where applicable, shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms.

5. <u>Classifications</u>. The classification of Claims for purposes of distributions made under the Plan shall be governed solely by the terms of the Plan and this Confirmation Order. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan pursuant to the Solicitation Procedures Order: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim as representing the actual classification of such Claim under the Plan for distribution purposes; and (d) shall not be binding on the Debtors, Post-Effective Date Debtors, or Plan Administrator except for voting purposes.

6. <u>Effective Date</u>. The Effective Date of the Plan shall occur on the date determined by the Debtors when the requisite conditions set forth in the Plan have been satisfied or, if applicable, waived in accordance with the Plan.

7. <u>Plan Sponsor Contribution</u>. Notwithstanding Section 9.5 of the Plan, within seven (7) calendar days after the entry of this Confirmation Order, FRI shall deposit the Plan Sponsor Contribution with Pachulski Stang Ziehl & Jones LLP in its client trust account, in which such funds shall be held pending the occurrence of the Effective Date; *provided, however,* that in the event this Confirmation Order has been

ORDER CONFIRMING THIRD MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS – Page 16

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

21-00141-WLH11   Doc 1814   Filed 07/26/22   Entered 07/26/22 10:37:04   Pg 16 of 244

stayed, reversed, or otherwise modified in any material respect that is inconsistent with the Sale Order prior to the Effective Date, the Plan Sponsor Contribution shall be returned to FRI within seven (7) calendar days after the entry of such order staying, reversing, or otherwise modifying the Confirmation Order in any material respect that is inconsistent with the Sale Order; *provided further*, that the Confirmation Order is not intended nor shall be construed to modify or alter the Sale Order in any material respect, nor is intended or shall be construed to preserve any claims, demands, rights, defenses, and Causes of Action that the Debtors and/or the Easterday Family may have against FRI, all of which are expressly waived in the Sale Order and/or the Plan.

8. <u>Modifications or Alterations to Plan</u>. To the extent the Plan has been modified, supplemented, or altered subsequent to solicitation, such modifications, supplements, and alterations constitute clarifications or technical changes, and do not materially adversely affect or change the treatment of any Claims or Interests. Accordingly, pursuant to Bankruptcy Rule 3019, such modifications or alterations, if any, do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

9. <u>Resolution of Claims</u>. As discussed in detail in the Plan, and as otherwise provided herein, in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan.

10. <u>Post-Effective Date Governance</u>. On and after the Effective Date, the Plan Administrator shall be each Post-Effective Date Debtor's sole shareholder, partner,

ORDER CONFIRMING THIRD MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS – Page 17

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

21-00141-WLH11    Doc 1814    Filed 07/26/22    Entered 07/26/22 10:37:04    Pg 17 of 244

member, director, and officer, as applicable, with sole and exclusive governance authority and control over each Post-Effective Date Debtor. For the avoidance of doubt, the Plan Administrator is authorized to make any necessary filings with the Washington Secretary of State to reflect the foregoing changes.

11. <u>Causes of Action</u>. Unless any Causes of Action are expressly waived, relinquished, released, compromised, or settled in the Plan or any final order entered by this court (including, without limitation, this Confirmation Order, a "**<u>Final Order</u>**"), the Debtors, Post-Effective Date Debtors, and the Plan Administrator expressly reserve all such Causes of Action for later adjudication, including any Causes of Action not specifically identified in the Plan, or of which the Debtors may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist. Following the Effective Date, the Post-Effective Date Debtors may assert, compromise, or dispose of the Causes of Action without further notice to Holders of Claims or Interests or authorization of the court, except as otherwise expressly provided herein or in the Plan.

12. <u>Sources of Consideration for Plan Distributions</u>. The Debtors shall fund distributions under the Plan with Cash or such other assets as may be held or asserted to be held by the Debtors and the proceeds thereof, including, without limitation, each Debtors' Cash on hand and proceeds from the sale or other disposition of the remaining property of the Debtors (if any).

13. <u>Effectuating Documents; Further Transactions</u>. On and after the Effective Date, the Plan Administrator is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate,

ORDER CONFIRMING THIRD
MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION
OF EASTERDAY RANCHES, INC. AND
EASTERDAY FARMS – Page 18

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Post-Effective Date Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan and the Plan Administrator Agreement.

14. <u>Section 1146 Exemption</u>. Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan may not be taxed under any law imposing a stamp tax or similar tax.

15. <u>Rejection of Executory Contracts and Unexpired Leases</u>. On the Effective Date, except for any executory contracts or unexpired leases of the Debtors (i) that previously were assumed or rejected by an order of the court, pursuant to section 365 of the Bankruptcy Code; (ii) as to which a motion for approval of the assumption or rejection of such contract or lease has been filed and served prior to the date hereof; or (iii) that constitute contracts of insurance in favor of, or that benefit, the Debtors or the Estates, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Dates that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date. This Confirmation Order shall constitute an order of the court approving such rejection, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. For the avoidance of doubt, any insurance policy acquired for the benefit of the Debtors (or any representatives thereof or successors thereto) before or after the Petition Dates shall remain in full force and effect after the Effective Date according to its terms.

16. <u>Claims Based on Rejection of Executory Contracts or Unexpired Leases</u>. Proofs of Claim with respect to Claims arising from the rejection of executory contracts

ORDER CONFIRMING THIRD MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS – Page 19

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

or unexpired leases effectuated pursuant to the Plan and Confirmation Order, if any, must be filed with the court and served on the Plan Administrator within thirty (30) calendar days after the earlier of (a) the Effective Date or (b) service of a notice that the executory contract or unexpired lease has been rejected.

17. <u>Reservation of Rights</u>. Nothing contained in the Plan shall constitute an admission by the Debtors that any executory contract or unexpired lease is in fact an executory contract or unexpired lease or that the Post-Effective Date Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Plan Administrator shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

18. <u>Distributions Under the Plan</u>. On and after the Effective Date, the Distributions on account of Allowed Claims pursuant to Article VII of the Plan are authorized to occur and, without limitation on the other provisions of the Plan and this Confirmation Order concerning the powers, duties, and authority of the Plan Administrator, the Plan Administrator shall be authorized and directed to effectuate such Distributions.

19. <u>Allowed Farms GUC Claims and Related Plan Distributions</u>. In accordance with Section 3.4 of the Plan, the Class 3 Claims set forth on the Farms GUC Claims Schedule as **<u>Exhibit J</u>** to the Plan are hereby deemed Allowed in the amounts set forth in the Farms GUC Claims Schedule for all purposes of the Plan, including for purposes of receiving Distributions under the Plan; *provided that*, for the avoidance of doubt, any Class 3 Claim that is not included on the Farms GUC Claims Schedule but is otherwise Allowed shall be entitled to the full treatment afforded to Class 3 Claims under the Plan. Notwithstanding anything to the contrary contained in this

ORDER CONFIRMING THIRD MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS – Page 20

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

21-00141-WLH11    Doc 1814    Filed 07/26/22    Entered 07/26/22 10:37:04    Pg 20 of 244

Confirmation Order or the Plan, the Post-Effective Date Debtors shall complete distributions to the Holders of Allowed Class 3 Claims set forth on the Farms GUC Claims Schedule within seven (7) calendar days after the Effective Date.

20. <u>Procedures for Resolving Contingent, Unliquidated, and Disputed Claims</u>. The procedures and authority to file objections, settle, compromise, withdraw, or litigate to judgment Claims, adjudicate or resolve Tax issues or liabilities, and estimate, adjudicate, and resolve any contingent or unliquidated Disputed Claim, contained in Article VIII of the Plan shall be, and hereby are, approved in their entirety.

21. <u>Releases by the Debtors</u>. The releases contained in Section 10.1 of the Plan are approved in all respects and incorporated herein by reference.

22. <u>Releases by Holders of Claims</u>. The third party releases contained in Section 10.2 of the Plan are approved in all respects and incorporated herein by reference.

23. <u>Exculpation</u>. The exculpation provisions contained in Section 10.3 of the Plan are approved in all respects and incorporated herein by reference.

24. <u>Injunction</u>. The injunctions contained in Section 10.4 of the Plan are approved in all respects and incorporated herein by reference.

25. <u>Release of Liens</u>. Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised.

26. <u>Statements Concerning Paladin Management Group</u>. Upon this Confirmation Order becoming a Final Order, (i) the pleadings filed by the Easterday

ORDER CONFIRMING THIRD MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS – Page 21

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

21-00141-WLH11    Doc 1814    Filed 07/26/22    Entered 07/26/22 10:37:04    Pg 21 of 244

Family and Lindy Widner in the Governance Adversary Proceeding and (ii) the statements of Karen Easterday in her *Statement Conference Report* [Docket Nos. 1472 and 1473] and objection to the Disclosure Statement [Docket No. 1470] are hereby deemed withdrawn with prejudice without any further action of any party.

27. <u>Vesting of Property</u>. Upon the Effective Date, pursuant to Section 5.8.2 of the Plan and sections 1141(b) and (c) of the Bankruptcy Code, except as provided elsewhere in the Plan, the assets of the Estates shall vest in the Post-Effective Date Debtors, free and clear of all Claims, Liens, or interests.

28. <u>Big Bend Electric Cooperative, Inc.'s Reservation of Rights</u>. Notwithstanding anything to the contrary stated in the Plan or this Confirmation Order, including, but not limited to, Sections 5.8 and 10.2 of the Plan, confirmation of the Plan (i) shall not eliminate or otherwise disturb any legal or equitable rights of setoff or recoupment held by Big Bend Electric Cooperative, Inc. ("<u>BBEC</u>") under applicable law or governing documents, including, but not limited to, applicable BBEC corporate governance documents, and (ii) shall not alter or modify any of the rights, defenses, and remedies of BBEC, or any of the terms and conditions of any of BBEC's corporate governance documents, including, without limitation, any terms and conditions related to possible retirement of capital credits, patronage equity, or other interests or amounts that may be held by or be payable to the Debtors, and which may vest with the Post-Effective Date Debtors.

29. <u>Resolution of Rabo AgriFinance LLC's Objection</u>. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, Rabo AgriFinance LLC ("<u>Rabo</u>") is not a Releasing Party under the Plan and is deemed to have opted out of the Third Party Releases. As a result, Rabo and the Easterday Family Released Parties reserve, with respect to each other, all rights, claims, actions, and defenses thereto, in

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

law, equity, contract, tort, or otherwise (including under Washington State partnership law, bankruptcy law, and the Plan, including, but not limited to, Sections 10.1 and 10.4 of the Plan) and nothing contained in the Plan or this Confirmation Order shall alter, modify, prejudice, or otherwise limit such rights, claims, actions, and defenses thereto.

30. <u>Administrative Claims Bar Date</u>. Unless previously filed or as otherwise governed by a bar date order or in another order of the court, requests for payment of Administrative Claims arising on or after April 1, 2022, must be filed with the court and served on the Plan Administrator by the Administrative Claims Bar Date, which shall be thirty (30) calendar days after the Effective Date. Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims and that do not file and serve such a request by the Administrative Claims Bar Date shall be forever barred from asserting such Administrative Claims against the Debtors, the Estates, the Post-Effective Date Debtors, or their respective property.

31. <u>Professional Fee Claims</u>. All final requests for payment of Professional Fee Claims to the extent required pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b), or 1103 must be made by application Filed with the court and served on counsel to the Plan Administrator and counsel to the U.S. Trustee no later than thirty (30) calendar days after the Effective Date, unless otherwise ordered by the court.

32. <u>Cancellation of Notes, Instruments, Certificates, and Other Documents</u>. On the Effective Date, except as otherwise provided herein or in the Plan, all notes, instruments, certificates, and other instruments or documents, directly or indirectly, evidencing any Claim or Interest shall be deemed cancelled and the obligations of the Debtors or the Post-Effective Date Debtors shall be limited to those distributions proposed under the Plan, if any, with respect to such Claim or Interest. Notwithstanding the foregoing, and for the avoidance of doubt, (i) nothing in the Plan or this

ORDER CONFIRMING THIRD
MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION
OF EASTERDAY RANCHES, INC. AND
EASTERDAY FARMS – Page 23

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Confirmation Order shall cancel or otherwise modify Rabo's notes, instruments, certificates, or any other instruments or documents, evidencing Rabo's claims against non-Debtors (collectively, the "Rabo Loan Documents") and (ii) Rabo retains its rights (if any) to pursue such non-Debtors (and their separate assets) under the Rabo Loan Documents or under any applicable law.

33.     Continued Existence.  Pursuant to the Plan, on and after the Effective Date, the Debtors shall continue in existence as the Post-Effective Date Debtors, subject only to those restrictions expressly imposed by the Plan or this Confirmation Order as well as the documents and instruments executed and delivered in connection with the Plan, including the Plan Documents.

34.     Retention of Jurisdiction.  Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the court shall retain jurisdiction over these Chapter 11 Cases and any of the proceedings related to these Chapter 11 Cases pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.

35.     Statutory Committees and Cessation of Fee and Expense Payment.  On the Effective Date, each of the Committees shall be dissolved.  As of the Effective Date, neither the Debtors nor the Post-Effective Date Debtors shall be responsible for paying any fees or expenses incurred after the Effective Date by the members of or advisors to the Committees.

36.     Successors and Assigns.  The rights, duties, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

ORDER CONFIRMING THIRD MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS – Page 24

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

37.  <u>Binding Effect of the Plan</u>.  Pursuant to Section 12.8 of the Plan, and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind the Debtors, the Post-Effective Date Debtors, the Plan Administrator, any Person acquiring property under the Plan, and any Holder of a Claim or Interest, whether or not such Holder has filed a Proof of Claim or Interest in these Chapter 11 Cases, whether or not the Claim of such Holder is impaired under the Plan, and whether or not such Holder has accepted or rejected the Plan.  The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument related to the Plan or related to any transaction contemplated under the Plan is to be recorded with respect to any taxes of the kind specified in section 1146(a) of the Bankruptcy Code.  All settlements, compromises, releases, waivers, exonerations, and injunctions set forth in the Plan shall be, and hereby are, effective and binding on all Persons who may have had standing to assert any settled, released, exculpated, or enjoined causes of action, and no other person or entity shall possess such standing to assert such causes of action after the Effective Date; *provided*, *however*, that to the extent the Debtors, Post-Effective Date Debtors, Plan Administrator, the Easterday Family, or any other party with standing to claim a tax refund relating to the Sale Transaction approved by the Sale Order asserts such claim, FRI's rights with respect to any monetary recoveries on account of such claim are fully preserved.

38.  <u>Binding Effect of Prior Orders and Agreements</u>.  Pursuant to section 1141 of the Bankruptcy Code, subject to the terms of the Plan and this Confirmation Order, all prior orders entered in these Chapter 11 Case, all documents and agreements executed by the Debtors as authorized and directed thereunder, and all motions or requests for relief by the Debtors pending before the court as of the Effective Date shall

ORDER CONFIRMING THIRD
MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION
OF EASTERDAY RANCHES, INC. AND
EASTERDAY FARMS – Page 25

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

21-00141-WLH11    Doc 1814    Filed 07/26/22    Entered 07/26/22 10:37:04    Pg 25 of 244

be binding upon and shall inure to the benefit of the Post-Effective Date Debtors and the Plan Administrator.

39. <u>Automatic Stay</u>. Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this court and extant on the date of entry of this Confirmation Order (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the closing of the Chapter 11 Cases. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

40. <u>Governmental Approvals Not Required</u>. Except as otherwise specifically provided herein, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan.

41. <u>Effectiveness of All Actions</u>. All actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of the court, or further action by the respective officers, directors, members, managers, or employees of the Debtors or the Post-Effective Date Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, members, managers, or employees.

42. <u>Plan and Confirmation Order Mutually Dependent</u>. This Confirmation Order shall constitute a judicial determination and shall provide that each term and

ORDER CONFIRMING THIRD
MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION
OF EASTERDAY RANCHES, INC. AND
EASTERDAY FARMS – Page 26

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the requisite consent of the Settling Parties; and (c) non-severable and mutually dependent.

43. <u>No Stay</u>. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Post-Effective Date Debtors, the Plan Administrator, and any and all Holders of Claims or Interests, all entities that are parties to or subject to the settlements, compromises, releases, and injunctions described in the Plan or in this Confirmation Order, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

44. <u>Recording</u>. The Debtors, Post-Effective Date Debtors, and Plan Administrator are hereby authorized to deliver a notice or short form of this Confirmation Order, with the Plan attached, to any state or local recording officer, and such officer must accept for filing such documents or instruments. Such notice (a) shall have the effect of an order of this court and (b) shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers. The court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

45. <u>Conflicts Between this Confirmation Order and the Plan</u>. The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided*, *however*, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and

ORDER CONFIRMING THIRD
MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION
OF EASTERDAY RANCHES, INC. AND
EASTERDAY FARMS – Page 27

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

shall control and take precedence; *provided further*, *however*, that in the event of any inconsistency between Section 5.5 of the Plan and this Confirmation Order, then Section 5.5 of the Plan shall control.

46.     <u>Plan and Confirmation Order Govern</u>.  Without intending to modify any prior order of this court (or any agreement, instrument, or document addressed by any prior order), in the event of an inconsistency between the Plan, on the one hand, and any other agreement, instrument, or document intended to implement the provisions of the Plan, on the other, the provisions of the Plan shall govern (unless otherwise expressly provided for in such agreement, instrument, or document).

47.     <u>Severability</u>.  In the event that the court determines, prior to the Effective Date, that any provision of the Plan is invalid, void, or unenforceable, the court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

48.     <u>Notice of Confirmation of the Plan and Effective Date</u>.  Pursuant to Bankruptcy Rules 2002 and 3020(c)(2), the Debtors shall serve a notice of the entry of this Confirmation Order, substantially in the form of **<u>Exhibit B</u>** attached hereto (the "**<u>Confirmation Notice</u>**"), on all creditors, equity holders, and parties having requested

ORDER CONFIRMING THIRD MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS – Page 28

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

21-00141-WLH11    Doc 1814    Filed 07/26/22    Entered 07/26/22 10:37:04    Pg 28 of 244

notice in these Chapter 11 Cases, within seven (7) calendar days after the entry of this Confirmation Order. As soon as practicable after the occurrence of the Effective Date, the Plan Administrator shall serve the notice of Effective Date, substantially in the form attached hereto as **Exhibit C** (the "**Notice of Effective Date**"), on all parties served with the Confirmation Notice. Notwithstanding the above, neither the Confirmation Notice nor the Notice of Effective Date shall be required to be mailed or made upon any party to whom the Debtors previously mailed a notice concerning these Chapter 11 Cases, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Person, or are otherwise aware, of that Person's new address. The Confirmation Notice and Notice of Effective Date are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

49. <u>Final Decree</u>. Once the Estates have been fully administered as referred to in Bankruptcy Rule 3022, the Plan Administrator shall file a motion with the court to obtain a final decree to close the Chapter 11 Cases.

50. <u>Final Order</u>. The stay of this Confirmation Order imposed by Bankruptcy Rule 3020(e) is hereby waived in accordance with Bankruptcy Rule 3020(e). This Confirmation Order is a final order, and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

<p align="center">///END OF ORDER///</p>

ORDER CONFIRMING THIRD
MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION
OF EASTERDAY RANCHES, INC. AND
EASTERDAY FARMS – Page 29

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

Submitted by:

*/s/ Thomas A. Buford, III*
THOMAS A. BUFORD, III (WSBA 52969)
BUSH KORNFELD LLP

RICHARD M. PACHULSKI (admitted *pro hac vice*)
JEFFREY W. DULBERG (admitted *pro hac vice*)
JASON H. ROSELL (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP

*Attorneys for Debtors and Debtors in Possession*

ORDER CONFIRMING THIRD
MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION
OF EASTERDAY RANCHES, INC. AND
EASTERDAY FARMS – Page 30

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# EXHIBIT A

**Confirmed Plan**

1  ARMAND J. KORNFELD (WSBA #17214)
   THOMAS A. BUFORD (WSBA #52969)
2  RICHARD B. KEETON (WSBA #51537)
   BUSH KORNFELD LLP
3  601 Union Street, Suite 5000
   Seattle, WA 98101
4  Tel.: (206) 292-2110
   Facsimile: (206) 292-2104
5  Emails: jkornfeld@bskd.com,
   tbuford@bskd.com, and rkeeton@bskd.com
6
   RICHARD M. PACHULSKI (CA Bar #90073)*
7  JEFFREY W. DULBERG (CA Bar #181200)*
   MAXIM B. LITVAK (CA Bar #215852)*
8  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
9  Los Angeles, CA 90067-4003
   Tel: (310) 277-6910
10 Facsimile: (310) 201-0760
   Emails: rpachulski@pszjlaw.com,
11 jdulberg@pszjlaw.com, and
   mlitvak@pszjlaw.com
12
   *Admitted *Pro Hac Vice*
13
   *Attorneys for Debtors and Debtors in Possession*
14

15              UNITED STATES BANKRUPTCY COURT
                EASTERN DISTRICT OF WASHINGTON

16 In re                              Chapter 11

17 EASTERDAY RANCHES, INC., *et al.*   Lead Case No. 21-00141-11
                                       Jointly Administered
18                         Debtors.[1]
                                       **THIRD MODIFIED THIRD
19                                     AMENDED JOINT CHAPTER 11
                                       PLAN OF LIQUIDATION OF
20                                     EASTERDAY RANCHES, INC. AND
                                       EASTERDAY FARMS**
21

22

23

24

25  ─────────────────────

26 [1]  The Debtors along with their case numbers are as follows:  Easterday Ranches, Inc.
        (21-00141) and Easterday Farms, a Washington general partnership (21-00176).
27

28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ..............2

ARTICLE II CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS .....21

    2.1    Summary and Classification of Claims.................................................21

    2.2    Subordinated Claims Generally. ........................................................22

    2.3    Intercompany Claims. ........................................................................23

    2.4    Classification & Voting Controversies. ..............................................23

ARTICLE III TREATMENT OF CLAIMS AND EQUITY INTERESTS ...........23

    3.1    Unclassified Claims. ..........................................................................23

            3.1.1  Administrative Claims. ...........................................................23

            3.1.2  Professional Fee Claims. ........................................................23

            3.1.3  Priority Tax Claims.................................................................23

    3.2    Class 1: Secured Claims.....................................................................24

    3.3    Class 2: Priority Claims. ....................................................................25

    3.4    Class 3: Farms General Unsecured Claims.........................................25

    3.5    Class 4: Ranches General Unsecured Claims. ....................................26

    3.6    Class 5: Tyson Claims........................................................................26

    3.7    Class 6: Segale Claims Against Ranches............................................27

    3.8    Class 7: Subordinated Claims. ...........................................................27

    3.9    Class 8: Intercompany Claims. ..........................................................28

    3.10  Class 9: Interests. ..............................................................................28

    3.11  Special Provisions Regarding Insured Claims. ...................................28

    3.12  Comprehensive Settlement of Claims and Controversies....................29

ARTICLE IV ACCEPTANCE OR REJECTION OF THE PLAN .......................29

4.1    Impaired Class of Claims Entitled to Vote. .................................29

4.2    Acceptance by an Impaired Class. ..............................................30

4.3    Presumed Acceptances by Unimpaired Classes. ................................30

4.4    Impaired Classes Deemed to Reject Plan. .........................................30

4.5    Modifications of Votes.............................................................30

4.6    Confirmation Pursuant to Bankruptcy Code Section 1129(b). ...........30

4.7    Elimination of Vacant Classes. ...................................................30

4.8    Joint Plan. ...............................................................................30

ARTICLE V MEANS FOR IMPLEMENTATION OF THE PLAN ...................31

5.1    Implementation of the Plan. .......................................................31

5.2    Implementation of the Global Settlement. ...................................31

     5.2.1  The Karen Easterday Settlement Amount. ...............................31

     5.2.2  The Karen Easterday Secured Note. ..........................................31

     5.2.3  The Idaho Contribution..............................................................32

     5.2.4  The Basin City Sale. ................................................................32

     5.2.5  The Easterday Dairy, LLC Note and BC 140 LLC Secured Guaranty........................................................................32

     5.2.6  The Easterday Family Contribution Instruments. ....................33

     5.2.7  The Transfer of Steer Head Brand.............................................33

     5.2.8  The Assignment of the Canyon Farm Avoidance Actions.......33

     5.2.9  The 3E and Produce Contribution. .........................................33

     5.2.10 The Easterday Family Adversary Proceedings.......................33

     5.2.11 The Restitution Claims. .........................................................34

THIRD MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION – Page ii

5.2.12 The Replacement Director Fees....................................................34

5.2.13 Easterday Family Releases. ........................................................34

5.2.14 The Criminal Proceedings. .........................................................34

5.2.15 The Consent of the Department of Justice.................................34

5.3     Reserved. .............................................................................................35

5.4     Easterday Family Tax Payments...........................................................35

5.5     Sale Transaction. ..................................................................................35

5.6     Net Sale Proceeds.................................................................................36

5.7     Streamlining of the Debtors' Corporate Affairs. .................................36

5.7.1   Debtors' Existing Directors, Officers, and Managers. .............36

5.7.2   Dissolution of the Debtors. ........................................................36

5.7.3   Corporate Documents and Corporate Authority........................36

5.8     Post-Effective Date Debtors/Plan Administrator. ...................36

5.8.1   Appointment. .............................................................................36

5.8.2   Vesting of Post-Effective Date Debtors' Assets. .....................37

5.8.3   Authority.....................................................................................37

5.8.4   Limitation of Liability. ..............................................................39

5.8.5   Indemnification. .........................................................................39

5.8.6   Insurance. ...................................................................................40

5.8.7   Tax Reporting. ...........................................................................40

5.8.8   Cash Investments. ......................................................................40

5.8.9   Pursuit and Resolution of Post-Effective Date Debtors'
        Causes of Action.........................................................................41

5.8.10  No Successor Liability................................................................41

THIRD MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION – Page iii

5.9     Preservation of Privileges and Defenses. ..............................................41

5.10    Preservation of Rights of Action. ........................................................42

        5.10.1 Maintenance of Avoidance Actions and Causes of Action. ......42

        5.10.2 Preservation of All Post-Effective Date Debtors' Causes of
               Action Not Expressly Settled or Released. ...............................42

        5.10.3 Preservation of Causes of Action Against Rabo and Big
               Bend.  ...............................................................................................43

5.11    Cancellation of Instruments. ................................................................43

5.12    Insurance Policies. ................................................................................43

        5.12.1 Insurance Policies Remain In Force. ........................................43

        5.12.2 Insurance Policies; Employment Practice Liability Policies;
               Similar Policies. ..........................................................................43

5.13    Settlement of Avoidance Actions Against Tyson. ..............................44

ARTICLE VI EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........44

6.1     Rejection of Executory Contracts and Unexpired Leases. .................44

6.2     Rejection Claims Bar Date. ..................................................................44

6.3     Previously Assumed and Assigned Executory Contracts. ..................45

ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS .........................45

7.1     Timing of Distributions for Allowed Claims. .....................................45

7.2     Calculating Distributions and Related Matters. ..................................45

7.3     Interest and Other Amounts Regarding Claims. ..................................45

7.4     Distributions by Plan Administrator as Disbursing Agent. ................46

7.5     Means of Cash Payment. ......................................................................46

7.6     Form of Currency for Distributions. ....................................................46

7.7     Fractional Distributions. .......................................................................46

| | | | |
|---|---|---|---|
| | 7.8 | De Minimis Distributions. | 46 |
| | 7.9 | No Distributions With Respect to Certain Claims. | 46 |
| | 7.10 | Distributions and Transfers Upon Resolution of Contingent Claims, Disputed Claims, or Unliquidated Claims. | 47 |
| | 7.11 | Delivery of Distributions. | 48 |
| | 7.12 | Application of Distribution Record Date & Other Transfer Restrictions. | 48 |
| | 7.13 | Withholding, Payment, and Reporting Requirements Regarding Distributions. | 48 |
| | 7.14 | Defenses and Setoffs. | 49 |
| | 7.15 | Allocation of Distributions. | 49 |
| | 7.16 | Joint Distributions. | 49 |
| | 7.17 | Forfeiture of Distributions. | 49 |

ARTICLE VIII PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS ...... 50

| | | | |
|---|---|---|---|
| | 8.1 | Objections to and Resolution of Disputed Claims, Including Any Claims of Excluded Parties. | 50 |
| | 8.2 | Claim Objections. | 50 |
| | 8.3 | Estimation of Certain Claims. | 50 |
| | 8.4 | Distributions Following Allowance. | 51 |
| | 8.5 | Disposition of Assets in Reserves After Disallowance. | 51 |

ARTICLE IX CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ...... 51

| | | | |
|---|---|---|---|
| | 9.1 | Conditions to the Effective Date. | 51 |
| | 9.2 | Waiver of Conditions to the Effective Date. | 52 |
| | 9.3 | Effect of Non-Occurrence of Conditions to the Effective Date. | 52 |
| | 9.4 | Notice of the Effective Date. | 53 |

9.5 Payment of Plan Sponsor Contribution.................................53

ARTICLE X RELEASES, INJUNCTION, AND RELATED PROVISIONS .......53

 10.1 Debtors' Releases.................................................................53

 10.2 Third Party Releases. ..........................................................54

 10.3 Exculpation and Limitation of Liability. .............................55

 10.4 Injunction. ...........................................................................56

ARTICLE XI RETENTION OF JURISDICTION AND POWER......................58

 11.1 Scope of Retained Jurisdiction and Power..........................58

 11.2 Non-Exercise of Jurisdiction...............................................60

ARTICLE XII MISCELLANEOUS PROVISIONS ........................................60

 12.1 Administrative Claims. ........................................................60

 12.2 Professional Fee Claims.......................................................60

 12.3 Payment of Statutory Fees. .................................................61

 12.4 Dissolution of the Committees.............................................61

 12.5 Modifications and Amendments. .........................................61

 12.6 Severability of Plan Provisions. ..........................................62

 12.7 Compromises and Settlements. ...........................................62

 12.8 Binding Effect of Plan. ........................................................63

 12.9 Term of Injunctions or Stays...............................................63

 12.10 Revocation, Withdrawal, or Non-Consummation. ..............63

 12.11 Exemption from Transfer Taxes. .........................................63

 12.12 Computation of Time. ..........................................................63

 12.13 Transactions on Business Days.............................................63

12.14 Good Faith.................................................................64

12.15 Governing Law...........................................................64

12.16 Notices......................................................................64

12.17 Final Decree. ..............................................................64

12.18 Additional Documents. ................................................64

12.19 Conflicts with the Plan. ...............................................65

ARTICLE XIII REQUEST FOR CONFIRMATION AND
RECOMMENDATION ................................................................65

13.1   Request for Confirmation..............................................65

13.2   Recommendation........................................................65

THIRD MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION – Page vii

**TABLE OF EXHIBITS**

Exhibit A          Additional Easterday Family Releasing Parties

Exhibit B-1        3E Partnership Interest Liquidation Agreement

Exhibit B-2        Produce Stock Redemption Agreement

Exhibit C          BC 140 LLC Secured Guaranty

Exhibit D          Easterday Dairy LLC Note

Exhibit E          Karen Easterday Secured Note

Exhibit F          Administrative Agent Agreement

Exhibit G          Plan Administrator Agreement

Exhibit H          Easterday Family Released Parties

Exhibit I          Form of Mutual Release Agreement

Exhibit J          Farms GUC Claims Schedule

THIRD MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION – Page viii

# INTRODUCTION[1]

The Debtors hereby propose, with the support of the Committees, Tyson, and Segale (each as defined below), the following joint plan of liquidation (this "Plan"), which provides for the resolution of the outstanding Claims and Interests asserted against the Debtors. Reference is made to the Disclosure Statement for (i) a discussion of the Debtors' history, businesses, properties, results of operations, and financial projections; (ii) a summary and analysis of this Plan; and (iii) certain related matters, including risk factors relating to the consummation of this Plan and Distributions to be made under this Plan. The Debtors are the proponents of the Plan within the meaning of Bankruptcy Code section 1129.

All Holders of Claims who are entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127, Bankruptcy Rule 3019, and Sections 11.5 and 11.13 of the Plan, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith, have been approved for use in soliciting acceptances and rejections of this Plan. Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed to Holders of Claims to the extent required by Bankruptcy Code section 1125.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS AND SCHEDULES THERETO) AND THE PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

---

[1] A capitalized term used in this Introduction shall have the meanings ascribed to those terms in Article I below.

# ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

A capitalized term used in this Plan shall have the meanings set forth in this Article I. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules.

**1.1** **3E:** 3E Properties, a Washington general partnership.

**1.2** **3E-Produce Purchase Price:** $2,274,210.

**1.3** **3E Partnership Liquidation Agreement:** The Partnership Liquidation Agreement by and between 3E, Cody Easterday, and Debby Easterday, in substantially the form attached hereto as **Exhibit B-1**.

**1.4** **3E-Produce Agreements:** The 3E Partnership Liquidation Agreement and the Produce Stock Redemption Agreement.

**1.5** **3E Properties Adversary Proceeding:** *Easterday Farms v. 3E Properties, et al.*, Adv. Pro. No. 21-80057-WLH (Bankr. E.D. Wash.).

**1.6** **Additional Easterday Family Releasing Parties:** The parties identified on **Exhibit A** hereto.

**1.7** **Administrative Agent:** GlassRatner Advisory & Capital Group, LLC, dba B. Riley Advisory Services.

**1.8** **Administrative Agent Agreement:** The *Administrative Agent Agre*ement by and between Tyson and Segale, on the one hand, and the Administrative Agent, on the other hand, in substantially the form attached hereto as **Exhibit F**.

**1.9** **Administrative Claim:** A Claim (other than a Professional Fee Claim, but, for the avoidance of doubt, including Ordinary Course Professional Fee Claims) arising under Bankruptcy Code sections 503(b), 507(a)(2), 507(b), or 1114(e)(2), to the extent not previously paid, otherwise satisfied, or withdrawn, including (a) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code and (b) all Section 503(b)(9) Claims.

**1.10** **Administrative Claims Bar Date:** The last date by which any Person must File a request for payment of an Administrative Claim arising on or after April 1, 2022, which date shall be the first Business Day that is thirty (30) calendar days after the Effective Date, or, alternatively, such earlier date as is set by the Bankruptcy Court. For

21-00141-WLH11    Doc 1814    Filed 07/26/22    Entered 07/26/22 10:37:04    Pg 42 of 244

the avoidance of doubt, postpetition statutory tax claims shall not be subject to any Administrative Claims Bar Date.

**1.11** <u>**Allocation Dispute Adversary Proceeding**</u>: *Easterday Ranches, Inc. v. Estate of Gale A. Easterday, et al.*, Adv. Pro. No. 21-80050-WLH (Bankr. E.D. Wash).

**1.12** <u>**Allowed**</u>, <u>**Allowed Claim**</u>, or <u>**Allowed Administrative Claim**</u>:

        (a)     with respect to a Claim arising prior to the Petition Date (including a Section 503(b)(9) Claim):

                (i)     either (A) a proof of claim was timely Filed by the applicable Claims Bar Date, or (B) a proof of claim is deemed timely Filed either as a result of such Claim being Scheduled or by a Final Order; and

                (ii)     either (A) the Claim is not a Contingent Claim, a Disputed Claim, an Unliquidated Claim, or a Disallowed Claim; or (B) the Claim is expressly allowed by a Final Order or under the Plan;

        (b)     with respect to a Claim arising on or after the Petition Date (excluding a Section 503(b)(9) Claim), a Claim that has been allowed by a Final Order or under the Plan.

Unless otherwise specified in the Plan or by a Final Order, an "Allowed Administrative Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest, penalties, fees, or late charges on such Administrative Claim or Claim from and after the Petition Date. Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Cases is not an Allowed Claim. For the avoidance of doubt, any and all Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.

**1.13** <u>**Available Cash**</u>: All Cash held by the Debtors on the Effective Date or by the Post-Effective Date Debtors, on or after the Effective Date; in each case, after payment, allocation, or reserve in accordance with the Plan for: (a) unpaid or unutilized amounts for Post-Effective Date Debtors' Expenses; and (b) any post-Confirmation reserve requirements of the Debtors or the Post-Effective Date Debtors in connection with the Plan, any agreements, or any Bankruptcy Court orders. For the avoidance of doubt, except as specifically required by the Plan, any Cash that has been reserved on or before the Effective Date in respect of any party under the Cash Collateral Orders shall no longer be treated as reserved on such basis on and after the Effective Date.

**1.14** **Avoidance Actions:** Any and all causes of action, claims, remedies, or rights, other than the North Lot Actions and the Canyon Farms Avoidance Actions, that may be brought by or on behalf of the Debtors or the Estates under Bankruptcy Code sections 542, 544, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes, or pursuant to any theory or cause of action under common law, regardless whether such action has been commenced prior to the Effective Date.

**1.15** **Ballot:** The ballot form authorized by the Bankruptcy Court pursuant to the Solicitation Procedures Order to indicate acceptance or rejection of the Plan and to opt out of the release provided by Section 10.2 herein.

**1.16** **Bankruptcy Code:** Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as the same may be amended from time to time to the extent applicable to the Chapter 11 Cases.

**1.17** **Bankruptcy Court:** The United States Bankruptcy Court for the Eastern District of Washington, or in the event such court ceases to exercise jurisdiction over any Chapter 11 Case, such other court or adjunct thereof that exercises jurisdiction over such Chapter 11 Case in lieu of the United States Bankruptcy Court for the Eastern District of Washington.

**1.18** **Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure promulgated by the Supreme Court of the United States under 28 U.S.C. § 2075, as the same may be amended from time to time to the extent applicable to the Chapter 11 Cases.

**1.19** **Basin City Property:** Certain real estate and related property in the Basin City area of Franklin County, Washington titled in the name of Cody A. Easterday and Debby Easterday described as APN/Parcel ID(s): 121310054, 121320044, and 125230080.

**1.20** **Basin City Property Purchase Price:** $4,200,000.00 *plus* assumption of the liability to Equitable Life, which liability is secured by certain of the Basin City Property.

**1.21** **BC 140 LLC:** BC 140, LLC, a Washington limited liability company, wholly owned by Karen Easterday or any entity controlled by her and formed for the purpose of fulfilling the obligations of BC 140 LLC under this Plan and associated documents.

**1.22** **BC 140 LLC Secured Guaranty:** The *Secured Guaranty* by and between BC 140 LLC and the Administrative Agent in substantially the form attached hereto as **Exhibit C**.

**1.23** **Business Day:** Any day other than a Saturday, a Sunday, a "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or any other day on which commercial banks in the State of Washington are required or authorized to close by law or executive order.

**1.24** **Canyon Farm Avoidance Actions:** Any Causes of Action of the Debtors or their Estates against Canyon Farm, LLC and any of its affiliates, parents, subsidiaries, successors, and assigns, including, but not limited to, Canyon Farm II, LLC and Fall Line Capital, LLC.

**1.25** **Cash:** Cash and cash equivalents, including bank deposits, wire transfers, checks representing good funds, and legal tender of the United States of America or instrumentalities thereof.

**1.26** **Cash Collateral Orders:** Collectively, the Final Cash Collateral Orders and the preceding interim orders entered by the Bankruptcy Court authorizing the applicable Debtors to use Cash and providing adequate protection.

**1.27** **Causes of Action:** Any and all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, variances, trespasses, rights of setoff, third-party claims, subordination claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, action for substantive consolidation, counterclaims, and cross claims, damages, or judgments whatsoever (other than the North Lot Actions), whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, foreseen or unforeseen, asserted or unasserted, existing or hereafter arising, in law, at equity, by statute, whether for tort, fraud, contract, or otherwise. For the avoidance of doubt, the term "Causes of Action" includes Avoidance Actions.

**1.28** **CFTC:** Commodity Futures Trading Commission and any affiliates, successors, and assigns.

**1.29** **CFTC Claim:** The Allowed Claim in the amount of $233,008,042 in accordance with the terms of the consent order agreed to by Ranches and the CFTC [Docket No. 1203] and approved by the Bankruptcy Court [Docket No. 1269]. The CFTC Claim is a Subordinated Claim.

**1.30** **Chapter 11 Cases:** The voluntary chapter 11 bankruptcy cases commenced by the Debtors consisting of Easterday Ranches, Inc., Case No. 21-00141 and Easterday Farms, a Washington general partnership, Case No. 21-00176, which are being jointly administered under the case caption *In re Easterday Ranches, Inc., et al.*, Case No. 21-00141-11 (Bankr. E. D. Wash.).

**1.31** **Claim:** Any "claim" as defined in Bankruptcy Code section 101(5), against any of the Debtors or against any property of the Debtors.

**1.32** **Claim Objection Deadline:** Subject to extension as set forth in Section 8.2 of the Plan, the date that is the first Business Day that is at least **180 calendar days after the Effective Date**. For the avoidance of doubt, the Claim Objection Deadline may be extended one or more times by the Bankruptcy Court.

**1.33** **Claims Bar Date:** As applicable, the Administrative Claims Bar Date, the General Claims Bar Date, the Governmental Claims Bar Date, any Supplemental Bar Date, or the Rejection Claims Bar Date.

**1.34** **Class:** A class of Claims or Interests designated pursuant to the Plan, or any subclass thereof.

**1.35** **Class 4 Initial Payment:** $1,628,000.00 of the Initial Net Distributable Proceeds.

**1.36** **Class 4 Net Distributable Assets:** The Class 4 Initial Payment plus the Pro Rata share of Allowed Class 4 Claims to the Net Distributable Assets (not including the Initial Net Distributable Proceeds). For the avoidance of doubt, the Class 4 Net Distributable Assets do not include any amounts included in reserves, or amounts released from reserves, in accordance with the definition of Net Distributable Assets.

**1.37** **Class 5 Initial Payment:** $1,650,000.00 of the Initial Net Distributable Proceeds.

**1.38** **Class 5 Net Distributable Assets:** The Class 5 Initial Payment plus the Pro Rata share of Allowed Class 5 Claims to the Net Distributable Assets (not including the Initial Net Distributable Proceeds).

**1.39** **Class 6 Initial Payment:** $922,000.00 of the Initial Net Distributable Proceeds.

**1.40** **Class 6 Net Distributable Assets:** The Class 6 Initial Payment plus the Pro Rata share of Allowed Class 6 Claims to the Net Distributable Assets (not including the Initial Net Distributable Proceeds).

**1.41** **Cody Easterday Preserved Claims:** All Claims of Cody Easterday against Tyson or Segale.

**1.42** **Collateral:** Any Estate Asset that is subject to a Lien to secure the payment or performance of a Claim, which Lien is perfected and not subject to avoidance under the Bankruptcy Code or otherwise invalid or unenforceable under the Bankruptcy Code or

applicable non-bankruptcy law. For the avoidance of doubt, the term Collateral does not include the FRI Assets.

**1.43** <u>**Committees**</u>**:** Collectively, the Farms Committee and the Ranches Committee.

**1.44** <u>**Confirmation**</u>**:** The entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

**1.45** <u>**Confirmation Hearing**</u>**:** The hearing held by the Bankruptcy Court to consider confirmation of this Plan.

**1.46** <u>**Confirmation Order**</u>**:** The order of the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code section 1129.

**1.47** <u>**Contingent Claim**</u>**:** Any Claim that is Scheduled or Filed as contingent.

**1.48** <u>**Cooperation Agreement**</u>**:** The *Stipulation By and Between Debtors and Non-Debtor Sellers Regarding Cooperation with Respect to the Sale of Debtor and Non-Debtor Assets* approved by the Bankruptcy Court by order entered on April 28, 2021 [Docket No. 655].

**1.49** <u>**Corporate Action**</u>**:** Any action, approval, authorization, decision, or other act of any kind that would be necessary on the part of any Person for any corporation, limited liability company, general partnership, or other Person to in turn act.

**1.50** <u>**Dairy**</u>**:** Easterday Dairy, LLC, a Washington limited liability company.

**1.51** <u>**Debtor**</u> or <u>**Debtors**</u>**:** Individually, and collectively, Farms and Ranches.

**1.52** <u>**Debtor Exculpated Parties**</u>**:** The Debtors and their respective Related Parties. For the avoidance of doubt, Debtor Exculpated Parties shall include, the Independent Directors, Pachulski Stang Ziehl & Jones LLP, Paladin Management Group, Peter Richter, and T. Scott Avila.

**1.53** <u>**Debtors' Releases**</u>**:** The releases given on behalf of the Debtors and their Estates to the Released Parties as set forth in Section 10.1(a) herein.

**1.54** <u>**Disallowed Claim**</u>**:** Any Claim that (a) is not Scheduled, or is listed thereon as contingent, unliquidated, disputed, or in an amount equal to zero, and whose Holder failed to timely File a proof of claim by the applicable Claims Bar Date (unless late filing was permitted by a Bankruptcy Court order), but excluding any Claim that is expressly Allowed by a Final Order or under the Plan; or (b) has been disallowed pursuant to an order of the Bankruptcy Court.

**1.55** **Disclosure Statement:** That certain disclosure statement, including all exhibits and schedules thereto or referenced therein, that relates to this Plan and has been prepared and distributed by the Debtors, as plan proponents, as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125, as the same may be may be amended, modified, or supplemented.

**1.56** **Disclosure Statement Order:** The order approving the Disclosure Statement, authorizing the Debtors to solicit acceptances of the Plan and establishing certain related procedures and deadlines.

**1.57** **Disputed Claim:** Any Claim:

(a) that is disputed in whole or in part under the Plan; or

(b) that is asserted by any of the Excluded Parties; or

(c) that

    (i) is not expressly Allowed by a Final Order or under the Plan; and

    (ii) as to which a proof of claim is Filed or is deemed Filed as a result of such Claim being Scheduled; and

    (iii) as to which either:

        (1) an objection or request for estimation or subordination (A) has been timely Filed within the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order under which the applicable period of limitation has expired, and (B) has not been denied by a Final Order or withdrawn; or

        (2) the Claim Objection Deadline has not passed as to such Claim (unless the Plan Administrator has determined that it will not object to such Claim).

**1.58** **Distributable Assets:** Except as otherwise noted below, any and all real or personal property of the Debtors and their Estates of any nature, including, without limitation, any real estate, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, inventory, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Causes of Action, books and records, any other general intangibles of the Debtors as of the Effective Date and the Post-Effective Date Debtors from and after the Effective Date, and any and all proceeds of the foregoing, as the case may be, of any nature

whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent), including, without limitation, property of the Estates within the scope of Bankruptcy Code section 541 (including, for the avoidance of doubt, the Net Sale Proceeds, the Plan Sponsor Contribution, and the Tyson Avoidance Action Settlement). Notwithstanding the foregoing, the term "Distributable Assets" does not include (i) any Cash tendered by the Debtors and held in their counsel's trust account for the purpose of satisfying Professional Fee Claims, (ii) the FRI Assets, (iii) the North Lot Actions, (iv) the Canyon Farms Avoidance Actions, or (v) the Easterday Family Contribution Instruments, which shall be issued directly to the Administrative Agent in accordance with the terms of this Plan.

**1.59** **Distribution:** Any initial or subsequent issuance, payment, or transfer of consideration made under the Plan.

**1.60** **Distribution Date:** Any date on which a Distribution is made.

**1.61** **Distribution Record Date:** The record date for determining entitlement of Holders of Claims to receive Distributions under the Plan, which date shall be the Effective Date.

**1.62** **Distribution Reserve:** One or more reserves in respect of Contingent Claims, Disputed Claims, or Unliquidated Claims established by the Plan Administrator.

**1.63** **DOJ:** The United States Department of Justice.

**1.64** **Easterday Dairy LLC Note:** The *Promissory Note* issued by Easterday Dairy, LLC in favor of the Administrative Agent, substantially in the form attached hereto as **Exhibit D**.

**1.65** **Easterday Family:** Cody A. Easterday, Karen L. Easterday (in her individual capacity and as the personal representative of the Estate of Gale A. Easterday), and Debby Easterday.

**1.66** **Easterday Family Contribution Instruments:** The Karen Easterday Secured Note, the Easterday Dairy LLC Note, the BC 140 LLC Secured Guaranty, and the 3E-Produce Secured Note.

**1.67** **Easterday Family Related Parties:** Any Related Parties of the Easterday Family, including, for the avoidance of doubt, Sussman Shank LLP, Tonkon Torp LLP, Jordan Ramis PC, Northwest CPA Group, PLLC, Widner Consulting, LLC, and Lindy Widner.

**1.68** **Easterday Family Released Parties:** The Easterday Family and the Easterday Family Related Parties, including, but not limited to, those persons and entities

identified on **Exhibit H** that have executed a Mutual Release Agreement on or prior to the Effective Date; *provided, however*, that any person or entity identified in Part One on **Exhibit H** that has not executed a Mutual Release Agreement on or prior to the Effective Date shall not be an Easterday Family Released Party.

**1.69** **Easterday Family Releasing Parties:** The Easterday Family Released Parties.

**1.70** **Easterday Family Tax Payments:** Any tax obligations of the Easterday Family to applicable taxing authorities relating to the Debtors, the business operations of the Debtors, or the sale of the Debtors' real estate.

**1.71** **Effective Date:** The date that is the first Business Day on which each condition set forth in Article IX of the Plan has been satisfied or waived as set forth therein.

**1.72** **Equitable Life:** Equitable Financial Life Insurance Company.

**1.73** **Escrow Account:** The escrow account into which the Net Sale Proceeds are distributed, as defined in the Cooperation Agreement.

**1.74** **Estate Assets:** Collectively, (a) any and all right, title, and interest of the Debtors and the Estates in and to property of whatever type or nature, including their books and records and all Avoidance Actions and Causes of Action, as of the Effective Date, and (b) any assets contributed to or recovered by the Post-Effective Date Debtors on or after the Effective Date. For the avoidance of doubt, the term Estate Assets does not include any of the FRI Assets, the North Lot Actions or the Canyon Farms Avoidance Actions.

**1.75** **Estate Released Parties:** Collectively, (a) the Debtors and their respective Related Parties, including the Independent Directors, Pachulski Stang Ziehl & Jones LLP, Paladin Management Group, Peter Richter, and T. Scott Avila, (b) the Ranches Committee and its Related Parties, (c) the Farms Committee and its Related Parties, (d) Tyson and its Related Parties, and (e) Segale and its Related Parties.

**1.76** **Estates:** The chapter 11 estates of the Debtors created by Bankruptcy Code section 541(a).

**1.77** **Exculpated Parties:** Collectively, (a) the Debtor Exculpated Parties, (b) the Easterday Family and their Related Parties, (c) the Replacement Directors and their Related Parties, (d) the Ranches Committee and its Related Parties, (e) the Farms Committee and its Related Parties, (f) Tyson and its Related Parties, (g) Segale and its Related Parties, and (h) FRI and its Related Parties.

**1.78** **Farms:** Debtor Easterday Farms, a Washington general partnership.

**1.79** **Farms Committee:** The official committee of unsecured creditors, as contemplated under Bankruptcy Code section 1102, which was appointed in the Chapter 11 Case of Farms, as such committee may be reconstituted from time to time.

**1.80** **Farms GUC Claims Schedule:** **Exhibit J** attached hereto setting forth the Allowed amounts of certain Class 3 Claims that shall be Allowed in such amounts for all purposes under the Plan, including for purposes of receiving Distributions under the Plan.

**1.81** **File**, **Filed**, or **Filing:** Duly and properly filed with the Bankruptcy Court and reflected on the docket of the Chapter 11 Cases.

**1.82** **Final Decree:** An order entered pursuant to Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Chapter 11 Cases of one or both of the Debtors.

**1.83** **Final Cash Collateral Orders:** That certain *Final Order Authorizing Debtor Easterday Farms to Use Cash Collateral and Granting Adequate Protection*, entered on March 25, 2021 [Docket No. 471] and *Final Order Authorizing Debtor Easterday Ranches, Inc. to Use Cash Collateral and Granting Adequate Protection*, entered on March 25, 2021 [Docket No. 470].

**1.84** **Final Order:** An order or judgment of the Bankruptcy Court entered on the docket of the Chapter 11 Cases:

> (a)  that has not been reversed, rescinded, stayed, modified, or amended;
>
> (b)  that is in full force and effect; and
>
> (c)  with respect to which (i) the time to appeal or to seek review, rehearing, remand, or a writ of certiorari has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (ii) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

For the avoidance of doubt, no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Bankruptcy Code section 502(j), Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 may be or has been filed with respect to such order.

**1.85** **FRI:** Farmland Reserve, Inc., a Utah nonprofit corporation, and its affiliates, subsidiaries, officers, directors, managers, principals, members, employees, and agents, each in its capacities as (a) stalking horse bidder in connection with an auction held on

June 17, 2021 and the successful purchaser of the FRI Assets pursuant to the Purchase and Sale Agreement evidencing the Sale Transaction approved at a hearing before the Bankruptcy Court on July 14, 2021 and that closed on July 30, 2021, (b) landlord to the Debtors under that certain Temporary Lease Agreement that became effective on the closing of the Sale Transaction on July 30, 2021, and (c) obligor on the Plan Sponsor Contribution.

**1.86** **FRI Assets:** All of FRI's right, title and interest in and to certain property identified in that certain Purchase and Sale Agreement evidencing the Sale Transaction that closed pursuant to the Sale Order on July 30, 2021.

**1.87** **General Claims Bar Date:** May 28, 2021.

**1.88** **General Unsecured Claim:** Any unsecured, non-priority Claim existing as of the Petition Date or a Rejection Claim that is asserted against either or both of the Debtors or the Estates and is not a Secured Claim, Tyson Claim, Segale Claim, Intercompany Claim, or Subordinated Claim.

**1.89** **Global Settlement:** The global settlement among the Settling Parties as reflected in the Global Settlement Term Sheet and as incorporated into this Plan.

**1.90** **Global Settlement Term Sheet**: The *Global Settlement Term Sheet*, dated April 14, 2022, by and among the Debtors, the Easterday Family, 3E, Produce, Dairy, the Ranches Committee, the Farms Committee, Tyson, and Segale that was approved by the Bankruptcy Court on April 20, 2022 [Docket No. 1560].

**1.91** **Governance Adversary Proceeding**: *Easterday Ranches, Inc. and Easterday Farms v. Estate of Gale Easterday, et al.*, Adv. Pro. No. 22-80008-WLH (Bankr. E.D. Wash.).

**1.92** **Governmental Claims Bar Date:** August 9, 2021.

**1.93** **Holder:** The Person that is the owner of record of a Claim or Interest, as applicable.

**1.94** **Idaho Contribution:** $669,300.00.

**1.95** **Impaired:** Any Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code section 1124.

**1.96** **Independent Directors:** R. Todd Neilson, Craig Barbarosh, and Thomas Saunders V.

**1.97** **Initial Net Distributable Proceeds**:  The first $4.2 million of Net Distributable Proceeds, consisting of the Class 4 Initial Payment, the Class 5 Initial Payment, and the Class 6 Initial Payment.

**1.98** **Insurance Policies**:  All insurance policies that have been issued to, or provide coverage at, any of the Debtors and all agreements, instruments, or documents relating thereto.

**1.99** **Insured Claim**: Any Claim or portion of a Claim (other than a Claim held by an employee of the Debtors for workers' compensation coverage under the workers' compensation program applicable in the particular state in which the employee is employed by the Debtors) that is insured under the Debtors' insurance policies, but only to the extent of such coverage.

**1.100** **Intercompany Claim**: A Claim against a Debtor held by another Debtor.

**1.101** **Interests**: All previously issued and outstanding common stock, preferred stock, partnership interests, or other ownership interests in either of the Debtors outstanding immediately prior to the Effective Date, including restricted stock, treasury stock, and all options, warrants, calls, rights, puts, awards, commitments, appreciation rights, or any other agreements of any character to convert, exchange, exercise for, or otherwise receive any such common stock, preferred stock, partnership interests, or other ownership interests.

**1.102** **Karen Easterday Settlement Amount**:  $6,000,000.00.

**1.103** **Karen Easterday Secured Note**:  The *Secured Promissory Note* issued by Karen Easterday in favor of the Administrative Agent in the original principal amount of $5 million, in substantially the form attached hereto as **Exhibit E**.

**1.104** **Lien**: Any lien, security interest, pledge, title retention agreement, encumbrance, leasehold, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

**1.105** **Mutual Release Agreement**:  A *Mutual Release Agreement* in substantially the form attached hereto as **Exhibit I**.

**1.106** **Net Distributable Assets**: The Distributable Assets of the Post-Effective Date Debtors from and after the Effective Date once all such assets have been reduced to Cash (including, for the avoidance of doubt, the Net Sale Proceeds, the Plan Sponsor Contribution, and the Tyson Avoidance Action Settlement), net of amounts necessary to fund the payment of, as applicable and except as otherwise agreed by the Holders of

such Claims, Allowed Administrative Claims, Priority Tax Claims, Priority Claims, Farms General Unsecured Claims, Post-Effective Date Debtors' Expenses, and reserves established for any of the foregoing, but excluding those Distributable Assets of the Debtors or the Post-Effective Date Debtors that were subject to any Liens or Secured Claims as of the Effective Date until such time that such Liens or Secured Claims are satisfied in full. The Net Distributable Assets, commencing with the Initial Net Distribution, shall be distributed by the Plan Administrator in accordance with the terms of this Plan.

**1.107 Net Sale Proceeds:** The net proceeds from the sale of the Debtors' assets, as defined in the Cooperation Agreement.

**1.108 North Lot Actions:** Any and all causes of action, claims, remedies or rights that may be brought by or on behalf of the Debtor or the Estates under Bankruptcy Code sections 542, 544, 547, 548, 550, 551, or 553, or related state or federal statutes, or pursuant to any theory or cause of action under common law against AB Livestock, LLC (or its affiliates, successors, or assigns) related to the transfer by Ranches on or about January 22, 2021 of Ranches' North Lot property.

**1.109 Ordinary Course Professional:** Any ordinary course professional retained pursuant to an order of the Bankruptcy Court.

**1.110 Ordinary Course Professional Fee Claim:** A Claim of an Ordinary Course Professional for compensation or reimbursement of costs and expenses relating to services provided during the period from the Petition Date through and including the Effective Date.

**1.111 Person:** Any person or organization created or recognized by law, including any association, company, cooperative, corporation, entity, estate, fund, individual, joint stock company, joint venture, limited liability company, partnership, trust, trustee, unincorporated organization, government or any political subdivision thereof, or any other entity or organization of whatever nature.

**1.112 Petition Date:** (a) February 1, 2021, when used in reference to Ranches which filed its voluntary chapter 11 petition for relief in the Bankruptcy Court on such date;

and (b) February 8, 2021, when used in reference to Farms which filed its voluntary chapter 11 petition for relief in the Bankruptcy Court on such date.

**1.113 Plan Administrator:** Seth R. Freeman of B. Riley Advisory Services shall be the initial Plan Administrator designated to wind up and liquidate the Debtors' affairs following the Effective Date.

**1.114 Plan Administrator Agreement:** The *Plan Administrator Agreement* by and between the Plan Administrator and the Post-Effective Date Debtors, in substantially the form attached hereto as **Exhibit G**.

**1.115 Plan Sponsor Contribution:** $5,000,000.00, to be paid by FRI as set forth in Section 9.5 of the Plan. For the avoidance of doubt, the Plan Sponsor Contribution is a post-closing obligation of FRI that arose under the Purchase and Sale Agreement and remains contingent on the confirmation of the Plan in form and content that is consistent with the Sale Order.

**1.116 Plan Supplement:** The ancillary documents regarding the implementation and effectuation of the Plan, which will be filed on or before the date that is seven (7) calendar days prior to the Voting Deadline, as such documents may be amended and supplemented prior to the Confirmation Hearing.

**1.117 Post-Effective Date Debtors**: Post-Effective Date Debtor Farms and Post-Effective Date Debtor Ranches.

**1.118 Post-Effective Date Debtors' Causes of Action:** Collectively, all Avoidance Actions and Causes of Action held by the Debtors or the Estates as of the Effective Date that shall be vested in the Post-Effective Date Debtors, in each case as against any Person that is not a Released Party or Exculpated Party. For the avoidance of doubt, the Post-Effective Date Debtors' Causes of Action exclude the North Lot Actions and any Canyon Farm Avoidance Actions.

**1.119 Post-Effective Date Debtors' Assets:** Collectively, the Distributable Assets of each Debtor allocable to the respective Post-Effective Date Debtor, including the Causes of Action.

**1.120 Post-Effective Date Debtors' Expenses:** Any and all reasonable fees, costs, and expenses incurred by the Plan Administrator not inconsistent with the Plan, including, without limitation, (i) the maintenance or disposition of the Post-Effective Date Debtors' Assets, (ii) Plan Administrator fees, indemnity reserves, attorneys' fees, the fees of professionals, and other Persons retained by the Plan Administrator,

(iii) personnel-related expenses, and (iv) any taxes imposed on the Post-Effective Date Debtors' or in respect of the Post-Effective Date Debtors' Assets.

**1.121 <u>Post-Effective Date Debtor Farms</u>**:   Farms and the Farms Estate after the Effective Date.

**1.122 <u>Post-Effective Date Debtor Ranches</u>:**  Ranches and the Ranches Estate after the Effective Date.

**1.123 <u>Post-Effective Date Indemnified Parties</u>:** The Plan Administrator and their Related Parties, each in their respective capacity as such.

**1.124 <u>Postpetition Corporate Actions</u>:**  The actions taken on March 12, 2022 by the Easterday Family purporting to remove the Independent Directors and replace them with the Replacement Directors, including the execution by the Easterday Family of (i) a unanimous written consent of the shareholders of Ranches purporting to remove the Independent Directors and (ii) an amendment to the Easterday Farms partnership agreement purporting to replace the Independent Directors with a manager

**1.125 <u>Preference Claim</u>:**  Any Avoidance Action that may be brought by or on behalf of the Debtors or the Estates under Bankruptcy Code section 547, or under related state or federal statutes, or pursuant to any theory or cause of action under common law, regardless whether such action has been commenced prior to the Effective Date.

**1.126 <u>Priority Claim</u>:** A Claim that is entitled to priority under Bankruptcy Code section 507(a), other than an Administrative Claim and a Priority Tax Claim.

**1.127 <u>Priority Tax Claim</u>:** A Claim that is entitled to priority under Bankruptcy Code section 507(a)(8).

**1.128 <u>Produce</u>:**  Easterday Farms Produce, Co., a Washington corporation.

**1.129 <u>Produce Stock Redemption Agreement</u>:**  The Stock Redemption Agreement by and among Produce, Cody Easterday, and Debby Easterday, in substantially the form attached hereto as **<u>Exhibit B-2</u>**.

**1.130 <u>Professional</u>:** Any professional (other than an Ordinary Course Professional) employed in the Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328, 1103, or 1104 or any professional or other Person (in each case, other than an Ordinary Course Professional) seeking compensation or reimbursement of expenses in

connection with the Chapter 11 Cases pursuant to Bankruptcy Code section 503(b)(3) or 503(b)(4).

**1.131 <u>Professional Fee Claim</u>:** A Claim of a Professional for compensation or reimbursement of costs and expenses (or of members of any of the Committees for reimbursement of expenses) relating to services provided during the period from the Petition Date through and including the Effective Date.

**1.132 <u>Professional Fee Reserves</u>:** The reserves established and funded by the Debtors pursuant to Section 12.2 of the Plan to provide sufficient funds to satisfy in full all unpaid Allowed Professional Fee Claims that are not otherwise funded to the trust account of the Debtors' counsel.

**1.133 <u>Pro Rata</u>:** Proportionately so that the ratio of (a) the amount of consideration distributed on account of a particular Allowed Claim to (b) the amount or number of that Allowed Claim, is the same as the ratio of (x) the amount of consideration available for Distribution on account of, as applicable, all Allowed Claims in the Class in which the particular Allowed Claim is included to (y) as applicable, the amount of all Allowed Claims of that Class, as adjusted to take into account any applicable Distribution Reserves.

**1.134 <u>Purchase and Sale Agreement</u>:** The Purchase and Sale Agreement dated May 19, 2021, Filed by the Debtors at Docket No. 737, that was approved as the Stalking Horse Agreement by the Bankruptcy Court on May 28, 2021 at Docket No. 749, that was subsequently amended by that certain First Amendment on June 18, 2021 and Filed as the successful bidder PSA on June 21, 2021 at Docket No. 830, and on which the Sale Transaction closed on July 30, 2021 in accordance with the Sale Order entered by the Bankruptcy Court on July 20, 2021 at Docket No. 927. For avoidance of doubt, the term Purchase and Sale Agreement includes any Exhibit, Schedule, or ancillary

agreement referenced in or related to the Purchase and Sale Agreement that was necessary to consummate the Sale Transaction.

**1.135 <u>Ranches</u>**: Debtor Easterday Ranches, Inc., a Washington corporation.

**1.136 <u>Ranches Committee</u>:** The official committee of unsecured creditors, as contemplated under Bankruptcy Code section 1102, which was appointed in the Chapter 11 Case of Ranches, as such committee may be reconstituted from time to time.

**1.137 <u>Rejection Claim</u>:** Any Claim for monetary damages as a result of the rejection of any prepetition executory contract or unexpired lease, whether rejected pursuant to the Confirmation Order or otherwise.

**1.138 <u>Rejection Claims Bar Date</u>:** To the extent not previously established by prior order of the Bankruptcy Court, thirty (30) calendar days after the Effective Date.

**1.139 <u>Related Parties</u>:** Collectively, all of the respective accountants, agents, attorneys, bankers, consultants, financial advisors, investment bankers, professional persons, representatives, and successors and assigns of the referenced Person; *provided, however*, that the Debtors' Related Parties will be limited to the following Persons: R. Todd Neilson; Craig Barbarosh; Thomas Saunders V; T. Scott Avila; Peter Richter; Paladin Management Group, LLC (and each of their subcontractors and their respective Related Parties); Pachulski Stang Ziehl & Jones LLP; Bush Kornfeld LLP; and Davis Wright Tremaine LLP; *provided further*, for the avoidance of doubt, with respect to each Committee, "Related Parties" shall include the members of such Committee but solely in their capacity as a member of such Committee, each of such member's representatives with respect to the Committee, and their counsel, if any; *provided further*, with respect to the Easterday Family, "Related Parties" shall also include any and all related family members and entities (except for Weyns Farms LLC) in which the Easterday Family or their related family members own an interest and those Persons' Related Parties.

**1.140 <u>Released Parties</u>:** Collectively, (a) the Debtors' and their Related Parties, (b) the Easterday Family Released Parties and their Related Parties, (c) the Farms Committee and its Related Parties, (d) the Ranches Committee and its Related Parties, (e) Tyson and its Related Parties, (f) Segale and its Related Parties, and (g) FRI and its Related Parties.

**1.141 <u>Releasing Parties</u>:** Collectively, (a) the Released Parties; (b) all Holders of Claims that (i) vote to accept the Plan and (ii) do not affirmatively opt out of the Third Party Release provided by Section 10.2(a) hereof pursuant to a duly executed Ballot; *provided that*, notwithstanding anything contained herein to the contrary, in no event shall the Holder of a Claim that (x) does not vote to accept or reject this Plan, (y) votes

to reject this Plan, or (z) appropriately marks the Ballot to opt out of the Third Party Release provided in Section 10.2(a) hereof and returns such Ballot in accordance with the Solicitation Procedures Order, be a Releasing Party; and (c) with the respect to the Easterday Family Released Parties, Releasing Parties shall also include the Additional Easterday Family Releasing Parties.

**1.142** **Replacement Directors:** Eric Bonnett, Clyde Hamstreet, Mark Calvert, Matt McKinlay, and Stephen Benson.

**1.143** **Replacement Director Fee:** $10,000 per Replacement Director.

**1.144** **Sale Order:** The Bankruptcy Court's *Order (A) Authorizing the Debtors to Acquire Certain Assets Owned by the Easterdays; (B) Authorizing the Sale of Property Free and Clear of Interests, Including Liens, Claims, Liabilities, and Encumbrances; (C) Granting the Buyer the Protections Afforded to a Good Faith Purchaser; (D) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (E) Granting Related Relief* [Docket No. 927], as supplemented by the *Supplemental Sale Order Concerning the Initial Paydown Amount for Prudential Insurance Company of America* [Docket No. 948].

**1.145** **Sale Transaction:** Collectively, (a) the Debtors' purchase, to the extent necessary, of the Easterday Family's rights, title and interests in and to the "Easterday Property" (as such term in defined in the Purchase and Sale Agreement); (b) the Debtors' sale to FRI of all the "Property" (as such term is defined in the Purchase and Sale Agreement); (c) FRI's leaseback of the "Property" to the Debtors pursuant to the Temporary Lease Agreement; and (d) FRI's obligation to contribute the Plan Sponsor Contribution in support of the consummation of the Plan.

**1.146** **Scheduled:** Set forth in the Schedules.

**1.147** **Schedules:** The Schedules of Assets and Liabilities Filed by the Debtors in the Chapter 11 Cases, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

**1.148** **Section 503(b)(9) Claim:** A Claim arising under Bankruptcy Code section 503(b)(9).

**1.149** **Secured Claim:** A Claim that is secured by a valid, perfected, and enforceable Lien on property in which the Debtors or the Estates have an interest, which Lien is valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law. A Claim is a Secured Claim only to the extent of the value of the Holder's interest in the Debtors' interest in the Collateral or to the extent of the amount subject to set-off against a Cause of Action

held by the Debtors, whichever is applicable, and as determined under Bankruptcy Code section 506(a). To the extent that the value of such interest in the Debtors' interest in the subject Collateral or the amount subject to set-off against a Cause of Action held by the Debtors (as applicable) is less than the amount of the Claim which has the benefit of such security or is supported by such setoff right, such portion of the Claim is unsecured and shall be treated as a General Unsecured Claim unless, in any such case, the Class of which the Secured Claim is a part makes a valid and timely election in accordance with Bankruptcy Code section 1111(b) to have such Claim(s) treated as a Secured Claim to the extent Allowed.

**1.150 Securities Act:** The Securities Act of 1933, as amended.

**1.151 Segale:** Segale Properties, LLC and any affiliates, successors, and assigns.

**1.152 Segale Claims:** All Claims of Segale against Ranches.

**1.153 Settling Parties:** The Debtors, the Easterday Family, 3E, Produce, Dairy, the Ranches Committee, the Farms Committee, Segale, and Tyson.

**1.154 Subordinated Claim:** Collectively, any Claim that is subordinated to General Unsecured Claims pursuant to Bankruptcy Code section 510, a Final Order, or by consent of the Holder of such Claim. For the avoidance of doubt, the CFTC Claim is a Subordinated Claim.

**1.155 Supplemental Bar Date:** Any supplemental bar date that may be established by an order of the Bankruptcy Court.

**1.156 Temporary Lease Agreement:** The leaseback, effective as of July 30, 2021 by and between FRI, as lessor, and the Debtors, as lessee, that was part of the Sale Transaction evidenced by the Purchase and Sale Agreement and authorized and approved by the Bankruptcy Court pursuant to its entry of the Sale Order. For avoidance of doubt, references in the Plan to the Purchase and Sale Agreement include the Temporary Lease Agreement.

**1.157 Third Party Releases:** The releases given on behalf of the Releasing Parties as set forth in Section 10.2(a) herein.

**1.158 Tyson:** Tyson Fresh Meats, Inc. and any affiliates, successors, and assigns.

**1.159 Tyson Avoidance Action:** Any Causes of Action of the Debtors against Tyson relating to the prepetition transfer of "Customer 3 Cattle" to Tyson worth an estimated $58,100,000.00.

**1.160 Tyson Claims:** All Claims of Tyson against the Debtors.

**1.161 <u>Tyson-Segale Preserved Claims</u>:** All Claims of Tyson or Segale against Cody Easterday, including, to the extent applicable, community property assets.

**1.162 <u>Unimpaired</u>:** Any Class of Claims that is not impaired within the meaning of Bankruptcy Code section 1124.

**1.163 <u>Uninsured Portion</u>:** The portion of any Insured Claim, if any, that is not insured under the Debtors' insurance policies or that is beyond the extent of such coverage.

**1.164 <u>Unliquidated Claim</u>:** Any Claim that is Scheduled as unliquidated or that was filed in an unliquidated amount.

**1.165 <u>U.S. Trustee</u>:** The Office of the United States Trustee for the Eastern District of Washington.

**1.166 <u>Voting Deadline</u>:** The date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the Disclosure Statement Order.

## <u>ARTICLE II</u>

## <u>CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS</u>

**2.1 <u>Summary and Classification of Claims</u>.** This Section classifies Claims – except for Administrative Claims, Professional Fee Claims, and Priority Tax Claims, which are not classified – for all purposes, including confirmation, Distributions, and voting. A Claim is classified in a particular Class only to the extent that the Claim falls within the Class description. To the extent that part of a Claim falls within a different Class description, that part of the Claim is classified in that different Class. The following table summarizes the Classes of Claims under the Plan:

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|-------|-------------|----------------------|---------------|
| None | Administrative Claims | Unimpaired | Not Entitled to Vote |
| None | Professional Fee Claims | Unimpaired | Not Entitled to Vote |
| None | Priority Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 1 | Secured Claims[2] | Unimpaired | Not Entitled to Vote (deemed to accept) |

---

[2]  To comply with Bankruptcy Code section 1122(a), each Allowed Secured Claim shall be deemed to be in its own subclass (unless such Holder shares the same Lien

THIRD MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION – Page 21

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|---|---|---|---|
| Class 2 | Priority Claims | Unimpaired | Not Entitled to Vote (deemed to accept) |
| Class 3 | Farms General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Ranches General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Tyson Claims | Impaired | Entitled to Vote |
| Class 6 | Segale Claims Against Ranches | Impaired | Entitled to Vote |
| Class 7 | Subordinated Claims | Impaired | Not Entitled to Vote (deemed to reject) |
| Class 8 | Intercompany Claims | Impaired | Not Entitled to Vote (deemed to accept as plan proponent) |
| Class 9 | Interests | Impaired | Not Entitled to Vote (deemed to reject) |

**NOTWITHSTANDING ANY OTHER TERM OR PROVISION OF THE PLAN, NO DISTRIBUTIONS WILL BE MADE ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS A DISALLOWED CLAIM.**

## 2.2 <u>Subordinated Claims Generally</u>.

The allowance, classification, and treatment of all Claims under the Plan, including Subordinated Claims, shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, Bankruptcy Code sections 510(a) or 510(b), or otherwise. Pursuant to Bankruptcy Code section 510, the Post-Effective Date Debtors shall reserve the right to re-classify, or to seek to subordinate, any Claim as a Subordinated Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that

---

on Collateral with a different Holder of another Secured Claim, in which case such Claims shall be deemed to be included together in the same subclass).

becomes a Subordinated Claim at any time shall be modified to reflect such subordination.

**2.3    Intercompany Claims.**

All Intercompany Claims shall be disallowed pursuant to this Plan and shall be cancelled as of the Effective Date.

**2.4    Classification & Voting Controversies.**

(a)    If a controversy arises regarding whether any Claim is properly classified under the Plan, then the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing.

(b)    If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the Holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

## ARTICLE III

### TREATMENT OF CLAIMS AND EQUITY INTERESTS

**3.1    Unclassified Claims.**

**3.1.1    Administrative Claims.** Except as otherwise provided for herein, and subject to the requirements of the Plan, on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) thirty (30) calendar days following the date on which an Administrative Claim becomes an Allowed Administrative Claim, the Holder of such Allowed Administrative Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Claim or (b) such other less favorable treatment as to which such Holder and the Plan Administrator shall have agreed upon in writing.

**3.1.2    Professional Fee Claims.** Professional Fee Claims shall be paid as set forth in Section 12.2 of the Plan.

**3.1.3    Priority Tax Claims.** In full satisfaction, settlement, and release of, and in exchange for such Claims, Allowed Priority Tax Claims shall be paid, at the Plan Administrator's option, as follows: (a) Cash equal to the unpaid portion of such Allowed Priority Tax Claim on the later of the Effective Date and thirty (30) calendar

THIRD MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION – Page 23
21-00141-WLH11    Doc 1814    Filed 07/26/22    Entered 07/26/22 10:37:04    Pg 63 of 244

days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; (b) in regular installment payments in Cash over a period not exceeding five (5) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable non-bankruptcy law as of the calendar month in which the Effective Date occurs (provided that such election shall be without prejudice to the right to prepay any such Allowed Priority Tax Claim in full or in part without penalty); or (c) such other treatment as to which the Holder of an Allowed Priority Tax Claim and the Plan Administrator shall have agreed upon in writing.

**3.2** <u>**Class 1: Secured Claims.**</u>

<u>Classification</u>. Class 1 consists of all Secured Claims against the Debtors, including Secured Tax Claims.

<u>Treatment</u>. The legal, equitable, and contractual rights of Holders of Allowed Class 1 Claims are unaltered by the Plan and the Liens of the Holders of Allowed Class 1 Claims will continue to attach to their respective Collateral, provided that all such Claims shall remain subject to any and all defenses, challenges, counterclaims, and setoff or recoupment rights with respect thereto. Unless the Plan Administrator and the Holder of an Allowed Class 1 Claim agree to other treatment, on or as soon as is reasonably practicable after the Effective Date, each Holder of an Allowed Class 1 Claim shall receive, at the option of the Plan Administrator: (i) Cash in the Allowed amount of such Holder's Allowed Class 1 Claim; or (ii) the return of the Collateral securing such Allowed Class 1 Claim, without representation or warranty by any Person (and without recourse against any Person regarding such Secured Claim); or (iii) (A) the cure of any default, other than a default of the kind specified in Bankruptcy Code section 365(b)(2), that Bankruptcy Code section 1124(2) requires to be cured, with respect to such Holder's Allowed Class 1 Claim, without recognition of any default rate of interest or similar penalty or charge, and upon such cure, no default shall exist; (B) the reinstatement of the maturity of such Allowed Class 1 Claim as the maturity existed before any default, without recognition of any default rate of interest or similar penalty or charge; and (C) retention of its unaltered legal, equitable, and contractual rights with respect to such Allowed Class 1 Claim, including through the retention of any associated Lien on the Collateral securing such Allowed Class 1 Claim.

The Bankruptcy Court shall retain jurisdiction and power to determine the amount necessary to satisfy any Allowed Class 1 Claim for which treatment is elected under clause (i) or clause (iii) of the immediately foregoing paragraph. With respect to any Allowed Class 1 Claim for which treatment is elected under clause (i), any Holder of such Allowed Class 1 Claim shall release (and by the Confirmation Order shall be deemed to release) all Liens against any Estate Assets. Notwithstanding anything else

in the Plan, the Holders of Allowed Class 1 Claims will have no right to receive any Distribution from, or otherwise share in, any of the Easterday Family Consideration.

Voting. Claims in Class 1 are Unimpaired. Each Holder of an Allowed Class 1 Claim is conclusively presumed to have accepted this Plan and, therefore, is not entitled to vote.

### 3.3    Class 2: Priority Claims.

Classification. Class 2 consists of all Priority Claims.

Treatment. On, or as soon as reasonably practicable after, the later of (i) the Effective Date and (ii) the date on which a Priority Claim becomes payable pursuant to and as specified by an order of the Bankruptcy Court, the Holder of such Allowed Class 2 Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Class 2 Claim, either (a) Cash from the Post-Effective Date Debtors equal to the unpaid portion of such Allowed Priority Claim or (b) such other less favorable treatment to which such Holder and the Plan Administrator shall have agreed upon in writing.

Voting. Claims in Class 2 are Unimpaired. Each Holder of an Allowed Class 2 Claim is conclusively presumed to have accepted this Plan and, therefore, is not entitled to vote.

### 3.4    Class 3: Farms General Unsecured Claims.

Classification. Class 3 consists of all Farms General Unsecured Claims.

Treatment. On or as soon as practicable after the Effective Date, each Holder of an Allowed Class 3 Claim shall receive, as the sole distribution or dividend by Farms or its Estate under this Plan on account of such Allowed Class 3 Claim, Cash from the Post-Effective Date Debtors in an amount equal to 100% of such Holder's Allowed Class 3 Claim. Allowed Class 3 Claims shall not include any amounts for postpetition interest or attorney's fees with respect to such Class 3 Claims. The Class 3 Claims set forth on the Farms GUC Claims Schedule (Exhibit J to the Plan) shall be Allowed in the amounts set forth in the Farms GUC Claims Schedule for all purposes under the Plan, including for purposes of receiving Distributions under the Plan; *provided that*, for the avoidance of doubt, any Class 3 Claim that is not included on the Farms GUC Claims Schedule but is otherwise Allowed shall be entitled to the full treatment afforded to Class 3 Claims under the Plan. Notwithstanding anything to the contrary herein, the Debtors or the Post-Effective Date Debtors, as applicable, shall complete distributions to the Holders of Allowed Class 3 Claims set forth on the Farms GUC Claims Schedule within seven (7) calendar days after the Effective Date.

All Avoidance Actions against Holders of Allowed Farms General Unsecured Claims shall be deemed released and waived upon the Effective Date and shall not be included in the Post-Effective Date Debtors' Assets.

Voting. Class 3 Claims are Impaired and, therefore, each Holder of an Allowed Class 3 Claim is entitled to vote.

**3.5    Class 4: Ranches General Unsecured Claims.**

Classification. Class 4 consists of all Ranches General Unsecured Claims.

Treatment. On or as soon as practicable after the Effective Date, each Holder of an Allowed Class 4 Claim shall receive (a) its Pro Rata share of the Class 4 Initial Payment and (b) its Pro Rata share of the Class 4 Net Distributable Assets (subject to any Distribution Reserve).

The Holders of Allowed Class 4 Claims shall not have any interest in any of the Easterday Family Contribution Instruments, restitution claims against Cody Easterday, or the North Lot Actions.

All Avoidance Actions against Holders of Allowed Class 4 Claims shall be deemed released and waived upon the Effective Date and shall not be included in the Post-Effective Date Debtors' Assets.

Voting. Class 4 Claims are Impaired and, therefore, each Holder of an Allowed Class 4 Claim is entitled to vote.

**3.6    Class 5: Tyson Claims.**

Classification. Class 5 consists of all Tyson Claims.

Treatment. Tyson shall have an Allowed Class 5 Claim in the amount of $261,316,000.00. On or as soon as practicable after the Effective Date, each Holder of an Allowed Class 5 Claim shall receive (a) its Pro Rata share of the Class 5 Initial Payment, (b) its Pro Rata share of the Class 5 Net Distributable Assets (subject to any Distribution Reserve), (c) its Pro Rata share of the proceeds of the Easterday Family Contribution Instruments, and (d) assignment of the North Lot Actions.

All Estate claims against Tyson, including any Avoidance Actions, shall be deemed released and waived upon the Effective Date.

At the Effective Date, the North Lot Actions will be deemed assigned to Tyson, including, but not limited to, any prepetition claims Tyson may have had relating to the transfer of the North Lot. Tyson will be the representative of the Estates appointed

pursuant to Bankruptcy Code section 1123(b)(3) regarding the assigned North Lot Actions and Tyson will have exclusive authority to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw the North Lot Actions without any further order of the Bankruptcy Court. Any proceeds related to the North Lot Actions belong exclusively to Tyson. However, any costs or expenses that may be incurred by the Post-Effective Date Debtors, the Plan Administrator, or any of its employees, representatives, or professionals in connection with the North Lot Actions, if any, shall be reimbursed and borne entirely by Tyson.

<u>Voting</u>. Class 5 Claims are Impaired and, therefore, each Holder of an Allowed Class 5 Claim is entitled to vote.

**3.7    <u>Class 6: Segale Claims Against Ranches</u>.**

<u>Classification</u>. Class 6 consists of all Segale Claims against Ranches.[3]

<u>Treatment</u>. Segale shall have an Allowed Class 6 Claim in the amount of $7,830,641. On or as soon as practicable after the Effective Date, each Holder of an Allowed Class 6 Claim shall receive (a) its Pro Rata share of the Class 6 Initial Payment, (b) its Pro Rata share of the Class 6 Net Distributable Assets (subject to any Distribution Reserve), and (c) its Pro Rata share of the proceeds of the Easterday Family Contribution Instruments.

All Estate claims against Segale, including any Avoidance Actions, shall be deemed released and waived upon the Effective Date.

The Holders of Allowed Class 6 Claims shall not have any interest in the North Lot Actions.

<u>Voting</u>. Class 6 Claims are Impaired and, therefore, each Holder of an Allowed Class 6 Claim is entitled to vote.

<u>Clarification</u>. Nothing in this Section 3.7 shall affect Segale's Claims against Farms, which are Allowed in the amount of $53,000.

**3.8    <u>Class 7: Subordinated Claims</u>.**

<u>Classification</u>. Class 7 consists of all Subordinated Claims.

<u>Treatment</u>. Holders of Class 7 Claims shall not receive any payment on account of their Claims.

---

[3]    For the avoidance of doubt, Segale also has an Allowed Class 3 Claim that shall receive the same treatment as other Allowed Class 3 Claims.

<u>Voting</u>.  Each Holder of a Class 7 Claim will be deemed to have rejected this Plan and, therefore, is not entitled to vote on this Plan.

### 3.9    <u>Class 8: Intercompany Claims</u>.

<u>Classification</u>.  Class 8 consists of all Intercompany Claims.

<u>Treatment</u>.  Holders of Class 8 Claims shall not receive any payment on account of their Claims.

<u>Voting</u>.  Each Holder of a Class 8 Claim is a proponent of the Plan and will therefore conclusively be deemed to have accepted this Plan.

### 3.10   <u>Class 9: Interests</u>.

<u>Classification</u>.  Class 9 consists of all Interests in the Debtors.

<u>Treatment</u>.  On the Effective Date, the Interests will be cancelled and Holders of Class 9 Interests will not receive any Distribution pursuant to this Plan.

<u>Voting</u>.  Each Holder of a Class 9 Interest will be deemed to have rejected this Plan and, therefore, is not entitled to vote on this Plan.

### 3.11   <u>Special Provisions Regarding Insured Claims</u>.

(a)    Any Allowed General Unsecured Claim with respect to an Insured Claim shall be limited to the Uninsured Portion of such Claim, provided such Claims have been timely Filed by the applicable Claims Bar Date.

(b)    If there is insurance purchased by or otherwise applicable to the Debtors, any Person with rights against or under the applicable insurance policy, including the Post-Effective Date Debtors and Holders of Insured Claims, may pursue such rights.

(c)    Nothing in this Section 3.11 shall constitute a waiver of any Causes of Action the Debtors, the Estates, or the Post-Effective Date Debtors may hold against any Person, including the Debtors' insurance carriers; and nothing in this Section 3.11 is intended to, shall, or shall be deemed to preclude any Holder of an Insured Claim from seeking or obtaining a distribution or other recovery from any insurer of the Debtors in addition to (but not in duplication of) any Distribution such Holder may receive under the Plan; *provided*, *however*, that the Debtors and the Post-Effective Date Debtors do not waive and expressly reserve their rights to assert that any insurance coverage is property of the Estates to which they are entitled.

(d)    The Plan shall not expand the scope of, or alter in any other way, the rights and obligations of the Debtors' insurers under their policies, and the Debtors' insurers

shall retain any and all defenses to coverage that such insurers may have, including the right to contest or litigate with any Person the existence, primacy, or scope of available coverage under any allegedly applicable policy. The Plan shall not operate as a waiver of any other Claims the Debtors' insurers have asserted or may assert in any proof of claim or of any objections or defenses to any such Claims.

**3.12** **Comprehensive Settlement of Claims and Controversies.**

**3.12.1** **Generally.** Pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), and 1123(b)(6), as well as Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims and controversies relating to the rights that a Holder of a Claim or an Interest may have against either Debtor or the Easterday Family Released Parties with respect to any Claim, Interest, or any Distribution on account thereof, all potential Intercompany Claims and Causes of Action against either Debtor or the Easterday Family Released Parties, and contentions made by various parties in interest respecting substantive consolidation of the Debtors and their Estates and the Easterday Family Released Parties, and any and all claims and controversies by the Debtors against the Easterday Family Released Parties. For the avoidance of doubt, any release of Claims or Causes of Action by a Holder of a Claim with respect to the Easterday Family Released Parties shall be as set forth in section 10.2 of the Plan. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims and controversies and the Bankruptcy Court's finding that all such compromises or settlements are: (i) in the best interest of the Debtors, the Estates, and their respective property and stakeholders; and (ii) fair, equitable, and reasonable. This comprehensive compromise and settlement is a critical component of the Plan and is designed to provide a resolution of myriad disputed intercompany and intercreditor Claims, Liens, and Causes of Action that otherwise could take years to resolve, which would delay and undoubtedly reduce the Distributions that ultimately would be available for all Creditors.

**3.12.2** **Net Sale Proceeds.** On the Effective Date, the remainder of the Net Sale Proceeds in the Escrow Account shall be released to the Post-Effective Date Debtors to be distributed in accordance with the Plan.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

**4.1** **Impaired Class of Claims Entitled to Vote.** Only the votes of Holders of Allowed Claims in Class 3, Class 4, Class 5, and Class 6 shall be solicited with respect to the Plan.

**4.2** **Acceptance by an Impaired Class.** In accordance with Bankruptcy Code section 1126(c), and except as provided in Bankruptcy Code section 1126(e), the Holders of Claims in any Class entitled to vote on the Plan shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan. Holders of Class 8 Intercompany Claims are proponents of the Plan and are conclusively presumed to have accepted the Plan.

**4.3** **Presumed Acceptances by Unimpaired Classes.** Class 1 and Class 2 are Unimpaired under the Plan. Under Bankruptcy Code section 1126(f), the Holders of Claims in such Unimpaired Classes are conclusively presumed to have accepted the Plan, and, therefore, the votes of such Holders shall not be solicited.

**4.4** **Impaired Classes Deemed to Reject Plan.** Holders of Subordinated Claims in Class 7 and Interests in Class 9 are not entitled to receive or retain any property or interests in property under the Plan. Under Bankruptcy Code section 1126(g), such Holders are deemed to have rejected the Plan, and, therefore, the votes of such Holders shall not be solicited.

**4.5** **Modifications of Votes.** Following the Voting Deadline, no Creditors entitled to vote on the Plan will be able to change their votes cast on the Plan or any attendant elections or preferences without the written consent of the Debtors, which consent may be given or withheld in the Debtors' reasonable discretion.

**4.6** **Confirmation Pursuant to Bankruptcy Code Section 1129(b).** Because at least one Impaired Class is deemed to have rejected the Plan, the Debtors will and hereby request confirmation of the Plan under Bankruptcy Code section 1129(b). The Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan, the Plan Supplement, or any schedule or exhibit, including to amend or modify it to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

**4.7** **Elimination of Vacant Classes.** Any Class of Claims or Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for purposes of determining acceptance of the Plan by such Class under Bankruptcy Code section 1129(a)(8).

**4.8** **Joint Plan.** This Plan represents a joint plan resolving all assets and liabilities for both of the Debtors. As further discussed in Section 12.5 of the Plan, the Debtors may alter, amend, or modify this Plan at or before the Confirmation Hearing in the Debtors' reasonable discretion.

# ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

**5.1** **Implementation of the Plan.** Pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), and 1123(b)(6), as well as Bankruptcy Rule 9019, the Plan effectuates a global resolution of, among other things, disputes between the Farms and Ranches Estates. In accordance with the Global Settlement Term Sheet, Holders of Allowed Class 3 Claims (Farms General Unsecured Claims) receive a 100% recovery, excluding postpetition interest and attorneys' fees. The Plan Administrator is authorized and directed to make Distributions of the Distributable Assets pursuant to and in accordance with the Plan.

The Plan also effectuates a global resolution of disputes between and/or among the Easterday Family, 3E, Produce, Dairy, the Debtors, the Farms Committee, the Ranches Committee, Tyson, and Segale pursuant to the contribution of funds and release of claims as set forth herein by the Easterday Family and an agreed allocation of distributions to be made by the Debtors and Post-Effective Date Debtors on account of the Allowed Claims in Classes 4, 5, and 6 of the Plan. Holders of Allowed Claims in Classes 5 and 6 of the Plan shall also receive the Easterday Family Contribution Instruments to be held by the Administrative Agent in accordance with and pursuant to the terms of the Administrative Agent Agreement.

For the avoidance of doubt, the claims being resolved as part of the global resolution include but are not limited to any and all claims and controversies by the Debtors against the Easterday Family Released Parties, including, but not limited to, any deficiency claims held by the Farms Estate against the Easterday Family, as well as claims against 3E, Produce, Dairy, and any and all claims by the Ranches Estate related to breaches of any duty by the Easterday Family.

**5.2** **Implementation of the Global Settlement.** The Plan effectuates the Global Settlement among the Settling Parties as agreed pursuant to the Global Settlement Term Sheet.

**5.2.1** **The Karen Easterday Settlement Amount.** Upon the Effective Date, and in satisfaction of Karen Easterday's claims asserted in the Allocation Dispute Adversary Proceeding, Farms will pay the Karen Easterday Settlement Amount, reduced by the Basin City Property Purchase Price and the Idaho Contribution. The remaining Karen Easterday Settlement Amount will be applied to the Easterday Dairy LLC Note and BC 140 LLC Secured Guaranty, such that the net cash payment by Farms on account of the Karen Easterday Settlement Amount will be zero.

**5.2.2** **The Karen Easterday Secured Note.** On the Effective Date, Karen

Easterday will issue the Karen Easterday Secured Note to the Administrative Agent to be held in accordance with the Administrative Agent Agreement. The Karen Easterday Secured Note will be in the amount of $5 million with 3% simple interest paid at maturity, which will occur two years after the Effective Date of the Plan. The Karen Easterday Secured Note will be secured by a first deed of trust or mortgage on Karen Easterday's Franklin County, Washington home and surrounding property.

**5.2.3    The Idaho Contribution.** On account of property in Kootenai County, Idaho in which Karen Easterday owns an interest, Karen Easterday shall pay the Debtors the Idaho Contribution, on the Effective Date. The Idaho Contribution shall be paid as a reduction of the Karen Easterday Settlement Amount.

**5.2.4    The Basin City Sale.** On or before the Effective Date, Cody and Debby Easterday shall sell their interests in the Basin City Properties to BC 140, LLC for the Basin City Property Purchase Price ($4.2 million), <u>plus</u> the assumption of the liability for the loan (in the approximate amount of $1.2 million) with Equitable Life, subject to consent of Equitable Life. The Basin City Property Purchase Price will be funded from the Karen Easterday Settlement Amount. Simultaneously with closing of the sale of the Basin City Properties, Cody and Debby Easterday shall contribute the Basin City Property Purchase Price to the Debtors.

**5.2.5    The Easterday Dairy, LLC Note and BC 140 LLC Secured Guaranty.** In full satisfaction of the outstanding note receivable owed by Dairy to Farms, on the Effective Date, Dairy will provide the Administrative Agent, to be held in accordance with the Administrative Agent Agreement, the Easterday Dairy LLC Note ($2,169,300). The full amount of the Easterday Dairy LLC Note, including principal and accrued interest, shall be due and payable two years from the Effective Date.

The Easterday Dairy LLC Note shall be guaranteed by BC 140 LLC, pursuant to the BC 140 LLC Secured Guaranty. In the event that Equitable Life does not consent to a junior lien or deed of trust on the Basin City Properties on which it claims a lien, 100% of the membership interests in BC 140 LLC shall be pledged as an alternative thereto, subject to the consent of Equitable Life, if necessary. The Easterday Dairy LLC Note and the BC 140 LLC Secured Guaranty shall not be cross-defaulted or cross-collateralized with the Karen Easterday Secured Note.

**5.2.6    The Easterday Family Contribution Instruments.** On the Effective Date, the Easterday Family Contribution Instruments shall each be issued to the Administrative Agent for the benefit of Holders of Allowed Tyson Claims and Allowed Segale Claims in accordance with the terms of the Administrative Agent Agreement.

The Easterday Family Contribution Instruments shall be held by the Administrative Agent in accordance with the terms of the Administrative Agent Agreement for the benefit of the Holders of Allowed Tyson Claims and Allowed Segale Claims. The Administrative Agent Agreement shall be substantially in the form Filed in the Plan Supplement, which shall be in form and substance reasonably acceptable to the Debtors, the Administrative Agent, the Easterday Family, 3E Produce, Dairy, Tyson, and Segale.

**5.2.7    The Transfer of Steer Head Brand.** On the Effective Date, the Debtors shall transfer all rights, interests, and ownership of the "steer head" brand to Karen Easterday or her designee at the sole expense of Karen Easterday or her designee.

**5.2.8    The Assignment of the Canyon Farm Avoidance Actions.** Upon the Effective Date, the Debtors will assign Canyon Farm Avoidance Actions to Karen Easterday or her designee.

**5.2.9    The 3E and Produce Contribution.** 3E and Produce shall buyback Cody and Debby Easterday's equity interests in 3E and Produce for the aggregate 3E-Produce Purchase Price ($2,274,210). The buyback will be effectuated pursuant to the terms of the 3E-Produce Agreements, which are cross-defaulted and cross-collateralized and collectively provide the payment of the 3E-Produce Purchase Price at 4.5% interest with $100,000 due and payable every six months with the first payment due 90 days after the Effective Date. The balance of the 3E-Produce Purchase Price (plus interest) will be due two years after the Effective Date. The obligations of 3E and Produce under the 3E-Produce Agreements shall be secured by a pledge of 33% of the equity interests in each of 3E and Produce, as set forth in the 3E-Produce Agreements.

On the Effective Date, Cody and Debby Easterday, will assign any and all rights in the 3E-Produce Agreements to the Administrative Agent, for the benefit of Holders of Allowed Class 5 Claims and Allowed Class 6 Claims.

**5.2.10    The Easterday Family Adversary Proceedings.** On the Effective Date, the Allocation Dispute Adversary Proceeding, the 3E Properties Adversary Proceeding and the Governance Adversary Proceeding shall be deemed closed and the respective complaints withdrawn with prejudice. Within a reasonable time following the Effective Date, the Plan Administrator shall take steps as necessary to close such adversary proceedings.

**5.2.11  The Restitution Claims.** All rights of Tyson, Segale, and Cody Easterday with respect to the restitution claims against Cody Easterday shall be fully reserved under all circumstances notwithstanding any other provision herein.

**5.2.12  The Replacement Director Fees.** Within fourteen (14) days of the Effective Date, the Plan Administrator shall pay the Replacement Director Fees.

**5.2.13  Easterday Family Releases.** The Easterday Family Released Parties shall be released of all claims from the Farms Estate, the Ranches Estate, and each creditor of each estate to the extent allowed by law; *provided*, *however*, to the extent any Easterday Family Released Party does not provide a mutual release of claims to the Estate Released Parties by executing a Mutual Release Agreement, and such Easterday Family Released Party prosecutes a proof of claim against the Debtors or otherwise asserts claims against any of the Estate Released Parties relating in any way to the Debtors or their assets, the Estate Released Parties may assert against such Easterday Family Released Party any claims that otherwise would have been released pursuant to this Plan.

If the claims of Additional Easterday Family Releasing Parties against the Debtors are not otherwise paid in full, the Debtors shall, prior to the Effective Date, obtain written releases from such Additional Easterday Family Releasing Parties of the Easterday Family Released Parties, from all claims against the Easterday Family Released Parties arising from or related to such party's contractual agreements with the Easterday Family Released Parties to the extent such contracts are related to or arise in connection with the Debtors.  Further, it shall be a condition precedent to the Effective Date of the Plan that Jody Easterday, Cutter Easterday, Cole Easterday, and Clay Easterday execute the Mutual Release Agreement.

Notwithstanding the foregoing, or anything else to the contrary contained herein, Tyson and Segale are not releasing their direct claims against Cody Easterday, including, to the extent applicable, community property assets, nor is Cody Easterday releasing any claims, defenses, or counterclaims against Tyson or Segale.

**5.2.14  The Criminal Proceedings.** The Debtors agree not to appear, file, or otherwise make any statements in connection with the proceeding entitled *United States of America v Cody Allen Easterday*, Case No. 4:21-CR-06012-SAB-1 pending in the United States District Court for the District of Washington.

**5.2.15  The Consent of the Department of Justice.** The Debtors, Tyson, and Segale will cooperate with Cody and Debby Easterday to get the DOJ to consent to the settlements and releases of properties and interests included in the Global Term Sheet and this Plan.   The consent of the DOJ to the settlements and releases of properties and interests included in the Global Term Sheet and this Plan shall be a condition precedent

to the Effective Date.

**5.3** **Reserved.**

**5.4** **Easterday Family Tax Payments.** The Debtors' Estates shall have no responsibility whatsoever for the Easterday Tax Payments, all of which shall be borne entirely by the Easterday Family.

**5.5** **Sale Transaction.** On July 20, 2021, the Bankruptcy Court entered the Sale Order authorizing and approving the two-step Sale Transaction pursuant to which the Debtors acquired, to the extent necessary, all of the Easterday Family's right, title and interest to certain property (as defined under the Purchase and Sale Agreement) and then sold the FRI Assets to FRI, subject only to FRI's agreement to lease back certain of the FRI Assets to the Debtors pursuant to the Temporary Lease Agreement. The Plan presumes that, at Confirmation, the Temporary Lease Agreement shall have terminated on its terms and that to the extent the Debtors or FRI may have claims, rights, or ongoing obligations to each other under the Temporary Lease Agreement that survive the termination, such claims, rights, or ongoing obligations shall have been fully and finally resolved at Confirmation such that any claims, rights or ongoing obligations shall cease to exist on the Effective Date, and that the Post-Effective Date Debtors shall not inherit any claims, rights, benefits, or Causes of Action arising under, relating to, or in connection with the Purchase and Sale Agreement, the Temporary Lease Agreement, or any other agreement relating to the foregoing.

Nothing in the Plan is intended to, nor shall be construed to, alter any of the terms and conditions upon which the Sale Transaction was approved as set forth in the Purchase and Sale Agreement or in any agreement referenced in or related to the Purchase and Sale Agreement. Neither the Plan nor the Confirmation Order shall limit or otherwise affect any of the Bankruptcy Court's findings, conclusions, orders, and judgments as set forth in the Sale Order, and insofar as any of the protections afforded FRI by the Sale Order conflict with or contradict certain terms and conditions in the Plan or any findings, conclusions, orders or judgments in the Confirmation Order, the Sale Order shall govern and control with respect to FRI.

Notwithstanding anything that may suggest otherwise in the Plan, the Plan Supplement, any Schedule or Exhibit to either of the foregoing, or any other document executed in connection with Confirmation or these Chapter 11 Cases, neither the Post-Effective Date Debtors nor any Holder of any Claim or Interest shall have any claim, cause of action, right or recourse against FRI or the FRI Assets on account of or in connection with the Sale Transaction, the Purchase and Sale Agreement, the Temporary Lease Agreement, or any other agreement or document executed in connection with the consummation of the Sale Transaction between and among FRI, the Debtors and the Easterday Family.

**5.6     Net Sale Proceeds.** In accordance with the terms of the Global Settlement, the Net Sale Proceeds shall vest with the Post-Effective Date Debtors and shall be used to fund distributions under the Plan.

**5.7     Streamlining of the Debtors' Corporate Affairs.**

**5.7.1     Debtors' Existing Directors, Officers, and Managers.** On the Effective Date, each of the Debtors' existing directors, officers, and managers shall be terminated automatically without the need for any Corporate Action and without the need for any corporate or partnership filings, and shall have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated). On the Effective Date, the Plan Administrator shall succeed to all such powers as would have been applicable to each Debtor's directors, officers, and managers in respect of all Post-Effective Date Debtors' Assets; *provided, however*, that, the Plan Administrator may continue to consult with or employ the Debtors' former directors, officers, employees, and managers in its reasonable discretion. For the avoidance of doubt, on the Effective Date, the Plan Administrator shall assume all management and control of both Farms and Ranches.

**5.7.2     Dissolution of the Debtors.** Each of the Debtors may be dissolved by the Plan Administrator in its reasonable discretion and the Plan Administrator may file any certificates of cancellation or similar documents as may be appropriate in connection with dissolution of either Debtor.

**5.7.3     Corporate Documents and Corporate Authority.** On the Effective Date, the certificates of incorporation, bylaws, partnership agreements, and articles of organization, as applicable, of both Debtors shall be deemed amended to the extent necessary to carry out the provisions of the Plan. The entry of the Confirmation Order shall constitute authorization for the Debtors and the Plan Administrator to take or cause to be taken all actions (including, if applicable, Corporate Actions) necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation.  On the date the Confirmation Order becomes a Final Order, the Postpetition Corporate Actions shall be deemed null and void and as never having had effect.

**5.8     Post-Effective Date Debtors/Plan Administrator.**

**5.8.1     Appointment.** On and after the Effective Date, the Plan Administrator shall be appointed. The compensation of the Plan Administrator shall be agreed to by the Debtors and the Settling Parties and disclosed prior to the Confirmation Hearing, provided that regular hourly compensation shall be deemed acceptable in the absence

of an alternative agreement. The Plan Administrator may employ, without further order of the Bankruptcy Court, legal counsel and other professionals as necessary to assist in carrying out his duties and may compensate and reimburse the reasonable expenses of those professionals without further order of the Bankruptcy Court in accordance with the Plan and Plan Administrator Agreement. In the event that the initial Plan Administrator resigns, or is no longer available for any reason, then the successor Plan Administrator shall be selected by unanimous agreement of Tyson, Segale, and Karen Easterday (or order of the Bankruptcy Court), and notice of such selection shall be filed with the Bankruptcy Court. Without limiting the generality of the foregoing, in the event of any dispute over removal or selection of the Plan Administrator, including whether or not cause exists, any of the Plan Administrator, Tyson, Segale, or Karen Easterday may request the guidance and order of the Bankruptcy Court.

**5.8.2** <u>Vesting of Post-Effective Date Debtors' Assets.</u> On the Effective Date, the Post-Effective Date Debtors will be automatically vested with all of the Debtors' and the Estates' respective rights, title, and interest in and to all Post-Effective Date Debtors' Assets.[4] Except as specifically provided in the Plan or the Confirmation Order, the Post-Effective Date Debtors' Assets shall automatically vest in the Post-Effective Date Debtors free and clear of all Claims, Liens, or interests, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The Plan Administrator shall be the exclusive administrator of the Post-Effective Date Debtors' Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding all Post-Effective Date Debtors' Assets. The Post-Effective Date Debtors shall hold and distribute the Post-Effective Date Debtors' Assets in accordance with the provisions of the Plan, provided further, that the Plan Administrator will have the power and discretion to close the Farms bankruptcy case following making the completion of all required Distributions to the Holders of Allowed Claims against the Farms Estate and any remaining Post-Effective Date Debtors' Assets shall be fully vested in the Post-Effective Date Ranches Debtor; *provided that*, notwithstanding the foregoing sentence, in the event a Holder of an Allowed Claim against the Farms Estate does not receive the full treatment or distribution afforded such a Holder on the Effective Date and the Farms bankruptcy case is closed, such Holder shall be entitled to receive its treatment or distribution from the Post-Effective Date Ranches Debtor.

**5.8.3** <u>Authority.</u> The Plan Administrator shall have the authority and right on behalf of the Debtors, the Post-Effective Date Debtors, and the Estates and without the

---

[4] For the avoidance of doubt, the Post-Effective Date Debtors' Assets do not include the North Lot Actions or the Canyon Farm Avoidance Actions.

21-00141-WLH11   Doc 1814   Filed 07/26/22   Entered 07/26/22 10:37:04   Pg 77 of 244

need for Bankruptcy Court approval (in each case, unless otherwise provided in the Plan) to carry out and implement all applicable provisions of the Plan, including to:

(a)     review, reconcile, compromise, settle, or object to Claims and resolve such objections as set forth in the Plan;

(b)     calculate and make Distributions and calculate and establish reserves under and in accordance with the Plan;

(c)     retain, compensate, and employ professionals and other Persons to represent the Plan Administrator with respect to and in connection with its rights and responsibilities;

(d)     establish, maintain, and administer documents and accounts of the Debtors or Post-Effective Date Debtors as appropriate, which shall be segregated to the extent appropriate in accordance with the Plan;

(e)     maintain, conserve, collect, settle, and protect the Post-Effective Date Debtors' Assets (subject to the limitations described herein);

(f)     sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of the Post-Effective Date Debtors' Assets, including the Distributable Assets and the Net Distributable Assets, or any part thereof or interest therein upon such terms as the Plan Administrator determines to be necessary, appropriate, or desirable;

(g)     negotiate, incur, and pay the Post-Effective Date Debtors' Expenses;

(h)     prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtors or Post-Effective Date Debtors that are required under the Plan, by any governmental unit, or by applicable law, including but not limited to filing any reports required by the Bankruptcy Code or Bankruptcy Rules that are due to be filed after the Effective Date and paying any fees required by 28 U.S.C. § 1930 that are due to be paid after the Effective Date;

(i)     compile and maintain the official claims register, including for purposes of making initial and subsequent Distributions under the Plan;

(j)     take such actions as are necessary or appropriate to wind-down and dissolve the Debtors or the Post-Effective Date Debtors;

(k)     comply with the Plan, exercise the Plan Administrator's rights, and perform the Plan Administrator's obligations; and

(l)     exercise such other powers as deemed by the Plan Administrator to be necessary and proper to implement the Plan.

To the extent necessary to give full effect to its administrative rights and duties under the Plan, the Plan Administrator shall be deemed to be vested with all rights, powers, privileges, and authorities of (i) an appropriate corporate or partnership director, officer, or manager of each of the Debtors under any applicable non-bankruptcy law and (ii) a "trustee" of each of the Debtors under chapter 7 of the Bankruptcy Code and section 1106 of the Bankruptcy Code.

**5.8.4** <u>**Limitation of Liability.**</u> The Plan Administrator shall enjoy all of the rights, powers, immunities, and privileges applicable to a Bankruptcy Code chapter 7 trustee with respect to limitations of liability. The Plan Administrator may, in connection with the performance of its functions, in its sole and absolute discretion, consult with its attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such Persons, regardless of whether such advice or opinions were in writing. Notwithstanding such authority, the Plan Administrator shall be under no obligation to consult with any such attorneys, accountants, advisors, or agents, and its determination not to do so shall not result in the imposition of liability on the Plan Administrator unless such determination is based on willful misconduct, gross negligence, or fraud. Persons dealing with the Plan Administrator shall look only to the Post-Effective Date Debtors' Assets to satisfy any liability incurred by the Plan Administrator to such Person in carrying out the terms of the Plan, and the Plan Administrator shall have no personal obligation to satisfy such liability.

**5.8.5** <u>**Indemnification.**</u> The Post-Effective Date Debtors shall indemnify the Post-Effective Date Indemnified Parties for, and shall defend and hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without gross negligence or willful misconduct on the part of the Post-Effective Date Indemnified Parties (which gross negligence or willful misconduct, if any, must be determined by a final, non-appealable order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by such Post-Effective Date Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan. An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence or willful misconduct. In addition, the Post-Effective Date Debtors shall, to the fullest extent permitted by law, indemnify, defend, and hold harmless the Post-Effective Date Indemnified Parties, from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including attorneys' fees arising out of or due to

their actions or omissions, or consequences of such actions or omissions, with respect to the Post-Effective Date Debtors or the implementation or administration of the Plan if such Post-Effective Date Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Post-Effective Date Debtors. To the extent the Post-Effective Date Debtor indemnifies, defends, and holds harmless any Post-Effective Date Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Plan Administrator in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as Post-Effective Date Debtors' Expenses of the Post-Effective Date Debtors. The costs and expenses incurred in enforcing the right of indemnification in this Section 5.8.5 shall be paid by the Post-Effective Date Debtors.

5.8.6   **Insurance.** The Plan Administrator shall be authorized, but not required, to obtain any insurance coverages deemed to be reasonably necessary, at the Post-Effective Date Debtors' sole expense, for itself and its respective agents, including coverage with respect to the liabilities, duties, and obligations of the Plan Administrator.

5.8.7   **Tax Reporting**.

(a)   The Plan Administrator shall timely file any tax returns relating to the Debtors or the Post-Effective Date Debtors.

(b)   The Post-Effective Date Debtors shall be responsible for timely payment of all taxes (if any) imposed on and payable by the Post-Effective Date Debtors, the Debtors, or any Post-Effective Date Debtors' Assets.  For the avoidance of doubt, the Post-Effective Date Debtors will not be responsible for any Easterday Family Tax Payments.

(c)   The Plan Administrator shall distribute such tax-related notices, beneficiary statements, and information returns, as applicable, to the Holders of Allowed Claims as are required by applicable law or that the Plan Administrator determines are otherwise necessary or desirable.

(d)   The Plan Administrator is authorized to file a request for expedited determination under Bankruptcy Code section 505(b) for any tax returns filed with respect to the Debtors.

5.8.8   **Cash Investments.** The Plan Administrator may invest Cash of the Post-Effective Date Debtors, including any earnings thereon or proceeds therefrom, which investments, for the avoidance of doubt, will not be required to comply with Bankruptcy Code section 345(b).

**5.8.9** **Pursuit and Resolution of Post-Effective Date Debtors' Causes of Action.** The Plan Administrator, as successor in interest to the Debtors and the Estates, may, and will have the exclusive right, power, and interest on behalf of itself, the Debtors, and the Estates to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all Post-Effective Date Debtors' Causes of Action without any further order of the Bankruptcy Court, except as otherwise provided in the Plan. From and after the Effective Date, the Plan Administrator, in accordance with Bankruptcy Code section 1123(b)(3), shall serve as representative of the Estates with respect to any and all Post-Effective Date Debtors' Causes of Action that were Estate Assets and shall retain and possess the right to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all Post-Effective Date Debtors' Causes of Action in any court or other tribunal.

The Plan Administrator may seek Bankruptcy Court approval of any individual or global settlement of Causes of Action.

**5.8.10** **No Successor Liability**. Except as otherwise expressly provided in this Plan and Confirmation Order, the Plan Administrator and the Post-Effective Date Debtors (i) are not, and shall not be deemed to assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations or the assets of the Debtors prior to the Effective Date; (ii) are not, and shall not be, successors to the Debtors by any reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date; and (iii) shall not have any successor or transferee liability of any kind or character.

**5.9** **Preservation of Privileges and Defenses.** The actions taken by the Debtors, the Post-Effective Date Debtors, the Plan Administrator, FRI, or any of their respective Related Parties in connection with the Plan shall not be (or be deemed to be) a waiver of any privilege or defense of the Debtors, the Post-Effective Date Debtors, or FRI as applicable, including any attorney-client privilege or work-product doctrine. Notwithstanding any Debtors providing any privileged information related to any Post-Effective Date Debtors' Causes of Action to the Plan Administrator, the Post-Effective Date Debtors, or any Person associated with any of the foregoing, such privileged information shall be without waiver in recognition of the joint, common, or successor interest in prosecuting the Post-Effective Date Debtors Causes of Action and shall remain privileged. The Post-Effective Date Debtors shall retain the right to waive their own privileges. Only the Plan Administrator shall have the right to waive the attorney-client privilege, work-product doctrine, or other protections as to the Debtors and the Post-Effective Date Debtors; *provided that*, in the event any such protections are

21-00141-WLH11    Doc 1814    Filed 07/26/22    Entered 07/26/22 10:37:04    Pg 81 of 244

asserted or assertable by FRI, the Plan Administrator shall confer and cooperate with FRI with respect to any decision by the Plan Administrator to waive such protection.

**5.10** **Preservation of Rights of Action.**

**5.10.1** **Maintenance of Avoidance Actions and Causes of Action.** Except as otherwise provided in the Plan or the Confirmation Order, from and after the Effective Date, the Plan Administrator will retain all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Debtors', the Estates', or the Post-Effective Date Debtors' Causes of Action (whether existing as of the Petition Date or thereafter arising), and all Avoidance Actions, all as Post-Effective Date Debtors' Causes of Action, in each case in any court or other tribunal, including in an adversary proceeding Filed in the Chapter 11 Cases. The Plan Administrator, as successor in interest to the Debtors and the Estates, may, and will have the exclusive right, power, and interest on behalf of itself, the Debtors, and the Estates to, enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any or all of the Post-Effective Date Debtors' Causes of Action without notice to or approval from the Bankruptcy Court. In accordance with the Plan, and pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, from and after the Effective Date, the Plan Administrator may compromise and settle the Post-Effective Date Debtors' Causes of Action.

**5.10.2** **Preservation of All Post-Effective Date Debtors' Causes of Action Not Expressly Settled or Released.** The failure to specifically identify in the Disclosure Statement or the Plan any potential or existing Avoidance Actions or Causes of Action as a Post-Effective Date Debtors' Cause of Action is not intended to and shall not limit the rights of the Plan Administrator to pursue any such Avoidance Actions or Causes of Action. Unless a Post-Effective Date Debtors' Cause of Action is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order), the Debtors expressly reserve such Causes of Action for later resolution by the Plan Administrator (including any Avoidance Actions or Causes of Action not specifically identified or of which the Debtors may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist). In addition, the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors or the Plan Administrator is a plaintiff, defendant, or an interested party is fully reserved as against any Person that is not a Released Party, including the plaintiffs or co-defendants in such lawsuits.

**5.10.3  Preservation of Causes of Action Against Rabo and Big Bend.** Notwithstanding anything to the contrary contained in this Plan or the Confirmation Order, the Debtors and Post-Effective Date Debtors retain and preserve all Causes of Action against (i) Rabo Agrifinance LLC, including any affiliates, predecessors, successors or assigns ("Rabo") and (ii) Big Bend Electric Cooperative, Inc. ("Big Bend").  The Causes of Action against Rabo being retained and preserved hereunder include, but are not limited to, Causes of Action with respect to lender liability and aiding and abetting a breach of fiduciary duty in connection with that certain Amended and Restated Loan and Security Agreement dated as of April 28, 2016 (as amended, modified, supplemented, or renewed, the "Rabo Loan Agreement") among Rabo, Farms, Ranches, and the Easterday Family and all documents and instruments related to the Rabo Loan Agreement.  The Causes of Action against Big Bend being retained and preserved hereunder include, but are not limited to, Causes of Action with respect to any capital credits, patronage dividends, or similar rights of the Debtors with respect to Big Bend.  For the avoidance of doubt, upon the Effective Date, all such retained and preserved Causes of Action shall vest in the Post-Effective Date Debtors.

**5.11  Cancellation of Instruments.** Except to the extent necessary to give effect to the treatment of any Holder of an Allowed Claim and except with respect to any executory contracts and unexpired leases that are assumed under the Plan or otherwise assumed and assigned pursuant to a Final Order, any agreement, bond, certificate, contract, indenture, lease, note, security, warrant, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be deemed cancelled on the Effective Date, and all Liens, mortgages, pledges, grants, trusts, and other interests relating thereto shall be automatically cancelled, and all obligations of the Debtors thereunder or in any way related thereto shall be released, *provided, however*, that any of the Interests in Ranches shall be deemed to be held in trust by the Plan Administrator to the extent necessary for the Plan Administrator to perform its duties in the Plan.

**5.12  Insurance Policies.**

**5.12.1  Insurance Policies Remain In Force.**  Up to and including their policy expiration date(s), any and all Insurance Policies in effect as of the Effective Date shall remain in full force and effect according to their terms and the coverage obligations of the insurers and third party administrators under such Insurance Policies shall continue following the Effective Date (including any obligations to pay, defend, and process insured claims).

**5.12.2  Insurance Policies; Employment Practice Liability Policies; Similar Policies.**  Nothing contained in this Plan shall affect or impair the rights of any non-Debtor insured persons covered under any Insurance Policy, which expressly includes any director and officer, employment practices, or similar liability Insurance Policies

(including, without limitation, policies for the benefit of the Debtors' directors, officers, employees, members, managers, or similar persons who served in such capacity either before or after the Petition Date).

**5.13** **Settlement of Avoidance Actions Against Tyson.** Notwithstanding anything in the Plan to the contrary, on the Effective Date, all Avoidance Actions and any possible objections, defenses, challenges, setoffs, recoupment, or other basis for challenging or diminishing the Tyson Claim are deemed settled for a deemed payment of $29,050,000, including but not limited to any claims relating to the Tyson Avoidance Action. The net effect of such deemed settlement has been incorporated into the Plan, among other things through the allocation of Initial Net Distributable Proceeds among the Class 4 Initial Payment, the Class 5 Initial Payment, and the Class 6 Initial Payment.

## ARTICLE VI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1** **Rejection of Executory Contracts and Unexpired Leases.** Except for any Executory Contracts of the Debtors: (i) that previously were assumed or rejected by an order of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code; (ii) as to which a motion for approval of the assumption or rejection of such contract or lease has been Filed and served prior to, and remains pending as of, the Effective Date; or (iii) that were previously assumed and assigned to FRI, each Executory Contract and Unexpired Lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date. Nothing herein is intended to affect the validity of contracts and leases entered into by the Debtors on or after the Petition Date, or the rights of the Debtors thereunder, which shall remain in full force and effect after the Effective Date in accordance with their terms.

The Insurance Policies shall not be considered Executory Contracts for purposes of subsection (a), above. As discussed in section 5.12 above, the Insurance Policies shall remain in full force and effect following the Effective Date.

**6.2** **Rejection Claims Bar Date.** Any Rejection Claim or other Claim for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be Filed and served no later than the Rejection Claims Bar Date. Any such Rejection Claims that are not timely Filed and served will be forever disallowed, barred, and unenforceable, and Persons holding such Claims will not receive and will be barred from receiving any Distributions on account of such untimely Claims. If one or more

Rejection Claims are timely Filed pursuant to the Plan, the Post-Effective Date Debtors may object to any Rejection Claim on or prior to the Claim Objection Deadline. For the avoidance of doubt, the Rejection Claims Bar Date established by the Plan does not alter any rejection claims bar date established by a prior order of the Bankruptcy Court with respect to any executory contract or unexpired leases that was previously rejected in these Chapter 11 Cases.

**6.3    Previously Assumed and Assigned Executory Contracts.** Nothing in the Plan or the Plan Supplement, or any Schedule or Exhibit relating to the foregoing, shall alter or affect the assumption and assignment, or sale, of those contracts and leases identified in or related to the Purchase and Sale Agreement, and neither the Plan, Plan Supplement, or any Schedule relating to the foregoing shall affect or alter the Debtors' obligations under the Purchase and Sale Agreement, including without limitation under the Temporary Lease Agreement, as they relate to the assumed and assigned contracts and leases identified thereunder, during the postpetition period prior to the Effective Date.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

**7.1    Timing of Distributions for Allowed Claims.** Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to Holders of Allowed Claims as of the applicable Distribution Date shall be made on or as soon as practicable after the applicable Distribution Date. Distributions made as soon as reasonably practicable after the Effective Date or such other date set forth herein shall be deemed to have been made on such date.

**7.2    Calculating Distributions and Related Matters.** The Plan Administrator shall undertake in its reasonable discretion to make in accordance with the Plan all calculations of Available Cash, Net Distributable Assets, and of other amounts for or relating to Distributions for Holders of Allowed Claims to be made from the Post-Effective Date Debtors or for reserves for Holders of Contingent Claims, Disputed Claims, and Unliquidated Claims to be established by the Post-Effective Date Debtors, and, may establish and holdback from Distributions reasonable reserves for other contingencies.

**7.3    Interest and Other Amounts Regarding Claims.** Except to the extent provided (i) in Bankruptcy Code section 506(b) and Allowed by a Final Order or otherwise agreed, (ii) in the Plan, or (iii) in the Confirmation Order, postpetition interest shall not accrue or be paid on any Claims, and no Holder of an Allowed Claim shall be entitled to interest, penalties, fees, or late charges accruing or chargeable on any Claim from and after the Petition Date.

**7.4 Distributions by Plan Administrator as Disbursing Agent.** The Plan Administrator may serve as the disbursing agent under the Plan, or may designate another party as disbursing agent, with respect to Distributions required pursuant to the Plan. The Plan Administrator shall not be required to give any bond or surety or other security for the performance of any duties as disbursing agent.

**7.5 Means of Cash Payment.** Cash payments under the Plan shall be made, at the option and in the sole discretion of the Plan Administrator, by (i) checks drawn on or (ii) wire transfer, electronic funds transfer, or ACH from a domestic bank. Cash payments to foreign Creditors may be made, at the option and in the sole discretion of the Plan Administrator by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to the Plan in the form of checks shall be null and void if not cashed within 180 calendar days of the date of the issuance thereof. Requests for reissuance of any check within 180 calendar days of the date of the issuance thereof shall be made directly to the Plan Administrator.

**7.6 Form of Currency for Distributions.** All Distributions under the Plan shall be made in U.S. Dollars. Where a Claim has been denominated in foreign currency on a proof of claim, the Allowed amount of such Claim shall be calculated in U.S. Dollars based upon the currency conversion rate in place as of the Petition Date and in accordance with Bankruptcy Code section 502(b).

**7.7 Fractional Distributions.** Notwithstanding anything in the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

**7.8 De Minimis Distributions.** If the amount of Cash to be distributed to the Holder of an Allowed Claim is less than fifty dollars ($50) on a particular distribution date, the Plan Administrator may hold the Cash distributions to be made to such Holders until the aggregate amount of Cash to be distributed to each applicable Holder is in an amount equal to or greater than fifty dollars ($50). Notwithstanding the preceding sentence, if the aggregate amount of Cash distributions owed to any Holder of an Allowed Claim under the Plan never equals or exceeds fifty dollars ($50), then the Plan Administrator shall not be required to distribute Cash to any such Holder.

**7.9 No Distributions With Respect to Certain Claims.** Notwithstanding anything in the Plan to the contrary, no Distributions or other consideration of any kind shall be made on account of any Contingent Claim, Disputed Claim, or Unliquidated Claim unless and until such Claim becomes an Allowed Claim, and then only to the extent that such Claim becomes an Allowed Claim and as provided under the Plan for such

Allowed Claim. Nonetheless, in undertaking the calculations concerning Allowed Claims under the Plan, including the determination of Distributions due to the Holders of Allowed Claims, each Contingent Claim, Disputed Claim, or Unliquidated Claim shall be treated as if it were an Allowed Claim (which, for Unliquidated Claims, shall mean they shall be treated as if Allowed in such amounts as determined in the reasonable discretion of the Plan Administrator), except that if the Bankruptcy Court estimates the likely portion of such a Claim to be Allowed or authorized or the Bankruptcy Court or the Holder of such Claim and the Plan Administrator otherwise determine the amount or number that would constitute a sufficient reserve for such a Claim, such amount or number as determined by the Bankruptcy Court or by agreement of the Holder of such Claim and the Plan Administrator shall be used with respect to such Claim. Distributions due in respect of a Contingent Claim, Disputed Claim, or Unliquidated Claim shall be held in reserve by the Plan Administrator in one or more Distribution Reserves. The Plan Administrator may elect to treat any Distribution Reserve as a "Disputed Ownership Fund," pursuant to Treasury Regulation section 1.468B-9(c)(2)(ii). As outlined in this election, Creditors holding such Claims are not treated as transferors of the money or property transferred to the "Disputed Ownership Fund." For U.S. federal income tax purposes, a "Disputed Ownership Fund" is treated as the owner of all assets that it holds. A "Disputed Ownership Fund" is treated as a C corporation for purposes of the Internal Revenue Code unless all assets transferred to the Disputed Ownership Fund are passive investment assets for tax purposes, in which case it will be treated as a "qualified settlement fund" for U.S. federal income tax purposes. A "Disputed Ownership Fund" must file all required income and information tax returns and make all tax payments.

**7.10 <u>Distributions and Transfers Upon Resolution of Contingent Claims, Disputed Claims, or Unliquidated Claims.</u>** After an objection to a Disputed Claim is resolved or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, an amount of Cash held in the Disputed Ownership Fund corresponding to the amount of any resulting Allowed Claim shall be transferred, net of any tax payable by the Disputed Ownership Fund with respect to the transfer, in a taxable transaction to the Holder of the formerly Contingent Claim, Disputed Claim, or Unliquidated Claim. Upon each such resolution of a Claim against the Disputed Ownership Fund and such transfer with respect to any resulting Allowed Claim, any remaining Cash in the Disputed Ownership Fund that had been held with respect to such formerly Contingent Claim, Disputed Claim, or Unliquidated Claim prior to its resolution shall be transferred, net of any tax payable by the Disputed Ownership Fund with respect to such transfers, for payment, allocation, or reserve in accordance with the Plan for (a) unpaid or unutilized amounts for Post-Effective Date Debtors' Expenses or (b) any post-Confirmation reserve requirements of the Post-Effective Date Debtors in connection with the Plan, any agreements, or any Bankruptcy Court orders. To the extent any such remaining Cash is not so utilized, it shall be

considered Net Distributable Assets and Available Cash for distribution to the Holders of Allowed Claims in Classes 5 and 6 on a Pro Rata basis, net of any tax payable by the Disputed Ownership Fund with respect to the respective transfers.

**7.11** **Delivery of Distributions.** Distributions shall be made by the Plan Administrator to Holders of the Allowed Claims as of the record date set for such Distribution. Distributions to Holders of Allowed Claims shall be made (a) at the addresses set forth in the proofs of claim Filed by such Holders, (b) at the addresses reflected in the Schedules if no proof of claim has been Filed, or (c) at the addresses set forth in any written notices of address changes delivered to the Debtors or the Plan Administrator. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Plan Administrator is notified of such Holder's then-current address. The responsibility to provide the Claims Agent or the Plan Administrator with a current address of a Holder of an Allowed Claim shall always be the responsibility of such Holder. Amounts in respect of undeliverable Distributions made by the Plan Administrator shall be held in trust on behalf of the Holder of the Allowed Claim to which they are payable by the Plan Administrator until the earlier of the date that such undeliverable Distributions are claimed by such Holder and 180 calendar days after the date the undeliverable Distributions were made.

**7.12** **Application of Distribution Record Date & Other Transfer Restrictions.** At the close of business on the Distribution Record Date, the claims registers for all Claims shall be closed, and there shall be no further changes in the record holders of any Claims. Except as provided herein, the Post-Effective Date Debtors and their Related Parties shall have no obligation to recognize any putative transfer of Claims occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the claims registers as of the close of business on the Distribution Record Date irrespective of the number of Distributions to be made under the Plan to such Persons or the date of such Distributions. In addition, the Post-Effective Date Debtors and their Related Parties shall have no obligation to recognize any putative transfer of General Unsecured Claims occurring at any time prior to the Effective Date to which the Debtors did not expressly consent and shall be entitled instead to recognize and deal for all purposes hereunder with only the Holders of General Unsecured Claims as reflected on the claims registers.

**7.13** **Withholding, Payment, and Reporting Requirements Regarding Distributions.** All Distributions under the Plan shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment, and reporting requirements. The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements, including, to the

extent such information is not already available to the Plan Administrator, requiring each Holder of a Claim to provide an executed current Form W-9, Form W-8, or similar tax form as a prerequisite to receiving a Distribution. Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed on the Post-Effective Date Debtors in connection with such Distribution; and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements reasonably satisfactory to the Plan Administrator for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed in connection with such Distribution.

**7.14    Defenses and Setoffs.** On and after the Effective Date, the Plan Administrator shall have all of the Debtors' and the Estates' rights under Bankruptcy Code section 558. Except as otherwise expressly provided in this Plan, nothing under the Plan shall affect the rights and defenses of the Debtors, the Estates, or the Post-Effective Date Debtors in respect of any Claim, including all rights in respect of legal and equitable objections, defenses, challenges, setoffs, or recoupment against such Claims. Accordingly, and except as otherwise expressly provided in this Plan, the Plan Administrator may, but shall not be required to, set off against any Claim or any Allowed Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors, the Estates, or the Post-Effective Date Debtors, as applicable, may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim or rights that may exist against such Holder.

**7.15    Allocation of Distributions.** All Distributions received under the Plan by Holders of Claims shall be deemed to be allocated first to the principal amount of such Claim, as determined for U.S. federal income tax purposes, and then to accrued interest, if any, with respect to such Claim through the Petition Date.

**7.16    Joint Distributions.** The Plan Administrator may, in its sole discretion, make Distributions jointly to any Holder of a Claim and any other Person that the Plan Administrator has determined to have an interest in such Claim.

**7.17    Forfeiture of Distributions.** If the Holder of a Claim fails to cash a check payable to it within the time period set forth in Section 7.5, fails to claim an undeliverable Distribution within the time limit set forth in Section 7.11, or fails to

complete and return to the Plan Administrator the appropriate Form W-8 or Form W-9 within 180 calendar days after a request for the completion and return of the appropriate form pursuant to Section 7.13 (or such later time as approved by a Bankruptcy Court order), then such Holder shall be deemed to have forfeited its right to any reserved and future Distributions under the Plan. Any such forfeited Distributions shall be deemed Available Cash for all purposes, notwithstanding any federal or state escheat laws to the contrary.

# ARTICLE VIII

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO

**8.1** **Objections to and Resolution of Disputed Claims, Including Any Claims of Excluded Parties.** From and after the Effective Date, the Plan Administrator shall have the exclusive authority to compromise, resolve, and Allow any Disputed Claim without the need to obtain approval from the Bankruptcy Court, and any agreement entered into by the Plan Administrator with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim.

**8.2** **Claim Objections.** All objections to Claims (other than Professional Fee Claims, which shall be governed by Section 12.2 of the Plan) shall be Filed by the Plan Administrator on or before the Claim Objection Deadline, which date may be extended by order of the Bankruptcy Court. If a timely objection has not been Filed to a proof of claim or the Schedules have not been amended with respect to a Claim that was Scheduled by the Debtors but was not Scheduled as contingent, unliquidated, or disputed, then the Claim to which the proof of claim or Scheduled Claim relates will be treated as an Allowed Claim.

**8.3** **Estimation of Certain Claims.** The Plan Administrator may, at any time, move for a Bankruptcy Court order estimating any Contingent Claim, Disputed Claim, or Unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction and power to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. The estimated amount of any Claim so determined by the Bankruptcy Court shall constitute the maximum recovery that the Holder thereof may recover after the ultimate liquidation of its Claim, irrespective of the actual amount that is ultimately allowed. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another.

**8.4** **Distributions Following Allowance.** Once a Contingent Claim, a Disputed Claim, or an Unliquidated Claim becomes an Allowed Claim, in whole or in part, including pursuant to the Plan, the Plan Administrator shall distribute from the Distribution Reserves to the Holder thereof the Distributions, if any, to which such Holder is then entitled under the Plan. Such Distributions, if any, shall be made on the next Distribution Date after the date on which the order or judgment allowing any such Claim becomes a Final Order or on which the Claim otherwise becomes an Allowed Claim, or, if there is no applicable Distribution Date, then within ninety (90) calendar days after the date on which the Claim becomes an Allowed Claim. Unless otherwise specifically provided in the Plan or allowed by a Final Order, no interest shall be paid on Contingent Claims, Disputed Claims, or Unliquidated Claims that later become Allowed Claims.

**8.5** **Disposition of Assets in Reserves After Disallowance.** After an objection to a Disputed Claim is sustained or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, such that the Contingent Claim, Disputed Claim, or Unliquidated Claim is a Disallowed Claim in whole or in part, any Cash held in an applicable Distribution Reserve in respect of the particular Claim in excess of the Distributions due on account of any resulting Allowed Claim shall be used or distributed in a manner consistent with the Plan.

## ARTICLE IX

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**9.1** **Conditions to the Effective Date.** The occurrence of the Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to Section 9.2 of the Plan:

(i) the Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance reasonably satisfactory to the Settling Parties;

(ii) the Confirmation Order shall not be subject to any stay;

(iii) all governmental and material third-party approvals and consents necessary in connection with the transactions contemplated by the Plan, if any, shall have been obtained and be in full force and effect, including, but not limited to, the DOJ's written consent to the settlements and releases of properties and interests as set forth in the Global Settlement and this Plan;

(iv) all actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of this Plan are effected or executed and

delivered, as applicable, including, but not limited to, each Easterday Family Contribution Instrument;

(v)     the Allowed Class 1 Claims (Secured Claims) and Class 3 Claims (Farms General Unsecured Claims) shall not exceed $21,100,000 and such condition must be acknowledged as satisfied or waived by Tyson, Segale, and the Ranches Committee on or before June 30, 2022 in writing by email to undersigned counsel for the Debtors;

(vi)    the Additional Easterday Family Releasing Parties shall have either (a) executed and delivered in writing releases of the Easterday Family Released Parties on account of any claims or causes of action arising from or related to such party's contractual agreements with the Easterday Family Released Parties or (b) returned a Ballot that accepts the Plan and does not opt out of the Third Party Releases;

(vii)   Jody Easterday, Cutter Easterday, Cole Easterday, and Clay Easterday shall have executed and delivered the Mutual Release Agreement;

(viii)  the Confirmation Order shall affirm the validity and enforceability of the various releases granted under the Plan among the Settling Parties and others, and such releases shall be in full force and effect; and

(ix)    the Professional Fee Reserves are funded pursuant to Section 12.2 hereof.

**9.2     Waiver of Conditions to the Effective Date.** The conditions to the Effective Date may be waived in writing by the Debtors and the Settling Parties, in the reasonable discretion of the Debtors and the Settling Parties, at any time without further order of the Bankruptcy Court.

**9.3     Effect of Non-Occurrence of Conditions to the Effective Date.** If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Sections 9.1 and 9.2 of the Plan by July 31, 2022, upon notification filed by the Debtors or any of the Settling Parties with the Bankruptcy Court, (i) the Confirmation Order shall be vacated; (ii) no Distributions shall be made; (iii) the Debtors, the Estates, and all Creditors shall be restored to the *status quo* as of the day immediately preceding the Confirmation Hearing as though the Confirmation Order was not entered; (iv) all of the Debtors' and the Estates' obligations with respect to Claims shall remain unchanged and nothing contained in the Plan shall constitute a waiver or release of any Causes of Action by or against the Debtors, the Estates, or any other Person or prejudice in any manner the rights, claims, or defenses of the Debtors, the Estates, or any other Person; and (v) the Easterday Family may exercise their rights under the Abeyance and Suspense Order (Adv. Pro. No 22-80008, Docket No. 39).

**9.4** **Notice of the Effective Date.** Promptly after the occurrence of the Effective Date, the Post-Effective Date Debtors or its agents shall mail or cause to be mailed to all Creditors a notice that informs such Creditors of (i) entry of the Confirmation Order and the resulting confirmation of the Plan; (ii) the occurrence of the Effective Date; (iii) the rejection of executory contracts and unexpired leases pursuant to the Plan, as well as the deadline for the filing of resulting Rejection Claims; (iv) the deadline established under the Plan for the filing of Administrative Claims; and (v) such other matters as the Plan Administrator finds appropriate.

**9.5** **Payment of Plan Sponsor Contribution.** Promptly after the occurrence of the Effective Date, FRI shall deposit the Plan Sponsor Contribution in one or more deposit accounts at the direction of either (a) the Debtors, (b) the Plan Administrator, or (c) in the event of any disputes between and among the foregoing, an order of the Bankruptcy Court.

<h2 style="text-align:center">ARTICLE X</h2>

<h2 style="text-align:center">RELEASES, INJUNCTION, AND RELATED PROVISIONS</h2>

**10.1** **Debtors' Releases.**

**(a)** **On the Effective Date and to the fullest extent authorized by applicable law, the Released Parties and their respective property will be expressly, unconditionally, generally, individually, and collectively released, acquitted, and discharged by the Debtors on behalf of themselves, their estates, the Post-Effective Date Debtors, and the Plan Administrator (such that the Post-Effective Date Debtors and Plan Administrator will not hold any Claims or Causes of Action released pursuant to this Plan), for the good and valuable consideration provided by each of the Released Parties, from any and all actions, claims, debts, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative or deficiency claims asserted or that could be asserted by or on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by state law (including Washington State partnership law), statute, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, any of the Debtors' present or former assets, the Released Parties' interests in or management of the Debtors, this Plan, the Disclosure Statement, these Chapter 11 Cases, or the Sale Transaction, including those that the Debtors, the Post-Effective Date Debtors, or the Plan Administrator would have been legally entitled to assert or that any Holder of a**

Claim against or interest in the Debtors or any other Entity could have been legally entitled to assert derivatively or on behalf of the Debtors or their Estates; *provided*, *however*, that the foregoing Debtors' Releases shall not operate to waive or release any Claims or Causes of Action of the Debtors or their Estates against a Released Party arising under any contractual obligation owed to the Debtors, the Post-Effective Date Debtors, or the Plan Administrator that is entered into pursuant to this Plan.

(b)     Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtors' Releases set forth in Section 10.1(a) above, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Debtors' Releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of the Claims released by the Debtors' Releases; (3) in the best interests of the Estates and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar against any of the Estates, the Post-Effective Date Debtors, or the Plan Administrator, asserting any Claim or Cause of Action released pursuant to the Debtors' Releases.

(c)     The foregoing Debtors' Releases are an integral component of the Global Settlement.

**10.2**     <u>Third Party Releases</u>.

(a)     On the Effective Date and to the fullest extent authorized by applicable law, the Releasing Parties shall be deemed to have expressly, unconditionally, generally, individually, and collectively, released and acquitted the Released Parties and their respective property from any and all actions, Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative or deficiency claims asserted or that could be asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that such Releasing Party (whether individually or collectively) ever had, now has, or hereafter can, shall or may have, based on or relating to, or in any manner arising from or related in any way to the Debtors, any of the Debtors' present or former assets, the Released Parties' interests in or management of the Debtors, the business, or contractual arrangements between the Debtors and any Released Party, this Plan, the Disclosure Statement, the Chapter 11 Cases, or the Sale Transaction, including those that the Debtors, the Post-Effective Date Debtors, or the Plan Administrator would have been legally

21-00141-WLH11     Doc 1814     Filed 07/26/22     Entered 07/26/22 10:37:04     Pg 94 of 244

entitled to assert or that any Holder of a Claim against or interest in the Debtors or any other Entity could have been legally entitled to assert derivatively or on behalf of the Debtors or their Estates, including any deficiency claim under Washington State partnership law, except for (1) Tyson-Segale Preserved Claims, (2) Cody Easterday Preserved Claims, and (3) the right to receive Distributions from the Debtors, the Post-Effective Date Debtors, or the Plan Administrator on account of an Allowed Claim against the Debtors pursuant to this Plan.  For the avoidance of doubt, the Releasing Parties shall include (1) the Released Parties, (2) Holders of Interests except as carved out for certain Creditors, and (3) all Holders of Claims that (a) vote to accept the Plan and (b) do not affirmatively opt out of the Third Party Release provided by this section pursuant to a duly executed ballot.  Notwithstanding anything to the contrary contained herein, in no event shall an Entity that (1) does not vote to accept or reject this Plan, (2) votes to reject this Plan, or (3) appropriately marks the ballot to opt out of the Third Party Release provided in this section and returns such ballot in accordance with the Solicitation Procedures Order, be a Releasing Party unless they have otherwise agreed to a release.

(b)    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third Party Releases set forth in Section 10.2(a) above, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good-faith settlement and compromise of the Claims released by the Third Party Releases; (3) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar against any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third Party Releases.

(c)    The foregoing Third Party Releases are an integral component of the Global Settlement.

### 10.3    Exculpation and Limitation of Liability.

(a)    The Exculpated Parties will neither have nor incur any liability to any entity for any claims or Causes of Action arising on or after the Petition Date and prior to the Effective Date for any act taken or omitted to be taken in connection with, or related to (i) the Chapter 11 Cases, (ii) the Sale Transaction (including the leaseback by FRI of certain FRI Assets to the Debtors pursuant to the Temporary Lease Agreement), (iii) any other sales consummated during the Chapter 11 Cases,

**(iv) the Global Settlement Term Sheet, (v) formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the consummation of this Plan, or any other contract, instrument, release or other agreement or document created or entered into in connection with this Plan, including the Disclosure Statement, (vi) any other postpetition act taken or omitted to be taken in connection with or in contemplation of Confirmation of this Plan, or (vii) the approval of the Disclosure Statement and Plan or Confirmation or Consummation of the Plan, *provided*, *however*, that the foregoing provisions will have no effect on the liability of any entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence, actual fraud, or willful misconduct.**

**(b)     The Exculpated Parties have, and upon Confirmation of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and Distributions pursuant to the Plan, and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.**

**10.4     Injunction.**

(a)     FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

(b)     FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN SECTIONS 10.1 THROUGH 10.3, THE APPLICABLE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED UNDER THIS PLAN OR THE CONFIRMATION ORDER.

(c)     EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO THE PLAN OR

THAT ARE SUBJECT TO THE EXCULPATORY PROVISIONS OF SECTION 10.2, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (IV) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN; AND (V) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM WITH THE PROVISIONS OF THE PLAN TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW.

(d) THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, PROPERTY, OR ESTATES.

(e) ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE PLAN ADMINISTRATOR, THE POST-EFFECTIVE DATE DEBTORS, THE ADMINISTRATIVE AGENT, AND EACH OF THEIR RESPECTIVE ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS, OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE. NOTHING IN THIS SECTION 10.4 SHALL ENJOIN ANY CLAIM OR CAUSE OF ACTION THAT IS NOT RELEASED OR EXCULPATED PURSUANT TO SECTIONS 10.1, 10.2, AND 10.3 OF THIS PLAN OR THE CONFIRMATION ORDER.

(f) NOTWITHSTANDING ANY OTHER PROVISION OF THIS PLAN TO THE CONTRARY, THE DEBTORS SHALL NOT RECEIVE A DISCHARGE.

# ARTICLE XI

## RETENTION OF JURISDICTION AND POWER

**11.1** **Scope of Retained Jurisdiction and Power.** Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain jurisdiction and power over all matters arising in, arising under, or related to the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including jurisdiction and power to do the following:

(a)     except as otherwise Allowed pursuant to the Plan or in the Confirmation Order, Allow, classify, determine, disallow, establish the priority or secured or unsecured status of, estimate, limit, liquidate, or subordinate any Claim, in whole or in part, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims;

(b)     hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b), 1103, and 1129(a)(4);

(c)     hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any Claims arising therefrom;

(d)     effectuate performance of and payments under the provisions of the Plan and enforce remedies on any default under the Plan;

(e)     hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases, including the Post-Effective Date Debtors' Causes of Action;

(f)     enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created, executed, or contemplated in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

(g)     hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, or to maintain the integrity of the Plan following consummation;

(h) consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(i) issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(j) enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(k) hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with any of the foregoing documents and orders;

(l) enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings associated with the Plan or otherwise entered in connection with the Chapter 11 Cases (whether or not any or all of the Chapter 11 Cases have been closed);

(m) except as otherwise limited herein, recover all Estate Assets and Post-Effective Date Debtors' Assets, wherever located;

(n) hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(o) hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

(p) hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, the Bankruptcy Code and title 28 of the United States Code;

(q) resolve any cases, controversies, suits, or disputes related to the Post-Effective Date Debtors, the Plan Administrator, or the Debtors;

(r) enforce the Sale Order; and

(s) enter a final decree closing the Chapter 11 Cases of the Debtors.

**11.2** __Non-Exercise of Jurisdiction.__ If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, the provisions of this Section 11.2 **Error! Reference source not found.** shall have no effect on, and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to, such matter.

## ARTICLE XII

### MISCELLANEOUS PROVISIONS

**12.1** __Administrative Claims.__ Subject to the last sentence of this Section 12.1, all requests for payment of an Administrative Claim arising on or after April 1, 2022 must be filed with the Bankruptcy Court no later than the Administrative Claims Bar Date. In the event of an objection to Allowance of an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. **THE FAILURE TO FILE A MOTION REQUESTING ALLOWANCE OF AN ADMINISTRATIVE CLAIM ON OR BEFORE THE ADMINISTRATIVE CLAIMS BAR DATE, OR THE FAILURE TO SERVE SUCH MOTION TIMELY AND PROPERLY, SHALL RESULT IN THE ADMINISTRATIVE CLAIM BEING FOREVER BARRED AND DISALLOWED WITHOUT FURTHER ORDER OF THE BANKRUPTCY COURT. IF FOR ANY REASON ANY SUCH ADMINISTRATIVE CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISALLOWED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.** Postpetition statutory tax claims shall not be subject to any Administrative Claims Bar Date.

**12.2** __Professional Fee Claims.__ All final requests for payment of Professional Fee Claims to the extent required pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b), or 1103 must be made by application Filed with the Bankruptcy Court and served on counsel to the Plan Administrator and counsel to the U.S. Trustee no later than thirty (30) calendar days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to such applications must be Filed and served on counsel to the Plan Administrator, counsel to the U.S. Trustee, and the requesting Professional on or before the date that is twenty-one (21) calendar days after the date on which the applicable application was served (or such longer period as may be allowed by order of the Bankruptcy Court or by agreement with the requesting Professional). All Professional Fee Claims shall be paid by the Post-Effective Date Debtors to the extent approved by order of the Bankruptcy Court within five (5) Business Days after entry of such order. On the Effective Date, the Post-Effective Date Debtors shall establish the Professional Fee Reserves. The Professional Fee Reserves shall vest in the Post-

Effective Date Debtors and shall be maintained and held in trust by Pachulski Stang Ziehl & Jones LLP in accordance with the Plan. The Post-Effective Date Debtors shall fully fund the Professional Fee Reserves on the Effective Date in an amount that is reasonable acceptable to the Debtors prior to the Confirmation Hearing and that approximates the total projected amount of unpaid Professional Fee Claims on the Effective Date. If the Debtors and the Committees are unable to agree on an amount by which the Professional Fee Reserves are to be funded, then any of those parties may submit the issue to the Bankruptcy Court, which, following notice and a hearing, shall fix the amount of the required funding. All Professional Fee Claims that have not previously been paid, otherwise satisfied or funded to the trust account of Debtors' counsel, or withdrawn shall be paid from the Professional Fee Reserves. Any excess funds in the Professional Fee Reserves shall be released to the Post-Effective Date Debtors to be used for other purposes consistent with the Plan. For the avoidance of doubt, the Professional Fee Reserves are an estimate and shall not be construed as a cap on the Post-Effective Date Debtors' obligation to pay in full Allowed Professional Fee Claims.

**12.3** **Payment of Statutory Fees.** All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date. All such fees that relate to distributions by each Debtor after the Effective Date shall be paid by the Post-Effective Date Debtors. Notwithstanding anything to the contrary in the Plan, the U.S. Trustee shall not be required to file any proofs of claim with respect to quarterly fees payable pursuant to 28 U.S.C. § 1930.

**12.4** **Dissolution of the Committees.** Both of the Committees shall be automatically dissolved on the Effective Date and, on the Effective Date, each member of the Committees (including each Related Party thereof) and each Professional retained by either of the Committees shall be released and discharged from all rights, duties, responsibilities, and obligations arising from, or related to, the Debtors, their membership on either of the Committees, the Plan, or the Chapter 11 Cases, except (i) with respect to any matters concerning any Professional Fee Claims held or asserted by any Professional retained by either of the Committees, and (ii) any appeals of, or related to, the Confirmation Order or any other appeal to which the Committees are a party to.

**12.5** **Modifications and Amendments.**

(a) In the Debtors' reasonable discretion, the Debtors may alter, amend, or modify the Plan under Bankruptcy Code section 1127(a) at any time at or prior to the conclusion of the Confirmation Hearing. All alterations, amendments, or modifications to the Plan must comply with Bankruptcy Code section 1127. The Debtors shall provide

parties in interest with notice of such amendments or modifications as may be required by the Bankruptcy Code, Bankruptcy Rules, or order of the Bankruptcy Court. A Creditor that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Creditor.

(b)     After entry of the Confirmation Order and prior to substantial consummation (as defined in Bankruptcy Code section 1101(2)) of the Plan, the Debtors or the Post-Effective Date Debtors, as applicable, may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement approved with respect to the Plan, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Plan. Such proceedings must comply with Bankruptcy Code section 1127. To the extent required, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or an order of the Bankruptcy Court. A Creditor that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Creditor.

**12.6**     **Severability of Plan Provisions.** If, at or before the Confirmation Hearing, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section 12.6, is valid and enforceable under its terms.

**12.7**     **Compromises and Settlements.** From and after the Effective Date, the Post-Effective Date Debtors may compromise and settle disputes about any applicable Claims or Post-Effective Date Debtors' Causes of Action, without any further approval by the Bankruptcy Court. Until the Effective Date, the Debtors expressly reserve the right to compromise and settle (subject to the approval of the Bankruptcy Court) Claims against them or any Avoidance Actions and Causes of Action belonging to the Estates.

**12.8** **Binding Effect of Plan.** Upon the Effective Date, Bankruptcy Code section 1141 shall become applicable with respect to the Plan and the Plan shall be binding on all Persons to the fullest extent permitted by Bankruptcy Code section 1141(a). Confirmation of the Plan binds each Holder of a Claim or Interest to all the terms and conditions of the Plan, whether or not such Holder's Claim or Interest is Allowed, whether or not such Holder holds a Claim or Interest that is in a Class that is Impaired under the Plan, and whether or not such Holder has accepted the Plan.

**12.9** **Term of Injunctions or Stays.** Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and extant as of the Confirmation Hearing (excluding any injunctions or stays contained in or arising from the Plan or the Confirmation Order), shall remain in full force and effect through and inclusive of the Effective Date.

**12.10** **Revocation, Withdrawal, or Non-Consummation.** The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Hearing and to File subsequent plans. If the Debtors revoke or withdraw the Plan prior to the Confirmation Hearing, or if the Effective Date does not occur, then (a) the Plan shall be null and void in all respects; and (b) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims against, or any Interests in, any Debtor, or any Causes of Action by or against any Debtor or any other Person, (ii) prejudice in any manner the rights of any Debtor or any other Person in any further proceedings involving a Debtor, or (iii) constitute an admission of any sort by any Debtor or any other Person.

**12.11** **Exemption from Transfer Taxes.** Pursuant to Bankruptcy Code section 1146, the vesting of the Post-Effective Date Debtors' Assets in the Post-Effective Date Debtors, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge, or other security interest, or the making or assignment of any lease or sublease, or making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**12.12** **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**12.13** **Transactions on Business Days.** If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, any transactions or other actions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

**12.14 <u>Good Faith</u>.** Confirmation of the Plan shall constitute a conclusive determination that: (a) the Plan, and all the transactions and settlements contemplated thereby, have been proposed in good faith and in compliance with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules; and (b) the solicitation of acceptances or rejections of the Plan has been in good faith and in compliance with all applicable provisions of the Bankruptcy Code, and the Bankruptcy Rules, and, in each case, that the Debtors and all Related Parties have acted in good faith in connection therewith.

**12.15 <u>Governing Law</u>.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), (a) the laws of the State of Washington shall govern the construction and implementation of the Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of incorporation or formation of each Debtor shall govern corporate or limited liability company governance matters with respect to such Debtor; in each case without giving effect to the principles of conflicts of law thereof. Any applicable nonbankruptcy law that would prohibit, limit, or otherwise restrict implementation of the Plan based on (i) the commencement of the Chapter 11 Cases, (ii) the appointment of the Plan Administrator, (iii) the wind down of the Debtors, (iv) the liquidation of some or all of the Post-Effective Date Debtors' Assets, or (v) any other act or action to be done pursuant to or contemplated by the Plan is superseded and rendered inoperative by the Plan and federal bankruptcy law.

**12.16 <u>Notices</u>.** Following the Effective Date, all pleadings and notices Filed in the Chapter 11 Cases shall be served solely on (a) the Post-Effective Date Debtors and their counsel, (b) the U.S. Trustee, (c) any Person whose rights are affected by the applicable pleading or notice, and (d) any Person Filing a specific request for notices and papers on and after the Effective Date.

**12.17 <u>Final Decree</u>.** Upon the Plan Administrator's determination that all Claims have been allowed, disallowed, expunged, or withdrawn and that all of a Post-Effective Date Debtors' Assets have been liquidated, abandoned, or otherwise administered, the Plan Administrator shall move for the entry of the Final Decree with respect to such Debtor and Post-Effective Date Debtor. On entry of the Final Decree, the Plan Administrator and its respective Related Parties, in each case to the extent not previously discharged by the Bankruptcy Court, shall be deemed discharged and have no further duties or obligations to any Person with respect to such Debtor or Post-Effective Date Debtor.

**12.18 <u>Additional Documents</u>.** On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and the Post-Effective Date Debtors, as applicable, and all Holders

receiving Distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other acts as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**12.19 Conflicts with the Plan.** In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, any other order entered in the Chapter 11 Cases, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence; *provided, however*, that the Confirmation Order shall control and take precedence in the event of any inconsistency between the Confirmation Order, any provision of the Plan, and any of the foregoing documents; *provided further, however*, that with respect to the Sale Transaction, the Sale Order shall control and take precedence in the event of any inconsistency between the Sale Order, any provision of the Plan, and any of the foregoing documents, in each case solely with respect to the Sale Transaction.

## ARTICLE XIII

### REQUEST FOR CONFIRMATION AND RECOMMENDATION

**13.1 Request for Confirmation.** The Debtors request confirmation of the Plan in accordance with Bankruptcy Code section 1129.

**13.2 Recommendation.** The Debtors believe that confirmation and implementation of the Plan are the best alternative under the circumstances and urge all Impaired Creditors entitled to vote on the Plan to vote in favor of and support confirmation of the Plan.

Respectfully,

**EASTERDAY RANCHES, INC.**

By: _____*/s/ Peter Richter*_____
Name: Peter Richter
Title: Co-Chief Restructuring Officer

**EASTERDAY FARMS**

By: _____*/s/ Peter Richter*_____
Name: Peter Richter
Title: Co-Chief Restructuring Officer

Submitted by:

Dated: July 14, 2022        BUSH KORNFELD LLP

                                     */s/ Thomas A. Buford, III*
                                     THOMAS A. BUFORD, III (WSBA 52969)
                                     BUSH KORNFELD LLP

                                     RICHARD M. PACHULSKI (admitted *pro hac vice*)
                                     JEFFREY W. DULBERG (admitted *pro hac vice*)
                                     MAXIM B. LITVAK (admitted *pro hac vice*)
                                     PACHULSKI STANG ZIEHL & JONES LLP

                                     *Attorneys for Debtors and Debtors in Possession*

## EXHIBIT A

### ADDITIONAL PARTIES RELEASING
### THE EASTERDAY FAMILY RELEASED PARTIES

- Tyson Fresh Meats, Inc.

- DLL Finance LLC

- The McGregor Company

- John Deere Financial, f.s.b.

- Rabo AgriFinance LLC

- PHI Financial Services, Inc.

- Ag Direct/AgCountry Farm Credit Services, PCA/RDO Equipment Co./Farm Credit Services of America, PCA

- Midland States Bank through it account servicer Orion First Financial LLC

- Segale Properties, LLC

- Paladin Management Group

- Peter Richter

- Scott Avila

- All Holders of Allowed Class 3 Claims that opt out of the Third Party Releases

# EXHIBIT B-1

## 3E PARTNERSHIP INTEREST LIQUIDATION AGREEMENT

**PARTNERSHIP INTEREST LIQUIDATION AGREEMENT**

**THIS PARTNERSHIP INTEREST LIQUIDATION AGREEMENT** (this "Agreement") is made and entered into effective as of the close of business on [●], 2022 (the "Effective Date"), by and between 3E PROPERTIES, a Washington general partnership (the "Partnership"), and CODY EASTERDAY and DEBBY EASTERDAY, individuals and husband and wife (collectively, the "Easterdays"). The Partnership and the Easterdays are each sometimes individually referred to herein as a "Party" and collectively sometimes referred to herein as the "Parties."

**RECITALS**

A.      The Partnership is a Washington general partnership consisting of, as of the Effective Date, the following partners (collectively, the "Partners") with the following partnership interests in the Partnership (collectively, the "Pre-Liquidation Partnership Interests"): (i) the Easterdays, with a thirty-three and one-third percent (33 1/3%) partnership interest (the "Liquidating Partnership Interest"); (ii) Jody Easterday, with a thirty-three and one-third percent (33 1/3%) partnership interest; (iii) Karen L. Easterday, with a sixteen and two-thirds percent (16 2/3%) partnership interest; and (iv) the Estate of Gale A. Easterday, with a sixteen and two-thirds percent (16 2/3%) partnership interest.

B.      The Partners are parties to, and the Partnership is governed by, that certain 3E Properties Partnership Agreement dated July 24, 1997, as amended by that certain Amendment to the Partnership Agreement of 3E Properties dated February 10, 2021 (collectively, the "Partnership Agreement").

C.      Pursuant to the Partnership Agreement, Jody Easterday is the current Managing Partner of the Partnership (the "Managing Partner"), with authority to act on behalf of the Partnership, including authority, on behalf of the Partners, to execute any and all documents relating to the Partnership and make any and all decisions with respect to the operations of the Partnership.

D.      Among other assets, the Partnership owns that certain real property and improvements thereon (including an onion storage shed) legally described as all of Blocks 13 and 14, Northern Pacific Addition to the City of Pasco, according to Plat thereof recorded in Volume B of Plats, Page 60, records of Franklin County, Washington (the "Partnership's Onion Storage Shed Property"). Title to the Partnership's Onion Storage Shed Property is held in the name of the Partners, but the Partnership's Onion Storage Shed Property has been treated (including, but not limited to, for tax reporting purposes) by the Partners and the Partnership as, and is, owned by the Partnership, including pursuant to RCW 25.05.065.

E.      Effective as of the close of business on the Effective Date and subject and pursuant to the terms and conditions of this Agreement, the Parties desire to liquidate all of the Liquidating Partnership Interest in the Partnership (the "Liquidation Transaction").

F.      Immediately prior to consummating the Liquidation Transaction, the Parties desire to cause all of the Partners to sign and record a quitclaim deed to formally transfer title (including without limitation any after acquired title) of the Partnership's Onion Storage Shed Property in and to the name of the Partnership.

G.      Immediately after consummating the Liquidation Transaction, the Easterdays will assign and transfer (pursuant to the Easterday Assignment Instrument, as that term is defined in Section 4.2(c) of this Agreement) all of their rights, benefit, interests and obligations in, to and arising  under the Promissory Note (as defined below), Partnership Interest Pledge Agreement (as defined below) and the Produce Guaranty (as defined below) (collectively, the "Easterday Assignment") to GlassRatner Advisory & Capital Group, LLC, dba B. Riley Advisory Services, acting in its capacity as the Administrative Agent (the "Administrative Agent"), for the benefit of Holders of Allowed Tyson Claims and Allowed Segale Claims (the "Bankruptcy Plan Assignees")under that certain Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms, in the matter of In re Easterday Ranches, Inc., et al., United States Bankruptcy Court, Eastern District of Washington, Case No. 21-00141-11 (the "Bankruptcy Plan").


**AGREEMENT**

**NOW, THEREFORE,** for good and valuable consideration as provided for in this Agreement, the Parties hereby agree as follows:

**SECTION 1.  LIQUIDATION OF THE LIQUIDATING PARTNERSHIP INTEREST**

**1.1      Liquidation.** Subject and pursuant to the terms and conditions set forth in this Agreement and effective as of the close of business on the Effective Date, the Easterdays and the Partnership hereby liquidate all of the Liquidating Partnership Interest in the Partnership. Subject to and except as otherwise provided in Section 1.4 of this Agreement, after consummation of the Liquidation Transaction, for all purposes Jody Easterday will own a fifty percent (50%) partnership interest in the Partnership, Karen L. Easterday will own a twenty-five percent (25%) partnership interest in the Partnership, and the Estate of Gale A. Easterday will own a twenty-five percent (25%) partnership interest in the Partnership (collectively, the "Post-Liquidation Partnership Interests"), and the Partnership will formally hold title in fee simple to the Partnership's Onion Storage Shed Property.

**1.2      Liquidation Price.** The total liquidating distribution that the Partnership will make to the Easterdays in full liquidation of the Liquidating Partnership Interest is One Million, Eight Hundred and Nineteen Thousand, Three Hundred and Sixty-Eight and No/100 Dollars ($1,819,368.00) (the "Liquidation Price").

**1.3      Payment of Liquidation Price.** On the Effective Date, the Partnership will execute and deliver a Promissory Note, in the form attached hereto as Exhibit A (the

"Promissory Note"), pursuant to which the Liquidation Price (and interest thereon as provided for in the Promissory Note) will be paid by the Partnership over time pursuant to the terms of the Promissory Note. There will be no down payment on the Liquidation Price at the Closing. In connection with implementing the Easterday Assignment, the Easterdays hereby consent to the Partnership's delivery of the executed Promissory Note directly to the Administrative Agent (acting on behalf and for the benefit of the Bankruptcy Plan Assignees).

1.4 **Security for Promissory Note; Status of Liquidating Partnership Interest Until Promissory Note Paid in Full.** In order to secure all of the Partnership's obligations and liabilities arising under the Promissory Note, concurrent with the Parties' execution and delivery of this Agreement, (i) the Partnership and the Easterdays will execute a Partnership Interest Pledge Agreement, in the form attached hereto as Exhibit B (the "Partnership Interest Pledge Agreement"), and (ii) the Partnership will execute an Assignment of Partnership Interest instrument in blank as provided for in the Partnership Interest Pledge Agreement, pursuant to which the Partnership will pledge all of the Liquidating Partnership Interest as collateral for the performance and payment of all of the Partnership's obligations and liabilities arising under the Promissory Note. In connection with implementing and enforcing the Partnership's pledge of the Liquidating Partnership Interest, and notwithstanding anything to the contrary in this Agreement or the Partnership Interest Pledge Agreement, the Parties hereby acknowledge and agree that until the earlier to occur of (a) the Partnership's payment and satisfaction in full of all obligations and liabilities of the Partnership arising under the Promissory Note and (b) the occurrence of an Event of Default (as that term is defined in the Partnership Interest Pledge Agreement) and either (and pursuant to enforcement of the terms and conditions of the Partnership Interest Pledge Agreement) the Administrative Agent (as the assignee under the Easterday Assignment Instrument) takes title to the Liquidating Partnership Interest or a third party takes title to the Liquidating Partnership Interest, the following shall apply and be in full force and effect: (i) the Liquidating Partnership Interest will remain in existence solely for purposes of being collateral for payment and performance of the Partnership's obligations arising under the Promissory Note; (ii) only the Post-Liquidation Partnership Interests will be treated as outstanding and used by the Partnership for the Partnership's federal, state and local income tax and other tax reporting, and financial reporting; and (iii) only the Post-Liquidation Partnership Interests will having voting rights in the Partnership. In the event of the occurrence of an Event of Default (as that term is defined in the Partnership Interest Pledge Agreement) and either (and pursuant to enforcement of the terms and conditions of the Partnership Interest Pledge Agreement) the Administrative Agent (as the assignee under the Easterday Assignment Instrument) takes title to the Liquidating Partnership Interest or a third party takes title to the Liquidating Partnership Interest, the Parties hereby acknowledge and agree that the Liquidating Partnership Interest will automatically be deemed restored to the same partnership interest in the Partnership as existed immediately before the Partnership's liquidation of the Liquidating Partnership Interest pursuant to this Agreement in all respects and for all purposes effective as of the date either the Administrative Agent (as the assignee under the Easterday Assignment Instrument) takes title to the Liquidating Partnership Interest or a third party takes title to the Liquidating Partnership Interest, and thereafter the percentage partnership interests

outstanding in the Partnership will in all respects and for all purposes be the Pre-Liquidation Partnership Interests. Upon and effective as of the date of the Partnership's payment and satisfaction in full of all obligations and liabilities of the Partnership arising under the Promissory Note, the Parties hereby acknowledge and agree that the Liquidating Partnership Interest will cease to exist in all respects and for all purposes. In connection with implementing the Easterday Assignment, the Easterdays hereby consent to the Partnership's delivery of the fully executed Partnership Interest Pledge Agreement and the executed Assignment of Partnership Interest instrument in blank directly to the Administrative Agent (acting on behalf and for the benefit of the Bankruptcy Plan Assignees).

**1.5    Produce Guaranty.** In order to secure the Partnership's payment obligations arising under the Promissory Note, concurrent with the Parties' execution and delivery of this Agreement, Easterday Farms Produce, Co., a Washington corporation ("Produce"), will execute and deliver a Guaranty, in the form attached hereto as Exhibit C (the "Produce Guaranty"), pursuant to which Produce will guarantee the payment when due of all of the Partnership's obligations arising under the Promissory Note. In connection with implementing the Easterday Assignment, the Easterdays hereby consent to the Partnership's delivery of the executed Produce Guaranty directly to the Administrative Agent (acting on behalf and for the benefit of the Bankruptcy Plan Assignees).

**SECTION 2. REPRESENTATIONS AND WARRANTIES OF THE EASTERDAYS; "AS IS" TRANSACTION; WAIVER AND RELEASE**

**2.1    Representations and Warranties of the Easterdays.** As a material inducement to the Partnership to enter into this Agreement and liquidate the Liquidating Partnership Interest, the Easterdays hereby make the following representations and warranties to the Partnership effective as of the Effective Date:

**2.1.1  Title.** The Easterdays have (and on the Partnership's liquidation of the Liquidating Partnership Interest pursuant to the terms of this Agreement, the Partnership will have) good and marketable title to the Liquidating Partnership Interest, free and clear of all voluntarily given liens, security interests, encumbrances, pledges and restrictions on transfer of any kind and nature whatsoever, except for restrictions regarding marketability imposed by applicable federal and state securities laws.

**2.1.2  Enforcement.**    This Agreement and the other documents, instruments and agreements contemplated in this Agreement to which the Easterdays are a party (collectively, the "Easterday Related Documents"), when executed and delivered by the parties hereto and thereto, will constitute the legal, valid, and binding obligations of the Easterdays, enforceable against the Easterdays in accordance with their respective terms, except as the enforceability thereof may be limited by the application of bankruptcy, insolvency, moratorium, or similar laws affecting the rights of creditors generally or judicial limits on equitable remedies.

**2.2** **"AS IS" Transaction; Waiver and Release.** Except for the representations and warranties of the Easterdays set forth in this Agreement and any of the Easterday Related Documents, the Partnership acknowledges and agrees that it is acquiring the Liquidating Partnership Interest on an **"AS IS"** basis without any kind of representation or warranty of any kind or nature whatsoever, whether expressed or implied. The Partnership hereby agrees that except for any breach by the Easterdays of any express warranty set for in this Agreement or any of the Easterday Related Documents, the Easterdays have no liability for, and the Partnership hereby waives any and all claims and releases the Easterdays from and for any and all liability arising from or otherwise related in any way to, any and all aspects whatsoever of the Liquidating Partnership Interest, the Partnership and its operations and assets, and the transactions contemplated in this Agreement, whether direct or indirect, absolute or contingent, foreseen or unforeseen, and known or unknown. The Partnership hereby agrees that the foregoing waiver and release extends to each of the Easterdays and their respective heirs, legal representatives, successors, assigns, agents and representatives.

**SECTION 3.  REPRESENTATIONS AND WARRANTIES OF THE PARTNERSHIP**

As a material inducement to the Easterdays to enter into this Agreement and liquidate the Liquidating Partnership Interest, the Partnership hereby makes the following representations and warranties to the Easterdays effective as of the Effective Date:

**3.1** **Legal Existence; Power.** The Partnership is a general partnership legally existing under the laws of the state of Washington, and has all requisite power and authority to enter into this Agreement and the other documents, instruments and agreements contemplated in this Agreement to which the Partnership is a party (collectively, the "Partnership Related Documents") and to perform its obligations under this Agreement and the Partnership Related Documents.

**3.2** **Authorization.** The Partnership's execution, delivery, and performance of this Agreement and the Partnership Related Documents has been duly and validly authorized by all necessary Partnership action of the Partnership.

**3.3** **Enforcement.**  This Agreement and the Partnership Related Documents, when executed and delivered by the parties hereto and thereto, will constitute the legal, valid, and binding obligations of the Partnership enforceable against the Partnership in accordance with their respective terms, except as enforceability thereof may be limited by the application of bankruptcy, insolvency, moratorium, or similar laws affecting the rights of creditors generally or judicial limits on equitable remedies.

**SECTION 4.  CLOSING**

**4.1** **Time, Place, and Manner of Closing.**  The closing (the "Closing") of the transactions contemplated by this Agreement will occur on the Effective Date, concurrently with closing of a number of transactions contemplated by the Bankruptcy Plan.  The Closing of the transactions contemplated by this Agreement will occur

**Page 5 of 41 – PARTNERSHIP INTEREST LIQUIDATION AGREEMENT**

simultaneously with the Parties' execution and delivery of this Agreement, the Easterday Related Documents and the Partnership Related Documents. The Closing will be deemed to occur as of the close of business on the Effective Date.

**4.2     Events of Closing.** At the Closing, the following events will occur:

(a)     The Parties will execute and deliver to each other this Agreement and the Partnership will, subject to the terms and conditions of Section 1.4 of this Agreement, liquidate all of the Liquidating Partnership Interest in the Partnership;

(b)     The Easterdays will execute and deliver to the Partnership an Assignment of Partnership Interest, in the form attached hereto as <u>Exhibit D</u>;

(c)     The Easterdays, the Partnership and the Administrative Agent (acting for the benefit of the Bankruptcy Plan Assignees) will execute and deliver to each other an Assignment of Promissory Note, Partnership Interest Pledge Agreement and Guaranty, in the form attached hereto as <u>Exhibit E</u> (the "<u>Easterday Assignment Instrument</u>"), to implement and accomplish the Easterday Assignment;

(d)     The Partnership will execute and deliver to the Administrative Agent (as successor in interest to the Easterdays by the Easterday Assignment, and on behalf and for the benefit of the Bankruptcy Plan Assignees) the Promissory Note (in the form attached hereto as <u>Exhibit A</u>);

(e)     The Partnership and the Easterdays will execute and deliver to each other and the Administrative Agent (as successor in interest to the Easterdays by the Easterday Assignment, and on behalf and for the benefit of the Bankruptcy Plan Assignees) the Partnership Interest Pledge Agreement (in the form attached hereto as <u>Exhibit B</u>) and the Partnership will execute and deliver to the Administrative Agent (as successor in interest to the Easterdays by the Easterday Assignment, and on behalf and for the benefit of the Bankruptcy Plan Assignees) an Assignment of Partnership Interest instrument in blank as provided for in the Partnership Interest Pledge Agreement (and set forth as Exhibit 1 to the Partnership Interest Pledge Agreement);

(f)     The Parties will cause Produce to execute and deliver to the Administrative Agent (as successor in interest to the Easterdays by the Easterday Assignment, and on behalf and for the benefit of the Bankruptcy Plan Assignees) the Produce Guaranty (in the form attached hereto as <u>Exhibit C</u>);

(g)     The Parties will cause the Partners to execute and acknowledge in recordable form, and cause to be recorded in Franklin County, Washington, a Quitclaim Deed, in the form attached hereto as <u>Exhibit F</u> (the "<u>Onion Storage Shed Property Quitclaim Deed</u>"), pursuant to which the Partners will formally transfer title (including without limitation any after acquired title) of the Partnership's Onion Storage Shed Property in and to the name of the Partnership;

(h)     The Partnership will deliver to the Easterdays and the Administrative Agent a copy of the executed consent resolutions of the Managing Partner authorizing the Partnership to enter into this Agreement and the Partnership Related Documents and to perform its obligations hereunder and thereunder; and

(i)     The Parties shall execute and deliver such other documents and take such other actions as are necessary or desirable to close the transactions contemplated in this Agreement in accordance with the terms of this Agreement.

**4.3     Consummation of Closing.** All acts, deliveries, and confirmations comprising the Closing, regardless of chronological sequence, will be deemed to occur contemporaneously and simultaneously on the occurrence of the last act, delivery, or confirmation of the Closing and none of such acts, deliveries, or confirmations will be effective unless and until the last of the same shall have occurred.  Regardless of when the last act, delivery, or confirmation of the Closing takes place: (i) the Partners' formal transfer of title (including without limitation any after acquired title) of the Partnership's Onion Storage Shed Property in and to the name of the Partnership pursuant to the Onion Storage Shed Property Quitclaim Deed will be deemed to have occurred immediately prior to consummation of the Liquidation Transaction; (ii) the liquidation of the Liquidating Partnership Interest in accordance with the terms of this Agreement will be deemed to have occurred as of the close of business on the Effective Date; and (iii) the Easterday Assignment to the Administrative Agent (acting by and on behalf of the Bankruptcy Plan Assignees) of all of the Easterdays' rights, benefit, interests and obligations in, to and arising  under the Promissory Note, Partnership Interest Pledge Agreement and Produce Guaranty pursuant to the Easterday Assignment Instrument will be deemed to have occurred immediately after consummation of the Liquidation Transaction.

## SECTION 5.  SURVIVAL; INDEMNIFICATION

**5.1     Survival of Representations and Warranties.** All representations and warranties made in this Agreement, the Easterday Related Documents and the Partnership Related Documents will survive the Closing of this Agreement, except that any Party to whom a representation or warranty has been made in this Agreement, the Easterday Related Documents and the Partnership Related Documents will be deemed to have waived any misrepresentation or breach of the representation or warranty if the Party had knowledge of such breach before the Closing. The representations and warranties in this Agreement, the Easterday Related Documents and the Partnership Related Documents will terminate one (1) year after the Effective Date, and such representations and warranties will thereafter be without force or effect, except for any claim with respect to which written notice has been given to the potential indemnifying Party before such termination date.

**5.2     Indemnification by the Partnership.**

**5.2.1  Extent of Indemnification.**   The Partnership hereby agrees to indemnify, defend and hold harmless the Easterdays and their respective heirs, legal

representatives, successors, assigns, agents and representatives (collectively, the "Indemnified Parties") from, for and against any and all demands, claims, causes of actions, liabilities, obligations, damages, costs, and expenses, including reasonable attorney fees arising out of or related in any way to any of the following:

(a) Any breach or inaccuracy of any representation or warranty of the Partnership made in this Agreement or any of the Partnership Related Documents;

(b) Any failure by the Partnership to perform any covenant required to be performed by the Partnership pursuant to this Agreement or any of the Partnership Related Documents;

(c) Any obligation or liability of the Partnership which the Easterdays or either of them personally guaranteed (including, but not limited to, any loan or lease); or

(d) Any claim, obligation or liability arising out of or in any related to the operation of the Partnership's business, whether arising before or after the Effective Date.

**5.2.2 Notice of Claim.** If any claim is asserted against any of the Indemnified Parties that would give rise to a claim by any of the Indemnified Parties against the Partnership for indemnification under the provisions of this Section 5.2, the Easterdays or either of them will promptly give written notice to the Partnership concerning such claim and the Partnership will, at no expense to the Indemnified Parties, defend the claim with legal counsel reasonably acceptable to the Easterdays.

## SECTION 6. MISCELLANEOUS PROVISIONS

**6.1 Binding Effect.** This Agreement will be binding on and inure to the benefit of the Parties and their respective heirs, legal representatives, successors, and assigns.

**6.2 Assignment.** Except as provided below in this Section 6.2, neither this Agreement nor any of the rights, interests, or obligations under this Agreement may be assigned by a Party without the prior written consent of the other Party. Notwithstanding the foregoing sentence, the Parties understand and agree that the rights, benefits and interests of the Easterdays under the Promissory Note, the Partnership Interest Pledge Agreement and the Produce Guaranty are, concurrently with the parties entering into this Agreement, being assigned and transferred by the Easterdays to the Administrative Agent (acting for the benefit of the Bankruptcy Plan Assignees) pursuant to the terms of the Easterday Assignment Instrument, and the Partnership hereby consents to such assignment and transfer to the Administrative Agent. Further notwithstanding the foregoing, the Parties understand and agree that at any time after consummation of the Easterday Assignment, the Administrative Agent may, with the reasonable consent of the Partnership, assign the Promissory Note, the Partnership Interest Pledge Agreement, the Produce Guaranty, and any other associated rights, obligations, and

documents, to a reputable financial institution, trust company, receiver, or turnaround manager provided that such assignee is not a Bankruptcy Plan Assignee or Paladin Management Group, LLC (or any of their affiliates, successors, or assigns).

**6.3    No Third-Party Beneficiaries.** Except for the Administrative Agent and Bankruptcy Plan Assignees as provided for in Section 6.2 of this Agreement, nothing in this Agreement, express or implied, is intended or will be construed to confer on any person, other than the Parties to this Agreement, any right, remedy, or claim under or with respect to this Agreement.

**6.4    Notices.** All notices and other communications under this Agreement must be in writing and will be deemed to have been given if delivered personally, mailed by certified mail, postage prepaid, or delivered by an overnight delivery service (with confirmation) to the Parties at the following addresses (or at such other address as a Party may designate by like notice to the other Party):

If to the Partnership, then to:

> Jody Easterday, Managing Partner
> 3E Properties
>
> Principal address:
> 1427 N. 1st Ave.
> Pasco, WA  99301
>
> Mailing Address:
> PO Box 2813
> Pasco, WA  99302
>
> <u>And</u> to counsel:
>
> Michelle Green
> Gatens Green Weidenbach, PLLC
> 305 Aplets Way
> Cashmere, WA  98815-1012
>
> <u>And</u> to counsel
>
> Daniel L. Steinberg
> Jordan Ramis
> 2 Centerpointe Drive, Suite 600
> Lake Oswego, OR 97035

If to the Easterdays or either of them, then to:

> Cody Easterday
> Debby Easterday

**Page 9 of 41 – PARTNERSHIP INTEREST LIQUIDATION AGREEMENT**

830 Bellflower Road
Mesa, WA 99343

<u>And</u> to counsel:

Jeffrey C. Misley
Sussman Shank LLP
1000 SW Broadway, Suite 1400
Portland, OR  97205

Any notice or other communication will be deemed to be given (a) on the date of personal delivery, (b) at the expiration of the third day after the date of deposit in the United States mail, or (c) on the date of confirmed delivery by overnight delivery service.

**6.5    Amendments.** This Agreement may be amended only by an instrument in writing executed by all the Parties and the Administrative Agent, which writing must refer to this Agreement.

**6.6    Construction.** The captions used in this Agreement are provided for convenience only and will not affect the meaning or interpretation of any provision of this Agreement. All references in this Agreement to "Section" or "Sections" without additional identification refer to the Section or Sections of this Agreement. All words used in this Agreement will be construed to be of such gender or number as the circumstances require. Whenever the words "include" or "including" are used in this Agreement, they will be deemed to be followed by the words "without limitation." Every covenant, term and provision of this Agreement is to be construed simply according to its fair meaning and not strictly for or against any Party. The Parties have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or question of the intent or interpretation arises, this Agreement must be construed as if drafted jointly by the Parties, and no presumption or burden of proof will arise favoring or disfavoring any Party by virtue of authorship of any of the provisions of this Agreement.

**6.7    Counterparts.** This Agreement may be executed in counterparts, each of which will be considered an original and all of which together will constitute one and the same agreement.

**6.8    Electronically Transmitted Signatures.** Electronic transmission of any signed original of this Agreement, and retransmission of any signed electronic transmission, will be the same as delivery of an original of this Agreement.

**6.9    Further Assurances.** Each Party agrees (a) to execute and deliver such other documents and (b) to do and perform such other acts and things, as the other Party may reasonably request from time to time, to carry out the intent and accomplish the purposes of this Agreement.

**6.10    Time of Essence.** Time is of the essence with respect to all dates and time periods set forth or referred to in this Agreement.

**Page 10 of 41 – PARTNERSHIP INTEREST LIQUIDATION AGREEMENT**

**6.11   Waiver.** Any provision or condition of this Agreement may be waived at any time, in writing, by the Party entitled to the benefit of such provision or condition. Waiver of any breach of any provision will not be a waiver of any succeeding breach of the provision or a waiver of the provision itself or any other provision.

**6.12   Governing Law.** This Agreement will be governed by and construed in accordance with the laws of the state of Washington, without regard to conflict-of-laws principles.

**6.13   Attorney Fees.** With respect to any dispute relating to this Agreement, or in the event that a suit, action, arbitration, or other proceeding of any nature whatsoever is instituted to interpret or enforce the provisions of this Agreement, including, without limitation, any proceeding under the U.S. Bankruptcy Code and involving issues peculiar to federal bankruptcy law or any action, suit, arbitration, or proceeding seeking a declaration of rights or rescission, the prevailing party shall be entitled to recover from the losing party its reasonable attorney fees, paralegal fees, expert fees, and all other fees, costs, and expenses actually incurred and reasonably necessary in connection therewith, as determined by the judge or arbitrator at trial, arbitration, or other proceeding, or on any appeal or review, in addition to all other amounts provided by law.

**6.14   Injunctive and Other Equitable Relief.** The Parties agree that the remedy at law for any breach or threatened breach by a Party may, by its nature, be inadequate, and that the other Party will be entitled, in addition to damages, to a restraining order, temporary and permanent injunctive relief, specific performance, and other appropriate equitable relief, without showing or proving that any monetary damage has been sustained.

**6.15   Venue.** Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement will be brought against any of the Parties exclusively in the Superior Court of Franklin County, Washington or the United States District Court for the Eastern District of Washington. Each of the Parties consents to the exclusive jurisdiction of such court (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to such venue. THE PARTIES FURTHER WAIVE THE RIGHT TO A JURY TRIAL IN ANY ACTION OR PROCEEDING ARISING OUT OF THIS AGREEMENT.

**6.16   Recitals and Exhibits.** The Recitals and Exhibits referenced in this Agreement are part of this Agreement as if fully set forth in this Agreement.

**6.17   Severability.** If any provision of this Agreement is invalid or unenforceable in any respect for any reason, the validity and enforceability of such provision in any other respect and of the remaining provisions of this Agreement will not be in any way impaired.

**6.18   Entire Agreement.** This Agreement (including the Recitals and Exhibits to this Agreement) constitutes the entire agreement and understanding of the Parties with

respect to the subject matter of this Agreement and supersedes all prior understandings and agreements, whether written or oral, among the Parties with respect to such subject matter.

**6.19  Expenses.**  Each Party will bear each such Party's own expenses in connection with this Agreement and the transactions contemplated in this Agreement.

*[Balance of this page left blank.*
*See next page for signatures of Parties.]*

**IN WITNESS WHEREOF,** the Parties have entered into this Agreement effective as of the Effective Date first above written.

**PARTNERSHIP:**                                    **EASTERDAYS:**

3E PROPERTIES,                                      CODY EASTERDAY,
a Washington general partnership                    an individual


By:_____          _____

Name: Jody Easterday                                Cody Easterday

Title: Managing Partner                             DEBBY EASTERDAY,
                                                    an individual


                                                    _____

                                                    Debby Easterday

**ACKNOWLEDGED AND AGREED
TO BY ADMINISTRATIVE AGENT:**

GLASSRATNER ADVISORY & CAPITAL GROUP,
LLC, dba B. RILEY ADVISORY SERVICES,
as Administrative Agent


By: _____

Name: _____

Title: _____

**EXHIBIT A**
**PROMISSORY NOTE**

$1,819,368.00                                       _____, 2022
                                                           Franklin County, Washington

        FOR VALUE RECEIVED, 3E PROPERTIES, a Washington general partnership ("Maker"), hereby promises to pay to the order of CODY EASTERDAY and DEBBY EASTERDAY, individuals and husband and wife (collectively, "Holder"), at 830 Bellflower Road, Mesa, WA 99343, or at such other place designated in writing from time to time by Holder and delivered to Maker, the principal amount of One Million, Eight Hundred and Nineteen Thousand, Three Hundred and Sixty-Eight and No/100 Dollars ($1,819,368.00), together with interest on the unpaid principal balance from the date of this Promissory Note (this "Note") until the unpaid principal balance is paid in full at the rate of four and one-half percent (4.5%) per annum (the "Interest Rate"). Maker shall make to Holder four (4) semi-annual installment payments to be applied to principal (the "Installment Payments") during the term of this Note in the amount of Eighty Thousand Dollars ($80,000.00) each, with the first Installment Payment due on the date which is the ninetieth (90th) day after the date of this Note, the second Installment Payment due on the date which is the two hundred seventieth (270th) day after the date of this Note, the third Installment Payment due on the date which is the four hundred fiftieth (450th) day after the date of this Note, and the fourth Installment Payment due on the date which is the six hundred thirtieth (630th) day after the date of this Note. This Note shall mature on the date which is the second anniversary of the date of this Note (the "Maturity Date"), at which time the entire unpaid principal balance together with all accrued and unpaid interest thereon shall all be immediately due and payable in full. If any amount payable hereunder is not paid when due (without regard to any applicable grace period), whether at stated maturity, by acceleration, or otherwise, such overdue amount shall bear interest at the Interest Rate plus three percent (3.0%) (the "Default Rate").

        This Note is made and given in accordance with the terms and provisions of that certain Partnership Interest Liquidation Agreement of even date herewith by and between Maker and Holder (the "Liquidation Agreement"), pursuant to which Maker is liquidating a thirty-three and one-third percent (33 1/3%) partnership interest in Maker (the "Easterday Partnership Interest") owned by Holder. This Note is secured by the certain Partnership Interest Pledge Agreement of even date herewith (the "Pledge Agreement") by and between Maker and Holder, pursuant to which Maker is pledging to Holder the Easterday Partnership Interest as security for performance and payment of all of Maker's obligations and liabilities arising under this Note. In addition to the foregoing, Easterday Farms Produce, Co., a Washington corporation ("Produce"), has entered into that certain Guaranty of even date herewith (the "Produce Guaranty") for the benefit of Holder, pursuant to which Produce has guaranteed the payment when due of all of Maker's obligations arising under this Note

        In addition to, and not in lieu of, Holder's exercise of any other rights and remedies Holder may have hereunder or at law or in equity, Holder may, at Holder's

option and without notice to Maker or any other party, accelerate the maturity of the then outstanding principal balance of this Note, to become immediately due and payable in full hereunder, upon the occurrence of any of the following events, each which will be deemed an event of default under this Note (each, an "Event of Default"):

(a)    Maker's failure to make any payment within five (5) days after such payment is due under this Note;

(b)    The failure of Produce to make any payment within five (5) days after such payment is due under that certain Promissory Note of even date herewith in the original principal amount of $454,842.00 (the "Produce Promissory Note") and made by Produce for the benefit of Holder (and made and given in connection with that certain Stock Redemption Agreement of even date herewith by and between Produce and Holder pursuant to which Holder is redeeming all of Holder's stock in Produce (the "Stock Redemption Agreement"));

(c)    Maker's failure, within ten (10) business days after receipt of written notice from Holder of such failure, to perform any obligation arising under the Liquidation Agreement or the Pledge Agreement; provided, however, notwithstanding the foregoing, if the cure for nonperformance of any such obligation (other than a payment obligation) shall take longer than ten (10) business days to complete, Maker will not be in default hereunder if Maker diligently pursues and completes such cure within twenty (20) business days after receipt of such written notice;

(d)    The complete liquidation of Maker or Produce;

(e)    An involuntary petition or proceeding pursuant to the Bankruptcy Code or any other applicable law relating to bankruptcy, reorganization, or other relief for debtors is filed or commenced against Maker and is not dismissed, stayed, or vacated within thirty (30) days thereafter or Maker files an answer admitting the jurisdiction of the court and the material allegations of any such involuntary petition;

(f)    Maker files a voluntary petition in bankruptcy or seeks to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code or under any state or other federal law granting relief to debtors, whether now or hereafter in effect, or Maker makes an assignment for the benefit of creditors or shall admit in writing its inability to pay its debts generally as they become due;

(g)    An order is entered for the appointment of a receiver, liquidator, sequestrator, trustee, custodian, or other officer having similar powers over Maker, or over any property of Maker;

(h)    A warrant of attachment, execution, or similar process is issued against any property of Maker;

(i)    The sale or other transfer of all or substantially all of the assets of Maker outside the ordinary course of business;

21-00141-WLH11   Doc 1814   Filed 07/26/22   Entered 07/26/22 10:37:04   Pg 123 of 244

(j)    Any reorganization, restructuring or termination of the existence of Maker (except pursuant to the Liquidation Agreement) or Produce (except pursuant to the Stock Redemption Agreement); or

(k)    Any change in the partnership structure of Maker or corporate structure of Produce that would reasonably be expected to have a material effect on Maker's or Produce's ability to satisfy their obligations under this Note or the Produce Note.

Except as otherwise expressly provided herein, all payments hereunder (including, but not limited to, the Installment Payments) shall be applied in the following order: first, to all costs and expenses to enforce this Note; second, to all accrued and unpaid interest; third, to principal.  All payments hereunder shall be made in immediately available funds in lawful money of the United States.  Without limitation of the foregoing, whether or not Holder exercises its right to accelerate the maturity of the then outstanding principal balance of this Note or any other remedies, the entire principal balance and all accrued interest under this Note shall, at the election of Holder, bear interest from the date of any Event of Default at the Default Rate.  Such default interest shall be payable on demand.

This Note may be prepaid, in whole or in part, at any time without any prepayment penalty or fee.

Holder's failure or forbearance to exercise any right or remedy given hereunder upon the occurrence of any Event of Default shall not be deemed a waiver of any such term or condition or any subsequent default of the same or any other term or condition set forth herein or therein.

Notwithstanding anything to the contrary herein, the Pledge Agreement, or the Produce Guaranty, upon maturity of this Note, including by acceleration as a result of an Event of Default or on the Maturity Date, Holder may not exercise any of its rights or remedies arising under this Note or otherwise seek to enforce the terms of the Pledge Agreement or Produce Guaranty without providing fifteen (15) business days' prior written notice to Maker and Produce who, upon receipt of any such notice, will have the right to cure during such notice period.

If any suit, action or proceeding is instituted to collect this Note (including, but not limited to, any suit, action or proceeding commenced in any federal bankruptcy court), Holder will be entitled to recover, at trial or on appeal, any sums that the court may adjudge reasonable as attorney fees, in addition to costs and necessary disbursements.

This Note shall be governed by and construed in accordance with the laws of the state of Washington, without regard to conflict-of-laws principles.  In the event any suit, action or proceeding is commenced to enforce this Note, such suit, action or proceeding shall be commenced exclusively in the Superior Court of Franklin County, Washington or the United States District Court for the Eastern District of Washington. Each of the

Parties consents to the exclusive jurisdiction of such court (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to such venue. THE PARTIES FURTHER WAIVE THE RIGHT TO A JURY TRIAL IN ANY ACTION OR PROCEEDING ARISING OUT OF THIS NOTE.

Except as otherwise provided herein, the Pledge Agreement or the Produce Guaranty, Maker waives presentment, demand, protest, notice of protest, acceptance or other notice of non-payment or dishonor, or any other notice, and waives the right to require Holder to pursue any particular remedy as a condition to enforcement of this Note.

Maker warrants and represents that all funds owed under this Note are solely for business or commercial purposes.

Any terms not defined herein shall have the meanings ascribed to them in the Liquidation Agreement.

All notices and other communications under this Note must be in writing and will be deemed to have been given if delivered personally, mailed by certified mail, postage prepaid, or delivered by an overnight delivery service (with confirmation) to the parties at the following addresses (or at such other address as a party may designate by like notice to the other party):

If to Maker, then to:

Jody Easterday, Managing Partner
3E Properties

Principal address:
1427 N. 1st Ave.
Pasco, WA  99301

Mailing Address:
PO Box 2813
Pasco, WA  99302

And to counsel:

Michelle Green
Gatens Green Weidenbach, PLLC
305 Aplets Way
Cashmere, WA  98815-1012

And to counsel:

Daniel L. Steinberg
Jordan Ramis

**Page 17 of 41 – PARTNERSHIP INTEREST LIQUIDATION AGREEMENT**

2 Centerpointe Drive, Suite 600
Lake Oswego, OR 97035

If to Holder or either of them, then to:

Cody Easterday
Debby Easterday
830 Bellflower Road
Mesa, WA 99343

<u>And</u> to counsel:

Jeffrey C. Misley
Sussman Shank LLP
1000 SW Broadway, Suite 1400
Portland, OR  97205


ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

**MAKER:**

3E PROPERTIES,
a Washington general partnership


By:_____

Name: Jody Easterday

Title: Managing Partner

**EXHIBIT B**
**PARTNERSHIP INTEREST PLEDGE AGREEMENT**

**THIS PARTNERSHIP INTEREST PLEDGE AGREEMENT** (this "Agreement") is made and entered into effective as of _____, 2022 (the "Effective Date"), by and between 3E PROPERTIES, a Washington general partnership ("Pledgor"), and CODY EASTERDAY and DEBBY EASTERDAY, individuals and husband and wife (collectively, "Secured Party"), Pledgor and Secured Party are each sometimes individually referred to herein as a "Party" and collectively sometimes referred to herein as the "Parties."

**RECITALS**

A.     Pledgor and Secured Party have entered into that certain Partnership Interest Liquidation Agreement of even date herewith (the "Liquidation Agreement") pursuant to which Pledgor liquidated Secured Party's thirty-three and one-third percent (33 1/3%) partnership interest in Pledgor (the "Partnership Interest").

B.     In connection with consummating the transactions under the Liquidation Agreement, Pledgor has executed and delivered to Secured Party a Promissory Note of even date herewith in the principal amount of $1,819,368.00 (the "Note").

C.     In connection with implementing that certain Third Amended Joint Chapter 11 Plan of Liquidation (the "Bankruptcy Plan") of Easterday Ranches, Inc. and Easterday Farms, in the matter of In re Easterday Ranches, Inc., et al., United States Bankruptcy Court, Eastern District of Washington, Case No. 21-00141-11, Secured Party has assigned (the "Easterday Assignment") Secured Party's rights, benefits and interests in, to and arising under the Note, this Agreement, and that certain Guaranty of even date herewith made and entered into by Easterday Farms Produce, Co., a Washington corporation ("Produce"), pursuant to which Produce has guaranteed the payment when due of all of Pledgor's obligations arising under the Note (the "Produce Guaranty"), to GLASSRATNER ADVISORY & CAPITAL GROUP, LLC, dba B. RILEY ADVISORY SERVICES, acting in its capacity as the Administrative Agent (the "Administrative Agent"), acting for the benefit of Holders of Allowed Tyson Claims and Allowed Segale Claims under the Bankruptcy Plan (the "Bankruptcy Plan Assignees").

D.     As a condition to and inducement for Secured Party entering into the Liquidation Agreement, Pledgor agreed to enter into this Agreement to secure performance and payment of Pledgor's obligations and liabilities arising under the Note.

**AGREEMENT**

**NOW, THEREFORE,** the Parties hereby agree as follows:

**SECTION 1.  GRANT OF SECURITY INTEREST**

As security for the full, prompt and complete payment and performance by Pledgor of the Obligations (as defined below), Pledgor hereby pledges and grants to Secured Party a security interest in the Partnership Interest (including all ownership interest therein and profits interests thereof), the certificates representing the Partnership Interest (if any), all cash, securities, increases, options, rights, distributions and profits received therefrom, whether as an addition to, in substitution or exchange for, or on account of, such Partnership Interest, and all products and proceeds of all of the foregoing.

## SECTION 2.  OBLIGATION

The obligations secured by this Agreement are the obligations and liabilities of Pledgor under the Note and this Agreement and Produce's obligations under the Produce Guaranty, including without limitation the full and prompt payment when due of all principal, interest, fees and expenses accruing under the Note and Pledgor's obligation to timely make all payments when due under the Note (collectively, the "Obligations").

## SECTION 3.  PERFECTION; ASSIGNMENT OF PARTNERSHIP INTEREST

**3.1    Perfection.** Pledgor will concurrently with execution of this Agreement reflect the fact of this Agreement and the pledge of the Partnership Interest in the books and records of Pledgor. Pledgor hereby authorizes Secured Party and Administrative Agent to take all actions reasonably necessary or appropriate to perfect the security interest granted herein, including without limitation to file a UCC-1 financing statement with the Washington Department of Licensing. On Pledgor's payment and performance in full of all Obligations secured by this Agreement: (i) Administrative Agent will forthwith upon request of Pledgor file a UCC termination with the Washington Department of Licensing, and failing Administrative Agent doing same within ten (10) days after Pledgor's request therefore, Pledgor is hereby authorized to file on behalf and in the name of Secured Party and Administrative Agent, as the case may be, such UCC termination with the Washington Department of Licensing; and (ii) Administrative Agent will promptly execute and deliver to Pledgor such documents and instruments as reasonably requested by Pledgor from time to time to acknowledge and evidence the termination of this Agreement and/or that all estate, right, title and interest in and to the Partnership Interest has reverted to Pledgor.

**3.2    Assignment of Partnership Interest.** In addition to the foregoing, concurrently with execution of this Agreement, Pledgor will execute and deliver to Secured Party (who will deliver to Administrative Agent pursuant to the Easterday Assignment), to be held pending occurrence of an Event of Default and foreclosure or sale proceedings in accordance with this Agreement, an executed in blank Assignment of Partnership Interest in the form attached hereto as Exhibit 1.  On Pledgor's payment and performance in full of all Obligations secured by this Agreement, Administrative Agent will promptly return to Pledgor such original executed in blank Assignment of Partnership Interest.

## SECTION 4.  PLEDGOR'S REPRESENTATIONS AND WARRANTIES

Pledgor represents and warrants to Secured Party that, subject to the accuracy of Secured Party's representations and warranties to Pledgor in the Liquidation Agreement, Pledgor is the owner of the Partnership Interest, free and clear of all liens, security interests, encumbrances, pledges, charges, claims, and restrictions on transfer, except for restrictions imposed by applicable federal and state securities laws. Pledgor's representations and warranties in the Liquidation Agreement are hereby made for the benefit of Secured Party and are incorporated herein as if fully set forth in this Agreement.

## SECTION 5.  COVENANTS OF PLEDGOR WITH RESPECT TO PARTNERSHIP INTEREST

So long as any portion of the Obligations remain outstanding and unpaid, Pledgor covenants and agrees with Secured Party that:

(a)    Pledgor will honor and comply with the terms and conditions of Section 1.4 of the Liquidation Agreement, which are hereby incorporated into and made a part of this Agreement by this reference as if set forth in this Agreement;

(b)    Pledgor will not allow or grant any other lien or security interest with respect to the Partnership Interest; and

(c)    Pledgor will not transfer or attempt to transfer, whether by sale, gift, or otherwise, any ownership interest in the Partnership without Secured Party's prior written approval.

## SECTION 6.  AUTHORIZED ACTION BY SECURED PARTY; PROXY

Exercisable only after and during the continuance of an Event of Default (as that term is defined in Section 7 of this Agreement), Pledgor hereby appoints the Secured Party as its attorney-in-fact and grants Secured Party a proxy to exercise the rights and powers that Pledgor might exercise with respect to the Partnership Interest. With respect to voting the Partnership Interest, this section constitutes an irrevocable appointment of a proxy, coupled with an interest, which will continue until all Obligations secured under this Agreement are performed in full.

## SECTION 7.  EVENTS OF DEFAULT

As used in this Agreement, the term "Event of Default" will have the meaning ascribed to it in the Note.  Any occurrence of an Event of Default under the Note shall be deemed an Event of Default under this Agreement.

## SECTION 8.  REMEDIES ON DEFAULT

On the occurrence of any Event of Default, Secured Party may, in Secured Party's sole discretion, with notice to Pledgor, and in addition to all rights and remedies at law or in equity or otherwise:

(a)     Declare the entire balance of the Note immediately due and payable in full;

(b)     Register in Secured Party's name any or all of the Partnership Interest, and exercise any rights, privileges or options pertaining to such Partnership Interest as if Secured Party were the absolute owner thereof;

(c)     Exercise the Secured Party's proxy rights with respect to all or a portion of the Partnership Interest;

(d)     Sell or otherwise dispose of the Partnership Interest in accordance with Section 9 of this Agreement; and

(e)     Except to the extent inconsistent with any of the terms and conditions of this Agreement, exercise all rights and remedies of a secured party under the Uniform Commercial Code of the state of Washington.

Notwithstanding anything to the contrary in the Note, this Agreement, or the Produce Guaranty, upon maturity of the Note, including by acceleration as a result of an Event of Default or on the Maturity Date (as that term is defined in the Note), Secured Party may not exercise any of its rights or remedies arising under the Note or otherwise seek to enforce the terms of this Agreement or the Produce Guaranty without providing ten (10) business days' prior written notice to Pledgor and Produce who, upon receipt of any such notice, will have the right to cure during such notice period.

## SECTION 9.  SALE ON DEFAULT

Pledgor acknowledges that the Partnership Interest is a restricted, unregistered equity interest in the Partnership that is difficult to value and for which no public market exists. Pledgor agrees that the Partnership Interest is not subject to sale in a "recognized market" as described in RCW 62A.9A-610(c)(2). Pledgor and Secured Party wish to agree to reasonable standards for conducting a commercially reasonable sale of the Partnership Interest. Without limiting rights and remedies otherwise available to Pledgor, the parties agree that the following provisions will govern the sale of the Partnership Interest on the occurrence of any Event of Default, and compliance with them will satisfy the requirements of a commercially reasonable sale:

(a)     The sale may be either a public sale or a private sale, at Secured Party's discretion, and it may be for all or any portion of the Partnership Interest;

(b)     Secured Party will set a date for public sale of the Partnership Interest, or a date after which a private sale may occur, which date may not be less than fifteen (15) business days after the date that the notice of the sale is given to Pledgor, and Secured

Party will send written notification to Pledgor in advance regarding the date and the time of the public sale or the date after which a private sale may occur;

(c)     Any public sale must take place at a site in Franklin County, Washington selected by the Secured Party;

(d)     Immediately on request, Pledgor will provide Secured Party with information requested by Secured Party for compliance with state or federal securities laws; and

(e)     At any sale of any of the Partnership Interest, Secured Party may restrict the prospective bidders or purchasers to persons or entities who, by certain representations made by them, would render registration of the sale under state or federal securities laws unnecessary.

Except as specifically limited by the foregoing provisions of this Section 9 or by applicable provisions of the Uniform Commercial Code of the State of Washington, Secured Party shall have discretion to manage the sale of the Partnership Interest after an Event of Default in the manner that Secured Party reasonably deems is in its and its beneficiaries' best interests.

**SECTION 10.  MISCELLANEOUS PROVISIONS**

**10.1    Binding Effect.** This Agreement will be binding on and inure to the benefit of the Parties and their respective heirs, legal representatives, successors, and assigns.

**10.2    Assignment.** Except as provided below in this Section 10.2, neither this Agreement nor any of the rights, interests, or obligations under this Agreement may be assigned by either Party. Notwithstanding the foregoing sentence, the Parties understand and agree that the rights, benefits and interests of Secured Party under the Note, this Agreement and the Produce Guaranty are, concurrent with the parties entering into this Agreement, being assigned and transferred by Secured Party to the Administrative Agent (acting for the benefit of the Bankruptcy Plan Assignees) pursuant to a separate assignment instrument, and Pledgor has consented to such assignment and transfer to the Administrative Agent (acting for the benefit of the Bankruptcy Plan Assignees). Further notwithstanding the foregoing, Administrative Agent may, in connection with an assignment of Administrative Agent's rights and interests under the Note, assign this Agreement and its rights, interests and obligations hereunder to any individual, corporation, company, limited liability company, trust, joint venture, association, partnership, unincorporated organization, governmental authority, or other entity to whom the rights and interests of Administrative Agent under the Note are assigned and transferred.

**10.3    No Third-Party Beneficiaries.** Except for the Administrative Agent and Bankruptcy Plan Assignees as provided for in Section 10.2 of this Agreement, nothing in this Agreement, express or implied, is intended or will be construed to confer on any

**Page 23 of 41 – PARTNERSHIP INTEREST LIQUIDATION AGREEMENT**

person, other than the Parties to this Agreement, any right, remedy, or claim under or with respect to this Agreement.

**10.4   Notices.** All notices and other communications under this Agreement must be in writing and will be deemed to have been given if delivered personally, mailed by certified mail, postage prepaid, or delivered by an overnight delivery service (with confirmation) to the Parties at the following addresses (or at such other address as a Party may designate by like notice to the other Party):

If to Pledgor, then to:

> Jody Easterday, Managing Partner
> 3E Properties
>
> Principal address:
> 1427 N. 1st Ave.
> Pasco, WA  99301
>
> Mailing Address:
> PO Box 2813
> Pasco, WA  99302
>
> <u>And</u> to counsel:
>
> Michelle Green
> Gatens Green Weidenbach, PLLC
> 305 Aplets Way
> Cashmere, WA  98815-1012
>
> <u>And</u> to counsel
>
> Daniel L. Steinberg
> Jordan Ramis
> 2 Centerpointe Drive, Suite 600
> Lake Oswego, OR 97035

If to Secured Party, then to:

> Cody Easterday
> Debby Easterday
> 830 Bellflower Road
> Mesa, WA 99343
>
> <u>And</u> to counsel:
>
> Jeffrey C. Misley
> Sussman Shank LLP

**Page 24 of 41 – PARTNERSHIP INTEREST LIQUIDATION AGREEMENT**

1000 SW Broadway, Suite 1400
Portland, OR 97205

Any notice or other communication will be deemed to be given (a) on the date of personal delivery, (b) at the expiration of the third day after the date of deposit in the United States mail, or (c) on the date of confirmed delivery by overnight delivery service.

**10.5   Amendments.** This Agreement may be amended only by an instrument in writing executed by all the Parties, which writing must refer to this Agreement.

**10.6   Construction.** The captions used in this Agreement are provided for convenience only and will not affect the meaning or interpretation of any provision of this Agreement. All references in this Agreement to "Section" or "Sections" without additional identification refer to the Section or Sections of this Agreement. All words used in this Agreement will be construed to be of such gender or number as the circumstances require. Whenever the words "include" or "including" are used in this Agreement, they will be deemed to be followed by the words "without limitation." Every covenant, term and provision of this Agreement is to be construed simply according to its fair meaning and not strictly for or against any Party. The Parties have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or question of the intent or interpretation arises, this Agreement must be construed as if drafted jointly by the Parties, and no presumption or burden of proof will arise favoring or disfavoring any Party by virtue of authorship of any of the provisions of this Agreement.

**10.7   Counterparts.** This Agreement may be executed in counterparts, each of which will be considered an original and all of which together will constitute one and the same agreement.

**10.8   Electronically Transmitted Signatures.**  Electronic transmission of any signed original of this Agreement, and retransmission of any signed electronic transmission, will be the same as delivery of an original of this Agreement.

**10.9   Further Assurances.** Each Party agrees (a) to execute and deliver such other documents and (b) to do and perform such other acts and things, as the other Party may reasonably request from time to time, to carry out the intent and accomplish the purposes of this Agreement.

**10.10   Time of Essence.** Time is of the essence with respect to all dates and time periods set forth or referred to in this Agreement.

**10.11   Waiver.** Any provision or condition of this Agreement may be waived at any time, in writing, by the Party entitled to the benefit of such provision or condition. Waiver of any breach of any provision will not be a waiver of any succeeding breach of the provision or a waiver of the provision itself or any other provision.

**10.12  Governing Law.** This Agreement will be governed by and construed in accordance with the laws of the state of Washington, without regard to conflict-of-laws principles.

**10.13  Attorney Fees.** With respect to any dispute relating to this Agreement, or in the event that a suit, action, arbitration, or other proceeding of any nature whatsoever is instituted to interpret or enforce the provisions of this Agreement, including, without limitation, any proceeding under the U.S. Bankruptcy Code and involving issues peculiar to federal bankruptcy law or any action, suit, arbitration, or proceeding seeking a declaration of rights or rescission, the prevailing party shall be entitled to recover from the losing party its reasonable attorney fees, paralegal fees, expert fees, and all other fees, costs, and expenses actually incurred and reasonably necessary in connection therewith, as determined by the judge or arbitrator at trial, arbitration, or other proceeding, or on any appeal or review, in addition to all other amounts provided by law.

**10.14  Injunctive and Other Equitable Relief.** The Parties agree that the remedy at law for any breach or threatened breach by a Party may, by its nature, be inadequate, and that the other Party will be entitled, in addition to damages, to a restraining order, temporary and permanent injunctive relief, specific performance, and other appropriate equitable relief, without showing or proving that any monetary damage has been sustained.

**10.15  Venue.** Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement will be brought against any of the Parties exclusively in the Superior Court of Franklin County, Washington or the United States District Court for the Eastern District of Washington. Each of the Parties consents to the exclusive jurisdiction of such court (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to such venue. THE PARTIES FURTHER WAIVE THE RIGHT TO A JURY TRIAL IN ANY ACTION OR PROCEEDING ARISING OUT OF THIS AGREEMENT.

**10.16  Recitals and Exhibits.** The Recitals and Exhibits referenced in this Agreement and the Liquidation Agreement are part of this Agreement as if fully set forth in this Agreement.

**10.17  Severability.** If any provision of this Agreement is invalid or unenforceable in any respect for any reason, the validity and enforceability of such provision in any other respect and of the remaining provisions of this Agreement will not be in any way impaired.

**10.18  Entire Agreement.** This Agreement (including the Recitals and Exhibits to this Agreement) constitutes the entire agreement and understanding of the Parties with respect to the subject matter of this Agreement and supersedes all prior understandings and agreements, whether written or oral, among the Parties with respect to such subject matter.

**10.19  Expenses.**   Each Party will bear each such Party's own expenses in connection with this Agreement and the transactions contemplated in this Agreement.

*[Balance of this page left blank.*
*See next page for signatures of Parties.]*

**IN WITNESS WHEREOF,** the Parties have entered into this Agreement effective as of the Effective Date first above written.

| | |
|---|---|
| **PLEDGOR:** | **SECURED PARTY:** |

3E PROPERTIES,
a Washington general partnership

CODY EASTERDAY

By:_____          _____

Name: Jody Easterday                                         DEBBY EASTERDAY

Title: Managing Partner                                       _____

**ACKNOWLEDGED AND AGREED
TO BY ADMINISTRATIVE AGENT:**

GLASSRATNER ADVISORY & CAPITAL GROUP,
LLC, dba B. RILEY ADVISORY SERVICES,
as Administrative Agent

By: _____

Name: _____

Title: _____

**Page 28 of 41 – PARTNERSHIP INTEREST LIQUIDATION AGREEMENT**

EXHIBIT 1
ASSIGNMENT OF PARTNERSHIP INTEREST

1. <u>Assignment</u>. Effective as of the date of this Assignment of Partnership Interest (this "<u>Assignment</u>"), 3E PROPERTIES, a Washington general partnership ("<u>Assignor</u>"), hereby assigns, conveys and transfers to _____ ("<u>Assignee</u>"), all of Assignor's right, title and interest in and to a thirty-three and one-third percent (33 1/3%) partnership interest in Assignor.

2. <u>Partnership Interest Liquidation Agreement and Partnership Interest Pledge Agreement</u>. This Assignment is entered into in connection with consummating the transactions contemplated in that certain Partnership Interest Liquidation Agreement dated _____, 2022 (the "<u>Liquidation Agreement</u>"), by and between Assignor and Cody Easterday and Debby Easterday (the "<u>Easterdays</u>"), and that certain Partnership Interest Pledge Agreement dated _____, 2022 (the "<u>Pledge Agreement</u>"), by and between Assignor and the Easterdays. This Assignment is subject to all of the terms and conditions of the Liquidation Agreement and Pledge Agreement.

Dated effective as of _____, 20___.

**ASSIGNOR:**

3E PROPERTIES,
a Washington general partnership


By:_____

Name: Jody Easterday

Title: Managing Partner

**Page 29 of 41 – PARTNERSHIP INTEREST LIQUIDATION AGREEMENT**

**EXHIBIT C**
**GUARANTY**

The undersigned, EASTERDAY FARMS PRODUCE, CO., a Washington corporation ("Guarantor"), hereby unconditionally, absolutely and irrevocably guarantees the full and timely payment and performance of the obligations of 3E PROPERTIES, a Washington general partnership ("Maker"), under that certain Promissory Note dated _____, 2022, in the original principal amount of $1,819,368.00 (the "Note") and made by Maker for the benefit CODY EASTERDAY and DEBBY EASTERDAY, individuals and husband and wife (collectively, "Holder"), including without limitation reasonable fees and expenses of Holder's counsel incurred in connection with enforcement of the Note and any associated security therefor, and including reasonable fees and expenses incurred in connection with enforcement of this Guaranty (collectively the "Obligations"). The liability of Guarantor under this Guaranty shall be irrevocable, absolute, independent, and unconditional, and shall not be affected by any circumstance which might constitute a discharge of a surety or guarantor other than the indefeasible payment in full of all of the Obligations.

Guarantor acknowledges it is receiving direct and indirect benefits in its entry into and performance under this Guaranty (this "Guaranty"), as a result of Guarantor's affiliation with Maker, and Maker's entry into the Note, that certain Partnership Interest Liquidation Agreement of even date herewith (the "Liquidation Agreement") by and between Maker and Holder, and the other related documents contemplated thereby and executed in accordance therewith.

This Guaranty is continuing in nature and applies to all presently existing and future Obligations, until the complete, irrevocable and indefeasible payment and satisfaction in full of the Obligations.  This Guaranty is a guaranty of payment and performance and not of collection. Holder shall not be obligated to enforce or exhaust its remedies against Maker or under the Note before proceeding to enforce this Guaranty.

Except as otherwise provided in the Note, the Liquidation Agreement or this Guaranty, Guarantor hereby unconditionally and irrevocably waives promptness, diligence, notice of acceptance, presentment, demand for performance, notice of non-performance, default, acceleration, protest or dishonor and any other notice with respect to any of the Obligations and this Guaranty and any requirement that Holder protect, secure, perfect or insure any lien or any property subject thereto.  Guarantor hereby waives any and all suretyship defenses or defenses in the nature thereof without in any manner limiting any other provisions of this Guaranty.

This Guaranty shall be governed by and construed in accordance with the laws of the State of Washington, without regard to conflicts of law principles. Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Guaranty will be brought exclusively in the Superior Court of Franklin County, Washington or the United States District Court for the Eastern District of Washington. Each of the Parties consents to the exclusive jurisdiction of such court (and of the appropriate appellate courts) in any such action or proceeding and waives any objection

to such venue. THE PARTIES FURTHER WAIVE THE RIGHT TO A JURY TRIAL IN ANY ACTION OR PROCEEDING ARISING OUT OF THIS AGREEMENT.

Capitalized terms used in this Guaranty and not defined herein are used as defined in the Note.

Notwithstanding anything to the contrary herein, in the Note, in the Liquidation Agreement, or in any other related documents contemplated thereby and executed in accordance therewith, upon maturity of the Note, including by acceleration as a result of an Event of Default (as that term is defined in the Note) or on the Maturity Date (as that term is defined in the Note), Holder may not exercise any of its rights or remedies arising under the Note or otherwise seek to enforce the terms of this Guaranty without providing ten (10) business days prior written notice to Maker and Guarantor who, upon receipt of any such notice, will have the right to cure during such notice period.

Dated effective as of _____, 2022.


EASTERDAY FARMS PRODUCE, CO.,
a Washington corporation



By:_____
        Jody Easterday, President

**EXHIBIT D**
**ASSIGNMENT OF PARTNERSHIP INTEREST**

1.      **Assignment.**  Effective as of the date of this Assignment of Partnership Interest (this "Assignment"), CODY EASTERDAY and DEBBY EASTERDAY, individuals and husband and wife (collectively, "Assignor"), hereby assigns, conveys and transfers to 3E PROPERTIES, a Washington general partnership ("Assignee"), all of Assignor's right, title and interest in and to a thirty-three and one-third percent (33 1/3%) partnership interest in Assignee.

2.      **Partnership Interest Liquidation Agreement.**   This Assignment is entered into in connection with consummating the transactions contemplated in that certain Partnership Interest Liquidation Agreement of even date herewith (the "Liquidation Agreement") by and between Assignor and Assignee.  This Assignment is subject to all of the terms and conditions of the Liquidation Agreement including, but not limited to, the terms and conditions of Section 1.4 of the Liquidation Agreement.

Dated effective as of _____, 2022.

**ASSIGNOR:**

CODY EASTERDAY,
an individual


_____
Cody Easterday

DEBBY EASTERDAY,
an individual


_____
Debby Easterday

**Page 32 of 41 – PARTNERSHIP INTEREST LIQUIDATION AGREEMENT**

**EXHIBIT E**
**ASSIGNMENT OF PROMISSORY NOTE, PARTNERSHIP INTEREST**
**PLEDGE AGREEMENT AND GUARANTY**

1.	**Assignment.**	Effective as of the date of this Assignment of Promissory Note, Partnership Interest Pledge Agreement and Guaranty (this "Assignment"), CODY EASTERDAY and DEBBY EASTERDAY, individuals and husband and wife (collectively, "Assignor"), hereby assign, convey and transfer to GLASSRATNER ADVISORY & CAPITAL GROUP, LLC, dba B. RILEY ADVISORY SERVICES, acting in its capacity as the Administrative Agent (the "Administrative Agent") for the benefit of Holders of Allowed Tyson Claims and Allowed Segale Claims under that certain Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms, in the matter of In re Easterday Ranches, Inc., et al., United States Bankruptcy Court, Eastern District of Washington, Case No. 21-00141-11 ("Assignee"), all of Assignor's right, title and interest in and to (a) that certain Promissory Note of even date herewith made by 3E PROPERTIES, a Washington general partnership (the "Partnership"), in the original principal amount of $1,819,368.00 (the "Note"), (b) that certain Partnership Interest Pledge Agreement of even date by and between the Partnership and Assignor, pursuant to which the Partnership is pledging to the holder of the Note a thirty-three and one-third percent (33 1/3%) partnership interest in the Partnership (the "Partnership Interest Pledge Agreement"), and (c) that certain Guaranty of even date herewith (the "Produce Guaranty"), made by Easterday Farms Produce, Co., a Washington corporation ("Produce"), pursuant to which Produce has guaranteed the obligations of the Partnership arising under the Note. In connection with implementing this Assignment, Assignor hereby consents to the Partnership's delivery of the executed Note, executed Partnership Interest Pledge Agreement and executed Guaranty directly to the Administrative Agent (acting for the benefit of the Assignee).

2.	**Payments Under Note; Notice Address.** Assignor and Assignee hereby instruct and direct the Partnership to make all payments under the Note (when due and owing under the Note) directly to and in the name of the Administrative Agent (acting for the benefit of the Assignee) at the following address for the Administrative Agent: _____. For purposes of the Notice provisions in the Note and Section 10.4 of the Partnership Interest Pledge Agreement, the Administrative Agent (acting for the benefit of the Assignee) is hereby added as a "notice" party thereunder, and Assignor, Assignee and the Partnership each hereby agree that any and all notice and other communications made or given under the Note and/or the Partnership Interest Pledge Agreement will be sent by each to the other two parties, using in the case of the Administrative Agent the above address for the Administrative Agent.

3.	**Partnership Consent to Assignment and Acknowledgement Regarding Note Payments.** The Partnership hereby consents to this Assignment and the assignment, conveyance and transfer to Assignee of all of Assignor's right, title and interest in and to the Note, Partnership Interest Pledge Agreement, and the Produce Guaranty, and acknowledges and agrees to make all payment under the Note to and in the name of the Administrative Agent (acting for the benefit of the Assignee) at the

address set forth in Section 2 of this Assignment, or at such other address designated in writing from time to time by the Administrative Agent and delivered to the Partnership.

**4.** **Partnership Interest Liquidation Agreement.** This Assignment is entered into in connection with consummating the transactions contemplated in that certain Partnership Interest Liquidation Agreement of even date herewith (the "Liquidation Agreement") by and between Assignor and the Partnership. This Assignment is subject to all of the terms and conditions of the Liquidation Agreement including, but not limited to, the terms and conditions of Section 1.4 of the Liquidation Agreement.

**5.** **Further Assurances.** Assignor hereby covenants and agrees that it will execute and deliver to Assignee such additional documents, agreements, assignments and instruments as may be reasonably requested by the Administrative Agent to further effectuate and implement the terms and provisions of this Assignment, including, without limitation, the assignments of the Note, the Partnership Interest Pledge Agreement and the Guaranty to Assignee.

**6.** **Binding Effect.** This Assignment will be binding on and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors, and assigns.

**7.** **Amendments.** This Assignment may be amended only by an instrument in writing executed by all the parties hereto, which writing must refer to this Assignment.

**8** **Counterparts.** This Assignment may be executed in counterparts, each of which will be considered an original and all of which together will constitute one and the same Assignment.

**9.** **Electronically Transmitted Signatures.** Electronic transmission of any signed original of this Assignment, and retransmission of any signed electronic transmission, will be the same as delivery of an original of this Assignment.

**10.** **Governing Law.** This Assignment will be governed by and construed in accordance with the laws of the State of Washington, without regard to conflict-of-laws principles.

**11.** **Venue.** Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Assignment will be brought exclusively in the Superior Court of Franklin County, Washington or the United States District Court for the Eastern District of Washington. Each of the Parties consents to the exclusive jurisdiction of such court (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to such venue. THE PARTIES FURTHER WAIVE THE RIGHT TO A JURY TRIAL IN ANY ACTION OR PROCEEDING ARISING OUT OF THIS AGREEMENT.

*[Balance of this page left blank.*
*See next page for signatures of parties.]*

**Page 34 of 41 – PARTNERSHIP INTEREST LIQUIDATION AGREEMENT**

Dated effective as of _____, 2022.

**ASSIGNEE:**

GLASSRATNER ADVISORY & CAPITAL
GROUP, LLC, dba B. RILEY
ADVISORY SERVICES,
as Administrative Agent

By:_____

Name: _____

Title:_____

**PARTNERSHIP:**

3E PROPERTIES,
a Washington general partnership

By:_____

Name: Jody Easterday

Title: Managing Partner

**ASSIGNOR:**

CODY EASTERDAY,
an individual

_____
Cody Easterday

DEBBY EASTERDAY,
an individual

_____
Debby Easterday

**Page 35 of 41 – PARTNERSHIP INTEREST LIQUIDATION AGREEMENT**

**EXHIBIT F**
**QUITCLAIM DEED**

Recording requested by and
after recording return to:

Sussman Shank LLP
Attn: Jeffrey C. Misley
1000 SW Broadway, Suite 1400
Portland, OR 97205

_____

**QUITCLAIM DEED**

Grantor:      Cody Easterday and Debby Easterday, husband and wife; Karen Easterday, a single person; Jody Easterday, a single person; Karen Easterday, Personal Representative of the Estate of Gale A. Easterday (Deceased), Superior Court of the State of Washington, County of Franklin, Case No. 21-4-50004-11

Grantee:      3E Properties, a Washington general partnership

Abbreviated Legal Description:      Blocks 13 and 14, Northern Pacific Addition to City of Pasco, Franklin County, Washington

Assessor's Tax Parcel Number(s): 112-021-017

The Grantors, Cody Easterday and Debby Easterday, husband and wife, Karen Easterday, a single person, Jody Easterday, a single person, and Karen Easterday, Personal Representative of the Estate of Gale A. Easterday (Deceased), Superior Court of the State of Washington, County of Franklin, Case No. 21-4-50004-11, for and in consideration of A MERE CHANGE IN IDENTITY (WAC 458-61A211), conveys and quitclaims (including without limitation any after acquired title) to 3E Properties, a Washington general partnership, Grantee, the real property situated in the County of Franklin, State of Washington, and described as follows (the "Property"):

All of Blocks 13 and 14, Northern Pacific Addition to the City of Pasco, according to Plat thereof recorded in Volume B of Plats, Page 60, records of Franklin County, Washington.

SUBJECT TO easements, reservations, restrictions and conditions of record; and SUBJECT TO reservation in deed recorded November 14, 1990 under Auditor's File No. 475531.

The Grantors constitute all of the current partners of the Grantee. The purpose of this Quitclaim Deed is for the partners of the Grantee to confirm ownership of the Property by the Grantee pursuant to RCW 25.05.065 by formally placing title of the Property in the name of the Grantee.

Dated:_____, 2022

**GRANTOR CODY EASTERDAY:**

CODY EASTERDAY

_____
Cody Easterday

STATE OF WASHINGTON )
                     ) ss.
County of _____ )

On this day personally appeared before me Cody Easterday, to me known to be the individual described in and who executed the within and foregoing instrument, and acknowledged that he signed the same as his free and voluntary act and deed, for the uses and purposes therein mentioned.

Dated: _____, 2022

_____
(Signature)

_____
Title

My Appointment Expires: _____

**Page 37 of 41 – PARTNERSHIP INTEREST LIQUIDATION AGREEMENT**

**GRANTOR DEBBY EASTERDAY:**

DEBBY EASTERDAY

_____
Debby Easterday

STATE OF WASHINGTON      )
                               ) ss.
County of _____   )

      On this day personally appeared before me Debby Easterday, to me known to be the individual described in and who executed the within and foregoing instrument, and acknowledged that she signed the same as her free and voluntary act and deed, for the uses and purposes therein mentioned.

      Dated: _____, 2022

_____
(Signature)

_____
Title

My Appointment Expires: _____

**GRANTOR KAREN EASTERDAY:**

KAREN EASTERDAY


_____
Karen Easterday


STATE OF WASHINGTON     )
                            ) ss.
County of _____  )

      On this day personally appeared before me Karen Easterday, to me known to be the individual described in and who executed the within and foregoing instrument, and acknowledged that she signed the same as her free and voluntary act and deed, for the uses and purposes therein mentioned.

      Dated: _____, 2022


                        _____
                        (Signature)

                        _____
                        Title

                        My Appointment Expires: _____

**GRANTOR JODY EASTERDAY**:

JODY EASTERDAY


_____
Jody Easterday


STATE OF WASHINGTON          )
                             )  ss.
County of _____   )

      On this day personally appeared before me Jody Easterday, to me known to be the individual described in and who executed the within and foregoing instrument, and acknowledged that she signed the same as her free and voluntary act and deed, for the uses and purposes therein mentioned.

      Dated: _____, 2022


_____
(Signature)


_____
Title

My Appointment Expires: _____

**GRANTOR ESTATE OF GALE A. EASTERDAY:**

ESTATE OF GALE A. EASTERDAY


By:_____
       Karen Easterday,
       Personal Representative


STATE OF WASHINGTON    )
                            ) ss.
County of _____  )

      I certify that I know or have satisfactory evidence that Karen Easterday is the person who appeared before me, and said person acknowledged that she signed this instrument, on oath stated that she was authorized to execute the instrument and acknowledged it as the Personal Representative of the Estate of Gale A. Easterday (Deceased) to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

      Dated: _____, 2022

                   _____
                   (Signature)

                   _____
                   Title

                   My Appointment Expires: _____

# EXHIBIT B-2

## PRODUCE STOCK REDEMPTION AGREEMENT

**STOCK REDEMPTION AGREEMENT**

**THIS STOCK REDEMPTION AGREEMENT** (this "<u>Agreement</u>") is made and entered into effective as of the close of business on <mark>_____</mark>, 2022 (the "<u>Effective Date</u>"), by and between EASTERDAY FARMS PRODUCE, CO., a Washington corporation (the "<u>Company</u>"), and CODY EASTERDAY and DEBBY EASTERDAY, individuals and husband and wife (collectively, the "<u>Easterdays</u>"). The Company and the Easterdays are each sometimes individually referred to herein as a "<u>Party</u>" and collectively sometimes referred to herein as the "<u>Parties</u>."

**RECITALS**

A.   As of the Effective Date, the Easterdays own beneficially and of record five hundred (500) shares of common stock of the Company, representing one-third (1/3rd) of the issued and outstanding capital stock of the Company and evidenced by Stock Certificate No. 2 (the "<u>Stock Certificate</u>").

B.   Effective as of the close of business on the Effective Date and subject and pursuant to the terms and conditions of this Agreement, the Parties desire to redeem all of the Easterdays' shares (the "<u>Easterday Shares</u>") in the Company (the "<u>Redemption Transaction</u>").

C.   Immediately after consummating the Redemption Transaction, the Easterdays will assign and transfer (pursuant to the Easterday Assignment Instrument, as that term is defined in Section 4.2(d) of this Agreement) all of their rights, benefit, interests and obligations in, to and arising under the Promissory Note (as defined below), Stock Pledge Agreement (as defined below) and Partnership Guaranty (as defined below) (collectively, the "<u>Easterday Assignment</u>") to GlassRatner Advisory & Capital Group, LLC, dba B. Riley Advisory Services, acting in its capacity as the Administrative Agent (the "<u>Administrative Agent</u>"), for the benefit of Holders of Allowed Tyson Claims and Allowed Segale Claims  (the "<u>Bankruptcy Plan Assignees</u>") under that certain Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms, in the matter of In re Easterday Ranches, Inc., et al., United States Bankruptcy Court, Eastern District of Washington, Case No. 21-00141-11 (the "<u>Bankruptcy Plan</u>").

**AGREEMENT**

**NOW, THEREFORE,** for good and valuable consideration as provided for in this Agreement, the Parties hereby agree as follows:

**SECTION 1.  REDEMPTION OF EASTERDAY SHARES**

**1.1   Redemption.** Subject and pursuant to the terms and conditions set forth in this Agreement and effective as of the close of business on the Effective Date, the Company hereby redeems from the Easterdays, and the Easterdays hereby redeem, assign and transfer to the Company, all of the Easterday Shares, free and clear of all

voluntarily given liens, security interests, encumbrances, pledges and restrictions on transfer of any nature whatsoever, except for restrictions regarding marketability imposed by applicable securities laws.

**1.2    Redemption Price.** The total redemption price to be paid by the Company to the Easterdays for redemption of the Easterday Shares is Four Hundred Fifty Four Thousand, Eight Hundred Forty-Two and No/100 Dollars ($454,842.00) (the "<u>Redemption Price</u>").

**1.3    Payment of Redemption Price.** On the Effective Date, the Company will execute and deliver a Promissory Note, in the form attached hereto as <u>Exhibit A</u> (the "<u>Promissory Note</u>"), pursuant to which the Redemption Price (and interest thereon as provided for in the Promissory Note) will be paid by the Company over time pursuant to the terms of the Promissory Note. There will be no down payment on the Redemption Price at the Closing. In connection with implementing the Easterday Assignment, the Easterdays hereby consent to the Company's delivery of the executed Promissory Note directly to the Administrative Agent (acting on behalf and for the benefit of the Bankruptcy Plan Assignees).

**1.4    Security for Promissory Note; Status of Redeemed Shares.** In order to secure all of the Company's obligations and liabilities arising under the Promissory Note, concurrent with the Parties' execution and delivery of this Agreement, (i) the Company and the Easterdays will execute and deliver a Stock Pledge Agreement, in the form attached hereto as <u>Exhibit B</u> (the "<u>Stock Pledge Agreement</u>"), and (ii) the Company will execute and deliver a Stock Power in blank as provided for in the Stock Pledge Agreement, pursuant to which the Company will pledge to the Easterdays all of the Easterday Shares as collateral for the performance and payment of all of the Company's obligations and liabilities arising under the Promissory Note. In connection with implementing the Easterday Assignment, the Easterdays hereby consent to the Company's delivery of the fully executed Stock Pledge Agreement and the executed Stock Power in blank directly to the Administrative Agent (acting on behalf and for the benefit of the Bankruptcy Plan Assignees). In connection with implementing and enforcing the Company's pledge of the Easterday Shares, and notwithstanding anything to the contrary in this Agreement or the Stock Pledge Agreement, the Parties hereby acknowledge and agree that until the earlier to occur of (a) the Company's payment and satisfaction in full of all obligations and liabilities of the Company arising under the Promissory Note and (b) the occurrence of an Event of Default (as that term is defined in the Stock Pledge Agreement) and either (and pursuant to enforcement of the terms and conditions of the Stock Pledge Agreement) the Administrative Agent (as the assignee under the Easterday Assignment) takes title to the Easterday Shares or a third party takes title to the Easterday Shares, the following shall apply and be in full force and effect: (i) the Easterday Shares will remain in existence solely as treasury shares for purposes of being collateral for payment and performance of the Company's obligations arising under the Promissory Note; and (ii) the Easterday Shares will not have voting rights in the Company. In the event of the occurrence of an Event of Default (as that term is defined in the Stock Pledge Agreement) and either (and pursuant to enforcement of the terms and conditions of the Stock Pledge Agreement) the

**Page 2 of 32 – STOCK REDEMPTION AGREEMENT**

Administrative Agent (as the assignee under the Easterday Assignment) takes title to the Easterday Shares or a third party takes title to the Easterday Shares, the Parties hereby acknowledge and agree that the Easterday Shares will automatically be deemed restored to the same equity interest in the Company as existed immediately before the Company's redemption of the Easterday Shares pursuant to this Agreement in all respects and for all purposes effective as of the date either the Administrative Agent (as the assignee under the Easterday Assignment) takes title to the Easterday Shares or a third party takes title to the Easterday Shares, and thereafter the Easterday Shares will in all respects and for all purposes constitute a one-third equity interest in the Company.

**1.5    Partnership Guaranty.** In order to secure the Company's payment obligations arising under the Promissory Note, concurrent with the Parties' execution and delivery of this Agreement, 3E Properties, a Washington general partnership ("the Partnership"), will execute and deliver a Guaranty, in the form attached hereto as Exhibit C (the "Partnership Guaranty"), pursuant to which the Partnership will guarantee the payment when due of all of the Company's obligations arising under the Promissory Note. In connection with implementing the Easterday Assignment, the Easterdays hereby consent to the Company's delivery of the executed Partnership Guaranty directly to the Administrative Agent (acting on behalf and for the benefit of the Bankruptcy Plan Assignees).

**SECTION 2.  REPRESENTATIONS AND WARRANTIES OF THE EASTERDAYS; "AS IS" TRANSACTION; WAIVER AND RELEASE**

**2.1    Representations and Warranties of the Easterdays.** As a material inducement to the Company to enter into this Agreement and redeem the Easterday Shares, the Easterdays hereby make the following representations and warranties to the Company effective as of the Effective Date:

**2.1.1  Title.**  The Easterdays have (and on the Company's redemption of the Easterday Shares pursuant to the terms of this Agreement, the Company will have) good and marketable title to the Easterday Shares, free and clear of all voluntarily given liens, security interests, encumbrances, pledges and restrictions on transfer of any kind and nature whatsoever, except for restrictions regarding marketability imposed by applicable federal and state securities laws.

**2.1.2  Enforcement.**    This Agreement and the other documents, instruments and agreements contemplated in this Agreement to which the Easterdays are a party (collectively, the "Easterday Related Documents"), when executed and delivered by the parties hereto and thereto, will constitute the legal, valid, and binding obligations of the Easterdays, enforceable against the Easterdays in accordance with their respective terms, except as the enforceability thereof may be limited by the application of bankruptcy, insolvency, moratorium, or similar laws affecting the rights of creditors generally or judicial limits on equitable remedies.

**2.2    "AS IS"  Transaction; Waiver and Release.** Except for the representations and warranties of the Easterdays set forth in this Agreement and any of

the Easterday Related Documents, the Company acknowledges and agrees that it is acquiring the Easterday Shares on an **"AS IS"** basis without any kind of representation or warranty of any kind or nature whatsoever, whether expressed or implied. The Company hereby agrees that except for any breach by the Easterdays of any express warranty set for in this Agreement or any of the Easterday Related Documents, the Easterdays have no liability for, and the Company hereby waives any and all claims and releases the Easterdays from and for any and all liability arising from or otherwise related in any way to, any and all aspects whatsoever of the Easterday Shares, the Company and its operations and assets, and the transactions contemplated in this Agreement, whether direct or indirect, absolute or contingent, foreseen or unforeseen, and known or unknown. The Company hereby agrees that the foregoing waiver and release extends to each of the Easterdays and their respective heirs, legal representatives, successors, assigns, agents and representatives.

## SECTION 3.  REPRESENTATIONS AND WARRANTIES OF THE COMPANY

As a material inducement to the Easterdays to enter into this Agreement and redeem the Easterday Shares, the Company hereby makes the following representations and warranties to the Easterdays effective as of the Effective Date:

**3.1    Organization; Power.** The Company is a corporation duly organized and legally existing under the laws of the state of Washington, and has all requisite corporate power and authority to enter into this Agreement and the other documents, instruments and agreements contemplated in this Agreement to which the Company is a party (collectively, the "Company Related Documents") and to perform its obligations under this Agreement and the Company Related Documents.

**3.2    Authorization.** The Company's execution, delivery, and performance of this Agreement and the Company Related Documents has been duly and validly authorized by all necessary company action of the Company.

**3.3    Enforcement.**  This Agreement and the Company Related Documents, when executed and delivered by the parties hereto and thereto, will constitute the legal, valid, and binding obligations of the Company enforceable against the Company in accordance with their respective terms, except as enforceability thereof may be limited by the application of bankruptcy, insolvency, moratorium, or similar laws affecting the rights of creditors generally or judicial limits on equitable remedies.

## SECTION 4.  CLOSING

**4.1    Time, Place, and Manner of Closing.**  The closing (the "Closing") of the transactions contemplated by this Agreement will occur on the Effective Date, concurrently with closing of a number of transactions contemplated by the Bankruptcy Plan. The Closing of the transactions contemplated by this Agreement will occur simultaneously with the Parties' execution and delivery of this Agreement, the Easterday Related Documents and the Company Related Documents.  The Closing will be deemed to occur as of the close of business on the Effective Date.

**Page 4 of 32 – STOCK REDEMPTION AGREEMENT**

**4.2     Events of Closing.** At the Closing, the following events will occur:

(a)     The Parties will execute and deliver to each other this Agreement and the Company will redeem all of the Easterday Shares in the Company;

(b)     The Easterdays will deliver to the Company the original executed Stock Certificate evidencing the Easterday Shares;

(c)     The Easterdays will execute and deliver to the Company a Stock Power, in the form attached hereto as <u>Exhibit D</u>;

(d)     The Easterdays, the Company and the Administrative Agent (acting for the benefit of the Bankruptcy Plan Assignees) will execute and deliver to each other an Assignment of Promissory Note, Stock Pledge Agreement and Guaranty, in the form attached hereto as <u>Exhibit E</u> (the "<u>Easterday Assignment Instrument</u>"), to implement and accomplish the Easterday Assignment;

(e)     The Company will execute and deliver to the Administrative Agent (as successor in interest to the Easterdays by the Easterday Assignment, and on behalf and for the benefit of the Bankruptcy Plan Assignees) the Promissory Note (in the form attached hereto as <u>Exhibit A</u>);

(f)     The Company and the Easterdays will execute and deliver to each other and the Administrative Agent (as successor in interest to the Easterdays by the Easterday Assignment, and on behalf and for the benefit of the Bankruptcy Plan Assignees) the Stock Pledge Agreement (in the form attached hereto as <u>Exhibit B</u>) and the Company will execute and deliver to the Administrative Agent (as successor in interest to the Easterdays by the Easterday Assignment, and on behalf and for the benefit of the Bankruptcy Plan Assignees) a Stock Power in blank as provided for in the Stock Pledge Agreement (and set forth as Exhibit 1 to the Stock Pledge Agreement);

(g)     The Parties will cause the Partnership to execute and deliver to the Administrative Agent (as successor in interest to the Easterdays by the Easterday Assignment, and on behalf and for the benefit of the Bankruptcy Plan Assignees) the Partnership Guaranty (in the form attached hereto as <u>Exhibit C</u>);

(h)     The Company will deliver to the Easterdays and the Administrative Agent a copy of the executed shareholder and board of director consent resolutions authorizing the Company to enter into this Agreement and the Company Related Documents and to perform its obligations hereunder and thereunder; and

(i)     The Parties shall execute and deliver such other documents and take such other actions as are necessary or desirable to close the transactions contemplated in this Agreement in accordance with the terms of this Agreement.

**Page 5 of 32 – STOCK REDEMPTION AGREEMENT**

**4.3    Consummation of Closing.** All acts, deliveries, and confirmations comprising the Closing, regardless of chronological sequence, will be deemed to occur contemporaneously and simultaneously on the occurrence of the last act, delivery, or confirmation of the Closing and none of such acts, deliveries, or confirmations will be effective unless and until the last of the same shall have occurred.  Regardless of when the last act, delivery, or confirmation of the Closing takes place: (i) the redemption of the Easterday Shares in accordance with the terms of this Agreement will be deemed to have occurred as of the close of business on the Effective Date; and (ii) the Easterday Assignment to the Administrative Agent (acting by and on behalf of the Bankruptcy Plan Assignees) of all of the Easterdays' rights, benefit, interests and obligations in, to and arising  under the Promissory Note, Stock Pledge Agreement and Partnership Guaranty pursuant to the Easterday Assignment Instrument will be deemed to have occurred immediately after consummation of the Redemption Transaction.

## SECTION 5. SURVIVAL; INDEMNIFICATION

**5.1    Survival of Representations and Warranties.** All representations and warranties made in this Agreement, the Easterday Related Documents and the Company Related Documents will survive the Closing of this Agreement, except that any Party to whom a representation or warranty has been made in this Agreement, the Easterday Related Documents and the Company Related Documents will be deemed to have waived any misrepresentation or breach of the representation or warranty if the Party had knowledge of such breach before the Closing. The representations and warranties in this Agreement, the Easterday Related Documents and the Company Related Documents will terminate one (1) year after the Effective Date, and such representations and warranties will thereafter be without force or effect, except for any claim with respect to which written notice has been given to the potential indemnifying Party before such termination date.

**5.2    Indemnification by the Company.**

**5.2.1 Extent of Indemnification.**   The Company hereby agrees to indemnify, defend and hold harmless the Easterdays and their respective heirs, legal representatives, successors, assigns, agents and representatives (collectively, the "Indemnified Parties") from, for and against any and all demands, claims, causes of actions, liabilities, obligations, damages, costs, and expenses, including reasonable attorney fees arising out of or related in any way to any of the following:

(a)    Any breach or inaccuracy of any representation or warranty of the Company made in this Agreement or any of the Company Related Documents;

(b)    Any failure by the Company to perform any covenant required to be performed by the Company pursuant to this Agreement or any of the Company Related Documents;

**Page 6 of 32 – STOCK REDEMPTION AGREEMENT**

(c)     Any obligation or liability of the Company which the Easterdays or either of them personally guaranteed (including, but not limited to, any loan or lease); or

(d)     Any claim, obligation or liability arising out of or in any related to the operation of the Company's business, whether arising before or after the Effective Date.

**5.2.2 Notice of Claim.** If any claim is asserted against any of the Indemnified Parties that would give rise to a claim by any of the Indemnified Parties against the Company for indemnification under the provisions of this Section 5.3, the Easterdays or either of them will promptly give written notice to the Company concerning such claim and the Company will, at no expense to the Indemnified Parties, defend the claim with legal counsel reasonably acceptable to the Easterdays.

## SECTION 6.  MISCELLANEOUS PROVISIONS

**6.1     Binding Effect.** This Agreement will be binding on and inure to the benefit of the Parties and their respective heirs, legal representatives, successors, and assigns.

**6.2     Assignment.** Except as provided below in this Section 6.2, neither this Agreement nor any of the rights, interests, or obligations under this Agreement may be assigned by a Party without the prior written consent of the other Party. Notwithstanding the foregoing sentence, the Parties understand and agree that the rights, benefits and interests of the Easterdays under the Promissory Note, the Stock Pledge Agreement and the Partnership Guaranty are, concurrently with the parties entering into this Agreement, being assigned and transferred by the Easterdays to the Administrative Agent (acting for the benefit of the Bankruptcy Plan Assignees) pursuant to the terms of the Easterday Assignment Instrument, and the Partnership hereby consents to such assignment and transfer to the Administrative Agent.   Further notwithstanding the foregoing, the Parties understand and agree that at any time after consummation of the Easterday Assignment, the Administrative Agent may, with the reasonable consent of the Company, assign the Promissory Note, the Stock Pledge Agreement, the Partnership Guaranty, and any other associated rights, obligations, and documents, to a reputable financial institution, trust company, receiver, or turnaround manager provided that such assignee is not a Bankruptcy Plan Assignee or Paladin Management Group, LLC (or any of their affiliates, successors, or assigns).

**6.3     No Third-Party Beneficiaries.** Except for the Administrative Agent and Bankruptcy Plan Assignees as provided for in Section 6.2 of this Agreement, nothing in this Agreement, express or implied, is intended or will be construed to confer on any person, other than the Parties to this Agreement, any right, remedy, or claim under or with respect to this Agreement.

**6.4     Notices.** All notices and other communications under this Agreement must be in writing and will be deemed to have been given if delivered personally, mailed by certified mail, postage prepaid, or delivered by an overnight delivery service (with

**Page 7 of 32 – STOCK REDEMPTION AGREEMENT**

confirmation) to the Parties at the following addresses (or at such other address as a Party may designate by like notice to the other Party):

If to the Company, then to:

Easterday Farms Produce, Co.
Jody Easterday, President

Principal address:
1427 N. 1st Ave.
Pasco, WA  99301

Mailing Address:
PO Box 2813
Pasco, WA  99302

<u>And</u> to counsel:

Michelle Green
Gatens Green Weidenbach, PLLC
305 Aplets Way
Cashmere, WA  98815-1012

<u>And</u> to counsel

Daniel L. Steinberg
Jordan Ramis
2 Centerpointe Drive, Suite 600
Lake Oswego, OR 97035

If to the Easterdays or either of them, then to:

Cody Easterday
Debby Easterday
830 Bellflower Road
Mesa, WA 99343

<u>And</u> to counsel:

Jeffrey C. Misley
Sussman Shank LLP
1000 SW Broadway, Suite 1400
Portland, OR  97205

Any notice or other communication will be deemed to be given (a) on the date of personal delivery, (b) at the expiration of the third day after the date of deposit in the United States mail, or (c) on the date of confirmed delivery by overnight delivery service.

**Page 8 of 32 – STOCK REDEMPTION AGREEMENT**

**6.5    Amendments.** This Agreement may be amended only by an instrument in writing executed by all the Parties and the Administrative Agent, which writing must refer to this Agreement.

**6.6    Construction.** The captions used in this Agreement are provided for convenience only and will not affect the meaning or interpretation of any provision of this Agreement. All references in this Agreement to "Section" or "Sections" without additional identification refer to the Section or Sections of this Agreement. All words used in this Agreement will be construed to be of such gender or number as the circumstances require. Whenever the words "include" or "including" are used in this Agreement, they will be deemed to be followed by the words "without limitation." Every covenant, term and provision of this Agreement is to be construed simply according to its fair meaning and not strictly for or against any Party. The Parties have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or question of the intent or interpretation arises, this Agreement must be construed as if drafted jointly by the Parties, and no presumption or burden of proof will arise favoring or disfavoring any Party by virtue of authorship of any of the provisions of this Agreement.

**6.7    Counterparts.** This Agreement may be executed in counterparts, each of which will be considered an original and all of which together will constitute one and the same agreement.

**6.8    Electronically Transmitted Signatures.** Electronic transmission of any signed original of this Agreement, and retransmission of any signed electronic transmission, will be the same as delivery of an original of this Agreement.

**6.9    Further Assurances.** Each Party agrees (a) to execute and deliver such other documents and (b) to do and perform such other acts and things, as the other Party may reasonably request from time to time, to carry out the intent and accomplish the purposes of this Agreement.

**6.10    Time of Essence.** Time is of the essence with respect to all dates and time periods set forth or referred to in this Agreement.

**6.11    Waiver.** Any provision or condition of this Agreement may be waived at any time, in writing, by the Party entitled to the benefit of such provision or condition. Waiver of any breach of any provision will not be a waiver of any succeeding breach of the provision or a waiver of the provision itself or any other provision.

**6.12    Governing Law.** This Agreement will be governed by and construed in accordance with the laws of the state of Washington, without regard to conflict-of-laws principles.

**6.13    Attorney Fees.** With respect to any dispute relating to this Agreement, or in the event that a suit, action, arbitration, or other proceeding of any nature whatsoever is instituted to interpret or enforce the provisions of this Agreement, including, without

21-00141-WLH11    Doc 1814    Filed 07/26/22    Entered 07/26/22 10:37:04    Pg 159 of 244

limitation, any proceeding under the U.S. Bankruptcy Code and involving issues peculiar to federal bankruptcy law or any action, suit, arbitration, or proceeding seeking a declaration of rights or rescission, the prevailing party shall be entitled to recover from the losing party its reasonable attorney fees, paralegal fees, expert fees, and all other fees, costs, and expenses actually incurred and reasonably necessary in connection therewith, as determined by the judge or arbitrator at trial, arbitration, or other proceeding, or on any appeal or review, in addition to all other amounts provided by law.

**6.14 Injunctive and Other Equitable Relief.** The Parties agree that the remedy at law for any breach or threatened breach by a Party may, by its nature, be inadequate, and that the other Party will be entitled, in addition to damages, to a restraining order, temporary and permanent injunctive relief, specific performance, and other appropriate equitable relief, without showing or proving that any monetary damage has been sustained.

**6.15 Venue.** Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement will be brought against any of the Parties exclusively in the Superior Court of Franklin County, Washington or the United States District Court for the Eastern District of Washington. Each of the Parties consents to the exclusive jurisdiction of such court (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to such venue. THE PARTIES FURTHER WAIVE THE RIGHT TO A JURY TRIAL IN ANY ACTION OR PROCEEDING ARISING OUT OF THIS AGREEMENT.

**6.16 Recitals and Exhibits.** The Recitals and Exhibits referenced in this Agreement are part of this Agreement as if fully set forth in this Agreement.

**6.17 Severability.** If any provision of this Agreement is invalid or unenforceable in any respect for any reason, the validity and enforceability of such provision in any other respect and of the remaining provisions of this Agreement will not be in any way impaired.

**6.18 Entire Agreement.** This Agreement (including the Recitals and Exhibits to this Agreement) constitutes the entire agreement and understanding of the Parties with respect to the subject matter of this Agreement and supersedes all prior understandings and agreements, whether written or oral, among the Parties with respect to such subject matter.

**6.19 Expenses.** Each Party will bear each such Party's own expenses in connection with this Agreement and the transactions contemplated in this Agreement.

*[Balance of this page left blank.*
*See next page for signatures of Parties.]*

**IN WITNESS WHEREOF,** the Parties have entered into this Agreement effective as of the Effective Date first above written.

| | |
|---|---|
| **COMPANY:** | **EASTERDAYS:** |

EASTERDAY FARMS PRODUCE, CO.,
a Washington corporation

CODY EASTERDAY,
an individual

By:_____

Name: Jody Easterday

Title: President

_____
Cody Easterday

DEBBY EASTERDAY,
an individual

_____
Debby Easterday

**ACKNOWLEDGED AND AGREED
TO BY ADMINISTRATIVE AGENT:**

GLASSRATNER ADVISORY & CAPITAL GROUP,
LLC, dba B. RILEY ADVISORY SERVICES,
as Administrative Agent

By: _____

Name: _____

Title: _____

**EXHIBIT A**
**PROMISSORY NOTE**

$454,842.00                                        _____, 2022
                                        Franklin County, Washington

     FOR VALUE RECEIVED, EASTERDAY FARMS PRODUCE, CO., a Washington corporation ("Maker"), hereby promises to pay to the order of CODY EASTERDAY and DEBBY EASTERDAY, individuals and husband and wife (collectively, "Holder"), at 830 Bellflower Road, Mesa, WA 99343, or at such other place designated in writing from time to time by Holder and delivered to Maker, the principal amount of Four Hundred Fifty-Four Thousand, Eight Hundred Forty-Two and No/100 Dollars ($454,842.00), together with interest on the unpaid principal balance from the date of this Promissory Note (this "Note") until the unpaid principal balance is paid in full at the rate of four and one-half percent (4.5%) per annum (the "Interest Rate"). Maker shall make to Holder four (4) semi-annual installment payments to be applied to principal (the "Installment Payments") during the term of this Note in the amount of Twenty Thousand Dollars ($20,000.00) each, with the first Installment Payment due on the date which is the ninetieth (90th) day after the date of this Note, the second Installment Payment due on the date which is the two hundred seventieth (270th) day after the date of this Note, the third Installment Payment due on the date which is the four hundred fiftieth (450th) day after the date of this Note, and the fourth Installment Payment due on the date which is the six hundred thirtieth (630th) day after the date of this Note. This Note shall mature on the date which is the second anniversary of the date of this Note (the "Maturity Date"), at which time the entire unpaid principal balance together with all accrued and unpaid interest thereon shall all be immediately due and payable in full. If any amount payable hereunder is not paid when due (without regard to any applicable grace period), whether at stated maturity, by acceleration, or otherwise, such overdue amount shall bear interest at the Interest Rate plus three percent (3.0%) (the "Default Rate").

     This Note is made and given in accordance with the terms and provisions of that certain Stock Redemption Agreement of even date herewith by and between Maker and Holder (the "Stock Redemption Agreement"), pursuant to which Maker is redeeming from Holder five hundred (500) shares of common stock in Maker (the "Easterday Shares") owned by Holder. This Note is secured by the certain Stock Pledge Agreement of even date herewith by and between Maker and Holder (the "Stock Pledge Agreement"), pursuant to which Maker is pledging to Holder the Easterday Shares as security for performance and payment of all of Maker's obligations and liabilities arising under this Note. In addition to the foregoing, 3E Properties, a Washington general partnership (the "Partnership"), has entered into that certain Guaranty of even date herewith (the "Partnership Guaranty") for the benefit of Holder, pursuant to which the Partnership has guaranteed the payment when due of all of Maker's obligations arising under this Note.

     In addition to, and not in lieu of, Holder's exercise of any other rights and remedies Holder may have hereunder or at law or in equity, Holder may, at Holder's option and without notice to Maker or any other party, accelerate the maturity of the

**Page 12 of 32 – STOCK REDEMPTION AGREEMENT**

then outstanding principal balance of this Note, to become immediately due and payable in full hereunder, upon the occurrence of any of the following events, each which will be deemed an event of default under this Note (each, an "Event of Default"):

(a)     Maker's failure to make any payment within five (5) days after such payment is due under this Note;

(b)     The failure of the Partnership to make any payment within five (5) days after such payment is due under that certain Promissory Note of even date herewith in the original principal amount of $1,819,368.00 (the "Partnership Promissory Note") and made by the Partnership for the benefit of Holder (and made and given in connection with that certain Partnership Interest Liquidation Agreement of even date herewith by and between the Partnership and Holder pursuant to which Holder is liquidating all of Holder's partnership interest in the Partnership (the "Partnership Interest Liquidation Agreement"));

(c)     Maker's failure, within ten (10) business days after receipt of written notice from Holder of such failure, to perform any obligation arising under the Stock Redemption Agreement or the Stock Pledge Agreement; provided, however, notwithstanding the foregoing, if the cure for nonperformance of any such obligation (other than a payment obligation) shall take longer than ten (10) business days to complete, Maker will not be in default hereunder if Maker diligently pursues and completes such cure within twenty (20) business days after receipt of such written notice;

(d)     The complete liquidation of Maker or the Partnership;

(e)     An involuntary petition or proceeding pursuant to the Bankruptcy Code or any other applicable law relating to bankruptcy, reorganization, or other relief for debtors is filed or commenced against Maker and is not dismissed, stayed, or vacated within thirty (30) days thereafter or Maker files an answer admitting the jurisdiction of the court and the material allegations of any such involuntary petition;

(f)     Maker files a voluntary petition in bankruptcy or seeks to effect a plan or other arrangement with creditors or any other relief under the Bankruptcy Code or under any state or other federal law granting relief to debtors, whether now or hereafter in effect, or Maker makes an assignment for the benefit of creditors or shall admit in writing its inability to pay its debts generally as they become due;

(g)     An order is entered for the appointment of a receiver, liquidator, sequestrator, trustee, custodian, or other officer having similar powers over Maker, or over any property of Maker;

(h)     A warrant of attachment, execution, or similar process is issued against any property of Maker;

21-00141-WLH11    Doc 1814    Filed 07/26/22    Entered 07/26/22 10:37:04    Pg 163 of 244

(i)     The sale or other transfer of all or substantially all of the assets of Maker outside the ordinary course of business;

(j)     Any reorganization, restructuring or termination of the existence of Maker (except pursuant to the Stock Redemption Agreement) or the Partnership (except pursuant to the Partnership Interest Liquidation Agreement); or

(k)     Any change in the corporate structure of Maker or partnership structure of the Partnership that would reasonably be expected to have a material effect on Maker's or the Partnership's ability to satisfy their obligations under this Note or the Partnership Note.

Except as otherwise expressly provided herein, all payments hereunder (including, but not limited to, the Installment Payments) shall be applied in the following order: first, to all costs and expenses to enforce this Note; second, to all accrued and unpaid interest; third, to principal.  All payments hereunder shall be made in immediately available funds in lawful money of the United States.  Without limitation of the foregoing, whether or not Holder exercises its right to accelerate the maturity of the then outstanding principal balance of this Note or any other remedies, the entire principal balance and all accrued interest under this Note shall, at the election of Holder, bear interest from the date of any Event of Default at the Default Rate.  Such default interest shall be payable on demand.

This Note may be prepaid, in whole or in part, at any time without any prepayment penalty or fee.

Holder's failure or forbearance to exercise any right or remedy given hereunder upon the occurrence of any Event of Default shall not be deemed a waiver of any such term or condition or any subsequent default of the same or any other term or condition set forth herein or therein.

Notwithstanding anything to the contrary herein, the Stock Pledge Agreement, or the Partnership Guaranty, upon maturity of this Note, including by acceleration as a result of an Event of Default or on the Maturity Date, Holder may not exercise any of its rights or remedies arising under this Note or otherwise seek to enforce the terms of the Stock Pledge Agreement or the Partnership Guaranty without providing fifteen (15) business days' prior written notice to Maker and the Partnership who, upon receipt of any such notice, will have the right to cure during such notice period.

If any suit, action or proceeding is instituted to collect this Note (including, but not limited to, any suit, action or proceeding commenced in any federal bankruptcy court), Holder will be entitled to recover, at trial or on appeal, any sums that the court may adjudge reasonable as attorney fees, in addition to costs and necessary disbursements.

This Note shall be governed by and construed in accordance with the laws of the state of Washington, without regard to conflict-of-laws principles.  In the event any suit, action or proceeding is commenced to enforce this Note, such suit, action or proceeding

shall be commenced exclusively in the Superior Court of Franklin County, Washington or the United States District Court for the Eastern District of Washington. Each of the Parties consents to the exclusive jurisdiction of such court (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to such venue. THE PARTIES FURTHER WAIVE THE RIGHT TO A JURY TRIAL IN ANY ACTION OR PROCEEDING ARISING OUT OF THIS NOTE.

Except as otherwise provided herein, the Stock Pledge Agreement or the Partnership Guaranty, Maker waives presentment, demand, protest, notice of protest, acceptance or other notice of non-payment or dishonor, or any other notice, and waives the right to require Holder to pursue any particular remedy as a condition to enforcement of this Note.

Maker warrants and represents that all funds owed under this Note are solely for business or commercial purposes.

Any terms not defined herein shall have the meanings ascribed to them in the Stock Redemption Agreement.

All notices and other communications under this Note must be in writing and will be deemed to have been given if delivered personally, mailed by certified mail, postage prepaid, or delivered by an overnight delivery service (with confirmation) to the parties at the following addresses (or at such other address as a party may designate by like notice to the other party):

If to Maker, then to:

Jody Easterday, President
Easterday Farms Produce, Co.

Principal address:
1427 N. 1st Ave.
Pasco, WA  99301

Mailing Address:
PO Box 2813
Pasco, WA  99302

<u>And</u> to counsel:

Michelle Green
Gatens Green Weidenbach, PLLC
305 Aplets Way
Cashmere, WA  98815-1012

<u>And</u> to counsel

**Page 15 of 32 – STOCK REDEMPTION AGREEMENT**

Daniel L. Steinberg
Jordan Ramis
2 Centerpointe Drive, Suite 600
Lake Oswego, OR 97035

If to Holder or either of them, then to:

Cody Easterday
Debby Easterday
830 Bellflower Road
Mesa, WA 99343

<u>And</u> to counsel:

Jeffrey C. Misley
Sussman Shank LLP
1000 SW Broadway, Suite 1400
Portland, OR  97205


ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

**MAKER:**

EASTERDAY FARMS PRODUCE, CO.
a Washington corporation


By:_____

Name: Jody Easterday

Title: President

**EXHIBIT B**
**STOCK PLEDGE AGREEMENT**

**THIS STOCK PLEDGE AGREEMENT** (this "Agreement") is made and entered into effective as of _____, 2022 (the "Effective Date"), by and between EASTERDAY FARMS PRODUCE, CO., a Washington corporation ("Pledgor"), and CODY EASTERDAY and DEBBY EASTERDAY, individuals and husband and wife (collectively, "Secured Party").  Pledgor and Secured Party are each sometimes individually referred to herein as a "Party" and collectively sometimes referred to herein as the "Parties."

**RECITALS**

A.    Pledgor and Secured Party have entered into that certain Stock Redemption Agreement of even date herewith (the "Redemption Agreement") pursuant to which Pledgor redeemed from Secured Party, and Secured Party assigned and transferred to Pledgor, five hundred (500) shares of Pledgor's common stock (evidenced by Stock Certificate No. 2) owned by Secured Party (the "Shares").

B.    In connection with consummating the transactions under the Redemption Agreement, Pledgor has executed and delivered to Secured Party a Promissory Note of even date herewith in the principal amount of $454,842.00 (the "Note").

C.    In connection with implementing that certain Third Amended Joint Chapter 11 Plan of Liquidation (the "Bankruptcy Plan") of Easterday Ranches, Inc. and Easterday Farms, in the matter of In re Easterday Ranches, Inc., et al., United States Bankruptcy Court, Eastern District of Washington, Case No. 21-00141-11, Secured Party has assigned (the "Easterday Assignment") Secured Party's rights, benefits and interests in, to and arising under the Note, this Agreement, and that certain Guaranty of even date herewith made and entered into by 3E Properties, a Washington general partnership (the "Partnership"), pursuant to which the Partnership has guaranteed the payment when due of all of Pledgor's obligations arising under the Note (the "Partnership Guaranty"), to GLASSRATNER ADVISORY & CAPITAL GROUP, LLC, dba B. RILEY ADVISORY SERVICES, acting in its capacity as the Administrative Agent (the "Administrative Agent"), acting for the benefit of Holders of Allowed Tyson Claims and Allowed Segale Claims under the Bankruptcy Plan (the "Bankruptcy Plan Assignees").

D.    As a condition to and inducement for Secured Party entering into the Redemption Agreement, Pledgor agreed to enter into this Agreement to secure performance and payment of Pledgor's obligations and liabilities arising under the Note.

**AGREEMENT**

**NOW, THEREFORE,** the Parties hereby agree as follows:

**SECTION 1.  GRANT OF SECURITY INTEREST**

As security for the full, prompt and complete payment and performance by Pledgor of the Obligations (as defined below), Pledgor hereby pledges and grants to Secured Party a security interest in the Shares (including all ownership interest therein and profits interests thereof), the certificates representing the Shares, all cash, securities, increases, options, rights, dividends, distributions and profits received therefrom, whether as an addition to, in substitution or exchange for, or on account of, such   Shares, and all products and proceeds of all of the foregoing.

## SECTION 2.  OBLIGATION

The obligations secured by this Agreement are the obligations and liabilities of Pledgor under the Note and this Agreement and the Partnership's obligations under the Partnership Guaranty, including without limitation the full and prompt payment when due of all principal, interest, fees and expenses accruing under the Note and Pledgor's obligation to timely make all payments when due under the Note (collectively, the "Obligations").

## SECTION 3.  PERFECTION; STOCK POWER IN BLANK

**3.1      Perfection.** Pledgor will concurrently with execution of this Agreement reflect the fact of this Agreement and the pledge of the Shares in the books and records of Pledgor. Pledgor hereby authorizes Secured Party and Administrative Agent to take all actions reasonably necessary or appropriate to perfect the security interest granted herein, including without limitation to file a UCC-1 financing statement with the Washington Department of Licensing. On Pledgor's payment and performance in full of all Obligations secured by this Agreement: (i) Administrative Agent will forthwith upon request of Pledgor file a UCC termination with the Washington Department of Licensing, and failing Administrative Agent doing same within ten (10) days after Pledgor's request therefore, Pledgor is hereby authorized to file on behalf and in the name of Secured Party and Administrative Agent, as the case may be, such UCC termination with the Washington Department of Licensing; and (ii) Administrative Agent will promptly execute and deliver to Pledgor such documents and instruments as reasonably requested by Pledgor from time to time to acknowledge and evidence the termination of this Agreement and/or that all estate, right, title and interest in and to the Shares has reverted to Pledgor.

**3.2      Stock Power in Blank.** In addition to the foregoing, concurrently with execution of this Agreement, Pledgor will execute and deliver to Secured Party (who will deliver to Administrative Agent pursuant to the Easterday Assignment), to be held pending occurrence of an Event of Default and foreclosure or sale proceedings in accordance with this Agreement, a Stock Power for all of the Shares endorsed by Pledgor in blank, in the form attached hereto as Exhibit 1 (the "Stock Power"). On Pledgor's payment and performance in full of all Obligations secured by this Agreement, Administrative Agent will promptly return to Pledgor such original executed Stock Power.

## SECTION 4.  PLEDGOR'S REPRESENTATIONS AND WARRANTIES

Pledgor represents and warrants to Secured Party that, subject to the accuracy of Secured Party's representations and warranties to Pledgor in the Redemption Agreement, Pledgor is the owner of the Shares, free and clear of all liens, security interests, encumbrances, pledges, charges, claims, and restrictions on transfer, except for restrictions imposed by applicable federal and state securities laws. Pledgor's representations and warranties in the Redemption Agreement are hereby made for the benefit of Secured Party and are incorporated herein as if fully set forth in this Agreement.

## SECTION 5. COVENANTS OF PLEDGOR WITH RESPECT TO SHARES

So long as any portion of the Obligations remain outstanding and unpaid, Pledgor covenants and agrees with Secured Party that:

(a)     Pledgor will honor and comply with the terms and conditions of Section 1.4 of the Redemption Agreement, which are hereby incorporated into and made a part of this Agreement by this reference as if set forth in this Agreement;

(b)     Pledgor will not allow or grant any other lien or security interest with respect to the Shares; and

(c)     Pledgor will not transfer or attempt to transfer, whether by sale, gift, or otherwise, any ownership interest in the Shares without Secured Party's prior written approval.

## SECTION 6. AUTHORIZED ACTION BY SECURED PARTY; PROXY

Exercisable only after and during the continuance of an Event of Default (as that term is defined in Section 7 of this Agreement), Pledgor hereby appoints the Secured Party as its attorney-in-fact and grants Secured Party a proxy to exercise the rights and powers that Pledgor might exercise with respect to the Shares. With respect to voting the Shares, this section constitutes an irrevocable appointment of a proxy, coupled with an interest, which will continue until all Obligations secured under this Agreement are performed in full.

## SECTION 7. EVENTS OF DEFAULT

As used in this Agreement, the term "Event of Default" will have the meaning ascribed to it in the Note. Any occurrence of an Event of Default under the Note shall be deemed an Event of Default under this Agreement.

## SECTION 8. REMEDIES ON DEFAULT

On the occurrence of any Event of Default, Secured Party may, in Secured Party's sole discretion, with notice to Pledgor, and in addition to all rights and remedies at law or in equity or otherwise:

**Page 19 of 32 – STOCK REDEMPTION AGREEMENT**

(a)     Declare the entire balance of the Note immediately due and payable in full;

(b)     Register in Secured Party's name any or all of the Shares, and exercise any rights, privileges or options pertaining to such Shares as if Secured Party were the absolute owner thereof;

(c)     Exercise the Secured Party's proxy rights with respect to all or a portion of the Shares;

(d)     Sell or otherwise dispose of the Shares in accordance with Section 9 of this Agreement; and

(e)     Except to the extent inconsistent with any of the terms and conditions of this Agreement, exercise all rights and remedies of a secured party under the Uniform Commercial Code of the state of Washington.

Notwithstanding anything to the contrary in the Note, this Agreement, or the Partnership Guaranty, upon maturity of the Note, including by acceleration as a result of an Event of Default or on the Maturity Date (as that term is defined in the Note), Secured Party may not exercise any of its rights or remedies arising under the Note or otherwise seek to enforce the terms of this Agreement or the Partnership Guaranty without providing ten (10) business days' prior written notice to Pledgor and the Partnership who, upon receipt of any such notice, will have the right to cure during such notice period.

## SECTION 9.  SALE ON DEFAULT

Pledgor acknowledges that the Shares are restricted, unregistered stock in Pledgor that is difficult to value and for which no public market exists. Pledgor agrees that the Shares are not subject to sale in a "recognized market" as described in RCW 62A.9A-610(c)(2). Pledgor and Secured Party wish to agree to reasonable standards for conducting a commercially reasonable sale of the Shares. Without limiting rights and remedies otherwise available to Pledgor, the parties agree that the following provisions will govern the sale of the Shares on the occurrence of any Event of Default, and compliance with them will satisfy the requirements of a commercially reasonable sale:

(a)     The sale may be either a public sale or a private sale, at Secured Party's discretion, and it may be for all or any portion of the Shares;

(b)     Secured Party will set a date for public sale of the Shares, or a date after which a private sale may occur, which date may not be less than fifteen (15) days after the date that the notice of the sale is given to Pledgor, and Secured Party will send written notification to Pledgor in advance regarding the date and the time of the public sale or the date after which a private sale may occur;

**Page 20 of 32 – STOCK REDEMPTION AGREEMENT**

(c)     Any public sale must take place at a site in Franklin County, Washington selected by the Secured Party;

(d)     Immediately on request, Pledgor will provide Secured Party with information requested by Secured Party for compliance with state or federal securities laws; and

(e)     At any sale of any of the Shares, Secured Party may restrict the prospective bidders or purchasers to persons or entities who, by certain representations made by them, would render registration of the sale under state or federal securities laws unnecessary.

Except as specifically limited by the foregoing provisions of this Section 9 or by applicable provisions of the Uniform Commercial Code of the State of Washington, Secured Party shall have discretion to manage the sale of the Shares after an Event of Default in the manner that Secured Party reasonably deems is in its and its beneficiaries' best interests.

## SECTION 10.  MISCELLANEOUS PROVISIONS

**10.1    Binding Effect.** This Agreement will be binding on and inure to the benefit of the Parties and their respective heirs, legal representatives, successors, and assigns.

**10.2    Assignment.** Except as provided below in this Section 10.2, neither this Agreement nor any of the rights, interests, or obligations under this Agreement may be assigned by either Party. Notwithstanding the foregoing sentence, the Parties understand and agree that the rights, benefits and interests of Secured Party under the Note, this Agreement and the Partnership Guaranty are, concurrent with the parties entering into this Agreement, being assigned and transferred by Secured Party to the Administrative Agent (acting for the benefit of the Bankruptcy Plan Assignees) pursuant to a separate assignment instrument, and Pledgor has consented to such assignment and transfer to the Administrative Agent (acting for the benefit of the Bankruptcy Plan Assignees). Further notwithstanding the foregoing, Administrative Agent may, in connection with an assignment of Administrative Agent's rights and interests under the Note, assign this Agreement and its rights, interests and obligations hereunder to any individual, corporation, company, limited liability company, trust, joint venture, association, partnership, unincorporated organization, governmental authority, or other entity to whom the rights and interests of Administrative Agent under the Note are assigned and transferred.

**10.3    No Third-Party Beneficiaries.** Except for the Administrative Agent and Bankruptcy Plan Assignees as provided for in Section 10.2 of this Agreement, nothing in this Agreement, express or implied, is intended or will be construed to confer on any person, other than the Parties to this Agreement, any right, remedy, or claim under or with respect to this Agreement.

**Page 21 of 32 – STOCK REDEMPTION AGREEMENT**

**10.4  Notices.** All notices and other communications under this Agreement must be in writing and will be deemed to have been given if delivered personally, mailed by certified mail, postage prepaid, or delivered by an overnight delivery service (with confirmation) to the Parties at the following addresses (or at such other address as a Party may designate by like notice to the other Party):

If to Pledgor, then to:

> Easterday Farms Produce, Co.
> Jody Easterday, President
>
> Principal address:
> 1427 N 1st Ave.
> Pasco, WA  99301
>
> Mailing Address:
> PO Box 2813
> Pasco, WA  99302
>
> <u>And</u> to counsel:
>
> Michelle Green
> Gatens Green Weidenbach, PLLC
> 305 Aplets Way
> Cashmere, WA  98815-1012
>
> <u>And</u> to counsel
>
> Daniel L. Steinberg
> Jordan Ramis
> 2 Centerpointe Drive, Suite 600
> Lake Oswego, OR 97035

If to Secured Party, then to:

> Cody Easterday
> Debby Easterday
> 830 Bellflower Road
> Mesa, WA 99343
>
> <u>And</u> to counsel:
>
> Jeffrey C. Misley
> Sussman Shank LLP
> 1000 SW Broadway, Suite 1400
> Portland, OR  97205

**Page 22 of 32 – STOCK REDEMPTION AGREEMENT**

Any notice or other communication will be deemed to be given (a) on the date of personal delivery, (b) at the expiration of the third day after the date of deposit in the United States mail, or (c) on the date of confirmed delivery by overnight delivery service.

**10.5   Amendments.** This Agreement may be amended only by an instrument in writing executed by all the Parties, which writing must refer to this Agreement.

**10.6   Construction.** The captions used in this Agreement are provided for convenience only and will not affect the meaning or interpretation of any provision of this Agreement. All references in this Agreement to "Section" or "Sections" without additional identification refer to the Section or Sections of this Agreement. All words used in this Agreement will be construed to be of such gender or number as the circumstances require. Whenever the words "include" or "including" are used in this Agreement, they will be deemed to be followed by the words "without limitation." Every covenant, term and provision of this Agreement is to be construed simply according to its fair meaning and not strictly for or against any Party. The Parties have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or question of the intent or interpretation arises, this Agreement must be construed as if drafted jointly by the Parties, and no presumption or burden of proof will arise favoring or disfavoring any Party by virtue of authorship of any of the provisions of this Agreement.

**10.7   Counterparts.** This Agreement may be executed in counterparts, each of which will be considered an original and all of which together will constitute one and the same agreement.

**10.8   Electronically Transmitted Signatures.**  Electronic transmission of any signed original of this Agreement, and retransmission of any signed electronic transmission, will be the same as delivery of an original of this Agreement.

**10.9   Further Assurances.** Each Party agrees (a) to execute and deliver such other documents and (b) to do and perform such other acts and things, as the other Party may reasonably request from time to time, to carry out the intent and accomplish the purposes of this Agreement.

**10.10  Time of Essence.** Time is of the essence with respect to all dates and time periods set forth or referred to in this Agreement.

**10.11  Waiver.** Any provision or condition of this Agreement may be waived at any time, in writing, by the Party entitled to the benefit of such provision or condition. Waiver of any breach of any provision will not be a waiver of any succeeding breach of the provision or a waiver of the provision itself or any other provision.

**10.12  Governing Law.** This Agreement will be governed by and construed in accordance with the laws of the state of Washington, without regard to conflict-of-laws principles.

**10.13  Attorney Fees.** With respect to any dispute relating to this Agreement, or in the event that a suit, action, arbitration, or other proceeding of any nature whatsoever is instituted to interpret or enforce the provisions of this Agreement, including, without limitation, any proceeding under the U.S. Bankruptcy Code and involving issues peculiar to federal bankruptcy law or any action, suit, arbitration, or proceeding seeking a declaration of rights or rescission, the prevailing party shall be entitled to recover from the losing party its reasonable attorney fees, paralegal fees, expert fees, and all other fees, costs, and expenses actually incurred and reasonably necessary in connection therewith, as determined by the judge or arbitrator at trial, arbitration, or other proceeding, or on any appeal or review, in addition to all other amounts provided by law.

**10.14 Injunctive and Other Equitable Relief.** The Parties agree that the remedy at law for any breach or threatened breach by a Party may, by its nature, be inadequate, and that the other Party will be entitled, in addition to damages, to a restraining order, temporary and permanent injunctive relief, specific performance, and other appropriate equitable relief, without showing or proving that any monetary damage has been sustained.

**10.15  Venue.** Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement will be brought against any of the Parties exclusively in the Superior Court of Franklin County, Washington or the United States District Court for the Eastern District of Washington. Each of the Parties consents to the exclusive jurisdiction of such court (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to such venue. THE PARTIES FURTHER WAIVE THE RIGHT TO A JURY TRIAL IN ANY ACTION OR PROCEEDING ARISING OUT OF THIS AGREEMENT.

**10.16 Recitals and Exhibits.** The Recitals and Exhibits referenced in this Agreement and the Redemption Agreement are part of this Agreement as if fully set forth in this Agreement.

**10.17  Severability.** If any provision of this Agreement is invalid or unenforceable in any respect for any reason, the validity and enforceability of such provision in any other respect and of the remaining provisions of this Agreement will not be in any way impaired.

**10.18  Entire Agreement.** This Agreement (including the Recitals and Exhibits to this Agreement) constitutes the entire agreement and understanding of the Parties with respect to the subject matter of this Agreement and supersedes all prior understandings and agreements, whether written or oral, among the Parties with respect to such subject matter.

**10.19 Expenses.**  Each Party will bear each such Party's own expenses in connection with this Agreement and the transactions contemplated in this Agreement.

*[Balance of this page left blank.*
*See next page for signatures of Parties.]*

**IN WITNESS WHEREOF,** the Parties have entered into this Agreement effective as of the Effective Date first above written.

**PLEDGOR:**                                   **SECURED PARTY:**

EASTERDAY FARMS PRODUCE, CO.,                  CODY EASTERDAY,
a Washington corporation                       an individual

By:_____                   _____

Name: Jody Easterday                           Cody Easterday

Title: President                               DEBBY EASTERDAY,
                                               an individual


                                               _____
                                               Debby Easterday

**ACKNOWLEDGED AND AGREED**
**TO BY ADMINISTRATIVE AGENT:**

GLASSRATNER ADVISORY & CAPITAL GROUP,
LLC, dba B. RILEY ADVISORY SERVICES,
as Administrative Agent


By: _____

Name: _____

Title: _____

EXHIBIT 1
STOCK POWER

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, EASTERDAY FARMS PRODUCE, CO., a Washington corporation (the "Company"), hereby assigns, transfers, and conveys to _____ all of the Company's right, title, and interest in and to five hundred (500) shares of the common stock (the "Shares") in the Company, represented by Stock Certificate No. 2, and hereby irrevocably appoints _____ as attorney-in-fact to transfer the Shares on the books of the Company with full power of substitution in the premises.

This Stock Power is entered into in connection with consummating the transactions contemplated in that certain Stock Redemption Agreement dated _____, 2022 (the "Redemption Agreement"), by and between the Company and Cody Easterday and Debby Easterday (the "Easterdays"), and that certain Stock Pledge Agreement dated _____, 2022 (the "Pledge Agreement"), by and between the Company and the Easterdays. This Stock Power is subject to all of the terms and conditions of the Redemption Agreement and Pledge Agreement.

Dated effective as of _____, 20___.

EASTERDAY FARMS PRODUCE, CO.,
a Washington corporation


By:_____

Name: Jody Easterday

Title: President

**Page 26 of 32 – STOCK REDEMPTION AGREEMENT**

**EXHIBIT C**
**GUARANTY**

The undersigned, 3E PROPERTIES, a Washington general partnership ("Guarantor"), hereby unconditionally, absolutely and irrevocably guarantees the full and timely payment and performance of the obligations of EASTERDAY FARMS PRODUCE, CO., a Washington corporation ("Maker"), under that certain Promissory Note dated _____, 2022, in the original principal amount of $454,842.00 (the "Note") and made by Maker for the benefit CODY EASTERDAY and DEBBY EASTERDAY, individuals and husband and wife (collectively, "Holder"), including without limitation reasonable fees and expenses of Holder's counsel incurred in connection with enforcement of the Note and any associated security therefor, and including reasonable fees and expenses incurred in connection with enforcement of this Guaranty (collectively the "Obligations"). The liability of Guarantor under this Guaranty shall be irrevocable, absolute, independent, and unconditional, and shall not be affected by any circumstance which might constitute a discharge of a surety or guarantor other than the indefeasible payment in full of all of the Obligations.

Guarantor acknowledges it is receiving direct and indirect benefits in its entry into and performance under this Guaranty (this "Guaranty"), as a result of Guarantor's affiliation with Maker, and Maker's entry into the Note, that certain Stock Redemption Agreement of even date herewith (the "Redemption Agreement") by and between Maker and Holder, and the other related documents contemplated thereby and executed in accordance therewith.

This Guaranty is continuing in nature and applies to all presently existing and future Obligations, until the complete, irrevocable and indefeasible payment and satisfaction in full of the Obligations. This Guaranty is a guaranty of payment and performance and not of collection. Holder shall not be obligated to enforce or exhaust its remedies against Maker or under the Note before proceeding to enforce this Guaranty.

Except as otherwise provided in the Note, the Redemption Agreement or this Guaranty, Guarantor hereby unconditionally and irrevocably waives promptness, diligence, notice of acceptance, presentment, demand for performance, notice of non-performance, default, acceleration, protest or dishonor and any other notice with respect to any of the Obligations and this Guaranty and any requirement that Holder protect, secure, perfect or insure any lien or any property subject thereto. Guarantor hereby waives any and all suretyship defenses or defenses in the nature thereof without in any manner limiting any other provisions of this Guaranty.

This Guaranty shall be governed by and construed in accordance with the laws of the State of Washington, without regard to conflicts of law principles. Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Guaranty will be brought exclusively in the Superior Court of Franklin County, Washington or the United States District Court for the Eastern District of Washington. Each of the Parties consents to the exclusive jurisdiction of such court (and of the appropriate appellate courts) in any such action or proceeding and waives any objection

to such venue. THE PARTIES FURTHER WAIVE THE RIGHT TO A JURY TRIAL IN ANY ACTION OR PROCEEDING ARISING OUT OF THIS AGREEMENT.

Capitalized terms used in this Guaranty and not defined herein are used as defined in the Note.

Notwithstanding anything to the contrary herein, in the Note, in the Redemption Agreement, or in any other related documents contemplated thereby and executed in accordance therewith, upon maturity of the Note, including by acceleration as a result of an Event of Default (as that term is defined in the Note) or on the Maturity Date (as that term is defined in the Note), Holder may not exercise any of its rights or remedies arising under the Note or otherwise seek to enforce the terms of this Guaranty without providing ten (10) business days prior written notice to Maker and Guarantor who, upon receipt of any such notice, will have the right to cure during such notice period.

Dated effective as of _____, 2022.


3E PROPERTIES,
a Washington general partnership


By:_____
        Jody Easterday, Managing Partner

**EXHIBIT D**
**STOCK POWER**

FOR VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, CODY EASTERDAY and DEBBY EASTERDAY, individuals and husband and wife (the "Easterdays"), hereby assign, transfer, and convey to EASTERDAY FARMS PRODUCE, CO., a Washington corporation (the "Company"), all of the Easterdays' right, title, and interest in and to five hundred (500) shares of the common stock (the "Easterday Shares") in the Company, represented by Stock Certificate No. 2, and hereby irrevocably appoints Jody Easterday as attorney-in-fact to transfer the Easterday Shares on the books of the Company with full power of substitution in the premises.

This Stock Power is entered into in connection with consummating the transactions contemplated in that certain Stock Redemption Agreement of even date herewith (the "Redemption Agreement"), by and between the Company and the Easterdays. This Stock Power is subject to all of the terms and conditions of the Redemption Agreement.

Dated effective as of the close of business on _____, 2022.

CODY EASTERDAY,
an individual


_____
Cody Easterday


DEBBY EASTERDAY,
an individual


_____
Debby Easterday

**EXHIBIT E**
**ASSIGNMENT OF PROMISSORY NOTE,**
**STOCK PLEDGE AGREEMENT AND GUARANTY**

**1.    Assignment.**  Effective as of the date of this Assignment of Promissory Note, Stock Pledge Agreement and Guaranty (this "Assignment"), CODY EASTERDAY and DEBBY EASTERDAY, individuals and husband and wife (collectively, "Assignor"), hereby assign, convey and transfer to GlassRatner Advisory & Capital Group, LLC, dba B. Riley Advisory Services, acting in its capacity as the Administrative Agent (the "Administrative Agent") for the benefit of Holders of Allowed Tyson Claims and Allowed Segale Claims under that certain Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms, in the matter of In re Easterday Ranches, Inc., et al., United States Bankruptcy Court, Eastern District of Washington, Case No. 21-00141-11 ("Assignee"), all of Assignor's right, title and interest in and to (a) that certain Promissory Note of even date herewith made by EASTERDAY FARMS PRODUCE, CO., a Washington corporation (the "Company"), in the original principal amount of $454,842.00 (the "Note"), (b) that certain Stock Pledge Agreement of even date by and between the Company and Assignor, pursuant to which the Company is pledging to the holder of the Note five hundred (500) shares of common stock in the Company (the "Stock Pledge Agreement"), and (c) that certain Guaranty of even date herewith (the "Partnership Guaranty") made by 3E Properties, a Washington general partnership (the "Partnership"), pursuant to which the Partnership has guaranteed the obligations of the Company arising under the Note.  In connection with implementing this Assignment, Assignor hereby consents to the Company's delivery of the executed Note, executed Stock Pledge Agreement and executed Partnership Guaranty directly to the Administrative Agent (acting for the benefit of the Assignee).

**2.    Payments Under Note; Notice Address.** Assignor and Assignee hereby instruct and direct the Company to make all payments under the Note (when due and owing under the Note) directly to and in the name of the Administrative Agent (acting for the benefit of the Assignee) at the following address for the Administrative Agent: _____. For purposes of the Notice provisions in the Note and Section 10.4 of the Stock Pledge Agreement, the Administrative Agent (acting for the benefit of the Assignee) is hereby added as a "notice" party thereunder, and Assignor, Assignee and the Company each hereby agree that any and all notice and other communications made or given under the Note and/or the Stock Pledge Agreement will be sent by each to the other two parties, using in the case of the Administrative Agent the above address for the Administrative Agent.

**3.    Company Consent to Assignment and Acknowledgement Regarding Note Payments.** The Company hereby consents to this Assignment and the assignment, conveyance and transfer to Assignee of all of Assignor's right, title and interest in and to the Note, Stock Pledge Agreement, and the Partnership Guaranty, and acknowledges and agrees to make all payment under the Note to and in the name of the Administrative Agent (acting for the benefit of the Assignee) at the address set forth in Section 2 of this Assignment, or at such other address designated in writing from time to time by the Administrative Agent and delivered to the Company.

**Page 30 of 32 – STOCK REDEMPTION AGREEMENT**

**4.    Stock Redemption Agreement.**   This Assignment is entered into in connection with consummating the transactions contemplated in that certain Stock Redemption Agreement of even date herewith (the "Redemption Agreement") by and between Assignor and the Company.  This Assignment is subject to all of the terms and conditions of the Redemption Agreement.

**5.    Further Assurances**.  Assignor hereby covenants and agrees that it will execute and deliver to Assignee such additional documents, agreements, assignments and instruments as may be reasonably requested by the Administrative Agent to further effectuate and implement the terms and provisions of this Assignment, including, without limitation, the assignments of the Note, the Stock Pledge Agreement and the Partnership Guaranty to Assignee.

**6.    Binding Effect.** This Assignment will be binding on and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors, and assigns.

**7.    Amendments.** This Assignment may be amended only by an instrument in writing executed by all the parties hereto, which writing must refer to this Assignment.

**8    Counterparts.** This Assignment may be executed in counterparts, each of which will be considered an original and all of which together will constitute one and the same Assignment.

**9.    Electronically Transmitted Signatures.**  Electronic transmission of any signed original of this Assignment, and retransmission of any signed electronic transmission, will be the same as delivery of an original of this Assignment.

**10.    Governing Law.** This Assignment will be governed by and construed in accordance with the laws of the State of Washington, without regard to conflict-of-laws principles.

**11.    Venue.** Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Assignment will be brought exclusively in the Superior Court of Franklin County, Washington or the United States District Court for the Eastern District of Washington. Each of the Parties consents to the exclusive jurisdiction of such court (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to such venue. THE PARTIES FURTHER WAIVE THE RIGHT TO A JURY TRIAL IN ANY ACTION OR PROCEEDING ARISING OUT OF THIS AGREEMENT.

*[Balance of this page left blank.*
*See next page for signatures of parties.]*

Dated effective as of <mark>_____</mark>, 2022.

**ASSIGNEE:**

GLASSRATNER ADVISORY & CAPITAL
GROUP, LLC, dba
B. RILEY ADVISORY SERVICES,
as Administrative Agent


By:_____

Name: _____

Title:_____

**COMPANY:**

EASTERDAY FARMS PRODUCE, CO.,
a Washington corporation


By:_____

Name: Jody Easterday

Title: President

**ASSIGNOR:**



CODY EASTERDAY,
an individual


_____
Cody Easterday

DEBBY EASTERDAY,
an individual


_____
Debby Easterday

# EXHIBIT C

## BC 140 LLC SECURED GUARANTY

# SECURED GUARANTY

This Secured Guaranty (this "***Guaranty***"), dated as of _____, 2022, is made by BC 140, LLC ("***Guarantor***") in favor of B. Riley Advisors, as Administrative Agent for the benefit of Holders of Allowed Tyson Claims and Allowed Segale Claims ("***Beneficiary***").

## BACKGROUND

WHEREAS, on July 19, 2022, the United States Bankruptcy Court for the Eastern District of Washington (the "***Bankruptcy Court***") confirmed the *Modified Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* (the "***Bankruptcy Plan***");[1]

WHEREAS, the Bankruptcy Plan effectuated, among other things, a global settlement among (a) Easterday Ranches, Inc. and Easterday Farms and their chapter 11 estates, (b) Holders of Allowed Tyson Claims, (c) Holders of Allowed Segale Claims, (d) the principals of the Beneficiary, (e) the Official Committee of Unsecured Creditors of Easterday Ranches, Inc., (f) the Official Committee of Unsecured Creditors of Easterday Farms, (g) Cody and Debby Easterday, (h) Karen Easterday, individually and in her capacity as personal representative of the Gale Easterday estate, and (h) certain other entities related to Karen, Cody and Debby Easterday and/or their family members;

WHEREAS, consistent with the global settlement embodied in the Bankruptcy Plan (the "***Global Settlement***") and pursuant to the Purchase and Sale Agreement, upon the Effective Date of the Bankruptcy Plan, Cody Easterday and Debby Easterday will sell their interests in the Basin City Property to Guarantor in exchange for the Basin City Property Purchase Price;

WHEREAS, as part of the Global Settlement and Bankruptcy Plan, Easterday Dairy, LLC ("***Borrower***") will execute a promissory note (the "***Note***") in favor of Administrative Agent, evidencing $2,169,300.00 owed to Beneficiary by Borrower under the Bankruptcy Plan;

WHEREAS, pursuant to this Guaranty, the Global Settlement, and the Bankruptcy Plan, Guarantor has agreed to guaranty the Note, secured by the collateral defined in <u>Section 11</u>; and

WHEREAS, Guarantor acknowledges it is receiving direct and indirect benefits in its entry into and performance under this Guaranty and the other related documents contemplated by the Bankruptcy Plan.

---

[1] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Bankruptcy Plan.

# AGREEMENT

Guarantor agrees as follows:

1.    <u>Definitions</u>.  Capitalized words not otherwise defined herein shall have the meaning set forth in the Bankruptcy Plan.  As used in this Guaranty, the following terms have the following meanings:

"***Person***" means any natural person, corporation, limited liability company, unincorporated organization, partnership, association, joint-stock company, joint venture, trust, or other entity.

"***Obligations***" means Borrower's payment obligations to Beneficiary under the Note, plus in the Event of Default, all costs, expenses and fees (including the reasonable fees and expenses of Beneficiary's counsel) in any way relating to the enforcement or protection of Beneficiary's rights hereunder.  The Obligations specifically do not include any other obligations of Borrower or Guarantor.

2.    <u>Guaranty</u>.  Guarantor hereby unconditionally, absolutely and irrevocably guarantees the full and timely payment and performance of the Obligations.

3.    <u>Liability of Guarantor</u>.  The liability of Guarantor under this Guaranty shall be irrevocable, absolute, independent, and unconditional, and shall not be affected by any circumstance which might constitute a discharge of a surety or guarantor other than the indefeasible payment in full of all of the Obligations.

4.    <u>Certain Waivers; Acknowledgments.</u> Guarantor further acknowledges and agrees as follows:

    (a)    Guarantor hereby unconditionally and irrevocably waives any right to revoke this Guaranty and acknowledges that this Guaranty is continuing in nature and applies to all presently existing and future Obligations, until the complete, irrevocable and indefeasible payment and satisfaction in full of the Obligations.

    (b)    This Guaranty is a guaranty of payment and performance and not of collection. Subject to the terms of this Guaranty, Beneficiary shall not be obligated to enforce or exhaust its remedies against Borrower or under the Note before proceeding to enforce this Guaranty.

    (c)    This Guaranty is a direct guaranty. Beneficiary may resort to Guarantor for payment and performance of the Obligations whether or not Beneficiary shall have resorted to the Mortgages or any collateral for the Obligations or shall have proceeded against Borrower or any other guarantors with respect to the Obligations. Beneficiary may, at Beneficiary's option, proceed against Guarantor and Borrower, jointly and severally, or against Guarantor only without having obtained a judgment against Borrower. Without limitation of the foregoing,

Guarantor waives any suretyship defense or defenses in the nature thereof without in any manner limiting any other provision of this Guaranty.

(d) Subject to as otherwise provided in the Guaranty, Guarantor hereby unconditionally and irrevocably waives promptness, diligence, notice of acceptance, presentment, demand for performance, notice of non-performance, default, acceleration, protest or dishonor and any other notice with respect to any of the Obligations and this Guaranty and any requirement that Beneficiary protect, secure, perfect or insure any lien or any property subject thereto.

(e) Notwithstanding anything contained herein to the contrary, the Obligations of Guarantor shall be limited to the maximum amount so as to not constitute a fraudulent transfer or conveyance for purposes of the United States Bankruptcy Code or any applicable state law or otherwise to the extent applicable to this Guaranty and the Obligations of Guarantor hereunder.

(f) This Guaranty shall continue to be effective or shall be reinstated and revived, as the case may be, if, for any reason, any payment of the Obligations by or on behalf of Borrower or Guarantor (or receipt of any proceeds of collateral) shall be rescinded, invalidated, declared to be fraudulent or preferential, set aside, voided, or otherwise required to be repaid to Borrower or Guarantor, the estate of Borrower, a trustee, a receiver, or any other Person (including under the United States Bankruptcy Code or other state or federal law), or must otherwise be restored by Beneficiary, whether as a result of insolvency proceedings or otherwise. To the extent any payment is so rescinded, set aside, voided, or otherwise repaid or restored, the Obligations shall be revived in full force and effect without reduction or discharge for such payment.

5.   No Waiver.  No delay or omission on the part of Beneficiary in the exercise of any right or remedy, whether before or after any event of default, shall operate as a waiver of such right or remedy or impair Beneficiary's right to fully and strictly enforce such right or remedy and every other provision of this Guaranty.

6.   Payments.  Upon the failure of Borrower to pay any of the Obligations upon written demand after the same shall become due, whether at stated maturity, by required prepayment, declaration, acceleration, demand, or otherwise (including amounts that would become due but for operation of the automatic stay under Section 362(a) of the United States Bankruptcy Code), or any change that would reasonably be expected to have a material effect on Guarantor's ability to satisfy its obligations under this Guaranty, restructuring or termination or existence of Guarantor or any insolvency, bankruptcy, reorganization or similar proceeding affecting Guarantor or any of its assets or any resulting restructuring, release or discharge of any Obligations, Guarantor shall, within ten (10) business days after receipt of notice from Beneficiary, forthwith pay, or cause to be paid, in cash, to Beneficiary an amount equal to the amount of the Obligations then due.

7.    Benefits of Guaranty.  This Guaranty is entered into for the sole protection and benefit of Beneficiary and its successors and assigns (including Holders of Allowed Tyson Claims and Holders of Allowed Segale Claims), and no other Person shall be a direct or indirect beneficiary of, or shall have any direct or indirect cause of action or claim in connection with, this Guaranty.

8.    Binding Effect; Assignment.  This Guaranty shall be binding upon Guarantor and its successors and assigns, and inure to the benefit of, and be enforceable by, Beneficiary and its successors, endorsees, transferees, and assigns.  Beneficiary may, upon the reasonable consent of Guarantor, assign its interests, rights, or obligations hereunder to a reputable financial institution, trust company, receiver, or turnaround manager, provided however, that such assignee is not Paladin Management Group, LLC, Tyson Fresh Meats, Inc. or Segale Properties, LLC (or any of their affiliates, successors, or assigns).

9.    General.  This Guaranty shall be governed by and construed in accordance with the laws of the State of Washington, without regard to conflicts of law principles.  Jurisdiction and venue for any action related to this Guaranty will be exclusively in the Bankruptcy Court and Guarantor hereby consents to the exclusive jurisdiction of such court (and to appellate courts therefrom). To the extent the bankruptcy case of In re Easterday Ranches, Inc., et al., Lead Case No. 21-00141-11 is closed, the party seeking to initiate any suit, action, or proceeding related to this Note must file a motion to reopen such bankruptcy case to hear such matter. This Guaranty may be amended or modified only by a written agreement signed by Guarantor and Beneficiary that by its terms expressly supersedes, modifies, amends, or alters this Guaranty.  No waiver of any right of Beneficiary under any provision of this Guaranty, or consent to departure by Guarantor therefrom, shall be effective unless in writing and signed by Beneficiary.  Any such amendment, waiver, or consent shall be effective only in the specific instance and for the specific purpose for which given.  The headings of the various provisions of this Guaranty are for convenience of reference only, do not constitute a part of this Guaranty, and shall not affect the meaning or construction of any provision of this Guaranty.  Any provision of this Guaranty that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Guaranty or affecting the validity or enforceability of such provision in any other jurisdiction. To the extent permitted by applicable law, the parties to this Guaranty waive any provision of law that renders any provision of this Guaranty prohibited or unenforceable in any respect.  This Guaranty constitutes the entire agreement of Guarantor and Beneficiary with respect to the matters set forth herein and supersedes any prior agreements, commitments, drafts, communications, discussions, and understandings, oral or written, with respect thereto.  There are no conditions to the full effectiveness of this Guaranty.  This Guaranty shall be effective upon delivery to Beneficiary, without further act, condition, or acceptance by Beneficiary. Any indebtedness of Borrower now or hereafter held by Guarantor is

hereby subordinated to the Obligations of Borrower to Beneficiary until the Obligations have been indefeasibly paid in full. Guarantor waives all rights Guarantor may have at law or in equity (including, without limitation, any law subrogating any Guarantor to the rights of Beneficiary) to seek contribution, indemnification or any other form of reimbursement from Borrower and any other person now or hereafter primarily or secondarily liable for any of the Obligations for any payment or performance made by Guarantor under or in connection with this Guaranty, unless and until all Obligations of Borrower have been indefeasibly paid in full.

10.  Collateral.  This Guaranty shall be secured by mortgages on certain real estate owned by Guarantor ("**Mortgages**").  [In the event that AXA Equitable Life Insurance Company does not consent to the Mortgage on the property on which it claims a lien, 100% of the membership interest in BC 140, LLC shall be pledged as alternative collateral.]  The Obligations of this Guaranty and the Mortgages and any collateral membership interest pledge are not and shall not be cross-defaulted or cross-collateralized with any other debt or obligations including that certain promissory note, by Karen Easterday in favor of Beneficiary, evidencing $5,000,000.00 owed to Beneficiary by Karen Easterday in connection with the Bankruptcy Plan.

11.  Attorneys' Fees.  If an action is instituted in connection with any controversy arising out of this Guaranty, the prevailing party will be entitled to recover, in addition to costs, reasonable attorneys' fees, including fees on any appeal.

12.  Notices.  Any notice, consent, or claim required or permitted to be given under this Guaranty must be in writing and will be deemed to have been given: (a) when personally delivered; (b) three (3) days after deposit in the United States Mail, first class postage prepaid by both first class and certified mail, return receipt requested; or (d) two (2) days after delivery to a recognized national overnight carrier, with overnight shipping charges paid, in each case addressed to such party at the notice address set forth herein.

13.  Representations and Warranties.  Guarantor represents, warrants and covenants to Beneficiary as follows:

(a)  Guarantor has the requisite power and authority to enter into, execute, deliver and carry out this Guaranty and to perform its obligations hereunder and all such actions have been duly authorized by all necessary proceedings.

(b)  This Guaranty has been duly executed and delivered by Guarantor and constitutes a legal, valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms.

(c)  Guarantor is fully familiar with all the covenants, terms and conditions of the Note and takes full responsibility for its knowledge and

understanding of Borrower's financial condition. Beneficiary need not provide Guarantor with any present or future information concerning the financial condition of Borrower or any other guarantor, and changes in Borrower's or Guarantor's financial condition shall not affect Guarantor's obligations under this Guaranty.

Guarantor has executed this Guaranty as of the date first above written.

GUARANTOR:

BC 140, LLC

By _____

Name _____

Title _____

Notice Address:

_____

_____

_____

ACCEPTED:

B. RILEY ADVISORS, as Administrative Agent for the benefit of Holders of Allowed Tyson Claims and Allowed Segale Claims

By _____

Name _____

Title _____

Notice Address:

_____

_____

_____

ACKNOWLEDGED AND AGREED:

EASTERDAY DAIRY, LLC, as Borrower

By _____

Name _____

Title _____

<u>Notice Address</u>:

_____
_____
_____

# **EXHIBIT D**

## **EASTERDAY DAIRY LLC NOTE**

# EASTERDAY DAIRY PROMISSORY NOTE

$2,169,300                 Kennewick, Washington                 _____, 2022

    1.      PROMISE TO PAY.  The undersigned ("Borrower") promises to pay to the order of GlassRatner Advisory & Capital Group, LLC, dba B. Riley Advisory Services, Administrative Agent for the benefit of Holders of Allowed Tyson Claims and Allowed Segale Claims  (together, "Holder")  the amount of Two Million One Hundred Sixty-Nine Thousand Three Hundred and No/100 Dollars ($2,169,300.00).

    2.    2.    INTEREST.

        A.    Simple interest on the outstanding principal balance of this Note will accrue at the rate of 3.0% per annum (the "Interest Rate") from and after the Effective Date until this Note is paid in full.

        B.    If any amount payable hereunder is not paid when due (without regard to any applicable grace period), whether at stated maturity, by acceleration, or otherwise, such overdue amount shall bear interest at the Interest Rate plus three percent (3.0%) (the "Default Rate").

    3.      INTERIM PAYMENTS.  No payments of principal or accrued interest shall be due under this Note until the earliest to occur of the maturity or the date of acceleration of this Note in accordance with the terms hereof.

    4.      MATURITY.  The entire principal balance, plus all accrued and unpaid interest and all other amounts owing hereunder shall be due and payable upon the earlier to occur of (A) the date of acceleration of this Note in accordance with the terms hereof, and (B) two (2) years after the Effective Date (as defined in the Bankruptcy Plan) of the confirmation of the Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms, as may be amended and confirmed by the Bankruptcy Court in the United States Bankruptcy Court for the Eastern District of Washington in In re Easterday Ranches, Inc. Case No. 21 00141 11 and In re Easterday Farms, Case No. 21 00176 11 ("Bankruptcy Plan"). All payments under this Note shall be paid to Holder in immediately available United States Funds, at [●] or to such other person or at such other place as Holder may designate in writing. If any payment shall become due on a Saturday, Sunday, or other day on which commercial banks in the State of Washington are authorized or required by law to close, then amounts due on such date shall be due on the immediately following calendar day.  Payments may be applied first to accrued and unpaid interest and then to outstanding principal.

    5.      PREPAYMENT.  Prepayment may be made in whole or in part at any time without penalty.  All payments under this Note shall be applied first to accrued and unpaid interest and then to outstanding principal.

6. DEFAULT. The occurrence of either of the following shall constitute an event of default under this Note: (A) if Borrower fails to make any payment within five (5) business days after written notice from Holder that such sum is due and unpaid, or (B) the occurrence of any default or event of default under the Mortgage (as defined below). If Holder engages an attorney for collection, Borrower shall pay Holder's reasonable attorney fees and collection costs incurred after a default, even though no legal proceeding is filed. If a legal proceeding is filed to interpret or enforce this Note, the prevailing party may recover its reasonable and documented attorney fees and collection costs in such proceeding or any appeal thereof, in addition to the costs and disbursements allowed by law.

7. COLLATERAL. This note is unsecured as against Borrower. However, it is secured by a guaranty even date herewith from BC 140, LLC, a Washington limited liability company, which guaranty is secured by one or more mortgages on real property of the guarantor in Franklin County, Washington (collectively, the "Mortgage").

8. EXPENSES. In the event of a default, Borrower shall reimburse Holder on demand for all reasonable out-of-pocket costs, expenses, and fees, including the reasonable fees and expenses of counsel, incurred by Holder in connection with the enforcement of Holder's rights hereunder.

9. WAIVERS. No delay or omission on the part of Holder in the exercise of any right or remedy, whether before or after any event of default, shall operate as a waiver of such right or remedy or impair Holder's right to fully and strictly enforce such right or remedy and every other provision of this Note. Except as expressly provided for in Section 6(a) of this Note, Borrower waives presentment, protest, demand, diligence, notice of dishonor and of nonpayment, and any other notice.

10. REMEDIES. In the event of a default under this Note or the Mortgage, Holder may declare the entire principal balance of this Note and all accrued interest immediately due and payable. Without limitation of the foregoing, in the event of a default, Holder may further pursue any other right or remedy provided in this Note, the Mortgage, or as otherwise allowed by law. Whether or not Holder exercises such option to accelerate or any other remedies, the entire principal balance and all accrued interest under this Note shall, at the election of Holder, bear interest from the date of the default at the Default Rate. Such default interest shall be payable on demand. Holder may pursue any such rights or remedies singly, together or successively. Exercise of any such right or remedy shall not be deemed an election of remedies. Failure to exercise any right or remedy shall not be deemed a waiver of any existing or subsequent default, or a waiver of any such right or remedy.

11. SUCCESSORS AND ASSIGNS. This Note shall be binding upon Borrower and upon her successors and assigns, and shall inure to the benefit of Holder and its successors and assigns. This Note may, upon reasonable consent of Borrower, be assigned or transferred by Holder to any individual, corporation,

company, limited liability company, trust, joint venture, association, partnership, unincorporated organization, governmental authority, or other entity, provided however, that such assignee is not Paladin Management Group, LLC, Tyson Fresh Meats, Inc. or Segale Properties, LLC (or any of their affiliates, successors, or assigns). Borrower shall not assign or attempt to assign this Note or any of the respective rights, duties, or obligations under this Note without Holder's prior written consent, in its sole discretion.

12. ADDRESS CHANGES. Borrower shall notify Holder in writing of any change in Borrower's address.

13. GOVERNING LAW. This Note shall be governed by the laws of the State of Washington.

14. VENUE. Jurisdiction and venue for any suit, action, or proceeding related to this Note shall exclusively be in the United States Bankruptcy Court for the Eastern District of Washington and Borrower hereby consents and agrees to the exclusive jurisdiction of such court (and of the appropriate appellate courts) in any such suit, action or proceeding and waives any objection to such venue. To the extent the bankruptcy case of In re Easterday Ranches, Inc., et al., Lead Case No. 21-00141-11 is closed, the party seeking to initiate any suit, action, or proceeding related to this Note must file a motion to reopen such bankruptcy case to hear such matter.

15. MISCELLANEOUS. Borrower warrants and represents that this Note represents part of a settlement and compromise of a business dispute. Time is of the essence for purposes of this Note and the Mortgage.

16. ATTORNEYS' FEES. If an action is instituted in connection with any controversy arising out of this Note, the prevailing party will be entitled to recover, in addition to costs, reasonable attorneys' fees, including fees on any appeal.

17. ORAL AGREEMENTS. ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER THE LAWS OF THE STATE OF WASHINGTON.

BORROWER:

Easterday Dairy, LLC, a Washington limited liability company

By: _____
Its: _____

# EXHIBIT E

## KAREN EASTERDAY SECURED NOTE

# SECURED PROMISSORY NOTE

$5,000,000.00         Kennewick, Washington         _____, 2022

    1.      PROMISE TO PAY.  The undersigned ("Borrower") promises to pay to the order of GlassRatner Advisory & Capital Group, LLC, dba B. Riley Advisory Services, Administrative Agent for the benefit of Holders of Allowed Tyson Claims and Allowed Segale Claims (together, "Holder") the amount of Five Million and No/100 Dollars ($5,000,000.00).

    2.      INTEREST.

        A.      Simple interest on the outstanding principal balance of this Note will accrue at the rate of 3.0% per annum (the "Interest Rate") from and after the Effective Date until this Note is paid in full.

        B.      If any amount payable hereunder is not paid when due (without regard to any applicable grace period), whether at stated maturity, by acceleration, or otherwise, such overdue amount shall bear interest at the Interest Rate plus three percent (3.0%) (the "Default Rate").

    3.      INTERIM PAYMENTS.  No payments of principal or accrued interest shall be due under this Note until the earliest to occur of the maturity or the date of acceleration of this Note in accordance with the terms hereof.

    4.      MATURITY.  The entire principal balance, plus all accrued and unpaid interest and all other amounts owing hereunder shall be due and payable upon the earlier to occur of (A) the date of acceleration of this Note in accordance with the terms hereof, and (B) two (2) years after the Effective Date (as defined in the Bankruptcy Plan) of the confirmation of the Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms, as may be amended and confirmed by the Bankruptcy Court in the United States Bankruptcy Court for the Eastern District of Washington in In re Easterday Ranches, Inc. Case No. 21 00141 11 and In re Easterday Farms, Case No. 21 00176 11 ("Bankruptcy Plan").  All payments under this Note shall be paid to Holder in immediately available United States Funds, at _____ or to such other person or at such other place as Holder may designate in writing. If any payment shall become due on a Saturday, Sunday, or other day on which commercial banks in the State of Washington are authorized or required by law to close, then amounts due on such date shall be due on the immediately following calendar day.  Payments may be applied first to accrued and unpaid interest and then to outstanding principal.

4858-3411-5361v.2 0117168-000002
157120097.1

5.    PREPAYMENT.  Prepayment may be made in whole or in part at any time without penalty.  All payments under this Note shall be applied first to accrued and unpaid interest and then to outstanding principal.

6.    DEFAULT.  The occurrence of either of the following shall constitute an event of default under this Note: (A) if Borrower fails to make any payment within five (5) business days after written notice from Holder that such sum is due and unpaid, or (B) the occurrence of any default or event of default under the Mortgage (as defined below).  If Holder engages an attorney for collection, Borrower shall pay Holder's reasonable attorney fees and collection costs incurred after a default, even though no legal proceeding is filed.  If a legal proceeding is filed to interpret or enforce this Note, the prevailing party may recover its reasonable and documented attorney fees and collection costs in such proceeding or any appeal thereof, in addition to the costs and disbursements allowed by law.

7.    COLLATERAL. This Note is secured by a mortgage of even date herewith on real property of Borrower in Franklin County, Washington (the "Mortgage").

8.    EXPENSES. In the event of a default, Borrower shall reimburse Holder on demand for all reasonable out-of-pocket costs, expenses, and fees, including the reasonable fees and expenses of counsel, incurred by Holder in connection with the enforcement of Holder's rights hereunder.

9.    WAIVERS.  No delay or omission on the part of Holder in the exercise of any right or remedy, whether before or after any event of default, shall operate as a waiver of such right or remedy or impair Holder's right to fully and strictly enforce such right or remedy and every other provision of this Note. Except as expressly provided for in Section 6(a) of this Note, Borrower waives presentment, protest, demand, diligence, notice of dishonor and of nonpayment, and any other notice.

10.    REMEDIES. In the event of a default, Holder may declare the entire principal balance of this Note and all accrued interest immediately due and payable. Without limitation of the foregoing, in the event of a default, Holder may further pursue any other right or remedy provided in this Note, the mortgage securing this Note, or as otherwise allowed by law.  Whether or not Holder exercises such option to accelerate or any other remedies, the entire principal balance and all accrued interest under this Note shall, at the election of Holder, bear interest from the date of the default at the Default Rate.  Such default interest shall be payable on demand. Holder may pursue any such rights or remedies singly, together or successively.  Exercise of any such right or remedy shall not be deemed an election of remedies.  Failure to exercise any right or remedy shall not be deemed a waiver of any existing or subsequent default, or a waiver of any such right or remedy.

11.    SUCCESSORS AND ASSIGNS. This Note shall be binding upon Borrower and upon her successors and assigns, and shall inure to the benefit of

Holder and its successors and assigns. This Note may, upon reasonable consent of Borrower, be assigned or transferred by Holder to any individual, corporation, company, limited liability company, trust, joint venture, association, partnership, unincorporated organization, governmental authority, or other entity, provided however, that such assignee is not Paladin Management Group, LLC, Tyson Fresh Meats, Inc. or Segale Properties, LLC (or any of their affiliates, successors, or assigns). As provided further in the Mortgage, Borrower shall not assign or attempt to assign this Note or the Mortgage or any of the respective rights, duties, or obligations under this Note or the Mortgage without Holder's prior written consent, in its sole discretion.

12. **ADDRESS CHANGES.** Borrower shall notify Holder in writing of any change in Borrower's address.

13. **GOVERNING LAW.** This Note shall be governed by the laws of the State of Washington.

14. **VENUE.** Jurisdiction and venue for any suit, action, or proceeding related to this Note shall exclusively be in the United States Bankruptcy Court for the Eastern District of Washington and Borrower hereby consents and agrees to the exclusive jurisdiction of such court (and of the appropriate appellate courts) in any such suit, action or proceeding and waives any objection to such venue. To the extent the bankruptcy case of In re Easterday Ranches, Inc., et al., Lead Case No. 21-00141-11 is closed, the party seeking to initiate any suit, action, or proceeding related to this Note must file a motion to reopen such bankruptcy case to hear such matter.

15. **MISCELLANEOUS.** Borrower warrants and represents that this Note represents part of a settlement and compromise of a business dispute. Time is of the essence for purposes of this Note and the Mortgage.

16. **ATTORNEYS' FEES.** If an action is instituted in connection with any controversy arising out of this Note, the prevailing party will be entitled to recover, in addition to costs, reasonable attorneys' fees, including fees on any appeal.

17. **ORAL AGREEMENTS.** ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER THE LAWS OF THE STATE OF WASHINGTON.


BORROWER:


_____

Karen Easterday

# EXHIBIT F

## ADMINISTRATIVE AGENT AGREEMENT

## ADMINISTRATIVE AGENCY AGREEMENT

This **ADMINISTRATIVE AGENCY AGREEMENT** (this "**Agreement**") dated as of July ___, 2022, is entered into by and among Tyson Fresh Meats, Inc. ("**Tyson**") and Segale Properties LLC ("**Segale**") (collectively the "**Secured Creditors")**, and GlassRatner Advisory & Capital Group, LLC, dba B. Riley Advisory Services, in its capacity as Administrative Agent for the Secured Creditors (the "**Administrative Agent**" and, with the Secured Creditors, the "**Parties**").

## RECITALS

A.     On February 1, 2021, Easterday Ranches, Inc. ("**Ranches**") filed a voluntary chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Washington (the "**Bankruptcy Court**"), Case No. 21-00141, and on February 8, 2021, Easterday Farms ("**Farms**") filed a voluntary chapter 11 bankruptcy petition in the Bankruptcy Court, Case No. 21-00176.  The two cases (the "**Bankruptcy Cases**") are jointly administered in the Bankruptcy Court under Case No. 21-00141. Farms and Ranches are collectively referred to herein as the "**Debtors**."

B.     On or about March 3, 2022, the Debtors, the Secured Creditors, certain of the Easterday Parties (as defined below), and others entered into that certain Global Settlement Term Sheet dated such date (the "**Global Settlement Term Sheet**"), containing the economic and certain other provisions respecting a global settlement of numerous disputes among the parties thereto and other persons, and forming the basis for a consensual plan of reorganization to resolve the Bankruptcy Cases.

C.     On May 11, 2022, the Debtors filed their Third Amended Joint Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms (as it may be amended or supplemented in accordance with its terms, the "**Plan**"), embodying among other things the provisions of the Global Settlement Term Sheet.

D.     On July ___, 2022, the Bankruptcy Court entered its Order Confirming Third Amended Joint Plan of Liquidation.

E.     Concurrently with the date of this Agreement, the Effective Date (as defined therein) of the Plan occurred.

F.     Pursuant to the Plan, various of the Easterday Parties have executed and delivered to the Administrative Agent the Note Documents and Security Documents (each as defined below) for the benefit of the Secured Creditors.

G.     The Security Documents, among other things, grant to the Administrative Agent on behalf of the Secured Creditors a security interest in, and a lien on, certain real and personal property of the Easterday Parties and proceeds thereof (collectively, the "**Collateral**"), securing the Easterday Parties' obligations under the Note Documents (the "**Obligations**").

H.     The Parties enter into this Agreement to, among other things, set forth their understandings and agreements regarding the Secured Creditors' respective rights and priorities with respect to the Note Documents, the Security Documents, and the Collateral and any proceeds

thereof, and to clarify the authority and obligations of the Administrative Agent with respect to the foregoing.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and the mutual covenants and promises set forth herein, each of the Parties agrees as follows:

## SECTION I.      **DEFINITIONS; INTERPRETATION**.

**1.01**    **Definitions**.  Unless otherwise indicated in this Agreement or any of the Security Documents or Note Documents, each term set forth in Exhibit A, when used in this Agreement or any of the Security Documents or Note Documents, shall have the respective meaning given to that term in Exhibit A.

**1.02**    **Headings**.  Headings in this Agreement are for convenience of reference only and are not part of the substance hereof or thereof.

**1.03**    **Construction**.  This Agreement is the result of negotiations among, and has been reviewed by, each of the Secured Creditors, the Administrative Agent and their respective counsel.  Accordingly, this Agreement shall be deemed to be the product of all parties hereto and no ambiguity shall be construed in favor of or against any Secured Creditor or the Administrative Agent.

## SECTION II.      **COLLATERAL AND REMEDIES**.

**2.01**    **Priority of Liens**.  The Administrative Agent and each of the Secured Creditors hereby agree that the security interests and liens granted to the Administrative Agent under the Security Documents and the Note Documents, and any claims of the Administrative Agent or Secured Creditors to proceeds in respect of title insurance or other insurance policies shall be treated, as among the Secured Creditors, as having equal priority and shall at all times be shared by the Secured Creditors as provided herein regardless of any claim or defense (including any claims under the fraudulent transfer, preference or similar avoidance provisions of applicable bankruptcy, insolvency or other applicable Governmental Rules affecting the rights of creditors generally) to which the Administrative Agent or any Secured Creditor may be entitled or subject.

**2.02**    **Custody of Collateral**.  If any Secured Creditor acquires custody, control or possession of any Collateral other than any proceeds thereof distributed to such Secured Creditor pursuant to the terms of this Agreement, then such Secured Creditor shall (a) immediately notify the other Secured Creditor and the Administrative Agent and (b) promptly cause such Collateral to be delivered to, or put in the custody, possession or control of, the Administrative Agent for disposition or distribution in accordance with the provisions of this Agreement.  Until such time as the provisions of part (b) of the immediately preceding sentence have been complied with, such Secured Creditor shall be deemed to hold such Collateral in trust for the parties entitled thereto under this Agreement.

**2.03**    **Triggering Notice.**  Notwithstanding anything to the contrary contained in this Agreement or any document executed in connection with any of the Obligations, the Administrative Agent, unless it shall have actual knowledge thereof, shall not be deemed to have

any knowledge of any Triggering Event (as defined below) unless and until it shall have received written notice from any Easterday Party or any Secured Creditor describing such Triggering Event in reasonable detail (including, to the extent known, the date of occurrence of the same) (each such notice to be referred to herein as a **"Triggering Notice"**).  If the Administrative Agent receives a Triggering Notice, the Administrative Agent shall deliver copies thereof to all Secured Creditors (other than the Secured Creditors that executed the applicable Triggering Notice).  As used herein, the term **"Triggering Event"** means (a) the occurrence and continuation of a Bankruptcy Proceeding (as defined below) with respect to any of the Easterday Parties, (b) any principal or interest payable under the Note Documents is not paid when due and any applicable grace period has expired, (c) any unpaid principal amount of any of the Obligations has been declared to be then due and payable prior to the due date as a result of an Event of Default or has not been paid at the final maturity thereof, or (d) there is any other material Event of Default.  As used herein, the term **"Bankruptcy Proceeding"** means, with respect to any Person, a general assignment by such Person for the benefit of its creditors, or the institution by or against such Person of any proceeding seeking relief as debtor, or seeking to adjudicate such Person as bankrupt or insolvent, or seeking reorganization, arrangement, adjustment or composition of such Person or its debts, under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, or seeking appointment of a receiver, trustee, custodian or other similar official for such Person or for any substantial part of its property.

      2.04   **Enforcement of Remedies**.  Upon the occurrence and during the continuance of any Triggering Event, the Administrative Agent shall, subject to the other provisions of this Agreement, take such action with respect to such Triggering Event as shall be directed by all of the Secured Creditors acting together (a **"Direction Notice"**).  Upon receipt by the Administrative Agent of a Direction Notice, the Administrative Agent shall seek to enforce the Security Documents and/or the Note Documents that are the subject of the Direction Notice and to realize upon the Collateral in accordance with such Direction Notice; provided, however, that the Administrative Agent shall not be obligated to follow any Direction Notice if the Administrative Agent reasonably determines on the basis of an opinion of counsel that such Direction Notice is in conflict with any provisions of any applicable Governmental Rule, this Agreement, or any of the relevant Security Documents or Note Documents.  The Administrative Agent shall not, under any circumstances, be liable to any Secured Creditor, the Easterday Parties, or any other Person for following a Direction Notice, except as set forth in paragraph 4.01, below.

      2.05   **Remedies of the Secured Creditors**.  Unless otherwise consented to in writing by all of the Secured Creditors, no Secured Creditor, individually or together with any other Secured Creditor, shall have the right to, nor shall it, exercise or enforce any of the rights, powers or remedies which the Administrative Agent is authorized to exercise or enforce under this Agreement, or any of the Security Documents or Note Documents.

**SECTION III.**        **DISTRIBUTION OF PROCEEDS.**

      3.01   **Cash Collateral Account.**

        (a)   The Administrative Agent shall establish a cash collateral account at _____ Bank in the name of the Administrative Agent into which the Proceeds (as defined below) shall be deposited and from which only the Administrative Agent may effect

withdrawals (the **"Cash Collateral Account"**).  Such amounts shall be held by the Administrative Agent in the Cash Collateral Account and shall be distributed from time to time by the Administrative Agent in accordance with Section 3.02.

(b)     The following proceeds, payments and amounts (collectively, the **"Proceeds"**) shall be deposited and held by the Administrative Agent in the Cash Collateral Account and shall be distributed from time to time by the Administrative Agent in accordance with Section 3.02:

(i)     any payments made on account of the Note Documents;

(ii)     any proceeds of any collection, recovery, receipt, appropriation, realization or sale of any or all of the Collateral through the enforcement of the Security Documents received by the Administrative Agent or any Secured Creditor (including without limitation, payments or proceeds in respect of title insurance policies insuring the Administrative Agent or any of the Secured Creditors); and

(iii)     any amounts distributable under the Plan to the Secured Creditors on account of releases of reserves or for any other reason, except for the initial distributions to all Ranches creditors in accordance with the Plan.

Each Secured Creditor agrees to deliver any Proceeds it may receive to the Administrative Agent within three (3) Business Days after receipt of such Proceeds.  Until such time as the provisions of the immediately preceding sentence have been complied with, such Secured Creditor shall be deemed to hold such Proceeds in trust for the parties entitled thereto under this Agreement.

**3.02**     **Distribution of Proceeds**.  The Administrative Agent shall distribute the Proceeds which are held in the Cash Collateral Account in accordance with the following priorities:

<u>first,</u> to the Administrative Agent in payment of any reasonable fees and expenses that are then due to the Administrative Agent, as disclosed to and approved by the Secured Creditors;

<u>second,</u> to a reserve for reasonably foreseeable fees and expenses anticipated to be incurred by the Administrative Agent within the next ninety (90) days, in amounts estimated by the Administrative Agent and approved by the Secured Creditors;

<u>third,</u> to the appropriate Secured Creditor(s) in payment of any and all amounts owed to such Secured Creditor(s) for reimbursement of any fees and expenses related to the enforcement or preservation of any rights or remedies of the Secured Creditors or the Administrative Agent paid by them to the Administrative Agent, it being understood that the Secured Creditors are not entitled to reimbursement of their own attorneys' fees incurred in connection with this Agreement except to the extent such attorneys' fees are (a) incurred in enforcement proceedings in which the Administrative Agent is not directly involved or (b) approved by all Secured Creditors;

<u>fourth,</u>  to the Secured Creditors in proportion to their Pro Rata Shares.

The Administrative Agent shall make such distributions as promptly as reasonably practicable after the deposit of any Proceeds into the Cash Collateral Account and in any event within ten (10) Business Days of receipt thereof.

## SECTION IV.      THE ADMINISTRATIVE AGENT AND RELATIONS AMONG SECURED CREDITORS.

**4.01    Appointment, Powers and Immunities**. Each Secured Creditor hereby appoints and authorizes the Administrative Agent to act as its agent hereunder, under the Security Documents and the Note Documents, with such powers as are expressly delegated to the Administrative Agent by the terms of this Agreement, the Security Documents, and the Note Documents, together with such other powers as are reasonably incidental thereto. The Administrative Agent shall not have any duties or responsibilities except those expressly set forth in this Agreement or any of the Security Documents or Note Documents, and shall have no authority except to the extent set forth in this Agreement or any of the Security Documents or Note Documents. No implied covenants, functions, responsibilities, duties, obligations or liabilities shall be read into this Agreement or otherwise exist respecting the Administrative Agent. Notwithstanding anything to the contrary contained herein, the Administrative Agent shall not be required to take any action which is contrary to this Agreement or any applicable Governmental Rule. The Administrative Agent shall not be responsible to any Secured Creditor, nor shall any Secured Creditor be liable to another Secured Creditor, for (a) the execution, effectiveness, genuineness, validity, perfection, enforceability, collectability, value or sufficiency of the Collateral, the Security Documents, or the Note Documents, (b) any representations, warranties, recitals or statements made by any of the Easterday Parties, or (c) ascertaining or inquiring as to (i) the performance or observance by the Easterday Parties of any of the terms, conditions, provisions, covenants or agreements contained in the Security Documents or Note Documents or (ii) the existence or possible existence of any Event of Default under the Security Documents or Note Documents. Neither the Administrative Agent nor any of its directors, officers, employees or agents shall be responsible to any Secured Creditor for any action taken or omitted to be taken by it or them hereunder or under any of the Security Documents or Note Documents or in connection herewith or therewith, except for its or their own gross negligence or willful misconduct.

**4.02    Reliance by the Administrative Agent**. The Administrative Agent shall be entitled to rely upon:

    (a)      any certificate, notice or other document believed by it in good faith to be genuine and correct and to have been signed or sent by or on behalf of the proper Person or Persons,

    (b)      the written direction of the Secured Creditors, (i) signed by all Secured Creditors or (ii) signed by Tyson certifying that such direction has been approved by all Secured Creditors, and

    (c)      advice and statements of legal counsel, independent accountants and other experts selected by the Administrative Agent with reasonable care.

21-00141-WLH11    Doc 1814    Filed 07/26/22    Entered 07/26/22 10:37:04    Pg 204 of 244

As to any other matters not expressly provided for by this Agreement, the Administrative Agent shall not be required to take any action or exercise any discretion, but shall be required to act or to refrain from acting upon instructions of the Secured Creditors and shall in all cases be fully protected by the Secured Creditors in acting, or in refraining from acting, hereunder or under any of the Security Documents or Note Documents in accordance with the instructions of the Secured Creditors.

Nothing herein shall preclude the Administrative Agent or any Secured Creditor from requesting the guidance of the Bankruptcy Court or other judicial guidance in accordance with Section 5.08.

4.03 **Administrative Agent Compensation, Fees and Expenses.** The Administrative Agent shall not be obliged to expend its own funds in performing its obligations under this Agreement. Each Secured Creditor hereby agrees to pay its Pro Rata Share of any unpaid fees and expenses incurred by the Administrative Agent pursuant to this Agreement, within ten (10) Business Days after receipt of a written demand for payment thereof from the Administrative Agent, which demand shall be made not more frequently than monthly. Such fees and expenses shall include hourly compensation for personnel employed by the Administrative Agent at rates disclosed to and reasonably approved by the Secured Creditors.

4.04 **Indemnification by the Secured Creditors of the Administrative Agent**. Each Secured Creditor hereby ratably, on the basis of its Pro Rata Share, agrees to indemnify the Administrative Agent and its past and present officers, directors, shareholders, employees, agents, attorneys and Affiliates acting as such (collectively, "**Secured Creditor Indemnitees**") for any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever which may at any time be imposed on, incurred by or asserted against the Secured Creditor Indemnitees, or any of them, in any way relating to or arising out of this Agreement, or any of the Security Documents or Note Documents; provided, however, that no Secured Creditor shall be liable for any of the foregoing to the extent they arise from the gross negligence or willful misconduct of any Secured Creditor Indemnitees. The Administrative Agent shall be fully justified in refusing to take or to continue to take any action under this Agreement, or any of the Security Documents or Note Documents unless it shall first be indemnified to its reasonable satisfaction by the Secured Creditors against any and all liability and expense which may be incurred by it by reason of taking or continuing to take any action under this Agreement or any of the Security Documents or Note Documents. Upon receiving knowledge of any suit, claim or demand asserted by a third party that the Administrative Agent believes is covered by this indemnity, the Administrative Agent shall give the Secured Creditors notice of the matter and an opportunity to defend it, at the Secured Creditors' sole cost and expense, with legal counsel reasonably satisfactory to the Administrative Agent. The Administrative Agent may also request that the Secured Creditors defend the matter. Any failure or delay of the Administrative Agent to notify the Secured Creditors of any such suit, claim or demand shall not relieve the Secured Creditors of their obligations under this Section 4.04 but shall reduce such obligations to the extent of any increase in those obligations caused solely by an unreasonable failure to provide, or delay in providing, such notice.

4.05 **Non-Reliance**. Each Secured Creditor represents that it has, independently and without reliance on the Administrative Agent or any other Secured Creditor, and based on such documents and information as it has deemed appropriate, made its own

21-00141-WLH11    Doc 1814    Filed 07/26/22    Entered 07/26/22 10:37:04    Pg 205 of 244

determination respecting the financial condition and affairs of the Easterday Parties and its own decision to enter into this Agreement and the Security Documents and Note Documents, and agrees that it will, independently and without reliance upon the Administrative Agent or any other Secured Creditor, and based on such documents and information as it shall deem appropriate at the time, continue to make its own decisions and determinations in taking or not taking action under this Agreement, the Security Documents, and the Note Documents. Except for notices, reports and other documents and information expressly required to be furnished to the Secured Creditors by the Administrative Agent or any Secured Creditors hereunder, neither the Administrative Agent nor any Secured Creditor shall have any duty or responsibility to provide any Secured Creditor with any credit or other information concerning the Easterday Parties or the Collateral that may come into the possession of the Administrative Agent, such Secured Creditor or their respective Affiliates.

        **4.06**   **Resignation or Removal of the Administrative Agent**. The Administrative Agent may resign at any time by giving forty-five (45) days' notice thereof to the Secured Creditors, and the Administrative Agent may be removed at any time with or without cause (and with or without prior notice) by the Secured Creditors acting together. Upon any such resignation or removal, the Secured Creditors shall have the right to appoint a successor Administrative Agent. If no successor Administrative Agent shall have been appointed by the Secured Creditors and shall have accepted such appointment within forty-five (45) days after the retiring Administrative Agent's giving of notice of resignation or the Secured Creditors' removal of the retiring Administrative Agent, then the retiring Administrative Agent may appoint a successor Administrative Agent. Upon the acceptance of any appointment as Administrative Agent hereunder by a successor Administrative Agent, such successor Administrative Agent shall thereupon succeed to and become vested with all the rights, powers, privileges and duties of the retiring Administrative Agent, and the retiring Administrative Agent shall be discharged from its duties and obligations hereunder. After any retiring Administrative Agent's resignation or removal hereunder as Administrative Agent, the provisions of this Section 4 shall continue in effect for its benefit in respect of any actions taken or omitted to be taken by it while it was acting as Administrative Agent.

        **4.07**   **Authorization.** Each Secured Creditor hereby authorizes the Administrative Agent to (a) execute, deliver and perform each of the Security Documents and Note Documents to which the Administrative Agent is or is intended to be a party, and (b) subject to the other terms and provisions hereof (including without limitation the provisions respecting required directions from the Secured Creditors), exercise and enforce any or all rights, powers and remedies provided to the Administrative Agent or any Secured Creditor by any Security Document, any Note Document, this Agreement, any applicable Governmental Rule, or any other document, instrument or agreement.

        **4.08**   **Representations and Warranties of the Secured Creditors**. Each Secured Creditor represents and warrants to the Administrative Agent and each other Secured Creditor that: (a) such Secured Creditor is a corporation, limited liability company, or other entity duly organized, validly, existing and in good standing under the laws of its jurisdiction of formation; (b) the execution, delivery and performance by such Secured Creditor of this Agreement are within the power of such Secured Creditor and have been duly authorized by all necessary actions on the part of such Secured Creditor; and (c) this Agreement has been or will be

duly executed and delivered by such Secured Creditor and constitutes or will constitute a legal, valid and binding obligation of such Secured Creditor, enforceable against it in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' rights generally.

**4.09** **Representations and Warranties of the Administrative Agent** . The Administrative Agent represents and warrants to each Secured Creditor that: (a) the Administrative Agent is a corporation, limited liability company, or other entity duly organized, validly, existing and in good standing under the laws of its jurisdiction of formation; (b) the execution, delivery and performance by the Administrative Agent of this Agreement are within the power of the Administrative Agent and have been duly authorized by all necessary actions on the part of the Administrative Agent; and (c) this Agreement has been or will be duly executed and delivered by the Administrative Agent and constitutes or will constitute a legal, valid and binding obligation of the Administrative Agent, enforceable against it in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' rights generally.

**4.10** **Intercreditor Notice Provisions.** Each of the Secured Creditors agrees to give the Administrative Agent and each of the other Secured Creditors copies of any notice of the occurrence or existence of any Event of Default given by or on behalf of such Secured Creditor to any Easterday Party, but any Secured Creditor's failure to do so shall not affect the validity of such notice as to the Easterday Party or such Secured Creditor's rights under this Agreement.

**4.11** **Budget; Reporting**. Prior to the commencement of each calendar quarter, the Administrative Agent shall prepare and provide to the Secured Creditors a proposed quarterly budget covering anticipated activities for the quarter. In addition, the Administrative Agent shall provide the Secured Creditors periodic reports, in form and content reasonably acceptable to the Secured Creditors, disclosing in reasonable detail the activity undertaken, and receipts and disbursements, by the Administrative Agent during such period. Such reports shall be provided at least quarterly or more frequently if requested by the Secured Creditors.

## SECTION V.    MISCELLANEOUS.

**5.01** **Third Party Beneficiaries.** Nothing expressed in or to be implied from this Agreement is intended to give, or shall be construed to give, any Person (including the Easterday Parties), other than the Secured Creditors and the Administrative Agent, their permitted successors and assigns hereunder and the indemnitees referred to in Section 4.04 hereof, any benefit or legal or equitable right, remedy or claim under or by virtue of this Agreement or under or by virtue of any provision herein.

**5.02** **Notices.** All notices and other communications provided for herein, (including any modifications of, or waivers or consents under this Agreement) shall be sent by (a) personal delivery, (b) email or other recognized means of electronic transmission, or (c) a recognized overnight delivery service (with charges prepaid), in each case to the intended recipient at the email address or address for notices, as applicable, specified on the signature pages of this Agreement, or at such other email address or address as may be designated by such Party in a notice complying with the provisions of this Section sent to each other Party. Except as otherwise

8

provided in this Agreement, all such notices and other communications shall be deemed to have been duly given at the time reflected in the delivery receipt customary for such means of transmission.

5.03    **Amendments; Waivers.**  Any term, covenant, agreement or condition of this Agreement may be amended or waived only if such amendment or waiver is in writing and is signed by all of the Secured Creditors and the Administrative Agent.  Any term, covenant, agreement or condition of any of the Security Documents or Note Documents may be amended or waived only if such amendment or waiver is in writing and is approved by all of the Secured Creditors, the Administrative Agent, and, if required, by the appropriate Easterday Party.

5.04    **Releases of Collateral**.  The parties hereto agree that the Administrative Agent shall release all or any portion of the Collateral only upon the receipt by the Administrative Agent of a written approval from the Secured Creditors stating that such Secured Creditors have approved the release of all or such portion of the Collateral as is specified in such notice.  Upon receipt of such written approval, the Administrative Agent shall execute and deliver such releases of its security interest in, or lien on, such Collateral to be released, and provide a copy of such releases to each of the Secured Creditors.

### 5.05    Successors and Assigns.

(a)    Binding Effect.  This Agreement, the Security Documents, and the Note Documents shall be binding upon and inure to the benefit of the Secured Creditors and the Administrative Agent and their respective successors and permitted assigns.  Any purported assignment that does not comply with this Section 5.05 shall be null and void.  Subject to the foregoing limitations, all references in this Agreement to any Person shall be deemed to include all successors and permitted assigns of such Person.

(b)    Assignments.  The Administrative Agent shall have no right to assign its rights and obligations hereunder, provided that nothing herein affects the Administrative Agent's right to resign in accordance with Section 4.06.  No Secured Creditor shall have the right to assign its rights and obligations hereunder without the written consent of all Secured Creditors, provided that any Secured Creditor may assign its rights and obligations to any wholly owned or controlled Affiliate so long as all rights and obligations are assigned to such Affiliate.

5.06    **Counterparts**.  This Agreement may be executed in any number of counterparts, all of which taken together will constitute one and the same instrument and any of the parties hereto may execute this Agreement by signing any such counterpart.

5.07    **GOVERNING LAW**.  EXCEPT TO THE EXTENT THE BANKRUPTCY CODE IS FOUND TO GOVERN THIS AGREEMENT, THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAW OF THE STATE OF WASHINGTON APPLICABLE TO CONTRACTS MADE AND PERFORMED IN THE STATE OF WASHINGTON, WITHOUT REFERENCE TO PRINCIPLES OF CONFLICTS OF LAWS.

5.08    **Dispute Resolution**.  In the event of any dispute respecting this Agreement, whether relating to indemnity provisions, distributions made (or not made) from the Cash

9

Collateral Account, directions (or lack of directions) from the Secured Creditors, or otherwise, the Parties will initially seek to have such dispute resolved by the Bankruptcy Court. Should the Bankruptcy Court decline to exercise jurisdiction over such dispute, or be found to lack jurisdiction to entertain such dispute, the Parties will seek to have such dispute resolved by a Federal or state court of competent jurisdiction located within Seattle, King County, Washington. Each of the Parties hereby consents to personal jurisdiction of each such court, and waives any defense based on *forum nonconveniens* or similar doctrine with respect to any action commenced in accordance with this Section. For the avoidance of doubt, any instance in which the Administrative Agent desires the guidance of the Bankruptcy Court or other judicial guidance, or any instance in which a Secured Creditor desires to take or refrain from taking any particular action hereunder without the consent of all Secured Creditors, shall be deemed a "dispute" for purposes of this Section.

       **5.09**   **Partial Invalidity**. If at any time any provision of this Agreement is or becomes illegal, invalid or unenforceable in any respect under any applicable Governmental Rule of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions of this Agreement nor the legality, validity or enforceability of such provision under the Governmental Rules of any other jurisdiction shall in any way be affected or impaired thereby.

<div align="center">

*[signature pages follow]*

</div>

21-00141-WLH11    Doc 1814    Filed 07/26/22    Entered 07/26/22 10:37:04    Pg 209 of 244

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first set forth above.

<div style="margin-left:40%">

**GLASSRATNER ADVISORY & CAPITAL GROUP, LLC, dba B. RILEY ADVISORY SERVICES,**
as the Administrative Agent


By:_____
Name:
Title:

*Address for notices:*

B. Riley Advisors



Attn:
Email:
Phone:

</div>

**TYSON FRESH MEATS, INC.,**
as a Secured Creditor

By:_____
Name:
Title:

*Address for notices:*

Tyson Fresh Meats, Inc.
c/o Tyson Foods
2200 W. Don Tyson Parkway
Springdale, AR  72762
Attn:  Gordon  McGrath,  Vice  President  and
Associate General Counsel
Email:  gordon.mcgrath@tyson.com
Phone:  (479) 290-4076

*With a copy to:*

Perkins Coie LLP
1201 Third Avenue
Seattle, WA  98101
Attn:  Alan D. Smith and Bradley Cosman
Email:  adsmith@perkinscoie.com
           bcosman@perkinscoie.com
Phone:  (206) 359-8410
              (602) 351-8205

**SEGALE PROPERTIES LLC,**
as a Secured Creditor

By:_____
Name:
Title:

*Address for notices:*

Segale Properties LLC

Attn:
Email:
Phone:

*With a copy to:*

Cairncross & Hempleman
524 Second Avenue, Suite 500
Seattle, WA  98104
Attn:  John Rizzardi and Jennifer Faubion
Email:  jrizzardi@cairncross.com
        jfaubion@cairncross.com
Phone:  (206) 254-4444
        (206) 254-4430

## Acknowledgement and Consent of Easterday Parties

The undersigned hereby acknowledge and consent to the foregoing Administrative Agency Agreement:

**Karen Easterday**  **Easterday Dairy, LLC**  **BC 140, LLC**

_____ By_____ By_____
       Name:       Name:
       Title:       Title:

**Jody Easterday**  **3E Properties**  **Easterday Farms Produce Co.**

_____ By_____ By_____
       Name:  Jody Easterday Name:  Jody Easterday
       Title:  General Partner Title:

21-00141-WLH11    Doc 1814    Filed 07/26/22    Entered 07/26/22 10:37:04    Pg 213 of 244

## Schedule 1

## Note Documents and Security Documents

The term "Note Documents" means:

1.    Secured Promissory Note of even date herewith executed by Karen Easterday in favor of the Administrative Agent in the original principal amount of $5,000,000.00 (the "Karen Easterday Secured Note").

2.    Promissory Note of even date herewith executed by Easterday Dairy LLC in favor of the Administrative Agent in the original principal amount of $2,169,300.00 (the "Easterday Dairy LLC Note")

3.    Secured Guaranty of even date herewith executed by BC 140 LLC in favor of the Administrative Agent, guaranteeing Easterday Dairy LLC's obligations under the Easterday Dairy LLC Note (the "BC 140 LLC Secured Guaranty").

4.    Secured Promissory Note of even date herewith executed by 3E Properties and Easterday Farms Produce Co., jointly and severally, in favor of the Administrative Agent, in the original principal amount of $2,274,210.00 (the "3E-Produce Secured Note").

5.    Any other guaranties or evidences of indebtedness executed by any of the Easterday Parties or their successors or Affiliates after the date hereof in favor of the Administrative Agent pursuant to the terms of this Agreement, the Security Documents, or the other Note Documents.

In each case, as the same may be amended, restated, supplemented or otherwise modified from time to time.

The term "Security Documents" means:

6.    Deed of Trust executed by Karen Easterday in favor of the Administrative Agent, securing the Karen Easterday Secured Note, encumbering certain real property located in Franklin County, Washington, comprised of a home and approximately 800 acres of adjacent farmland, commonly referred to as the Karen Easterday homestead.

7.    First Deed of Trust executed by BC 140 LLC in favor of the Administrative Agent, securing the BC 140 LLC Secured Guaranty, encumbering certain real property located in Franklin County, Washington, comprised of approximately _____ acres of previously unencumbered farmland, commonly referred to as a portion of Basin City farm.

8.      [Junior Deed of Trust executed by BC 140 LLC in favor of the Administrative Agent, securing the BC 140 LLC Secured Guaranty, encumbering certain real property located in Franklin County, Washington, comprised of approximately _____ acres of farmland subject to a senior deed of trust in favor of AXA Equitable Life Insurance Company, commonly referred to as a portion of Basin City farm.]

9.      [Pledge Agreement executed by Karen Easterday in favor of the Administrative Agent, securing the BC 140 LLC Secured Guaranty, encumbering 100% of the membership interests in BC 140 LLC.]

10.     Pledge Agreement executed by Jody Easterday in favor of the Administrative Agent, securing the 3E-Produce Secured Note, encumbering a 33% interest in 3E Properties.

11.     Pledge Agreement executed by Jody Easterday in favor of the Administrative Agent, securing the 3E-Produce Secured Note, encumbering a 33% interest in Easterday Farms Produce Co.

12.     Any other guaranties or security instruments executed by the Easterday Parties or their successors or Affiliates after the date hereof in favor of the Administrative Agent pursuant to the terms of this Agreement, the other Security Documents, or the Note Documents.

In each case, as the same may be amended, restated, supplemented or otherwise modified from time to time.

Exhibit A

**Glossary**

"<u>Administrative Agent</u>" shall have the meaning given to that term in the Preamble.

"<u>Affiliates</u>" means, with respect to any Person, (a) each Person that, directly or indirectly, owns or controls, whether beneficially or as a trustee, guardian or other fiduciary, five percent (5%) or more of any class of equity securities of such Person, (b) each Person that controls, is controlled by or is under common control with such Person or any Affiliate of such Person or (c) each of such Person's officers, directors, joint venturers and partners; <u>provided, however</u>, that in no case shall the Administrative Agent or any Secured Creditor be deemed to be an Affiliate of any Easterday Party for purposes of this Agreement. For the purpose of this definition, "control" of a Person shall mean the possession, directly or indirectly, of the power to direct or cause the direction of its management or policies, whether through the ownership of voting securities, by contract or otherwise.

"<u>Bankruptcy Code</u>" means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

"<u>Bankruptcy Court</u>" shall have the meaning given to that term in the Recitals.

"<u>Business Day</u>" means any day on which commercial banks in Seattle, Washington are not authorized or required to close.

"<u>Cash Collateral Account</u>" shall have the meaning given to that term in Section 3.01(a).

"<u>Collateral</u>" shall have the meaning given to that term in the Recitals.

"<u>Direction Notice</u>" shall have the meaning given to that term in Section 2.05.

"<u>Easterday Parties</u>" means Karen Easterday; Easterday Dairy LLC; BC 140, LLC; Jody Easterday; 3E Properties; and Easterday Farms Produce Co.

"<u>Event of Default</u>" shall mean any failure by any Easterday Party to pay or perform any of the Obligations when due under the terms of the Note Documents, or any other event or condition constituting a default or "Event of Default" as defined therein or in the Security Documents if the effect of such event or condition is to cause, or permit any Secured Creditor under such Note Document or Security Document to cause, Obligations thereunder to become due prior to the stated date of maturity, an early termination thereof or similar event, in any case, after the expiration of any grace or cure period.

"<u>Governmental Authority</u>" means any domestic or foreign national, state or local government, any political subdivision thereof, any department, agency, authority or bureau of any of the foregoing, or any other entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

Exhibit A

"Governmental Authorization" means any permit, license, registration, approval, finding of suitability, authorization, plan, directive, order, consent, exemption, waiver, consent order or consent decree of or from, or notice to, action by or filing with, any Governmental Authority.

"Governmental Rule" means any law, rule, regulation, ordinance, order, code interpretation, judgment, decree, directive, Governmental Authorization guidelines, policy or similar form of decision of any Governmental Authority.

"Note Documents" shall have the meaning given to that term in Schedule 1.

"Obligations" shall have the meaning given to that term in the Recitals.

"Party" or "Parties" shall have the meaning given to those terms in the Preamble.

"Person" means and includes an individual, a partnership, a corporation (including a business trust), a joint stock company, an unincorporated association, a limited liability company, a joint venture, a trust or other entity or a Governmental Authority.

"Pro Rata Share" means the following:

| For Tyson | 97.0906% |
| For Segale | 2.9094% |

"Proceeds" shall have the meaning given to that term in Section 3.01(b).

"Ranches" shall have the meaning given to that term in the Recitals.

"Secured Creditors" shall have the meaning given to that term in the Recitals.

"Security Documents" shall have the meaning given to that term in Schedule 1.

"Segale" shall have the meaning given to that term in the Preamble.

"Triggering Event" shall have the meaning given to that term in Section 2.03.

"Triggering Notice" shall have the meaning given to that term in Section 2.03.

"Tyson" shall have the meaning given to that term in the Preamble.

DOCS_SF:107599.1

Exhibit A

# EXHIBIT G

## PLAN ADMINISTRATOR AGREEMENT

<u>**PLAN ADMINISTRATOR AGREEMENT**</u>

This Plan Administrator Agreement (the "<u>Agreement</u>") is made as of _____, 2022 by and among EASTERDAY RANCHES, INC. ("<u>Ranches</u>") and EASTERDAY FARMS, a Washington general partnership ("<u>Farms</u>," and together, the "<u>Debtors</u>"), and SETH R. FREEMAN of GLASSRATNER ADVISORY & CAPITAL GROUP, LLC DBA B. RILEY FINANCIAL SERVICES ("<u>Plan Administrator</u>," and together with the Debtors, the "<u>Parties</u>") pursuant to the *Second Modified Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* dated as of May 27, 2022 [Docket No. 1653] (as may be altered, amended, or modified from time to time, the "<u>Plan</u>"). Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

<u>**RECITALS**</u>

A. WHEREAS, on February 1, 2021, Ranches filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Eastern District of Washington (the "<u>Bankruptcy Court</u>");

B. WHEREAS, on February 8, 2021, Farms also filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court;

C. WHEREAS, on May 27, 2022, the Debtors filed the Plan;

D. WHEREAS, pursuant to the Plan, as of the Effective Date, the Plan Administrator will be appointed to serve as Plan Administrator for each of the Debtors;

E. WHEREAS, pursuant to Section 5.8.2 of the Plan, the Plan Administrator shall be the exclusive administrator of the Post-Effective Date Debtors' Assets and representative of the Estates regarding all Post-Effective Date Debtors' Assets in accordance with the provisions of the Plan; and

F. WHEREAS, on July [·], 2022, the Bankruptcy Court entered the *Order Confirming Second Modified Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* [Docket No. [·]] (the "<u>Confirmation Order</u>").

NOW, THEREFORE, in consideration of the premises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree as follows:

**ARTICLE I**
**THE PLAN ADMINISTRATOR**

**1.1** **Acceptance.** The Plan Administrator hereby agrees to accept his appointment as the Plan Administrator and provide the services pursuant to the Plan, the Confirmation Order, and

as set forth herein. Notwithstanding the date of execution, this Agreement shall only become effective on the Effective Date (as defined in the Plan).

**1.2    General Duties, Powers, and Rights.**

(a)    Pursuant to Section 5.8.3 of the Plan, the Plan Administrator shall have the authority and right on behalf of the Debtors, the Post-Effective Date Debtors, and the Estates and without the need for Bankruptcy Court approval (in each case, unless otherwise provided in the Plan) to carry out and implement all applicable provisions of the Plan, including to:

(i)    review, reconcile, compromise, settle, or object to Claims and resolve such objections as set forth in the Plan;

(ii)    calculate and make Distributions and calculate and establish reserves under and in accordance with the Plan;

(iii)    retain, compensate, and employ professionals and other Persons to represent the Plan Administrator with respect to and in connection with his rights and responsibilities;

(iv)    establish, maintain, and administer documents and accounts of the Debtors or Post-Effective Date Debtors as appropriate, which shall be segregated to the extent appropriate in accordance with the Plan;

(v)    maintain, conserve, collect, settle, and protect the Post-Effective Date Debtors' Assets (subject to the limitations described in the Plan);

(vi)    sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of the Post-Effective Date Debtors' Assets, including the Distributable Assets and the Net Distributable Assets, or any part thereof or interest therein upon such terms as the Plan Administrator determines to be necessary, appropriate, or desirable;

(vii)    negotiate, incur, and pay the Post-Effective Date Debtors' Expenses;

(viii)    prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtors or Post-Effective Date Debtors that are required under the Plan, by any governmental unit, or by applicable law, including but not limited to filing any reports required by the Bankruptcy Code or Bankruptcy Rules that are due to be filed after the Effective Date and paying any fees required by 28 U.S.C. § 1930 that are due to be paid after the Effective Date;

(ix)    compile and maintain the official claims register, including for purposes of making initial and subsequent Distributions under the Plan;

(x)    take such actions as are necessary or appropriate to wind-down and dissolve the Debtors or the Post-Effective Date Debtors;

(xi)     comply with the Plan, exercise the Plan Administrator's rights, and perform the Plan Administrator's obligations; and

(xii)     exercise such other powers as deemed by the Plan Administrator to be necessary and proper to implement the Plan.

(b)     To the extent necessary to give full effect to his administrative rights and duties under the Plan, the Plan Administrator shall be deemed to be vested with all rights, powers, privileges, and authorities of (i) an appropriate corporate or partnership director, officer, or manager of each of the Debtors under any applicable non-bankruptcy law and (ii) a "trustee" of each of the Debtors under chapter 7 of the Bankruptcy Code and Section 1106 of the Bankruptcy Code.

(c)     On the Effective Date, the Plan Administrator shall succeed to all such powers as would have been applicable to each Debtor's directors, officers, and managers in respect of all Post-Effective Date Debtors' Assets; *provided, however,* that, the Plan Administrator may continue to consult with or employ the Debtors' former directors, officers, employees, and managers in his reasonable discretion. For the avoidance of doubt, on the Effective Date, the Plan Administrator shall assume all management and control of both Debtors.

**1.3    Retention of Counsel and Agents.** The Plan Administrator shall retain Cooley LLP as his legal counsel and shall retain other advisors and professionals, in consultation with Cooley LLP, to the extent necessary. Any professionals retained by the Plan Administrator, shall be entitled to reasonable compensation for services rendered and reimbursement of reasonable and documented fees, costs, and expenses incurred. The payment of the fees, costs, and expenses of the Plan Administrator and his retained professionals incurred after the Effective Date shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court; *provided, however,* that any disputes related to such fees, costs, and expenses shall be brought before the Bankruptcy Court.

**1.4    Compensation of Plan Administrator.** The Plan Administrator shall be entitled to hourly compensation (collectively, the "Fees"), as set forth hereto as **Exhibit A**, and reimbursement of reasonable and documented out of pocket expenses (collectively, the "Expenses"), including the Expenses specified in Sections 1.8 and 1.9 herein, to the extent applicable. The Fees and Expenses shall be payable out of the Reserve Account (as defined below). The hourly compensation will adjust as of January 1 of each anniversary of this Agreement.

**1.5    Resignation, Death or Removal of Plan Administrator**. In the event that the Plan Administrator resigns or is no longer available for any reason, Tyson, Segale, and Karen Easterday (or order of the Bankruptcy Court) shall collectively designate another Person or Entity to serve as Plan Administrator within thirty (30) days of such event, as such time may be extended for cause, and thereupon the successor Plan Administrator, without any further act or need for an order of the Bankruptcy Court, shall become fully vested with all of the rights, powers, duties and obligations of the predecessor; *provided, however*, that the Plan Administrator shall be deemed removed on the date the Chapter 11 Cases are closed, and no successor thereto shall be designated. Notice of such selection shall be filed with the Bankruptcy Court. Without limiting the generality of the foregoing, in the event of any dispute over removal or selection of the Plan Administrator,

3

including whether or not cause exists, or any other dispute over the terms of this Agreement or the Plan Administrator's performance hereunder, any of the Plan Administrator, Tyson, Segale, or Karen Easterday may request the guidance and order of the Bankruptcy Court.

**1.6     Plan Provisions**.  In connection with all actions taken in his capacity as Plan Administrator, the Plan Administrator shall be entitled to rely upon the applicable exculpation, release, and indemnification and limitation of liability provisions set forth in any corporate organizational document, this Agreement, the Plan, and the Confirmation Order.  Notwithstanding anything herein, the Plan Administrator shall not be entitled to any release, exculpation, or indemnification if the Plan Administrator is determined to have engaged in fraud, gross negligence, or willful misconduct as determined by a Final Order of the Bankruptcy Court.

**1.7     Limitation of Liability**. The Plan Administrator may, in connection with the performance of his functions, in his sole and absolute discretion, consult with his attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such Persons, regardless of whether such advice or opinions were in writing. Notwithstanding such authority, the Plan Administrator shall be under no obligation to consult with any such attorneys, accountants, advisors, or agents, and his determination not to do so shall not result in the imposition of liability on the Plan Administrator unless such determination is based on willful misconduct, gross negligence, or fraud. Persons dealing with the Plan Administrator shall look only to the Post-Effective Date Debtors' Assets to satisfy any liability incurred by the Plan Administrator to such Person in carrying out the terms of the Plan, and the Plan Administrator shall have no personal obligation to satisfy such liability.

**1.8     Indemnification**.  The Post-Effective Date Debtors shall indemnify the Post-Effective Date Indemnified Parties for, and shall defend and hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without gross negligence or willful misconduct on the part of the Post-Effective Date Indemnified Parties (which gross negligence or willful misconduct, if any, must be determined by a final, non-appealable order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by such Post-Effective Date Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan. An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence or willful misconduct. In addition, the Post-Effective Date Debtors shall, to the fullest extent permitted by law, indemnify, defend, and hold harmless the Post-Effective Date Indemnified Parties, from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Post-Effective Date Debtors or the implementation or administration of the Plan if such Post-Effective Date Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Post-Effective Date Debtors. To the extent the Post-Effective Date Debtor indemnifies, defends, and holds harmless any Post-Effective Date Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Plan Administrator in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as Post-Effective Date Debtors' Expenses of the Post-Effective Date

4

Debtors. The costs and expenses incurred in enforcing the right of indemnification as specified in Section 5.8.5 of the Plan shall be paid by the Post-Effective Date Debtors. For the avoidance of doubt, the partners of Farms and the former equity holders of Ranches shall not be liable for any Post Effective Date obligations arising under this Section 1.8 or any other financial obligations of any kind or nature arising out of this Plan Administrator Agreement.

1.9 **Insurance.** The Plan Administrator shall be authorized, but not required, to obtain any insurance coverages deemed to be reasonably necessary, at the Post Effective Date Debtors' sole expense, for itself and his respective agents, including coverage with respect to the liabilities, duties, and obligations of the Plan Administrator.

1.10 **No Successor Liability.** Except as otherwise expressly provided in the Plan and Confirmation Order, the Plan Administrator (i) is not, and shall not be deemed to assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations or the assets of the Debtors prior to the Effective Date; (ii) is not, and shall not be, successor to the Debtors by any reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date; and (iii) shall not have any successor or transferee liability of any kind or character.

1.11 **Plan Administrator Reserve**. The Plan Administrator shall establish and maintain one or more reserves in respect of Contingent Claims, Disputed Claims, or Unliquidated Claims and other contingencies (collectively, the "Distribution Reserves") and withhold such Cash from Distributions, in accordance with the terms of this Agreement and the Plan. The Plan Administrator shall determine in the exercise of his reasonable discretion which expenses and in what amounts shall be satisfied from the Reserve. Once the Plan Administrator determines, in his reasonable discretion, that such costs of administration have been satisfied, such remaining Cash shall be considered Net Distributable Assets and Available Cash for distribution to the Holders of Allowed Claims in Classes 5 and 6 on a Pro Rata basis in accordance with Section 7.10 of the Plan. For the avoidance of doubt, the Professional Fee Reserves shall be established by the Post-Effective Date Debtors on the Effective Date and shall be maintained and held in trust by Pachulski Stang Ziehl & Jones LLP in accordance with Section 12.2 of the Plan.

1.12 **Survival.** The provisions of this Article I shall survive the termination of this Agreement and the death, resignation, removal, liquidation, dissolution, or replacement of the Plan Administrator.

<div align="center">

**ARTICLE II**
**MISCELLANEOUS PROVISIONS**

</div>

2.1 **Termination.** The Plan Administrator shall be discharged and this Agreement shall be terminated at the earliest to occur of (i) the entry of a Final Order by the Bankruptcy Court closing the last of the Chapter 11 Cases pursuant to Section 350(a) of the Bankruptcy Code, and (ii) the date that is three (3) years from the Effective Date, *provided, however*, that such three-year term may be extended upon written agreement of Tyson, Segale, and Karen Easterday, if necessary.

# ARTICLE III
## MISCELLANEOUS PROVISIONS

**3.1** **Relationship to Plan.** The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan. To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan. In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plan, the provisions of this Agreement adopted and approved by the Bankruptcy Court after notice and hearing, following substantial consummation (as such term is defined in Section 1101(2) of the Bankruptcy Code) shall control over provisions of the Plan.

**3.2** **Confidentiality**. The Plan Administrator shall, and shall cause his agents and representatives to, during the period that it serves as Plan Administrator under this Agreement to hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity or matter to which the Debtors' Assets or Post Effective Date Debtors' Assets relate to, of which the Plan Administrator has become aware in his capacity as Plan Administrator.

**3.3** **Amendments.** The Plan Administrator may, with the written consent of Tyson, Segale, and Karen Easterday, and with notice to legal counsel, modify, supplement, or amend this Agreement.

**3.4** **Waiver.** No failure by the Plan Administrator to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

**3.5** **Cumulative Rights and Remedies.** The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

**3.6** **No Bond Required.** Notwithstanding any state law to the contrary, the Plan Administrator (including any successor Plan Administrator) shall be exempt from giving any bond or other security in any jurisdiction other than as provided otherwise in this Agreement.

**3.7** **Irrevocability.** This Agreement and the Plan shall be irrevocable, except as otherwise expressly provided in this Agreement and in accordance with the Plan.

**3.8** **Tax Identification Numbers.** The Plan Administrator may require any holder of a Claim to furnish to the Plan Administrator (i) its social security number or employer or taxpayer identification number as assigned by the IRS and (ii) the original Form W-8 or copy of Form W-9, as applicable, as completed by each holder of a Claim, and the Plan Administrator may condition any distribution to any holder of a Claim upon the receipt of such information.

**3.9** **Applicable Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Washington, without giving effect to rules governing the conflict of laws.

**3.10    Severability.** In the event that any provision of this Agreement or the application thereof to any person or circumstance shall be determined to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstance, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

**3.11    Limitation of Benefits.** Except as otherwise specifically provided in this Agreement, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto any rights or remedies under or by reason of this Agreement.

**3.12    Notices.** All notices, requests, demands, consents, and other communications hereunder shall be in writing and shall be deemed to have been duly given to a person, if delivered in person or by facsimile with an electromagnetic report of delivery or if sent by overnight mail, registered mail, certified mail, or regular mail, with postage prepaid, to the following addresses:

> If to the Plan Administrator:
>
> GlassRatner Advisory & Capital Group, LLC dba
> B. Riley Advisory Services
> Attention: Seth R. Freeman
> 425 California Street, Suite 900
> San Francisco CA 94104
> Telephone: (415) 229-4860
> E-Mail: sfreeman@brileyfin.com
>
> and
>
> Christopher Durbin, Esq.
> Michael Klein, Esq.
> Weiru Fang, Esq.
> Cooley LLP
> 1700 Seventh Avenue, Suite 1900
> Seattle, WA 98101
> Telephone: (202) 776-2110
> E-Mail: cdurbin@cooley.com
>             mklein@cooley.com
>             wfang@cooley.com
>
> If to Tyson:
>
> Tyson Fresh Meats, Inc.
> Attention: Gordon McGrath
> 2200 W. Don Tyson Parkway
> Springdale, AR 72762
> Telephone: (479) 290-4076
> E-Mail: gordon.mcgrath@tyson.com

7

and

Alan D. Smith, Esq.
Perkins Coie LLP
1201 Third Avenue, 40th Floor
Seattle, WA 98101
Telephone: (206) 359-8410
E-Mail: ADSmith@perkinscoie.com

If to Segale:

Segale Properties, LLC
Attention: Jennifer K. Faubion
524 Second Avenue, Suite 500
Seattle, WA 98104
Telephone: (206) 254-4430
E-Mail: JFaubion@cairncross.com

If to Karen Easterday:

Karen Easterday
Attention: Timothy J. Conway
888 SW Fifth Avenue, Suite 1600
Portland, OR 97204
Telephone: (503) 802-2027
E-Mail: tim.conway@tonkon.com

**3.13 Further Assurances.** From and after the date hereof, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

**3.14 Interpretation.** The enumeration and Section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof. Unless context otherwise requires, whenever used in this Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations. The words herein, hereby, and hereunder and words with similar import, refer to this Agreement as a whole and not to any particular Section or subsection hereof unless the context requires otherwise.

**3.15 Counterparts.** This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document. Delivery of an executed counterpart of this Agreement by facsimile or email in pdf format shall be equally effective as delivery of a manually executed counterpart.

8

IN WITNESS WHEREOF, the Parties hereto have either executed and acknowledged this Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

**EASTERDAY RANCHES, INC.**

_____
Peter Richter
Co-Chief Restructuring Officer

**EASTERDAY FARMS**

_____
Peter Richter
Co-Chief Restructuring Officer

**GLASSRATNER ADVISORY & CAPITAL GROUP, LLC DBA B. RILEY ADVISORY SERVICES**

_____
Seth R. Freeman

## Exhibit A

## Plan Administrator Compensation

| Plan Administrator | Compensation |
|---|---|
| Seth R. Freeman | $575/hour[1] |

---

[1] The rate set forth herein is subject to periodic adjustment.

# EXHIBIT H

## EASTERDAY FAMILY RELEASED PARTIES

### PART ONE

- 3E Properties
- Clay Easterday
- Cole Easterday
- Cutter Easterday
- Easterday Farms Produce, Co.
- Easterday Dairy, LLC
- Jody Easterday
- Related persons or entities that have executed a Mutual Release Agreement on or prior to the Effective Date

### PART TWO

- Jordan Ramis PC
- Lindy Widner and Widner Consulting, LLC
- Sussman Shank LLP
- Tonkon Torp LLP

# EXHIBIT I

## FORM OF MUTUAL RELEASE AGREEMENT

# MUTUAL RELEASE AGREEMENT

This MUTUAL RELEASE AGREEMENT ("Agreement") is dated, for reference purposes only, the __ day of June, 2022 and shall be effective upon (and only upon) the Effective Date (as hereinafter defined), by and between (a) Easterday Ranches, Inc. and Easterday Farms (together, the "Debtors"), (b) the Official Committee of Unsecured Creditors of Easterday Ranches, Inc. (the "Ranches Committee"), (c) the Official Committee of Unsecured Creditors of Easterday Farms (the "Farms Committee" and together with the Ranches Committee, the "Committees"), (d) Tyson Fresh Meats, Inc. ("Tyson"), (e) Segale Properties, LLC ("Segale" and together with the Debtors, Committees, and Tyson, the "Non-Family Member Parties"), and (f) [●] (the "Family Member") (each a "Party" and collectively, the "Parties")

## RECITALS

A. On February 1, 2021, Easterday Ranches, Inc. filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Washington (the "Bankruptcy Court").

B. On February 8, 2021, Easterday Farms, a Washington general partnership, also filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

C. On April 20, 2022, the Bankruptcy Court entered its *Order Granting Debtors' Motion to Approval Global Settlement Term Sheet* [Docket No. 1560], which approved the *Global Settlement Term Sheet* dated April 14, 2022 (the "Global Settlement Term Sheet"), by and among the Debtors, the Committees, Tyson, Segale, and certain related family members and entities of the Family Member. The Global Settlement Term Sheet contemplates a global resolution of all claims among the Parties by, among other things, the execution of this Agreement.

D. On May [●], 2022, the Debtors filed their *Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* [Docket No. ●] (the "Plan"), which effectuates the terms of the Global Settlement Term Sheet. All capitalized terms used but not defined herein shall have the meaning ascribed to them in the Plan.

E. The Parties desire to enter into a mutual release of each other from all obligations according to the terms set forth in this Agreement and the Plan.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties as follows:

1. <u>Releases</u>.

1.1. The Non-Family Member Parties, respectively, for themselves and each of their respective past, present, or future advisors, trustees, directors, officers, managers, members, partners, employees, beneficiaries, shareholders, agents, participants, subsidiaries, parents, affiliates, successors, designees, and assigns (herein individually and collectively referred to as, "Non-Family Member Releasing Parties"), hereby forever, finally, fully, unconditionally, and

DOCS_SF:107351.2

21-00141-WLH11    Doc 1814    Filed 07/26/22    Entered 07/26/22 10:37:04    Pg 231 of 244

completely release and acquit the Family Member and its respective property from any and all actions, claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Non-Family Member Releasing Parties (whether individually or collectively) ever had, now has, or hereafter can, shall or may have, based on or relating to, or in any manner arising from or related in any way to the Debtors, any of the Debtors' present or former assets, the Family Member's interests in or management of the Debtors, the business, or contractual arrangements between the Debtors and the Family Member, the Plan, the Disclosure Statement, the Chapter 11 Cases, or the Sale Transaction, including those that the Debtors, the Post-Effective Date Debtors, or the Plan Administrator would have been legally entitled to assert or that any Holder of a Claim against or interest in the Debtors or any other Entity could have been legally entitled to assert derivatively or on behalf of the Debtors or their Estates.

1.2. The Family Member, for itself and each of its respective past, present, or future advisors, trustees, directors, officers, managers, members, partners, employees, beneficiaries, shareholders, agents, participants, subsidiaries, parents, affiliates, successors, designees, and assigns (herein individually and collectively referred to as, "Family Member Releasing Parties"), hereby forever, finally, fully, unconditionally, and completely release and acquit the Non-Family Member Releasing Parties and their respective property from any and all actions, claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Family Member Releasing Parties (whether individually or collectively) ever had, now has, or hereafter can, shall or may have, based on or relating to, or in any manner arising from or related in any way to the Debtors, any of the Debtors' present or former assets, the business, or contractual arrangements between the Debtors and the Non-Family Family Member Releasing Parties, the Plan, the Disclosure Statement, the Chapter 11 Cases, or the Sale Transaction, including those that the Debtors, the Post-Effective Date Debtors, or the Plan Administrator would have been legally entitled to assert or that any Holder of a Claim against or interest in the Debtors or any other Entity could have been legally entitled to assert derivatively or on behalf of the Debtors or their Estates.

1.3. Each of the Parties acknowledges and agrees that it has been informed by its attorneys and advisors of, and is familiar with, and does hereby expressly waive, the provisions of Section 1542 of the California Civil Code, and any similar statute, code, law, or regulation of any state or the United States, to the full extent that it may waive such rights and benefits. Civil Code, Section 1542 provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

1.4.     Each of the Parties respectively represents and warrants to the other, that it is the sole and lawful owner of all right, title, and interest in and to each and every claim or other matter which it releases herein, and that none has heretofore assigned or transferred, or purported to assign or transfer, to any individual, partnership, corporation, firm, estate, or entity any such claim or other matter being released herein.  With the intent to be legally bound, each of the undersigned hereby covenants and acknowledges that he, she, or it (a) has read each of the terms set forth herein, (b) has the authority to execute this Agreement for such person or entity, and (c) expressly consents and agrees that the person or entity upon behalf of which the undersigned is acting, shall be bound by all terms and conditions contained herein.

2.     <u>Miscellaneous</u>.

2.1.     <u>Attorneys' Fees</u>.  The prevailing party in any action or proceeding to interpret or enforce this Agreement, or any of its terms, shall be entitled, in addition to any judgment or award upon such action or proceeding, to an award for all costs and expenses (including costs of all legal or administrative proceedings or hearings and attorneys' fees) incurred by such prevailing party or parties, including, without limitation, all attorneys' fees and related costs of enforcement of any such judgment or award and upon any appeal relating thereto.

2.2.     <u>Successors and Assigns</u>.  The provisions of this Agreement shall be binding upon and inure to the benefit of, each of the parties hereto, and their respective successors, assigns, heirs, and personal representatives.

2.3.     <u>Headings</u>.  The section and paragraph headings set forth in this Agreement are inserted <u>solely</u> for the convenience of reference and are not a part of, and are not intended to govern, limit, or aid in the construction or interpretation of, any term or provision hereof.

2.4.     <u>Governing Law; Jurisdiction; Venue</u>.  This Agreement is and shall be governed by and construed in accordance with the laws of the State of Washington.  The Bankruptcy Court shall have concurrent jurisdiction to resolve any disputes arising from this Agreement.

2.5.     <u>Entire Agreement</u>.  This Agreement, the Plan, and any documents attached as exhibits or executed in connection herewith or therewith, shall constitute the parties' entire agreement with respect to the subject matter hereof, and supersede all agreements, representations, warranties, statements, promises, and understandings, whether oral or written, with respect to the subject matter herewith.  This Agreement may not be amended, altered, or modified except by a writing signed by all parties.

2.6.     <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  Electronic signatures may be accepted as original signatures.

2.7.     <u>Condition to Effectiveness</u>.  Notwithstanding anything to the contrary in this Agreement, neither this Agreement nor the releases provided for herein shall be binding or effective until such time as the Plan becomes effective in accordance with its terms, which such date shall be referred to herein as the "Effective Date."

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**EASTERDAY RANCHES, INC.**

By: */s/*
    Armand J. Kornfeld (WSBA #17214)
    jkornfeld@bskd.com
    Thomas A. Buford (WSBA #52969)
    tbuford@bskd.com
    Richard B. Keeton (WSBA #51537)
    rkeeton@bskd.com
    BUSH KORNFELD LLP
    601 Union Street, Suite 5000
    Seattle, WA 98101

    Richard M. Pachulski, *Admitted Pro Hac Vice*
    rpachulski@pszjlaw.com
    Jeffrey W. Dulberg, *Admitted Pro Hac Vice*
    jdulberg@pszjlaw.com
    Jason H. Rosell, *Admitted Pro Hac Vice*
    jrosell@pszjlaw.com
    PACHULSKI STANG ZIEHL & JONES LLP
    10100 Santa Monica Blvd., 13th Floor
    Los Angeles, CA 90067-4003

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF EASTERDAY RANCHES, INC.**

By: */s/*
    Christopher B. Durbin (WSBA #41159)
    cdurbin@cooley.com
    COOLEY LLP
    1700 Seventh Avenue, Suite 1900
    Seattle, WA 98101

    Cullen D. Speckhart, *Admitted Pro Hac Vice*
    *cspeckhart@cooley.com*
    Michael Klein, *Admitted Pro Hac Vice*
    *mklein@cooley.com*
    COOLEY LLP
    5 Hudson Yards
    New York, NY 10001

**EASTERDAY FARMS**

By: */s/*
    Armand J. Kornfeld (WSBA #17214)
    jkornfeld@bskd.com
    Thomas A. Buford (WSBA #52969)
    tbuford@bskd.com
    Richard B. Keeton (WSBA #51537)
    rkeeton@bskd.com
    BUSH KORNFELD LLP
    601 Union Street, Suite 5000
    Seattle, WA 98101

    Richard M. Pachulski, *Admitted Pro Hac Vice*
    rpachulski@pszjlaw.com
    Jeffrey W. Dulberg, *Admitted Pro Hac Vice*
    jdulberg@pszjlaw.com
    Jason H. Rosell, *Admitted Pro Hac Vice*
    jrosell@pszjlaw.com
    PACHULSKI STANG ZIEHL & JONES LLP
    10100 Santa Monica Blvd., 13th Floor
    Los Angeles, CA 90067-4003

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF EASTERDAY FARMS**

By: */s/*
    Joseph M. Welch (WSBA #56521)
    Julian I. Gurule (admitted *pro hac vice*)
    BUCHALTER
    1420 Fifth Avenue, Suite 3100
    Seattle, WA 98101

**Signatures continued on next page**

**TYSON FRESH MEATS, INC.**

By: */s/*

    Alan D. Smith (WSBA 24964)
    ADSmith@perkinscoie.com
    Bradley A. Cosman (*pro hac vice*)
    BCosman@perkinscoie.com
    PERKINS COIE LLP
    1201 Third Avenue
    Seattle, WA 98101

**FAMILY MEMBER**

By: */s/*

    [Name]
    [Email]
    [Address]

**SEGALE PROPERTIES LLC**

By: */s/*

    Aditi Paranjpye (WSBA # 53001)
    aparanjpye@cairncross.com
    John R. Rizzardi (WSBA # 9388)
    jrizzardi@cairncross.com
    Jennifer K. Faubion (WSBA # 39880)
    jfaubion@cairncross.com
    CAIRNCROSS & HEMPELMANN, P.S.
    524 Second Avenue, Suite 500
    Seattle, WA 98104-2323

21-00141-WLH11   Doc 1814   Filed 07/26/22   Entered 07/26/22 10:37:04   Pg 235 of 244

# EXHIBIT J

## FARMS GUC CLAIMS SCHEDULE

| EXHIBIT J - FARMS GUC CLAIMS SCHEDULE | | |
|---|---|---|
| **Creditor Name** | **Allowed Farms POC** | **Allowed Claim Amount** |
| A & M Supply, Inc. | 160-1 | $ 114,260.46 |
| A1 Industrial Supply, LLC | 17-1 | $ 317.50 |
| A-Plus Connectors, LLC | 116-1 | $ 387.23 |
| Benton PUD | 23-2 | $ 23,264.90 |
| Bison Pipe & Supply | 25-1 | $ 62,516.30 |
| Bobcat of Pasco | 95-1 | $ 59,495.56 |
| C & E Trenching, LLC | 22-1 | $ 5,960.52 |
| Central Machinery Sales Inc. | 1-1 | $ 739,823.93 |
| CH2O, Inc. | 110-1 | $ 5,221.85 |
| Chemsearchfe (NCH Corporation) | 111-1 | $ 307.62 |
| CNH Industrial Capital America, LLC | 28-2 | $ 4,406.43 |
| CNH Industrial Capital America, LLC | 29-2 | $ 17,921.78 |
| Coleman Oil Company | 10-1 | $ 664.57 |
| Columbia Pump Company | 125-1 | $ 36,924.22 |
| Columbia River Machinery LLC | 104-1 | $ 1,581.00 |
| Commercial Tire, Inc. | N/A | $ 175,000.00 |
| Connell Oil, Inc. | 4-2 | $ 2,685.09 |
| Cornado Garza Trucking | 151-1 | $ 187,315.78 |
| CRG Financial, Assignee of BJK Truck Parts, LLC | 97-1 | $ 1,572.91 |
| CRG Financial, Assignee of Northwest Equipment Sales, Inc. | 81-1 | $ 101,525.97 |
| CRG Financial, Assignee of Northwest Equipment Sales, Inc. | 82-1 | $ 42,575.83 |
| CRG Financial, Assignee of Rangeview AG Labor lLC | 43-1 | $ 47,371.66 |
| CRG Financial, Assignee of Tri-City Truck Parts | 98-1 | $ 15,314.44 |
| CRG Financial, Assignee of Triple M Truck & Equipment, LLC | 96-1 | $ 415.75 |
| Cubby's Electric Motor and Pump Repais, Inc. | 105-1 | $ 3,491.00 |
| DLL Finance LLC | 135-2 | $ 1,350,000.00 |
| Dykman Electrical, Inc. | 24-1 | $ 32,024.00 |
| Farm Credit Services of America, PCA | 107-1 | $ 246,103.60 |
| Fastenal Company | 2-1 | $ 1,007.05 |
| Giesbretcht & Sons LLC | 8-1 | $ 1,825.19 |
| H.D. Fowler Company, Inc. | 20-1 | $ 786.61 |
| Hermiston Auto Parts | 18-1 | $ 1,811.51 |
| Huntington National Bank (fka TCF National Bank) | 5-2 | $ 54,480.37 |
| Industrial Bolt & Supply | 148-2 | $ 2,581.00 |
| Industrial Bolt & Supply | 149-2 | $ 1,622.20 |
| Industrial Ventilation Inc. | 100-1 | $ 238,373.96 |
| International Belt & Rubber Supply, Inc. | 41-1 | $ 5,689.10 |
| Jefferies Leveraged Credit Product, LLC (Basin City Auto Parts | 115-1 | $ 24,200.64 |
| Jefferies Leveraged Credit Product, LLP (Irrigation Specialist) | 156-1 | $ 39,812.58 |
| Jim's Pacific Garages, Inc. | 14-1 | $ 805.48 |
| John Deere Financial | 150-1 | $ 2,317,911.43 |
| JTI Colfax LLC | 16-1 | $ 1,875.06 |
| Labor Plus Solutions | 106-1 | $ 455,309.91 |
| Lad Irrigation Company, Inc. | 118-1 | $ 61,394.33 |
| M & M Bolt Co., LLC | 157-1 | $ 10,187.17 |
| Monarch Machine & Tool Co., Inc. | 27-1 | $ 875.32 |
| Newhouse Mfg.Co | 31-1 | $ 309.79 |
| Northwest Compost, LLC | 112-1 | $ 64,000.00 |
| Oxarc, Inc. | 89-1 | $ 1,130.43 |
| Oxbo International Corporation Dept | 11-1 | $ 5,115.26 |
| Pacific Grain Terminals | 127-1 | $ 12,440.50 |
| Pape Machinery Inc | 86-1 | $ 13,721.40 |
| Pasco Auto Wrecking, Inc. | 92-1 | $ 3,250.00 |
| RDO Equipment Co. | 108-1 | $ 18,093.68 |
| Quill | 15-1 | $ 722.04 |
| Sanitary Disposal, Inc. | 6-1 | $ 1,403.85 |
| Segale Properties, LLC | 136-1 | $ 53,000.00 |
| Simplot AB Retailer, Inc. d/b/a Simplot Grower Solutions | 130-1 | $ 155,036.04 |
| SS EQ, Inc. | 7-1 | $ 12,339.76 |
| Star Rentals & Sales | 72-1 | $ 19,272.93 |
| Teton West of Washington LLC | 91-1 | $ 17,875.54 |
| The McGregor Company | 52-1 | $ 4,030,178.12 |
| THM Management Co. dba Pasco Auto & Truck Parts NA | 13-1 | $ 11,727.33 |
| Twin City Metals, Inc. | 83-1 | $ 6,105.53 |
| U.S Bank National Association | 33-1 | $ 3,018.00 |
| Viterra Canada, Inc. | 114-1 | $ 77,680.08 |
| **TOTAL:** | | **$ 11,005,419.17** |

# <u>EXHIBIT B</u>

**Form of Confirmation Notice**

ARMAND J. KORNFELD (WSBA #17214)
THOMAS A. BUFORD (WSBA #52969)
RICHARD B. KEETON (WSBA #51537)
BUSH KORNFELD LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Tel.: (206) 292-2110
Facsimile: (206) 292-2104
Emails: jkornfeld@bskd.com,
tbuford@bskd.com, and rkeeton@bskd.com

RICHARD M. PACHULSKI (CA Bar #90073)*
JEFFREY W. DULBERG (CA Bar #181200)*
JASON H. ROSELL (CA Bar #269126)*
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003
Tel: (310) 277-6910
Facsimile: (310) 201-0760
Emails: rpachulski@pszjlaw.com,
jdulberg@pszjlaw.com, and
jrosell@pszjlaw.com

*Admitted *Pro Hac Vice*

*Attorneys for the Chapter 11
Debtors and Debtors in Possession*

HON. WHITMAN L. HOLT

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| EASTERDAY RANCHES, INC., *et al.* | Lead Case No. 21-00141-11 |
| Debtors.[1] | Jointly Administered |
| | **NOTICE OF CONFIRMATION OF THIRD MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS** |

---

[1] The Debtors along with their case numbers are as follows: Easterday Ranches, Inc. (21-00141) and Easterday Farms, a Washington general partnership (21-00176).

NOTICE OF CONFIRMATION OF THIRD
MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION OF
EASTERDAY RANCHES, INC. AND
EASTERDAY FARMS – Page 1

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

<div align="center">

**CONFIRMATION OF THIRD MODIFIED
THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS**

</div>

1.      By Order dated July [●], 2022 [Docket No. ●] (the "Confirmation Order"), the United States Bankruptcy Court for the Eastern District of Washington (the "Bankruptcy Court") confirmed the *Third Modified Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* [Docket No. 1772] (including all exhibits thereto, any plan supplement, and as amended, modified, or supplemented from time to time, the "Plan") filed by Easterday Ranches, Inc. and Easterday Farms, the above-captioned debtors and debtors in possession (collectively, the "Debtors"), in the above-referenced chapter 11 cases, as satisfying the requirements of section 1129 of Title 11 of the United States Code.

2.      The Plan and the Confirmation Order may be obtained: (a) via download from the Bankruptcy Court's website at ecf.waeb.uscourts.gov for registered users of the PACER and/or CM/ECF systems (for a fee); (b) via download from https://cases.creditorinfo.com/EasterdayRanches; or (c) by e-mail request to pjeffries@pszjlaw.com.

DATED:  July [●], 2022      BUSH KORNFELD LLP

*/s/ Thomas A. Buford, III*
THOMAS A. BUFORD, III (WSBA 52969)
BUSH KORNFELD LLP

RICHARD M. PACHULSKI (Admitted *Pro Hac Vice*)
JEFFREY W. DULBERG (Admitted *Pro Hac Vice*)
JASON H. ROSELL (*Admitted Pro Hac Vice*)
PACHULSKI STANG ZIEHL & JONES LLP

*Attorneys for Debtors and Debtors in Possession*

NOTICE OF CONFIRMATION OF THIRD
MODIFIED THIRD AMENDED JOINT
CHAPTER 11 PLAN OF LIQUIDATION OF
EASTERDAY RANCHES, INC. AND
EASTERDAY FARMS – Page 2

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13ᵗʰ Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

# EXHIBIT C

**Form of Notice of Effective Date**

1  ARMAND J. KORNFELD (WSBA #17214)
   THOMAS A. BUFORD (WSBA #52969)
2  RICHARD B. KEETON (WSBA #51537)
   BUSH KORNFELD LLP
3  601 Union Street, Suite 5000
   Seattle, WA 98101
4  Tel.: (206) 292-2110
   Facsimile: (206) 292-2104
5  Emails: jkornfeld@bskd.com,
   tbuford@bskd.com, and rkeeton@bskd.com
6
7  RICHARD M. PACHULSKI (CA Bar #90073)*
   JEFFREY W. DULBERG (CA Bar #181200)*
   JASON H. ROSELL (CA Bar #269126)*
8  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
9  Los Angeles, CA 90067-4003
   Tel: (310) 277-6910
10 Facsimile: (310) 201-0760
   Emails: rpachulski@pszjlaw.com,
11 jdulberg@pszjlaw.com, and
   jrosell@pszjlaw.com
12
13 *Admitted *Pro Hac Vice*
14 *Attorneys for the Chapter 11*
   *Debtors and Debtors in Possession*

HON. WHITMAN L. HOLT

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re | Chapter 11 |
| EASTERDAY RANCHES, INC., *et al.* | Lead Case No. 21-00141-11 |
| Debtors.[1] | Jointly Administered |
| | **NOTICE OF OCCURRENCE OF EFFECTIVE DATE OF THIRD MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS** |

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

### OCCURRENCE OF EFFECTIVE DATE OF THIRD MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF EASTERDAY RANCHES, INC. AND EASTERDAY FARMS

---

[1] The Debtors along with their case numbers are as follows: Easterday Ranches, Inc. (21-00141) and Easterday Farms, a Washington general partnership (21-00176).

NOTICE OF OCCURRENCE OF
EFFECTIVE DATE – Page 1

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1. **Confirmation Order**. By Order dated July [●], 2022 [Docket No. ●] (the "Confirmation Order"), the United States Bankruptcy Court for the Eastern District of Washington (the "Bankruptcy Court") confirmed the *Third Modified Third Amended Joint Chapter 11 Plan of Liquidation of Easterday Ranches, Inc. and Easterday Farms* [Docket No. 1772] (including all exhibits thereto, any plan supplement, and as amended, modified, or supplemented from time to time, the "Plan") filed by Easterday Ranches, Inc. and Easterday Farms, the above-captioned debtors and debtors in possession (collectively, the "Debtors"), in the above-referenced chapter 11 cases, as satisfying the requirements of section 1129 of Title 11 of the United States Code.

2. **Effective Date**. On [●], 2022, the Effective Date of the Plan occurred and the Plan was substantially consummated. All conditions precedent to the Effective Date of the Plan set forth in Article IX of the Plan have either been satisfied or waived in accordance with the Plan and the Confirmation Order.

3. **Bar Date for Rejection Damages**. Pursuant to Section 6.2 of the Plan, Claims arising out of the rejection of an Executory Contract pursuant to the Plan must be filed with the court and served upon counsel to the Post-Effective Date Debtors within thirty (30) calendar days after the Effective Date (*i.e.*, [●], **2022**). Any Claims not filed within such time period will be forever barred from assertion against the Debtors and/or their property and/or their Estates.

4. **Bar Date for Administrative Claims**. Pursuant to Section 12.1 of the Plan, Administrative Claims arising on or after April 1, 2022 must be filed with the court and served upon counsel to the Post-Effective Date Debtors within thirty (30) calendar days after the Effective Date (*i.e.*, [●], **2022**). Any Administrative Claims not filed within such time period will be forever barred from assertion against the Debtors and/or their property and/or their Estates.

5. **Bar Date for Professional Claims**. Pursuant to Section 12.2 of the Plan, all persons and entities seeking an award by the court of professional fees on behalf of the Debtors shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses no later than thirty (30) calendar days after the Effective Date (*i.e.*, [●], **2022**).

6. **Releases, Injunctions, and Exculpation**: Pursuant to the Confirmation Order, the releases, injunctions, and exculpation provisions set forth in Article X of the Plan are now in full force and effect.

6. **Viewing the Plan and Confirmation Order**. The Plan and the Confirmation Order may be obtained: (a) via download from the Bankruptcy Court's

NOTICE OF OCCURRENCE OF
EFFECTIVE DATE – Page 2

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

1  website at ecf.waeb.uscourts.gov for registered users of the PACER and/or CM/ECF
2  systems (for a fee); (b) via download from
   https://cases.creditorinfo.com/EasterdayRanches; or (c) by e-mail request to
3  pjeffries@pszjlaw.com.

4  DOCS_SF:107507.8

PACHULSKI STANG
ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Flr.
Los Angeles, CA 90067-4003
Telephone (310) 277-6910
Facsimile (310) 201-0760

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA